# Exhibit 5

Founded in 1852
by Sidney Davy Miller



MICHIGAN: Ann Arbor
Detroit • Grand Rapids
Kalamazoo • Lansing • Troy

D.C.: Washington
ILLINOIS: Chicago
NEW YORK: New York
OHIO: Cincinnati • Cleveland

JOSEPH M. INFANTE
TEL (616) 776-6333
FAX (616) 776-6322
E-MAIL infante@millercanfield.com

Miller, Canfield, Paddock and Stone, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, Michigan  49503
TEL (616) 454-8656
FAX (616) 776-6322
www.millercanfield.com

CANADA: Windsor
CHINA: Shanghai
MEXICO: Monterrey
POLAND: Gdynia
Warsaw • Wrocław

July 9, 2019

Peninsula Township

    Re:    Preempted and Unconstitutional Zoning Ordinances as Applied to Wineries

Dear Township Board:

Recently, Peninsula Township held a meeting with all of the winery owners located within Peninsula Township to discuss issues that have arisen related to the Township's various winery ordinances. At that meeting, the opinion of the winery owners was solicited as it relates to whether the current ordinances are working and as it relates to the proposed revisions to the various winery ordinances that the Township intends to work on over the next two years. Following that meeting, my firm was hired by the following wineries to review the current winery ordinances and provide an opinion on their legality:

    2 Lads Winery

    Bonobo Winery

    Bowers Harbor Vineyards

    Peninsula Cellars

    Winery at Black Star Farms

My firm has engaged in a line by line review of the winery ordinances to determine whether those ordinances are enforceable. Ultimately, our review resulted in the memorandum that is attached to this letter. However, the main takeaways from the memorandum are summarized in this letter. Numerous portions of the Township's winery ordinances are preempted by state law, unconstitutional economic protectionism under the Commerce Clause to the United States Constitution and violate the First Amendment by both compelling and suppressing speech. Below is a partial list of the issues with the ordinances:

1. **Restaurants:** MCL 436.1516(7) states that a winery "may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises." In numerous places, the Township's ordinances preclude Peninsula Township wineries from operating

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Peninsula Township -2- July 9, 2019

restaurants. Because state law explicitly allows a winery to operate a restaurant, a local ordinance cannot prohibit the activity and the local ordinance is preempted.

2. **Catering:** MCL 436.1547 explicitly allows a winery to obtain a catering permit which allows it to serve food and drinks off its premises. But Section 8.7.3 10(u)(5)(g) prohibits a winery from off-site catering. Because state law explicitly allows a winery to cater off-site, a local ordinance cannot prohibit the activity and the local ordinance is preempted.

3. **Hours of Service:** The winery ordinances require all guest activities to cease at 9:30 p.m. But numerous courts have determined that a local ordinance cannot dictate when alcohol sales must cease as "Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005); see also *Sherman Bowling Center v City of Roosevelt Park*, 154 Mich 576 (1986); *Noey v Saginaw*, 271 Mich 595, 596 (1935).

4. **Music and Other Entertainment:** Numerous provisions of the winery ordinances preclude wineries from having music, live bands, and other forms of entertainment and/or require prior approval for such activities. But, MCL 436.1916(11) explicitly allows for the playing of music or singing without having to obtain a permit. The Court in *Sherman Bowling Center v City of Roosevelt Park*, 154 Mich 576 (1986) determined that a similar restriction was preempted by state law.

5. **Favoring Peninsula Township Agriculture:** The stated intent of the Chateau Winery Ordinance and Amendment 141 is to promote Peninsula Township agriculture. To effectuate this intent, the ordinances mandate that certain percentages of fruit used to make wine come from Peninsula Township, that only Old Mission appellation wine be served at guest activities, that wineries buy 1.5 tons of fruit per person at a guest activity, that only Grand Traverse County non-profits may hold meetings at wineries and that wineries must advertise Peninsula Township products among other requirements. But each of these requirements improperly discriminates against out of market products in violation of the Commerce Clause of the United States Constitution. In *Loretto Winery Ltd. v. Duffy*, 761 F2d 140 (2d Cir. 1985), a New York statute that limited wine that could be sold in grocery stores to only those wines made from New York grown grapes was deemed unconstitutional. The Township's ordinances are no different and are simply improper economic protectionism.

6. **Compelled Speech:** Part of the stated purpose of the ordinances is that wineries in Peninsula Township are required to "promot[e] Peninsula Township

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Peninsula Township                   -3-                   July 9, 2019

agriculture" by, among other items, providing "'Peninsula Agriculture' promotional brochures, maps and awards" Section 8.7.3 10(u)(1)(b); see also Section 8.7.3 10(u)(5)(a) (requiring Peninsula Agriculture Promotional materials.) Wineries are only allowed meetings of "Agricultural Related Groups". Section 8.7.3 10(u)(2)(c). Requiring wineries to engage in a specific commercial message to have the ability to host guest activities is compelled speech which violates the First Amendment. In *US v United Foods, Inc*, 533 US 405 (2001), the United States Supreme Court determined that regulation that required mushroom growers to support a specific advertising messages violated the First Amendment.

7. **Suppressed Speech**: Unless the speech is misleading, the government "must assert a substantial interest to be achieved by restrictions on commercial speech." *Cent Hudson Gas & Elec Corp v Pub Serv Comm'n of New York*, 447 US 557, 564 (1980). Here, the Township cannot assert a substantial interest in precluding wineries from most forms of commercial speech. This includes entertainment, advertising, meetings of organizations other than Grand Traverse County non-profits, meetings of groups other than agriculture related groups, weddings, family reunions, entertainment and other forms of speech. In essence, the ordinances do not allow wineries to engage in any speech other than the compelled speech discussed above. Similarly, in *Schad v Borough of Mount Ephraim*, 452 US 61 (1981) the United States Supreme Court struck down a local ordinance that prohibited all live entertainment within the municipality as violating the First Amendment.

8. **Official Discretion/Vagueness**: The winery ordinances are improperly vague in that they do not set explicit criteria as to what activities are allows and not allowed. "An ordinance is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or if it authorizes or even encourages arbitrary and discriminatory enforcement." *Gospel Missions of America*, 419 F3d 1042, 1047 (9th Cir. 2005). This vagueness has resulted in a regulatory scheme where interpretation and enforcement of the ordinances are left to the subjective interpretation of Township officials. But this violates the First Amendment as an improper prior restraint. "[A]n ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Shuttlesworth v City of Birmingham*, 394 US 147, 151 (1969).

The Township has requested Peninsula Township wineries to provide their thoughts on the currently proposed re-write of the winery ordinances. The undersigned wineries seek ordinances which allow them to use their state issued licenses with all of the benefits conferred

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Peninsula Township                          -4-                          July 9, 2019

by state statutes and the United States Constitution. This is not to say that the undersigned wineries do not believe the Township has the authority to enact ordinances which apply to their businesses. But these ordinances must not be preempted by state law and must not interfere with the wineries' constitutional rights. By this letter, the undersigned wineries request a meeting with the Township to discuss enforcement activities related to the specific ordinance sections and general restrictions identified in this letter and the accompanying memorandum. My clients propose July 23 at 5:00 p.m. for this meeting. Thereafter, Peninsula Township wineries and the Township can work collaboratively to draft an ordinance which is legally supportable. I look forward to your prompt confirmation that the Township will come to the table to work with its winery partners.

Very truly yours,

Miller, Canfield, Paddock and Stone, P.L.C.

Joseph M. Infante

DISCLOSURE UNDER TREASURY CIRCULAR 230: The United States Federal tax advice contained in this document and its attachments, if any, may not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and may not be used, by a taxpayer for the purpose of avoiding Federal tax penalties. Advice that complies with Treasury Circular 230's "covered opinion" requirements (and thus, may be relied on to avoid tax penalties) may be obtained by contacting the author of this document.

33899075.2\153698-00001



# MEMORANDUM

FROM: Joseph M. Infante

RE: Preemption and Constitutional Application to Peninsula Township's Winery Ordinances

DATE: July 9, 2019

**Questions Presented:**

1. Are any portions of Peninsula Township's Winery Ordinances preempted by either state or federal law?

   Short Answer: Yes.[1]

2. Are any portions of the Peninsula Township's Winery Ordinances Unconstitutional for violating the Commerce Clause?

   Short Answer: Yes.

3. Are any portions of the Peninsula Township's Winery Ordinances Unconstitutional for violating the First Amendment?

   Short Answer: Yes.

## INTRODUCTION

"The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" *Schad v. Borough of Mount Ephraim*, 452 US 61, 68 (1981); quoting *Moore v. East Cleveland*, 431 US 494, 514 (1977) (STEVENS, J., concurring in

---

[1] I am aware that the Township attorney provided a memorandum on May 30, 2019, wherein he concluded that the ordinance was not preempted. However, that memo is simply a recitation of general preemption law and does not delve into the specific ordinance provision as is done in this memorandum. Further, that memorandum ignores several cases that are discussed below where local ordinances related to alcohol were deemed preempted as directly conflicting with state law.

judgment). "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Id.*

1. **Numerous Provisions of the Township's Winery Ordinances are Preempted by State and Federal Law.**

    a. **General Preemption Law:**

    Local governments may control and regulate matters of local concern so long as their regulations do not conflict with state law. *City of Taylor v. Detroit Edison Co*, 475 Mich 109, 117-118 (2006). The Michigan Zoning Enabling Act (MZEA) provides that "[a] local unit of government may provide by zoning ordinance for the regulation of land development and ... regulate the use of land and structures ... to ensure that use of the land is situated in appropriate locations and ... to promote public health, safety, and welfare. MCL 125.3201(1). But, "[a] city ordinance that purports to prohibit what a state statute permits is void. A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field. A direct conflict exists between a local regulation and state statute when the local regulation prohibits what the statute permits." *Ter Beek v. City of Wyoming*, 297 Mich App 446, 452 (2012) (Quotation marks and citations omitted.) Further, "regulations shall be uniform for each class of land or buildings, dwellings, and structures within a district." MCL 125.3201(2). A local municipality may not enjoin activity allowed by state law "simply by characterizing the conduct as a zoning violation." *Ter Beek v. City of Wyoming*, 495 Mich 1, 21 (2014.) As the Michigan Supreme Court has explained, "[l]ocal zoning regulation enacted pursuant to the MZEA does not save it from preemption." *Ter Beek II*, 495 Mich at 21-22.

    b. **The Michigan Liquor Control Codes Preempts Local Ordinances.**

    The state constitution granted the Legislature the authority to establish a liquor control commission which, subject to statutory limitation, "shall exercise complete control of the alcoholic beverage traffic within this State". *Noey v Saginaw*, 271 Mich 595, 596 (1935). Pursuant to this constitutional provision the Legislature enacted a statute creating a liquor control commission and wrote "(e)xcept as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic...." *Id.* at 596-597.

    In providing a memorandum to the Township on May 30, 2019, the Township attorney reached the broad conclusion that the Michigan Liquor Control Code does no preempt the Township's ordinances. In doing so, the Township attorney failed to review each specific provision of the ordinances to determine whether there was a corresponding state statute on the subject. When this exercise is done, it becomes readily apparent that numerous portions of the Ordinance are preempted. First, and most obviously, is the requirement that alcohol sales conclude at 9:30 p.m. Numerous courts have determined that an ordinance requiring an entity licensed by the Michigan Liquor Control Commission to cease alcohol sales before 2:00 am is preempted.

    "Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005.) Thus, "there is a written regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and

prohibits city officials from rescinding the benefit." *Id.* at 436. "Under Michigan law, a liquor license is property which includes the right to serve alcohol until 2:00 a.m. Accordingly, just as a licensee's license could not be revoked without due process, neither can a licensee's right to serve alcohol until 2:00 a.m. be revoked without due process." *Id.*

In *Noey*, the Michigan Supreme Court determined that a local ordinance which required establishments selling alcoholic beverages to close by midnight was preempted by state law which permitted the sale of alcohol until 2:00 a.m. The court concluded that "Under the broad power thus conferred upon the liquor control commission by the Constitution and the statute, it must be held that its regulations relative to the hours of closing are binding upon all licensees, and are not affected by the provision in the ordinance relating thereto." *Id.* at 599.

In *Sherman Bowling Center v City of Roosevelt Park*, 154 Mich 576 (1986), the municipality had in place an ordinance which limited outdoor events with the sale of alcohol to Fridays and Saturdays, with entertainment ending at 11:00 p.m., the event ending by midnight and limited to once per year per licensee. The court determined that the ordinance was preempted as "a state statutory scheme occupies the field of regulation which defendant seeks to enter so as to preempt the field." *Id.* at 582. "State law expressly provides that MLCC is to have the exclusive authority to regulate the alcoholic beverage traffic in the manner which is attempted in the ordinance." "The ordinance regulates various activities and imposes various requirements, but does so only in regard to establishments where alcoholic beverages are sold. The sale of alcoholic beverages is a determining factor in whether the ordinance applies to a given establishment. Because of this, the ordinance de facto regulates alcoholic beverage sales." The Court noted:

> Any law which provides that if activity A takes place, then activity B may not occur, necessarily provides that if activity B occurs, then activity A may not take place. For instance, one provision of defendant's ordinance states essentially that, if an establishment sells alcoholic beverages, there is to be no entertainment at its outdoor event after 11:00 p.m. Logically, this law also provides that if an establishment is to have entertainment at its outdoor event after 11:00 p.m., then it cannot sell alcoholic beverages.

*Id.* at 583.

> No matter what form an ordinance takes, or what language an ordinance employs, a city cannot regulate or control alcoholic beverage traffic unless authorized by statute. That function belongs exclusively to the MLCC. The MLCC is to determine what types of establishments may sell liquor, when such establishments may sell liquor, and where they may sell it (with certain explicit statutory exceptions). It is the MLCC and not an individual city which is given the authority to determine whether an establishment which operates a special outdoor event providing entertainment can or cannot sell alcoholic beverage.

*Id.*

> On the other hand, cities may, pursuant to their police power, regulate various activities. However, cities cannot use liquor sales as a determination of when or

> where another type of activity can take place. A law which uses liquor sales as a determinant regulates when and where liquor sales can take place.

*Id.* at 583-584.

> We do not wish to imply that cities may not regulate the number of outdoor events which can be held or the hours of such outdoor events. Nor do we wish to imply that cities may not regulate the hours within which outdoor entertainment can take place. Provided that they are otherwise valid, general regulations in this regard which are not tied to the sales of alcoholic beverages are not preempted by the authority granted to the MLCC. The bottom line is that a regulation will not be declared invalid under preemption principles if it applies to establishments which sell alcoholic beverages in a like manner as it does to establishments which do not sell alcoholic beverages.

*Id.* at 584. Thus, pursuant to *Noey, R.S.W.W., Inc,* and *Sherman Bowling* Paragraph 10(u)(5)(b) which requires guest activities to end by 9:30 is preempted by state law.

Other provisions of the ordinance also directly conflict with state law. As noted by the Sixth Circuit in *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F3d 427 (6th Cir. 2005), "Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m." In fact, MCL 436.1516(7) states that "A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises." Thus, any ordinance which prohibits a winery from serving food or operating a restaurant is preempted as the ability to operate a restaurant is explicitly allowed under Michigan law.[2] Likewise, Section 8.7.3 10(u)(5)(g) prohibits a winery from off-site catering. But, MCL 436.1547 explicitly allows a winery to obtain a catering permit which allows it to serve food and drinks off its premises. Thus, the ordinance precludes what state law permits and is preempted.

As noted in *Sherman Bowling*, Michigan law allows licensees to conduct certain entertainment activities related to the manufacture and sale of alcohol. Yet, in numerous paragraphs, the ordinances prohibit wineries from playing music, having musicians play music or singers. But, MCL 436.1916(11) explicitly allows for the playing of music or singing without having to obtain a permit. Under Rule 436.1419, a winery can obtain a permit for outdoor service without seeking approval of the local government. Thus, the ordinances which prohibit these activities are preempted.

The majority of subsection (u) related to guest activities is preempted by state law. In essence, Peninsula Township's ordinance prohibits wineries from using their licenses, playing music, using outdoor service permits, catering permits, etc, to the fullest extent allowed under the Liquor Control Code.

---

[2] Section 6.7.2(19) specifically precludes a winery from operating a restaurant.

## 2. Numerous Provisions of the Peninsula Township Zoning Ordinances Violate the Commerce Clause to the United States Constitution.

A law/ordinance violates the Commerce Clause to the United States Constitution if it unreasonably burdens the flow of interstate commerce by restricting access of out-of-market suppliers to local markets in order to protect local economic interests. *Schwegmann Bros. Giant Super Markets v. Louisiana Milk Com'n.*, 365 F.Supp. 1144 (M.D. La. 1973); *Baldwin v. Seelig*, 294 U.S. 511 (1935). "[W]here simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622, (1978). This prohibition applies to local ordinances as well as state statutes. *See Dean Milk Co v Madison*, 340 US 349 (1951) (invalidating a local ordinance that made it unlawful to sell milk unless it was processed in a plant "within a radius of five miles from the central square of Madison"); *Fort Gratiot Sanitary Landfill, Inc v Michigan Dept of Natural Resources*, 504 US 353 (1992) (invalidating a local ordinance that prohibited landfill from accepting waste from out of state as invalid protectionist measure.)

In invalidating the ordinance in *Dean Milk*, the United States Supreme Court stated:

> [T]his regulation, like the provision invalidated in Baldwin v. Seelig, Inc., [294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935)], in practical effect excludes from distribution in Madison wholesome milk produced and pasteurized in Illinois. 'The importer ... may keep his milk or drink it, but sell it he may not.' Id., at 521, 55 S.Ct., at 500. In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce.

While the Township may argue that because it in regulating alcohol it has greater powers, this is not true. Courts have concluded that policies related to alcohol are only protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent. *Arnold's Wines, Inc. v. Boyle*, 2009 WL 1873655 (2d Cir. 2009). The Twenty-first Amendment does not displace the rule that states may not give a discriminatory preference to their own producers. *Jelovsek v. Bredesen*, 545 F.3d 431 (6th Cir. 2008).

As one would expect, this is not the first instance where a local government attempted to favor its local producers/products. The court in *Loretto Winery Ltd. v. Duffy*, 761 F.2d 140 (2d Cir. 1985), determined that the New York Alcoholic Beverage Control Law's Wine Products Provisions, which permitted the sale in grocery stores of "wine products" defined as having been produced exclusively from grapes grown in New York state, were invalid as they violated the Commerce Clause, and could not be saved by the Twenty–first Amendment. There, a California winery brought a Commerce Clause challenge with regard to the constitutionality of the Wine Products Provisions. The Second Circuit upheld the lower court's conclusion:

> Under traditional commerce clause jurisprudence, it is beyond dispute that the ABC Law would be unconstitutional, as discriminatory in both its purpose and its effect. The central purpose of the statutory package was admittedly to promote the sale of "New York labelled wines." This is plain and simple economic protectionism of New York grown grapes, at the expense of out of state grapes, and a violation of the commerce clause of the most simple and direct kind.

***

The effect of this was to place out-of-state producers of grapes, whose goods could be sold only in the less numerous package stores, at a significant competitive disadvantage. As a direct result of the measures taken to protect the local grape industry

*Loretto Winery Ltd v Gazzara*, 601 F. Supp 850, 857-858 (1985)

Here, Peninsula Township has numerous provisions in the Chateau Winery Ordinance which explicitly favor local wine/fruit/organizations over those same items from out of the Township/County/State. In fact, the intent of Amendment 141 was to explicitly favor Peninsula Township agriculture by prohibiting guest activities unless Peninsula Township agriculture is used. See Section 8.7.3 (10)(u)(1)(a) which states that it is the intent of the Township to ensure that additional farm land in Peninsula Township is in active fruit production by requiring wineries to purchase Peninsula Township fruit if the winery wishes to have guest activities. In fact, the ordinance explicitly states that "Guest Activity Uses are intended to help the promotion of Peninsula agriculture." Section 6.7.2(19) also states that promoting local agriculture is the intent of the ordinance and requires 85% of all produce sold to come from Old Mission. Other provisions of the ordinance violate the Commerce Clause by favoring local interests over outside of Township/County/State interests:

1. Section 8.7.3 (10)(u)(2)(b) states that a winery can only allow non-profits located within Grand Traverse County to hold meetings at the winery;

2. Section 8.7.3 (10)(u)(2)(c) states that a winery can only allow agricultural related groups to hold meetings at the winery and no other groups can hold meetings;

3. Section 8.7.3 (10)(u)(2)(e) states that if wine is served at a guest activity it can only be Old Mission Peninsula appellation wine. This restriction is similar to the restriction in *Loretto Winery* discussed above.

4. Section 8.7.3 (10)(u)(3) states that if a winery wishes to offer a guest activity, the winery must grow on other leased land in Peninsula Township or purchase from another farm in Peninsula Township, 1.25 tons of grapes for each person at the guest activity. This restriction is also similar to the restriction in *Loretto Winery* discussed above and would be clearly unconstitutional economic protectionism.

5. Section 8.7.3 (10)(u)(5)(a) states that at all guest activities a winery is required to advertise Peninsula Township products. Presumably, a winery is precluded from advertising other agricultural products.

6. 6.7.2(19)(b) requires that fruit wine or grape wine that is sold at a Farm Processing Facility is limited to wine including 85% juice from fruit grown on

Old Mission and bearing the Old Mission appellation.[3] Thus, these wineries are precluded from buying fruit from anywhere but Peninsula Township.

The Ordinances have numerous provisions which are clearly unconstitutional under the Commerce Clause. The fact that the stated purpose of the ordinance is to promote Peninsula Township products over others makes this all the more clear.

3. **Peninsula Township has Violated the First Amendment to the United States Constitution by Both Compelling and Suppressing Speech and Due to Prior Restraint.**

   a. **The Ordinances Violate the First Amendment by Compelling Wineries to Advertise a Specific Message.**

Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views. *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). "We therefore consider [laws mandating speech]" to be "content-based regulations" subject to strict or exacting scrutiny. *Id.*; *see also Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642 (1994) ("Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny" as laws that "suppress, disadvantage, or impose differential burdens upon speech because of its content."). Some courts have determined that in the commercial speech context, courts apply intermediate scrutiny. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980). However, under either strict of intermediate scrutiny the ordinances here violate the First Amendment as they require wineries to advertise only Peninsula Township agriculture.

In *US v United Foods, Inc*, 533 US 405 (2001), the United States Supreme Court determined that mandatory advertising related to a specific brand of mushrooms violated the First Amendment. Commercial speech is of vital importance to First Amendment values. As the Supreme Court explained in *United Foods*, "[t]he subject matter of the speech may be of interest to but a small segment of the population; yet those whose business and livelihood depend in some way upon the product involved no doubt deem First Amendment protection to be just as important for them as it is for other discrete, little noticed groups in a society which values the freedom resulting from speech in all its diverse parts." 533 U.S. at 410. In *US Foods*, mushroom growers were required to subsidize advertising to generic mushrooms over their branded mushrooms. The Supreme Court determined that this was compelled speech which violated the First Amendment. Here, the violations of the First Amendment are even more clear as Peninsula Township wineries themselves are required to engage in certain speech. The United Foods Court observed that forcing a person to "utter the speech itself" is a greater infringement on First Amendment freedoms than "simply" requiring the person to subsidize the speech. 533 U.S. at

---

[3] Such a requirement makes no practical sense as the Old Mission appellation is limited to wine made from grapes. Thus, the Township ordinance actually prohibits these wineries from buying other types of fruit typically used in making wine including apples to make cider.

413; accord *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 568-69 (2005) (Thomas, J., concurring) ("The payment of taxes to the government for purposes of supporting government speech is not nearly as intrusive as being forced to 'utter what is not in [one's] mind,' or to carry an unwanted message on one's property.") (quoting Barnette, 319 U.S. at 634).

Here, as part of the stated purpose of the ordinances, wineries in Peninsula Township are required to "promot[e] Peninsula Township agriculture" by, among other items, providing "'Peninsula Agriculture' promotional brochures, maps and awards" Section 8.7.3 (10)(u)(1)(b); see also Section 8.7.3 (10)(u)(5)(a) (requiring Peninsula Agriculture Promotional materials.) Wineries are only allowed meetings of "Agricultural Related Groups". Section 8.7.3 (10) (u)(2)(c). Requiring wineries to engage in a specific commercial message to have the ability to host guest activities is compelled speech which cannot survive any level of scrutiny.

### b. The Ordinances Violate the First Amendment by Suppressing Speech.

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980); citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976). "Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Id*. Unless the speech is misleading, the government "must assert a substantial interest to be achieved by restrictions on commercial speech." *Id*. at 564. Here, the Township cannot assert a substantial interest in precluding wineries from most forms of commercial speech. This includes entertainment, meetings of organizations other than Grand Traverse County non-profits, meetings of groups other than agriculture related groups, weddings, family reunions, entertainment and other forms of speech. In essence, the ordinances do not allow wineries to engage in any speech other than the compelled speech discussed above.

In *Schad v. Borough of Mount Ephraim,* 452 US 61 (1981) the United States Supreme Court struck down a local ordinance that prohibited all live entertainment within the municipality as violating the First Amendment. The Court noted that "[b]y excluding live entertainment throughout the Borough, the Mount Ephraim ordinance prohibits a wide range of expression that has long been held to be within the protections of the First and Fourteenth Amendments. Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee. *Id*. at 67. The municipality in that case defended its ordinance on the basis that its plan in commercial zoned areas was for limited retailers "that caters only to the 'immediate needs' of its residents and that would enable them to purchase at local stores the few items they occasionally forgot to buy outside the Borough." *Id*. at 73. Further, the municipality sought to "avoid the problems that may be associated with live entertainment, such as parking, trash, police protection, and medical facilities." *Id*. at 74. Finally, the municipality argued that live entertainment could be found elsewhere in the county and this justified the ordinance. *Id*. at 75. The Court was not persuaded by any of these justifications and determined that the absolute bar on live entertainment violated the First Amendment.

Here, if a winery wished to host a meeting of the United Way, the Special Olympics, the Boys and Girls Club the ordinance would prohibit the meeting. If a winery wished to host a religious wedding the ordinance would prohibit it. If the owner of a winery wished to have a family reunion at his/her winery the ordinance would preclude it. If a winery wished to host a religious speaker with a particular viewpoint the ordinance would prohibit it. Section 6.7.2(19)(b)(v) goes so far as to specifically prohibit certain advertising items and merchandise.[4] Section 8.7.2(13)(i) suffers the same fate in that it dictates the method, size, material and message that a remote tasting room winery can advertise. Section 8.7.2(13)(k) improperly precludes a remote tasting room winery from advertising any of its food or non-food items for sale. These prohibitions are suppressions of speech in violation of the First Amendment.

### c. The Ordinances Violate the First Amendment as a Prior Restraint.

It is well settled that "an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)). "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth*, 394 U.S. at 150–51. That is, absent definite and objective guiding standards, permit requirements present a "threat of content-based, discriminatory enforcement." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006).

The Township ordinances which require prior approval for certain activities are an impermissible prior restraint on commercial speech. A prior restraint can be established by the following four characteristics:

> (1) [T]he speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the decision maker.

*Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008). Here, there is no question that Peninsula Township officials are given too much discretion. The ordinance is essentially silent as to what constitutes entertainment, guest activities, ancillary activities and support activities. Instead, interpretation is left to the subjective discretion of the Township's Code Enforcer, David Sanger. Mr. Sanger has made clear that in his opinion, every activity that Peninsula Township wineries wish to engage in are guest activities which need his approval. Even activities that are explicitly allowed, like live music, he considers guest activities which need prior approval. Of course, this approval is also not a matter of routine but each activity is

---

[4] This section is also likely preempted by federal law as it is the federal government that dictates allowed and not allowed advertising as it relates to alcoholic beverages.

scrutinized and an opinion is made by the Township as to whether it wishes the winery to engage in the activity. This is classic prior restraint which has been deemed unconstitutional.

### d. The Township May not Condition Receipt of a Benefit Conditioned Upon Releasing a Constitutional Right.

Under the unconstitutional conditions doctrine, "a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights ...." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ....

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *See also Amelkin v. McClure*, 330 F.3d 822, 827–28 (6th Cir. 2003) (stating that "unconstitutional conditions" doctrine holds that government may not grant a benefit on condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether). Here, the Township cannot condition approval of an SUP, tasting room permit or any other similar benefit to a winery upon the winery agreeing to give up its rights under the First Amendment or the Commerce Clause.

### 4. The Ordinances are Unconstitutionally Vague.

"An ordinance is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or if it authorizes or even encourages arbitrary and discriminatory enforcement." *Gospel Missions of America*, 419 F.3d 1042, 1047 (9th Cir. 2005) (internal quotation marks and citation omitted); see also Nunez v. San Diego, 114 F.3d 935, 940 (9th Cir. 1997) ("To avoid unconstitutional vagueness, an ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner"). To be arbitrary and capricious, the ordinance must be "an arbitrary fiat, a whimsical ipse dixit, and that there is no room for a legitimate difference of opinion concerning its reasonableness." *Kropf v. Sterling Hts.*, 391 Mich. 139, 152–153 (1974).

Here, the arbitrariness of the ordinances can best be viewed in Section 8.7.3 (10) (u)(4)(a) which states that the maximum number of guests allowed at a guest activity is the less of 111 or the maximum occupancy set by the Fire Marshall. The 111 capacity number was not arrived at because of some objective criteria. Instead, 111 is the capacity of Chateau Chantal's main dining room. There is no other reason for the number. Other portions of the ordinance are equally vague and arbitrary. As discussed above, most of the terms used in the ordinance are undefined. For example, there is simply no way to determine what a Guest Activity is or is not in reading the Ordinance.

Further, under Section 8.7.2(13), to operate a remote winery tasting room, in addition to the five acre parcel need for the tasting room property, the owner must also own 150 additional acres of land in Peninsula Township with 50% of those acres in active agricultural use. This is a simply an arbitrary standard with no defensible purpose other than to act as a financial barrier to entry.

## CONCLUSION

The various winery ordinances contain some provisions which are allowed. These are general provisions for health, welfare and safety such as compliance with fire codes, setback requirements, noise abatement standards and parking standards. These are the type of general regulations allowed. However, the winery ordinances go too far and attempt to regulate every aspect of a winery business in conflict with the Michigan Liquor Control Code as well as engaging in economic protectionism in violation of the Commerce Clause. Finally, the Township's ordinance improperly violates the First Amendment in numerous ways by dictating mandatory speech, prohibiting protected commercial speech and enforcing a scheme that is a de factor prior restraint. The Township should immediately engage in discussions with interested stakeholders to draft a new ordinance which is allowed under law.

33890252.2\153698-00001