# Exhibit 6



Chicago | Denver | **Detroit** | Edwardsville | Indianapolis | Kansas City | Los Angeles | Miami | Minneapolis
New Orleans | New York | Portland | St. Louis | Seattle | Tampa Bay | Walnut Creek

August 23, 2019

**Gregory M. Meihn**
Direct Dial:  (248) 721-8183
*gmeihn@foleymansfield.com*

Mr. Joseph M. Infante
Miller, Canfield, Paddock and Stone, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, Michigan 49503
infant@millercanfield.com

Re:     **Peninsula Township Response to July 9, 2019 Wineries Opinion**

Dear Mr. Infante:

The purpose of this correspondence is to address and respond to your July 9, 2019 correspondence sent on behalf of the five wineries (2 Lads Winery, Bonobo Winery, Bowers Harbor Vineyards, Peninsula Cellars and Winery at Black Star Farms, collectively, the "Wineries") addressing the current Peninsula Township ("Township") winery ordinances and the legality of the same.  The positions taken in that correspondence are that the Township's winery ordinances are preempted by state law, engage in unconstitutional economic protectionism under the Commerce Clause and violate the First Amendment.  This opinion addresses each point made by you in your July 9, 2019 correspondence and memorandum.

As you have acknowledged, as counsel for the Township, I previously provided a legal opinion on May 30, 2019 regarding whether the Michigan Liquor Control Code ("MLCC") preempts the Township's winery ordinances in which I concluded that the MLCC *does not* generally preempt the Township zoning ordinances.  By way of reference I incorporate this prior opinion herein and maintain that while the Township seeks to work collaboratively with the Wineries in any future amendments to its ordinances, that to some extent, you have overstated the preemptive nature of the MLCC vis-à-vis the Township winery ordinances based upon the law cited therein.  The following is my legal opinion and response to yours, in which I refer to you as "counsel for the Wineries" for the sake of consistency.

**One other important item.  Some of the actions proposed by, or actually engaging in now, regarding typical restaurant type business may place them in a commercial setting.  This may push them from agricultural taxes to commercial taxes and open the door to may other issues for them that we should discuss.  Further, the issues raised in your prior letter have become known to the Grand Traverse Health Division who has been calling the Township Supervisor about their septic systems that were designed for wineries, not food service.**

Phone (248) 721-4200   Fax (248) 721-4201
130 East Nine Mile Road   Ferndale, MI  48220
www.foleymansfield.com

FOLEY & MANSFIELD

August 23, 2019
Page 2

Once you have had an opportunity to review my opinion below, please contact me so that we may discuss the next steps in what both myself and the Township hope will be an amicable and cohesive process moving forward.

However the Township will be taking prompt action at the next Board meeting regarding some of the items I mention in my opinion letter to ensure compliance.

Very truly yours,

*Gregory M. Meihn*

Gregory M. Meihn

FOLEY & MANSFIELD

August 23, 2019
Page 3

# MEMORANDUM OF LAW AND ANALYSIS

## A.    PREEMPTION ISSUES

### I.    Restaurants – MCL 436.1516(7)

Counsel for the Wineries cites MCL 436.1516(7) and concludes that "[i]n numerous places, the Township's ordinances preclude Peninsula Township wineries from operating restaurants." (See 7.19.19 Opinion, pp.1-2,). As a result, counsel for the Wineries concludes that the local ordinance is thus preempted.

**Conclusion**: **MCL 436.1516(7) does not preempt the Township's winery ordinances because it is not a valid statute and even if it were, the Township's ordinances do not prohibit wineries from operating restaurants with some permissible restrictions.**

The first issue is that MCL 436.1516(7), as cited by counsel for the Wineries, does not exist. As such, this statutory citation provides no legal basis or support for the Wineries' position.

Putting aside the flawed citation and improper legal grounds, the language cited by the Wineries (that a winery "may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises.")(See 7.19.19 Opinion, p. 1), was a part of Michigan Senate Bill 1159, which ultimately was passed in to law by the Michigan Senate as Act No. 408 of Public Acts of 2018, effective as of December 19, 2018. The properly captured resulting law is MCL 436.1536(7)(h), which states, in its entirety, as follows:

> (h)  A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer **may**[1] **own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises**. If the brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer allows another person to operate a restaurant on the manufacturing premises, the brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer must hold a participation permit naming as a participant the other person. The other person must meet the requirements for a participant in R 436.1041(3) of the Michigan Administrative Code[2].

---

[1] An item of note regarding MCL 436.1536(7)(h): the use of the term "may" is permissive, not mandatory. The statute does not require the Township to allow this nor does the State mandate that it is required under all circumstances.

[2] R. 436.1041(3) requires written application of the licensee and the issuance of a participation permit to a licensee who meets the qualifications described in subparts (a) through (e) of that administrative rule.



August 23, 2019
Page 4

With the proper law articulated, a proper preemption analysis can be conducted. However, counsel for the Wineries fails to point to any specific Township ordinance when discussing this issue. Rather, he generally concludes that this occurs in "many places in the Township's ordinances." A close examination of the Township's ordinances shows that 8.7.3(10) is generally applicable to wineries with the following intent:

> It is the intent of this section to permit construction and use of a winery, guest rooms, and single family residences as a part of a single site subject to the provisions of this ordinance. The developed site must maintain the agricultural environment, be harmonious with the character of the surrounding land and uses, and shall not create undue traffic congestion, noise, or other conflict with the surrounding properties.

Section 8.7.3(10)(a).

A detailed examination of subsections 8.7.3(10)(b) through (10)(u) show that there is no restriction on a winery's ability to have a restaurant. The only mention is where Section 8.7.3(10)(d) states that the "principal use permitted upon the site shall be a winery." Subsection (d)(1) further states that "[i]n addition to the principal and support uses, accessory uses for each such use shall be permitted provided, that all such accessory uses shall be no greater in extent than those reasonably necessary to serve the principle use." There is no explicit restriction. Moreover, subsection 10(m) states as follows:

> (m) **Accessory uses such as** facilities, meeting rooms, **and food and beverage services** shall be for registered guests only. These uses shall be located on the same site as the principle use to which they are accessory and are included on the approved Site Plan. Facilities for accessory uses shall not be greater in size or number than those reasonably required for the use of registered guests.

Section 8.7.3(10)(m).

Indeed, contrary to the Wineries' position, the Township ordinances, as currently enacted, specifically contemplate the operation of food and beverage services that would be offered at a restaurant and otherwise place no explicit restriction upon the ownership or operation of a restaurant by a winery other than including the same on a Site Plan that includes the winery, use by registered guests only and a reasonably necessity size restriction. The explicit preemption articulated by counsel for the Wineries is overstated in relation to these sections.[3]

---

[3] As counsel for the Wineries is aware, a winery constitutes a "special use" in land zoned as an Agricultural District in the Township. It is not "as a right of use" and the Township is permitted to limit the uses of the same to the extent necessary to protect the character of the area and surrounding lands. However, any interested property owner, such as the Wineries, could propose rezoning a particular parcel for C-1 Commercial status where restaurants and taverns would be permitted "as a right of use."



August 23, 2019
Page 5

Delving further into the Township ordinances, Section 8.7.3(10)(u) governs "Guest Activity Uses", i.e., those who may or may not be registered guests and permits the Township Board to approve the same. While subsection (u)(1)(a) "requires 75% of the site to be used for the active production of crops that can be used for wine production…", the ordinance, in subsection (u)(1)(c) notes that Guest Activity Uses are limited as follows: "The following Guest Activity Uses may be approved with a Special Use Permit by the Township Board:

(a) Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class.

(b) Meetings of 501- (C)(3) non-profit groups within Grand Traverse County. These activities are not intended to be or resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served.

(d) Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass.

(e) **No food service other than as allowed above or as allowed for wine tasting may be provided by the Winery-Chateau.** If wine is served, it shall only be served with food and shall be limited to Old Mission Peninsula appellation wine produced at the Winery, except as allowed by Section 6 below.[4]

Section 8.7.3(10)(u)(2).

Insofar as counsel for the Wineries concluded that Section 8.7.3(10)(u)(2)(e) is the section at issue, counsel here will address the preemption argument. The Wineries' conclude that "[b]ecause state law explicitly allows a winery to operate a restaurant, a local ordinance cannot prohibit the activity and the local ordinance is preempted." While this is a vast oversimplification of preemption principles, **this ordinance may present an issue relative to express preemption** as the recently passed MCL 436.1536 does permit wine makers to serve food or have a restaurant in conjunction with the On-Premises Tasting Room Permit.

**This section of the ordinance should be further examined and possibly revised such that it complies with MCL 436.1536. Specifically, subsection (7)(c) of that statute requires that "[t]he manufacturer or manufacturers must be approved for the on-premises tasting room permit by the local legislative body in which the proposed licensed premises will be located, except in a city having a population of 600,000[5] or more or as provided in subsection (17)[6].**

---

[4] Section 8.7.3(10)(u)(2)(c) permits uses related to meetings of Agricultural Related Groups and does not factor in to this analysis.

[5] The 2010 census for the Township was well under this threshold and notes a population of 5,433 people. The more recent 2017 census lists a population of 5,773 people.

FOLEY & MANSFIELD

August 23, 2019
Page 6

**The ability of a winery to own and operate a restaurant still requires an approval by the Township pursuant to (7)(c) and this ordinance should be revised to reflect the December 2018 amendments to the Michigan Liquor Control Code.**

> **II.   Catering – MCL 436.1547**

Counsel for the Wineries next opines that MCL 436.1547 explicitly preempts Section 8.7.3(10)(u)(5)(g) of the Township's ordinances because the former allows a winery to obtain a catering permit off premises, but the latter prohibits the same. (See 7.19.19 Opinion, p. 2). This conclusion is incorrect based upon the plain language of this statute and this ordinance.

**Conclusion**:  **Section 8.7.3(10)(u)(5)(g) is not preempted by MCL 436.1547.**

MCL 436.1547(1)(b) states as follows:

> (b) "Catering permit" means a permit issued by the commission to a specially designated distributor, specially designated merchant, or holder of a public on-premises license for the sale of beer, wine, or spirits, or any combination thereof, that is also licensed as a food service establishment or retail food establishment under the food law of 2000, 2000 PA 92, MCL 289.1101 to 289.8111, which permit authorizes the permit holder to sell and deliver beer, wine, and spirits in the original sealed container to a person for off-premises consumption but only if the sale is not by the glass or drink and the permit holder serves the beer, wine, or spirits. The permit does not allow the permit holder to deliver, but not serve, the beer, wine, or spirits.

The remainder of MCL 436.1547 speaks to requirements related to such a permit and specifically notes that a "catering permit holder who prepares food or drink for direction consumption through service on the premises or elsewhere shall comply with the requirements for food service establishments under food law…"

Conversely, the ordinance cited by counsel for the Wineries states as follows:

> (g) No amplified instrumental music is allowed, however amplified voice and recorded background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes.

Section 8.7.3(10)(u)(5)(g).

The section sited by counsel for the Wineries does not even address catering at all, let alone catering off-site. In analyzing whether a state statute's language preempts a municipal regulation, statutory construction dictates that the plain language is meant to give effect to the

---

[6] Subsection 17 mandates that "[l]ocal approval under subsection (7)(c), (8)(c), or 9(c) is not required for a tasting room that was in existence before the effective date of the amendatory act that added this section. That effective date is December 19, 2018.



August 23, 2019
Page 7

intent of the Legislature.  *People v. Ambrose*, 317 Mich App 556, 561 (2016).  "[A] statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute." *Id.* (internal quotation and citation omitted).  "Judicial construction of a statute is only appropriate 'if reasonable minds could differ regarding the statute's meaning.'" *Id.*  (citing *People v. Stone Transport, Inc.*, 241 Mich App 49, 50-51 (2000)).  As such a plain reading of the substance of the ordinance regarding amplified instrumental music shows that Section 8.7.3(10)(u)(5)(g) does not explicitly preempt MCL 436.1547 because it does permit what the statute prohibits or prohibit what the statute permits.  Nor is it more restrictive than the state statute relative to the particular issue seeking to be regulated, i.e., off-site catering for the state.

**Section 8.7.3(10)(u)(5)(g) is not preempted by MCL 436.1547.**

In the interest of performing a comprehensive evaluation of the Township's ordinances, an issue *may* arise in this context with an ordinance not cited by counsel for the Wineries, namely, Section 8.7.3(10)(u)(5)(i).  The ordinance states that "[k]itchen facilities may be used for on-site food service related to Guest Activity Uses but not for off site catering."  A potential problem may arise here where a winery has been issued an off-site catering permit under MCL 436.1547(2) and is otherwise restricted from using its kitchen to prepare food for the same.  While this does not present an issue of preemption, the practical problems involved make this an issue worth addressing in the potential re-write of the Township's ordinances.

**As to Section 8.7.3(10)(u)(5)(i), alternative ordinances should be explored to ensure fully compliance with MCL 436.1547 for a winery properly licensed and permitted to engage in off-site catering under that state statute.**

    **III.**    <u>**Music and Other Entertainment**</u>

The next preemption issue addressed by counsel for the Wineries relates to the regulation of music, live bands and other forms of entertainment which requires a permit under the current Township ordinances.  Counsel opines that this concept (again not citing any specific ordinance) conflicts with MCL 436.1916(11).

**<u>Conclusion</u>**:  **MCL 436.1916(11) does not preempt the Township ordinances as both permit music and local authority is recognized by that state law.  The Township's restriction on amplified music should be considered for potential revision.**

In reaching his conclusion, counsel for the Wineries relies exclusively upon *Sherman Bowling Center v. City of Roosevelt Park¸*154 Mich App 576 (1986)(which counsel incorrectly and improperly cites as a Michigan Supreme Court case).  Moreover, counsel for the Wineries makes the heavy-handed conclusion that the Township counsel's prior opinion regarding general preemption of the ordinances by the MLCC did not sufficiently "delve into the specific ordinance provision…" and "ignores several cases...where local ordinances related to alcohol



August 23, 2019
Page 8

were deemed preempted as directly conflicting with state law." (See 7.19.19 Opinion, p. 1, fn. 1). However, it is counsel for the Wineries that has erred in this regard.

*Sherman Bowling* was decided in January of 1987. While counsel concludes that in *Sherman Bowling* a "similar restriction was preempted by state law", this has since been clarified and the overgeneralized statement has been addressed at least twice in two subsequent cases addressed below. In that matter, the Court of Appeals found that a state law preempted the local ordinance of the City of Roosevelt Park where it attempted to regulate alcoholic beverage traffic and "no state statute authorizes the city to control alcoholic beverage traffic in the manner which is attempted in this ordinance." *Id.* at 582. Moreover, the Court noted that state law expressly provided that "MLCC is to have exclusive authority to regulate the alcoholic beverage traffic in the manner which is attempted in this ordinance." *Id.* The Court recognized that this was not a blanket preemption of local ordinances by the MLCC. *Id.* at 584.

Michigan Courts have since clarified their opinion in *Sherman Bowling*. In *Jott v. Clinton Township*, 224 Mich App 513 (1997) the Court examined a local ordinance that attempted to prohibit public nudity in establishments that serve liquor and the plaintiff argued that because the MLCC was granted the exclusive authority to regulate liquor and this related to the same, the ordinance should have been preempted. The Court disagreed because the ordinance did not prohibit all public nudity and reasoned as follows:

> The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor control commission as to those matters wherein the commission is given exclusive powers by the legislature.

*Id.* at 541, citing *Johnson v. Liquor Control Comm.*, 266 Mich. 682, 685, 254 N.W. 557 (1934).

In accordance with *Jott* and the general principles in *Johnson*, there is no preemption issue. First, the ordinance does not attempt to prohibit all types of music or entertainment, but rather, merely places restrictions on the amplified nature of the same. Second, there is no provision of the MLCC cited by counsel for the Wineries or otherwise, that would grant exclusive powers to the liquor control commission to regulate music and entertainment in the Township. To argue to the contrary is untenable.

More recently still, in *Maple BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich App 505 (2013), a Michigan Court determined that the MLCC does not preempt every local ordinance tangentially related to the sale of alcoholic beverages. In doing so, the Court concluded that this was distinguishable from *Sherman Bowling Ctr.* (as relied upon by the Wineries) because it did not involve a *"zoning* ordinance and the Court in that case could not locate authority by which the state recognized local control of the area in question." *Id.* at 512. The Court reasoned as follows:



August 23, 2019
Page 9

> In contrast, this Court in *Jott, Inc. v. Charter Twp.*, did consider whether the liquor control provisions of the Michigan Administrative Code preempted a local zoning ordinance. **In *Jott*, this Court concluded that the Legislature did not intend to preempt the field of liquor control**. We reasoned that "it has long been recognized that local communities possess 'extremely broad' powers to regulate alcoholic beverage traffic within their bounds through the exercise of their general police powers, subject to the authority of the [Commission] where a conflict arises." In the context of that zoning regulation, we noted that **the Commission explicitly recognized local authority in the area prohibited by the local regulation**, which supported our conclusion that the Legislature did not intend preemption in that context.
>
> **We conclude that the Commission's decision to recognize local zoning authority indicates that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales. Thus, we conclude that the state has not expressly provided that its authority to regulate the filed of liquor control is exclusive**.

*Id.* at 513.

As noted, in reaching the conclusion that the Township's winery ordinances are preempted, counsel for the Wineries relies upon MCL 436.1916(11), which states the following activities are allowed without the granting of a permit under the state statute:

(a) the performance or playing of an orchestra, piano, or other types of musical instruments, or singing.

(b) any publicly broadcast television transmission from a federally licensed station.

In contrast, the only portion of the Township ordinances that addresses music, in any fashion, is the previously mentioned Section 8.7.3(10)(u)(5)(g). This Section addresses merely "amplified instrumental music" (while permitting "amplified voice and recorded background music"). Consistent with Michigan courts' holdings in *Jott* and *Maple BPA, Inc.*, simply because the ordinances speak to amplified music and the state statute also addresses music does not mean that the Legislature expressly intended the MLCC to control this area. The only restriction made by the Township ordinances relates to amplified instrumental music. The state statute does not regulate this, but rather merely the performance or playing of such music. There is no express preemption.

Moreover, the December 2018 amendments to the MLCC, just as in *Maple BPA, Inc.* specifically contemplate compliance with local zoning and ordinances as follows:

- Where the wine maker is manufacturing, no local approval is necessary for Commission licensure, but the licensee must comply with local zoning and ordinances;

August 23, 2019
Page 10

- Where there are retail sales, approval is required from the legislature body of the local governmental unit where the On-Premises Tasting Room Permit will be located;

- Both Off-Premises On-Premises Tasting Room Permit may be approved for an Entertainment Permit and Extended Hours Permit.

In sum, the amendments upon which are relied by counsel for Wineries demonstrate that local control is contemplated by Act No. 408 of Public Acts of 2018.  **In this instance, there is no preemption by state law as both permit music and local authority is not only permitted by state law, but recognized by the very statute that is claimed to preempt.  However, the restriction on amplified music should be revisited in terms of potential revision to more completely identify the impact that sound pressure levels have on adjacent property and local rural character of the Township's lands.**

### IV.     Hours of Service

The final preemption issue raised by counsel for the wineries regarding preemption is the Township's apparent requirement that wineries cease all activities at 9:30 p.m.

**Conclusion**:  **This ordinance should be revised as it is more restrictive than MCL 436.1403 and the Township ordinance fixes hours shorter than that specified in the state statute.**

While counsel for the Wineries again does not point to a specific ordinance, it is presumed that the following is that to which he refers at it is the only one that addresses this issue:

(b)  Hours of operation for Guest Activity Uses shall be as determined by the Town Board, but no later than 9:30 PM daily.

Section 8.7.3(10)(u)(5)(b).

In an effort to streamline this analysis, the analysis noted above this Opinion relies upon the preemption law and arguments made both in the May 30, 2019 and above.  The Wineries rely upon *R.S.W.W. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir.2005).  The conclusion reached by counsel for the Wineries is generally correct.  The Court's reasoning is persuasive:

In this case, however, Rule 436.1403 of the Michigan Administrative Code provides that "an on-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day …." Mich. Admin. Code r. 436.1403(1).  On its face, the rule does not grant licensees a right to remain open *until* 2:00 a.m. but merely provides that licensees cannot sell liquor *after* 2:00 a.m.  Nevertheless, in *Noey v. City of Saginaw*, 271 Mich. 595, 261 N.W. 88 (1935), the Supreme Court of Michigan determined that a Michigan city ordinance cannot fix closing hours to a period shorter than that specified in the state rule.  Thus, in this matter, in contrast to *Med. Corp.*, there is a written

Case 1:20-cv-01008-PLM-RSK    ECF No. 1-6 filed 10/21/20    PageID.255    Page 12 of 20



August 23, 2019
Page 11

> regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit.

*Id.*, 397 F.3d at 435-436.

**Different from the ordinance regarding music and entertainment above (for which there are permit procedures and allowance of the same under both state and Township law), this instance demonstrates the specific property interest is contemplated by the MLCC and as such, the ordinance should be amended to comply with that interest**.


**B.      COMMERCE CLAUSE ISSUES**

The next general area for which the Wineries challenge the current Township winery ordinances relates to the Commerce Clause. In doing so, counsel for the Wineries relies primarily upon a Second Circuit federal court case in *Lorretto Winery Ltd. v. Duffy*, 761 F.2d 140 (2d Cir. 1985). (See 7.19.19 Opinion, pp. 2, 5-6).

**Conclusion**:  **The Township's ordinances discussed below have some issues relative to Commerce Clause principles that require further information regarding the impact out-of-state competitive interests of the Wineries. A close examination of these ordinances is necessary for potential revisions.**

A brief background of Commerce Clause principles is necessary to fully evaluate these claims.

The test for determining whether a regulation violates the dormant Commerce Clause doctrine involves a two-step analysis. The first inquiry is whether the challenged statute or ordinance facially discriminates against interstate commerce. *C&A Carbone, Inc. v. Clarkston, New York*, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345; *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 185 (C.A. 1, 1999); *Westlake Transportation,* 255 Mich App at 619, 662 N.W.2d 784. "In other words, the inquiry concerns whether the statue or ordinance evinces 'a discriminatory purpose or merely a discriminatory effect.'" *Nat'l Solid Waste Mgt. Ass'n v. Pine Belt Regional Solid Waste Mgt. Auth.*, 389 F.3d 491, 497 (C.A. 5, 2004). "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345. A statute or ordinance that discriminates on its face against interstate commerce and in favor of local business is virtually invalid per se. *Wheeler v. Charter Tp. of Shelby*, 265 Mich App 657, 697 N.W.2d 180 (2005), citing *C&A Carbone¸*511 U.S. at 392, 114 S.Ct. 1677; *Pine Belt*, 389 F.3d at 497. "The statute or ordinance will be unconstitutional unless the state governmental body can show, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.*

"If the statute or ordinance does not discriminate against interstate interests on its face, a balance testing must be performed to determine whether the statute or ordinance 'merely regulates

**FOLEY & MANSFIELD**

August 23, 2019
Page 12

evenhandedly with only incidental effects upon interstate commerce.'" *Wheeler*, *supra* at 669; citing *Westlake Transportation*, 255 Mich App at 619, 662 N.W.2d 784 (citing *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345). "The statute or ordinance will be upheld under this balancing test 'unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefit.'" *Id.*, citing *Pine Belt*, 389 F.3d at 497 (citations omitted).

In reference to the Township's ordinances, counsel for the Wineries points to six sections that he claims violate the Commerce Clause principles. Each is addressed in turn below:

1. **Section 8.7.3(10)(u)(2)(b)** – "Meetings of 501 – (C)(3) non-profit groups within Grand Traverse County."

The Wineries claim that this prohibits non-Grand Traverse County non-profit groups from holding meetings at the winery. While this is not addressed by the stated intent of the ordinance, it begs the question of the impact on interstate commerce. If there is none, then this section does not violate the Commerce. (See, e.g., *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 185 (C.A. 1, 1999) in which the Court held that an ordinance allowing the grant of an exclusive waste collection and disposal contract to a local waste hauler and processor did not violate the Commerce Clause so long as all bidders were allowed to compete freely). While this ordinance is not necessarily improper on its face, it should be amended as necessary to ensure equal competition of out-of-county non-profits.

2. **Section 8.7.3(10)(u)(2)(c)** – "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production..."

Nothing in this ordinance states that "no other groups can hold meetings" as argued by the Wineries. Rather, it restricts "Guest Activity Uses" under Section 8.7.3(10)(u)(2). Again, the stated intent of these ordinances does not address this, but this section should be amended for clarity regarding other groups' ability to holding meetings at these wineries.

3. **Section 8.7.3(10)(u)(2)(e)** – "If wine is served, it shall…be limited to Old Mission Peninsula appellation wine produced at the Winery…"[7]

This restriction violates the Commerce Clause unless the Township can demonstrate that it has no impact on out-of-state interests and that the Township has no other reasonable means in which to advance its local interest of wine sales.

---

[7] The only exception to this ordinance is articulated in Section 8.7.3(10)(u)(6), which states, "If crop conditions or a natural disaster result in a shortage of locally-grown fruit for a particular year; the Township Board may reduce the requirement for the amount of grapes for that particular year, provided that verification of such conditions are presented to the Township Board by a public organization representing the fruit growers of northwest Michigan that is duly recognized by the Township Board." Accordingly, the exception does not include or permit out-of-state wine to be served in this context.



August 23, 2019
Page 13

4. **Section 8.7.3(10(u)(3)** – "In order to offer Guest Activity Uses, the owner…shall…grow in Peninsula Township or purchase grapes grown in Peninsula Township for the previous growing season equal to 1.25 tons of grapes for each person allowed to participate in Guest Activity Uses…"

This restriction violates the Commerce Clause unless the Township can demonstrate that it has no impact on out-of-state interests and that the Township has no other reasonable means in which to advance its local interest of wine sales. The question is whether this ordinance excludes out-of-state wine, and amending the same may be a measure to avoid future issues.

5. **Section 8.7.3(10)(u)(5)(a)** – "All Guest Use Activity Uses shall include Agricultural Production Promotion as part of the activity…"

This section does not violate the Commerce Clause. The free speech issues contemplated by the Wineries are addressed below. However, while the Wineries presume that they are "precluded from advertising other agricultural products" (See 7.19.19 Opinion, p. 6), that presumption is incorrect. There is no exclusion on such advertising and as such, there is no violation.

6. **Section 6.7.2(19)(b)** – "Grape wine that is processed, tasted and sold in a Farm Processing Facility…is limited to 'Old Mission Peninsula' appellation wine meaning 85% of the juice will be from fruit grown on Old Mission Peninsula."

The potential problem with this ordinance is that it limits the Wineries' ability to use any out-of-state grapes and is, arguably, a restriction on interstate commerce. However, note that "[t]he party challenging the constitutionality of a statute or ordinance under the Commerce Clause bears the burden of establishing the unconstitutionality of the legislative act." *USA Recycling*, 66 F.3d 1272, 1281-281 (1995). Thus the question becomes what the detriment is to out-of-state competitors and whether these Wineries have standing to challenge this issue.

**There are issues with the Commerce Clause that should be considered in the future revisions to the Township's winery ordinances. These issues are not as clear cut as counsel for the Wineries believes, but in collaborating for the revisions moving forward, these items should be carefully considered and addressed.**

### C.     FIRST AMENDMENT ISSUES

Next, the Wineries argue that the Township's ordinances violate multiple facets of the First Amendment to the U.S. Constitution as they compel and suppress certain speech and constitute a prior restraint upon the same. Counsel for the Township addresses each in turn herein.

VI.     **Compelled and Suppressed Speech**



August 23, 2019
Page 14

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

**Conclusion**: **The Township's ordinances, in order to comply with First Amendment protections, should not provide a general restriction relative to promotional materials, advertising, but should be tailored to reasonably accomplish the interests the Township is trying to advance with respect to its interests in the Wineries' operations.**

A restriction on protected commercial speech is reviewed under a four-prong test:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. [*Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), citing *Central Hudson Gas & Electric Corp.*, 447 U.S. at 563-566.].

The intent of the Township's winery ordinances are as follows:

> (a)  It is the intent of this section to permit construction and use of a winery, guest rooms, and single family residences as a part of a single site subject to the provisions of this ordinance. The developed site must maintain the agricultural environment, be harmonious with the character of the surrounding land and uses, and shall not create undue traffic congestion, noise, or other conflict with the surrounding properties.

Section 8.7.3(10)(a).

*Speech Compelled*

First, counsel for the Wineries claims that Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) violate the First Amendment by requiring the wineries in the Township to provide promotional brochures, maps and related promotional materials as a part of their operation. (See 7.19.19 Opinion, pp. 7-8).

**Conclusion**: **The asserted violation of the First Amendment is not present.**

In *Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997), the U.S. Supreme Court held that marketing orders applicable to California fruit producers requiring them to pay for and use generic California-focused advertising as a part of their operation did not violate the First Amendment as compelled speech. The Supreme Court reasoned as follows:



August 23, 2019
Page 15

> Here, however, requiring respondents to pay the assessments cannot be said to engender any crisis of conscience. **None of the advertising in this record promotes any particular message other than encouraging consumers to buy California tree fruit. Neither the fact that respondents may prefer to foster that message independently in order to promote and distinguish their own products**, nor the fact that they think more or less money should be spent fostering it, makes this case comparable to those in which an objection rested on political or ideological disagreement with the content of the message.

*Id.* at 472.

> We are not persuaded that any greater weight should be given to the fact that some producers do not wish to foster generic advertising than to the fact that many of them may well object to the marketing orders themselves because they might earn more money in an unregulated market. **Respondents' criticism of generic advertising provide no basis for concluding that factually accurate advertising constitutes an abridgment of anybody's right to speak freely.** Similar criticisms might be directed at other feature of the regulatory orders that impose restraints on competition that arguable disadvantage particular producers for the benefit of the entire market. Although one may indeed question the wisdom of such a program, its debatable features are insufficient to warrant special First Amendment scrutiny.

*Id.* at 474.

**Similar to the United States Supreme Court's holding in *Glickman*, there is no restriction on the Wineries' ability to promote their own products and, more significantly, the generic Township advertising and promotional materials do not promote any particular message other than encouraging consumers to buy Township wine.**

*Speech Suppression*

Next, counsel for the Wineries argues that the Township's ordinances also violate the First Amendment by suppressing certain types of speech, including prohibiting certain merchandise and advertising, dictating methods, size, material and message for advertising and precludes advertisements of the Wineries' own food or non-food items. (See 7.19.19 Opinion, pp. 8-9).

**Conclusion**: **Constitutionally, the Township's ordinances have issues in this regard and the same need to be addressed in the proposed revisions to the same, as specifically stated below.**

The first section cited by the Wineries is Section 6.7.2(19)(b)(v), which states that logo merchandise may be sold provided:

1. The logo merchandise is directly related to the consumption and use of the fresh and/or processed agricultural produce sold at retail;

FOLEY & MANSFIELD

August 23, 2019
Page 16

2. The logo is prominently displayed and permanently affixed to the merchandise;
3. Specifically allowed are:  a) gift boxes/packaging containing the approved products for the specific farm operation; b) Wine Glasses; c) Corkscrews; d) Cherry Pitter; and e) Apple Peeler; and
4. Specifically not allowed are unrelated ancillary merchandise such as:  a) Clothing; b) Coffee Cups; c) Bumper Stickers.

**This Section should be revised as it is, under First Amendment standards, an invalid suppression of the Wineries' First Amendment rights.**

The second section cited by the Wineries is Section 8.7.3(12)(i), which states:

(i)   Retail sale of non-food items which promote the winery or Peninsula agriculture and has the logo of the winery permanently affixed to the item by silk screening, embroidery, monogramming, decals or other means of permanence.  Such logo shall be at least twice as large as any other advertising on the item.  No generic or non-logo items may be sold.  Promotional items allowed may include corkscrews, wine glasses, gift boxes, t-shirt, bumper stickers, etc.

The final section cited by the Wineries is Section 8.7.3(12)(k), which mandates:

(k)   Signs and other advertising may not promote, list or in any way identify any of the food or non-food items allowed for sale in the tasting room.

**These ordinances should also be revised as they would most likely be viewed as constitutionally invalid suppression of First Amendment rights.**

  **VII. Prior Restraint/Vagueness**

Finally, the Wineries argue that the Township's "winery ordinances are improperly vague in that they do not set explicit criteria as to what activities are allows [sic] and not allowed."  (See 7.19.19 Opinion, p. 3).  The Wineries' counsel cites Ninth Circuit case law and summarily concludes that the current state of the ordinances "has resulted in a regulatory scheme where interpretation and enforcement of the ordinances are left to the subject interpretation of Township officials."  (See 7.19.19 Opinion, p. 3).  The Wineries argue that this is unconstitutional and the official discretion given to the Township constitutes a prior restraint under the First Amendment.

**Conclusion**: **The ordinances cited by counsel for the Wineries do not constitute prior restraints nor are they unconstitutionally vague under standards set forth by the U.S. Supreme Court and the Sixth Circuit.  Regardless, clarification of some of the ordinances pointed out by the Wineries is warranted.**

*Prior Restraints*

August 23, 2019
Page 17

First, note that "[s]tatutes and ordinances are presumed to be constitutional and the burden of proving otherwise rests with the challenger." *Van Buren Tp. v. Garter Belt, Inc.*, 258 Mich App 594, 610, 673 N.W.2d 111 (2003), citing *Gora v. Ferndale*, 456 Mich. 704, 711-712, 576 N.W.2d 141 (1998); *People v. Boomer*, 250 Mich App 534, 538, 655 N.W.2d 255 (2002). Further, a statute or ordinances is construed "…as constitutional unless it unconstitutionality is clearly apparent." *Id.* citing *Owosso v. Pouillon*, 254 Mich App 210, 213, 657 N.W.2d 538 (2002); *People v. Barton*, 253 Mich App 601, 603, 659 N.W.2d 654 (2002).

Next, the term "prior restraint" is used to describe an administrative or judicial order that forbids certain communications in advance of the time that the communications are to occur. *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993). "Temporary restraining orders and permanent injunctions, which actually forbid speech activities, are classic examples of prior restraints." *Id.* Ordinances that are content-neutral and do not place the entirety of control within city officials' discretion are not prior restraints. (See, e.g., *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (2001) in which an ordinance regulating the decibels of music played at a concert venue did not burden the content of protected speech or permit unfettered official discretion).

**The Township's ordinances do not amount to prior restraints. Contrary to the Wineries' Opinion, the Township's Code Enforcement does not have unfettered discretion over their activities nor do the ordinances proscribe this.**

*Vagueness of Ordinances*

The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298 (1972):

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply the. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. (footnotes omitted).

*Id.*, cited by *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (in which the United States Supreme Court reversed a ruling that an ordinance regulating the sale of paraphernalia "designed for use" in connection with drugs was not unconstitutionally vague even where the language of the ordinance contained ambiguities in the guidelines and concerns of insufficient standard for enforcement). In reviewing a business regulation for vagueness, "the principal inquiry is whether the law affords



August 23, 2019
Page 18

for warning of what is proscribed." *Id.* at 503. "Moreover, this emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law." *Id.* Where there is no evidence as to "whether the ordinance has been enforced in a discriminatory manner…" it is not unconstitutionally vague. "…[T]he speculative danger of arbitrary enforcements does not render the ordinance void for vagueness." *Id.*, Cf. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171, 92 S.Ct. 839, 846-848, 31 L.Ed.2d 110 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

In arguing the Township's ordinances are unconstitutionally vague, counsel for the Wineries offers two examples:

- Section 8.7.3(10)(u)(4)(a) – "The Township Board as part of the Special Use Permit approval process shall determine the room(s) provided and a maximum number of attendees for Guest Activity Uses."

    - **This section is arguably not unconstitutionally vague**. In accordance with Sixth Circuit and Michigan case law, there is no evidence that this section has been enforced in a discriminatory manager and the Wineries are put on notice of exactly what is proscribed and how it is determined by the Township. The guidelines in subsections (4)(a)(i) through (4)(a)(iii) are clear.

- Section 8.7.2 – Special Uses that May be Permitted: "PROVIDED that requirements specified in Section 8.1 and applicable specified conditions…can be complied with." (Subsection (13) lists Remote Winery Tasting Rooms as a permissible special use).

    - **This section is arguably not unconstitutionally vague**. Again, the standards under which this ordinance could be enforced are clear to those subject to it and fully informs those of what is proscribed. Speculative danger of arbitrary enforcement does not preemptively render this section unconstitutionally vague.

**Overall, the Township's ordinances need to be fine-tuned to ensure that they do not run afoul of any of the constitutional protections afford by the First Amendment and the United States Constitution.**

### D.     CONCLUSION

This opinion attempts to address all of the various concerns pointed out by the counsel for the Wineries in his July 19, 2019 Opinion. While the instant Opinion does address these concerns, many of the conclusions reached are questions that may necessarily require adjudication if they are not addressed in the potential revision to the Township's winery ordinances. From that perspective, it is in the best interest of the Township to work collaboratively and cohesively with the Wineries to establish a set of clear ordinances that will both protect the Township's interests in promoting the success of these businesses and permit the Wineries to advance their own business interests as well.

FOLEY & MANSFIELD

August 23, 2019
Page 19