# Exhibit 7

# PENINSULA TOWNSHIP ZONING ORDINANCE

Grand Traverse County, Michigan

## Draft 9/21/2020



# Table of Contents

Article 1    Title, Purpose, and Scope ................................................................................. 1-1

    Section 1.01    Preamble (currently Preamble and Introductory Paragraph) ....................... 1-1

    Section 1.02    Short Title (currently Article 1) ............................................................... 1-1

    Section 1.03    Purpose (currently Section 2.1) ................................................................ 1-1

    Section 1.04    Scope (currently Section 2.2) ................................................................... 1-1

    Section 1.05    Conflicting Regulations (currently Section 4.2.2) ...................................... 1-1

    Section 1.06    Severability (currently Article 10) ........................................................... 1-2

    Section 1.07    Effective Date (currently Article 12) ........................................................ 1-2

Article 2    Definitions ....................................................................................................... 2-1

    Section 2.01    Rules Applying to the Text (currently Section 3.1) ...................................... 2-1

    Section 2.02    Definitions (currently Section 3.2) ........................................................... 2-1

Article 3    Zoning Districts and Map ................................................................................. 3-1

    Section 3.01    Districts Established (currently Section 6.1.1) ............................................ 3-1

    Section 3.02    Zoning Districts Map (currently Section 6.1.2) .......................................... 3-1

    Section 3.03    Interpretation of District Boundaries (currently Section 6.1.3) .................... 3-1

    Section 3.04    Scope of Regulations (currently Section 6.1.4(1)) ...................................... 3-2

    Section 3.05    Categories within Zoning Districts (currently Section 6.1.5 and Section 8.7.2) .......... 3-2

    Section 3.06    Permitted Uses by District (NEW Table of Land Uses, which includes applicable parts of Sections 6.2 – 6.7) ................................................................................ 3-3

    Section 3.07    A-1, Agricultural District (currently Section 6.7) ....................................... 3-5

    Section 3.08    R-1A, Rural and Hillside Residential District (currently Section 6.2) ............. 3-6

    Section 3.09    R-1B, Coastal Zone Residential District (currently Section 6.3) .................... 3-7

    Section 3.10    R-1C, Suburban Residential Development District (currently Section 6.4) ................. 3-8

    Section 3.11    R-1D, Community Residential District (currently Section 6.5)...................... 3-9

    Section 3.12    C-1, Commercial District (currently Section 6.6) ....................................... 3-10

    Section 3.13    Great Lakes Shoreline Regulations (Currently Sections 6.2 and 7.4) .......... 3-11

    Section 3.14    Airport Overlay Zone District (currently Section 7.9)................................. 3-19

    Section 3.15    Reserved Residential Dwelling Sites within Conservation Easement-Restricted Farmland (currently Section 6.7.5)........................................................... 3-20

Article 4    Schedule of Regulations.................................................................................. 4-1

    Section 4.01    Statement of Purpose (NEW SECTION)..................................................... 4-1

    Section 4.02    Schedule of Regulations (Currently Section 6.8) ....................................... 4-1

    Section 4.03    Footnotes (Currently Section 6.8.1) ......................................................... 4-2

Article 5    Optional Residential Development Standards.................................................... 5-1

    Section 5.01    Planned Unit Developments (currently Section 8.3, Section 7.2.6, and Section 6.5A) 5-1

    Section 5.02    Site Condominiums (Currently Section 6.9)............................................... 5-6

Article 6    Standards Applicable to Specific Uses ............................................................. 6-1

Section 6.01    Adult Foster Care Facilities .................................................................... 6-1
Section 6.02    Barn Storage (currently Section 6.7.2(18)) ........................................... 6-1
Section 6.03    Bed and Breakfasts (currently Section 8.7.3(6)) ................................... 6-2
Section 6.04    Child Care Centers (NEW SECTION) ....................................................... 6-3
Section 6.05    Child Care, Family Home (6 or Fewer Children) (NEW SECTION)................ 6-4
Section 6.06    Child Care, Group Home (Between 7–12 Children) (currently Section 6.2.2(7)) ......... 6-4
Section 6.07    Dwelling, Multiple Family (NEW SECTION) ............................................. 6-5
Section 6.08    Dwelling, Secondary (currently Section 6.2.2(2)(b)) ............................. 6-6
Section 6.09    Farm Processing Facilities ...................................................................... 6-6
Section 6.10    Food Processing Plants (currently 8.5) .................................................. 6-6
Section 6.11    Gas Stations (currently Section 8.8) ...................................................... 6-6
Section 6.12    General Farming and Horticultural Uses (currently Section 6.2.2(6)) ......... 6-7
Section 6.13    Greenhouses and Nurseries (Retail Sales) (NEW SECTION) .................. 6-7
Section 6.14    Home Occupation (currently Section 6.2.3(2)) ...................................... 6-8
Section 6.15    Hotels and Motels (currently 8.10) ....................................................... 6-9
Section 6.16    Indoor Recreation (NEW SECTION) ...................................................... 6-11
Section 6.17    Institutional Structures and Uses (currently Section 8.6) ................... 6-11
Section 6.18    Junkyards (NEW SECTION) .................................................................. 6-12
Section 6.19    Keeping of Domestic Pets (currently Section 6.2.2(5)) ........................ 6-12
Section 6.20    Kennels (NEW SECTION)...................................................................... 6-12
Section 6.21    Marinas (currently Section 8.7.3(5)) .................................................... 6-13
Section 6.22    Mobile Homes (On Individual Lots: currently Section 6.7.2(3); In Residential Districts;
(currently 8.9)  6-13
Section 6.23    Mobile Home Parks (currently Section 8.2 and Section 7.2.6) ................... 6-14
Section 6.24    Public Areas (Parks, Recreation, and Conservation Areas) (currently Section 6.7.2(13))
6-16
Section 6.25    Recreational Unit Parks (currently Section 8.4) ................................... 6-17
Section 6.26    Rental of Non-Owner Occupied Dwellings for 30 Days or More (currently Section
6.2.2(2) (e))    6-20
Section 6.27    Roadside Stands (currently Section 6.7.2(8)) ...................................... 6-20
Section 6.28    Self-Service Storage Facilities (currently Section 6.6.5) ...................... 6-20
Section 6.29    Sewage Treatment and Disposal Installations (currently Section 8.7.3(2))........ 6-21
Section 6.30    Solar Energy Systems(NEW SECTION) .................................................. 6-21
Section 6.31    Tenant Houses (currently Section 6.7.2(12)) ....................................... 6-22
Section 6.32    Warehousing and Light Industrial (currently Section 8.7.3(7)) .................... 6-22
Section 6.33    Wind Energy Conversion Systems (WECS) (currently Section 8.7.3(8)) ........ 6-23
Section 6.34    Winery/Farm Processing Facilities (currently Section 6.7.2(19)) ............... 6-25
Section 6.35    Wineries, Remote Tasting Rooms (currently Section 8.7.3(12)) ............. 6-29
Section 6.36    Winery-Chateaus (currently Section 8.7.3(10)) ................................... 6-30
Section 6.37    Wireless Communication Facilities (currently Sections 7.12 and 8.7.3(11)) ........ 6-35
Article 7       General Provisions............................................................................... 7-1

iv

Section 7.01    Essential Services (currently Section 5.8)...................................................... 7-1

Section 7.02    Recreational Vehicles Storage (currently Section 6.2.2(4)) ........................... 7-1

Section 7.03    Temporary Buildings (currently Section 6.2.3(1)) .......................................... 7-1

Section 7.04    Use of Structure for Temporary Dwellings Prohibited (currently Section 7.2.1) ......... 7-1

Section 7.05    Storage Outdoors (currently Sections 6.6.3(1) and 7.2.4) ............................. 7-1

Section 7.06    Sanitation Requirements (currently Section 7.1.2) ........................................ 7-2

Section 7.07    Supplementary Regulations for Height, Lot Area, and Lot Width (currently Sections 7.3.1, 7.3.2, and part of 7.3.4) ........................................................................ 7-2

Section 7.08    Developments Abutting Agricultural Land (currently Section 7.3.3, Section 7.7, and Section 7.2.7) ........................................................................ 7-2

Section 7.09    Clear Vision Areas (NEW SECTION) ............................................................. 7-4

Section 7.10    Accessory Buildings and Structures (currently Section 6.2.2(2)(a)) .............. 7-5

Section 7.11    Fences and Walls, Including Retaining Walls (currently Sec. 7.13) ............... 7-6

Section 7.12    Swimming Pools (NEW SECTION) ................................................................ 7-7

Article 8       Environmental Performance Standards................................................................ 8-1

Section 8.01    Wetland Restrictions (currently part of Section 6.9.3.7) .............................. 8-1

Section 8.02    Floodplain Controls and Restrictions (currently Section 7.4.7 and part of Section 6.9.3.7) ........................................................................ 8-1

Section 8.03    Mining or Removal of Topsoil, Sand, Gravel, and Minerals (currently Section 7.2.3) . 8-2

Section 8.04    Soil Erosion and Sedimentation Control and Protection of Steep Slopes (currently Section 6.9.3.9) ........................................................................ 8-3

Section 8.05    Stormwater Management (currently Section 7.2.5)....................................... 8-4

Section 8.06    Removal of Fruit-Producing Trees, Vines, or Shrubs from Properties under Development (currently Section 7.8 and part of Section 6.9.3.8) ........................... 8-6

Section 8.07    Exterior Lighting (currently Section 7.14) .................................................... 8-6

Section 8.08    Screening and Landscaping.......................................................................... 8-9

Article 9       Parking, Loading, Access Management, and Private Roads.................................... 9-1

Section 9.01    General Off-Street Parking and Loading Regulations (currently Section 6.10, Section 7.6.1, and Section 7.6.2) ........................................................................ 9-1

Section 9.02    Parking Space Requirements (currently Section 7.6.3)................................. 9-1

Section 9.03    Off-Street Parking Site Development Requirements (currently Section 7.6.4(1) and (2)) 9-3

Section 9.04    Off-Street Loading and Unloading................................................................ 9-4

Section 9.05    Snow Storage (currently Section 7.6.4(4)) ................................................... 9-4

Section 9.06    Driveway Requirements (currently Section 6.2.5) ........................................ 9-4

Section 9.07    Private Roads (currently Section 7.10) ........................................................ 9-6

Article 10      Signs ...................................................................................................................... 10-1

Section 10.01   Purpose (currently introductory paragraph of Section 7.11) ...................... 10-1

Section 10.02   Definitions (NEW SECTION, which includes existing definitions in Section 3.2 related to signs) ........................................................................ 10-1

Section 10.03   Substitution Clause (NEW SECTION) ......................................................... 10-4

Section 10.04   Measurement of Sign Area and Height (currently part of Section 7.11.1)................ 10-4

Section 10.05   Sign Placement and Design Requirements (currently part of Section 7.11.1) .......... 10-4

Section 10.06      Prohibited Signs (currently Section 7.11.2 and parts of Section 7.11.1) ................... 10-5

Section 10.07      Signs Permitted in All Districts (currently Section 7.11.3) ......................................... 10-6

Section 10.08      Sign Regulations for Specific Zoning Districts (currently Sections 7.11.4 – 7.11.6, including part of Table 7.11.6) ................................................................................................... 10-8

Section 10.09      Billboards (Permanent Off-Premise Commercial Advertising Signs) (current Section 7.11.1(6), 7.11.1(20), and 7.11.2(12)) ............................................................................... 10-9

Section 10.10      Illumination Standards (currently part of Section 7.14.3(5) and part of Section 7.11.1) 10-9

Section 10.11      Nonconforming Signs (NEW SECTION) ....................................................................... 10-10

Section 10.12      Appeals and Variances (currently part of Table 7.11.6) ........................................... 10-11

Article 11      Nonconformities .................................................................................................................. 11-1

Section 11.01      Intent and Purpose (currently Section 7.5.1) ............................................................. 11-1

Section 11.02      Definition of "Effective Date" (NEW SECTION) ........................................................... 11-1

Section 11.03      Nonconforming Parcels (NEW SECTION) ................................................................... 11-1

Section 11.04      Nonconforming Uses (currently part of Section 7.5.1 and Section 7.5.2) ................. 11-1

Section 11.05      Nonconforming Structures (currently Sections 7.5.3 – 7.5.6) ................................... 11-2

Section 11.06      Zoning District Changes (currently Section 7.5.7) ..................................................... 11-2

Article 12      Administrative Organization .................................................................................................. 12-1

Section 12.01      Zoning Administrator (currently Sections 4.1.1 and 4.1.2) ........................................ 12-1

Section 12.02      Township Board (NEW SECTION) ............................................................................... 12-1

Section 12.03      Planning Commission (NEW SECTION) ...................................................................... 12-2

Section 12.04      Zoning Board of Appeals (currently Sections 5.1, 5.2, part of 5.3, and 5.7) .............. 12-2

Article 13      Administrative Procedures .................................................................................................... 13-4

Section 13.01      Fees ............................................................................................................................. 13-4

Section 13.02      Escrow (currently Section 4.3) ................................................................................... 13-4

Section 13.03      Permits ........................................................................................................................ 13-4

Section 13.04      Site Plan Review ......................................................................................................... 13-6

Section 13.05      Special Land Use Review ............................................................................................ 13-9

Section 13.06      Variances and Appeals .............................................................................................. 13-13

Section 13.07      Amendments (currently Article 9) ............................................................................ 13-16

Section 13.08      Public Hearing Procedures (currently Sections 7.12.1(8)(a) and 8.1.2(3)) .............. 13-18

Section 13.09      Performance Guarantees (currently Sections 5.9, 6.9.6.3, and 7.10.12) ................. 13-19

Section 13.10      Enforcement ............................................................................................................. 13-21

# Article 1 Title, Purpose, and Scope

## Section 1.01 Preamble (currently Preamble and Introductory Paragraph)

The Peninsula Township Zoning Ordinance establishes comprehensive zoning regulations in accordance with the provisions of the Michigan Zoning Enabling Act (MCL 125.3101 et. seq.) as amended.

The Peninsula Township Zoning Ordinance is hereby amended as follows:

## Section 1.02 Short Title (currently Article 1)

This ordinance shall be known as the "Peninsula Township Zoning Ordinance," "zoning ordinance," or "this ordinance."

## Section 1.03 Purpose (currently Section 2.1)

The purposes of this ordinance are as follows:

- **(A)** Implement the recommendations of the Peninsula Township Master Plan;
- **(B)** Protect the public health, safety, and general welfare of the inhabitants of the township;
- **(C)** Provide for adequate light, air, and convenience of access to secure safety from fire and other dangers;
- **(D)** Avoid undue concentration of population by regulating minimum open spaces and by regulating and limiting types and locations of buildings and regulating the location of trades, industries, and buildings designated for specific uses;
- **(E)** Provide for the orderly development of the township, recognizing the limited capacity of roads and infrastructure;
- **(F)** Encourage the use of lands and resources of the township in accordance with their character and adaptability;
- **(G)** Provide for safety in traffic and adequacy of parking and reduce hazards to life and property;
- **(H)** Facilitate the development of adequate systems of fire protection, education, recreation, water supplies, and sanitary facilities;
- **(I)** Conserve life, property, natural resources (including wetlands, forested steep slopes, and ridge lines) and the use of public funds for public services and improvements to conform with the most advantageous use of lands, resources, and properties;
- **(J)** Protect the quality of the shoreline, flood plains, and other environmentally sensitive areas;
- **(K)** Preserve and protect productive agricultural land;
- **(L)** Protect the scenic viewsheds to the greatest extent practical;
- **(M)** Provide for the administration and enforcement of this ordinance;
- **(N)** Protect and enhance the natural environment and promote sustainable building and site design; and
- **(O)** Preserve and improve the capacity and safety of the existing road system.

## Section 1.04 Scope (currently Section 2.2)

Buildings, structures, or parcels of land, or parts thereof, shall not be erected, constructed, reconstructed, or altered, and a new use or change in use shall not be implemented, except as permitted by the provisions of this ordinance and all applicable codes and state and federal laws.

## Section 1.05 Conflicting Regulations (currently Section 4.2.2)

This ordinance does not repeal, abrogate, annul, or in any way impair or interfere with existing provisions of law or ordinance, except as specifically repealed, or with any rules, regulations, or permits previously

adopted or issued or which shall be adopted or issued pursuant to law, relating to the use of buildings or premises, or with any private restrictions placed upon property by covenant or deed. Where any condition imposed by any provision of this ordinance upon the use of any lot, building, structure, or parcel of land is either more restrictive or less restrictive than any comparable conditions imposed by any other provision of this or any other ordinance or by state or federal laws, the provision that is more restrictive or that imposes a higher standard or requirement shall govern.

Where any graphic or table of this ordinance conflicts with the text of this ordinance, the text shall govern.

This ordinance is not intended to interfere with, modify, or annul any easement, covenant, or other private agreements between parties, except that easements, covenants, and other private agreements shall be governed by the provisions of this ordinance.

It is expressly declared that nothing in this ordinance shall be construed or interpreted to give rise to any permanent vested rights in the continuation of any particular use, district, or zoning classification, or any permissible activities, except where an applicant has commenced excavation or construction pursuant to a valid building permit and site plan approval, if required, which has resulted in a tangible change in the land. Otherwise, the continuation of any particular use, district, or zoning classification, or any permissible activities, are declared to be subject to subsequent amendment, change, or modification as might be necessary to preserve and protect public health, safety, and welfare.

# Section 1.06    Severability (currently Article 10)

If any clause, sentence, sub-sentence, paragraph, section, or part of this ordinance is adjudged by any court of competent jurisdiction to be invalid, the judgment shall not affect, impair, or invalidate the remainder but shall be confined in its operation to the clause, sentence, sub-sentence, paragraph, section, or part directly involved in the controversy in which the judgment has been rendered.

# Section 1.07    Effective Date (currently Article 12)

The Peninsula Township Zoning Ordinance and any amendments shall take effect pursuant to *Section 13.07* and Public Act 110 of 2006 as amended upon passage by the township board.

# Article 2    Definitions

## Section 2.01    Rules Applying to the Text (currently Section 3.1)

For the purpose of this ordinance, the following rules of construction apply:

**(A)** Words used in the present tense include the future tense, and the singular includes the plural, unless the context clearly indicates the contrary.

**(B)** The word "person" includes a corporation, company, partnership, family, or firm as well as an individual.

**(C)** The word "building" includes the word "structure."

**(D)** The words "lot" and "parcel" include the words "plot," "tract," "subdivision lot," or "site condominium lot."

**(E)** The term "shall" is always mandatory and not discretionary; the word "may" is permissive.

**(F)** The words "used" or "occupied" as applied to any land or building shall be construed to include the words "intended," "arranged," or "designed to be used or occupied."

**(G)** Any word or term not interpreted or defined by this article shall be given its common meaning or standard usage. A dictionary may be consulted.

## Section 2.02    Definitions (currently Section 3.2)

**(A)** For the purpose of this ordinance, the following definitions and interpretations apply:

(1) **Accessory Building or Accessory Structure.** A building or structure subordinate to, and located on the same parcel as, a principal or main building, or the part of the main building occupied by or devoted exclusively to an accessory use. An accessory building or structure may have water and sanitary or septic sewer service subject to the following restrictions:
(a) The accessory building shall not be used for dwelling use;
(b) There shall be no sleeping, laundry, or kitchen facilities; and
(c) All bathrooms, sinks, and other facilities requiring water and sanitary or septic services shall be located on the ground floor only.

(2) **Accessory Use.** A use customarily incidental and subordinate to the principal use or building located on the same lot as the principal use or building.

(3) **Activity.** Activities are human actions associated with land uses that are permitted under the zoning ordinance. Activities are further divided into "primary" activities and "accessory" activities.

(4) **Activity, Accessory.** A function that is subordinate and secondary to the primary use of the property that occurs at the same location as the primary activity. The accessory activity is not the primary reason to visit the property. Rather, it is an optional activity generally associated with the permitted use that is of limited scale and extent. For example, an accessory activity in a retail store is the ancillary storage of inventory.

(5) **Activity, Primary:** A function that is directly related to the use that is allowed or permitted. It is the principal reason to make a trip to the subject property. For example, the primary activity in a retail store is the sale of goods.

(6) **Adult Foster Care Facilities.** A governmental or nongovernmental establishment having as its principal function the receiving of adults for foster care. Subject to Michigan Public Act 218 of 1979 as amended, adult foster care facilities include facilities and foster care family homes for adults who are aged, mentally ill, developmentally disabled, or physically disabled who require supervision on an ongoing basis but who do not require continuous nursing care. An adult foster care facility does not include a nursing home, home for the aged, hospital, hospital for the mentally ill, facility for the developmentally disabled, county infirmary, childcare institution, an establishment commonly described as an alcohol or substance abuse rehabilitation center, a residential facility for persons released from or assigned to an adult correctional institution, or any other use excluded under Act 218 of 1979 as amended.

  (a) **Adult Foster Care, Family Home.** A private residence with the approved capacity to receive not more than six adults who shall be provided foster care for five or more days a week and for two or more consecutive weeks. The adult foster care family home licensee shall be a member of the household and an occupant of the residence.
  (b) **Adult Foster Care, Small Group Homes.** An adult foster care facility with the approved capacity of not more than 12 adults who shall be provided foster care.

(7) **Agricultural Labor Camp, Unlicensed.** A tract of land and all related buildings or other structures, all or part of which are established, occupied, or used as living quarters for fewer than five migrant farm laborers engaged in agricultural activities, including related food processing.

(8) **Agricultural Labor Camp, Licensed.** A tract of land and all related buildings or other structures, all or part of which are established, occupied, or used as living quarters for five or more migrant farm laborers engaged in agricultural activities, including related food processing, which is licensed by the State of Michigan under Part 124 (Agricultural Labor Camps) of the Michigan Public Health Code (Public Act #368 of 1978) as amended.

(9) **Agricultural Production. See "Farm" and "Farm Products."**

(10) **Agriculture.** Substantially undeveloped land devoted to the production of plants and animals useful to human beings, including fruits, grapes, nuts, vegetables, green houseplants, Christmas trees, forage and sod crops, grains and feed crops, dairy and dairy products, livestock, including breeding and grazing, and other similar uses and activities.

(11) **Airport Critical Zone.** The critical zone includes the clear zone approach-departure clearance surface and the transitional surface.

(12) **Airport Inner Horizontal Surface Area.** The inner horizontal surface area is that area surrounding the airport for a distance of three miles, excluding the clear zone surface, transitional surface, and airport approach-departure clearance surface.

(13) **Airport Outer Horizontal Surface.** The outer horizontal surface is the airport hazard area less the critical zone area beyond a three-mile distance of the inner horizontal surface area to the outer boundary of the airport overlay zone district.

(14) **Alterations.** Any modification, addition, or change in construction or type of occupancy, or any change or rearrangement in the structural parts of a building; any enlargement of a building, whether by extending a side or by increasing in height; or the moving from one location to another.

(15) **Basement.** A habitable area of a building where the finished floor level is five feet or more below natural grade on both of the side elevations of the building. A cellar or crawl space is non-habitable space.

(16) **Base Flood Elevation (BFE).** The computed elevation to which floodwater is anticipated to rise during the base flood. Base flood elevations (BFEs) are shown on flood insurance rate maps (FIRMs) and on the flood profiles. The base flood is a flood having a one percent chance of being equaled or exceeded in any given year and is commonly known as a 100hundred-year flood.

(17) **Bed and Breakfast.** A private residence that offers sleeping accommodations to registered guests in rooms for rent, is the owner's residence in which the owner resides while renting the rooms to registered guests, and serves breakfasts at no extra cost to its registered guests.

(18) **Board of Appeals.** Peninsula Township Zoning Board of Appeals.

(19) **Boarding of Livestock.** Providing care, custody, and control of livestock for others.

(20) **Boat Hoist.** A device to raise boats above or out of the water.

(21) **Buffer Strip.** Open space, landscaped areas, fences, walls, berms, or a combination thereof used to physically and visually separate one use or property from another in order to mitigate potential land use impacts such as noise levels of illumination.

(22) **Building.** Any structure, either temporary or permanent, having a roof and used or built for the shelter or enclosure of persons, animals, or property of any kind.

(23) **Building Area.** See "Floor Area."

(24) **Building Envelope.** An area identified on a site plan within which a building or structure may be located.

(25) **Building Line.** A line formed by the exterior wall of the building.

(26) **Building Setback.** See definition of "Setback" in *Section 2.02(A)(115)*.

(27) **Building Width.** The width of the building foundation as shown on elevation drawings, excluding porches, measured along the main foundation of the building on each side.

(28) **Building, Height of**. The vertical distance measured from the natural grade of the ground intersecting the center of the building at its lowest point to the highest point of the roof (excluding chimneys). In the example below, the height of the building is indicated as "A." Building heights may also be limited by the number of stories, which are also computed from the natural grade as shown below.

**Figure 2-1. Building, Height of**



(29) **Building, Principal.** A building in which the main or principal use of the lot on which it is located is conducted.

(30) **Childcare Organization.** A facility for the care of children under 18 years of age, as licensed and regulated by the state under Act 116 of the Public Acts of 1973 as amended, and the associated rules by the State of Michigan. Such organizations shall be further defined as follows, which may be superseded by the act:

(a) **"Childcare Center" or "Daycare Center."** A facility, other than a private residence, receiving one or more preschool or school-age children for care for a period of fewer than 24 hours a day, and where the parents or guardians are not immediately available to the child. It includes a facility that provides care for not fewer than two consecutive weeks, regardless of the number of hours of care per day. The facility is generally described as a childcare center, daycare center, day nursery, nursery school, parent cooperative preschool, play group, before- or after-school program, or drop-in center. "Childcare center" or "daycare center" does not include a Sunday school conducted by a religious institution, a facility operated by a religious institution where children are cared for during short periods of time while persons responsible for children are attending religious services, or other excluded uses stated in the act.

(b) **"Childcare, Family Home."** A private home in which one but fewer than seven minor children are received for care and supervision for periods of fewer than 24 hours a day, unattended by a parent or legal guardian, except children related to an adult member of the family by blood, marriage, or adoption. It includes a home that gives care to an unrelated child for more than four weeks during a calendar year.

(c) **"Childcare, Group Home."** A private home in which more than six but not more than 12 minor children are given care and supervision for periods of fewer than 24 hours a day unattended by a parent or legal guardian, except children related to an adult member of the family by blood, marriage, or adoption. It includes a home that gives care to an unrelated child for more than four weeks during a calendar year.

(31) **Common Land.** A parcel or parcels of land together with any improvements, the use, maintenance, and enjoyment of which are intended to be shared by the owners and occupants of the individual building units in a planned unit development, subdivision, or site condominium.

(32) **Cupola.** Ornamental structures for architectural decoration placed in a prominent position, usually at the top of a larger roof or dome. They are non-habitable and do not have interior access except for maintenance purposes. See *Section 7.07*.

(33) **Cut and Fill.** The excavation of surface material from existing grade and the deposition of that material as fill in an adjacent place.

(34) **Deck.** A platform, either freestanding or attached to a building, that is supported by pillars or posts.

(35) **Density.** The number of dwelling units residing upon, or to be developed upon, a net acre of land. Net density calculations exclude existing or proposed rights of way of publicly dedicated streets and existing or proposed private streets.

(36) **District, Zoning.** An area of land for which there are uniform regulations governing the use of buildings and premises, density of development, yard requirements, height limitations, and lot coverage.

(37) **Dock.** A structure built over or floating upon the water and used as a landing place for boats and other marine transport, fishing, swimming, and other recreational uses.

(38) **Dwelling Unit.** A single building, or portion of any building, providing complete independent living facilities for  family for residential purposes, including permanent provisions for living, sleeping, cooking, and sanitation. Dwelling unit types are defined as follows:

   **(a)** **Dwelling, Multiple Family.** Two or more dwelling units attached to each other, including duplexes, triplexes, quadplexes, apartment houses, co-ops, and attached single-family residences.
   **(b)** **Dwelling, Secondary.** A second detached dwelling unit on the same lot as the principal dwelling and under the same ownership. See *Section 6.08*.
   **(c)** **Dwelling, Single-Family.** A detached building designed for or occupied exclusively by one family.

(39) **Easement.** Any right to use or enter onto the real property of another without possessing it.

(40) **Easement, Conservation.** A grant, by an instrument, whereby the owner relinquishes to the public in perpetuity the right to develop the land as may be expressly reserved in the instrument and that contains a covenant running with the land, not to develop, except as this right is expressly reserved in the instrument.

(41) **Elevation Drawing.** A scalable architectural drawing or rendering of a side of a building.

(42) **Entertainment.** An amusement or diversion that occurs during an activity, usually involving the performing arts. Entertainment may include but is not limited to vocal and instrumental music, dancing, comedy, acting, and karaoke. Entertainment may be an accessory activity as in the case of live music at a restaurant or a primary activity as in the case of a theater. Entertainment may also be active or passive. Active entertainment is generally participatory (i.e., bowling, laser tag, art lessons), and passive entertainment generally involves viewing the activities of others (concerts or other artistic performances). Unless specifically stated otherwise, entertainment activities occur within an enclosed building.

(43) **Erected.** The building, construction, alteration, reconstruction, moving upon, or any physical activity upon a premises or lot.

(44) **Essential Services.** The erection, construction, alteration, or maintenance by public utilities or municipal departments or commissions of underground or overhead gas, electrical, telephone transmission, or distribution systems including poles, wires, main, drains, sewers, pipes, conduits, cable, towers, fire alarm boxes, police call boxes, traffic signals, hydrants, and other similar equipment and accessories reasonably necessary for the furnishing of adequate service by such public utilities, departments, or commissions. Essential services shall not include wireless communication facilities, buildings, solar energy facilities, or wind energy facilities**.**

(45) **Event.** A planned function that draws people to a specific place at a specific date and time for a specific purpose. Tickets, if required, are often presold or purchased on site. Events must be associated with primary or secondary activities.

(46) **Existing Building.** A building existing or for which the foundations are in place or upon which there has been substantial work done prior to the effective date of this ordinance or any amendment to this ordinance.

(47) **Existing Use.** A use of premises or buildings or structures actually in operation, openly, visibly, and notoriously prior to the effective date of this ordinance or any amendment to this ordinance.

(48) **Family.** "Family" means either of the following:

   **(a)** An individual or group of two or more persons living together and related by the bonds of blood, marriage, or adoption, together with foster children and domestic staff of the principal occupants and not more than one additional unrelated person, who are domiciled together as a single domestic housekeeping unit in a dwelling unit; or
   **(b)** The functional equivalent of the domestic family, that is, a collective number of individuals domiciled together in one dwelling unit whose relationship is of a continuing non-transient domestic character and is the functional equivalent of a domestic family with a demonstrable and recognizable bond that constitutes the functional equivalent of the bonds that render the domestic family a cohesive unit. All persons of the functional equivalent of the domestic family must be cooking and living as a single nonprofit housekeeping unit. This definition shall not include any society, club, fraternity, sorority, association, lodge, coterie, organization, or group of students or other group of individuals whose domestic relationship is of a transitory or seasonal nature or for an anticipated limited duration of a school term or other similar determinable period.

(49) **Farm.** The land, plants, animals, buildings, structures (including ponds used for agricultural or aquacultural activities), machinery, equipment, and other appurtenances used in the commercial production of farm products.

(50) **Farm Product.** Those plants and animals useful to human beings produced by agriculture, including but not limited to forage and sod crops, grains and feed crops, field crops, dairy and dairy products, poultry and poultry products, cervidae (e.g., deer), livestock (including breeding and grazing), equine, fish, and other aquacultural products, bees and bee products, berries, herbs, fruits, vegetables, flowers, seeds, grasses, nursery stock, trees and tree products, mushrooms and other similar products, or any other product that incorporates the use of food, feed, fiber, or fur as determined by the Michigan Commission of Agriculture. See Michigan Right to Farm Act (Public Act #93 of 1981 as amended).

(51) **Feeder Lot.** Also known as a concentrated animal feeding operation (CAFO) by the State of Michigan, a feeder lot is an area used for the concentrated feeding of large numbers of marketable meat-producing animals carried on as a commercial operation rather than as part

of a normal farming operation.

(52) **Fence.** A structural barrier, including gates when closed, that has openings of more than 50% of each one square yard of surface area, constructed of wood, metal, or other durable parts such as rails, boards, wire mesh, or other material designed and marketed for such use and used to mark a boundary or to define or enclose a specific area.

(53) **Fence, Temporary.** A fence of temporary nature, such as a snow fence, a fence erected around construction works, or maintained pursuant to building code or other ordinances of the township or the county on behalf of the township.

(54) **Floodplain.** Those areas along the Great Lakes shoreline falling below the elevation 584.0 via the North American Vertical Datum of 1988 (NAVD 88). The floodplain is more specifically described in the flood insurance study for Grand Traverse County, Michigan, and the FEMA flood insurance rate maps (FIRM), effective August 28, 2018.

(55) **Flood Elevation Line.** A line that represents where the base flood elevation (BFE) intersects the landscape.

(56) **Floor Area.** The sum of all interior horizontal areas of all floors (including half stories), which include:

(a) Such area of a basement when the basement is classified as a story;
(b) Such area of any elevator shafts and stairwells at each floor;
(c) Such area used for mechanical equipment (except equipment, open or enclosed, located on a roof); and
(d) Such area of any interior balconies, mezzanines, and covered porches but not including uncovered porches, terraces, decks, and steps.

(57) **Food Processing Plant.** A facility designed to manufacture or process food or beverages for human consumption. Products processed and produced include items such as bakery products, confectionery products, fruits or vegetables, grain products, meats, seafood, and alcoholic or non-alcoholic beverages. Food processing plants do not include outdoor confinement areas for live animals or any on-site retail or wholesale sales.

(58) **Foot-Candle.** A unit of illumination produced on a surface, all points of which are one foot from a uniform point source of one candle. One foot-candle is equal to one lumen uniformly distributed over an area of one square foot.

(59) **Garage, Residential.** An accessory building or an accessory portion of a principal building designed or used solely for the storage of noncommercial vehicles owned and used by the occupants of the building to which it is accessory.

(60) **Gas Station.** Any area of land, including any structures thereon, used or designed for the supply of gasoline, oil, or other fuel for the propulsion of vehicles. This term shall also mean any area or structure used or designed for polishing, greasing, washing, cleaning, or servicing such motor vehicles.

(61) **Grade, Finished.** The completed surfaces of lawns, walks, and roads brought to grades as shown on official plans or related designs.

(62) **Grade, Natural.** The elevation of the ground surface in its natural state, prior to disturbance or manmade alteration in preparation for a project regulated by this ordinance.

(63) **Guest.** See "Registered Guest" and "Winery Guest."

(64) **Guest Unit.** A room or group of rooms occupied, arranged, or designed for occupancy by one or more registered guests for compensation, such as in a bed and breakfast.

(65) **Health Department.** The Grand Traverse County Health Department.

(66) **Home Occupation.** An accessory use of professional, service, or business character conducted within a dwelling by the family residents that is clearly secondary and incidental to the use of the dwelling for living purposes and does not change the exterior character.

(67) **Hotel, Motel, Tourist Court.** Commercial establishments, open to the general public and known to the public as hotels, motor hotels, motels, or tourist courts, including resort hotels and hotels operated by membership organizations, primarily engaged in providing lodging or lodging and meals; however, bed and breakfasts, recreational unit parks, campgrounds, or tent sites are not included.

(68) **Impervious Surface.** Any surface that cannot be effectively and easily penetrated by water, thereby resulting in runoff.

(69) **Junkyard.** Any establishment or premises where any motor vehicle, machinery, appliance, product or merchandise, scrap metal, or other scrap materials that are damaged, deteriorated, or in a condition that prevents their use for the purpose for which they were intended are bought, kept, sold, and/or stored. A "junkyard" shall include any premises upon which one or more unlicensed used motor vehicles that cannot be operated under their own power are kept or stored for a period of 15 days or more.

(70) **Kennel.** Any lot or premises used for the sale, boarding, training, transfer, or breeding of dogs, cats, or other household pets over the age of six months. Kennel shall also mean the keeping of five or more dogs, cats, or other household pets over the age of six months.

(71) **Land Use Permit.** Permit required for any change in use of land or structure in accordance with the provisions of this ordinance.

(72) **Lighting.** See lighting-related definitions in *Section 8.07(C)*.

(73) **Lot.** An area of land that may consist of lots of record or parcels or parts thereof on which one principal building and its accessories are located or intended to be located together with any open spaces required by this ordinance. The definition of "lot" may consist of two or more lots, lots of legal record, or platted lots, when contiguous to each other and when held in common ownership, for purposes of this ordinance where the combination of lots is necessary to meet the setback or lot coverage requirements of this ordinance. Unless otherwise provided in this ordinance, public and private streets and road rights of way, and approved road easements for ingress and egress, shall divide lots (including parcels and sites) for purposes of this ordinance. While two or more lots separated by not more than the width of a public road right of way or private road easement may be combined into a single tax identification parcel, all principal and accessory buildings shall be placed on one lot and such lot coverage shall be calculated using the coverage and area of that one lot. The definition of "lot" shall also include subdivision lots and site condominium unit lots.

(74) **Lot, Depth of.** The mean distance from the right-of-way line of the lot to its opposite rear line measured in the general direction of the side lines of the lot.

(75) **Lot, Minimum Width.** The minimum lot width shall be measured as the shortest distance between the side lot lines within 100 feet of the front lot line. Where the front lot line is not a straight line and curves into or away from the lot (such as a cul-de-sac or street curve), the minimum lot width shall be measured at the shortest distance between the side lot lines measured tangent to an outside curve (such as a cul-de-sac) or chord to an inside curve 100 feet from the front lot line (see *Figure 2-2*).

### Figure 2-2. Lot Width Measurement



(76) **Lot Area (includes the terms** "Lot," "Parcel Size," "Parcel Area," "Site," and "Site Area"). The total area within the lot lines including road and street rights of way, provided the property's legal description includes such rights of way.

(77) **Lot Coverage.** The amount of a lot, stated in terms of percentage, that is covered by all above-grade structures. Lot coverage shall be measured from the drip line of the roof or from the wall or foundation if there is no projecting portion of the roof.

(78) **Lot Line.** The lines bounding a lot. Lot line types are as follows (see *Figure 2-3)*

  **(a)** **Lot Line, Front.** The line(s) separating the lot from any street right of way, private road, or other access easement. In the case of a corner lot and double frontage lot, the front lot line shall mean that line separating said lot from that street right of way, private road, or other access easement that is designated as the front on the plat, approved site plan, or recorded survey.

  **(b)** **Lot Line, Rear.** The lot line opposite and most distant from the front lot line. In the case of a triangular or otherwise irregularly shaped lot or parcel, an imaginary line at least 10

feet in length entirely within the lot or parcel, parallel to and at a maximum distance from the front lot line.

    **(c)**   **Lot Line, Side.** Any lot line other than a front or rear lot line.

(79) **Lot of Record.** A lot that is part of a subdivision or site condominium, the map of which has been recorded in the Office of the Register of Deeds in Grand Traverse County or a lot described by metes and bounds, the deed or land contract to which has been recorded in the Office of the Register of Deeds in Grand Traverse County.

(80) **Lot Types.** Lot types are as follows (refer to *Figure 2-3*):

    **(a)**   **Lot, Corner.** A lot that has at least two contiguous sides abutting upon a street for their full length. A lot abutting on a curved street or streets shall be considered a corner lot if straight lines drawn from the foremost points of the side lot lines to the foremost point of the lot meet at an interior angle of fewer than 135 degrees. A corner lot shall have one front lot line from which primary access shall be taken.

    **(b)**   **Lot, Double Frontage.** An interior lot having frontage on more than one street or road. A double frontage lot shall have one front lot line from which primary access shall be taken.

    **(c)**   **Lot, Interior.** A lot other than a corner lot with only one frontage on a street or road.

### Figure 2-3. Lot Types



**Corner, Interior &
Double Frontage Lots**

(81) **Major Thoroughfare.** Unless stated otherwise in the master plan, a major thoroughfare shall be an arterial or collector-distributor road; this designation includes M-37, Center Road, Peninsula Drive, Bluff Road, Montague Road, and East Shore Road.

(82) **Marina.** A commercial boat basin or dock with facilities for berthing and servicing all types of watercraft.

(83) **Master Plan.** A statement of policy adopted by the township pursuant to the Michigan Planning Enabling Act (Public Act #33 of 2008 as amended).

(84) **Migrant Farm Laborer.** A person employed in agricultural work of a seasonal or other temporary nature who:

    **(a)** Has to travel from his or her permanent place of residence to do the farm work so that he/she is unable to return to his/her permanent residence within the same date;
    **(b)** Is not employed in farm work year round by the same employer; and
    **(c)** Does not have an ownership interest in the property where the laborer is employed.

(85) **Mobile Home.** A structure, transportable in one or more sections, which is built on a chassis and designed to be used as a dwelling with or without permanent foundation when connected to the required utilities and includes the plumbing, heating, air conditioning, and electrical systems contained in the structure. The term "mobile home" shall not include pick-up campers, travel trailers, motor homes, modular homes, recreational vehicles, converted buses, tent trailers, or other transportable structures designed for temporary use.

(86) **Mobile Home Park.** Any parcel or tract of land under the control of any person upon which three or more mobile homes are located on a continual non-recreational basis and that is offered to the public for that purpose regardless of whether a charge is made, together with any building, structure, enclosure, street, equipment, or facility used or intended for use incidental to the occupancy of a mobile home.

(87) **Nonconforming Building, Nonconforming Structure, or Nonconforming Use.** A building, structure, or use of land existing at the time of enactment of this ordinance that does not conform to the regulations of the district or zone in which it is situated.

(88) **Open Space.** A typically vegetative area designed, depending upon the particular situation, for environmental, scenic, or recreational enjoyment but not including supplemental setback areas, roads, parking areas, drainage basins, or areas within individual lots. Open space shall be consolidated and contiguous to the greatest extent reasonably possible so as to provide usable park-like areas.

(89) **Ordinary High Water Mark.** For Lake Michigan, the ordinary high water mark is a point 580.5 feet above sea level (International Great Lakes Datum 1985) or as otherwise determined by the State of Michigan or U.S. government. For other water bodies, the ordinary high water mark is the line between upland and bottomland that persists through successive changes in water levels, below which the presence and action of the water is so common or recurrent that the character of the land is marked distinctly from the upland and is apparent in the soil itself, the configuration of the surface of the soil, and the vegetation.

(90) **Parcel Area. See "Lot Area."**

(91) **Parcel Size. See "Lot Area."**

(92) **Performance Guarantee.** A financial guarantee to ensure that all improvements, facilities, or work required by this ordinance will be completed in compliance with the ordinance, regulations, and approved plans and specifications of the development.

(93) **Pet Sitter.** A business where the sitter cares for the pets either on the site of the pet owner or at the residence of the pet sitter.

(94) **Planned Unit Development.** A land area that has both individual building sites and common property, such as a park, and that is designed and developed under one owner or organized group as a separate neighborhood or community unit in accordance with the Michigan Zoning Enabling Act (Public Act 110 of 2006 as amended).

(95) **Principal Use.** The main use to which the premises are devoted and the principal purpose for which the premises exists.

(96) **Private Launching Ramp.** A space or structure from which a boat may be launched for the use and benefit of the patrons of the waterfront marina or boatyard wherein said boats are berthed or docked.

(97) **Public Utility.** Any person, firm, corporation, municipal department, or board fully authorized under federal, state, or municipal regulations to furnish to the public electricity, gas, steam, communications (excluding wireless communication facilities), telegraph, transportation, or water. Public utilities do not include solar energy facilities, wind energy facilities, or wireless communication facilities.

(98) **Recreation, Private.** A recreational space or structure or combination thereof belonging to or operated by private interests for use by private individuals or organizations and/or the public, consisting primarily of man-made structures or other artificial apparatus that are necessary to form the basis for said use.

(99) **Recreational Unit.** Recreational units shall include travel trailers, camping trailers, motor homes, truck campers, slide-in-campers, and chassis-mount campers as defined in Michigan Public Act 368 of 1978 as amended.

(100) **Recreational Unit Park.** Any parcel or tract of land under the control of any person where sites are offered for the use of the public or members of an organization, either free of charge or for a fee, for the establishment of temporary living quarters for five or more recreational units.

(101) **Recreational Vehicle.** Includes travel trailers, pick-up campers, motor homes, folding tent trailers, boats and other watercraft, boat trailers, snowmobiles, all terrain or special terrain vehicles, utility trailers, and similar equipment used for transporting recreational equipment. See *Section 7.02*.

(102) **Registered Guest**. A person or people who stay overnight and have signed a guest register.

(103) **Right of Way.** A street, road, alley, or other thoroughfare or easement permanently established for the passage of persons or vehicles, which, if used to establish a lot front, provides legal access.

(104) **Right to Farm Act.** The Michigan Right to Farm Act (Public Act 93 of 1981 as amended).

(105) **Road, Cul-de-sac.** A road of short length with one end terminated by a vehicular turnaround.

(106) **Road, Private.** A road approved by the township zoning administrator or township board as meeting the published standards of Peninsula Township to serve as a private road for zoning purposes. This definition may include approved roads in a condominium project but does not include alleys, easements, driveways, or the like unless they have been approved by the township as private roads.

(107) **Road, Highway.** Any public thoroughfare in Peninsula Township, including federal and state roads and highways.

(108) **Road, Local.** A public or private road designated a local road by the Grand Traverse County Road Commission that is intended primarily for access to abutting properties.

(109) **Road, Marginal Access.** A local road that is parallel and adjacent to arterial roads and that provides access to abutting properties and protection from through traffic and not carrying through traffic.

(110) **Road, Primary.** Those roads of considerable continuity that are designated as primary roads by the Grand Traverse County Road Commission.

(111) **Road, Private Subdivision.** A private road in a subdivision approved by the Grand Traverse County Road Commission or Peninsula Township pursuant to the Plat Act (Act 288, P.A. of 1967 as amended).

(112) **Road, Sight Distance.** The unobstructed vision on a horizontal plane along a road centerline from a driver's-eye height of 3.75 feet and an object height of six inches, unless otherwise defined by the road commission or township engineer.

(113) **Roadside Stand.** A structure or display area used for selling fresh or processed farm produce and products grown on the Old Mission Peninsula. Such farm stands must be operated as an accessory use of a farm.

(114) **Self-Service Storage Facility.** One or more structures in a facility containing separate, individual, and private storage spaces leased or rented on individual leases.

(115) **Setback.** The minimum horizontal distance between the lot line and the closest roof eave (overhang or drip line) of the structure. Additionally,

    **(a)**  **Setback, Front.** The minimum distance, extending the full lot width, between the structure and the front lot line.

    **(b)**  **Setback, Rear.** The minimum distance, extending the full lot width, between the structure and the rear lot line or between the structure and the easement line of an alley.

    **(c)**  **Setback, Side.** The minimum required distance, extending from the front setback to the rear setback, between the structure and the side lot line.

    **(d)**  **Setback, Waterfront.** The minimum required distance, extending the full lot width, between the structure and the ordinary high water mark of a water body.

(116) **Service Institution.** A commercial establishment that performs personal services on the premises within a completely enclosed building, including but not limited to clothing repair shops, barber and beauty shops, photographic studios, and drop-off/pick-up dry cleaners provided no treatment of clothing or other material occurs on the property.

(117) **Shared Waterfront Ownership.** Property containing no dwelling with frontage on Grand Traverse Bay that is owned by more than one family through deed, land contract, non-exclusive easement, or other form of ownership.

(118) **Signs.** See definitions related to signs in _Section 10.02_.

(119) **Site Condominium Lot.** A parcel of land meeting the depth-to-width ratios and minimum lot area requirements of a lot within the zoning district in which it is located as part of a condominium development under Michigan's Condominium Act, being Public Act 59 of 1978 as amended. A "site condominium lot" shall be the same as a "site condominium unit."

(120) **Slope.** An area of land with a grade that deviates from the horizontal plane calculated as the ratio of vertical rise divided by horizontal run and expressed in terms of a percentage. Slope is measured by the following formula: slope = (V / H) x 100, where V = vertical distance between highest elevation and lowest elevation of a straight line drawn perpendicular to the sloping surface and H = horizontal distance of a straight line drawn perpendicular to the sloping surface. For example, a slope with a vertical distance of one foot and a horizontal distance of four feet is a 25% slope.

(121) **Story.** A space in a building between the surface of any floor and the surface of the next floor above, or, if there is no floor above, then the space between such floor and the ceiling or roof above. However, where the finished floor level of the first story is at least five (5) feet below

the adjoining natural grade, the space shall be considered to be a basement and not counted as a story.

(122) **Story, Half.** The uppermost story lying under a roof, the usable floor area of which does not exceed one half of the floor area of the uppermost full story.

(123) **Structure.** Anything constructed or erected, the use of which requires a temporary or permanent location on the ground or is attached to something having a permanent location in, on, or below the ground. Structures shall include but not be limited to buildings, manufactured homes, decks, patios, sidewalks, driveways, walls (including seawalls), fences more than four feet in height, poles, antennae, swimming pools, billboards, signs, boat and jet ski hoists, and towers but shall not include access steps required to negotiate changes in site elevation and landscape mounds.

(124) **Tasting Room.** A room in a licensed winery premises where tasting of fresh or processed agricultural produce such as wine, fruit wines, and non-alcoholic fruit juices takes place.

(125) **Tenant House.** A house that is part of farm property for full-time farm employees associated with its principal use and subject to the same height and setback requirements as the principal dwelling.

(126) **Tent.** A collapsible structure of canvas or other fabric stretched and sustained by poles.

(127) **Township Board.** The Peninsula Township Board of Trustees.

(128) **Use.** The purpose for which land or a building is arranged, designed, or intended or for which land or a building may be occupied.

(129) **Wall.** A structural barrier, including gates when closed, constructed of masonry or other durable parts such as stone or other material designed and marketed for such use, or to define or enclose a specific area for the purpose of protection, privacy, or confinement. Any fence that is constructed such that 50% or more of the vertical surface is made of solid or otherwise opaque material is considered to be a wall.

(130) **Wall, Retaining Wall.** A vertically sloped wall constructed of concrete, durable wood, masonry, or other material designed and constructed to resist the lateral displacement of soil.

(131) **Wall, Seawall.** An engineered structure for the protection of existing dwellings along the Great Lakes shoreline.

(132) **Wetland.** Land characterized by the presence of water at a frequency and duration sufficient to support, and that under normal circumstances does support, wetland vegetation or aquatic life and is commonly referred to as a bog, swamp, or marsh. A wetland may or may not be contiguous to the Great Lakes, an inland lake or pond, or a river or stream. This applies to public, commercial, and private lands regardless of zoning or ownership. Wetlands are regulated per part 303 of the Natural Resources and Environmental Protection Act (P.A. 451 of 1994 as amended).

(133) **Wind Energy Conversion System (WECS).** The approved abbreviation of "wind energy conversion system," WECS shall mean a combination of:

    **(a)** A surface area, either variable or fixed, for utilizing the wind for electrical powers;
    **(b)** A shaft, gearing, belt, or coupling utilized to convert the rotation of the surface area into a form suitable for driving a generator, alternator, or other electricity producing device;
    **(c)** The generator, alternator, or other device to convert the mechanical energy of the surface area into electrical energy; and
    **(d)** The tower, pylon, or other structure upon which any, all, or some combination of the above are mounted.

(134) **Wind Energy Conversion System (WECS) Tower Height.**

    **(a)** Horizontal Axis Wind Turbine Rotors. The distance between the ground and the highest point of the WECS, as measured from the ground, plus the length by which the rotor blade on a horizontally mounted WECS exceeds the structure which supports the rotor and blades.

    **(b)** Vertical Axis Wind Turbine. The distance between the ground and the highest point of the WECS.

(135) **Wine.** The product made by the normal alcoholic fermentation of the juice of sound, ripe grapes or any other fruit with the usual cellar treatment and containing not more than 21% of alcohol by volume, including fermented fruit juices other than grapes and mixed wine drinks.

(136) **Winery.** A state-licensed facility where agricultural fruit production is maintained and juice is processed into wine, stored in bulk, packaged, and sold at retail or wholesale to the public with or without the use of a wine tasting facility. The site and buildings are used principally for the production of wine.

(137) **Winery-Chateau.** A state-licensed facility where commercial fruit production is maintained and juice is processed into wine, stored in bulk, packaged, and sold at retail or wholesale to the public with or without the use of a wine tasting facility. A winery-chateau may also have a limited number of guest rooms with meals offered to the public.

(138) **Winery/Farm Processing Facility.** A building or buildings containing an area for processing equipment where agricultural produce is processed or packaged and prepared for wholesale or retail sales. In addition to processing, the building(s) may also include a retail sales area for direct sales to customers and a tasting room for the tasting of fresh or processed agricultural produce including wine. The facility also includes necessary parking, lighting, and access to a public road.

(139) **Winery Guest.** A person who visits an approved and operating winery-chateau as a registered guest or a person who visits an approved and operating winery-chateau during normal business hours to take part in a permitted activity or event.

(140) **Winery, Remote Tasting Room.** A wine tasting room that is not on the same property as the winery with which it is associated.

(141) **Wireless Communication Facilities.** All structures and accessory facilities relating to the use of the radio frequency spectrum for the purpose of transmitting or receiving radio signals that may include but are not limited to telephone devices and exchanges, microwave relay towers, telephone transmission equipment buildings, and commercial mobile radio service facilities. Not included in this definition are citizen band radio facilities, AM/FM radio towers, television towers, satellite dishes, federally licensed amateur radio facilities, or other similar facilities that are exempt from local regulation.

(142) **Wireless Communication Support Structure.** A monopole, guyed, or lattice-type tower designed for the attachment of or as support for wireless communication antennas or other antennas.

(143) **Yard.** An open space on the same lot with a building, unoccupied and unobstructed from the ground upward, except as otherwise provided in this ordinance. The measurement of a yard shall be construed as the minimum horizontal distance between the lot line and the principal structure.

(144) **Yard, Front.** A yard extending the full width of the lot, the depth of which is the minimum horizontal distance between the front lot line and the nearest line of the principal structure (see *Figure 2-4* below). On a corner lot, a front yard exists along both road frontages.

**Article 2:** Definitions

(145) **Yard, Rear.** A yard extending the full width of the lot, the depth of which is the minimum horizontal distance between the rear line of the lot and the rear line of the nearest principal structure. The depth of the rear yard shall be measured between the rear line of the lot and the rear line of the principal structure (see *Figure 2-4* below).

(146) **Yard, Side.** A yard between the building and the side line of the lot and extending from the front yard to the rear yard. Any yard not defined as a front yard or rear yard shall be deemed a side yard (see *Figure 2-4* below).

**Figure 2-4. Yard Terms**



# Article 3    Zoning Districts and Map

## Section 3.01    Districts Established (currently Section 6.1.1)

For the purpose of this ordinance, Peninsula Township is hereby divided into the following districts:

> **Zoning Districts.**
> A-1: Agricultural
> R-1A: Rural and Hillside Residential
> R-1B: Coastal Zone Residential
> R-1C: Suburban Residential
> R-1D: Community Residential
> C-1: Commercial
>
> **Overlay Districts.**
> Airport Overlay Zone District

## Section 3.02    Zoning Districts Map (currently Section 6.1.2)

The boundaries of the districts are defined and established as shown on a map entitled "Zoning District Map of Peninsula Township, Grand Traverse County, Michigan" that accompanies this ordinance.

The official zoning map shall be identified by the signature of the township supervisor, attested by the township clerk, and bearing the following words: "This is to certify that this is the official zoning map referred to in  of the Peninsula Township Zoning Ordinance." If in accordance with the provisions of this ordinance and of the applicable statute, amendments effecting changes are made in district boundaries or other matter portrayed on the official zoning map, such changes shall not be considered final and land use permits shall not be issued until changes have been made on the official zoning map. Such map changes shall be made after the effective date of the ordinance amendment. Each map change shall indicate the zoning amendment number on the map. The official zoning map shall be maintained and kept up to date by the township.

## Section 3.03    Interpretation of District Boundaries (currently Section 6.1.3)

Where uncertainty exists with respect to the boundaries of any of the districts indicated on the zoning map, the following rules shall apply:

**(A)** **Streets, Roads, and Highways.** Boundaries indicated as approximately following the streets, roads, or highways shall be considered to be such boundaries.

**(B)** **Lot Lines.** Boundaries indicated as approximately following lot lines shall be construed as following such lot lines.

**(C)** **Township Boundary Lines.** Boundaries indicated as approximately following township boundary lines shall be construed as following such township boundary lines.

**(D)** **Parallel to Streets, Roads, or Highways.** Boundaries indicated as approximately parallel to the center lines of streets, roads, or highways shall be construed as being parallel and at such distance as indicated on the official zoning map. If no distance is given, such dimension shall be determined by the use of the scale shown on the official zoning map.

**(E)** **Water Bodies.** Boundaries following the shoreline of a stream, lake, or other body of water shall be construed to follow such shorelines; on the Great Lakes, the boundaries shall be the ordinary high water mark.

**(F)** **Zoning of Accreted Land.** Accreted land shall automatically be subject to the same zoning regulations as the adjacent land.

**(G)** **Unresolved District Boundaries.** Where the application of the aforesaid rules leaves a reasonable doubt as to the boundaries between two districts, the regulations of the more restrictive district shall govern the entire parcel in question unless otherwise determined by the Peninsula Township Zoning Board of Appeals. To determine the more restrictive district, the more restrictive districts shall be in the following order (from the most restrictive to the least restrictive):  A-1, R-1A, R-1B, R-1C, R-1D, and C-1.

## Section 3.04     Scope of Regulations (currently Section 6.1.4(1))

No building or structure, or part of a building or structure, shall be erected, moved, constructed, or altered, and no new use or change in use shall be made, unless in conformity with this ordinance and with the regulations specified for the district in which it is located.

The regulations applying to each district include specific limitations on the use of land and structures, height and bulk of structures, structure density, lot area, yard dimensions, and area of lots that can be covered by each structure.

## Section 3.05     Categories within Zoning Districts (currently Section 6.1.5 and Section 8.7.2)

To ensure all possible benefits and protection for the zoning districts in this ordinance, land uses are classified into two categories:

**(A)** **Uses Permitted By RIGHT.** Uses and structures which can be approved by the zoning administrator for the zoning district.

**(B)** **Uses Permitted by SPECIAL USE PERMIT.** Generally accepted uses and structures within the zoning district that may require special consideration because they could present potential injurious effects upon welfare of adjacent properties and to the community as a whole. All such uses proposed shall be approved in accordance with the provisions of this ordinance, including *Article 6*.

# Section 3.06    Permitted Uses by District (NEW Table of Land Uses, which includes applicable parts of Sections 6.2–6.7)

P = Uses Permitted by Right (see also Development Standard column)
SU = Uses Permitted by Special Use Permit (see also Development Standard column)

| Use | A-1 | R-1A | R-1B | R-1C | R-1D | C-1 | Development Standard |
|---|---|---|---|---|---|---|---|
| Accessory Buildings and Structures | P | P | P | P | P | P | *Section 7.10* |
| Adult Foster Care, Family Homes | P | P | P | P | P | | *Section 6.01(A)* |
| Adult Foster Care, Small Group Homes | P | P | P | P | P | | *Section 6.01(B)* |
| Agricultural Labor Camps, fewer than five migrant workers | P | | | | | | |
| Agricultural Labor Camps, Licensed | P | | | | | | |
| Airports and Airfields | SU | | | | | | *Section 3.14* |
| Barn Storage | P | | | | | | *Section 6.02* |
| Bed and Breakfasts | SU | SU | SU | SU | SU | | *Section 6.03* |
| Cemeteries | P | | | | | | |
| Childcare, Family Home | P | P | P | P | P | | *Section 6.05* |
| Childcare, Group Home | P | P | P | P | P | | *Section 6.06* |
| Childcare Centers | | | | | | SU | *Section 6.04* |
| Dwellings, Multiple-Family | SU | SU | SU | SU | SU | | *Section 6.07* |
| Dwellings, Secondary | P | P | P | P | P | | *Section 6.08* |
| Dwellings, Single-Family | P | P | P | P | P | | |
| Essential Services | P | P | P | P | P | P | *Section 7.01* |
| Farm Supply and Implement Dealers | | | | | | SU | |
| Fences | P | P | P | P | P | P | *Section 7.11* |
| Food Processing Plants | SU | | | | | | *Section 6.10* |
| Game or Hunting Preserves Operated for Profit | SU | | | | | | |
| Gas Stations | | | | | | SU | *Section 6.11* |
| General Farming and Horticultural Uses Permitted by Right | P | P | P | P | P | | *Section 6.12* |
| Greenhouses and Nurseries (Retail Sales) | SU | | | | | | *Section 6.13* |
| Home Occupations | P | P | P | P | P | | *Section 6.14* |
| Hotels and Motels | | | | | | SU | *Section 6.15* |
| Indoor Recreation | | | | | | SU | *Section 6.16* |
| Institutional Structures and Uses | SU | SU | SU | SU | SU | SU | *Section 6.17* |
| Junkyards | | | | | | SU | *Section 6.18* |
| Keeping of Domestic Pets | P | P | P | P | P | | *Section 6.19* |
| Kennels | SU | | | | | | *Section 6.20* |
| Marinas | | | | | | SU | *Section 6.21* |
| Mining or Removal of Top Soil | P | | | | | | *Section 8.03* |
| Mobile Homes (Not in a Mobile Home Park) | P | SU | SU | SU | SU | | *Section 6.22* |
| Mobile Home Park Developments | | | | | | SU | *Section 6.23* |
| Off-Street Parking Lots | | | | | | SU | *Article 9* |
| Pet Sitters | P | P | P | P | P | P | *Section 6.14* |
| Planned Unit Developments | SU | SU | SU | SU | SU | | *Section 5.01* |
| Professional Offices | | | | | | SU | |
| Public Areas (Parks, Recreation, and Conservation Areas) | P | P | P | P | P | | *Section 6.24* |
| Raising and Keeping of Small Animals | P | | | | | | |
| Raising, Keeping, and Boarding of Livestock | P | | | | | | |
| Raising of Fur-Bearing Animals for Profit | SU | | | | | | |
| Recreational Unit Parks | SU | | | | | | *Section 6.25* |
| Recreational Unit Sales | | | | | | SU | |
| Recreational Vehicle Storage | P | P | P | P | P | | *Section 7.02* |
| Rental of Non-Owner Occupied Dwellings (30 days or more) | P | P | P | P | P | | *Section 6.26* |
| Restaurants and Taverns | | | | | | SU | |
| Retail Stores | | | | | | SU | |

**Article 3:** Zoning Districts and Map
**Section 3.06:** Permitted Uses by District

| Use | A-1 | R-1A | R-1B | R-1C | R-1D | C-1 | Development Standard |
|---|---|---|---|---|---|---|---|
| Riding Stables and Livestock Auction Yards | SU | | | | | | |
| Roadside Stands | P | | | | | | *Section 6.27* |
| Sawmills | SU | | | | | | |
| Self-Service Storage Facilities | | | | | | SU | *Section 6.28* |
| Service Institutions | | | | | | SU | |
| Sewage Treatment and Disposal Installations | SU | SU | SU | SU | SU | SU | *Section 6.29* |
| Shoreline Uses | P | P | P | P | P | P | *Section 3.13* |
| Site Condominiums | P | P | P | P | P | | *Section 5.02* |
| Solar Energy Systems, Ground Mounted (10 kW or fewer) | P | P | P | P | P | P | *Section 6.30* |
| Solar Energy Systems, Roof Mounted | P | P | P | P | P | P | *Section 6.30* |
| Storage for Agricultural Products | SU | | | | | | |
| Storage Outdoors | P | P | P | P | P | P | *Section 7.05* |
| Subdivisions | P | P | P | P | P | | See Subdivision Control Ordinance |
| Swimming Pools | P | P | P | P | P | P | *Section 7.12* |
| Temporary Buildings | P | P | P | P | P | P | *Section 7.03* |
| Tenant Houses | P | | | | | | *Section 6.31* |
| Utilities | | | | | | SU | |
| Veterinary Hospitals and Clinics | SU | | | | | | |
| Walls, Including Retaining Walls | P | P | P | P | P | P | *Section 7.11* |
| Warehousing and Light Industrial | | | | | | SU | *Section 6.32* |
| Warehousing of Products Sold at Retail on the Premises | | | | | | SU | |
| Wind Energy Conversion Systems (WECS) | SU | SU | SU | SU | SU | SU | *Section 6.33* |
| Winery/Farm Processing Facilities | P | | | | | | *Section 6.34* |
| Winery, Remote Tasting Rooms | SU | | | | | | *Section 6.35* |
| Winery-Chateaus | SU | | | | | | *Section 6.36* |
| Wireless Communication Facilities | SU | | | | | SU | *Section 6.37* |

P = Uses Permitted by Right (see also Development Standard column)
SU = Uses Permitted by Special Use Permit (see also Development Standard column)

# Section 3.07     A-1, Agricultural District (currently Section 6.7)

## (A)  Intent and Purpose (currently Section 6.7.1)

The A-1 agricultural district is intended to recognize the unique ecological character of the Old Mission Peninsula and to preserve, enhance, and stabilize existing areas within the township that are presently being used predominately for farming purposes. There are lands within the district that are not suited to agriculture, therefore allowing other limited uses that are deemed to be compatible with agricultural and open space uses.

| (B)  Uses Permitted by Right | (C)  Uses Permitted by Special Use Permit |
|---|---|
| • Accessory Buildings and Structures (*Section 7.10*)<br>• Adult Foster Care, Family Homes (*Section 6.01(A)*)<br>• Adult Foster Care, Small Group Homes (*Section 6.01(B)*)<br>• Agricultural Labor Camps, Fewer than Five Migrant Workers<br>• Agricultural Labor Camps, Licensed<br>• Barn Storage (*Section 6.02*)<br>• Cemeteries<br>• Childcare, Family Homes (*Section 6.05*)<br>• Childcare, Group Homes (*Section 6.06*)<br>• Dwellings, Secondary (*Section 6.08*)<br>• Dwellings, Single-Family<br>• Essential Services (*Section 7.01*)<br>• Fences (*Section 7.11*)<br>• General Farming and Horticultural Uses Permitted by Right (*Section 6.12*)<br>• Home Occupations (*Section 6.14*)<br>• Keeping of Domestic Pets (*Section 6.19*)<br>• Mining or Removal of Top Soil (*Section 8.03*)<br>• Mobile Homes (not in a Mobile Home Park) (*Section 6.22*)<br>• Pet Sitters (*Section 6.14*)<br>• Public Areas (Parks, Recreation, and Conservation Areas) (*Section 6.24*)<br>• Raising and Keeping of Small Animals<br>• Raising, Keeping, and Boarding of Livestock<br>• Recreational Vehicle Storage (*Section 7.02*)<br>• Rental of Non-Owner Occupied Dwelling (30 days or more) (*Section 6.26*)<br>• Roadside Stands (*Section 6.27*)<br>• Shoreline Uses (*Section 3.13*)<br>• Site Condominiums (*Section 5.02*)<br>• Solar Energy Systems, Ground Mounted (10kW or fewer) (*Section 6.30*)<br>• Solar Energy Systems, Roof Mounted (*Section 6.30*)<br>• Storage Outdoor (*Section 7.05*)<br>• Subdivisions (see Subdivision Control Ordinance)<br>• Swimming Pools (*Section 7.12*)<br>• Temporary Buildings (*Section 7.03*)<br>• Tenant Houses (*Section 6.31*)<br>• Walls, Including Retaining Walls (*Section 7.11*)<br>• Winery/Farm Processing Facility (*Section 6.34*) | • Airports and Airfields (*Section 3.14*)<br>• Bed and Breakfasts (*Section 6.03*)<br>• Dwellings, Multiple-Family (*Section 6.07*)<br>• Food Processing Plants (*Section 6.10*)<br>• Game or Hunting Preserves Operated for Profit<br>• Greenhouses and Nurseries (Retail Sales) (*Section 6.13*)<br>• Institutional Structures and Uses (*Section 6.17*)<br>• Kennels (*Section 6.20*)<br>• Planned Unit Developments (*Section 5.01*)<br>• Raising of Fur-Bearing Animals for Profit<br>• Recreational Unit Parks (*Section 6.25*)<br>• Riding Stables and Livestock Auction Yards<br>• Sawmills<br>• Sewage Treatment and Disposal Installations (*Section 6.29*)<br>• Storage for Agricultural Products<br>• Veterinary Hospitals and Clinics<br>• Wind Energy Conversion Systems (WECS) (*Section 6.33*)<br>• Winery, Remote Tasting Room (*Section 6.35*)<br>• Winery-Chateaux (*Section 6.36*)<br>• Wireless Communications Facilities (*Section 6.37*) |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to* Section 3.06*.*

| (D)  Dimension Regulations (currently Section 6.7.4 and Section 6.8) | | | |
|---|---|---|---|
| *Lot Standards* | | *Minimum Setbacks* | |
| *Min. Lot Area (sq. ft.)* | 5 acres | *Front Yard* | 35 feet |
| *Min. Lot Width (ft.)* | 330 feet | *Side Yard* | 50 feet |
| *Max. Lot Coverage (%)* | n/a | *Rear Yard* | 50 feet |
| *Max. Building Height (ft.)* | 35 feet | *Ordinary High Water Mark* | 60 feet (*see Section 3.13*) |
| *Max. Building Height (stories)* | 2.5 stories | | |
| *Min. Building Width of a Principal Structure* | n/a | | |

*Dimension Regulations are subject to* Article 4 *"Schedule of Regulations" limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

**Article 3:** Zoning Districts and Map
**Section 3.08:** R-1A, Rural and Hillside Residential District

## Section 3.08    R-1A, Rural and Hillside Residential District (currently Section 6.2)

| (A)  Intent and Purpose (currently Section 6.2.1) |
|---|
| The R-1A Rural and Hillside Residential District sets standards for the continued development of: (1) rural areas suited to very low density residential development; (2) fragile hillside areas; and (3) interface areas between more intensive residential uses and agricultural land uses. This district includes existing low density residential developments as well as areas within which such development appears both likely and desirable. |

| (B)  Uses Permitted by Right | (C)  Uses Permitted by Special Use Permit |
|---|---|
| <ul><li>Accessory Buildings and Structures (*Section 7.10*)</li><li>Adult Foster Care, Family Homes (*Section 6.01(A)*)</li><li>Adult Foster Care, Small Group Homes (*Section 6.01(B)*)</li><li>Childcare, Family Homes (*Section 6.05*)</li><li>Childcare, Group Homes (*Section 6.06*)</li><li>Dwellings, Secondary (*Section 6.08*)</li><li>Dwellings, Single Family</li><li>Essential Services (*Section 7.01*)</li><li>Fences (*Section 7.11*)</li><li>General Farming and Horticultural Uses Permitted by Right (*Section 6.12*)</li><li>Home Occupations (*Section 6.14*)</li><li>Keeping of Domestic Pets (*Section 6.19*)</li><li>Pet Sitters *(Section 6.14)*</li><li>Public Areas (Parks, Recreation, and Conservation Areas) (*Section 6.24*)</li><li>Recreational Vehicle Storage (*Section 7.02*)</li><li>Rental of Non-Owner Occupied Dwellings (30 days or more) (*Section 6.26*)</li><li>Shoreline Uses (*Section 3.13*)</li><li>Site Condominiums (*Section 5.02*)</li><li>Solar Energy Systems, Ground Mounted (10kW or fewer) (*Section 6.30*)</li><li>Solar Energy Systems, Roof Mounted (*Section 6.30*)</li><li>Storage Outdoors (*Section 7.05*)</li><li>Subdivisions (see Subdivision Control Ordinance)</li><li>Swimming Pools (*Section 7.12*)</li><li>Temporary Buildings (*Section 7.03*)</li><li>Walls, including Retaining Walls (*Section 7.11*)</li></ul> | <ul><li>Bed and Breakfasts (*Section 6.03*)</li><li>Dwellings, Multiple-Family (*Section 6.07*)</li><li>Institutional Structures and Uses (*Section 6.17*)</li><li>Mobile Homes (not in a Mobile Home Park) (*Section 6.22*)</li><li>Planned Unit Developments (*Section 5.01*)</li><li>Sewage Treatment and Disposal Installations (*Section 6.29*)</li><li>Wind Energy Conversion Systems (WECS) (*Section 6.33*)</li></ul> |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to Section 3.06.*

| (D)  Dimension Regulations (currently Section 6.2.7 and Section 6.8) | | | |
|---|---|---|---|
| *Lot Standards* | | *Minimum Setbacks* | |
| Min. Lot Area | 1 acre | Front Yard | 30 feet |
| Min. Lot Width (ft.) | 150 feet | Side Yard | 15 feet |
| Max. Lot Coverage (%) | 15% | Rear Yard | 30 feet |
| Max. Building Height (ft.) | 35 feet | Ordinary High Water Mark | 60 feet (*see Section 3.13*) |
| Max. Building Height (stories) | 2.5 stories | | |
| Min. Building Width of a Principal Structure | 24 feet | | |

*Dimension regulations are subject to Article 4, "Schedule of Regulations," limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

# Section 3.09   R-1B, Coastal Zone Residential District (currently Section 6.3)

| (A)  Intent and Purpose (currently Section 6.3.1) |
|---|
| The R-1B coastal zone residential district sets standards for the development of residential properties of a semi-rural character along lakeshore drives and in areas of high scenic value where more intensive development would deteriorate the environment and less intensive development is not essential to maintain the established environment. |

| (B)  Uses Permitted by Right | (C)  Uses Permitted by Special Use Permit |
|---|---|
| <ul><li>Accessory Buildings and Structures (*Section 7.10*)</li><li>Adult Foster Care, Family Homes (*Section 6.01(A)*)</li><li>Adult Foster Care, Small Group Homes (*Section 6.01(B)*)</li><li>Childcare, Family Homes (*Section 6.05*)</li><li>Childcare, Group Homes (*Section 6.06*)</li><li>Dwellings, Secondary (*Section 6.08*)</li><li>Dwellings, Single Family</li><li>Essential Services (*Section 7.01*)</li><li>Fences (*Section 7.11*)</li><li>General Farming and Horticultural Uses Permitted by Right (*Section 6.12*)</li><li>Home Occupations (*Section 6.14*)</li><li>Keeping of Domestic Pets (*Section 6.19*)</li><li>Pet Sitters (*Section 6.14*)</li><li>Public Areas (Parks, Recreation, and Conservation Areas) (*Section 6.24*)</li><li>Recreational Vehicle Storage (*Section 7.02*)</li><li>Rental of Non-Owner Occupied Dwelling (30 days or more) (*Section 6.26*)</li><li>Shoreline Uses (*Section 3.13*)</li><li>Site Condominiums (*Section 5.02*)</li><li>Solar Energy Systems, Ground Mounted (10kW or fewer) (*Section 6.30*)</li><li>Solar Energy Systems, Roof Mounted (*Section 6.30*)</li><li>Storage Outdoors (*Section 7.05*)</li><li>Subdivision (see Subdivision Control Ordinance)</li><li>Swimming Pools (*Section 7.12*)</li><li>Temporary Buildings (*Section 7.03*)</li><li>Walls, Including Retaining Walls (*Section 7.11*)</li></ul> | <ul><li>Bed and Breakfasts (*Section 6.03*)</li><li>Dwellings, Multiple Family (*Section 6.07*)</li><li>Institutional Structures and Uses (*Section 6.17*)</li><li>Mobile Homes (Not in a Mobile Home Park) (*Section 6.22*)</li><li>Planned Unit Developments (*Section 5.01*)</li><li>Sewage Treatment and Disposal Installations (*Section 6.29*)</li><li>Wind Energy Conversion Systems (WECS) (*Section 6.33*)</li></ul> |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to Section 3.06.*

| (D)  Dimension Regulations (currently Section 6.3.4 and Section 6.8) | | | |
|---|---|---|---|
| **Lot Standards** | | **Minimum Setbacks** | |
| *Min. Lot Area (sq. ft.)* | 25,000 sq. ft. | *Front Yard* | 30 feet |
| *Min. Lot Width (ft.)* | 100 feet | *Side Yard* | 15 feet |
| *Max. Lot Coverage (%)* | 15% | *Rear Yard* | 30 feet |
| *Max. Building Height (ft.)* | 35 feet | *Ordinary High Water Mark* | 60 feet *(see Section 3.13)* |
| *Max. Building Height (stories)* | 2.5 stories | | |
| *Min. Building Width of a Principal Structure* | 24 feet | | |

*Dimension regulations are subject to Article 4, "Schedule of Regulations," limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

# Section 3.10     R-1C, Suburban Residential Development District (currently Section 6.4)

## (A) Intent and Purpose (currently Section 6.4.1)

The R-1C suburban residential district encourages medium density residential development associated with proximate areas of Traverse City. Such development shall fall within the logical service pattern of the regional wastewater treatment system whether or not serviced by that system.

| (B) Uses Permitted by Right | (C) Uses Permitted by Special Use Permit |
|---|---|
| • Accessory Buildings and Structures (*Section 7.10*) | • Bed and Breakfasts (*Section 6.03*) |
| • Adult Foster Care, Family Homes (*Section 6.01(A)*) | • Dwellings, Multiple Family (*Section 6.07*) |
| • Adult Foster Care, Small Group Homes (*Section 6.01(B)*) | • Institutional Structures and Uses (*Section 6.17*) |
| • Childcare, Family Homes (*Section 6.05*) | • Mobile Homes (Not in a Mobile Home Park) (*Section 6.22*) |
| • Childcare, Group Homes (*Section 6.06*) | • Planned Unit Developments (*Section 5.01*) |
| • Dwellings, Secondary (*Section 6.08*) | • Sewage Treatment and Disposal Installations (*Section 6.29*) |
| • Dwellings, Single Family | • Wind Energy Conversion Systems (WECS) (*Section 6.33*) |
| • Essential Services (*Section 7.01*) | |
| • Fences (*Section 7.11*) | |
| • General Farming and Horticultural Uses Permitted by Right (*Section 6.12*) | |
| • Home Occupations (*Section 6.14*) | |
| • Keeping of Domestic Pets (*Section 6.19*) | |
| • Pet Sitters (*Section 6.14*) | |
| • Public Areas (Parks, Recreation, and Conservation Areas) (*Section 6.24*) | |
| • Recreational Vehicle Storage (*Section 7.02*) | |
| • Rental of Non-Owner Occupied Dwelling (30 days or more) (*Section 6.26*) | |
| • Shoreline Uses (*Section 3.13*) | |
| • Site Condominiums (*Section 5.02*) | |
| • Solar Energy Systems, Ground Mounted (10kW or fewer) (*Section 6.30*) | |
| • Solar Energy Systems, Roof Mounted (*Section 6.30*) | |
| • Storage Outdoors (*Section 7.05*) | |
| • Subdivision (see Subdivision Control Ordinance) | |
| • Swimming Pools (*Section 7.12*) | |
| • Temporary Buildings (*Section 7.03*) | |
| • Walls, Including Retaining Walls (*Section 7.11*) | |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to Section 3.06.*

| (D) Dimension Regulations (currently Section 6.4.3 and Section 6.8) | | | | |
|---|---|---|---|---|
| ***Lot Standards*** | | ***Minimum Setbacks*** | | |
| *Min. Lot Area (sq. ft.)* | 20,000 sq. ft. | *Front Yard* | 25 feet | |
| *Min. Lot Width (ft.)* | 100 feet | *Side Yard* | 15 feet | |
| *Max. Lot Coverage (%)* | 25% | *Rear Yard* | 30 feet | |
| *Max. Building Height (ft.)* | 35 feet | *Ordinary High Water Mark* | 60 feet (*see Section 3.13*) | |
| *Max. Building Height (stories)* | 2.5 stories | | | |
| *Min. Building Width of a Principal Structure* | 24 feet | | | |

*Dimension regulations are subject to Article 4, "Schedule of Regulations," limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

# Section 3.11 R-1D, Community Residential District (currently Section 6.5)

| (A) Intent and Purpose (currently Section 6.5.1) |
|---|
| The R-1D community residential district encourages moderately high density development where community services such as fire protection, schools, commercial development, and community parks and services are available. |

| (B) Uses Permitted by Right | (C) Uses Permitted by Special Use Permit |
|---|---|
| • Accessory Buildings and Structures (*Section 7.10*)<br>• Adult Foster Care, Family Homes (*Section 6.01(A)*)<br>• Adult Foster Care, Small Group Homes (*Section 6.01(B)*)<br>• Childcare, Family Homes (*Section 6.05*)<br>• Childcare, Group Homes (*Section 6.06*)<br>• Dwellings, Secondary (*Section 6.08*)<br>• Dwellings, Single Family<br>• Essential Services (*Section 7.01*)<br>• Fences (*Section 7.11*)<br>• General Farming and Horticultural Uses Permitted by Right (*Section 6.12*)<br>• Home Occupations (*Section 6.14*)<br>• Keeping of Domestic Pets (*Section 6.19*)<br>• Pet Sitters (*Section 6.14*)<br>• Public Areas (Parks, Recreation, and Conservation Areas) (*Section 6.24*)<br>• Recreational Vehicle Storage (*Section 7.02*)<br>• Rental of Non-Owner Occupied Dwelling (30 days or more) (*Section 6.26*)<br>• Shoreline Uses (*Section 3.13*)<br>• Site Condominiums (*Section 5.02*)<br>• Solar Energy Systems, Ground Mounted (10kW or less) (*Section 6.30*)<br>• Solar Energy Systems, Roof Mounted (*Section 6.30*)<br>• Storage Outdoors (*Section 7.05*)<br>• Subdivision (see Subdivision Control Ordinance)<br>• Swimming Pools (*Section 7.12*)<br>• Temporary Buildings (*Section 7.03*)<br>• Walls, Including Retaining Walls (*Section 7.11*) | • Bed and Breakfasts (*Section 6.03*)<br>• Dwellings, Multiple Family (*Section 6.07*)<br>• Institutional Structures and Uses (*Section 6.17*)<br>• Mobile Homes (Not in a Mobile Home Park) (*Section 6.22*)<br>• Mobile Home Park Developments (*Section 6.23*)<br>• Planned Unit Developments (*Section 5.01*)<br>• Sewage Treatment and Disposal Installations (*Section 6.29*)<br>• Wind Energy Conversion Systems (WECS) (*Section 6.33*) |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to Section 3.06.*

| (D) Dimension Regulations (currently Section 6.5.4 and Section 6.8) | | | | |
|---|---|---|---|---|
| *Lot Standards* | | | *Minimum Setbacks* | |
| *Min. Lot Area (sq. ft.)* | 15,000 sq. ft. | | *Front Yard* | 25 feet |
| *Min. Lot Width (ft.)* | 100 feet | | *Side Yard* | 15 feet |
| *Max. Lot Coverage (%)* | 30% | | *Rear Yard* | 30 feet |
| *Max. Building Height (ft.)* | 35 feet | | *Ordinary High Water Mark* | 60 feet (*see Section 3.13*) |
| *Max. Building Height (stories)* | 2.5 stories | | | |
| *Min. Building Width of a Principal Structure* | 24 feet | | | |

*Dimension regulations are subject to Article 4, "Schedule of Regulations," limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

# Section 3.12        C-1, Commercial District (currently Section 6.6)

| (A) Intent and Purpose (currently Section 6.6.1) |
| --- |
| The C-1 commercial district allows for convenience-type shopping for township residents and for limited marina and transient lodging facilities. It is the purpose of this regulation to avoid undue congestion on major highways and to promote smooth and safe traffic flow along highway routes. Commercial activities within this district are those that primarily offer goods and services that are generally required by a family at intervals of a week or less. |

| (B) Uses Permitted by Right | (C) Uses Permitted by Special Use Permit |
| --- | --- |
| <ul><li>Accessory Buildings and Structures (*Section 7.10*)</li><li>Essential Services (*Section 7.01*)</li><li>Fences (*Section 7.11*)</li><li>Pet Sitters  (*Section 6.14*)</li><li>Shoreline Uses (*Section 3.13*)</li><li>Solar Energy Systems, Ground Mounted (10kW or less) (*Section 6.30*)</li><li>Solar Energy Systems, Roof Mounted (*Section 6.30*)</li><li>Storage Outdoors (*Section 7.05*)</li><li>Swimming Pools (*Section 7.12*)</li><li>Temporary Buildings (*Section 7.03*)</li><li>Walls, Including Retaining Walls (*Section 7.11*)</li></ul> | <ul><li>Childcare Centers (*Section 6.04*)</li><li>Farm Supply and Implement Dealers</li><li>Gas Stations (*Section 6.11*)</li><li>Hotels and Motels (*Section 6.15*)</li><li>Indoor Recreation (*Section 6.16*)</li><li>Institutional Structures and Uses (*Section 6.17*)</li><li>Junkyards (*Section 6.18*)</li><li>Marinas (*Section 6.21*)</li><li>Off-Street Parking Lots (*Article 9*)</li><li>Professional Offices</li><li>Recreational Unit Sales</li><li>Restaurants and Taverns</li><li>Retail Stores</li><li>Self-Service Storage Facility (*Section 6.28*)</li><li>Service Institutions</li><li>Sewage Treatment and Disposal Installations (*Section 6.29*)</li><li>Utilities</li><li>Warehousing and Light Industrial (*Section 6.32*)</li><li>Warehousing of Products Sold at Retail on Premises</li><li>Wind Energy Conversion Systems (WECS) (*Section 6.33*)</li><li>Wireless Communication Facilities (*Section 6.37*)</li></ul> |

*The above list is a summary of uses permitted by right or special land use approval in the district, subject to Section 3.06.*

| (D) Dimension Regulations (currently Section 6.6.4 and Section 6.8) | | | |
| --- | --- | --- | --- |
| *Lot Standards* | | *Minimum Setbacks* | |
| *Min. Lot Area (sq. ft.)* | 25,000 sq. ft. | *Front Yard* | 35 feet |
| *Min. Lot Width (ft.)* | 150 feet | *Side Yard* | 10 feet |
| *Max. Lot Coverage (%)* | 35% | *Rear Yard* | 30 feet |
| *Max. Building Height (ft.)* | 35 feet | *Ordinary High Water Mark* | 60 feet (*see Section 3.13*) |
| *Max. Building Height (stories)* | 2.5 stories | | |
| *Min. Building Width of a Principal Structure* | n/a | | |

*Dimension regulations are subject to Article 4, "Schedule of Regulations," limiting the height and size of buildings, the minimum size of lots permitted, the minimum yard setbacks required, and the maximum lot coverage permitted.*

## Section 3.13    Great Lakes Shoreline Regulations (Currently Sections 6.2 and 7.4)

**(A)  Intent and Purpose.** It is the intent and purpose of these shoreline regulations to protect and preserve the 42 miles of Grand Traverse Bay shoreline in Peninsula Township and to promote the health, safety, and welfare of the general public while allowing multiple uses. The water levels of the Great Lakes vary continually, and high water, wave action, or ice can cause damage to existing structures and property and can also become a hazard to neighboring properties. Shallow waters near shore also support lake ecology and provide habitat for a greater variety of organisms than all other aquatic areas.

To protect and preserve the Grand Traverse Bay shoreline, a number of best management practices are embodied in the following regulations. These include measures to minimize the effects of waves, ice, fluctuating water levels, and erosion and to maintain water quality, ecological health, and scenic views. These regulations also support best management practices associated with the Michigan Department of Environmental Quality.

**(B)  Great Lakes Coastal Elevations and Marks.** Coastal elevations or marks are measurements in feet above sea level along the Great Lakes. The federal government, state, and county agencies have established these marks and the township subsequently adopted them. The ordinary high water mark (OHWM) is 580.5 feet above sea level I.G.L.D. 1985 (International Great Lakes Datum) as defined and regulated under Part 325, Department of Environmental Quality, and shown below *(see Figure 3-1).* This elevation is the point from which certain setbacks are defined, and represents the point from which the boundaries of the waterfront regulated area and upland regulated area are defined as shown in *Figure 3-2.* The floodplain is established by the most current FEMA FIRM panel maps (adopted by Peninsula Township effective August 28, 2018). The base flood elevation is provided in the flood insurance study (FIS) report and flood insurance rate maps (FIRM). The lowest level for a habitable floor in a structure shall be constructed above the floodplain level and base flood elevation (BFE) in compliance with applicable local, state, federal, and international building codes as enforced by the Grand Traverse County Construction Code. (See *Figure 3 1* and also regulations for floodplain in *Section 8.02).*

### Figure 3-1. Elevations and Marks along Great Lakes Shoreline



**(C)  Establishment of Great Lakes Shoreline Regulated Areas**. There are two regulated areas along the Great Lakes Shoreline, measured inland from the ordinary high water mark (OHWM). These areas are described and illustrated below *(See Figure 3-1).*

(1) **Waterfront Regulated Area**. The beach area and 60 feet inland from the OHWM (see *Section 3.13(E)*).

(2) **Upland Regulated Areas.** Two hundred feet from the OHWM for grading, dredging, or filling (see *Section 3.13(G)(1)*) and commercial forestry (see *Section 3.13(G)(2)*).

Additionally, the area between the OHWM and 500 feet inland is subject to regulations related to soil erosion and stormwater management (see *Section 3.13(F)(3) and Section 8.05),* and most of the Great Lakes shoreline is also associated with a floodplain. The floodplain boundary relates to the base flood elevation. Associated regulations are contained in *Article 8.*

### Figure 3-2. Great Lakes Shoreline Regulated Areas



(D) **Land Use Permit Required.** Activities within the waterfront area and upland area such as increasing the amount of impervious cover on the parcel, earth moving or filling, or reducing the amount of vegetated buffer or tree canopy cover require a land use permit. A site plan for the parcel must be presented to the zoning administrator for administrative review to ensure compliance with these regulations.

(1) The requirement for a land use permit is in addition to any county soil erosion and sedimentation control (SESC) or other county or state requirement that may apply.

(2) Regulations on stormwater management may also apply to parcels with structures or impervious surfaces (see *Section 8.05).*

(3) Regulations in this section apply in addition to those contained in the applicable zoning district. Where the provisions of this section conflict with other applicable zoning requirements, the provisions of this section shall apply.

(4) Normal gardening activities and maintenance of landscaping in compliance with this section do not require a land use permit.

(E)   **Waterfront Regulated Area (most from current Section 7.4.4).**

   (1)   **Intent and Purpose.** The intent and purpose of the waterfront regulated area is to protect the natural vegetation along the shoreline in order to prevent erosion, improve stormwater quality, limit invasive shoreline plants, and limit the application of pesticides, herbicides, and fertilizers while maintaining fish and wildlife habitats within areas of the township shoreline.

   (2)   **Docks (currently Section 6.2.2(2)(c)).**

   (a)   **Docks and Boat Hoists.** A maximum of one dock is allowed per parcel.  This dock may have one boat hoist per 50 feet of shoreline associated with the parcel, measured at the OHWM. Any pre-existing lot of record is allowed at least one dock and one boat hoist. No part of any dock or hoist may be located within 15 feet from a line that represents an extension of the side lot lines into the water, generally perpendicular to the shore, except as provided for in (e) below.  Docks and hoists are temporary structures, as provided for in (d) below, and those existing at the time of adoption of this ordinance section must meet all requirements upon installation for the following year.

   **Figure 3-3. Dock and Hoist Placement**



   (b)   **Nonconforming Lots.** A maximum of one dock and one boat hoist is allowed on properties of insufficient size for a single-family dwelling, provided the lot is a pre-existing lot of record or has a minimum width of 50 feet; and a minimum of two  parking places must be provided off the adjacent road right of way. In the event of properties owned by the same party being separated by a road, parking may be provided on the inland parcel and need not be in excess of that required for a single-family dwelling.

   (c)   **Maximum Dock Width and Length.** No dock shall be wider than seven feet and no longer than necessary to provide adequate water depth for the boat using the dock or boat hoist.

   (d)   **Storage of Docks and Hoists.** Docks and hoists are temporary structures and must be removed on or before December 31 of each year to avoid ice damage and to prevent potential hazards to navigation and neighboring properties.

   (e)   **Shared Waterfront Docks.** Docks and hoists on shared waterfront properties are allowed provided that each property owner provides to the zoning administrator such owner's written consent to the sharing arrangement and provided that such arrangement does not result in any more docks or hoists than would otherwise be allowed.

   (3)   **Temporary Storage of Docks and Boat Hoists.** Temporary off-season storage of portable docks, boats, boat hoists, and other water recreational items is permitted provided that

storage does not take place in a required side yard setback or road right of way. All items stored outdoors shall be operational.

(4) **Septic Areas Prohibited.** Septic tanks and septic systems filtration fields are prohibited unless the Grand Traverse County Health Department determines that there is no other feasible location.

(5) **Paths and Impervious in-Ground Structures.** Any paths or passages on the ground within the vegetated buffer strip (see *Section 3.13(E)(7)*) shall be so constructed or surfaced as to be pervious and effective in controlling erosion. Patios and similar impervious surfaces are prohibited.

(6) **Structures and Impervious Surfaces.** Any above-ground structure or impervious surface such as a deck, walkway, or boat ramp must be reviewed and approved by the township zoning administrator and other applicable reviewing agencies prior to construction taking place. Boardwalks three or fewer feet in width shall be laid on the surface of the ground with no post holes or piers using open pile construction. Access steps required to negotiate changes in site elevation are permitted provided that landings are no greater than four feet by four feet.

(7) **Vegetated Buffer Strip Required.** At least 70% of the first 35 feet landward from the OHWM shall be a vegetated buffer strip covered with a mixture of deep rooted trees, deep rooted shrubs, and other plants to establish a viable land cover. A minimum of 30% of the tree and shrub cover must be made up of a mature canopy or trees that are well suited for the site and will be at least 40 feet in height at maturity. Trees shall be preserved so that views from the Grand Traverse Bay have an appearance of being unbroken and to prevent shoreline erosion. This is not intended to prevent the selective trimming for views and removal of diseased or unhealthy trees, however clearcutting is prohibited. Trees and the vegetated strip are the most successful methods to retain the shoreline, filter nutrients, reduce the water and wind dynamics that erode property and destroy the character of the Township. Because turf grasses do not have the holding power of deep rooted plants, not more than 50% of the vegetated buffer strip may be turf grasses. Natural shrubbery shall be preserved as far as practicable, and where removed it shall be replaced with other vegetation that is equally effective in retarding runoff, preventing erosion, and preserving natural beauty.

(8) **Plant Materials and Species.** Vegetation used to provide the required buffer strip shall consist of non-invasive trees, shrubs, and dune grasses. Use of native plant species is encouraged. The township may maintain and provide a list of invasive and other prohibited species.

   (a) **General.** Harvesting of trees shall not occur except in conformance with a forest management plan prepared by, and under the supervision of, a professional forester and/or licensed landscape architect using Michigan Department of Natural Resources best management practices for forestry.

   (b) **Vegetation.** A minimum of 30% of the tree and shrub cover will be made up of a mature canopy or tress that are well suited for the site and will be at least 40 feet in height at maturity. Trees shall be preserved so that views from Grand Traverse Bay have an appearance of being unbroken and to prevent shoreline erosion. This is not intended to prevent the selective trimming for views and removal of diseased or unhealthy trees, however clearcutting is prohibited.

(9) **Removal of Shore Tree and Shrub Cover in the Waterfront Area (currently Section 7.4.4).** Regulation of tree and shrub cutting along the Great Lakes shoreline is necessary to protect scenic beauty, control erosion, and reduce effluent and nutrient flow from the shore land. These provisions shall not apply to the removal of dead, diseased, or dying trees and shrubs at the discretion of the landowner or to silvicultural thinning upon recommendation of a forester. Tree cutting in a strip parallel to the shoreline and extending 35 feet inland from all points along the OHWM of the shoreline shall be limited to:

(a) **Maximum Clearing.** No more than 30% of the length of this strip shall be clear cut to the depth of the strip.

(b) **Maximum Clear Cut Opening.** Cutting of this 30% shall not create a clear cut opening in this strip greater than 30 feet wide for every 100 feet of shoreline.

(c) **Remaining Vegetative Cover.** In the remaining 70% length of this strip, cutting shall leave sufficient cover to screen cars, dwellings, and accessory structures as seen from the water to preserve natural beauty and to control erosion.

(d) **Re-Vegetation.** If the vegetative cover is less than 70% prior to construction activity or if the construction activity will result in reducing the vegetative coverage to less than 70%, then the plan submitted for the land use permit shall include additional vegetative cover to be planted in the waterfront/OHWM area that will achieve 70% vegetative coverage over the long term. The plan submitted by the applicant to meet this requirement shall be certified by a registered landscape architect. If compliance with this requirement is not feasible, the applicant's registered landscape architect must state the reasons on the certified plan.

(e) **Alternate Tree Cutting Plan.** As an alternative to the above requirements, a special cutting plan allowing greater cutting may be permitted by the zoning administrator, or the zoning administrator may defer the decision to the planning commission. In applying for such a permit, the zoning administrator or planning commission shall require the lot owner to submit a site plan that includes the location of all structures, the location of parking, the gradient of the land, the existing vegetation, the proposed cutting, and the proposed replanting. The plan shall be certified by a registered landscape architect. The approving authority may grant such a permit only if it finds that such special cutting plans:

(i) Will not cause undue erosion or destruction of scenic beauty; and

(ii) Will provide substantial shielding from the water of dwellings, accessory structures, and parking areas. The zoning administrator may condition such a permit upon a guarantee of tree planting by the lot owner via a performance guarantee and development agreement reviewed by the township attorney.

(10) **Yard Waste Storage Prohibited.** Storage of leaves, grass clippings, and similar yard and garden waste is prohibited.

(11) **Dredging and Filling.** Dredging and filling, including the addition of beach sand, is prohibited within any floodplain, wetland area, or below the OHWM. (See also *Section 8.02*, *Section 8.01*, and *Section 3.13(G)*.)

(12) **Seawalls.** The best protection for structures and property on the shoreline are methods that use natural shoreline treatments such as plantings and natural stone to limit the loss of property due to erosion. Where vertical seawalls are built, the gradual transition from shallow water to upland is destroyed. In addition, wave action off vertical seawalls causes bottom scouring to occur, stirs bottom sediments, increases water turbidity, and impacts spawning areas and aquatic vegetation. These negative effects of vertical seawalls on natural resources damage not only the subject property but also adjacent properties. Therefore, the zoning administrator may issue a land use permit for a seawall only to protect an existing structure and only if:

(a) A registered engineer has submitted a certified report that all other options have been reviewed to protect the property and a seawall is the only feasible option. This report must be submitted to the zoning administrator and must be approved by the township engineer;

**(b)**   A permit has been obtained from MDEQ and the U.S. Army Corps of Engineers; and
**(c)**   All floodplain requirements of *Section 8.02* have been met.

(13)   **Road Ends.** There shall be no structures or restriction of access at public road ends.

**(F)**   **Decks, Storage, and Walkways Located in the Waterfront Regulated Area . (currently Section 6.2.2(2)(d)).**

(1)   **Intent.** It is the intent of this section to allow reasonable use of shoreline property by allowing decks with attached seating and enclosed storage to be located in the waterfront regulated area. It is also intended to only allow decks in locations where shoreline vegetation can be retained to protect scenic beauty, control erosion, reduce septic tank effluent, and reduce other nutrients from entering the water. It is recognized that there are shoreline areas where decks and/or storage are not appropriate or reasonable because of the limited area between the road right of way and the OHWM. It is also recognized that the level of the Great Lakes varies over time, and it can be hazardous to build structures where they may be damaged by high water or become a hazard to boats or neighboring properties if they are destroyed by wave action.

(2)   **Deck and Storage Requirements.** Uncovered decks (including attached seating or attached storage) shall be allowed within the area between the OHWM and the front yard setback for properties with a dwelling or within the area between the OHWM and the road right of way for properties without a dwelling, provided all of the following are met:

(a)   **Location.** All parts of the deck, attached seating, storage, and railing shall be constructed within a building envelope as illustrated and described below (see *Figure 3-4*).

### Figure 3-4. Deck Elevation, Setbacks, and Standards



(i)   **Ordinary High Water Mark Setback.** Located a minimum distance of 35 feet from the OHWM.
(ii)   **Above**
(iii)   **Flood Elevation.** Compliance with *Section 8.02.*
(iv)   **Side Yard Setback.** Located at least 15 feet from the side lot line.
(v)   **Maximum Height of Deck.** The floor of the deck at any point shall not have a height greater than 30 inches above the finished grade of the site and no higher than the center of the traveled surface of the adjacent road.
(vi)   **Maximum Height of Attached Seating.** Attached seating shall be no higher than 34 inches above the floor of the deck, provided that it is no higher than 34 inches above the center of the traveled surface of the adjacent road.
(vii)   **Maximum Height of Enclosed Storage.** Enclosed storage shall be no higher than 34 inches above the floor of the deck, provided that it is no higher than 34 inches above the center of the traveled surface of the adjacent road.

(b) **Allowable Attachments.** There shall be no walls, roofs, or other construction attached to a deck other than the allowed seating, storage, and railings required to meet the minimum requirements of construction codes.

(c) **Unattached Items**. Unattached items such as umbrellas, grills, swings, or hammocks are allowed as accessories to a deck.

(d) **Concealment of Enclosed Storage.** Enclosed storage areas shall be constructed so as to conceal all stored material.

(e) **Maximum Coverage Area on Lots without a Residence.** The total area of land covered by the deck, seating, and storage located within the waterfront area and located outside of the required side yard setbacks and any road right-of-way extending from the OHWM shall not exceed 10%. If at a future time a residence is to be constructed, before the occupancy permit is approved, the areas of the deck, seating, and storage shall be removed. For lots with a residential dwelling, the maximum lot coverage shall meet the requirements of the zoning district (see *Section 4.02*).

(f) **Prohibited Structures**. Patios and similar impervious structures are prohibited within 35 feet of the OHWM.

(g) **Prohibited in Road Right-of-Way or Private Road Easement**. No deck shall be constructed within a road right-of-way or private road easement.

**(G) Upland Area Regulations.** The following regulations apply within 200 feet of the OHWM:

(1) **Grading, Dredging, or Filling (currently Section 7.4.3).** In addition to any state, county, or local soil erosion and sedimentation control requirements, the following rules shall apply to any filling, grading, or other earth movement beyond normal gardening within 200 feet of the OHWM to prevent harmful erosion and related sedimentation:

(a) The smallest amount of bare ground shall be exposed for as short a time as feasible;

(b) Temporary ground cover such as mulch must be used as soon as possible and permanent cover, such as sod, shall be planted;

(c) Diversions, silting basins, terraces, and other methods must be used to trap any sediment; and

(d) Fill must be stabilized according to accepted engineering practices.

(2) **Commercial Forestry.** From the inland edge of the required 35-foot vegetated buffer strip to the 200-foot limit of the upland area, the commercial harvesting of trees shall be allowed only when accomplished under accepted forest management practices. The maintenance and improvement of water quality shall be emphasized in all timber harvesting operations. The purpose of this provision will favor long-lived species.

**(H) Soil Erosion, Sedimentation, and Stormwater Management Regulations.** For all areas within 500 feet of the OHWM, Grand Traverse County requires soil erosion permits and Peninsula Township regulates stormwater management (see *Section 8.05* and the Peninsula Township Stormwater Control Ordinance #33 as amended).

#### Figure 3-5. Summary of Great Lakes Shoreline Regulations



**(I)** **Shared Waterfront Ownership (currently Section 7.4.2).** Any waterfront land where there is no dwelling that is to be used by more than one family shall meet the following requirements:

  **(1)** **Intent.** It is the intent of this section to reduce conflicts that occur between residential single-family use and shared waterfront use, to regulate use and storage of docks and hoists, and to reduce negative impacts on shoreline vegetation.

  **(2)** **Land Use Permit.** Where more than one family has shared waterfront ownership in the waterfront property, a land use permit shall be obtained from the zoning administrator. The application for the land use permit shall indicate the number of families with access rights, the name and address of a principal family member for each family, the name and address of one person who shall receive the tax bill in the event that all families do not have taxable real property in Peninsula Township, and a site plan showing compliance with the minimum requirements of this ordinance. The zoning administrator shall be notified of any change in ownership and a new land use permit may be required.

  **(3)** **Minimum Lot Widths and Vehicle Parking Space Requirements.** These requirements apply to shared waterfront property not approved within a subdivision or condominium.

| Number of Families with Access Rights | Minimum Lot Width |
|---|---|
| Two Families | 100 |
| Three Families | 150 |
| Four Families | 200 |
| More Than Four Families | Five additional feet per family |

(a) One parking space for each boat hoist shall be provided off the traveled portion of the road such that all portions of a parked vehicle are at least five feet from the driving lane to provide safe egress from the vehicle.

(b) Each parking space shall be a minimum of 23 feet in length. The parking space does not have to be paved or graveled. Any paving shall be of pervious material.

(4) **Maximum Number of Docks and Boat Hoists.** Group docking, hoists, and other related facilities and boat hoists shall not exceed one dock per parcel and one boat hoist per 50 feet of shoreline, measured at the OHWM, and shall be located as near as possible to the center of the parcel.

(5) **Maximum Dock Width and Length.** Where a dock is within the jurisdiction of Peninsula Township, no dock shall be wider than seven feet and no longer than necessary to provide adequate water depth for the boat using the dock or boat hoist.

(6) **Dwellings and Clubhouses Prohibited.** No dwelling units or clubhouses are allowed.

(7) **Minimum Side Yard Setback.** The area within 15 feet of side lot lines shall not be used for the permanent or temporary placing or storage of boats, boat hoists, and other equipment, nor for locating fire pits or decks flush with the ground.

(8) **Portable Sanitary Facilities.** A portable toilet is allowed, provided the township is notified of the placement and maintenance schedule for the toilet. The toilet shall not be placed within a road right of way, closer than 30 feet from the OHWM, or in any side yard setback. The toilet shall be screened from the nearest property line, the road, and the water.

## Section 3.14    Airport Overlay Zone District (currently Section 7.9)

Notwithstanding any provisions of this ordinance, any project located in the airport overlay zone district shall comply with all standards of 14 CFR Part 77, "Standards for Determining Obstructions to Air Navigation," prepared by the Department of Transportation, Federal Aviation Administration (FAA). In the event of conflict between this ordinance and any airport zoning regulations, the limitations and requirements most conducive to airport and air travel safety shall govern.

**(A) Applicability.**

(1) Every parcel of land that lies in whole or in part within the airport overlay zone district as depicted on the official zoning map is subject to the regulations of this section.

(2) The regulations of this overlay zone are in addition to any regulations in the underlying zoning district; however, these regulations supersede all conflicting regulations of the underlying zoning district to the extent of such conflict but no further.

**(B) Height Limitations.**

(1) Notwithstanding any other provisions of this ordinance, no area of land or water or appurtenances thereof shall be used as to constitute an airport hazard.

(2) No structure or vegetation shall interfere with or penetrate the airport critical zone, conical, or airport outer horizontal surface without prior review and approval by the FAA and, when applicable, the State of Michigan Aeronautical Department.

(3) No structure within the airport inner horizontal surface area shall exceed the elevation of 774 U.S.G.S.

Case 1:20-cv-01008-PLM-RSK   ECF No. 1-7 filed 10/21/20   PageID.308   Page 45 of 171

**Article 3:** Zoning Districts and Map
**Section 3.13:** Reserved Residential Dwelling Sites within Conservation Easement-Restricted Farmland

(4)   No structure shall exceed 35 feet in height without first receiving approval by the FAA and township.

**(C)   Height Exemption.** Any structure permitted in the district and having a height of 35 feet or fewer will be allowed to penetrate any surface area and will not be subject to *Section 3.14(B)(2)*.

**(D)   Conflicting Federal or State Regulations.**

(1)   The regulations of the airport overlay zone district are not intended to conflict with existing or future approach protection regulations promulgated by the United States (Federal Aviation Regulation Part-77), the State of Michigan (P.C. 23 of 1950 as amended by P.C. 158 of 1976), or any agencies thereof.

(2)   Where there exists a conflict between any of the regulations or limitations prescribed in this ordinance, and any other regulations applicable to the same area, whether the conflict is with respect to the height of structures or trees, the use of land, or any other matter, the more stringent limitation or regulation shall govern.

**(E)   Unlawful Land Uses.** It shall be unlawful to establish a use on any parcel within three miles (airport inner horizontal surface area) of the Cherry Capital Airport that would:

(1)   Create electrical interference with radio communication between the airport and aircraft or create interference with navigational aids employed by the airport or by aircraft;

(2)   Make it difficult for aircraft pilots to distinguish between airport lights and other lights or result in glare in the eyes of aircraft pilots using the airport;

(3)   Create air pollution in such amounts as to impair the visibility of aircraft pilots in the use of the airport;

(4)   Would endanger the landing, taking off, or maneuvering of aircraft;

(5)   Abnormally attract birds; or

(6)   Would otherwise create an airport hazard.

**(F)   Official Zoning Map.**

(1)   Mapping of the airport zoning plans also takes into account the need to protect the approaches to the Cherry Capital Airport from incompatible land uses that would limit or adversely affect the airport's ability to serve the community's present and future air transportation needs.

(2)   The official zoning map illustrates the boundary between the airport inner horizontal surface area and outer horizontal surface as indicated by official adopted documents of the Cherry Capital Airport and based on FAA standards.

## Section 3.15      Reserved Residential Dwelling Sites within Conservation Easement-Restricted Farmland (currently Section 6.7.5)

**(A)   Intent.** The Peninsula Township Purchase of Development Rights Ordinance allows future building sites under certain conditions and in specific locations as shown on recorded conservation easements. It is the intent of this section to:

(1)   Allow future building sites to be used for residents on the farm or to be sold along with all or a portion of the restricted farmland; and

(2) Avoid the conversion of preserved agricultural land by allowing access to these individual future building sites without requiring a new public or private road to the site.

**(B)** **Minimum Lot Size.** The minimum lot size for a reserved residential building site is one acre.

**(C)** **Means of Access.** Restricted farmland may be divided without the requirement of providing access to a public or private road, provided:

(1) A reserved dwelling site shall have access to an existing road by either a driveway or a shared driveway (see *Section 9.06*).

(2) Where access is provided by a private or shared driveway, the driveway must be located within a recorded access easement (see *Section 9.06*).

(3) Access by a private road shall be required if it serves three or more residences (see *Section 9.07*).

**(D)** **Additional Front Yard Setback.** Where access is provided by a driveway easement, the minimum front yard setback from the access easement is 50 feet.

# Article 4    Schedule of Regulations

## Section 4.01    Statement of Purpose (NEW SECTION)

The purpose of this article is to provide area, height, and placement regulations for districts established by this zoning ordinance.

## Section 4.02    Schedule of Regulations (Currently Section 6.8)

The height, bulk, setbacks, and density of structures and land area by zoning district are delineated below.

| Zoning District | Minimum Zoning Lot Size per Dwelling Unit | | Maximum Height of Structures | | Minimum Yard Setback per Lot in Feet from Each | | | Ordinary High Water Mark Setback | Maximum % of Lot Area Covered by All Structures | Minimum Building Width (Principal Structure) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Area | Width (ft.) | Stories | Feet | Front | Side | Rear | | | |
| R-1A, Rural and Hillside | One acre | 150 *(A)* | 2.5 *(B)* | 35 *(B)* | 30 *(I)* | 15 *(I)* | 30 *(I)* | 60 *(C)* | 15% | 24 feet |
| R-1B, Coastal Zone, One- and Two- Family | 25,000 sq. ft. | 100 *(A)* | 2.5 *(B)* | 35 *(B)* | 30 *(I)* | 15 *(I)* | 30 *(I)* | 60 *(C)* | 15% | 24 feet |
| R-1C, Suburban Residential, One- and Two-Family | 20,000 sq. ft. | 100 *(A)* | 2.5 *(B)* | 35 *(B)* | 25 *(I)* | 15 *(I)* | 30 *(I)* | 60 *(C)* | 25% | 24 feet |
| R-1D, Community Residential, One- and Two-Family | 15,000 sq. ft. | 100 *(A)* | 2.5 *(B)* | 35 *(B)* | 25 *(I)* | 15 *(I)* | 30 *(I)* | 60 *(C)* | 30% | 24 feet |
| R-1A PUD; R-1B PUD; R-1C PUD; R-1A PUD | *(D)* | *(D)* | 2.5 *(B)* | 35 *(B)* | 30 *(D)* | 15 *(D)* | 30 *(D)* | 60 *(C)* | 15% | 24 feet |
| C-1, Commercial | 25,000 sq. ft. | 150 | 2.5 *(B)* | 35 *(B)* | 35 | 10 | 30 | 60 *(C)* | 35% | N/A |
| A-1, Agricultural | Five acres *(H) (J)* | 330 *(F), (G), (H)* | 2.5 *(B)* | 35 *(B)* | 35 *(I), (J)* | 50 *(E), (I)* | 50 *(E), (I)* | 60 *(C)* | N/A | N/A |

Footnotes are in *Section 4.03* starting on the following page.

# Section 4.03        Footnotes (Currently Section 6.8.1)

**(A)**   See definitions of "Lot, Front of" and "Lot, Minimum Width" in *Article 2*. The minimum lot width for a corner lot is required along one public or private road frontage, except as provided in the agricultural district (as stated in F below) .

**(B)**   Allowable height and variations are subject to the provisions of *Section 7.07*.

**(C)**   Does not include open decks, docks, and boat hoists as provided in *Section 3.13*.

**(D)**   As approved under planned unit developments in *Section 5.01*.

**(E)**   The minimum setback for other than residential structures shall be 15 feet. The minimum side yard setbacks for residences shall be 15 feet on lots of record with lot widths of 199 feet or fewer that were recorded prior to the adoption of Amendment #91 by the township board on June 9, 1992.

**(F)**   Where a lot in the agricultural district has a front lot line on a public road, the minimum lot width is 330 feet. Where a lot in the agricultural district has a front lot line on a private road, the minimum lot width is 100 feet. In the case of corner lots, the minimum lot widths previously stated apply to both frontages. Where a lot has been created by planned unit development, the minimum frontage width shall be that which is approved by the township board.

**(G)**   A lot in the agricultural district shall be of such shape that a square measuring 210 feet on a side can be located within the parcel. The square has no relevance to structure location or setbacks.

**(H)**   Access to and minimum area for residential building sites on farmland subject to a recorded conservation easement consistent with the intent of 0rdinance #23 shall be regulated by the provisions of *Section 3.15*.

**(I)**   See *Section 7.08(A)* for required setbacks of residences adjacent to agricultural lands.

**(J)**   See *Section 3.15* for regulations for reserved residential dwelling sites within conservation easement-restricted farmland.

# Article 5   Optional Residential Development Standards

## Section 5.01   Planned Unit Developments (currently Section 8.3, Section 7.2.6, and Section 6.5A)

**(A) Intent and Purpose (currently Section 6.5A.1 and Section 7.2.6(1)).**

   (1)  This section establishes planned unit development regulations for all agricultural and residential districts to allow the use of planned development in areas of the township where conventional development practices are not suited to the terrain or existing land use or natural environmental conditions make conventional development practices undesirable yet the density allowed is suitable to the intent of the conventional district designated.

   (2)  It is the intent of this ordinance that residential developments other than conventional subdivisions and site condominiums be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity of the township in which they are located, and that such a use will not change the essential character of the area in which it is proposed. Inasmuch as planned unit developments, mobile home parks, and other group housing developments may involve higher densities of land use, or building types may distinctly differ from the single-family conventionally built dwellings that predominate the township, periphery setbacks for such developments are established.

**(B) Authorization (currently Section 8.3.1).** It is the purpose of this section to encourage more imaginative and livable housing environments within residential districts and to encourage the retention of agricultural land in active production within the agricultural zoning district through a planned reduction of the individual lot area requirements for each district. Such reduction of lot area requirements shall only be permitted when a land owner, or group of owners acting jointly, can plan and develop a project as an entity and thereby qualify for regulation of that project as one land use unit rather than an aggregation of individual buildings located on separate, unrelated lots. Under these conditions, a special use permit may be issued for the construction and occupancy of a planned unit development, provided the standard, procedures, and requirements set forth in this section can be complied with.

**(C) Objectives (currently Section 8.3.2).** The following objectives shall be considered in reviewing any application for a special use permit for a planned unit development and applying the standards of this section:

   (1)  To provide a more desirable living environment by preserving the natural character of open fields, stands of trees, steep slopes, brooks, ponds, lakeshore, hills, and similar natural assets;

   (2)  To provide open space options;

   (3)  To encourage developers to use a more creative and imaginative approach in the development of residential areas;

   (4)  To provide for more efficient and aesthetic use of open areas by allowing the developer to reduce development costs through the by-passing of natural obstacles in the residential project;

(5) To encourage variety in the physical development pattern of the township by providing a mixture of housing types; and

(6) To provide for the retention of farmland by locating the allowed number of housing units on the agricultural parcels of land in clusters that are suitable for residential use and keeping the remaining agricultural land in production or fallow and available for production.

**(D) Qualifying Conditions (currently Section 8.3.3).** Any application for a special use permit for a planned unit development (PUD) shall meet the following conditions to qualify for consideration:

(1) **Minimum Site Area.** The planned unit development project shall be not fewer than 20 acres in area, shall be under the control of one owner or group of owners, and shall be capable of being planned and developed as one integral unit. In unique circumstances, the project acreage requirement may be reduced if an applicant can clearly and convincingly demonstrate that a PUD development scenario would be significantly superior to a conventional development scenario in terms of the objectives and intent of a PUD.

(2) **Permitted Zoning Districts.** The planned unit development project shall be located within a residential or agricultural district or a combination of the above districts. Individual planned unit developments may include land in more than one zone district, in which event the total density of the project may equal but not exceed the combined total allowed density for each district calculated separately.

(3) **Water and Sanitary Waste Disposal.** Water and sewage disposal systems shall comply with the township master plan and the Peninsula Township Subdivision Control Ordinance #8 and shall be approved by Grand Traverse County or the State of Michigan. It is recognized that joining water and sewer ventures with contiguous or nearby land owners may prove to be expedient.

(4) **Density.** The proposed density of the planned unit development shall be no greater than if the project were developed with the lot area requirements of the particular zone district or districts in which it is located subject to the provisions of *Section 13.05* except as provided by *Section 5.01(G)(1)*.

(5) **Open Space.** Open space, as defined in *Article 2*, shall be provided according to *Section 5.01(H)*.

(6) **Exceptions to Open Space.** For purposes of *Section 5.01*, open space does not include building envelopes, limited common elements in condominium developments, parking lots, and roads (roadbed width plus two-foot shoulders on each side).

(7) **General Standards and Conditions.** The proposed planned unit development shall meet all of the standards and requirements outlined in this *Section 5.01* and also *Section 13.05* and all applicable requirements of this ordinance.

(8) **Natural Features Regulations.** The proposed planned unit development shall comply with the natural features regulations of *Section 8.01* (Wetland Restrictions), *Section 8.02* (Floodplain Controls and Restrictions), *Section 8.03* (Mining or Removal of Topsoil, Sand, Gravel, and Minerals), *Section 8.04* (Soil Erosion and Sedimentation Control and Protection of Steep Slopes), *Section 8.05* (Stormwater Management), and *Section 8.06* (Removal of Fruit-Producing Trees, Vines, or Shrubs from Properties Being Developed).

(9) **Environmental Site Analysis:** The project area shall be studied to identify existing environmental assets. These include natural features, such as unique vegetation, wildlife habitat, slopes, viewsheds and watercourses. Manmade features such as vineyards, orchards, and cultivated lands shall also be identified. The analysis shall describe how the proposed development concept uses the flexibility afforded by PUD provisions to preserve and protect natural and man-made environmental assets.

**(E)** **Uses That May Be Permitted (currently Section 8.3.4).** The following uses of land and structures may be permitted within planned unit developments:

(1)  Single family dwellings.

(2)  Two-family dwellings.

(3)  Attached single-family residential housing, such as group housing, row houses, garden apartments, or other similar housing types that can be defined as single-family dwellings with no side yards between adjacent dwelling units, subject to *Section 6.07*.

(4)  Open space, as defined in *Article 2*, according to *Section 5.01(H)*. In addition to the uses permitted in *Section 5.01(H)*, the following land uses may be set aside within the open space as common land for open space or recreation use under the provisions of this section:

   **(a)**  Private recreational facilities (but not golf courses) such as pools or other recreational facilities that are limited to the use of the owners or occupants of the lots located within the planned unit development;

   **(b)**  Historic building sites or historical sites, public and/or private parks and parkway areas, ornamental parks, extensive areas with tree cover, and lowlands along streams or areas of rough terrain when such areas have natural features worthy of scenic preservation; and

   **(c)**  Commonly owned agricultural lands.

(5)  Deed-restricted agricultural lands.

(6)  Garages and accessory buildings and uses exclusively for the use of residents of the planned unit development and for the proper maintenance thereof.

**(F)** **Uses Permitted by Special Use Permit (currently Section 6.5A.2).** Planned unit developments are subject to all requirements of uses and standards established for the corresponding conventional district described respectively in *Article 3*.

**(G)** **Lot Size Variation Procedure (currently Section 8.3.5).** The lot area for planned unit developments within residential and agricultural districts may be reduced from those sizes required by the applicable zoning district within which said development is located by compliance with the following procedures:

(1)  **Site Acreage Computation.** The net acreage proposed for a planned unit development shall be computed to determine the total land area available for development into lots under the minimum lot size requirements of the applicable zoning district in which the proposed planned unit development is located. Lands below the ordinary high water mark shall not be considered part of the net acreage. Existing road rights-of-way shall be included in net acreage provided the property's legal description includes the right-of-way.

(2)  **Maximum Number of Lots and Dwelling Units.** After the net acreage has been determined by the above procedure, the maximum number of lots or dwelling units that may be approved within a planned unit development shall be computed by subtracting from the net acreage a fixed percentage of said total for street right-of-way purposes and dividing the remainder by the minimum lot area requirement of the zoning district in which the planned unit development is located.

   **(a)**  The fixed percentages for street right-of-way purposes to be subtracted from the net acreage shall be 15% for the R-1A and R-1B residential districts, 20% for the R-1C district, and 30% for multiple family developments in the R-1D district. These percentages shall apply regardless of the amount of land actually required for street rights-of-way.

**(b)** Subsection (a) above provides a uniform density calculation method to produce a reasonable estimate of density possible under a conventional development scenario. Alternatively, a developer may provide an actual site plan illustrating a conventional development scenario with full adherence to all development standards to demonstrate potential development density. The resulting density (number of units from either option) can be placed on Individual lots with reduced lot sizes, setbacks and lot width requirements to afford design flexibility.

(3) **Permissive Building Envelope.** The building envelope shall be as shown on the site plan and not included as open space. The township may approve front, side, and rear yard setbacks that are less than the required setbacks in the underlying zoning district.

(4) **Permissive Minimum Lot Area.** Minimum lot area shall be as determined by the township board and shown on the site plan.

(5) **Maximum Permissive Building Height.** Two and a half stories but not exceeding 35 feet. Accessory buildings shall not exceed a height of 15 feet. The height of agricultural buildings may be increased pursuant to *Section 7.07(C)*.

**(H)** **Open Space and Periphery Setbacks (currently Section 8.3.6 and Section 7.2.6)**

(1) **Open Space.** The township board shall utilize one of the following options for dedication of the provided open space:

**(a)** **Open Space Dedicated for Private Use.** A residential planned unit development with a minimum of 65% of the net acreage kept as open space and owned by the homeowners association or condominium association. That open space land shall be set aside as common land for the sole benefit, use, and enjoyment of present and future lot or homeowners within the development and may be used for passive recreation and wildlife corridors.

**(i)** Such open space shall be conveyed by proper legal procedures from the project owner or owners to a homeowners association or other similar non-profit organization.

**(ii)** Documents providing for the maintenance of said land and any buildings thereon to assure that open space land remains open shall be provided to the township board for its approval.

**(iii)** The access and characteristics of the open space land are such that it will be readily available and desirable for the intended use.

**(b)** **Open Space Dedicated for Public Use.** A residential planned unit development wherein the developer voluntarily dedicates a minimum of 10% of the net acreage to the township. That open space land shall be dedicated to the township for park or recreational purposes by the project owner or owners provided that the township board makes the following determinations:

**(i)** The location and extent of said land is not in conflict with the master plan of Peninsula Township; and

**(ii)** The access to and the characteristics of the open space land are such that it will be readily available and beneficial to the public and desirable for the intended use.

**(c)** **Open Space Dedicated for Deed Restricted Agricultural Land.** A planned unit development with a minimum of 65% of the net acreage as deed-restricted agricultural

land. That open space shall be retained in agricultural use as specified on the site plan with the following conditions:

**(i)**    The land shall be used exclusively for farming purposes;

**(ii)**   A conservation easement shall be granted to Peninsula Township that restricts uses to those that are allowed on deed-restricted agricultural land subject to conservation easements purchased by Peninsula Township pursuant to the Purchase of Development Rights Ordinance #23;

**(iii)**  A farmstead parcel consisting of a residence for the owner or operator of the farm along with any or all of the following outbuildings may be shown on the site plan if approved by the township board:

    **a.**    Barns existing or proposed for uses necessary for agricultural production;

    **b.**    Outbuildings existing or proposed for storage of machinery and equipment used for agricultural production; and

    **c.**    If a farmstead is shown on the site plan, it shall be counted as one of the allowed dwelling units in the planned unit development; and

**(iv)**   The deed-restricted agricultural land may be sold separately from the dwelling parcels.

**(d)**  **Open Space Apportioned between Private Use and Deed Restricted Agricultural Land.** The township board may approve open space apportioned between private use and deed-restricted agricultural land described in *Section 5.01(H)(1)(a)* and *Section 5.01(H)(1)(c)* above, provided that, in addition to the provisions of *Section 5.01(H)(1)(a)* and *Section 5.01(H)(1)(c)* above, the deed-restricted agricultural land portion:

    **(i)**    Shall be a minimum of five acres;
    **(ii)**   Shall be viable farmland as determined by the township board; and
    **(iii)**  No buildings shall be allowed except as permitted in *Section 5.01(H)(1)(a)* and *Section 5.01(H)(1)(c)* above.

**(2)**  **Periphery Setbacks.** It is the intent of this ordinance that residential developments other than conventional subdivisions be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity of the township in which they are located and that such a use will not change the essential character of the area in which it is proposed. To achieve this intent, the following setbacks apply to planned unit developments:

**(a)**  **General Periphery Setbacks.** All buildings, including single-family dwellings and mobile homes within a planned unit development, attached single-family residential housing developments, or mobile home park developments, shall be placed at least 50 feet from any public right-of-way line for existing roadways bordering a site and at least 30 feet from any development boundary line that is not a public road right-of-way. Periphery setback spaces shall be occupied by plant materials and appropriately landscaped. The township may require that attached single-family residences be set back farther from the public road right-of-way of an existing roadway where a larger setback is desired to buffer the use from the road.

**(b)**  **Setback from Agricultural Areas.** Planned unit developments abutting agricultural areas shall meet the setback requirements of *Section 7.08*.

**(I)**   **Maximum Percentage of Lot Area Covered by All Structures (currently Section 8.3.7).**

    **(1)**   The maximum percent of lot area covered by all structures shall not exceed 15% of net acreage.

    **(2)**   A building envelope within which structures may be located shall be shown on the site plan for all existing or future structures.

    **(3)**   The maximum number of square feet to be covered by all structures for each building envelope shall be shown on the site plan or attached to it.

**(J)**   **PUD Agreement and Performance Guarantee (currently Section 8.3.8).** The applicant shall record a PUD agreement with the Grand Traverse County Register of Deeds containing the legal description of the entire project, specifying the date of approval of the special use permit, and declaring that all future development of the planned unit development property has been authorized and required to be carried out in accordance with the approved special use permit unless an amendment is adopted by the township upon the request or approval of the applicant or the applicant's transferee or assigns. The PUD agreement shall be in accordance with *Section 13.09(B)* and shall also include a performance guarantee in accordance with *Section 13.09*.

**(K)**   **Review Procedures and Development Standards.** A PUD application shall follow all applicable review procedures of *Section 13.04* and *Section 13.05*. Additionally, a PUD application shall meet the development standards and review procedures of its development type (e.g., site condominium, subdivision, etc.).

# Section 5.02   Site Condominiums (Currently Section 6.9)

**(A)**   **Intent (currently Section 6.9.1).** It is recognized that Michigan statutes provide for the implementation of developments consisting of single-family detached residential dwelling units and sites through procedures other than those enabled by the Subdivision Control Act (Act #288 of 1967 as amended). The intent of this section is to provide procedures and standards for the review of single-family residential subdivisions implemented under the provisions of the Condominium Act (Act #59 of 1978 as amended) and to ensure that such developments are consistent and compatible with conventional single-family platted subdivisions and promote the orderly development of the adjacent areas. It is not intended that commercial or industrial condominium projects will be reviewed or approved.

**(B)**   **General Provisions (currently Section 6.9.2).** For the purposes of this section, a site condominium subdivision shall include any residential development in a residential or agricultural district proposed under the provisions of the Condominium Act (Act #59 of 1978 as amended) consisting of two or more single-family detached residential structures on a single parcel, with the exception that the provisions of this section limiting condominium subdivisions to single-family detached structures shall not apply to condominium developments that are reviewed and approved through the special use permit–planned unit development option.

**(C)**   **Required Plans, Conditions, and Improvements for New Projects (currently part of Section 6.9.3).** The site condominium subdivision plan shall include the information required in *Section 13.04(B)* as well as the following:

    **(1)**   **Condominium Units.** The site condominium subdivision plan shall indicate specific parcel dimensions with front, rear, and side condominium lot lines allocated to each condominium dwelling unit. The description, size, location, and arrangement of the condominium lots shall conform to the requirements of a conventional platted subdivision pursuant to the subdivision control ordinance and the land division ordinance.

    **(2)**   **Area and Bulk Requirements.** Each condominium dwelling unit shall be located within a condominium lot as follows:

**(a)** The minimum size condominium lot per dwelling unit, maximum dwelling unit height, minimum yard setbacks, minimum building width of the principal structure, and maximum percentage of condominium lot area covered by all structures shall conform with the requirements of the zoning district in which it is located and with *Article 4*.

**(b)** Condominium lots shall back into such features as primary roads except where there is a marginal access road unless a secondary access is provided. Such condominium lots shall contain a landscaped easement along the rear at least 20 feet wide to restrict access to the primary road, to minimize noise, and to protect outdoor living areas.

**(c)** Double frontage condominium lots shall be prohibited except where the rear yard abuts a major road and does not take access from the major road.

**(d)** Unless the circumstances are such that the land area is not of sufficient size to develop secondary roads, all condominium lots shall front on secondary roads and condominium lots along M-37, Center Road, Peninsula Drive, Bluff Road, Montague Road, and East Shore Drive shall be back-up lots.

**(e)** All condominium lots shall front upon a public road or private road. Variances may be permitted in an approved planned unit development.

(3) **Streets.** If a condominium subdivision is proposed to have private streets, they shall be designed to at least the minimum design, construction, inspection, approval, and maintenance requirements of this ordinance. All public streets within a condominium subdivision shall be constructed as required by the Grand Traverse County Road Commission.

(4) **Water Supply and Sewage Disposal Systems.** Water and sewage disposal systems shall comply with the Peninsula Township Master Plan and the Peninsula Township Subdivision Control Ordinance (Ordinance #8) and shall be approved by Grand Traverse County or the State of Michigan. It is recognized that joining water and sewer ventures with contiguous or nearby landowners may prove to be expedient.

(5) **Street Trees.** There shall be a minimum of one tree per condominium lot with a frontage of 70 feet or fewer, or a minimum of two trees per condominium lot with a frontage of more than 70 feet. At least three trees shall be provided for a corner condominium lot. The species and location of street trees shall comply with the requirements of Section 5.4.7 of the Peninsula Township Subdivision Control Ordinance (Ordinance #8).

(6) **Accessory Structures.** Accessory structures to serve all unit owners in a condominium shall be allowed within the general common elements, provided the accessory structure is shown on the site plan, and further provided that:

**(a)** Each structure is no more than 200 square feet in area, provided the total percent of the condominium parcel covered by all structures does not exceed the maximum amount allowed in the zoning district;

**(b)** The site plan includes the maximum area to be covered by all structures for each condominium lot and for the general and the limited common elements;

**(c)** The structure height is no greater than 15 feet;

**(d)** The structure meets the underlying zoning district setbacks from the property lines of the condominium project;

**(e)** The structure is located within the general common elements of the condominium;

**(f)** The structure and its proposed use(s) is shown on the site plan approved or amended by the township and receives a land use permit from the zoning administrator prior to construction; and

**(g)** The use of the structure shall be for one or more of the following uses:

**(i)** Recreational (deck, gazebo, bus shelter, or picnic shelter); or
**(ii)** Utility (storage of maintenance or recreation equipment or trash enclosures).

(7) **Natural Features Regulations.** The proposed planned unit development shall comply with the natural features regulations of _Section 8.01_ (Wetland Restrictions), _Section 8.02_ (Floodplain Controls and Restrictions), _Section 8.03_ (Mining or Removal of Topsoil, Sand, Gravel, and Minerals), _Section 8.04_ (Soil Erosion and Sedimentation Control and Protection of Steep Slopes), _Section 8.05_ (Stormwater Management), and _Section 8.06_ (Removal of Fruit-Producing Trees, Vines, or Shrubs from Properties Being Developed).

(8) **Setback from Agricultural Areas.** Site condominiums abutting agricultural areas shall meet the setback requirements of _Section 7.08_.

**(D) Required Plans for Expandable or Convertible Projects (NEW SECTION).** Prior to expansion or conversion of a condominium development to additional land, the new phase of the project shall undergo site plan review and approval pursuant to _Section 13.04_ of this ordinance. The conversion of any development to condominium form of ownership shall require all standards and requirements of this ordinance regarding condominiums to be met.

**(E) Plan Application and Information required (currently Section 6.9.4).** The proprietor shall submit a written application to the township zoning administrator for approval of the condominium subdivision plan and also the fee established by the township board for review of such plans.

**(F) Master Deed, Restrictive Covenants, "As Built" Survey, and Association Bylaws to Be Furnished (currently part of Section 6.9.4.1).** The condominium subdivision developer shall submit to the township zoning administrator 11 copies of the condominium subdivision plan that includes the information required in _Section 13.04(B)_ and proposed protective covenants and deed restrictions that would meet the requirements of Sections 112(1) and 113-119 of the Subdivision Control Act. The name of the proposed project shall be subject to the approval of the township to eliminate duplicate names or names that are similar to existing developments.

**(G) Review Procedures (currently Section 6.9.5)**

(1) **Distribution to Authorities.** The zoning administrator shall deliver the proposed condominium subdivision plan to the planning commission and township board for review. The zoning administrator shall retain one copy and send one copy each to the township fire chief, the township planner, and the Grand Traverse County Planning Commission for plan review.

(2) **Staff Review.** The township planner shall send recommendations to the township planning commission at least 10 days prior to planning commission review as provided for in _Section 5.02(G)(3)_.

(3) **Planning Commission.**

**(a)** The Peninsula Township Planning Commission shall review the condominium subdivision plan and the reports of the county road commission, the county drain commissioner/soil erosion officer, the county health department, the county planning commission, and the township planning director.

**(b)** The planning commission shall hold a public hearing on the proposed condominium subdivision plan.

**(c)** If, following the review and public hearing prescribed above, the planning commission determines that the proposed plan meets all requirements of this ordinance, the planning commission shall send notice of action taken with comments to the township board. If the condominium subdivision plan does not meet all requirements, the planning commission shall recommend disapproval of the plan. It shall state its reason in its official minutes and forward same to the township board.

(4)   **Township Board.**

**(a)** The township board shall not review, approve, or reject a condominium subdivision plan until it has received the report and recommendations from the planning commission.

**(b)** The township board shall consider the condominium subdivision plan at its next meeting after receipt of the recommendations from the planning commission.

**(c)** The township board shall either approve the condominium subdivision plan, reject the plan and give its reasons, or table the proceedings pending changes to the plan to make it acceptable to the board.

**(H)   Conditions and Duration of Approval (currently Section 6.9.6.1 and 6.9.6.2)**

(1)   **Conditions.** The approval of the township board will indicate that the proposed condominium subdivision plan meets the provisions of Section 141(1) of the Condominium Act relating to the ordinances and regulations of Peninsula Township but does not cover additional permits that may be required after the master deed has been recorded.

(2)   **Duration.** Approval of the condominium subdivision plan or phases of the plan by the township board shall be for a period of one year from the date of its approval by the township board pursuant to *Section 13.05*. The township board may extend the one-year period if applied for and granted in writing but only concerning its own requirements.

**(I)   Monuments Required (NEW SECTION).** All condominium developments that consist in whole or in part of condominium lots that are building sites, mobile home sites, or recreational sites shall be marked with monuments as provided in this subsection.

(1)   All monuments used shall be made of solid iron or steel bars at least one-half inch in diameter and 36 inches long and completely encased in concrete at least four inches in diameter.

(2)   Monuments shall be located in the ground at all angles in the boundaries of the condominium development; at the intersection lines of streets; at the intersection of the lines of streets with the boundaries of the condominium development; at the intersection of alleys with the boundaries of the condominium development; at all points of curvature, points of tangency, points of compound curvature, points of reverse curvature, and angle points in the side lines of streets and alleys; and at all angles of an intermediate traverse line. It is not intended or required that monuments be placed within the traveled portion of a street to mark angles in the boundary of the condominium development if the angle points can be readily re-established by reference to monuments along the sidelines of the streets.

(3)   If the required location of a monument is inaccessible or where locating a monument would be clearly impracticable, it is sufficient to place a reference monument nearby and the precise location shall be clearly indicated on the plans and referenced to the true point.

(4)   If a point requiring a monument is on a bedrock outcropping a steel rod, at least one-half inch in diameter shall be drilled and grouted into solid rock to a depth of at least eight inches.

(5)   All required monuments shall be placed flush with the ground where practicable.

(6)   All unit corners and the intersection of all limited common elements and all common elements shall be identified in the field by iron or steel bars or iron pipe at least 18 inches long and one-half inch in diameter or other approved markers.

(7)   The township planning director may waive the placing of any of the required monuments and markers for a reasonable time, not to exceed one year, on the condition that the proprietor deposits with the township cash, a certified check, or irrevocable bank letter of credit to Peninsula Township, whichever the proprietor selects, in an amount to be established by the board, by resolution. Such cash, certified check, or irrevocable bank letter of credit shall be returned to the proprietor upon receipt of a certificate by a surveyor that the monuments and markers have been placed as required within the time specified.

**(J)   Compliance with Federal, State, and Local Law (NEW SECTION).** All condominium developments shall comply with federal and state statues and local ordinances.

**(K)   Subdivision of Condominium Lots (NEW SECTION).** All subdivisions of individual condominium lots shall conform to the requirements of this ordinance for minimum lot width, lot area, and building setback requirements for the district in which the site condominium project is located, and these requirements shall be made part of the bylaws and recorded as part of the master deed.

**(L)   Encroachment Prohibited (NEW SECTION).** Encroachment of one condominium lot upon another, as described in the Michigan Condominium Act as amended, shall be prohibited by the condominium bylaws and recorded as part of the master deed.

**(M)   Relocation of Boundaries (NEW SECTION).** The relocation of boundaries, as described in Section 48 of the Condominium Act, shall conform to all setback requirements of this ordinance for the district in which the project is located and shall be approved by the zoning administrator, and this requirement shall be made part of the bylaws and recorded as part of the master deed.

**(N)   Performance Guarantee (NEW SECTION). See _Section 13.09_.**

**(O)   Final Documents to Be Provided (NEW SECTION).** After submittal of the condominium plan and bylaws as part of the master deed, the proprietor shall furnish to the township a copy of the site plan on 24-inch x 36-inch sheets and in a digital format acceptable to the township.

# Article 6    Standards Applicable to Specific Uses

## Section 6.01    Adult Foster Care Facilities

**(A)** **Adult Foster Care, Family Home (Six or Fewer Residents) (NEW SECTION).** Adult foster care family homes shall meet the following requirements:

    **(1)** An adult foster care family home shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones and is not subject to a special land use permit or procedure different from those required for other dwellings of similar density in the same zone;

    **(2)** Such uses shall be duly licensed by the State of Michigan;

    **(3)** A maximum of six adults may receive foster care at any one time; and

    **(4)** The facility shall be operated within the primary residence of the caregiver.

**(B)** **Adult Foster Care, Small Group Home (Seven–12 Residents) (currently Section 8.7.3(9)).** Adult foster care small group homes shall meet the following requirements:

    **(1)** Such uses shall be duly licensed by the State of Michigan;

    **(2)** A maximum of 12 adults may receive foster care at any one time;

    **(3)** The facility shall be operated within the primary residence of the caregiver;

    **(4)** The minimum lot size shall be five acres;

    **(5)** Such facilities shall be allowed only in areas that are and will remain free from concentrations of objectionable airborne chemical sprays and similar materials utilized by agricultural operations within close proximity;

    **(6)** Such facilities shall be located where adult foster residents will be safe from traffic and other hazards;

    **(7)** In addition to the setback requirements of the zoning district, no facility shall be closer than 50 feet to a lot line; and

    **(8)** An adult foster care small group home must have a connection to a sanitary sewer system.

## Section 6.02    Barn Storage (currently Section 6.7.2(18))

**(A)** The intent of this use is to help make it economical for farmers to keep and maintain barns that might otherwise be allowed to decay because they are obsolete. Barn storage shall not be a self-service storage facility use (see *Section 6.28*) where there is regular access to the rental space by owners of the stored materials.

**(B)** It is prohibited for a property owner to build a barn just for rental storage or to rent storage in a barn and then build a similar structure for farm use.

**(C)** The zoning administrator may issue a land use permit for rental of storage space in barns for boats, campers, farm equipment, or similar items in barns in the agricultural A-1 district, provided:

    **(1)** The barn has been previously used for the storage of agricultural crops or for housing of livestock.

    **(2)** The barn has been in existence in its present form for not fewer than 20 years prior to the application for a land use permit for this use.

    **(3)** The zoning administrator has determined that the barn is no longer used for farm purposes because of farm consolidation or changes in operations.

    **(4)** The barn is not increased in size or the exterior modified for the use; however, doors or the interior may be modified if necessary to make the barn suitable for storage.

**(D)** The rental of storage space in a barn shall be discontinued if a new barn is constructed for a use that can be accommodated in the old barn.

**(E)** The zoning board of appeals may grant a variance from the minimum 20-year requirement, provided the zoning board of appeals determines that the request is consistent with the intent of this section to not allow a property owner to build a barn just for rental storage or to rent storage in a barn and then build a similar structure for farm use.

# Section 6.03     Bed and Breakfasts (currently Section 8.7.3(6))

**(A)** **Statement of Intent.** It is the intent of this subsection to establish reasonable standards for bed and breakfast establishments to assure that:

    **(1)** The property is suitable for transient lodging facilities;

    **(2)** The use is compatible with other uses in the residential and agricultural districts;

    **(3)** Residential and agricultural lands shall not be subject to increased trespass; and

    **(4)** The impact of the establishment is no greater than that of a private home with overnight house guests.

**(B)** **Development Standards.** The following requirements for bed and breakfasts together with any other applicable requirements of this ordinance shall be complied with:

    **(1)** **Minimum Lot Area.** The minimum lot size shall be one acre.

    **(2)** **Parking.** Off-street parking shall be provided in accordance with *Section 9.02* and *Section 9.03* of this ordinance.

    **(3)** **Owner Occupied and Managed.** The bed and breakfast shall be the principal dwelling unit on the property and shall be owner occupied when open for business.

    **(4)** **Building Exits.** The residence shall have at least two exits to the outdoors.

    **(5)** **Maximum Number of Sleeping Rooms.** No more than three sleeping rooms in the residence may be used for rental purposes.

    **(6)** **Maximum Number of Registered Guests.** Not more than eight registered guests may be accommodated at any time.

(7) **Sleeping Rooms Part of the Dwelling.** The rooms utilized for sleeping shall be a part of a dwelling that has received an occupancy permit prior to the application for a bed and breakfast special use permit.

(8) **Minimum Area of Sleeping Rooms.** The rental sleeping rooms shall have a minimum size of 100 square feet for each two occupants with an additional 30 square feet for each occupant to a maximum of four occupants per room.

(9) **Required Permits and Approvals.** The bed and breakfast owner shall furnish necessary permits or approvals required from the Grand Traverse County Health Department, Grand Traverse County Soil Erosion and Sedimentation Control Department, Grand Traverse County Road Commission, and all other applicable local, state, and federal regulating agencies.

(10) **Floor Plan.** The township board shall require that a floor plan drawn to an architectural scale of not fewer than one-eighth inch equals one foot (1/8 inch = 1 foot)  is on file with the Peninsula Township Fire Department.

(11) **Guest Registry.** Each owner/operator of a bed and breakfast shall keep a guest registry that shall be available for inspection by the zoning administrator, code enforcement officer, and police and fire officials at any time.

(12) **Maximum Length of Stay.** The length of stay for each registered guest shall not exceed seven days within any 30-day period.

(13) **Additional Fencing and Screening.** In the event that the township board determines that noise generation may be disturbing to neighbors, or that the location of the establishment is in an area where trespass onto adjacent properties is likely to occur, then the township board may require that fencing and/or an evergreen planting buffer be installed and properly maintained.

(14) **Prohibited Rentals.** No motorized off-road vehicles (e.g., snowmobiles, four-wheelers, etc.), or watercraft shall be rented or used on the property by registered guests.

(15) **Special Use Standards.** A special use permit shall not be granted if the essential character of a lot or structure within a residential or agricultural district, in terms of use, traffic generation, or appearance, will be changed substantially by the occurrence of the bed and breakfast use.

(16) **Food and/or Beverages Served.** Breakfast shall be the only meal served and only to registered guests.

# Section 6.04        Child Care Center (NEW SECTION)

(A) **Licensing.** In accordance with applicable state laws, all child care centers shall be licensed by the State of Michigan and shall comply with the standards outlined for such facilities.

(B) **Emergency Care.** Each child care center shall employ a staff person with current CPR and first aid training and shall meet other state emergency care requirements.

(C) **Hours of Operation/Care.** Hours of operation may be up to 24 hours a day, with not more than 12 hours of continuous care at any time for any child.

(D) **Separate Building/Parcel.** Each child care center shall be located in its own distinct building and on its own separate parcel except where proposed as accessory to an Institutional Use (*Section 6.17*), in which case it must be located entirely within the principal building exclusive of outdoor recreation areas as otherwise required.

**(E)** **Outdoor Recreation Area.** A minimum of 150 square feet of outdoor recreation area shall be provided and maintained per child, and the overall size of the recreation area shall not be fewer than 5,000 square feet. The outdoor recreation area shall be contiguous to and directly accessible from the building containing the child care centers and shall not be separate from the building by parking, fire lane, or other vehicular circulation. The outdoor recreation area shall be completely fenced and enclosed and shall be suitably screened from any adjoining residentially zoned or used land by a greenbelt as required in *Section 8.08*.

**(F)** **Frontage.** Child care centers shall have frontage onto a paved thoroughfare or collector road and shall have ingress and egress through the same.

**(G)** **Setbacks.** In addition to all other setback requirements of the district, child care centers shall have a minimum side yard setback of at least 25 feet.

## Section 6.05 Child Care, Family Home (Six or Fewer Children) (NEW SECTION)

**(A)** A child care family home shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones and is not subject to a special land use permit or procedure different from those required for other dwellings of similar density in the same zone.

**(B)** Such uses shall be duly licensed by the State of Michigan.

**(C)** A maximum of six children may receive care at any one time.

**(D)** The facility shall be operated within the primary residence of the caregiver.

## Section 6.06 Child Care, Group Home (Seven to Twelve [7–12] Children) (currently Section 6.2.2(7))

**(A)** **State Licensing.** Such uses shall be duly licensed by the State of Michigan.

**(B)** **Location.** In accordance with Public Act 110 of 2006 as amended, the township board may deny the request if the proposed facility is located closer than 1,500 feet to any of the following:

    (1) Another licensed group day care home.

    (2) An adult foster care small group home or large group home as licensed under the Adult Foster Care Licensing Act, P.A. 281 of 1979 as amended.

    (3) A facility offering substance abuse treatment and rehabilitation services to seven or more people licensed under Article 6 of the public health code, P.A. 368 of 1978 as amended.

    (4) A community correction center, resident home, halfway house, or other similar facility that houses an inmate population under the jurisdiction of the Michigan Department of Corrections.

**(C)** **Character.** In accordance with Public Act 110 of 2006 as amended, all facilities must maintain the property consistent with the visible characteristics of the neighborhood.

**(D)** **Hours of Operation.** In accordance with Public Act 110 of 2006 as amended, a facility may not exceed 16 hours of operation during a 24-hour period. Should the township receive any written complaints regarding operating hours, the township board may limit the operation of a group child care home during the hours of 10:00 p.m. to 6:00 a.m. without prohibiting the use during those hours.

**(E)** **Signs.** In accordance with Public Act 110 of 2006 as amended, a facility's sign to identify itself must meet the applicable sign regulations of this ordinance.

**(F)** **Off-Street Parking**. In accordance with Public Act 110 of 2006 as amended, a facility must meet applicable off-street parking regulations of this ordinance.

**(G)** **Fencing.** A four-foot-high fence around the perimeter of all outdoor play areas shall be required in accordance with *Section 7.11*.

# Section 6.07          Dwelling, Multiple-Family (NEW SECTION)

**(A)** **Access.** All site plans shall have adequate means of ingress and egress throughout the project to permit circulation for safety equipment.

**(B)** **Public Parking.**

(1)   In all multiple projects of more than 100 dwelling units, parking shall not be allowed along the main circulation drive.

(2)   All parking lots must be a minimum of 62 feet in width, and, if through traffic is permitted through the lot, the width must be increased to 64 feet.

**(C)** **Maximum Attached Units per Building and Building Length.** The maximum number of dwelling units that may be attached in a single building is eight. Additionally, no building width shall have a dimension greater than 200 feet, and the structure shall contain offsets/recesses at least every 50 feet to avoid long blank walls.

**(D)** **Building Lines.** There shall be no more than two continuous attached dwelling units with the same building line. No building lines in any continuous attached row shall, when extended, be closer than two feet, measured perpendicularly, to any other such building line. See definition of "Building Line" in *Article 2*.

**(E)** **Minimum Building Spacing.** Minimum spacing between buildings shall be 20 feet when the two buildings are end to end or the closest walls are garage walls or dwelling unit sidewalls. In all other situations, minimum separation shall be 40 feet.

**(F)** **Minimum Setbacks from Roads and Pedestrian Ways.** No building shall be closer than 30 feet to a right-of-way or internal roadway.

**(G)** **Outdoor Areas.** All dwelling units must be constructed to permit the development of an individual outdoor area not fewer than 100 square feet in area, either when the units are first developed or at some later date.

**(H)** **Direct Outdoor and Common Area Access.** All dwelling units shall have their main ingress/egress directly to the outdoors and a common area. Open porches, landings, and stairs may be shared by more than one dwelling unit.

**(I)** **Sidewalks.** Sidewalks shall be provided parallel to all roadways, whether public or private, and shall further be provided to the satisfaction of the planning commission and township board to allow for convenient and safe pedestrian traffic throughout the complex.

**(J)** **Lighting.** Lighting shall be provided to allow for a safe use of sidewalks during non-daylight hours and shall meet the requirements of *Section 8.07*.

**(K)** **Common Areas.** Common areas shall be provided for the use and enjoyment of the residents within the development. This area shall be provided as set forth in this ordinance. In the case of condominium developments, a limited common area may be created for each dwelling unit.

**(L)** **Attachment.** No part of an attached single-family dwelling unit shall be located above or below another attached single-family dwelling unit. Attachment of the single-family dwelling units, one to another, may be through a common party wall or similar architectural barrier.

## Section 6.08    Dwelling, Secondary (currently Section 6.2.2(2)(b))

A secondary dwelling detached from the principal dwelling shall not be permitted on the same lot with a single-family dwelling unless the lot has a width twice the normal width, and the secondary dwelling shall be located to qualify as a single-family dwelling in its own right on one half the width of the lot of the principal dwelling.

## Section 6.09    Farm Processing Facilities

See "Winery/Farm Processing Facilities" in *Section 6.34*.

## Section 6.10    Food Processing Plant (currently 8.5)

**(A)** **Authorization.** The township board may authorize the construction, maintenance, and operation in the agricultural district of food processing plants related to local agricultural production by issuing a special use permit subject to the procedures and requirements of *Section 13.05*, provided it has been demonstrated the operation will not create any nuisance that will be detrimental to the health, safety, and welfare of township residents or adversely affect adjoining property owners. Food processing plants do not include wineries.

**(B)** **Required Information.** In addition to the site plan information requirements of *Section 13.04(B)*, the following information shall be submitted as a basis for judging the suitability of the proposed operation:

(1)   A description of the operations proposed in sufficient detail to indicate the effects of those operations in producing traffic congestion, noise, glare, air pollution, fire or safety hazards, or the emission of any potentially harmful or obnoxious matter or radiation.

(2)   Engineering and architectural plans for:

**(a)**   The treatment and disposal of sewage and industrial waste or unusable by-products; and

**(b)**   The proposed handling of any excess traffic congestion, noise, glare, air pollution, water pollution, fire or safety hazards, or the emission of potentially harmful or obnoxious matter or radiation.

(3)   The proposed number of shifts to be worked and the maximum number of employees on each shift.

## Section 6.11    Gas Stations (currently Section 8.8)

**(A)** **Site Development Requirements.** The following requirements for site development together with any other applicable requirements of this ordinance shall be complied with:

(1)   **Minimum Site Size.** 25,000 square feet with a minimum width of 150 feet.

(2)   **Site Location.** The proposed site shall have at least one property line on a major thoroughfare as classified in the Peninsula Township Master Plan.

(3) **Building Setback.** The building or buildings shall be set back 40 feet from all street right-of-way lines and shall not be located closer than 25 feet to any property line in a residential district.

(4) **Access Drives.** No more than one driveway approach shall be permitted directly from any major thoroughfare nor more than one driveway approach from any other public street.

    **(a)** Driveway approach widths shall not exceed 35 feet measured at the property line.

    **(b)** Driveways shall be located as far from street intersections as practicable but no fewer than 50 feet.

    **(c)** No driveway or curb cut for a driveway shall be located within 10 feet of an adjoining property line.

    **(d)** Any driveway giving access to a single street shall be separated from any other driveway by a landscaped island per *Section 8.08* with a minimum dimension of 20 feet.

(5) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(6) **Signs.** Signs as allowed by *Article 10*.

(7) **Off-Street Parking.** As provided in *Article 9*.

## Section 6.12     General Farming and Horticultural Use (currently Section 6.2.2(6))

Farming and horticultural use includes the carrying on of usual soil practices of cultivation, spraying, and fertilization, including the use of barnyard and poultry manure. It also includes migrant workers' quarters and roadside stands for the sale of agricultural products. It excludes the raising and grazing of farm animals and fowl in residential districts except those as permitted when complying with the Michigan Right to Farm Act provisions.

## Section 6.13     Greenhouses and Nurseries (Retail Sales) (NEW SECTION)

**(A)** **Site Area.** There shall be no maximum size limitation for a greenhouse structure. However, lot coverage for all structures, including greenhouse structures, shall not exceed 40%.

**(B)** **Structures.** All greenhouse structures shall conform in construction and design to the current accepted national industry standards for such structures and shall be cleaned and maintained on a regular basis, including but not limited to a routine spot replacement program for damaged, torn, or faded materials and parts.

**(C)** **Wholesale Sales.** Wholesale sales of annual and perennial plants shall be permitted, provided that retail sales shall also be a principal component of the use of the site.

**(D)** **Fertilizer Applications and Other Similar Applications.** In addition to all environmental and performance requirements in this ordinance, fertilizing and other similar application processes shall conform to all applicable federal, state, or other environmental guidelines.

**(E)** **Hours of Operation.** Operating hours of such uses shall be limited to normal business hours and may be permitted to vary dependent upon location, season, and amount of daylight. All such limits shall be noted on the site plan.

**(F)** **Lighting.** See lighting standards of *Section 8.07*.

**(G) Equipment Operation and Storage.** All mechanical or motorized equipment operated in conjunction with such uses shall be stored in an enclosed building or adequately screened from rights-of-way and adjacent residentially zoned or used properties. Unless part of an agriculture operation, equipment shall be operated outdoors only between the hours of 7:00 a.m. and 9:00 p.m.

**(H) Merchandise and Material Storage.** Merchandise or materials shall be stored in an enclosed building or sufficiently screened from rights-of-ways and adjacent residentially zoned or residentially used properties to minimize noise, odor, smoke, dust, visual stormwater runoff, and other impacts. The planning commission and township board may require screening by additional setback or buffering pursuant to *Section 8.08*. The only exceptions to this requirement shall be for planted or seasonal displays as indicated on an approved site plan. Temporary sales and seasonal sales of holiday trees and similar items shall be subject to other requirements of this ordinance.

**(I) Outdoor Stacks and Piles of Bulk Materials.** Outdoor stacks and piles of bulk materials such as soil, sand, mulch, peat moss, and stones as well as bagged or boxed items are subject to the following standards:

    (1) Outdoor stacks and piles of bulk materials shall not be located in front of principal building(s);

    (2) Outdoor stacks and piles of bulk materials shall not be located where visible from any right-of-way or residential district or use;

    (3) Outdoor stacks and piles of bulk materials shall not be located within any required rear or side yard setbacks;

    (4) Outdoor stacks and piles of bulk materials shall be covered at all times with material capable of minimizing smoke, dust, stormwater runoff, and other impacts;

    (5) All outdoor stacks and piles shall not be greater than 12 feet in height; and

    (6) The planning commission and township board may require that all outdoor stacks and piles be enclosed on at least 3 sides by retaining walls or other permanent containment structures with concrete bases not greater than 6 feet in height.

**(J) Pedestrian and Vehicle Access.** Sidewalks and off-street parking and loading areas shall at all times be kept clear and free of all merchandise, materials, and use-related vehicles and equipment.

# Section 6.14     Home Occupation (currently Section 6.2.3(2))

**(A) Permit.** A "Home Occupation Permit" shall be obtained from the zoning administrator prior to beginning a home occupation and shall be issued to the person conducting the home occupation and shall not run with the land. Such permit shall be revoked should the home occupation at any time not meet the provisions of this ordinance. Any permit shall become null and void 1 year after issuing the permit unless the home occupation has been established and is operating.

**(B) Allowable Uses Not Requiring a Permit.** The following incidental uses are allowed and do not need a permit:

    (1) Garage sales, provided they occur not more than twice in any calendar year.

    (2) Party sales for the purpose of selling merchandise or taking orders.

    (3) An office in the residence, provided there are no employees except family members living at the residence, and further provided that no customers or clients arrive at the residence.

(4)  A pet sitter, provided not more than four pets may be cared for on the property at one time and all animal waste is removed on a regular schedule to minimize odor.

**(C)  Operator and Employees.** Home occupations are permitted in residential structures when carried out by the residents of the dwelling along with up to two full-time equivalent employees within either the dwelling or an accessory building.

**(D)  Floor Area.** The area utilized for the home occupation shall not exceed one-fourth of the floor area of one one story of the dwelling, including attached garages and excluding porches and decks, whether or not the dwelling or an accessory building is so utilized.

**(E)  Outdoor Activities and Storage.** No outdoor activities or outdoor storage in excess of those normally found in the immediate residential neighborhood shall be allowed in connection with a home occupation. The zoning administrator shall make such a determination prior to issuing a land use permit.

**(F)  Environmental Impacts.** Home occupation activities shall not discharge any odor or dust, nor shall any vibration, noise, or glare be discernible at property boundaries, and all lighting shall conform to the requirements of *Section 8.07*.

**(G)  Large Deliveries Prohibited.** Home occupations shall not be permitted if the occupation would normally have deliveries or pick-ups by semi-trailer.

**(H)  Hazardous or Controlled Substances.** No hazardous or controlled substances or materials shall be used or stored on the premises unless prior approval is obtained from proper authorities.

**(I)  Limited Sales.** No retail sales shall be permitted on the premises; however, incidental sales previously made off premises or by phone or internet may be picked up at the premises. Direct sales of products off display shelves or racks is not allowed.

**(J)  Parking.** No more than four vehicles shall be parked in the driveway at any given time except for personal or private activities. Parking spaces shall be provided so that no cars are parked on the lawn or on the shoulders of the road.

**(K)  Instruction in a Craft or Fine Art Permitted.** The occupants of a residence may give instruction in a craft or fine art within the residence provided that the other requirements of this section are met and a home occupation permit is issued. Sales of incidental items related to the instruction are allowed.

**(L)  Residential Character Preserved.** In no event shall the use of a building for a home occupation alter the residential character of the building, nor shall it require external alterations, construction, or repair of any kind, such as converting a garage door into a storefront with display windows, which is not customary to residential use.

**(M)  Signage. See** *Article 10*.

**(N)  Garages.** Existing garages shall be retained for inside parking of vehicles.

# Section 6.15          Hotels and Motels (currently 8.10)

**(A)  Qualifying Conditions.**

(1)  **Minimum Floor Area.** Each guest room shall contain not fewer than 250 square feet of floor area.

(2)  **Maximum Registered Guests Per Unit.** The maximum number of registered guests per unit shall not exceed five persons.

(3) **Minimum Lot Area.** The minimum lot size shall be sufficient to meet applicable building setbacks.

(4) **Maximum Lot Coverage.** All buildings, including accessory buildings, shall not occupy more than 10% of the net area within property lines.

(5) **Minimum Yard Dimensions.** All buildings shall be set back no fewer than 150 feet from any right-of-way line, and no fewer than 60 feet from any side or rear property line.

(6) **Site Screening.** The site may be closed by open-structure wood or wire fences along any yard line but shall not exceed six feet in height. Shrubs or trees may be used to screen alone or in combination with structural screens. No screening shall in any way impair safe vertical or horizontal site distance for any moving vehicle. Screening at least four feet high shall be erected to prevent headlight glare from shining on adjacent residential or agricultural property. No screening shall be closer than 75 feet to any right-of-way line except for headlight screening, which shall not be closer than 30 feet.

(7) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(8) **Accessory Uses**. Uses such as swimming pools and other outdoor recreational uses, meeting rooms, restaurants, taverns or bars, and a caretaker's or proprietor's residence shall be permitted provided that these uses are located on the same site as the principal use to which they are accessory. Appropriate permits shall have been obtained from regulating county and/or state agencies.

(9) **Well and Septic System.** Proof of evaluation of the well and septic system by the Grand Traverse County Health Department and conformance to that agency's requirements shall be supplied by the owner.

(10) **Fire Safety.**

    **(a)** All transient lodging facilities shall conform to the Michigan State Construction Code sections regarding fire safety.

    **(b)** An on-site water supply shall be available and meet the requirements of the Peninsula Township Fire Department.

    **(c)** A floor plan drawn to an architectural scale of not less than one-eighth inch equals one foot (1/8 inch = 1 foot) shall be on file with the Peninsula Township Fire Department.

    **(d)** Each operator of a guest lodging facility shall keep a guest registry that shall be available for inspection by the zoning administrator and police and fire officials at any time.

    **(e)** Master keys for all rooms shall be available at all times.

(11) **Fencing or Planting Buffer.** In the event the township board determines noise generation may be disturbing to neighbors or the location of the establishment is in an area where trespass onto adjacent properties is likely to occur, then the township board may require fencing and/or a planting buffer be constructed and maintained in addition to the requirements of *Section 8.08*.

(12) **Prohibited Rentals.** No motorized off-road vehicles (e.g., snowmobiles, four-wheelers, etc.) or watercraft shall be rented or used on the property by registered guests.

(13) **Activities and Outdoor Gatherings.** Activities made available to guests shall be on the lot used for the facility. Outdoor gatherings of guests or other individuals shall be conducted in such a manner as to not be disruptive to neighboring properties and shall end by 9:30 p.m.

(14) **Density of Development.** The maximum number of rental units that may be developed at any single location shall be 20. Accessory uses shall be as approved as a part of the special use permit approval process.

(15) **Parking.** Parking shall meet the requirements of *Article 9*.

(16) **Additional Requirements.** Such developments shall meet the requirements of *Section 7.08(A)* and *Section 7.08(B)*.

## Section 6.16        Indoor Recreation (NEW SECTION)

Indoor recreation facilities, such as, but not limited to, bowling establishments, billiard halls, indoor archery ranges, indoor tennis courts, indoor skating rinks, arcades, and similar indoor recreation uses, shall comply with the following regulations:

(A) **Setbacks.** Indoor recreation uses shall be set back a minimum of two hundred (200) feet from any property line that abuts a residential district.

(B) **Adverse Impacts.** The location, design, and operation of an indoor recreation use shall not adversely affect the continued use, enjoyment, and development of adjacent properties. In considering this requirement, particular attention shall be focused on the adverse impact resulting from loitering on the premises.

(C) **Access.** Indoor recreation uses shall have direct access onto a primary road.

## Section 6.17        Institutional Structures and Uses (currently Section 8.6)

(A) **Authorization.** The township board may authorize the construction, maintenance, and operation in any residential or agricultural district of certain institutional uses specified in this section by the issuance of a special use permit. Such institutional uses are limited to the following:

(1) **Religious Institutions.** Churches or similar places of worship, including associated child care centers or daycare centers (see *Section 6.04*), convents, parsonages and parish houses, and other housing for clergy.

(2) **Educational and Social Institutions.** Public schools (unless preempted by state law) and private schools, including associated child care centers or daycare centers (see *Section 6.04*), auditoriums, and other places of assembly, and centers for social activities.

(3) **Public Buildings and Service Installations.** Publicly owned and operated buildings (except recreation buildings in conjunction with the uses permitted in *Section 6.24*) and public utility buildings and structures, transformer stations and substations, radio, television and microwave towers, and gas regulator stations. Wireless communication towers and facilities shall not be considered public buildings or service installations for purposes of this ordinance.

(4) **Mission Point Lighthouse and Lighthouse Park.** Retail sales shall be allowed in a gift shop located within the existing Mission Point Lighthouse, provided:

(a) Items sold shall be limited to merchandise relating to the Mission Point Lighthouse, Michigan lighthouses, and local history;

(b) The township board may authorize the sale of other items related to the lighthouse and park;

(c) Net proceeds from the gift shop shall be placed in a designated fund to be used for operation and maintenance of the Mission Point Lighthouse and Lighthouse Park; and

(d)   No general funds may be used for the operation of the gift shop.

## Section 6.18        Junkyards (NEW SECTION)

(A)   Junkyards are subject to compliance with Ordinance #41, Peninsula Township Junk Ordinance, the provisions of all township codes and ordinances, and safety standards of the state and county.

(B)   All junkyards shall have a solid masonry obscuring wall of at least 8 feet in height and 1 uniform color, shall meet the building code standards, and shall be constructed at least 50 feet from the side and rear lot lines. A greenbelt shall also be planted and maintained outside of the wall pursuant to *Section 8.08*.

(C)   Where a junkyard has frontage on a road or highway, a solid masonry obscuring wall of at least 8 feet, of 1 uniform color, and meeting the building code standards, shall be set back not fewer than 150 feet from said road or highway right-of-way or easement line. A greenbelt shall also be planted and maintained outside of the wall pursuant to *Section 8.08* except where entrance and exit driveways are located in order to screen the junkyard activities from the road or highway. A sales or office building for keeping business records of the junkyard operation is permitted in the setback area noted above, provided that front and side setback requirements of the district are met.

(D)   Junk material shall be stored a minimum distance of 20 feet from any industrial or airport zoned property line. Storage of such materials on any site shall not be piled higher than the height of the 8-foot masonry wall or fence feet. A roadway shall be provided, paved, graded, and maintained from the street to the rear of the property to permit free access of fire trucks at any time.

(E)   There shall be no burning of tires, vehicle bodies, wiring, oil, or waste products on the site, and all industrial processes, including the use of equipment for cutting, compressing, or packaging, shall be conducted within a completely enclosed building.

(F)   All trucks and other vehicles shall be stored or parked within the required walled or fenced enclosure.

(G)   All truck loading and unloading shall be performed within the required walled or fenced enclosure.

(H)   The operator of the junkyard shall be responsible for cleaning up all debris and junk accidentally deposited on any public right-of-way within 1 mile of the junkyard site.

(I)   There shall be compliance with all site plan review requirements under *Section 13.04*.

(J)   Hours of operation shall be between 8:00 a.m. and 6:00 p.m.

## Section 6.19        Keeping of Domestic Pets (currently Section 6.2.2(5))

The keeping of domestic pets is permitted in all agricultural and residential districts provided that all pets are maintained so as to not constitute a public nuisance. For horses or livestock, the sheltering structure shall be at least 200 feet from any lot line, and the pasturing area shall be at least 100 feet from any lot line. Both the pasturing area and the sheltering structure shall be at least 200 feet from any well or residence. This section does not apply to farm animals on a farm.

## Section 6.20        Kennels (NEW SECTION)

The following regulations shall apply to kennels:

(A)   **Breeding.** Breeding of animals shall be restricted to no more than two litters per year.

(B)   **Lot Size**. A lot on which the kennel is located shall be a minimum of five acres in size.

**(C)** **Setbacks.** Buildings in which animals are kept, animal runs, and exercise areas shall not be located in any required front, side, or rear yard setback area and shall be located at least 100 feet from any dwellings or buildings used by the public on adjacent property.

**(D)** **Kennels Prohibited in Subdivisions and Site Condominiums.** Regardless of lot size, private kennels shall not be permitted in platted subdivisions and site condominiums.

**(E)** **Operation.** Any kennel shall be subject to all permit and operational requirements established by county and state regulatory agencies.

**(F)** **Sound Control.** All animals shall be contained in a building that is fully soundproofed.

**(G)** **Odor Control.** Non-absorbent surfaces (such as sealed concrete or ceramic tile) shall be used throughout the kennel. Dog waste shall be power flushed or otherwise removed on a regular schedule.

## Section 6.21      Marinas (currently Section 8.7.3(5))

**(A)** Marinas are only permitted in the C-1 district in accordance with the following:

**(1)** All ingress and egress to the site shall be from a primary road.

**(2)** All points of entrance or exit for motor vehicles shall be located no closer than 200 feet from the intersection of any two streets or highways.

**(3)** Whenever any permitted use abuts property within any residential district, a buffer strip at least 200 feet in width shall be provided between all operations and structures, including fences, and the residential property. Plant materials, grass, and structural screens or fences of a type approved by the township board shall be placed within the buffer strip.

**(4)** A minimum yard of 50 feet shall separate all uses and operations permitted, including fences, from any public street or highway used for access or exit purposes. This yard shall be landscaped in accordance with plans approved by the township board.

## Section 6.22      Mobile Homes (on Individual Lots: currently Section 6.7.2(3); in Residential Districts; currently 8.9)

**(A)** **Compliance with Federal Law.** Each mobile home shall bear a label required by Section 3282.362(c) (2) of the Federal Manufactured Home Procedural and Enforcement Regulation. Mobile homes shall meet the requirements of the National Manufactured Housing Construction and Safety Standards Act (24 CFR, Part 3280) and bear a HUD label so indicating.

**(B)** **Compliance with State Law and Manufacturer's Instructions.** Each mobile home shall be installed pursuant to the manufacturer's setup instruction and shall be secured to the premises by an anchoring system or device complying with the rules and regulations of the Michigan Mobile Home Commission.

**(C)** **Removal of Towing Mechanisms and Removal or Concealment of Undercarriage or Chassis.** Within 10 days following installation, all towing mechanism shall be removed from each mobile home. No mobile home shall have any exposed undercarriage or chassis.

**(D)** **Perimeter Wall.** Each mobile home shall have a permanent perimeter wall of conventional building materials that shall prevent the entrance of rodents and control heat loss.

**(E)** **Basement, Slab, or Crawl Space**. Each mobile home shall have within the perimeter wall a full or partial basement; any space not occupied by a basement shall have a full concrete slab that may be used as a crawl space for storage purposes.

**(F)** **Plumbing, Electrical, Insulation, and Roof.** All construction and all plumbing, electrical apparatus, and insulation within and connected to each mobile home shall be of a type and quality conforming to the Manufactured Home Construction and Safety Standards as promulgated by the United States Department of Housing and Urban Development, being 24 CFR 3280, as from time to time amended. Additionally, all dwellings shall meet or exceed all applicable roof snow load and strength requirements.

**(G)** **Exterior Finish, Light Reflection.** Any materials that are generally acceptable for housing built on the site may be used for exterior finish if applied in such a manner as to be similar in appearance, provided that reflection from such exterior shall not  be greater than from siding coated with clean, white, glossy exterior enamel.

**(H)** **Minimum Width.** See *Article 4*.

**(I)** **Design.** Each mobile dwelling shall be aesthetically compatible in design and appearance with other residences in the coterminous area as defined in *Article 2*, particularly with regard to foundation treatment, siding and roofing materials, and perimeter walls. Compatible materials such as siding, screen walls, etc. may be added to assure compatibility. The compatibility shall be determined by the zoning administrator.

# Section 6.23   Mobile Home Parks (currently Section 8.2 and Section 7.2.6)

**(A)** **Uses That May Be Permitted.** Any mobile home park may include any or all of the following uses, provided that a plan of the proposed development is approved by the State of Michigan in accordance with Act #96, Public Acts of 1987 as amended and provided that the development plan meets the standards of this section:

(1) **Mobile Home.** "Mobile home" means a structure, transportable in one or more sections, which is built on a chassis and designed to be used as a dwelling, with or without permanent foundation, when connected to the required utilities, that includes the plumbing, heating, air conditioning, and electrical systems contained in the structure. "Mobile home" does not include a pick-up camper, travel trailer, motor home, modular homes, recreational vehicle, converted bus, tent trailer, or other transportable structure designed for temporary use.

(2) One permanent building for conducting the operation and maintenance of the mobile home park and such other accessory buildings, including a caretaker's residence as may be necessary for the normal operation of the mobile home park.

(3) **Parking requirements.**

(a) Parking shall be prohibited on any street or access lane.

(b) No visitor vehicles shall be parked or stored within any required open space between mobile homes or any drive or street within the mobile home park.

(c) Space between mobile home units may be used for parking of motor vehicles, provided that such space is paved and meets the requirements of *Article 9* of this ordinance.

(d) Off-street group parking facilities shall be within 300 feet of all mobile home lots intended to be served.

**(B)** **Site Development Requirements.** All mobile home parks shall comply with the following site development and maintenance requirements:

(1) **State Law.** The mobile home park shall comply with all requirements of Act 96, Public Acts of 1987 as amended. In cases where higher standards have been adopted by the township and approved by the Mobile Home Commission, the higher standards shall prevail.

(2) **Plans.** A preliminary plan filed in conformance with the requirements of Section 11 of the Mobile Home Commission Act shall be filed with the zoning administrator at the time of the filing of the application for a special use permit.

(3) **License.** Every mobile home park shall be licensed by the State of Michigan as required by Rule 802 of the General Rules of the Michigan Mobile Home Commission.

(4) **Site Size.** Any mobile home park shall have a site of at least 15 acres.

(5) **Site Location.** Access to the mobile home park site location shall be from a public thoroughfare only. Access shall be designed with a capacity to safely and effectively handle any increased traffic that may be generated by the mobile home park.

(6) **Park Yard Dimension.** Mobile home parks shall also meet the zoning requirements of *Section 6.23* and *Section 7.08* of this ordinance.

(7) **Site Access.**

   **(a)** Each mobile home park shall be provided with a paved entrance or exit drive off a public thoroughfare.

   **(b)** Entrance or exit drives shall be located no closer than 125 feet from the intersection of any two public thoroughfares.

(8) **Space Requirements.**

   **(a)** The mobile home park shall be developed with sites having an average of 5,500 square feet per mobile home site being served.

   **(b)** Said 5,500 square foot average may be reduced by 20% provided that the individual site shall be equal to at least 4,400 square feet.

   **(c)** For each square foot of land gained through the reduction of the site below 5,500 square feet, at least an equal amount of land shall be dedicated as open space, but in no case shall the open space requirement be less than that required under R 125.1946, Rule 946, of the Michigan Administrative Code.

(9) **Yard Requirements.** No mobile home unit shall be located closer than 23 feet from any private street or roadway, 10 feet from a side site line, or 10 feet from a rear site line.

(10) **Wood Burning Heating Systems.** The installation of wood burning heating stoves or furnaces shall require a permit issued by the Grand Traverse County Construction Code Office.

(11) **Park Roads.**

   **(a)** Each mobile home lot or premises shall have access to a park driveway, roadway, or street that shall be paved to a minimum width of 24 feet; however, no parking shall be permitted on said roadway or street.

   **(b)** If a one-way street pattern is proposed and adopted, then the street width may be paved to a minimum of 16 feet.

**Article 6:** Standards Applicable to Specific Uses

(12) **Mobile Home Unit Lot Improvement.** Each mobile home unit shall occupy at least a single lot size and shall comply with the following:

    **(a)** All parking areas within the mobile home park shall be clearly defined.
    **(b)** Each mobile home unit shall have skirting or equal treatment that is fire resistant, vented, and have access panels.

(13) **Building Height.** No mobile home unit or other building or structure shall exceed 25 feet in height; however, one permanent building in the mobile home park used for conducting the business operation may contain two stories with a maximum height of 35 feet.

(14) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(15) **Heating.** All above-ground fuel tanks shall be suitably screened.

(16) **Mobile Home Unit Sales.**

    **(a)** The business of selling new or used mobile homes as a commercial operation in connection with the operation of a mobile home park is prohibited.

    **(b)** New or used mobile homes located on lots within the mobile home park may be sold by a licensed dealer or broker.

    **(c)** This section shall not prohibit the sale of a new or used mobile home by a resident of the mobile home park, provided the mobile home park permits the sale.

(17) **Occupancy.** No completed mobile home unit shall be occupied until a park license covering the occupied site has been issued by the State of Michigan.

(18) **Periphery Setbacks (Section 7.2.6).**

    **(a)** Intent. It is the intent of this ordinance that residential developments other than conventional subdivisions be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing character of the general vicinity of the township in which they are located, and that such a use will not change the essential character of the area in which it is proposed. Inasmuch as mobile home parks may involve higher densities of land use, abut agricultural land, or have building types that distinctly differ from the single-family, conventionally-built dwellings that predominate the township, periphery setbacks for such developments are established.

    **(b)** General Setbacks. All buildings shall be placed at least 50 feet from any public right-of-way line for existing roadways bordering a site and at least 30 feet from any property boundary line that is not a public road right-of-way. Setback spaces shall be occupied by plant materials and landscaped.

    **(c)** Setback from Agricultural Areas. Planned unit developments abutting agricultural areas shall meet the setback requirements of *Section 7.08*.

# Section 6.24    Public Areas (Parks, Recreation, and Conservation Areas) (currently Section 6.7.2(13))

Public areas, parks, recreation, and conservation areas shall include forest preserves, game refuges, and similar public uses of low intensity character.

# Section 6.25    Recreational Unit Parks (currently Section 8.4)

**(A) Intent and Purpose.** The recreational unit park shall be subject to the procedures and requirements of *Section 13.05*. This type of park is a "destination type" of park in which lots can be rented for more than a few days and renters are there to enjoy the natural character of the township. Buffers are required to protect permanent residents of the area from the nuisance aspects associated with the transient use of recreational unit parks such as increased traffic and noise. Recreational unit parks are for temporary use and are not intended for permanent occupancy.

**(B) Site Development Requirements.** Site developments shall comply with the provisions of Act 368 of the Public Acts of 1978 as amended (an act to license and regulate campgrounds) and also with the following:

(1) **Frontage.** A recreational unit park shall have a minimum of 330 feet of frontage on a county road or state highway.

(2) **Perimeter Setbacks and Buffering.** The recreational unit park shall provide a 200-foot setback from all property lines for structures and recreational unit sites. Not fewer than two staggered rows of evergreen trees planted not more than 15 feet apart shall be planted and maintained within 50 feet of the property lines, and such evergreen trees shall be at least eight) feet in height at the time of planting.

(3) **Perimeter Fence Required.** The recreational unit park shall be fenced with a minimum 6-foot high chain link fence or as determined by the township board. The fence does not have to be on the perimeter of the park but shall enclose areas that are used by sites or for recreational use.

(4) **Entrance Road and Interior Roads.** The entrance road and interior roads shall meet either Peninsula Township private roads standards or county road standards and shall meet the commercial driveway entrance requirements of the Grand Traverse County Road Commission or State Department of Transportation.

(5) **Entrance and Exit through Subdivision or Condominium Prohibited.** Recreational unit park entrances and exits shall not be through a subdivision or condominium.

(6) **Entrance Requirements.** There shall be either:

   **(a)** Two separate road entrances connecting a continuous interior road; or

   **(b)** One entrance and a loop road beginning within 100 feet of the public road serving the park.

(7) **Minimum Lot Area.** The minimum parcel size for a recreational unit park shall be 20 acres.

(8) **Maximum Number of Recreational Unit Sites.** The maximum number of sites shall be 200.

(9) **Minimum Recreational Unit Site Dimensions.** Each recreational unit site shall contain a minimum of 1,800 square feet except that the minimum size for sites specifically designed for tents shall be 3,000 square feet. The minimum space dimensions per unit are:

   **(a)** Width–30 feet

   **(b)** Depth–60 feet

   **(c)** These dimensions shall be increased as necessary to accommodate larger vehicles so that there are no fewer than eight feet between a tent or recreational vehicle and the perimeter of the rental space. This eight-foot area (16 feet between recreational units),

shall be planted with a row of shrubs and a minimum of two trees per recreational unit site line.

(10) **Parking Surface.** Parking spaces for recreational units other than tents shall either be paved or covered with a minimum of four inches of packed stone.

(11) **Parking Spaces.** Each site shall have a parking space for at least one vehicle other than the recreational unit.

(12) **Time Limit on Rental of Unit Sites.** Spaces in a recreational unit park shall be rented by the day or week only and no recreational unit or occupant of such space shall remain in the same park for a period of more than 30 days in a six-month period.

(13) **Prohibited Rentals.** No motorized off-road vehicles (e.g., snowmobiles, four-wheelers, etc.) or watercraft shall be rented or used on the property by registered guests.

(14) **Winter Rentals.** Winter operations are permitted, provided that all utilities, including central toilet and shower facilities, are provided during winter operations.

(15) **Headquarters Building Parking.** Parking for the headquarters building shall comply with *Article 9*.

(16) **Flammable Liquid Sales Prohibited.** Sales of bottled gas and other flammable liquids are prohibited on the premises. However, the sale of firewood and charcoal is permitted.

(17) **Emergency and Fire Protection Plan Required.** A plan for emergencies and fire protection shall be submitted with the application. The emergency and fire protection plan shall be reviewed by the township fire chief and the chief's comments submitted for township review. The plan shall include the following information:

   **(a)** Fire/emergency equipment access to each recreational unit site.

   **(b)** Emergency access to the management facility.

   **(c)** Water storage tank on site or alternate water source to supply water for firefighting.

   **(d)** Fire rings provided on all recreational unit sites where campfires are to be allowed.

   **(e)** Emergency telephone service provided in a visible, convenient location.

   **(f)** Fire extinguishers at the headquarters building and at each public station facility building.

(18) **Outdoor Activities.** Outdoor activities are limited to passive recreation such as hiking or cross-country skiing, and active recreational activities on courts or outdoor equipment such as playgrounds, volleyball, basketball, tennis and horseshoes.

(19) **Shared Access.** If shared access is provided, each site having shared access privileges shall be considered as a separate family under the shared access provisions of this ordinance.

(20) **Underground Utilities Required.** All utilities shall be placed underground.

(21) **Sewage Dumping Station.** A sewage dumping station shall be provided and shall be subject to the review and approval of the Grand Traverse County Health Department; however, it shall not be located closer than 50 feet from the management building.

(22) **Electricity and Drinking Water.** Electricity and drinking water shall be provided to each recreational unit site designed for a travel trailer, motor home, or similar recreational vehicle.

(23) **Recreational Unit Site Identification.** Each recreational unit site shall be numbered, with numbers shown on the site so as to be readily available to emergency personnel.

(24) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(25) **Entrance Way Sign.** A sign located at the entrance is allowed and shall comply with *Article 10*.

**(C)  Support Uses.**

(1)  **Headquarters Building.** One headquarters building may be allowed on the premises and may contain the following:

  **(a)**  Management headquarters (including a manager's residence, provided it meets the existing residential size requirements of the zoning ordinance).

  **(b)**  Laundry facilities.

  **(c)**  Vending machines but not a convenience store.

  **(d)**  Indoor recreation area.

  **(e)**  Swimming pool.

(2)  **Public Station Facilities.** Public station facilities, housed in all-weather structures, shall be provided for the use of recreational unit park registered guests only and shall contain adequate water outlet, toilet, waste container, and shower facilities. Public station facilities shall be provided uniformly throughout the site at a ratio of not fewer than one such station for each 100 sites. A public station facility may be included in the headquarters building or in a separate structure(s).

(3)  **Limitations on Support Uses and Support Use Buildings.**

  **(a)**  Support use buildings and the parking area primarily related to their operations shall not occupy more than one percent of the area of the park.

  **(b)**  Uses shall be restricted to occupants of the recreational unit sites.

  **(c)**  Support use buildings shall present no visible evidence of their commercial character that would attract customers other than occupants of the park.

  **(d)**  Support use buildings shall be screened from view of a public road or any adjacent residential district.

**(D)  Accessory Uses.**

(1)  Uses and structures customarily incidental to the operation of a Recreational Unit Park may be allowed at the discretion of the Township Board as accessory uses.

(2)  An indoor or outdoor swimming pool may be allowed for registered guests of the Recreational Unit Park. See swimming pool requirements of *Section 7.12*.

**(E)  Development and Site Plan Requirements.** The site plan shall include the information required in *Section 13.04(B)*.

**(F)  Phased Development.** Where a recreational unit park development is proposed for construction in a series of stages, a master plan for the development of the entire tract of land shall be submitted along with the detailed plans and specifications for the initial stage as well as concepts for any subsequent stages.

**Article 6:** Standards Applicable to Specific Uses

## Section 6.26     Rental of Dwellings  (currently Section 6.2.2(2) (e))

The minimum length of time that a dwelling may be rented, in conformance with the intent of the ordinance, is 30 days.  This does not include rental of units within a bed and breakfast or a guest rooms at a winery-chateau.

## Section 6.27     Roadside Stands (currently Section 6.7.2(8))

**(A)**   Roadside stands sell fresh or processed farm produce and products and operate as an accessory use of a farm. At least 50% of the products marketed and offered for sale at a roadside stand (measured as an average over the marketing season or up to a five-year timeframe) must be produced on and by the affiliated farm. Farm products may be processed more extensively into a form that adds value in accordance with Michigan laws, and then sold at the affiliated farm market, as allowed by local, state and federal regulations. Roadside stands shall not sell non-agricultural items and products, and are subject to the following additional conditions:

   **(1)**   The stand is not more than 150 square feet in area. The 150-square-foot area may be within a larger existing structure. All roadside stands and display areas shall meet all the setback requirements of the district in which they are located.

   **(2)**   Awnings projecting up to four feet from the stand structure may be used on three sides of the structure. In the event that the 150 square feet is part of a larger structure, the awning is allowed only on the portion making up the 150 square feet.

   **(3)**   There shall be adequate parking spaces available, clearly marked with an adequate turnaround, so that all vehicles are furnished parking off the public right-of-way.

## Section 6.28     Self-Service Storage Facilities (currently Section 6.6.5)

**(A)**   **Uses.** Rental space for storage of personal property only and no business activity other than rental of storage units shall be conducted on site.

**(B)**   **Prohibited Uses.** Rental storage units shall not be used for the servicing or repair of motor vehicles, boats, trailers, lawn mowers and other similar equipment, or for office, retail, manufacturing, or other similar uses.

**(C)**   **Prohibited Activities.** No activities such as miscellaneous or garage sales shall be conducted on the premises.

**(D)**   **Indoor Storage Required.** All storage uses shall be inside an enclosed building.

**(E)**   **Required Lease Provisions.** The lease shall include a statement of allowed uses and uses that are not allowed by this section.

**(F)**   **Manager Required.** There shall be a designated manager to provide a security function, to ensure that the conditions of the lease are met, and that the self-service storage facility is used for its designated purpose. For self-service storage facilities with a storage area of 20,000 square feet or more, a residence for a resident manager shall be required on the site as shown on an approved site plan. For a facility of fewer than 20,000 square feet, an on-site residence for a resident manager may be required by the township board as part of the business.

**(G)**   **Minimum Lot Size.** Minimum lot size shall be 45,000 square feet with a minimum width of 150 feet (e.g., 80 10-foot by 20-foot units = 16,000 square feet; a 35% lot coverage by structures requires a minimum lot area of 45,715 square feet.)

**(H) Setbacks.** Existing C-1 zone setbacks are as follows: front is 35 feet, side is 10 feet, rear is 30 feet, and lot coverage by structures is 35%.

**(I) Fencing.** Security fencing shall not include electrically charged, barbed, or razor wire and shall not be placed in a required front yard setback area.

**(J) Separation Distance.** Spacing between structures shall be a minimum of 20 feet, and emergency access shall be provided to at least three sides of all structures.

**(K) Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

**(L) Signs.** Signs shall comply with *Article 10*.

**(M) Vehicle Access.** Access drives shall be designed to handle automobiles, vans, light trucks, and other two-axle vehicles. Access to all structures shall be as determined by the township board in consultation with the Peninsula Township fire chief.

**(N) Water and Sewer/Septic Prohibited for Storage Units.** Self-service storage facilities shall not have water or sewer/septic facilities connected to any of the storage units.

## Section 6.29    Sewage Treatment and Disposal Installations (currently Section 8.7.3(2))

**(A)** All uses shall be established and maintained in accordance with all applicable State of Michigan statutes.

**(B)** All operations shall be completely enclosed by a chain link fence not fewer than six feet high with a staggered double row of eight-foot high evergreens spaced not more than 15 feet apart and planted on the outside of the fence.

**(C)** All operations and structures shall be surrounded on all sides by a transition strip at least 200 feet in width within which grass, plant materials, and structural screens shall be placed to minimize the appearance and odors of the installation. The township board shall approve all treatment of transition strips.

## Section 6.30    Solar Energy Systems(NEW SECTION PER AMEND. 199)

**(A) Purpose.** It is the purpose of this sub-section to promote the safe, effective, and efficient use of on-site solar energy systems to generate electricity. Further, it is the purpose of this sub-section to standardize and streamline the review and permitting process for solar energy systems designed to meet on-site energy needs.

**(B) Roof-Mounted Solar Energy Systems.** Roof-mounted solar energy systems for on-site use are allowed in all zoning districts, subject to the following regulations:

   (1) **Height.** Roof-mounted systems shall not extend more than three feet above the roofline and shall not exceed the required permitted building height.

   (2) **Location.** Roof-mounted solar energy systems may be located anywhere on a roof but shall not protrude beyond the edge of the roof.

**(C) Ground-Mounted Solar Energy Systems (10 kW or less).** Ground mounted, freestanding solar energy systems of 10kW or less for on-site use are permitted accessory structures in all zoning districts, subject to the following regulations:

(1) **Location and Setbacks.** In the A-1 Zoning District, ground-mounted solar energy systems (10kW or less) must be setback at least 50 feet from any property line. In other zoning districts, ground-mounted solar energy systems (10kW or less) may not be located closer to the front lot line than the principal structure, and shall be setback from all property lines at least 15 feet when the system produces 1kW or less. For larger systems, an additional two feet of setback is required for each 1kW above 1kW to the maximum of 10kW (a 10kW system would require a 33-foot setback). All setbacks are measured from the outermost points of the nearly horizontal plane of the solar panel itself at its static position or at maximum horizontal tilt if mechanized to move with the sun (not from support structures).

(2) **Height:** The height of the solar energy system, including all structural support elements, shall not exceed 10 feet when oriented at maximum tilt.

(3) **Area.** Ground-mounted solar energy systems shall be subject to the maximum lot coverage standards of the applicable zoning district (measured from the outermost points of the nearly horizontal plane of the solar panel itself at its static position or at maximum horizontal tilt if mechanized to move with the sun (not from support structures).

**(D) General Standards. The following requirements are applicable to all roof-mounted or ground-mounted solar energy systems.**

(1) **Land Use Permit.** A Land Use permit shall be required for any ground-mounted solar energy system.

(2) **Batteries.** When solar storage batteries are included as part of the solar collector system, they must be placed in a secure container or enclosure when in use, and when no longer used shall be disposed of in accordance with applicable laws and regulations.

(3) **Removal.** If any solar energy system ceases to operate for more than 12 consecutive months, it shall be considered junk, removed from the premises and subject to Ordinance No. 41 (Peninsula Township Junk Ordinance).

# Section 6.31    Tenant Houses (currently Section 6.7.2(12))

A tenant house shall be part of farm property for full-time farm employees associated with its principal use and is subject to the same height and setback requirements as the principal dwelling.

# Section 6.32    Warehousing and Light Industrial (currently Section 8.7.3(7))

**(A) Uses allowed.**

(1) Printing and publishing establishments.

(2) Small contractors' establishment having no outdoor storage of materials or equipment.

(3) Wholesale and limited retail activities related to on-site warehousing. High-volume retail sales normally accommodated in the other retail districts are not allowed.

(4) Research facilities, provided there is no use of radioactive, toxic, or explosive materials.

(5) Computer operations.

(6) Small warehousing structures such as controlled atmosphere apple storage or storage for food products processed in a food processing plant located on the farm, provided that the storage structures shall only be used for agricultural products grown on the Old Mission Peninsula.

(7)   Light manufacturing operations employing 25 or fewer people.

**(B)**   Activities in this district shall be carried on in completely enclosed buildings.

**(C)**   Noise emanating from a use in this district shall not exceed 60 decibels at any property line.

**(D)**   Uses in this district shall conform to the following standards:

(1)   Emit no obnoxious, toxic, or corrosive fumes or gases that are deleterious to the public health, safety, or general welfare except for those produced by internal combustion engines under designed operating conditions.

(2)   Emit no smoke, odorous gases, or other odorous matter in such quantities as to be offensive at the property line.

(3)   Produce no heat or glare humanly perceptible at the property line.

(4)   Produce no physical vibrations humanly perceptible at the property line.

(5)   Shall be compatible with and in the best interests of farming uses either in general or on specific contiguous lands.

**(E)**   **Supporting Evidence Required.** In all instances in which the Peninsula Township Planning Commission or the Peninsula Township Board of Trustees considers the ability of a proposed use to meet all the requirements of this section to be reasonably doubtful, it will be incumbent upon the proponent to furnish adequate evidence in support of his or her application. If such evidence is not presented, the land use permit shall not be issued.

## Section 6.33      Wind Energy Conversion Systems (WECS) (currently Section 8.7.3(8))

**(A)**   In addition to the requirements of *Section 13.05*, the site plan of the property shall show the location of overhead electrical transmission or distribution lines, whether utilized or not, and the location of the WECS with its specific dimensions, including the entire area through which the rotor(s) may pass, the location of any guy wires or other support devices, and the location of all occupied dwelling units within 300 feet of the WECS.

**(B)**   Each special use permit application shall be accompanied by a complete set (either the original or an accurately reproduced copy) of the manufacturer's instructions, which shall include the following:

(1)   A standard foundation and anchor design or specifications for normal soil conditions;

(2)   A detailed parts list;

(3)   Clearly written detailed instructions for the assembly, installation, check out, operation, and maintenance of the WECS on site;

(4)   The list of warning documents required by *Section 6.33(G)* herein;

(5)   Grounding and lighting procedures protection that follows the National Electrical Code, Articles 250 (Grounding) and 280 (Lightning Arresters);

(6)   Underwriters label, where appropriate; and

(7)   Proof of insurance.

**(C)  Electromagnetic Interference.** The entire WECS (including turbines, alternators, generators, and systems electrically connected to the local electrical power utility system that are capable of feeding power back into the local electrical power utility system) shall be filtered and/or shielded to prevent the emission of generated radio frequency energy that would cause any interference with radio or television broadcasting or reception and shall comply with Federal Communication Rules, 47 CFR, parts 15 (including sub parts A and F) and 18 (including sub-parts A, D and H).

**(D)  Noise.** The maximum level of noise permitted to be generated by any WECS shall be 50 decibels, as measured on the DBA scale, measured at the property line nearest the WECS.

**(E)  Setbacks.** No WECS shall be erected such that any portion of the tower or turbine is closer to utility lines and/or property lines than the total distance of the height of the tower and rotor combined.

**(F)  Height.** The maximum allowable height, including rotor blade length of horizontal wind turbines, of any WECS shall be 100 feet unless otherwise prohibited by state or federal statutes or regulations or granted a variance by the Peninsula Township Zoning Board of Appeals.

**(G)  Labeling.**

(1)   The following information shall be provided on labels attached to the WECS tower subsystem in a visible, easily accessible location:

   **(a)**   Equipment weight of the tower subsystem;
   **(b)**   Manufacturer's name and address;
   **(c)**   Model number;
   **(d)**   Serial number;
   **(e)**   The following tower warning label or equivalent warning: "Installation and Maintenance of This Product Near Power Lines Is a Danger. For Your Safety, Follow the Installation and Maintenance Instructions";
   **(f)**   The survival wind speed in miles per hour and meters per second (survival wind speed is the maximum wind speed, as designated by the WECS manufacturer, at which a WECS, in unattended operation [not necessarily producing power] is designed to survive without damage to any structural equipment or loss of the ability to function normally);
   **(g)**   Name of installer;
   **(h)**   Name of person responsible for maintenance; and
   **(i)**   Current emergency telephone number in force for *Section 6.33(G)(1)(g)* and *Section 6.33(G)(1)(h)* above.

(2)   The following information shall be provided on labels attached to the WECS power conversion subsystem in a visible, easily accessible location:

   **(a)**   Maximum power input (KW), rated voltage (volts), and rated current output (amperes) of the generator, alternator, etc.;
   **(b)**   Manufacturer's name and address;
   **(c)**   Model number;
   **(d)**   Serial number;
   **(e)**   Emergency and normal shutdown procedures; and
   **(f)**   Underwriters label where appropriate.

**(H)  Ground Clearance.** For both horizontal and vertical axis turbines, the WECS rotor shall be located on the tower or support such that the minimum blade clearance above ground level is 20 feet.

**(I)  Accessibility.** Towers shall be designed and constructed in such a manner that climbing devices are only accessible with a separate ladder to a height of 12 feet.

**(J)** **Interconnected WECS.** In the case of WECS to be interconnected with the power grid of the local electric utility, the applicant shall provide proof of written notice to the utility of the proposed interconnection and the utility's response to the notice. The property owner shall comply with all requirements of the servicing utility if the WECS is interfaced with the utility grid. The utility will install appropriate electric metering (for sellback or non-sellback), and the customer will be required to install a disconnecting device adjacent to the electric meter(s).

**(K)** **Vibration.** Under no circumstances shall a WECS be permitted to produce vibrations humanly perceptible beyond the lot boundaries.

# Section 6.34    Winery/Farm Processing Facilities (currently Section 6.7.2(19))

**(A)** **Statement of Intent.** It is the intent of this subsection to promote a thriving local agricultural production industry and preservation of rural character by allowing construction and use of a winery/farm processing facility. The winery/farm processing facility use includes retail and wholesale sales of fresh and processed agricultural produce but is not intended to allow a bar or restaurant on agricultural properties, and the township shall not approve such a license. The majority of the produce sold fresh or processed has to be grown on the specific farm operation (land owned or leased for the specific farm operation) of the party owning and operating the specific winery/farm processing facility. Eighty-five percent (85%) of the produce sold fresh or processed has to be grown on the Old Mission Peninsula. Activities such as weddings, receptions, and other social functions for hire are not allowed; however, participation in township-wide events is allowed with prior township board approval. It is not the intent to grant any vested interest in non-agricultural uses of any structure built for a winery/farm processing facility. This amendment is not intended to supersede any conservation easement.

**(B)** A winery/farm processing facility is permitted in the agricultural A-1 zone subject to the following:

   **(1)** **Retail and Wholesale Sales.** Retail and wholesale sales (including tasting) of fresh or processed agricultural produce is allowed subject to the requirements of *Section 6.34(B)(2)* and, further, provided that:

      **(a)** The Liquor Control Commission and the Michigan Department of Agriculture shall control licenses and compliance;

      **(b)** Grape wine that is processed, tasted, and sold in winery/farm processing facility under this section is limited to "Old Mission Peninsula" appellation wine, meaning 85% of the juice will be from fruit grown on the Old Mission Peninsula;

      **(c)** Fruit wine, other than grape wine, that is processed, tasted, and sold in a winery/farm processing facility under this section is limited to wine bearing a label identifying that 85% of the juice is from fruit grown on the Old Mission Peninsula;

      **(d)** Sales of wine by the glass in a tasting room are allowed pursuant to the minimum requirements of the Michigan Liquor Control Commission rules and related Michigan Department of Agriculture permits regarding the sales of limited food items for on-premises consumption; and

      **(e)** Logo merchandise may be sold provided:

         **(i)** The logo merchandise is directly related to the consumption and use of the fresh or processed agricultural produce sold at retail;

         **(ii)** The logo is prominently displayed and permanently affixed to the merchandise;

**(iii)** Specifically allowed are: a) gift boxes/packaging containing the approved products for the specific farm operation; b) wine glasses; c) corkscrews; d) cherry pitters; and e) apple peelers; and

**(iv)** Specifically not allowed are unrelated ancillary merchandise such as: a) clothing; b) coffee cups; c) bumper stickers.

(2) **Limitations on Sources of Produce.**

**(a)** Not less than 85% of all of the agricultural produce sold fresh or processed shall be grown on the Old Mission Peninsula and a majority shall be grown on the land owned or leased for the specific farm operation by the same party owning and operating the specific winery/farm processing facility.

**(b)** If crop conditions or natural disaster result in a shortage of locally grown fruit for a particular year, the Township Board may approve a larger proportion of produce grown off the land owned or leased for the specific farm operation  by the same party owning and operating the Specific Winery/Farm Processing Facility for that particular year. The verification of such conditions shall be presented to the Township Board by a public organization representing the fruit growers of northwest Michigan that is duly recognized by the Township Board. Processed products produced in such a year shall not exceed the highest volume produced in any of the preceding five years.

**(c)** Wine shall be produced and bottled in the winery, and the label shall include "produced and bottled by" immediately preceding the place where bottled or packed in accordance with the Bureau of Alcohol, Tobacco, and Firearms law, article 27CFR, paragraph 4.35(a)(1) definition for "Produced and Bottled By." In other words, 75% of such products will be fermented and clarified on the site. This requirement is intended to comply with federal regulations and does not supersede the requirements of 85% grown on the Old Mission Peninsula. Sparkling wine or sparkling juices may be "finished" and bottled off site and so labeled.

**(d)** Any fruit beverage shall meet the same requirements as the wine in *Section 6.34(B)(2)(c)* except for the labeling requirements.

**(e)** Dried fruit, a minimum of 85% by weight that is grown on the Old Mission Peninsula and a minimum of 50% by weight that is grown on the farm, may be dried off premises and sold in the winery/farm processing facility retail room, provided that no more than the amount of fruit sent out for this processing is returned for retail sale.

(3) **Participation in township-wide events such as "Blossom Days" as specifically approved by the township board shall be allowed.**

(4) **Parcel Requirements.**

**(a)** A total of 40 acres of land are required to be devoted to the operation of a winery/farm processing facility.

**(b)** The 40 acres shall be located within Peninsula Township and shall be owned, leased, or cooperatively managed for the specific farm operation by the same party or entity owning the specific winery/farm processing facility.

**(c)** The parcel containing the specific winery/farm processing facility shall have a minimum area of 20 acres and a minimum parcel width of 330 feet.

**(d)** The 20-acre minimum parcel (which may include public road rights-of-way) and the winery shall be owned by the same party. None of the 20 acres shall be alienable.

**(e)**  The remaining parcel(s) associated with a farm processing facility necessary to meet only the minimum 40-acre requirement may be one or more contiguous parcels (with each other), and those contiguous parcels may be separated by a road.

**(f)**  There shall be no more than one house on the 20-acre parcel containing the winery/farm processing facility and no more than one house on the remaining required 20 acres.

**(g)**  Up to 20 of the 40 acres do not have to be contiguous and may be either owned by or leased with exclusive control and use transferred to the operator of the winery/farm processing facility.

**(h)**  None of the minimum 40 acres shall be used to satisfy acreage density or open space requirements of any other food processing or other use in the township while the winery/farm processing facility use is in effect.

**(i)**  The number of allowed dwellings that may be built on the total 40 acres dedicated to the winery/farm processing facility use shall be two. However, the right to build the remaining dwelling units may be extinguished by sale or donation provided a permanent conservation easement to that effect is recorded with the Grand Traverse County Register of Deeds. In addition, the remaining dwelling units may be clustered on contiguous land under the same ownership as the land from which the units are removed provided that a permanent conservation easement is placed on the land from which the units are removed in accordance with *Section 5.01(H)(1)(c)*. The clustered dwelling units may not be placed on any part of the acreage that makes up the minimum 40 acres dedicated for the winery/farm processing facility use.

**(j)**  If property is leased, the lease shall be for a minimum of one year, and the lease shall be recorded with the Grand Traverse County Register of Deeds.

**(k)**  There shall be a minimum of five acres of crops grown on the same parcel as the winery/farm processing facility.

(5)  **Setbacks.** The minimum setbacks for the winery/farm processing facility including retail areas and customer parking shall be:

**(a)**  Front Yard Setback. 50 feet.

**(b)**  Side and Rear Yard Setback. 100 feet.

**(c)**  Minimum of 200 feet from any pre-existing residence on adjoining property.

(6)  **Winery/Farm Processing Facility Size.** A farm processing facility may include retail space. The total floor area of a farm processing facility (above finished grade) shall equal 250 square feet per acre of land owned or leased for the specific farm operation but may not exceed 30,000 square feet of total floor area (above finished grade). The facility may consist of more than one building; however, all buildings shall be located on the 20-acre minimum parcel that contains the farm processing facility. Retail space may be a separate room in a farm processing facility and shall be the lesser of 1,500 square feet in area or 25%) of the total floor area of the farm processing facility (above finished grade). Underground facilities used only for processing or packaging of agricultural produce may be in addition to the permitted square footage of floor area, provided it is entirely below the pre-existing ground level and has no more than one loading dock exposed.

(7)  **Pre-Existing Buildings.** Pre-existing buildings (built prior to this amendment) may be used for a winery/farm processing facility provided that if it is more than 6,000 square feet in size, the retail space room shall not be larger than 1,500 square feet. The zoning board of appeals may consider variances from setbacks for such pre-existing buildings if it shall first be determined

that such extension shall not be inimical to public health, safety, or welfare, particularly with regard to surrounding property owners.

(8) **Vested Interest.** There shall be no vested interest in non-agricultural uses of the structures. Structures shall only be used for allowed uses in the A-1 agriculture district in the event that the winery/farm processing facility use is abandoned.

(9) **Parking.** A minimum of one parking space for each 150 square feet of floor area in the retail/tasting area. Parking shall comply with *Article 9* of the zoning ordinance.

(10) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(11) **Signs.** Winery/farm processing facility signs must meet the standards of *Article 10*.

(12) **Access.** A driveway permit from the Grand Traverse County Road Commission or MDOT shall be required before a land use permit can be issued.

(13) **Data and Records.** The owner of the specific winery/farm processing facility shall annually provide data and records to the zoning administrator showing that a majority of the products processed are grown on the land owned or leased for the specific farm operation by the same party owning and operating the specific winery/farm processing facility. The data and records shall also document compliance with off-site processing requirements of this section.

   (a) An up-to-date record of land ownership or lease to comply with acreage requirements shall be provided to the zoning administrator.

   (b) The above data shall be supplied to the township in a format or form approved by the township zoning administrator.

   (c) Any change in the above shall be submitted promptly in writing to the zoning administrator. Failure to submit such changes shall be considered a violation of the ordinance.

(14) **Approval Process.**

   (a) A site plan drawn to scale (one or more sheets as appropriate) is submitted to the zoning administrator along with the appropriate permit fee as established by the township board.

   (b) The site plan shall include at least:

      (i) The parcel;

      (ii) Existing and proposed structures including setbacks from property lines;

      (iii) Proposed parking and lighting;

      (iv) Floor plan showing processing and retail areas; and

      (v) Parcel numbers and legal description of the parcels making up all the minimum parcel requirements and the name, address, and phone number of the owner of the property.

   (c) A permit from the Grand Traverse County Health Department is required before a preliminary winery/farm processing facility permit can be issued.

**(d)** A preliminary winery/farm processing facility permit shall be issued by the zoning administrator upon showing that the minimum requirements of parcel, building size, acreage requirement, setback, and parking are met.

**(e)** No processing or sales of products shall take place until a final winery/farm processing facility permit has been issued by the zoning administrator. Such a final winery/farm processing facility permit shall not be issued until copies of all permits required by state, federal, and other local licenses and permits have been submitted to the zoning administrator, and the zoning administrator has made an on-site inspection to verify compliance with all the requirements of the zoning ordinance.

(15) Any violation of the land use permit issued by the zoning administrator for this use shall, in addition to the provisions of *Section 13.10(A)*, serve as grounds for closing the retail operations and tasting portions of the use by the township board. In the event of any such alleged violation made in writing to the township board, the township shall give written notice of such alleged violation to the applicant at the last address furnished to the township by the applicant. The notice shall state that unless the violation is corrected or resolved to the satisfaction of the township board within 30 days from the date of the notice, then the township board shall hold a hearing and may require the owner to close all retail sales operations on the premises until such time as the township board removes the restriction. In the event that a hearing becomes necessary, the township board shall establish the notice requirements and such other conditions with respect to the hearing as the township board may deem appropriate.

(16) **Residence within a Winery/Farm Processing Facility.**

**(a)** A single family dwelling may be allowed as part of a structure containing a winery/farm processing facility provided the following requirements are met:

**(b)** The dwelling and winery/farm processing facility combined shall not exceed any of the setback or facility size requirements established above;

**(c)** The dwelling shall be the only dwelling on the 20-acre parcel containing the Winery/Farm Processing Facility.

**(d)** The maximum height of the structure shall be 35 feet or two and a half stories, whichever is less.

# Section 6.35    Winery, Remote Tasting Rooms (currently Section 8.7.3(12))

**(A)** **Statement of Intent.** It is the intent of this subsection to allow wine tasting in a tasting room that is not on the same property as the winery with which it is associated and to establish reasonable standards for the use.

**(B)** **Minimum Lot Size.** There shall be a minimum parcel size of five acres for a remote winery tasting room.

**(C)** **Residential and Other Uses Prohibited.** The five-acre parcel shall not have another use such as housing but may be used to grow grapes or other farm crops.

**(D)** **Building Compatibility with Surrounding Area.** The building used for the wine tasting shall be in keeping with the neighborhood character. Preliminary building elevations shall be submitted to the planning commission and township board. The planning commission and township board shall base their decisions on structures within one-half mile of the proposed structure and shall consider roof type, pitch, color, and also siding type and color.

**(E)    Minimum Associated Land and Agricultural Area.** The tasting room and the parcel shall be under the same single ownership. In addition, there shall be a minimum of 150 acres in Peninsula Township under that ownership and a minimum of 50% of the 150 acres shall be in active agricultural use.

**(F)    Township Winery Management Required.** The wine tasting room must be managed by a Peninsula Township winery.

**(G)    Tasting Location.** Tasting of wine produced at the winery shall be the only wine tasted in the tasting room.

**(H)    Wine Sales.** Sales of wine by the bottle produced at the winery are allowed for off-premises consumption. Sales of wine by the glass are allowed pursuant to the minimum requirements of the Michigan Liquor Control Commission rules and related Michigan Department of Agriculture and Rural Development permits regarding the sales of limited food items for on-premises consumption. The Liquor Control Commission and the Michigan Department of Agriculture and Rural Development shall control licenses and compliance.

**(I)     Non-Food Sales.** The retail sale of non-food items that promote the winery or Peninsula Township agriculture is permitted, provided each item has the logo of the winery permanently affixed to the item by silk screening, embroidery, monogramming, decals, or other means of permanence. Such logo shall be as large as any other advertising on the item. No generic or non-logo items may be sold. Promotional items allowed may include corkscrews, wine glasses, gift boxes, t-shirts, bumper stickers, etc.

**(J)     Food Sales.** The retail sale of packaged food items allowed in addition to bottled wine are those that contain wine or fruit produced in Peninsula Township. Such food items shall be produced in a licensed food establishment and properly labeled including the winery logo as the dominant logo. Such food items shall be intended for off-premises consumption. Such allowed packaged food items may include mustard, vinegar, non-carbonated beverages, etc.

**(K)    Signs.** Signs and other advertising shall comply with *Article 10*.

# Section 6.36          Winery-Chateaus (currently Section 8.7.3(10))

**(A)    Statement of Intent.** It is the intent of this section to permit construction and use of a winery, guest rooms, and single-family residences as a part of a single site subject to the provisions of this ordinance. The developed site must maintain the agricultural environment, be harmonious with the character of the surrounding land and uses, and shall not create undue traffic congestion, noise, or other conflicts with the surrounding properties.

**(B)    The use shall be subject to all requirements of *Section 6.10* in A-1 districts and the contents of this subsection.** Data specified in *Section 6.10(B)* shall be submitted as a basis for judging the suitability of the proposed plan. Each of the principal uses shall be subject to the terms and conditions of this ordinance except as specifically set forth herein.

**(C)    Minimum Area.** The minimum site shall be 50 acres that are planned and developed as an integrated whole. All of the principal and accessory uses shall be set forth on the approved site plan.

**(D)    Permitted Uses.** The principal use permitted upon the site shall be a winery. Guest rooms, manager's residence, and single-family residences shall be allowed as support uses on the same property as the winery. In addition:

(1)    Accessory uses for each principal and support use shall be permitted, provided that all such accessory uses shall be no greater in extent than those reasonably necessary to serve the principal use.

(2) Sales of wine by the glass in the tasting room are allowed pursuant to the minimum requirements of the Michigan Liquor Control Commission rules and related Michigan Department of Agriculture and Rural Development permits regarding the sales of food for on-premises consumption. The Liquor Control Commission and the Michigan Department of Agriculture and Rural Development shall control licenses and compliance.

(E) **Area Equivalent.** For purposes of computation, the principal and each support use identified in *Section 6.36(D)* above shall be assigned an "area equivalent" as set forth herein. The total "area equivalent" assigned to the principal uses shall not exceed the actual area of the site. "Area equivalents" shall be calculated as follows:

(1) **Winery:** Five acres or the actual area to be occupied by the winery including parking, whichever is greater

(2) **Manager's Residence:** Five acres.

(3) **Single-Family Home**: Five acres.

(4) **Guest Rooms:** Five acres for each three rooms, not to exceed a total of 12 guest rooms.

(F) **Single-Family Residences and Guest Rooms.** The number of single-family residences shall not exceed six. The manager's residence shall not contain or be used for rental guest rooms. The number of guest rooms shall not exceed 12.

(G) **Minimum Area Used for the Active Production of Crops**. Not less than 75% of the site shall be used for the active production of crops that can be used for wine production, such as fruit growing on vines or trees.

(H) **Minimum Frontage.** The facility shall have at least 200 feet of frontage on a state or county road.

(I) **Principal Building and On-Site Resident Manager.** The winery-chateau shall be the principal building on the site and shall have an on-site resident manager.

(J) **Minimum Guest Room Floor Area and Maximum Occupancy.** All guest rooms shall have floor areas greater than 250 square feet. Maximum occupancy shall be limited to five persons per unit. No time sharing shall be permitted.

(K) **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(L) **Accessory Uses.** Accessory uses such as facilities, meeting rooms, and food and beverage services shall be for registered guests only. These uses shall be located on the same site as the principal use to which they are accessory and are included on the approved site plan. Facilities for accessory uses shall not be greater in size or number than those reasonably required for the use of registered guests.

(M) **Well and Septic System.** Proof of evaluation of the well and septic system by the Grand Traverse County Health Department and conformance to that agency's requirements shall be supplied by the owner.

(N) **Fire Safety:**

(1) All transient lodging facilities shall conform to the Michigan State Construction Code section regulating fire safety.

(2) An on-site water supply shall be available and meet the uniform published standards of the Peninsula Township Fire Department.

(3)   A floor plan drawn to an architectural scale of not less than one-eighth inch equals one foot (1/8" = 1 foot) shall be on file with the Peninsula Township Fire Department.

(4)   Each operator of a transient lodging facility shall keep a guest registry that shall be available for inspection by the zoning administrator and police and fire officials at any time.

(5)   Master keys for all rooms shall be available at any time.

**(O)   Fencing and Planting Buffer**. In the event the township board determines noise generation may be disturbing to neighbors or the establishment is in an area where trespass onto adjacent properties is likely to occur, then the township board may require fencing or a planting buffer be constructed and maintained.

**(P)   Prohibited Rentals.** No motorized off-road vehicles (e.g., snowmobiles, four-wheelers, etc.) or watercraft shall be rented or used on the property by registered guests.

**(Q)   Activities and Outdoor Gatherings.** Activities made available to registered guests shall be on the site used for the facility or on lands under the direct control of the operator either by ownership or lease. Outdoor activities shall be permitted if conducted at such hours and in such manner as to not be disruptive to neighboring properties.

**(R)   Signs.** Signs as allowed by *Article 10*.

**(S)   Setback Between Guest Accommodations and Facilities and Agricultural Crops.** A 200-foot setback shall be maintained between guest accommodations and facilities and agricultural crops unless it is demonstrated that a lesser setback can be maintained that will provide for an equal level of protection from agricultural activities to residents, visitors, and guests of the winery-chateau. Upon such demonstration, the township board may permit a lesser setback.

**(T)   Winery Guest Activity Uses.** The township board may approve winery guest activity uses (activities by persons who may or may not be registered guests) as an additional support use subject to the following:

(1)   **Intent.**

Winery guest activity uses are allowed to take place at a winery-chateau facility under the following circumstances:

(a)   Winery guest activity uses are intended to help in the promotion of Peninsula Township agriculture by:  a) identifying "Peninsula-Produced" food or beverage for consumption by the attendees; b) providing "Peninsula Agriculture" promotional brochures, maps, and awards; or c) including tours through the winery or other Peninsula Township agriculture locations.

(b)   Winery guest activity uses are limited to *Section 6.36(T)(2)* below.

(c)   Winery guest activity uses include wine tasting and related promotional activities such as political rallies, winery tours, and free entertainment (i.e., "Jazz at Sunset") that are limited to the tasting room and for which no fee or donation of any kind is received.

(d)   Guest activity uses are in addition to accessory uses for registered guests that are otherwise allowed.

(e)   Overnight stays at the winery-chateau are not required for these guest activity uses.

(f)   Fees may be charged for these winery guest activity uses.

(2)  **Uses Allowed Notwithstanding** *Section 6.36(L)*. The following ==winery guest activity== uses may be approved with a special use permit by the township board:

    **(a)**  Wine and food seminars and cooking classes that are scheduled at least 30 days in advance with notice provided to the zoning administrator. Attendees may consume food prepared in the class.

    **(b)**  Meetings of 501(C)(3) non-profit groups within Grand Traverse County. These activities are not intended to be or resemble a bar or restaurant use and therefore full course meals are not allowed, although a light lunch or buffet may be served.

    **(c)**  Meetings of agricultural related groups that have a direct relationship to agricultural production, provided:

        **(i)**  The meetings are scheduled at least one month in advance and give the zoning administrator adequate advance notice that allows for prior approval;

        **(ii)**  The zoning administrator shall use the following types of agricultural-related groups as a guide for determining "direct relationship to agricultural production":

            **a.**  Food/wine educational demonstrations;

            **b.**  Cooking showcasing Peninsula Township produce and wine;

            **c.**  Farmer's conferences;

            **d.**  Regional farm producers;

            **e.**  Cherry Marketing Institute and Wine Industry conferences;

            **f.**  Farm Bureau conference;

            **g.**  Future Farmers of America and 4-H;

            **h.**  Michigan State University/agricultural industry seminars.

        **(iii)**  These meetings may include full course meals to demonstrate connections between wine and other foods.

        **(iv)**  An appeal of the zoning administrators determination can be made to the zoning board of appeals pursuant to *Section 13.06*.

    **(d)**  ==Winery guest activity uses do not include entertainment, weddings, wedding receptions, family reunions, or the sale of wine by the glass.==

    **(e)**  No food service other than that allowed above or as allowed for wine tasting may be provided by the winery-chateau. If wine is served, it shall only be served with food and shall be limited to Old Mission Peninsula appellation wine produced at the winery except as allowed by *Section 6.36(T)(6)* below.

(3)  **Relation to Agricultural Production in Peninsula Township.** In order to offer winery guest activity uses, the owner of the winery-chateau shall, in addition to the agricultural production on the minimum acreage required for the winery-chateau, grow in Peninsula Township or purchase grapes grown in Peninsula Township for the previous growing season equal to 1.25 tons of grapes for each person allowed to participate in a ==winery guest activity use== up to the maximum number approved by the township board in a special use permit. If the amount of grapes cannot be documented by the zoning administrator, the numbers of persons allowed to participate in guest activity uses shall be reduced proportionally.

(4)   **Participation in Winery Guest Activity Uses.** The number of persons allowed to participate in guest activity uses shall be determined as follows:

    (a)   The township board as part of the special use permit approval process shall determine the room(s) provided and a maximum number of attendees for winery guest activity uses.

        (i)   The maximum number of attendees shall not exceed one attendee for each 15 square feet of the room or rooms provided for guest activity uses. These rooms shall exclude guest rooms, restrooms, hallways, stairways, entries, spaces used in the normal operation of wine making and storage, out-of-doors areas, and any other spaces not usual for guest assembly. In no case will the number exceed 111 or the fire marshal's maximum occupancy, whichever is less.

        (ii)   The maximum number of attendees may be fewer than, but not more than, the maximum number described in *Section 6.36(T)(4)(a)(i)* above at the discretion of the township board based on possible adverse impacts on adjacent properties, lack of parking spaces, or other site specific conditions.

        (iii)   A building floor plan showing spaces for all approved uses including the maximum capacity of each shall be attached to the site plan.

(5)   **Requirements for Guest Activity Uses.**

    (a)   All winery guest activity uses shall include agricultural production promotion as part of the activity as follows:

        (i)   Identify "Peninsula Produced" food or beverages that are consumed by the attendees;

        (ii)   Provide "Peninsula Agriculture" promotional materials;

        (iii)   Include tours through the winery or other Peninsula Township agricultural locations.

    (b)   Hours of operation for winery guest activity uses shall be as determined by the township board but no later than 9:30 p.m. daily

    (c)   No alcoholic beverages, except those produced on the site, are allowed with guest activity uses.

    (d)   Sales of wine by the glass or sales of bottles of wine for on-premises consumption are prohibited except as provided in *Section 6.36(T)(2)(e)* above.

    (e)   No outdoor food, beverages, or temporary structures are allowed except as allowed by *Section 6.36(T)(8)(c)* below.

    (f)   No sounds related to the guest activity shall be discernible at the property lines.

    (g)   No amplified instrumental music is allowed; however, amplified voice and recorded background music are allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes.

    (h)   No outdoor displays of merchandise, equipment, or signs are allowed.

    (i)   Kitchen facilities may be used for on-site food service related to guest activity uses but not for off-site catering.

**(j)**     No lighting is allowed except the minimum required for safety and sign lighting as allowed by the ordinance.

**(k)**     The township board may consider seasonal weighting of the frequency or a maximum number of guest activity uses during the year.

(6)     **Shortage of Fruit Due to Crop Conditions or Natural Disaster**. If crop conditions or natural disaster results in a shortage of locally grown fruit for a particular year, the township board may reduce the requirement for the amount of grapes for that particular year provided that verification of such conditions are presented to the township board by a public organization representing the fruit growers of northwest Michigan that is duly recognized by the township board.

(7)     **Documentation.** The owner of the winery-chateau shall provide data and records on an annual basis to the zoning administrator showing that:

**(a)**     In addition to the agricultural production on the minimum acreage required for the winery-chateau, the winery has grown grapes in Peninsula Township or purchased grapes grown in Peninsula Township equal to 1.25 tons of grapes for each person allowed to participate in guest activity uses; and

**(b)**     That all the grapes from *Section 6.36(T)(7)(a)* above plus the production on the minimum acreage required for the winery-chateau have been processed in the winery.

(8)     **Additional Conditions**

**(a)**     Special use permits approved under this section may list any number of restrictions or requirements approved by the township board such as additional setback requirements, days-of-the-week restrictions, number of guest activity days per year, or other requirements deemed beneficial to the township or its residents.

**(b)**     Nothing in this section shall prohibit the township board from approving a larger special community event such as Blessing of the Blossoms, harvest days, or other community events for which no fee is charged the participants except as specifically approved by the township board and is open to the public.

**(c)**     No temporary structures including tents or canopies are allowed except that the township board may approve the reasonable use of temporary structures tents or canopies in conjunction with community events approved in *Section 6.36(T)(8)(b)* above.

**(d)**     Any violation of the special use permit issued for this use shall, in addition to the provisions of *Section 13.05(C)*, serve as grounds for closing the guest activity uses use by the township board. In the event any such alleged violation is made in writing to the township board, the township shall give written notice of such alleged violation to the applicant at the last address furnished to the township by the applicant. The notice shall state that unless the violation is corrected or resolved to the satisfaction of the township board within 30 days from the date of the notice, then the township board will hold a hearing and may require the owner to close all guest activity uses on the premises until such time as the township board removes the restriction. In the event a hearing becomes necessary, the township board shall establish the notice requirements and such other conditions with respect to the hearing as the township board shall deem appropriate.

# Section 6.37     Wireless Communication Facilities (currently Sections 7.12 and 8.7.3(11))

**(A)**     **Intent.** The Telecommunications Act of 1996, the Federal Communications Commission (FCC), and the Michigan Zoning Enabling Act set forth provisions concerning placement, location, and

construction of towers and related facilities for wireless communication services.

In order that such towers do not cause visual pollution or create a safety hazard or reduce property values on adjacent properties, reasonable regulations for the location, use of existing structures (e.g., water towers, school and church steeples, tall buildings), and design of structures and towers is appropriate. Wireless communication services are specifically determined NOT to be essential services nor to be public utilities as such terms are used in this ordinance.

Peninsula Township has adopted policies and the voters have approved increased property taxes to purchase development rights on certain farmlands to preserve the agricultural industry, retain the rural character of the township, and preserve the unique scenic views of farms and shoreline. A considerable amount of property value in Peninsula Township is directly related to these efforts to retain the scenic qualities, agricultural land, and management of growth in the township. It is consistent with these policies and programs to allow towers to be constructed in locations and to such heights that they do not interfere with these efforts to preserve the scenic views and township character.

It is the intent of these regulations to allow antennae to be located on monopoles as short as possible so as to maintain property values on surrounding properties, not impair scenic views, and provide reasonable service to Peninsula Township residents. It is not the intent to create "antennae farms" with a number of monopoles and antennae in a small area.

Taller towers may be allowed if it is proven to the satisfaction of the township board that reasonable service to Peninsula Township residents cannot be provided by lower monopoles.

It is not the intent to regulate amateur radio antennae under this section.

**(B) General Requirements.**

(1) **Option A.** Wireless communication facilities are a permitted use of property and are not subject to special land use approval or any other approval if all of the following requirements are met:

    **(a)** Co-Location. The wireless communication facilities may be co-located on an existing wireless communication support structure or in an existing equipment compound, provided the proposed co-location complies with the terms and conditions of any previous final zoning approval by the township and that the co-location will not do any of the following:

        **(i)** Increase the overall height of the wireless communication support structure by more than 20 feet or 10% of its original height, whichever is greater;

        **(ii)** Increase the width of the wireless communication support structure by more than the minimum necessary to permit co-location;

        **(iii)** Increase the area of the existing equipment compound to greater than 2,500 square feet.

    **(b)** Existing Facilities. The existing wireless communication support structure or existing equipment compound is in compliance with the zoning ordinance or was approved by the township.

(2) **Option B**. Wireless communication equipment is subject to special land use approval in accordance with *Section 13.05* of the zoning ordinance if the equipment does not meet requirements of *Section 6.37(B)(1)(a)* but the equipment meets all of the following requirements:

    **(a)** The wireless communication equipment will be co-located on an existing wireless communication support structure or in an existing equipment compound;

    **(b)** The existing wireless communication support structure or existing equipment compound is in compliance with the township zoning ordinance or has been approved by the township.

(3) **Option C.** Wireless communication equipment is subject to special land use approval in accordance with *Section 13.05* of the zoning ordinance if the proposal does not involve co-location (e.g., a new facility).

**(C) Approval Procedures.** The following procedures have been established to achieve approval of a proposed wireless communication facility:

(1) **Option A.** Option A wireless communication equipment plans require approval by the zoning administrator as delegated by the township board.

(2) **Option B.** Option B wireless communication equipment proposals require special land use approval. Accordingly, such proposals are subject to the procedures in *Section 13.05* and the following special procedures:

| Steps | Action |
|-------|--------|
| Step 1 | Applicant submits plan and required fee. |
| Step 2 | Within 14 business days, the township zoning administrator or planning director determines if the application is complete as delegated by the township board. |
| Step 3 | If the application is incomplete, the zoning administrator or planning director notifies the applicant. |
| Step 4 | If the application is complete, the zoning administrator or planning director initiates special land use review by scheduling a special land use public hearing. A special land use review must be completed 60 days after the application is considered complete. |
| Step 5 | The township zoning administrator or planning director reviews the plan and transmits a letter to the planning commission. |
| Step 6 | The planning commission reviews the plan and makes a recommendation to the township board. |
| Step 7 | The township board approves or denies the application. |

(3) **Option C.** Option C wireless communication equipment proposals require special land use approval. Accordingly, such proposals are subject to the procedures outlined for Option B above except that, in Step 4, the special land use review must be completed not more than 90 days after the application is considered complete.

**(D) Standards and Conditions.** All applications for wireless communication facilities shall be reviewed in accordance with the standards in this ordinance that apply generally to site plan review and special land use review and subject to the following standards and conditions. If approved, such facilities shall be constructed and maintained in accordance with such standards and conditions and any additional conditions imposed by the planning commission and township board.

(1) **Right-of-Way and Access Easement Location Prohibited.** Wireless communication towers and equipment shelter buildings shall not be placed in any road right-of-way or in any easement for road purposes.

(2) **Zoning Districts.** Wireless communication towers and facilities may be located only in the agricultural A-1 zone or the commercial C-1 zone. No towers are permitted in the area shown on the scenic viewshed map of the township's master plan.

(3) **Public Health and Safety.** Facilities and/or support structures shall not be detrimental to the public health, safety, and welfare, including preserving unique scenic views of farms and

shoreline. Peninsula Township has adopted policies and the voters have approved increased property taxes to purchase development rights on certain farmlands to preserve the agricultural industry, retain the rural character of the township, and preserve the unique scenic view of farms and shoreline. A considerable amount of property value in Peninsula Township is directly related to these efforts to retain the scenic qualities, agricultural land, and management of growth in the township.

(4)    **Harmony with Surroundings and Prohibited Location in Scenic Areas.** The entire facility must be aesthetically and architecturally compatible with its environment.

(5)    **Compliance with Federal, State, and Local Standards.** Wireless communication facilities shall comply with applicable federal and state standards, including requirements promulgated by the Federal Aviation Administration (FAA), Federal Communication Commission (FCC), and Michigan Aeronautics Commission. Wireless communication support structures shall comply with all applicable building codes. All tower proposals of more than 35 feet shall be submitted to the Cherry Capital Airport Commission and FAA for review and approval prior to approval by Peninsula Township.

(6)    **Maximum Height.** The maximum height of a new or modified support structure and antenna shall be no more than required for reasonable communication by the applicant (and by other entities to co-locate on the structure) according to engineering requirements for a specific site or the technical capabilities of the antennas being mounted. Applicants shall demonstrate a justification for the proposed height of the structures and an evaluation of alternative designs that might result in lower heights. The township may engage the services of an independent technical and engineering evaluation to determine the necessary and/or optimal height. Where the independent evaluation shows that service can be provided by a lower tower or co-location on an existing tower, the tower shall be lowered accordingly or the equipment must be co-located on an existing tower. In no case shall the maximum height of a new or modified support structure and antenna exceed 120 feet. Higher towers may be permitted but only if necessary to achieve co-location. The buildings, cabinets, and other accessory structures shall not exceed a height of 12 feet.

(7)    **Minimum Setbacks.** All setbacks for the zoning district shall be met and, in addition, no new or modified tower shall be placed closer than the total height of the tower from any lot line. Buildings and facilities accessory to the wireless communication facility (other than the support structure) shall comply with the required setbacks for principal buildings specified in the schedule of regulations for the zoning district in which the facility is located.

(8)    **Access.** Unobstructed permanent access to the support structure shall be provided for operation, maintenance, repair, and inspection purposes and may be provided through or over an easement. The permitted type of surfacing, dimensions, and location of such access route shall be subject to approval by the planning commission and township board based on evaluation of the location of adjacent roads, layout of buildings and equipment on the site, utilities needed to service the facility, proximity to residential districts, disturbance to the natural landscape, and the type of vehicles and equipment that will visit the site.

(9)    **Minimum Lot Area.** Wireless communication towers and facilities shall be placed on parcels (whether the land is owned or leased by the tower owner) that have an area no less than the minimum parcel size for the district. The division of property for the purpose of locating a wireless communication facility shall be permitted only if all zoning requirements, including lot size and lot width requirements, are met.

(10)   **Equipment Enclosure.** If an equipment enclosure is proposed as a building or ground-mounted structure, it shall comply with the required setbacks and other requirements specified for principal buildings in the schedule of regulations for the zoning district in which the facility is located. The use of compatible materials such as wood, brick, or stucco is required for associated support buildings; these buildings shall be designed to architecturally match the exterior of residential structures within the neighborhood. In no case will metal

exteriors be allowed for accessory buildings. If an equipment enclosure is proposed as a roof appliance on a building, it shall be designed, constructed, and maintained to be architecturally compatible with the principal building. The service building shall be no larger than necessary to house the equipment.

(11) **Design Requirements.** The support structure and all accessory buildings shall be designed to minimize distraction, reduce visibility, maximize aesthetic appearance, and ensure compatibility with surroundings. Accordingly, support structures shall be painted with a rust preventative paint of an appropriate color to harmonize with the surroundings and shall not have lights unless required otherwise by the Federal Aviation Administration (FAA). Equipment buildings shall have a brick exterior. No signs or logos visible from off-site shall be permitted on a support structure. The planning commission may recommend to the township board that the tower be camouflaged to be less intrusive.

(12) **Fencing.** The tower and its accessory buildings shall be enclosed by a vinyl-coated chain link fence having a maximum height of six feet with a locked gate.

(13) **Structural Integrity.** Wireless communication facilities and support structures shall be constructed and maintained in structurally sound condition and use the best available technology to minimize any threat to public safety.

(14) **Maintenance.** A plan for the long-term, continuous maintenance of the facility shall be submitted. The plan shall identify who will be responsible for maintenance and shall include a method of notifying the township if maintenance responsibilities change.

(15) **Screening.** The fenced site shall be completely screened on all sides by evergreens planted no farther than three and a half feet apart. The plants shall be at least six feet in height at the time of planting. Other evergreen trees or shrubs may be permitted or required, provided that the planning commission and township board find that the substitute plant material will provide a complete screen around the facility. The township board may require additional landscape screening of the service building and fencing. The screening must be maintained.

(16) **Underground Wires.** With the exception of connecting wires between the equipment enclosure building and the tower via one ice bridge not higher than 12 feet in height, all other connecting wires from towers to accessory buildings shall be underground. All electrical and other service wires to the facility shall be underground.

(17) **Monopole Tower Only.** The tower itself must be of monopole design, and there shall be no guyed or lattice towers.

(18) **Lighting.** Lighting shall be limited to that which is absolutely necessary and required by appropriate agency and shall conform to the requirements of *Section 8.07*. Strobe lights are prohibited.

**(E)** **Co-Location Provisions.** In order to maximize the efficiency of the provision of telecommunication services while also minimizing the impact of such facilities on Peninsula Township, co-location, or the provision of more than one antenna on a single tower, may be allowed or required by the township board.

(1) The applicant shall be required to provide information regarding the feasibility of co-location at proposed sites. Factors to be considered in determining feasibility of co-sharing include available space on existing towers, the tower owner's ability to lease space, the tower's structural capacity, radio frequency interference, geographic service area requirements, mechanical or electrical incompatibilities, the comparative costs of co-location and new construction, and any FCC limitations on tower sharing.

(2) The applicant shall be required to send a certified mail announcement to all other tower users in the area stating their citing needs and/or sharing capabilities in an effort to

encourage tower sharing. The applicant shall not be denied or deny space on a tower unless mechanical, structural, or regulatory factors prevent them from sharing.

(3)  Further, the applicant may be required to provide a letter of intent to lease excess space on a facility and commit itself to:

(a)  Respond to any requests for information from another potential shared use applicant;

(b)  Negotiate in good faith and allow for leased shared use if an applicant demonstrates that it is technically practicable, and;

(c)  Make no more than a reasonable charge for a shared use lease.

**(F)  Removal.** A condition of every approval of a wireless communication facility shall be adequate provision for removal of all or part of the facility by users and owners upon the occurrence of one or more of the following events:

(1)  **The maximum time which an unused tower may stand is 12 months.** The applicant or owner is responsible for the removal of an unused tower. Failure to do so shall be sufficient for the township to remove the structure according to the provisions under the Dangerous Structures Ordinance #(48) adopted by the township. For the purposes of this section, the removal of antennas or other equipment from the facility, or the cessation of operations (transmission and/or reception of radio signals), shall be considered as the beginning of a period of nonuse.

(2)  Twelve months after new technology is available at reasonable cost, as determined by the township board, which permits the operation of the communication system without the requirement of the support structure. Furthermore:

(a)  The situations in which removal of a facility is required, as set forth in *Section 6.37(F)(1)* above, may be applied and limited to portions of a facility.

(b)  Upon the occurrence of one or more of the events requiring removal, the property owner or persons who had used the facility shall immediately apply for any required demolition or removal permits and immediately proceed with and complete the demolition, removal, and site restoration.

(c)  If the required removal of a facility or a portion thereof has not been lawfully completed within 60 days of the applicable deadline, and after at least 30 days written notice, the township may remove or secure the removal of the facility or required portions thereof, with its actual cost and reasonable administrative charge to be drawn or collected or enforced from or under the security posted at the time application was made for establishing the facility.

**(G)  Application Requirements.** Applications shall include the following in addition to any other specific requirements under *Section 13.04*:

(1)  **Evidence of Ownership or Lease.** Evidence of ownership or lease of the property on which the facility is to be placed.

(2)  **Name and Address.** Name and address of the proposed owner or operator of the site.

(3)  **Service Requirements.** Engineering requirements for the service to be provided at the site.

(4)  **Contact Person.** Name, address, and phone number of the person to contact for engineering, maintenance, feasibility of co-location as provided in this section, and other notice purposes. This information shall be continuously updated during all times the facility is on the premises.

(5) **Site Plan.** Site plan showing location of all proposed and existing structures on the property, including the location, size, and screening of all buildings, outdoor equipment, and structures.

(6) **Landscaping Plan.** A detailed landscaping plan illustrating the number, species, location, and size at the time of planting of all proposed trees and shrubs. The purpose of landscaping is to provide screening and aesthetic enhancement for the structure base, accessory buildings, and enclosure.

(7) **Design of Structures.** Preliminary design of all proposed structures.

(8) **Surrounding Property Owner Information.** Name and address of all adjacent property owners within 300 feet of the property.

(9) **Structural Specifications.** Structural specifications for the support structure and foundation shall be submitted for review, including a registered engineer's certification of the design and safety of the proposed tower to withstand winds of one hundred (100) miles per hour. The structural specifications shall state the number of various types of antennae capable of being supported on the structure. A soils report prepared by a geotechnical engineer licensed in the State of Michigan shall also be submitted confirming that the soils on the site will support the structure. Structural plans shall be subject to review and approval by the township engineer.

(10) **Security.** The application shall include a description of security to be posted immediately upon issuance of a building permit for the facility to ensure removal of the facility when it has been abandoned or is no longer needed, as previously noted. The amount of security shall be determined by the township engineer. In this regard, the security shall, at the election of the applicant, be in a form approved by the township attorney and recordable at the office of the Grand Traverse County Register of Deeds, establishing a promise of the applicant and owner of the property to remove the facility in a timely manner as required, with the further provision that the applicant and owner shall be responsible for the payment of any costs and attorney's fees incurred by the township in securing removal.

(11) **Service Area Documentation.** The application shall include a map showing existing and known proposed wireless communication facilities in the township and in areas surrounding communities that are relevant in terms of potential co-location or in demonstrating the need for the proposed facility. If such information is on file with the community, the applicant shall be required only to update as needed. Any such information that is a trade secret or other confidential commercial information which, if released, would result in commercial disadvantage to the applicant, may be submitted with a request for confidentiality in connection with the development of governmental policy (MCL 15.243(1)). This ordinance shall serve as the promise to maintain confidentiality to the extent permitted by law. The request for confidentiality must be prominently stated in order to bring it to the attention of the township.

# Article 7     General Provisions

## Section 7.01     Essential Services (currently Section 5.8)

**(A)** **General.** Essential services authorized under any franchise from or regulated by any law or ordinance of the State of Michigan or the township are exempt from the application of this ordinance.

**(B)** **Buildings for Essential Services.** Essential service buildings are those that are necessary for the furnishing of adequate service by such public utilities, departments, or commissions. The township board may permit the erection and use of an essential services building or an addition to an existing building in any zoning district upon finding that the structure is in compliance with this ordinance and reasonably necessary for the public's convenience and service.

The zoning board of appeals may permit a greater height or a larger area than the district requirement herein established, subject to the requirements of *Section 13.06*. Wireless communication towers and facilities, wind energy conversion systems, and solar energy systems shall not be considered essential services.

## Section 7.02     Recreational Vehicles Storage (currently Section 6.2.2(4))

The outdoor storage of recreational vehicles is permitted in agricultural and residential districts, provided storage does not occur within any required yard setback area (except watercraft stored in a shoreline setback). Any recreational vehicle stored outdoors must contain a valid registration from the State of Michigan to a person residing on, or having an ownership interest in, the lot or parcel upon which the vehicle is stored.

## Section 7.03     Temporary Buildings (currently Section 6.2.3(1))

For uses incidental to construction work, such buildings shall be removed upon the completion or abandonment of the construction work or within the period of one year, whichever is the lesser time period. Such structures shall not be used for dwelling purpose.

## Section 7.04     Use of Structure for Temporary Dwelling Prohibited (currently Section 7.2.1)

No structure, whether of a fixed or portable construction, shall be erected or moved onto a lot and used for any temporary dwelling purposes.

## Section 7.05     Storage Outdoors (currently Sections 6.6.3(1) and 7.2.4)

**(A)** **Yard Storage.** Unless otherwise provided for in this ordinance, whenever a business establishment engages in storage of supplies, merchandise, containers, or any other materials outside the confines of an enclosed building structure, it shall provide an enclosure of solid fence not fewer than six feet in height around such yard storage area. The fence shall be constructed and maintained in a manner approved by the zoning administrator. The zoning administrator may permit substitution of a barrier or screen other than a fence when the same will serve the purpose of screening from vision, noise, and odor.

**(B)** **Prohibited Storage.** No land in any zoning district shall be used in whole or in part for the storage of unused or discarded equipment or materials, or for the storage of unlicensed cars, boats, salvage, waste, and junk outside of properly authorized buildings. This section shall not apply to the

storage of usable farm machinery necessary for permitted agricultural uses, approved junkyards (*Section 6.18*), or in connection with a use otherwise authorized in the commercial district.

# Section 7.06   Sanitation Requirements (currently Section 7.1.2)

No structure shall be erected, altered, or moved upon a lot or premise and used in whole or in part for a dwelling, business, industrial, or recreational purpose unless it complies with all provisions of the environmental health regulations for Grand Traverse County. Violation of any provision of that ordinance shall constitute a violation of this ordinance.

# Section 7.07   Supplementary Regulations for Height, Lot Area, and Lot Width (currently Sections 7.3.1, 7.3.2, and part of 7.3.4)

**(A)   Definitions.** Refer to *Section 2.02* for definitions of "Building, Height of" and other definitions related to height.

**(B)   Permitted Height Exceptions.** When a given use is permitted in any district, the following structural appurtenances may exceed height limitations of this ordinance, provided they are not designed or used for human occupancy:

   (1)   **Steeples and Similar Ornamental Architectural Features for Religious Institutions.** Steeples and similar ornamental architectural features for religious institutions may exceed the maximum height of the district, provided the peak shall not be more than twice the height of the building.

   (2)   **Cupolas and Similar Ornamental Architectural Features.** Except as permitted in *Section 7.07(B)(1)*, cupolas and similar ornamental architectural features that are decorative in nature shall not exceed the maximum height of the district by more than five feet.

   (3)   **Other Structures.** Functional chimneys, ventilators, television aerials, and ham radio antenna may exceed height limitations, provided they are no higher than necessary to achieve the intended performance of the structure.

**(C)   Permitted Exceptions, Agricultural Districts.** In the agricultural district, traditional barns and silos may be constructed to heights up to 50 feet, provided they are accessory to a farm.

**(D)   Lots Existing and of Record on the Effective Date of This Ordinance (currently part of Section 7.3.4).** Any lot existing and of record as of June 5, 1972 (the effective date of Peninsula Township Ordinance #2), may be used for any permitted use specified for the district in which such lot is located, whether or not such lot complies with the lot area and width requirements of this ordinance, provided that all other requirements of this ordinance are complied with.

**(E)   One Dwelling Unit Per Lot (currently part of Section 7.3.4).** Unless explicitly permitted elsewhere in this ordinance, not more than one dwelling unit shall occupy any lot except in conformance with the required lot area for each dwelling unit.

# Section 7.08   Developments Abutting Agricultural Land (currently Section 7.3.3, Section 7.7, and Section 7.2.7)

**(A)   Agricultural Setback.** The following setbacks shall be required as provided below.

   (1)   A setback of 100 feet from the property line of the adjacent property shall be required for uses, buildings, or structures as follows:

    **(a)**  When a planned unit development, subdivision, condominium, mobile home park, or multiple-family dwelling is developed adjacent to land that is zoned A-1 agriculture.

    **(b)**  When a planned unit development, subdivision, condominium, mobile home park, or multiple-family dwelling is developed adjacent to land that is zoned residential but is shown on the agricultural preservation map of the Peninsula Township Master Plan as adopted and amended from time to time.

    **(c)**  When a planned unit development, subdivision, condominium, mobile home park, or multiple-family dwelling is developed adjacent to land that is zoned residential but is currently being used for agricultural production that includes the carrying on of usual soil practices of cultivation, spraying, and fertilization.

    **(d)**  In the event that lands abutting a mobile home park, subdivision, site condominium, planned unit development, or any other residential use are brought into agricultural production after the development of the residential use, the agricultural production lands and the related activities shall be separated from the adjoining residential lot line by 100 feet. The buffer under the control of the farm operator shall be measured between the lands used for agricultural production and the adjoining residential lot.

(2)  A setback of 50 feet from the property line of the adjacent property shall be required for those portions of metes and bounds parcels created after the adoption of this amendment that have a common line with land that is zoned A-1 agricultural unless that A-1 agricultural zoned land is being used for residential purposes.

(3)  Subdivision lots or condominium limited common elements within the required agricultural setbacks in *Section 7.08(A)* above shall have designated building sites shown on the preliminary and final plans. Residential and accessory uses shall be located within the designated areas. Plans accompanying applications for land use permits shall show such designated sites.

(4)  In approving a planned unit development, subdivision, condominium, mobile home park, or multiple-family dwelling, the township board may, upon the recommendation of the planning commission, decrease the required setback on any or all lots or limited common elements when the township board determines that one or more of the following conditions exist:

    **(a)**  Topographic conditions, i.e., steep slopes, changes in grade, wetlands,  or other site conditions, that make it:

        **(i)**  Unlikely that any of the uses allowed in the agricultural district would be located on the adjacent agriculturally zoned land; or

        **(ii)**  So that the properties are sufficiently separated to mitigate incompatibilities of use.

    **(b)**  There exists an easement such as a conservation easement on the land adjacent to the proposed plat that restricts agricultural uses in such a manner that protection to future homeowners is equal or better than that provided by the 100-foot setback.

    **(c)**  There are existing residential uses along the lot line of the agriculturally zoned property.

**(B)**  **Fencing Certain Agricultural Lands.** When lands used for a planned unit development, mobile home park, or multiple-family dwelling abut agricultural lands as described in *Section 7.08*, the developer shall, prior to construction of residential units, install a control fence along the boundary between the development and the agricultural lands. The township board may determine that trespass problems are not likely, and, in that case, the board may determine that the fence is not required. The fence is intended to limit trespass onto the agricultural lands. If, at a later date, the township board determines that trespass is a problem, the township board, after holding a public hearing on the issue, may then require the owner or owners of the property adjacent to the agricultural land to install a fence.

(1) **Suggested minimum fencing specifications.**

    (a) Mesh. Number11 gauge woven wire farm fence shall be 46.5 inches in height with 6.5-inch square mesh pattern (uniformly spaced).

    (b) Line Posts. Wood line posts shall be 4.5 inches minimum in diameter and 7 feet in length, spaced not more than 16.5 feet (center to center) and set 2.5 feet into the ground. All posts shall be Wolmanized or treated in an equivalent manner. Wood shall be cedar, oak, or an approved equal.

    (c) Corner, End, Gate, and Intermediate Braces Posts. These shall be 8 feet minimum in length and 8 inches minimum in diameter, set 3.5 feet into the ground, spaced 10 feet from adjacent line posts, and located as shown on plans. Intermediate braced posts shall be located a maximum of 660 feet apart on straight runs. Corner post shall be located at all changes in direction.

(2) **Fencing required by this section shall be built as approved by the township board.**

## Section 7.09    Clear Vision Area (NEW SECTION)

Fences, walls, structures, signs, trees, shrubs, and other plantings located in the clear vision triangle area described below shall not be permitted to obstruct cross visibility between a height of 30 inches and eight feet above the road level.

**(A) Clear Vision Triangle Area.** The clear vision triangle area is described as follows (see *Figure 7-1*):

(1) **Road Intersection.** The area formed at the corner intersection of two road right-of-way lines, the two sides of the triangular area being 25 feet in length measured along the abutting right-of-way lines, and the third side being a line connecting these two sides.

(2) **Driveway Intersection:** The area formed at the corner intersection of a right-of-way and a driveway, the two sides of the triangular area being 10 feet in length measured along the right-of-way line and edge of the driveway, and the third side being a line connecting these two sides.

**Figure 7-1: Clear Vision Triangle Area**





**(B)** **Trees.** Trees may be permitted in the clear vision triangle area provided that limbs and foliage are trimmed so that they are not fewer than eight feet above the road level.

**(C)** **Shrubs.** Shrubs may be permitted in the clear vision triangle area provided that they are trimmed so that they are not more than 30 inches above the road level.

**(D)** **Landscaping.** All landscaping, except turf grass or ground cover, shall not be located closer than three feet from the edge of any driveway or road within a clear vision triangle area.

**(E)** **Right-of-Way Line.** Where there is a difference between the existing road right-of-way line and the proposed road right-of-way line, the clear vision triangle shall be measured from the proposed road right-of-way line.

## Section 7.10  Accessory Buildings and Structures (currently Section 6.2.2(2)(a))

A land use permit must be issued prior to the erection of an accessory building or structure. Applications for accessory buildings and structures shall be administered and reviewed as part of the original or proposed revised plot plan or site plan, depending upon the nature of the principal use of the lot. Accessory uses, buildings, and structures shall be subject to the following regulations except as otherwise permitted in this ordinance.

**(A)** **Attached Accessory Buildings and Structures.** An attached accessory building or structure, including carports that are attached to the principal building, shall comply in all respects with the requirements of this ordinance applicable to the principal building. Unless an accessory building is attached directly to the principal building or connected to it via habitable floor area or shared wall construction, the accessory building shall be classified as a detached structure.

**(B)** **Detached Accessory Buildings.** Detached accessory buildings shall comply with the following requirements:

(1) **Located on Same Lot As Principal Building.** A detached accessory building shall be located on the same lot as the principal or main building except for agricultural buildings located on a farm. In a case where an owner owns a shoreline lot and an upland lot across the road, the detached accessory building shall be located on the same lot as the principal building.

(2) **Separation Distance of Detached Accessory Buildings.** An accessory building, unless attached and made structurally a part of the principal building, shall not be closer than 10 feet to the principal building or any other building on the lot.

(3) **Placement.** Except as provided elsewhere in this ordinance, detached accessory buildings are subject to all yard setback requirements of the district in which they are located.

(4) **Height.** Accessory buildings shall be subject to the height standards of the underlying zoning district. With the exception of agricultural buildings located on a farm, accessory buildings shall not be greater than two stories, and the second story shall be unfinished and used for storage only.

**(C)** **Not Permitted Prior to a Principal Structure.** Accessory buildings shall not be erected on a lot or parcel in any district prior to the establishment of a principal structure except for agricultural buildings on a farm.

**(D)** **Used by Site Occupant.** Accessory buildings and accessory portions of the principal building shall be used solely for the use of the occupant of the principal building to which it is accessory.

**(E)** **Number of Buildings and Lot Coverage.** This section shall not limit the number of accessory buildings that a property owner may construct, retain, or maintain provided that the overall lot coverage limitation is met.

# Section 7.11    Fences and Walls, Including Retaining Walls (currently Sec. 7.13)

**(A)** **Intent.** The intent of this section is to regulate the location, placement, and height of fences and walls to protect views, provide adequate emergency access, and ensure safe sight lines at intersections.

**(B)** **Excluded Fences.** The following fences shall not be regulated by this section:

    **(1)** **Agricultural Fences.** Agricultural fences that are used for general farming and horticultural uses, field crops, and fruit farming.

    **(2)** **Temporary Fences.** Temporary fences such as snow fences placed during the winter to control drifting snow or safety fences during construction.

    **(3)** **Low Fences.** A fence no greater than 18 inches in height and four inches in width.

**(C)** **Agricultural Fences for Small Animals and Livestock.** Agricultural fences that are used for the raising and keeping of small animals and livestock must comply with the fence standards of this section.

**(D)** **Construction.** Fences and walls shall be designed so as not to impede the natural or established water drainage along lot lines.

**(E)** **Front Yard and Waterfront Location.** Unless otherwise provided in this ordinance, no fence shall be constructed between the main building and any road or between the main building and the waterfront unless that fence is four feet in height or less measured from final grade below the fence, is at least 50% open when viewed from the perpendicular, and is no wider than two feet at any point. If located within a front yard setback or waterfront setback, the fence shall be decorative in nature (e.g., wrought iron, picket, and split rail). Decorative fencing does not include chain link fencing. This sub-section shall not apply to seawalls, which are regulated under *Section 3.13(E)(12)*, or retaining walls, which are regulated under *Section 7.11(M)*.

**(F)** **Maximum Height.** No fence or wall shall exceed four feet in height unless explicitly permitted elsewhere in this ordinance.

**(G)** **Clear Vision Triangle Area.** No fence or wall shall be erected, established, or maintained within the clear vision triangle area of any lot except in compliance with *Section 7.09*.

**(H)** **Obstructions.** No fence or wall shall obstruct access by emergency personnel. A gate at least three feet in width shall be provided for access by emergency personnel to all parts of the property and, as such, shall not be considered an obstruction.

**(I)** **Required Setbacks.**

    **(1)** **Shoreline.** No fence or wall shall be constructed closer to the shoreline of Grand Traverse Bay than the flood elevation line unless a seawall is approved under *Section 3.13(E)(12).*

    **(2)** **Road Right-of-Way Prohibited.** No fence or wall shall be placed within a road right-of-way.

    **(3)** **Road, Street, or Alley.** No fence or wall shall be placed closer than 20 feet from the driving lane of a road, street, or alley.

(4) **Adjacent Property.** No fence or wall shall be placed closer than three feet to an adjacent property line without both owners providing approval in writing to the zoning administrator. Such approval shall include a statement that the fence shall be maintained in good condition and such maintenance shall be the responsibility of the owner of the property upon which the fence is constructed. The approval between the owners shall be in the form of a recordable agreement, which shall be recorded with the Grand Traverse County Register of Deeds after approval by the zoning administrator. A copy of the recorded agreement shall be submitted to the township prior to the issuance of the fence permit.

**(J)** **Maintenance.** Walls and fences shall be maintained in good condition by the owner and shall not constitute an unreasonable hazard. Rotten, crumbled, or broken compounds shall be replaced, repaired, or removed.

**(K)** **Orientation of Finished Side.** Where a fence or wall has a single finished or decorative side, it shall be oriented to face outward toward adjacent parcels or road rights-of-way (i.e., away from the interior of the lot to which the fence or wall is associated).

**(L)** **Prohibited Materials.** All fences or walls erected shall be of a decorative nature or chain linked unless otherwise prohibited. Barbed wire, spikes, nails, or any other sharp instrument of any kind are prohibited on top of or on the sides of any fence. Barbed wire may be placed on top of fences enclosing public utility buildings or equipment.

**(M)** **Retaining Walls.** The zoning administrator may issue a land use permit for a retaining wall that meets all of the wall requirements of this section as well as the following:

(1) If a retaining wall or any part thereof must be taller than four feet above grade, the retaining wall must be terraced back equal to the height of the wall section. The depth of each terraced section shall be no less than the height of the adjacent retaining wall (see *Figure 7-2*).

(2) If any portion of the retaining wall exceeds four feet in height, the plans must be designed and sealed by a licensed engineer.

**Figure 7-2. Retaining Wall Terracing**



## Section 7.12    Swimming Pools (<mark>NEW SECTION</mark>)

All private swimming pools erected in the township shall comply with the following provisions:

**(A)** **Permit Required.** A land use permit shall be obtained for alteration, erection, and construction of permanent above and below ground swimming pools and for portable pools with a diameter

exceeding 12 feet or an area exceeding 100 square feet. The application for such permit shall include the name of the owner, the manner of supervision of the pool, and a site plan showing the dimensions and location of the pool and nearby buildings, fences, gates, septic tanks, tile fields, public utilities, and easements. The application for such permit for a below-ground pool shall be accompanied by plans and specifications to scale of the pool walls, slope, bottom, walkway, diving boards, type, and rating of auxiliary equipment, piping, and valve layout. Any other information affecting construction and safety features deemed necessary by the township or the county construction code division or health department shall also be submitted.

**(B)** **Easements and Rights-of-Way.** No portion of the swimming pool or associated structures shall encroach upon any easement or right-of-way that has been granted for public utility use.

**(C)** **Minimum Pool Setbacks.** Pool setbacks, including fencing, shall comply with required setbacks specified by the applicable zoning district.

**(D)** **Required Barrier.** For the protection of the general public, all swimming pools shall be completely enclosed by a fence or wall of comparable safety not fewer than four feet or more than six feet in height set at a distance of not fewer than four feet from the outside perimeter of the pool wall. Fencing shall not be required in the following two circumstances:

    (1)   Where a building of four feet or more in height is part of the enclosure; or

    (2)   Where a swimming pool is above grade and has exterior side walls with a smooth surface not less than four feet in height and all means of access are secured or locked to prevent unauthorized use.

All openings in an enclosing fence or building shall be equipped with a tamper-proof lock when the pool is not in use. If the entire premises upon which a swimming pool is located are enclosed by fence or wall, the zoning administrator, after inspection and approval, may determine that a fence is not required.

**(E)** **Code Compliance.** Notwithstanding the requirements of this section, all private swimming pools shall comply with all applicable federal, state, county, and local codes and ordinances. Where the requirements of this ordinance exceed the requirements of any other code or ordinance, the requirements of this ordinance shall prevail.

# Article 8    Environmental Performance Standards

## Section 8.01    Wetland Restrictions (currently part of Section 6.9.3.7)

There shall be no development or modification of any kind within a wetland area without the Michigan Department of Environmental Quality (MDEQ) first issuing a wetlands permit and/or an earth change and stormwater permit issued by Peninsula Township. Any such approved development shall be subject to the following:

**(A)** **Minimum Setback.** A setback of 25 feet shall be maintained between any structure or impervious surface (including but not limited to parking lot, driveway, paths, etc.) and a wetland.

**(B)** **Development within a Wetland or Wetland Setback.** Except as specified in *Section 8.01(C)*, there shall be no development or modification of any kind within a wetland or wetland setback. Wetlands may be used for density calculations and incorporated in stormwater management plans.

**(C)** **Boardwalks.** Boardwalks three feet or fewer in width shall be permitted following issuance of a land use permit and subject to MDEQ approval upon finding there will be no adverse impact on ground or surface waters of the wetland. The zoning administrator or planning commission, as applicable, may require the applicant to obtain a formal determination of the wetland boundary by the MDEQ.

**(D)** **Wetland Identification.** In the event of reasonable doubt as to the presence of a wetland, the zoning administrator may require the applicant to submit detailed engineering studies prepared by a State of Michigan-certified wetland delineator showing the existence, extent, and location of wetland areas. The zoning administrator shall use this information in making a final determination of the presence of a wetland.

**(E)** **Compliance with P.A. 451 of 1994 As Amended.** Compliance with Part 303, Wetland Protection, of the Natural Resources and Environmental Protection Act, P.A. 451 of 1994 as amended is required.

## Section 8.02    Floodplain Controls and Restrictions (currently Section 7.4.7 and part of Section 6.9.3.7)

**(A)** **Intent and Purposes.** The purpose of these regulations is to protect those areas of the township that are subject to predictable flooding in the floodplain of the Great Lakes. All land included in the floodplain shall be subject to the requirements and prohibitions specified herein in addition to the normal zoning district requirements in which the land is located.

**(B)** **Applicability and Land Use Review.** Notwithstanding anything to the contrary in this ordinance, any request to fill in a floodplain must be evaluated together with a permitted use set forth in *Section 8.02(D).* A request to fill in the floodplain or a portion thereof will not be considered alone and is not permitted.

**(C)** **Floodplain Area Identification.** Floodplain areas are those established by current FEMA flood insurance rate maps (FIRM), the most recent and adopted version effective August 28, 2018. Base flood elevations (BFE) are shown on the FIRM and are described in the associated flood insurance study (FIS).

**(D)** **Permitted Uses.** Permitted uses in the floodplain include the following:

(1)    Gardens, preserves, and low intensity use areas in parks.

(2)    Boardwalks and paths no wider than three feet.

(3)    Yard and setback areas or other open space portions required for any zoning district.

(4)    Access drives for utility uses, when designed so as not to increase the possibility of flood or to be otherwise detrimental to the public health, safety, and welfare.

(E)    **Restricted Uses and Structures.** Any structure where human habitation is contemplated, either as a place of residence, place of work, or place of public gathering, shall be prohibited when the lowest habitable floor level is below the BFE. Per ordinance #53, the Grand Traverse County Construction Code Department is designated as the enforcing agency to discharge the responsibility of Grand Traverse County under Act 230 of the Public Acts of 1972 as amended, State of Michigan.

(F)    **Required Conditions for Permitted Uses.** To the extent that a request to fill in the floodplain on a parcel or a portion of a parcel along with the permitted use has been granted, such granting of the request is subject to the following conditions:

(1)    Any work, construction, or filling in the flood plain shall conform to requirement of *Section 8.02* of this Article, and permits for such work, construction, or filling in the flood plain shall not be issued unless they receive review and approval by the applicable local, state and federal regulatory agencies.

(2)    Any work, construction, or filling in the floodplain shall be so fixed to the site as to withstand the force of the expected velocity of floodwater. The zoning administrator may require professional engineering or other professional review of construction.

(3)    The zoning administrator may request additional information prepared by a registered professional engineer, licensed surveyor, or other relevant professional. Information may include topographic information, studies to determine the effects of flooding or flow of water, determination that the use will not adversely affect floodplain capacity, and assurance that the use will not generate stormwater, sedimentation, or other water quality concerns.

(4)    All of the conditions set forth herein must be fully satisfied before the applicant may proceed with the work, construction, or filling in the floodplain or a portion thereof.

(5)    Compliance with Part 31, Water Resources Protection, of the Natural Resources and Environmental Protection Act, P.A. 451 of 1994 as amended.

(G)    **Vegetated Buffer Protection.** Pursuant to *Section 3.13*, all shoreline properties including floodplain areas shall have a vegetated strip inland of the beach area to filter nutrients and stormwater and give protection from lake waves.

## Section 8.03    Mining or Removal of Topsoil, Sand, Gravel, and Minerals (currently Section 7.2.3)

(A)    No topsoil shall be removed for purposes of resale nor shall any open pit mining for the purposes of extracting sand, gravel, or minerals be permitted unless conducted in the A-1 zone and at least 200 feet from any public highway and at least 50 feet of any side or rear lot lines of any lot adjoining land zoned for residential uses.

(B)    All mines shall have a site rehabilitation plan approved by the township. The rehabilitation plan shall include a plan for planting trees in a manner that will create a woodland over the long term, which will assist in slope stabilization.

**(C)** The township board may establish routes for truck movement in and out of the mine in order to minimize the wear on public roads, to minimize traffic hazards, and to prevent encroachment of traffic, or the by-products of traffic (such as dust and noise), upon adjacent properties.

**(D)** All permitted mines shall be maintained in a neat, orderly condition so as to prevent injury to any single property or individual or to the community in general. When an open pit mine or gravel pit has ceased to be worked regularly, any "attractive nuisance" features such as steep banks or deep holes that could be a hazard to the safety of children shall be promptly rough graded so as to remove such hazard or hazards. All areas within any mine shall be rehabilitated progressively as they are worked out or abandoned so that they shall be in a condition of being entirely lacking in hazards, inconspicuous, and blended with the general surrounding ground form. When an open pit mine or gravel pit has ceased to be worked regularly for a period of three years, it shall be rough graded in such a manner as to restore the land to contours harmonious with those of the surrounding terrain, protected from erosion, and vegetative cover established.

## Section 8.04  Soil Erosion and Sedimentation Control and Protection of Steep Slopes (currently Section 6.9.3.9)

When a land use permit is required by this ordinance, the applicant for such permit shall demonstrate compliance with the Grand Traverse County Soil Erosion and Sedimentation Control Ordinance before such land use permit is issued. Additionally, when a permit is not required in accordance with the provisions of the Grand Traverse County Soil Erosion and Sedimentation Control Ordinance, but when any earth-disturbing activity related to a land use permit involves change in the natural cover or topography on a site with more than nine percent slope, a plan for soil erosion and sedimentation control shall be provided to the zoning administrator. Such a plan shall demonstrate proposed measures to be taken and maintained to minimize soil erosion and sedimentation. Specifically, these measures include:

**(A) Natural Landforms.** The general site topography and any natural landforms unique to the property shall be maintained and made part of the development to preserve the natural character. Proper grading and elevation relationships to adjacent properties shall be maintained. All necessary grading shall complement natural landforms.

**(B) Cut and Fill Slopes.** Cut and fill slopes shall be minimized. Unstable slopes or slopes subject to erosion shall be protected. Slopes shall be re-vegetated using low-maintenance techniques with perennial grasses, herbaceous plants, and native trees and shrubs.

**(C) Steep Slopes.** Grading or removal of vegetative cover shall not be permitted on land with existing steep slopes of 20% grade or greater. Such areas shall be included as open space and not be part of a building site. When existing slopes are more than nine percent, but less than 20%, the following requirements shall be met:

   **(1)** Prior to clearing a parcel, a tree survey that identifies the number of species of all trees six inches or greater in diameter at breast height, four and a half feet, within the affected area shall be professionally prepared.

   **(2)** If there are existing trees, then there shall be a sufficient number of mature trees left in place around structures, or trees which have been removed shall be reestablished at a rate of two canopy trees for every one tree removed, six inches or greater in diameter at breast height, four and a half feet. New trees shall be at least two and a half inches in diameter at installation measured at four and a half feet.

   **(3)** The height of structures shall be lower than the surrounding trees left in place or existing.

   **(4)** Trees shall be preserved within building sites so that views have an appearance of being unbroken from Grand Traverse Bay and roads. This is not intended to prevent the selective trimming for views and removal of diseased or unhealthy trees. Clearcutting of an entire site is prohibited.

(D) **Clustering Development to Maintain Significant Slopes and Ridgelines.** The most significant slopes and ridgelines shall be maintained in their natural state by clustering development when possible.

(E) **Phasing.** Large parcels that will be developed in phases shall be graded in workable units following a scheduled timeline so that construction does not result in large areas left bare and exposed to seasonal runoff.

(F) **Minor Activities.** Minor activities, such as normal gardening activities in compliance with this ordinance, do not require a soil erosion and sedimentation control permit.

(G) **Retaining Walls. See _Section 7.11_.**

(H) **Township Engineer Review.** The zoning administrator may request that the township engineer review plans to minimize soil erosion and sedimentation when deemed necessary. Associated costs shall be charged to the applicant.

## Section 8.05    Stormwater Management (currently Section 7.2.5)

(A) **Intent and General Applicability.** The purpose of this section is to provide adequate measures for the retention, detention, and distribution of stormwater in a manner that minimizes the possibility of adverse impacts on both water quantity and water quality during and after development. When any human makes earth changes in the natural cover or topography of land, including cut and fill activities that may affect stormwater runoff, the owner shall apply for a stormwater permit from the zoning administrator prior to receiving a land use permit. The above-earth change does not include the practice of plowing and tilling soil for the purpose of crop production on an active farm.

(B) **Commercial and Development Parcels, Roads, and Other Non-Residential Use Stormwater Review.** A stormwater review and permit from the zoning administrator and the township engineer is required in any of the following circumstances for non-residential parcels:

(1) If one or more acres of land are disturbed;

(2) Within 500 feet of the ordinary high water mark (OHWM);

(3) Whenever the impervious surface coverage of any structure is more than 3,500 square feet;

(4) For any of the following type of developments: commercial use, mobile home park, multiple family dwelling, PUD, site condominium or condominium, or platted subdivision;

(5) For a new or extended private road; or

(6) For any other circumstances the zoning administrator deems necessary.

(C) **Residential Structures and Parcels Subject to Stormwater Review.**

(1) **Minor Stormwater Review.** The zoning administrator shall review and approve the stormwater management plan prior to the issuance of a land use permit. Any parcel or structure that in the opinion of the zoning administrator requires review by the township engineer based on complexity of the disturbance of natural features or site development shall become a major stormwater review. Residential structures or parcels subject to minor stormwater review shall include the following situations:

(a) The impervious surface coverage (structures and in-ground surfaces) is fewer than 3,500 square feet;

**(b)** Less than one acre of ground will be disturbed; or

**(c)** All parcels within 500 feet of the OHWM.

**(2)** **Major Stormwater Review.** The township engineer shall review and approve the stormwater management plan prior to the issuance of any land use permit. The cost of this review and inspections shall be paid by the applicant. Residential structures or parcels subject to major stormwater review shall include the following situations (regardless of proximity to the OHWM):

**(a)** The impervious surface coverage (structures and in-ground surfaces) is 3,500 or more square feet;

**(b)** One acre or more of ground will be disturbed; or

**(c)** Any parcel or structure that the zoning administrator determines requires a major stormwater review.

**(D)** **Design Standards for Permits Required for** *Section 8.05(B)* **or** *Section 8.05(C)(1)***.**

(1) The application shall include a plan detaining any stormwater runoff onto adjacent properties including roads and other rights-of-way pursuant to the Peninsula Township Stormwater Control Ordinance (Ordinance #33 as amended). Such detention shall follow accepted stormwater detention practices and the maximum amount of stormwater runoff allowed shall not exceed that which existed prior to the development or improvement of the property.

(2) The stormwater management system shall include one or more of the best management practices (BMPs) published by the Michigan Department of Environmental Quality or any other BMP accepted by the approving authority such as underground infiltration trenches, rain gardens, and rain barrels or other low impact design (LID) features. LID stormwater management is a set of small-scale practices that mimic and work with nature to reduce runoff and pollutants and provide open space. By incorporating LID practices, the amount of site development area necessary to be dedicated to a traditional stormwater basin can often be decreased. Required landscaping areas may also function as bio-swales or retention basins. A vegetated yard area may be used when, in the opinion of the approving authority, the slope and underlying soil conditions will allow for rapid infiltration. The use of LID techniques are especially important in areas adjacent to environmentally sensitive areas.

(3) The stormwater management system shall be installed in accordance with the approved design.

(4) Stormwater management measures must also be in place to minimize the possibility of adverse impact on water quality or quantity or neighboring properties during construction.

**(E)** **Maintenance.** All stormwater management systems shall be properly maintained so as to comply with the requirements of this section. Each application for major stormwater review shall include a maintenance agreement to be reviewed and approved by the approving authority.

**(F)** **Recording of the Stormwater Management System and Any Maintenance Agreement.** The stormwater management system and any maintenance agreement shall be recorded with the Grand Traverse County Register of Deeds prior to issuance of the land use permit.

**Article 8:** Environmental Performance Standards

## Section 8.06    Removal of Fruit-Producing Trees, Vines, or Shrubs from Properties Being Developed (currently Section 7.8 and part of Section 6.9.3.8)

The owner of properties being developed for planned unit developments, mobile home parks, site condominiums, subdivisions, or other housing developments shall remove and destroy all existing fruit-producing trees, vines, or shrubs from the subject properties. The removal of all such plants shall occur prior to project approval and commencement of construction unless it can be clearly demonstrated that the plants will remain in production and be maintained and treated on a regular basis by a pesticide applicator licensed by the Michigan Department of Agriculture.

## Section 8.07    Exterior Lighting (currently Section 7.14)

**(A)  Intent.** The Peninsula Township Board of Trustees finds that this section of the ordinance complies with the Peninsula Township Master Plan and that the dark night sky is considered a valuable natural and aesthetic resource that should be protected. The dark night sky contributes significantly to our quality of life by contributing to the public peace and to the health, safety, and welfare of the residents of and visitors to Peninsula Township. The essential public purposes that warrant township regulation of the use of outdoor light fixtures include but are not necessarily limited to:

(1)  The safety of individuals using outdoor areas for legitimate and necessary purposes after dark;

(2)  Minimization of light pollution, which has a detrimental effect on the environment, astronomical research, amateur astronomy, and general enjoyment of the night sky;

(3)  Elimination of unnecessary or unwanted illumination of adjacent and distant properties;

(4)  Conservation of electrical energy-generating resources; and

(5)  Protection of vehicular and pedestrian traffic from dangerous glare.

**(B)  Applicability.**

(1)  All new outdoor light fixtures, bulbs, and specified lighting practices shall conform to this section.

(2)  Outdoor lighting fixtures existing as of the effective date of this amendment may continue to be used except as otherwise provided.

(3)  Voluntary compliance with the intent of this section for exempt uses or structures and existing outdoor fixtures is encouraged.

**(C)  Lighting-Related Definitions.**

(1)  **Automatic Timing Device.** A device that automatically turns outdoor light fixtures or circuits on and off.

(2)  **Floodlight**. A very strong artificial light so directed or diffused as to give a comparatively uniform illumination over a rather large area and often used to light up the outside of buildings.

(3)  **Full Shielding.** A technique or method of construction that causes light emitted from an outdoor light fixture or any bright reflecting section to be such that the light source and any bright reflecting surface is not visible above the shield horizontal plane or beyond the boundaries of the property.

(4) **Glare.** Intense blinding light emanating directly from a lamp, reflector, or lens including bright reflective sections.

(5) **Light Pollution.** Artificial light that causes a detrimental effect on the environment, astronomical observation, or enjoyment of the naturally illuminated night sky or causes undesirable glare or unnecessary or unwanted illumination of adjacent or even distant properties.

(6) **Light Source.** The bulb or other element in an outdoor light fixture that emits light.

(7) **Motion Detector.** A device triggered by motion and used to energize light sources.

(8) **Outdoor Light Fixture.** An illuminating device that is permanently installed outdoors, including but not limited to devices used to illuminate signs.

(9) **Shield.** In general, a permanently installed opaque shade, cowl, hood, baffle, or other construction that limits, restricts, or directs light, or the visibility of a light source, to meet the standards of this section.

(10) **Security Lighting.** Such outdoor light fixtures or practices intended to discourage intrusion on the premises by unwanted persons.

(11) **Vehicle Use Area.** A paved or unpaved driveway, maneuvering, loading, and delivery area, solid waste collection, temporary storage area, or outdoor processing area.

(12) **Yard Lighting.** Such outdoor light fixtures or practices intended for the convenience, enjoyment, and safety of a property owner.

**(D) Exterior Lighting Standards.**

(1) **New Light Fixtures.** All new outdoor light fixtures shall meet the following requirements:

**(a)** All new outdoor light fixtures shall have full shielding unless otherwise permitted. Full cut-off fixtures shall be used to prevent light from projecting above a 90-degree horizontal plane. Additionally, the light trespass from a property shall not exceed 0.5 foot candles at the property line, measured five feet from the ground (see *Figure 8-1*, below);

### Figure 8-1. Light Fixture Shielding and Light Trespass



**(b)** Driveway post lights shall have translucent lenses or covers to protect vehicular and pedestrian traffic from glare; and

**(c)** Light fixtures shall be controlled with manual switches, motion detection devices, or other automatic timing devices.

(2) **Building Facades.** Building facades may be lit but only in a downward direction and fully shielded.

(3) **Security Lighting**. Security lighting may be approved as part of a site plan, and, if approved, shall be fully shielded.

(4) **Prohibited Lighting Types and/or Practices.**

**(a)** Searchlights, lasers, or other high-intensity lights designed or used primarily to light the sky for advertising or entertainment purposes;

**(b)** Broad-spectrum lighting such as quartz, metal halide, and mercury vapor lighting because of the diffusive and reflective characteristics of such light; and

**(c)** Foliage/tree "up lighting."

(5) **Illuminated Signs.** Illuminated signs shall comply with *Section 10.10*.

(6) **Parking Lots.**

**(a)** Parking lots shall be illuminated no earlier than one hour before regular hours of operation and no more than one hour after regular hours of operation except by special permission granted as a condition of site plan approval.

**(b)** Pole height shall not exceed 15 feet except a pole height of up to 25 feet may be allowed for loading areas where necessary for agricultural purposes.

**(c)** A greater number of low-mounted lights are favored over elevated lights.

**(E)** **Exemptions.** The following uses and activities shall be exempt from the exterior lighting regulations:

(1) Emergency equipment while in use.

(2) Holiday decorations, provided that decorative exterior lighting shall not be active for more than 90 days in a calendar year and shall not include searchlights, stroboscopic lights, or other lights that would cause a nuisance.

(3) All outdoor light fixtures producing light directly from solar or the combustion of fossil fuels such as kerosene lanterns or gas lamps provided the intensity of light does not create glare or distractions that pose a potential danger to vehicular or pedestrian traffic or unnecessary and unwanted glare in the night sky.

(4) Lighting fixtures to illuminate the American flag may have light shining vertically, provided the light source is shielded and the light is focused on the flag in accordance with the United States Flag Code.

**(F)** **Relief from Exterior Lighting Regulations.** Applications for relief from the regulations of this section may be made to the Peninsula Township Zoning Board of Appeals pursuant to *Section 13.06* provisions and standards for variances. Any ruling granting relief shall contain all conditions upon which said permit has been granted, including but not limited to the effective dates, times, locations, and specifications of the lighting fixtures and plans permitted.

## Section 8.08    Screening and Landscaping

(A) **Landscaping Design Standards (NEW SECTION, which will include standards from Section 6.6.3(3), and Section 7.6.4(3)).** The following landscaping design requirements apply to all uses in the C-1, commercial zoning, district and all uses with a parking lot containing 2,700 square feet or more of parking area, including access drives:

   (1) **Frontage Landscaping (Section 6.6.3(3) and parts of 7.6.4(3)).** The front yard area adjacent to the right-of-way shall be planted and maintained in accordance with the following:

      (a) Trees **(Section 7.6.4(3)(b)(2)).** One deciduous, evergreen, or ornamental tree shall be planted adjacent to the public right-of-way for each 35 linear feet of frontage.

      (b) Screening with Shrubs **(Section 7.6.4(3)(b)(3)).** Where non-living materials are used for right-of-way screening (i.e., fences or walls), at least one shrub or vine shall be planted on the right-of-way side for each 10 linear feet of screen.

      (c) Minimum Width **(Section 7.6.4(3)(b)(1)).** Any required frontage planting strip shall be a minimum of 10 feet in width.

      (d) Right-of-Way Landscaping Prohibited. Trees and shrubs required for frontage landscaping shall not be planted in a road right-of-way.

      (e) Exemptions. The township board may modify or waive the frontage landscaping requirements where the site is a farm with an orchard or vineyard in the front yard or where frontage landscaping would block a scenic view area as shown on the scenic view map adopted or subsequently amended as part of the Peninsula Township Master Plan.

   (2) **Parking Lot Landscaping (Section 7.6.4(3)(a), (b)(1), and (b)(4)).** All parking areas containing 2,700 square feet or more of parking area, including access drives, shall be effectively landscaped with planting strips on the interior and perimeter on all sides adjacent or visible from surrounding properties or an abutting public street as follows:

      (a) Perimeter Landscaping **(Section 7.6.4(3)(b)(1)).** Any required perimeter planting strip shall be a minimum of 10 feet in width. Any perimeter adjacent or visible from surrounding properties or an abutting public right-of-way shall contain one tree per 35 linear feet of perimeter. Each tree may be substituted with five shrubs.

      (b) Interior Landscaping **(Section 7.6.4(3)(b)(4)).** Parking lots with more than two parking aisles shall require landscaped areas of at least 10 square feet of interior landscaping for each parking space. Where interior location is not feasible, the township board may allow interior landscaping to be located within a 10-foot perimeter of the paved surface. Landscaped areas shall be a minimum of 160 square feet with a minimum dimension of eight feet. Interior landscape areas shall be designed so as to create minimum interference with snow removal. One deciduous tree shall be planted for each 160 square feet of interior landscape area, and each interior landscape area shall contain at least one deciduous tree.

   (3) **Greenbelt Buffer.** Where a greenbelt is required in this ordinance, the greenbelt shall consist of a staggered double row of eight-foot-high evergreen trees spaced not more than 15 feet apart.

   (4) **General Landscaping Design (currently Section 7.6.4(3)(a)).** At least 80% of the landscaping areas required in *Section 8.08(A)(1)* through *Section 8.08(A)(3)* above shall consist of some combination of planted trees, shrubs, vines, ground cover, flowers, or lawns. Up to 20% of the total of any landscaped area may be rock or mulch groundcover.

(5) **Mechanical and Utility Equipment Screening.** All mechanical equipment, utility meters, storage tanks, air conditioning equipment, transformers, or similar equipment, including roof-mounted equipment but excluding solar panels, shall be enclosed or screened from view from all lot lines and the right-of-way line. They shall be an integral part of the architectural or landscape design of the building and site.

(6) **Garbage, Refuse, and Recycling Collection Areas.** All garbage, refuse, and recycling collection areas (i.e., dumpsters) shall meet the following requirements:

   **(a)** Location. Waste receptacles (i.e., dumpsters) shall not be located in setback areas. Dumpsters shall not encroach into a parking or circulation area and shall be clearly accessible to servicing vehicles.

   **(b)** Screening. An enclosure of sufficient height to completely screen the dumpster is required on three sides of the waste receptacle with a gate on the fourth side. The height of the enclosure shall be not less than six feet or at least one foot above the height of the dumpster, whichever is greater. Enclosures shall meet the following standards:

   **(i)** The enclosure shall be constructed of pressure treated or Wolmanized wood. The township board may require that the enclosure be constructed of brick or decorative concrete material that matches or complements the principal building or structure.

   **(ii)** Enclosure gates shall be constructed of steel-reinforced wood.

   **(iii)** Enclosures shall be set back a minimum of 20 feet from any residential district.

   **(c)** Bollards and Similar Protective Devices. If bollards (concrete-filled posts) or similar protective devices are required by the township board to protect a dumpster enclosure, the bollards or similar protective devices shall be installed at the opening to prevent damage to the screening wall or fence.

   **(d)** Maintenance. All dumpsters shall have a lid that shall remain closed. The dumpster shall be regularly emptied and shall be maintained in accordance with all township ordinances.

**(B)** **Standards for Plant Materials (part of Section 7.6.4(3)(b)(5))**

(1) **Lawn Areas.** Lawn areas shall be planted in species of grass normally grown as permanent lawns in northwest Michigan unless other native grasses and plantings are deemed acceptable by the township. Grass may be sodded or seeded and mulched except that solid sod shall be used in swales or other areas subject to erosion unless a different method of erosion control is permitted by the township. Sod or seed shall be clean and free of weeds, noxious pests, and disease.

(2) **Recommended Species of Trees and Shrubs (Section 7.6.4(3)(b)(5)).** The selected combination of plant material shall be a combination of living deciduous and evergreen trees, shrubs, and vines hardy to the northwest Michigan region. The township may adopt a list of required or recommended species. The following are the required minimum sizes of plant materials:

| Plant Type | Minimum Size |
|------------|--------------|
| Evergreen Trees | 8 feet minimum height |
| Deciduous Trees | 3-inch minimum d.b.h.* |
| Ornamental Trees | 2-inch minimum d.b.h.* |
| Deciduous Shrubs | 3 feet minimum height |
| Evergreen Shrubs | 30 inches minimum height |

| Spreading Shrubs | 18 inches minimum height |
|---|---|
| *d.b.h. = Diameter at Breast Height (i.e., diameter of the tree at 4.5 feet above grade) | |

(3) **Prohibited Species.** The township may prohibit certain species that are invasive or otherwise undesirable.

(4) **Minimum Requirements for Plant Material.**

    **(a)** All plant material shall conform to the description consistent with generally accepted and published nursery and landscape standards. Plant materials shall be typical of their species or variety, have normal habitat of growth, and be well branched and densely foliated when in leaf.

    **(b)** Plant materials shall be chosen according to soil, climatic conditions, and environmental factors for the proposed development, the location of the installation, and its desired function.

    **(c)** Artificial plant material is prohibited.

**(C) Landscape Installation and Maintenance (parts of Section 7.6.4(3))**

    (1) **Installation.**

        **(a) Installation Period (Section 7.6.4(3)(e)).** All required landscaping improvements are to be completed prior to the final inspection by the zoning administrator. In the event of unusual delays or adverse weather conditions that make it impossible to plant, the zoning administrator may grant a single extension of the time limit for a further period of not more than six months and the owner shall post a performance guarantee in accordance with the provisions set forth in *Section 13.09*.

        **(b) Installation Method.** All landscaping shall be installed in a manner consistent with generally accepted and published nursery and landscape standards.

    (2) **Maintenance (Section 7.6.4(3)(c)).** It shall be the owner's responsibility to see that the landscaping is regularly maintained in a neat, clean, orderly, and healthful condition. This includes, among other things, proper pruning, mowing of lawns, controlling or removing weeds, replenishing mulch, removing litter, replacing diseased, dead, or damaged plants when necessary, and regularly watering all plants. All diseased, dead, or damaged plants shall be replaced immediately unless the season is not appropriate for planting, in which case such plant material shall be replaced at the beginning of the next planting season.

**(D) Modifications (Section 7.6.4(3)(b)(6)).** In consideration of the overall design and impact of the landscape plan, the application of the above standards may be adjusted by the township board, in part or in whole, to allow credit for healthy plant material to be retained on or adjacent to the site if such an adjustment is consistent with the intent of this ordinance.

# Article 9    Parking, Loading, Access Management, and Private Roads

## Section 9.01    General Off-Street Parking and Loading Regulations (currently Section 6.10, Section 7.6.1, and Section 7.6.2)

**(A)** **General Requirements.** There shall be provided in all districts, at the time of erection or enlargement of any main building or structure or change in land use, automobile off-street parking space with adequate access to all spaces. The proper number of parking spaces for any given use as specified in this section are based upon considerations of the maximum number of motor vehicles that can be expected on the premises at the same time during an average day.

  **(1)** **Location of Residential Off-Street Parking.** Parking spaces for residential uses may be within any yard area but shall not be permitted within a minimum front yard setback unless otherwise provided in this ordinance. Required residential off-street parking spaces shall consist of parking strip, parking bay, driveway, garage, or combination thereof and shall be located on the premises they are intended to serve.

  **(2)** **Location of Off-Street Parking for Non-Residential Use.** Parking spaces for non-residential uses shall be either on the same lot or within 300 feet of the building it is intended to serve, measured from the nearest point of the building to the nearest point of the off-street parking lot. Ownership shall be shown on all lots or parcels intended for use as parking by the applicant.

  **(3)** **Fractional Spaces.** When units of measurement determining the number of required parking spaces result in a fractional space, any fraction up to and including one half shall be disregarded and fractions more than one half shall require one parking space.

  **(4)** **In Cases of Uses Not Specifically Mentioned.** For uses not specifically mentioned in *Section 9.02*, the requirements of off-street parking spaces shall be in accordance with the use that the zoning administrator considers most similar in type.

  **(5)** **Use of Off-Street Parking Areas.** Commercial repair work, storage of merchandise, or servicing or selling of trucks or motor vehicles is prohibited in an off-street parking area.

## Section 9.02    Parking Space Requirements (currently Section 7.6.3)

The number of required off-street parking spaces in all districts shall be provided in accordance with the following minimum requirements in the table below. The planning commission may recommend, and the township board may modify, the numerical requirements for off-street parking based on evidence that another standard would be more reasonable based on the level of current or future employment and level of current or future customer traffic. In determining whether to permit fewer parking spaces or require more parking spaces, the planning commission and township board shall consult the most recent edition of the *Parking Generation* published by the Institute of Transportation Engineers (ITE) or other acceptable standard (e.g., a parking study by a qualified professional or a reasonable comparison). When authorizing fewer spaces, permitting additional spaces, or requiring a maximum number of allowable spaces, the planning commission and township board shall cite the standard used to justify its decision.

**Article 9:** Parking, Loading, Access Management, and Private Roads

| Use | | Baseline Number of Parking Spaces per Unit of Measure |
|---|---|---|
| **(A)** | Residential | |
| | (1) One family, two family, multiple family, mobile home (not in a mobile home park), and secondary dwelling | Two for each dwelling unit. |
| | (2) Mobile home park | Two for each mobile home site plus one for each employee, plus one visitors space for each four mobile homes. |
| | (3) Adult foster care, small group home, or family home | One for each non-resident employee on the maximum shift plus one for each three adult foster residents occupying the home, in addition to those required for permanent non-foster residents of the home. |
| **(B)** | Institutional | |
| | (1) Religious Institutions and similar places of assembly | One for each three seats in the main assembly area plus one per two employees. |
| **(C)** | Business and Commercial | |
| | (1) Service Institutions, including beauty parlors or barber shops | One per employee plus two for each beauty and/or barber shop chair. |
| | (2) Restaurants, taverns, bars | One for each two seats of legal capacity for the facility, plus one per employee on the largest shift. |
| | (3) Gasoline station | One per gas pump, two for each service and repair stall, plus one for each employee on each shift. |
| | (4) Retail sales, except as otherwise specified in this ordinance | One for each 150 square feet of floor area. |
| | (5) Child care centers | One for each employee in the largest work shift and one per 10 persons cared for at one time, plus stacking spaces for five vehicles with nine feet by 20 feet for each stacking space. |
| | (6) Greenhouses and nurseries (Retail Sales) | One for each 150 square feet of floor area. |
| | (7) Indoor recreation | One per three persons of maximum occupancy as established by local, county, or state fire, building, or health codes, plus one parking space per employee on the largest shift. |
| **(D)** | Offices | |
| | (1) Business or professional offices except doctors, dentists, or similar professions | One for each 200 square feet of floor area. |
| | (2) Professional offices or doctors, dentists, or similar professions | One for each 200 square feet of floor area plus one per employee on the largest shift. |
| **(E)** | Industrial and warehousing | |
| | (1) Industrial or manufacturing establishments, research and testing laboratories, and related accessory offices | Five plus one for every one employee for the largest working shift. |
| | (2) Warehouses or wholesale establishments and related accessory offices | Five plus one for every one employee for the largest working shift. |
| **(F)** | Other Uses | |
| | (1) Marinas | One space for each 150 square feet of building area, exclusive of area used for boat storage, plus one additional space for every one and a half slips or mooring locations, excluding designated transient slips. Additional spaces will |

|     |                                                                             | be required for such uses as stores and restaurants as provided herein.                                                                                                                                                                                                                                      |
| --- | --------------------------------------------------------------------------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| (2) | Bed and breakfasts                                                          | One space per rental sleeping room in addition to the two spaces required for owner/occupant.                                                                                                                                                                                                                 |
| (3) | Hotels, motels, tourist courts                                              | One for each sleeping room, plus one for each employee of the maximum working shift. Additional spaces are required for such uses as a restaurant or bar as provided in this ordinance.                                                                                                                        |
| (4) | Winery-chateaus, food processing plants, and winery/farm processing facilities | One for each 150 square feet of retail floor space in the "tasting room," plus one for each employee of maximum working shift, plus three spaces sized appropriately for tour buses or cars with trailers. Additional spaces are required for other uses as provided in this ordinance (e.g., dwelling, bed and breakfast, etc.). |
| (5) | Headquarters building (recreational unit parks)                             | One for each 200 square feet of floor area plus one for each employee on the largest working shift.                                                                                                                                                                                                           |
| (6) | Recreational unit sites                                                     | Each site shall have a parking space for at least one vehicle other than the recreational unit.                                                                                                                                                                                                               |
| (7) | Self-service storage facilities                                            | Two for the manager's residence plus one per 25 storage units, to be located at the office at the storage complex. In no instance shall fewer than five parking spaces be provided on site.                                                                                                                    |
| (8) | Events                                                                      | One space for every three persons expected to attend or participate in the event.                                                                                                                                                                                                                             |

# Section 9.03    Off-Street Parking Site Development Requirements (currently Section 7.6.4(1) and (2))

All off-street parking areas shall be designed, constructed, and maintained in accordance with the following standards and requirements:

**(A)** **Permit Required.** No parking lot shall be constructed until a permit is issued by the zoning administrator.

**(B)** **Design.** Before such permit is issued, plans and specifications shall be submitted to the zoning administrator showing the location, capacity, size, site design, surfacing, marking, lighting, drainage, entrances, exits, and any other detailed features essential to the design and construction of the proposed parking facility.

    (1) **Minimum Parking Space Dimensions.** Minimum dimensions of nine feet wide by 20 feet long (9 feet x 20 feet) are required for parking spaces except in the case of angled parking, when the approving authority may require longer spaces. For parallel parking, the dimensions shall be at least 12 feet wide for the maneuvering lane, eight feet for the parking space width, and 23 feet for the parking space length.

    (2) **Maneuvering Lanes.** All parking spaces shall be provided access by 20-foot wide maneuvering lanes. Backing directly onto a street shall be prohibited.

    (3) **Driveway Access.** Adequate ingress and egress to the parking lot by means of clearly defined drives shall be provided for all vehicles. Ingress and egress to a parking lot lying in an area other than residential use shall not be across land zoned for residential use. Where two or more lots allow for shared access, shared access easements shall be provided for all shared access drives to ensure that the internal circulation system connects to the internal circulation system on adjacent lots. The cross-access agreement shall provide for reciprocal cross access for connection to adjacent lots without limitation.

(4)  **Driveway Spacing.** Each entrance and exit to and from any off-street parking lot located in an area other than single-family residential use shall meet the following spacing requirements:

(a)  **From Adjacent Property in a Residential District.** At least 25 feet distant from adjacent property located in any residential district.

(b)  **From Road Intersections**. At least 100 feet from any intersection of two roads on the same side of the road or opposite sides of the road. For sites that cannot meet the driveway spacing standards due to insufficient road frontage or the presence of natural features that cannot be altered (e.g., slopes and trees), the township board may modify the driveway spacing requirements.

(5)  **Surface.** Except for single-family residential lots, all parking areas, including parking spaces and maneuvering lanes, shall be surfaced with a material that shall provide a durable, smooth, and dustless surface and shall be graded and drained to dispose of all collected surface water. The surface shall be maintained in a durable, smooth, and dustless condition.

(6)  **Lighting.** All lighting shall conform to the requirements of *Section 8.07*.

(7)  **Vehicle Stacking.** Ingress and egress to the parking lot shall provide adequate stacking space so that vehicles do not block the ingress/egress road or park on public road shoulders.

## Section 9.04    Off-Street Loading and Unloading

If the proposed use requires frequent loading and unloading by large vehicles, the township board may require one or more off-street loading spaces. The off-street loading spaces shall be a minimum of 10 feet wide and 25 feet long and shall have a minimum vertical clearance height of 14 feet.

## Section 9.05    Snow Storage (currently Section 7.6.4(4))

Whenever a development requiring off-street parking has parking areas containing 2,700 square feet or more, provisions shall be made for an on-site snow storage area in addition to the required parking lot area. Snow storage shall be provided on the ratio of 15 square feet per 100 square feet of parking lot surface area. Snow storage areas shall not interfere with clear visibility of traffic or adjacent streets and highways, shall not damage any landscaping required, and must drain to approved stormwater structures.

## Section 9.06    Driveway Requirements (currently Section 6.2.5)

(A)  **Minimum Clearances.** To reduce fire hazard and make possible access to all dwellings and other buildings by the fire department, all driveways shall maintain horizontal and vertical clearances of at least 13 feet from bordering trees, overhead wires, and other obstructions.

(B)  **Minimum Setback.** Minimum setback of driveways and aprons from property lines shall be five feet.

(C)  **Shared Driveways.** Shared residential driveways shall comply with the following standards in addition to all other applicable standards of this ordinance:

(1)  **Easement Agreement.** An easement agreement shall be approved by the township attorney, signed by the applicants/owners, and recorded with the Grand Traverse County Register of Deeds.

(2)  **Maximum Number of Lots Served.** The shared residential driveway shall not serve more than two dwelling units.

**Article 9:** Parking, Loading, Access Management, and Private Roads

(3) **Address Signs.** All addresses served by the shared residential driveway shall be clearly marked at its point of intersection with a road, and such addresses shall also be clearly marked at any location a private driveway splits from the shared residential driveway.

(4) **Name Prohibited.** No shared residential driveway shall be posted with a name.

(5) **General Driveway Standards.** Shared residential driveways shall comply with the requirements and standards of all driveways, where applicable, including the driveway clearance requirements of *Section 9.06(A)*. Such driveways shall not be used to provide lot frontage for a parcel.

(6) **Minimum Width.** The driveway surface shall be a uniform minimum 12 feet wide, measured edge to edge, with 18-feet-wide passing flares provided at least every 300 feet. Passing flares shall be at least 60 feet in length (see *Figure 9-1*).

(7) **Maximum Length.** The shared residential driveway shall not exceed 1,000 feet in length.

(8) **Emergency Vehicle Turnaround.** Shared residential driveways more than 150 feet in length shall include an area dedicated to emergency vehicle turnaround that meets the standards of the International Fire Code, which may be amended from time to time.

## Figure 9-1. Shared Residential Driveway Design



**Article 9:** Parking, Loading, Access Management, and Private Roads

# Section 9.07    Private Roads (currently Section 7.10)

**(A)   Private Road Approval Process.**

   (1)   **Application.** Sufficient copies of complete construction plans, drainage plans, easement agreements, road maintenance and improvement agreements, and hold harmless agreements shall be presented to the zoning administrator. The zoning administrator shall submit the copies of the hold harmless agreement, easement agreement, and the road maintenance and improvement agreement to the township attorney for review and approval. The applicant shall also submit copies to the county road commission, department of transportation, drain commissioner, and county soil erosion office for their review, comment, and any appropriate permits.

   (2)   **Zoning Administrator Review.** The zoning administrator shall review the plans and the proposed benefitting properties for conformance with the township master plan, the zoning ordinance, the subdivision control ordinance, the land division ordinance, and any other requirements of the township.

   (3)   **Permit Issuance.** The zoning administrator shall issue a preliminary private road permit prior to the commencement of any construction work on the road. Such permit shall only be issued after the initial plans, specifications, easement language, maintenance and improvement agreement, and hold harmless agreement have all been approved and appropriate reviews and permits have been received from the agencies to whom copies were submitted in accordance with *Section 9.07(A)(1)*.

      **(a)**   No parcel of land or lot created shall be issued a land use permit without having the required lot width or frontage width along a public road or a private road.

      **(b)**   No land use permit for a structure shall be issued until the preliminary private road permit has been issued, and no occupancy permit shall be issued until the final private road permit has been issued by the zoning administrator.Only public roads shall be used to access non-agricultural commercial, industrial, or business uses; however, private internal roads may be used as access to individual buildings or uses within an approved development.

   (4)   **Final Private Road Permit.** The final private road permit shall be issued by the zoning administrator after the private road has been constructed and certification has been made by the township engineer that the facility has been:

      **(a)**   Built according to the plans and specifications; or

      **(b)**   That any deviation from the approved plans and specifications does not impair the functional intent of the approved design.

**(B)   Maintenance and Improvements Agreement.**

   (1)   **Proposed easement and road maintenance and improvements agreements shall be provided to the township zoning administrator.** Easement and road maintenance and improvements agreements shall provide as a minimum:

      **(a)**   Majority vote rules regarding road maintenance and improvement decisions;

      **(b)**   The owner of each parcel will be responsible for payment of the share of costs apportioned to his or her parcel;

      **(c)**   The owners shall have standing and the right to commence legal or equitable action against a delinquent parcel owner or parcel owners to foreclose a lien or otherwise collect the sums owed;

(d)   The agreement shall be recorded and shall run with the land and bind and benefit the parcels and the owners, heirs, successors, assigns, and transferees of the agreement in perpetuity;

(e)   The owner or owners of the land served by the road shall provide for the requirement to grade, drain, and otherwise maintain the private road in accordance with the requirements of township ordinances;

(f)   A statement that the owners have not asked the Grand Traverse County Road Commission to accept the road as a public road. As such, the roadway will be private and the road commission will have no obligation to maintain the road in any manner. This provision does not prevent the future upgrading to county road standards or requesting the road to be taken over by the county road commission.

(g)   The road maintenance and improvement agreement shall allow the township to repair and maintain private roads if, after 90 days prior notice, the owners do not repair or maintain the private roads in accordance with this ordinance. Repairs or maintenance considered by the township to be of an emergency nature may be done sooner by the township with prior notice.

(2)   The road maintenance and improvement agreement shall be reviewed and approved by the township attorney for compliance with the township regulations and shall be recorded with the Grand Traverse County Register of Deeds.

**(C)   Hold Harmless Agreement.** A waiver or indemnification and "hold harmless" agreement to benefit the township, as approved by the township attorney, is required.

**(D)   Drainage Plan.** A drainage plan meeting the approval of the Grand Traverse County Soil Erosion and Sedimentation Control Department shall be prepared by a registered professional engineer, and the plan will control erosion and retain stormwater on site or direct it to a proper drainage course. The drainage plan, as it affects the roadways, shall indicate the manner in which surface drainage is to be controlled. An easement of twenty (20) feet or more in width shall be provided when the drain crosses private property within the project or adjacent to it. The drainage plan shall conform to the requirements of all agencies having jurisdiction. The owner or owners of the land served by the road shall provide in a road maintenance and improvement agreement for the requirement to grade, drain, and otherwise maintain the private road in accordance with the requirements of the ordinance.

**(E)   Right-of-Way, Temporary Grading Easements, and Utility Easements.** The following right-of-way, temporary grading easements, and utility easements are required for all private roads:

(1)   **Right-of-way or Easement Access Minimum Width of 33 feet.** The private road, including shoulders and ditches, shall be located within this right-of-way or easement access.

(2)   **Temporary Grading Easement.** A temporary grading easement of at least 16 ½ feet shall be provided on each side of the right-of-way until such time as the road is completed. Greater temporary grading easements may be required on steep slopes so that the road, including shoulders and ditches, can be constructed within the right-of-way or easement access according to the plan provided for by *Section 9.07(I)*.

(3)   **Utility Easement.** A 10-foot wide utility easement for public and private utilities shall be provided on each side of the right-of way or easement access and may be within a grading easement or located outside the grading easement.

**(F)   Road Layout.**
(1)   The road layout shall conform to any adopted road plan of Peninsula Township and shall also conform to the pattern established by adjacent roads.

**Article 9:** Parking, Loading, Access Management, and Private Roads

(2) All existing roads that terminate at the boundaries of a proposed development shall be connected with the road system of the proposed development.

(3) Suitable access from an isolated (i.e., landlocked) parcel previously dependent on this property for sole access to existing public roads must be provided access by easement or dedication.

(4) The layout of roads shall provide as much as possible for a continuous circuit of travel. In special cases where the lands to be divided are limited in area or are subject to a natural barrier, the township board or zoning administrator may approve a dedication that provides access to another road at one end only if a cul-de-sac of 40-foot minimum roadbed radius with 60-foot radius right-of-way is provided at the terminus of the road to permit turning in a continuous circuit. The fire department may require a larger roadbed radius or right-of-way radius. No more than five driveways will be permitted to enter the cul-de-sac beyond the point of curvature at the beginning of the cul-de-sac. A cul-de-sac shall not be allowed where it is reasonable to connect to adjacent properties. Refer to sketches of typical cul-de-sac *(Figure 9-2*) and typical intersection *(Figure 9-3).*

### Figure 9-2. Typical Cul-De-Sac



**Article 9:** Parking, Loading, Access Management, and Private Roads

**Figure 9-3. Typical Intersection**



**(G)** **Road Names**. All private roads names shall be approved by the Grand Traverse County Equalization Department and the township board when applicable.

**(H)** **Signs.** Traffic control signs shall be placed in accordance to the Michigan Manual of Uniform Traffic Control Devices. Signs marked "Private Road" shall be erected and maintained at the entrance to all private roads in subdivisions, condominiums, or other residential developments.

**(I)** **Required Specifications.**

   (1) **Plan and Profile.**

      **(a)** Plan and profile drawings shall be prepared by a licensed professional engineer in detail complete enough to be used as construction plans.

      **(b)** Detailed construction plans shall be provided at a scale of one inch equals one hundred feet (1 inch = 100 feet) or larger and shall include:

         **(i)** Detailed survey drawings showing the easement, proposed road location, and all parcels benefitted by the private road. The plan shall incorporate all construction standards of the township.

         **(ii)** The proposed gradients of all roads and the location of drainage facilities and structures as well as other pertinent information.

         **(iii)** Utility easements shall be shown on the plan and such utility easements shall include public sewer, water, and gas as well as telephone, electric, and cable easements.

**(c)** Vertical curves shall be used at all changes in grade. Sight distance, horizontal, and vertical alignment shall be based on a minimum design speed of 25 miles per hour. Sight distance and alignment shall be in accordance with the current American Association of State Highway Officials Standards for Geometric Design. Horizontal curve radii, vertical curve lengths, and percent of grade shall all be shown on the plan and profile drawings.

**(d)** For design of roadbed, shoulders, ditch profiles, and slope requirements, refer to, *Figure 9-4.*

**(e)** Two copies of the plan and profile drawings shall be forwarded to the zoning administrator for approval. More detailed construction plans may be required by the zoning administrator or township engineer. One copy will be returned to the owner upon approval. Approval shall be obtained before construction begins.

(2) **Clearing, Grubbing, and Maintenance.** All trees, stumps, brush, and roots shall be entirely removed between the outside limits of the ditches and also within the 25-foot radius at all intersections, whichever is greater. Maintenance of the cleared area shall be performed as necessary to keep the area clear of trees and brush.

(3) **Grades and Paving.** Permissible percent grades on any private road shall be within the following ranges:

| Grades and Paving | |
|---|---|
| Maximum | 9% |
| When the conditions below are met | 12% |
| Cul-de-sac | 1% |
| Minimum | 0.4% |

Private roads with grades of up to nine percent shall have a roadbed width of not less than 18 feet and may be paved or have a gravel surface approved by the township engineer and shall have two-foot shoulders on each side. With grades greater than nine percent, the roadbed width shall be surfaced with bituminous pavement to a width of not less than 20 feet. Integral bituminous raised edges may be used in areas subject to severe erosion, possibly eliminating the need for roadside ditches. Minimum width between beginnings of raised edges shall be the same as for a paved roadbed.

(4) **Drainage Structures and Erosion Control.** Drainage structures shall be installed as indicated on the drainage plan. The minimum diameter of culverts shall be 12 inches unless a smaller diameter is approved by the drain commissioner or county road commission. The bottom ends of culverts shall extend to the bottom of the slope. Either concrete culvert pipe, corrugated metal pipe, or corrugated polyethylene pipe meeting Michigan Department of Transportation specifications of the required size and strength may be used. Standard flared-end sections shall be used on all road cross culverts. Guard posts shall be placed beside the ends of cross culverts to mark their location.

Bridges shall be designed for HS-20 or more loading on all roads. Culverts at driveway entrances may be necessary. Sodding, riprapping, sediment basins, topsoil, seeding, mulching, or other methods of erosion control shall be used in accordance with the recommendations of the soil erosion and sedimentation control officer and the drain commissioner.

**Figure 9-4. Standard Plans for Subdivison Road and Grading and Typical Cross Section**



STANDARD PLANS FOR SUBDIVISION ROAD GRADING

TYPICAL CROSS SECTION

NOTE:
- SURFACE MAY BE GRAVEL
- TOPSOIL AND ORGANIC MATERIAL SHALL BE REMOVED AND SUBGRADE SHALL MEET CL II GRANULAR SPECIFICATIONS OR 15" CL II SUBBASE SHALL BE CONSTRUCTED PRIOR TO PLACEMENT OF AGGREGATE BASE.
- W = HMA WEARING COURSE @ 165 LBS/SYD.
- L = HMA LEVELING COURSE @ 165 LBS/SYD.



BITUMINOUS RAISED EDGE

NOTE:
- HMA CURB TO BE PLACED INTEGRAL WITH WEARING COURSE OF HMA SURFACE

(5) **Surfacing. A minimum total depth of 6 inches of compacted dense aggregate shall be placed on private roads.**

    **(a)** The aggregate base course shall be placed on the prepared sub-grade for the entire width of the roadway in accordance with the Design Guidelines-AASHTO Interim Structural Pavement Design Procedure Adopted for All Season Roads.

    **(b)** Where hot mix asphalt is required, hot mix asphalt in accordance with the current MDOT Standard Specifications for Construction (or an alternate mix approved by the zoning administrator) applied in two or more courses, at a minimum application rate of 165 #/syd. The total hot mix asphalt cross section shall be a minimum of 330 #/syd. A period of no more than one year shall elapse between placements of any (two courses of hot mix asphalt. A bituminous bond coat applied at a rate of 0.05-0.15 gal/syd between pavement courses will be required.

    **(c)** Shoulders shall be stabilized with two and a half inches or more of good compacted topsoil over a minimum of six inches of compacted gravel. Shoulders shall be sodded or seeded and mulched to ensure an adequate covering of grass.

(6) **Intersections.**

    **(a)** Angle of Intersection. Roads shall generally intersect at 90 degrees but never less than 80 degrees.

    **(b)** Number of Roads. No more than two roads shall cross at any one intersection.

    **(c)** "T" Intersections. "T" type intersections shall be used where practical.

    **(d)** Centerline Offsets. New private roads shall be designed to intersect directly opposite the center line of an opposing street or parking lot entrance. If that is not possible, they shall be separated by at least 150 feet or other distance as required by the Grand Traverse County Road Commission or the Michigan Department of Transportation.

    **(e)** Vertical Alignment of Intersection. A nearly flat grade with appropriate drainage slopes is desirable within intersections. This flat section shall be carried back 50 feet from the center of the intersection.

(7) **Utilities.** Adequate utility easements shall be provided within or adjacent to the right-of-way and dedicated to the public. All utilities that are placed underground in the private road right-of-way shall be placed prior to final soil erosion measure work where at all possible.

**(J)** **Clear Vision and Sight Triangles.** In addition to the requirements of *Section 7.09*, the minimum clear sight distance at all minor road intersections shall permit vehicles to be visible to the driver of another vehicle when each is 125 feet from the center of the intersection.

**(K)** **Non-Conforming Private Roads.**

(1) **Definition and Intent.** Non-conforming private roads are those existing at the time this ordinance is approved that do not meet the standards of this ordinance for private roads.

(2) **Safety.** To retain the character of the surrounding area and neighborhoods while ensuring public safety and health standards, non-conforming private roads shall require an evaluation/assessment from the fire department or the township engineer prior to any road extensions. Accessibility of emergency vehicles on the private road must be included in the report to the property owner and a copy will be sent to the township board. The township board may distribute copies of the report to property owners on the road or a neighborhood association.

(3) **Continued Use with New Lot Division or Road Extension.** Non-conforming private roads may continue to be used in the case of land division into new lots or a private road extension, provided that the easements and other requirements are met as required below:

    **(a)** Required private road requirements for the creation of one or more new lots on an existing non-conforming private road:

        **(i)** Maintenance and improvement agreement (*Section 9.07(B)*).
        **(ii)** Hold harmless agreement (*Section 9.07(C)*).
        **(iii)** Drainage plan (*Section 9.07(D)*).
        **(iv)** Right-of-way, temporary grading, and utility easements (*Section 9.07(E)*).
        **(v)** Road names if necessary (*Section 9.07(G)*).
        **(vi)** Road signs if necessary (*Section 9.07(H)*).

    **(b)** Required private road requirements for the extension of an existing non-conforming private road:

        **(i)** Maintenance and improvement agreement (*Section 9.07(B)*).
        **(ii)** Hold harmless agreement (*Section 9.07(C)*).
        **(iii)** Drainage plan (*Section 9.07(D)*).
        **(iv)** Right-of-way, temporary grading, and utility easements (*Section 9.07(E)*).
        **(v)** Road layout (*Section 9.07(F)*).
        **(vi)** Road names if necessary (*Section 9.07(G)*).
        **(vii)** Road signs if necessary (*Section 9.07(H)*).
        **(viii)** Required specifications (*Section 9.07(I)*).
        **(ix)** Clear vision and sight triangles (*Section 9.07(J)*).
        **(x)** Performance guarantee (*Section 9.07(L)*).
        **(xi)** Fire department evaluation/assessment (*Section 9.07(K)(2)*).

**(L)** **Performance Guarantee of Completion of Required Improvements. See *Section 13.09(C)*.**

# Article 10   Signs

## Section 10.01   Purpose (currently introductory paragraph of Section 7.11)

It is the intent of this ordinance to limit the number and size of signs in order to prevent traffic hazards, promote safety for passersby, and maintain the rural ambience and environment of the township. It is also the intent to allow signs that are appropriate, proportional, and in scale with adjacent uses and roadways and that are compatible with the character of the community. The objectives of this article are:

**(A)** **Traffic and Pedestrian Safety.** To promote the free flow of traffic and protect pedestrians and motorists from injury and property damage caused by, or that may be fully or partially attributable to, cluttered, distracting, or illegible signage. Also, to protect public safety by prohibiting or removing signs that are structurally unsafe or poorly maintained.

**(B)** **Old Mission Peninsula Scenic Heritage Route.** To allow Peninsula Township to regulate the size (including height and display area), lighting, spacing (including setbacks and distances between billboards), and other regulatory powers pursuant to Act 153 of 1990 and the *Old Mission Peninsula Scenic Heritage Route Guidebook* in order to control outdoor advertising along federal aid trunk line highways and encourage signage along M-37 to blend with the local character of the community.

**(C)** **Free Speech.** To ensure that the constitutionally guaranteed right of free speech is protected and to allow signs as a means of communication.

**(D)** **Effective Communication.** To allow signage of an appropriate design, scale, and placement for the purposes of communicating effectively in a manner that provides information, identification, or direction without jeopardizing the beauty of the natural landscape or disrupting the environment of historically significant features or sites.

**(E)** **Protection of Scenic Areas and Viewsheds.** To regulate outdoor advertising in such a way as to create land use patterns that are in concert with future land use objectives of the master plan and to prevent signs that would detract from scenic roadways and scenic views (including the preservation of historic and cultural resources, scenic areas and viewsheds, and the dark night sky).

**(F)** **Compatibility with the Area and Protection of Property Values.** To ensure compatibility with rural lands, neighborhoods, and business areas in order to protect land values by preventing blight, visual clutter, excessive lighting, and out-of-scale signage that degrade the aesthetic views or property values of the community, thereby enhancing the image of the community for residents, tourists, and visitors.

**(G)** **Economic Development.** To allow for adequate and effective signage for businesses to inform, identify, and communicate effectively.

**(H)** **Ease of Administration.** To have standards and administrative review procedures that are simple for property owners, businesses, tenants, and sign installers to understand and follow.

## Section 10.02   Definitions (NEW SECTION, which includes existing definitions in Section 3.2 related to signs)

The following definitions relate to signs in Peninsula Township.

**(A)** **Sign Definitions, Sign Types.** The following definitions apply to types of signs based on the characteristics of the sign without respect to the content of the message:

(1)   **Banner Sign.** A sign made of natural or synthetic fabric; however, not including pennants or flags.

(2)   **Entrance Way Sign.** A sign located near the public entrance of a permitted development.

(3)   **Flashing Sign.** Any illuminated sign that pulsates, flashes, scrolls, fades, dissolves, osculates, spins, twirls, sequentially reflectorizes, or contains any other type of motion.

(4)   **Ground Monument Sign.** A base-mounted, freestanding sign placed in the ground and not attached to any building or other structure.

(5)   **Ground Pole Sign**. A freestanding sign supported by one or more uprights, poles, braces, or some other structure placed in the ground surface and not attached to any building.

(6)   **Flags.** A sign on paper, cloth, fabric, or other flexible or combustible material of any kind that is attached to a permanent conforming pole or attached flat to a wall.

(7)   **Illuminated Sign.** A sign that utilizes artificial light internally or externally by either emission or reflection.

(8)   **Incidental Sign.** A small sign, designed and located to be read only by people within the site and generally not visible or legible from the right-of-way or adjacent properties, intended to be used by people on site to identify features of a land use such as building entrances, drop boxes, rest rooms, and handicapped ramps for the purpose of traffic safety. Such signs include traffic control signs that conform to the requirements of the Michigan Manual of Uniform Traffic Control Devices or similar signs providing information to be read at close proximity.

(9)   **Ingress/Egress Sign.** A small sign located adjacent to the entrance or exit drives of a development intended to identify the points of vehicular ingress and egress for the purpose of traffic safety.

(10)  **Interior Directional Sign.** A sign located on the interior of a development intended to be used to direct visitors to within the development for the purpose of traffic safety.

(11)  **Marquee, Canopy, Awning Sign.** A sign attached to a marquee, canopy, or awning projecting from the building.

(12)  **Pennant Sign.** A small, often triangular, tapering flag used in multiples as a device to call attention.

(13)  **Portable Message Sign.** A freestanding sign not permanently anchored or secured to the ground, including trailers or similarly mounted signs, signs on parked vehicles where the sign is the primary use of the vehicle or wheeled object, and signs on vehicles that, because of the vehicle's placement and regularity of position, serve the same purpose as a portable message sign. These portable message signs do not include customary signs located on vehicles that are operating lawfully or parked in a manner where the vehicle does not serve the same purpose as a portable message sign.

(14)  **Roof Sign.** Any sign that is on or attached to the roof of a building.

(15)  **Wall Sign.** A sign that is attached directly to, painted upon, or inscribed on a building wall.

(16) **Window Sign.** A sign that is painted on or attached to a window or glass door and is intended to be viewed from outside, including signs located inside a building but visible primarily from the outside of the building.

(17) **Yard Sign.** A portable temporary freestanding sign that is temporarily anchored or secured to the ground.

**(B)  Sign Definitions, General.**

(1)  **Sign.** Any device, structure, fixture, or placard using graphics, symbols, or written copy designed specifically for the purpose of advertising or identifying any establishment, product, good, service, or any other message.

(2)  **Sign Face.** That part of a sign structure that is used to graphically communicate a message or announcement.

**(C)  Sign Definitions, Sign Types Based on Activity.**

(1)  **Sign, Off-Premise Commercial Advertising.** A sign that identifies or communicates a message relating to an activity conducted, a service rendered, or a commodity sold at a location other than where the sign is located. Examples of off-premise commercial signs include but are not limited to the following:

   **(a)**  Sign, Permanent Billboard/Highway Advertising. An off-premise sign owned by a person, corporation, or the entity that engages in the business of selling the advertising space on that sign.

   **(b)**  Sign, Temporary Directional. A temporary off-premises sign that is used to identify the route to an event or activity that is commercial in nature such as bazaars, races, tours, and quasi-public fund raising events. Directional event signs include such things as marks painted on or along the road surface, whether or not approved by the department of transportation or county road commission.

(2)  **Sign, On-Premise Commercial Advertising.** A sign identifying or advertising a commercial business, person, activity, or service located on the premises where the sign is located. Examples of on-premise commercial signs include but are not limited to the following:

   **(a)**  **Sign, Agricultural Products**. An on-premises sign that indicates the retail sale of agricultural products, including those sold at roadside stands and u-pick operations.

   **(b)**  **Sign, Business Center.** A sign that gives direction, name, and identification to a business center and that may include identification of individual businesses within the center.

   **(c)**  **Sign, Business Identification**. A sign identifying a business operating on the premises where is the sign is located.

   **(d)**  **Sign, Construction Site.** A sign identifying a construction site.

   **(e)**  **Sign, Event.** An on-premises sign placed for a period of time that is used to identify an event that is temporary in nature such as home tours, bazaars, races, tours, and quasi-public fundraising events.

   **(f)**  **Sign, Promotional.** A sign that is placed for a limited period of time and is used to advertise a sale, a special event, or similar activity.

   **(g)**  **Sign, Real Estate.** A temporary sign advertising the real estate upon which the sign is located as being for lease, sale, auction, or rent.

(h) **Sign, Roadside Stand.** A sign located on the same premises with a roadside stand that identifies the roadside stand and may also identify products to be sold at the roadside stand.

(i) **Sign, Yard/Garage Sale/Personal Event.** A temporary sign that is placed on the premises of a yard sale, garage sale, or on-site event.

(3) **Sign, On-Premise Identification.** A non-electric on-premises identification sign giving the name and address of an occupant.

(4) **Sign, On-Premise Safety.** A sign placed to control access to a property such as "No Hunting," "No Trespassing," or "Private Property."

# Section 10.03   Substitution Clause (NEW SECTION)

Any lawful sign permitted under the provisions of this ordinance may contain non-commercial content.

# Section 10.04   Measurement of Sign Area and Height (currently part of Section 7.11.1)

**(A) Sign Area.** The area of a sign shall be the minimum area of a parallelogram, ellipse, circle, or combination of geometric shapes that is capable of containing the graphics, symbols, and/or written copy along with the background area.

**(B) Two or More Sides.** A two-sided sign (e.g., a "v"-type sign or double-faced [back-to-back sign]) shall be considered as one sign when the angle between the sign faces does not exceed 15 degrees nor does the distance between the backs of each face exceed three feet.

**(C) Height.**

(1) **Measurement of Height.** Height of signs shall be measured from the highest point of the sign or supporting structure to the elevation of the highest point of grading beneath the sign exclusive of architectural landscaping related to the sign.

(2) **Additional Maximum Height Requirements.** In addition to the maximum height requirements of *Section 10.08*, the sign height, including support structures, shall not exceed one and a half times the width of the sign, and the support structures shall not extend more than one foot above the sign face.

# Section 10.05   Sign Placement and Design Requirements (currently part of Section 7.11.1)

All signs shall conform with this article and all other provisions of this ordinance.

**(A) On-Premise Location.** All signs shall be located on the same premises as the associated use unless otherwise provided for in this ordinance.

**(B) Alterations, Repair, and Message Changes.** No sign shall be constructed, erected, moved, enlarged, illuminated, or substantially altered unless authorized in accordance with this ordinance. Repainting or changing the message of a sign in accordance with this ordinance shall not in and of itself be considered a substantial alteration.

**(C) Wall Signs.** Wall signs shall meet the following requirements:

(1) The sign does not project more than 12 inches from the building wall;

(2)   The exposed face of the sign is in a plane parallel to the building wall or structure; and

(3)   The sign does not extend above the height of the building or wall.

**(D)   Materials.** Materials, supports, frames, letters, and sign surfaces may be any commonly used material, but the use of natural or natural appearing materials is required along M-37 and highly encouraged elsewhere in the township.

**(E)   Freestanding Sign Width.** The sign width, including supporting structures and base, shall not be more than one and a half times the width of the sign face alone.

**(F)   Setbacks.** Setbacks shall be measured from the lot line to the leading edge of the sign or support structure, whichever is less.

**(G)   Maintenance.** Signs shall be properly maintained, including keeping the sign secured and/or anchored, and replacing or repairing materials that are faded, discolored, torn, or deteriorated.

**(H)   Review by Zoning Administrator, Planning Commission, and Township Board.** All plans for construction, design, and appearance of signs associated with a development for which site plan review is required shall be reviewed by the planning commission and township board as part of the site plan approval process. Changes to existing signs shall be reviewed by the zoning administrator in accordance with this ordinance. In addition to any other consideration, the zoning administrator, planning commission, and/or township board, as applicable, shall consider the following content-neutral provisions in reviewing and approving signs:

(1)   Compatibility of the sign with the character of the neighborhood;

(2)   The sign does not unreasonably block views from other properties;

(3)   Materials and colors used are natural looking and consistent with surrounding structures in the vicinity and with the intent of the ordinance; and

(4)   Where the zoning administrator, planning commission, or township board has discretion on the number and location of certain signs, the number and location of signs shall be reasonably necessary to meet the intent of this ordinance.

**(I)   Signs Approved in Association with a Special Use Permit.** In approving a special use permit, the township board may approve any or all signs allowed in this ordinance, provided that the approved signs meet the following content-neutral provisions:

(1)   Are related to an approved use in the special use permit;

(2)   The design, size, setback, and lighting are shown on a scale drawing;

(3)   The number and location of all signs is reasonably necessary to meet the intent of this ordinance.

# Section 10.06   Prohibited Signs (currently Section 7.11.2 and parts of Section 7.11.1)

The following signs shall be prohibited in the township unless explicitly permitted elsewhere in this ordinance:

**(A)**   Off-premises commercial advertising signs unless explicitly permitted in this article;

**(B)**   Signs that are illegal under applicable federal, state, or local laws, regulations, and/or ordinance;

**(C)**   Signs that are not clean and in good repair or that have become unsafe or not secure;

**(D)**   Signs that violate the building code or electrical code;

**(E)**   Signs not securely fastened to a substantial structure;

**(F)**   Signs that interfere with or resemble any official traffic sign, signal, or device or signs that are deemed hazardous or dangerous by the local road agency or public safety department;

**(G)**   Signs that do not comply with the standards in this ordinance;

**(H)**   Flashing signs;

**(I)**   Portable message signs or signs utilizing vehicles, trucks, vans, or other wheeled devices;

**(J)**   Roof signs;

**(K)**   Pennant signs;

**(L)**   Any sign that revolves, rotates, moves, or is animated;

**(M)**   Signs with automated changes in sign appearance;

**(N)**   Banner signs, pennants, streamers, festoons, and airborne or air-activated devices attached to the ground or buildings except where otherwise specifically permitted by this ordinance;

**(O)**   Tripods or sandwich boards;

**(P)**   Automated changeable message boards;

**(Q)**   Wall signs extending perpendicularly from a building wall;

**(R)**   On-site and off-site directional signs except those specifically allowed by this ordinance;

**(S)**   Signs within a road right-of-way except traffic direction and control signs placed by the Grand Traverse County Road Commission or Michigan Department of Transportation;

**(T)**   Signs attached to trees and other vegetation;

**(U)**   Signs attached to utility structures or poles, including light poles, except by the utility company;

**(V)**   Signs located in a clear vision area unless permitted in *Section 7.09*;

**(W)**   Signs attached to street furniture such as benches and trash cans; and

**(X)**   Projected image signs.

## Section 10.07    Signs Permitted in All Districts (currently Section 7.11.3)

The following signs shall be allowed in all zoning districts (*Section 10.07* and *Section 10.08* may apply):

**(A)**   Memorial/historical markers when the site is recognized for its historical significance by a federal or state agency.

**(B)**   On-premise identification signs (including address signs) that are necessary for public safety and emergency vehicle access.

**(C)**   Official signs of a non-commercial nature erected by a public utility.

**(D)** On-premise safety signs, such as a private property/no hunting/no trespassing sign.

**(E)** Public notice signs placed by public agencies.

**(F)** Signs required by law or placed by any governmental agency for traffic control in accordance with the Michigan Manual of Uniform Traffic Control Devices.

**(G)** Incidental signs. See *Section 10.02(A)(8)*.

**(H)** Flags or insignia of any governmental or non-profit organization when not displayed in connection with a commercial promotion or as an advertising device.

**(I)** Signs carried by a person if operating lawfully in a public or private road right-of-way.

## Section 10.08    Sign Regulations for Specific Zoning Districts (currently Sections 7.11.4 – 7.11.6, including part of Table 7.11.6)

In addition to signs permitted in _Section 10.07_, the following standards apply (all areas are in square feet and all setbacks are from any lot line):

### (A)  Signs Permitted in All Districts. The following signs are permitted in all zoning districts:

| Sign Type | Maximum Number Per Lot | Maximum Area | Maximum Height | Minimum Setback | Illumination | Permit Required? |
|---|---|---|---|---|---|---|
| **Temporary On-Premise Commercial Advertising Signs** (e.g., real estate, construction, yard sale/garage sale, etc.) | 1 | 6 sq. ft. | 4 ft. | N/A | No | No |
| **Temporary Off-Premise Commercial Advertising** (limited to 30 days in a calendar year) (e.g., events, etc.) | 1 | 6 sq. ft. | 4 ft. | N/A | No | Yes |
| **Temporary Noncommercial Signs** (e.g., political, etc.) | 4 | 24 sq. ft. total | 4 ft. | N/A | No | No |
| **Ground Monument Entrance Way Sign** (e.g., subdivision, institutional uses, non-profit uses, government uses, etc.) (Excluding uses located in a Commercial District) **(see _Section 10.08(B)_]**, single-family dwellings) | 1 | 9 sq. ft. | 6 ft. | 15 ft. | Yes | Yes |
| **Wall or Marquee/Awning** (for the following uses not located in a commercial district: institutional uses, non-profit uses, and government uses) | 1 | 30 sq. ft. | N/A | N/A | Yes | Yes |
| **Window Sign** | 1 | 3 sq. ft. | N/A | N/A | No | No |
| **Name Plate** | 1 | 3 sq. ft. | 4 ft. (unless attached to a building) | N/A | Yes | No |
| **On-Premise Safety Signs** | 1 per 100 feet of frontage or portion thereof | 1 sq. ft. | 6 ft. | N/A | No | No |
| **Ingress/Egress Signs** | *** | 2 sq. ft. | 3 ft. | N/A | *** | Yes |
| **Incidental Signs** | *** | 2 sq. ft. | *** | *** | *** | Yes |
| **Interior Directional Sign** | *** | 2 sq. ft. | *** | *** | *** | Yes |

***As per approved site plan or plot plan

**(B)  Signs Permitted in Commercial Districts.** In addition to the signs permitted in *Section 10.07* and *Section 10.08(A)*, the following signs shall be permitted in the commercial districts:

| Sign Type | Maximum Number | Maximum Area | Maximum Height | Minimum Setback | Illumination | Permit Required? |
|-----------|---------|---------|---------|---------|---------|---------|
| Billboards (along M-37 only) | 1 | 30 sq. ft. | 10 feet | 15 feet | No | Yes |
| Ground Monument Sign | 1 | 30 sq. ft. | 10 feet | 15 feet | Yes | Yes |
| Wall or Marquee/Awning | 1 | 30 sq. ft. | N/A | N/A | Yes | Yes |

**(C)  Signs Permitted in the A-1 Agricultural District.** In addition to the signs permitted in *Section 10.07* and *Section 10.08(A)*, the following signs shall be permitted in the A-1 District:

| Sign Type | Maximum Number | Maximum Area | Maximum Height | Minimum Setback | Illumination | Permit Required? |
|-----------|---------|---------|---------|---------|---------|---------|
| Additional Temporary On-Premise Commercial Advertising Signs (farms, roadside stands, food processing plants, and winery/farm processing facilities only) | 1 | 9 sq. ft. | 6 ft. | N/A | No | No |

# Section 10.09  Billboards (Permanent Off-Premise Commercial Advertising Signs) (current Section 7.11.1(6), 7.11.1(20), and 7.11.2(12))

**(A)  Setbacks.** The support system for billboards is a structure that must meet all setbacks and requires a lot that meets the area and size requirements for the district in which  a billboard is located.

**(B)  Separation Distance.** There shall be a minimum horizontal spacing of 2,000 feet between any two billboards including both sides of a highway.

**(C)  Prohibited Billboards.** The following types of billboards shall not be permitted:

(1)  A billboard within 500 feet of any residential district, historic district, park, school, church, hospital, retirement home, cemetery, or government building. A billboard located within 500 feet of a residential, commercial, industrial, or agricultural use on the same property;

(2)  A billboard that is stacked, tiered, stepped, or placed next to or alongside of any other billboard or sign;

(3)  A billboard that would, by its erection, destroy significant natural vegetation and/or cause significant existing vegetation to be removed;

(4)  A billboard mounted on or over the roof of a building; and

(5)  Billboards that may otherwise be prohibited by any other laws, ordinances, or regulations.

# Section 10.10  Illumination Standards (currently part of Section 7.14.3(5) and part of Section 7.11.1)

**(A)  General Lighting.** If illumination is allowed by this ordinance, such illumination shall conform to the requirements of *Section 8.07*.

**(B)** **Hours of Illumination.** Illuminated signs must be turned off no more than one hour after the close of business and may be turned on no earlier than one hour before the opening of business except by special permission granted as a condition of site plan approval or special land use approval.

**(C)** **External Illumination**. External illumination of signs, including billboards, advertising kiosks, and information boards, shall be mounted at the top of the sign or sign structure and be fully shielded.

**(D)** **Internal Illumination.** Internally illuminated signs, billboards, advertising kiosks, and information boards shall have a dark background with lighter-colored translucent (not transparent) lettering, logos, or designs. The maximum luminance level of an internally illuminated sign shall not exceed 0.3 foot-candles over ambient light levels measured at the distance specified in *Figure 10-1*. All electronic message center signs and other internally illuminated signs shall be equipped with a photocell and automatic dimmer, and a cut sheet for the sign must be submitted to the township at the time of permit application showing compliance with these requirements.

Figure 10-1. Distance for Measurement of Sign Illumination Based on Sign Area

| Area of Internally Illuminated Sign | Distance for Measurement of Sign Illumination from the Sign Face |
|---|---|
| 10 square feet or less | 32 feet |
| Between 10.1 and 15 square feet | 39 feet |
| Between 15.1 and 20 square feet | 45 feet |
| Between 20.1 and 25 square feet | 50 feet |
| Between 25.1 and 30 square feet | 55 feet |
| Greater than 30 | = square root of (display area in sq. ft. x 100) |

# Section 10.11    Nonconforming Signs (NEW SECTION)

**(A)** **Removal of Nonconforming Signs.** If the owner of a sign or the premises on which a sign is located changes the location of a building, property line, or sign or changes the use of the land or building so that any sign on the premises is rendered nonconforming, such sign must be removed or made to conform to this article.

**(B)** **Lawful Existing Signs.** Any sign lawfully existing at the time of adoption of this article that does not fully comply with all provisions shall be considered a legal non-conforming sign and may be permitted to remain as long as the sign is properly maintained, there is no increase in nonconformity, and the sign is not detrimental to the health, safety, and welfare of the community.

**(C)** **Continuance**. A nonconforming sign shall not be:

(1) Expanded or changed to another nonconforming sign;

(2) Relocated or structurally altered so as to prolong the life of the sign or so as to change the shape, size, type, placement or design of the sign; or

(3) Repaired or re-erected after being damaged if the repair or re-erection of the sign would cost more than 50% of the cost of an identical new sign.

**(D)** **Alteration.** No nonconforming sign shall be altered or reconstructed unless the alteration or reconstruction is in compliance with the provisions of this article. For the purposes of this article only, the term "altered" or "reconstructed" shall not include normal maintenance; changing of surface sign space to a lesser or equal area; ornamental molding, frames, trellises, ornamental

features, or landscaping below the base line; or the addition, construction, installation, or changing of electrical wiring or electrical devices, backgrounds, letters, figures, characters or other embellishments. Nonconforming signs and sign structures shall be removed or made to conform within 90 days of the termination of the use to which they are accessory.

## Section 10.12    Appeals and Variances (currently part of Table 7.11.6)

**(A)**  Any person aggrieved by any decision, ruling, or order may make an appeal to the zoning board of appeals in accordance with *Section 13.06* of this ordinance. In addition to meeting the basic conditions of *Section 13.06(C)(2)(a)*, any variance from the requirements of this article shall also meet the following conditions that are applicable:

(1)  Permitted signage could not be easily seen by passing motorists due to the configuration of existing buildings, trees, or other obstructions that cannot be legally and/or practically removed.

(2)  Permitted signage could not be seen by passing motorists in sufficient time to permit safe deceleration and exit. In determining whether such circumstances exist, the zoning board of appeals shall consider the width of the road, the number of moving lanes, the volume of traffic, and speed limits.

(3)  Existing signs on nearby parcels would substantially reduce the visibility or advertising impact of a conforming sign on the subject parcel.

(4)  Construction of a conforming sign would require removal or severe alteration to natural features on the parcel such as but not limited to removal of trees, alteration of the natural topography, filling of wetlands, or obstruction of a natural drainage course.

(5)  Construction of a conforming sign would obstruct the vision of motorists or otherwise endanger the health or safety of passersby.

# Article 11   Nonconformities

## Section 11.01      Intent and Purpose (currently Section 7.5.1)

It is the intent of this ordinance to allow the continued use of a nonconforming structure and nonconforming uses and to specify those circumstances and conditions under which such nonconformities shall be permitted to continue.

## Section 11.02      Definition of "Effective Date" (NEW SECTION)

For the purposes of this article, the term "effective date" shall mean June 5, 1972 (the effective date of Peninsula Township Zoning Ordinance #2, Amendment #6).

## Section 11.03      Nonconforming Parcels (NEW SECTION)

**(A)** Notwithstanding limitations imposed by other provision of this ordinance, a principal building and customary accessory buildings may be erected on a parcel. This provision shall apply even though such parcel fails to meet the requirements for area or width or both that are generally applicable in the district, provided that yard setbacks and lot coverage and other requirements not involving area, width, or both of the parcel conform to the regulations for the district in which the parcel is located.

**(B)** The zoning board of appeals may authorize the use of a lot in the agricultural district of fewer than five acres where a farmhouse or tenant house existed as part of a farm operation and subsequently through consolidation of farms or other actions is no longer necessary as a farm-related residence, provided that the following standards are met:

(1) The lands immediately surrounding the residence are agricultural lands as shown on the agricultural preservation map adopted by the planning commission as an amendment to the township's master plan;

(2) The lands immediately surrounding the residence continue to be actively farmed along with the balance of the farm;

(3) The minimum lot size is not less than one acre with a lot width not less than 210 feet;

(4) The density on the remaining farmland is reduced by one dwelling unit through a recorded deed restriction; and

(5) It can be demonstrated that no farmland would be lost from production should the smaller lot be allowed.

## Section 11.04      Nonconforming Uses (currently part of Section 7.5.1 and Section 7.5.2)

At the discretion of the owner, the lawful use of any building, structure, land, or premises may be continued although the use does not conform to the provisions of this ordinance. However, the legal nonconforming use of any building or land shall not be extended, expanded, or moved.

Whenever the nonconforming use of any structure or land is changed in whole or in part to a conforming use, such use shall not thereafter be reverted to any nonconforming use. If the nonconforming use of any building, structure, or land is discontinued through vacancy, lack of operation, or otherwise for a continuous period of 12 months, then any future use of the building, structure, or land shall conform, in its entirety, to

**Article 11:** Nonconformities

the provisions of this ordinance. The zoning board of appeals may, upon application within six months of the termination of the 12-month period, permit the resumption of such nonconforming use.

# Section 11.05    Nonconforming Structures (currently Sections 7.5.3 – 7.5.6)

**(A)** **Reconstruction of Damaged Nonconforming Structures (currently Section 7.5.3).** Nothing in this ordinance shall prevent the reconstruction, repair, or restoration and the continued use of any nonconforming building or structure damaged by fire, collapse, explosion, acts of God, or acts of the public enemy subsequent to the effective date of this ordinance. The approval of the zoning administrator must be obtained through a determination that the structure to be reconstructed, repaired, or restored will be substantially the same as the previous nonconforming structure or building. The zoning administrator shall only approve reconstruction, repair, or restoration if the reconstruction, repair, or restoration shall not be detrimental to the health, safety, and welfare and that substantial justice is achieved.

**(B)** **Repair and Alteration of Nonconforming Structures (currently Section 7.5.4).** Nothing in this ordinance shall prevent the repair, alteration, reinforcement, improvement, or rehabilitation of a nonconforming building or structure or part thereof existing at the effective date of this ordinance that may be necessary to secure or ensure the continued advantageous use of the building or structure, provided the repair, alteration, reinforcement, improvement, or rehabilitation proposes no change in the use of the building or structure or any part that results in an expansion of any nonconformity.

**(C)** **Additions to Nonconforming Structures (currently Section 7.5.5).** The zoning administrator shall issue a land use permit for an addition to a lawful nonconforming structure provided all of the following are met:

   (1) The addition is not located in any required yard or ordinary high water mark setback; and

   (2) In addition to the above yard and ordinary high water mark setback requirements, all other applicable dimensional requirements on the subject parcel shall be satisfied (other than what is lawfully non-conforming).

**(D)** **Moving or Replacing Nonconforming Structures (currently Section 7.5.6).** If the moving or replacing of a nonconforming structure will result in the structure becoming conforming with all setback, coverage, area, and height standards of this ordinance, the zoning administrator may approve the moving or replacing of the structure. The township's zoning board of appeals may grant a variance for moving or replacing a nonconforming structure so that the continued intensity of conforming use of the lot is substantially the same as in the pre-existing structure, provided all of the requirements *Section 13.06(C)(2)* are met.

# Section 11.06    Zoning District Changes (currently Section 7.5.7)

Whenever the boundaries of a district shall be changed so as to transfer an area from one district to a district of another classification, the provisions of this section shall also apply to any existing uses or structures that become nonconforming as a result of boundary changes.

# Article 12   Administrative Organization

## Section 12.01    Zoning Administrator (currently Sections 4.1.1 and 4.1.2)

**(A)** **Description.** A zoning administrator shall be appointed by and on such terms as shall be determined by the township board, provided that the zoning administrator shall not be a member of the township board, the planning commission, or the zoning board of appeals. The zoning administrator, and his/her assistants or deputies, shall perform such duties as the township board may prescribe, in addition to any duties prescribed in this ordinance. The zoning administrator shall be capable of fulfilling the duties set forth in this ordinance. In case the zoning administrator has a conflict of interest in the administration or enforcement of this ordinance, the township board shall designate some other person to carry out the duties for which the zoning administrator has a conflict of interest. Compensation for the zoning administrator shall be established by the township board.

**(B)** **Duties.** It shall be the duty of the zoning administrator to receive applications for land use permits and issue or deny the same, to inspect buildings or structures, to determine compliance with the land use permits issued in compliance with this ordinance, and to be in charge of the enforcement of this ordinance. The zoning administrator and the township's ordinance enforcement officer, appointed by the township board pursuant to the ordinance, are hereby authorized to investigate ordinance violations, serve and issue notice of violations, serve and issue misdemeanor or civil infraction tickets as authorized under state las or township ordinance, and appear in court or other judicial proceedings to assist in the prosecution of zoning ordinance violations.

## Section 12.02    Township Board (NEW SECTION)

**(A)** **Adoption of Zoning Ordinance and Amendments.** In accordance with the intent and purposes of this ordinance, and pursuant to the authority conferred by the Michigan Zoning Enabling Act, PA 110 of 2006 as amended, the township board shall have the authority to adopt this ordinance as well as adopt amendments to this ordinance.

**(B)** **Deciding on Special Land Use Applications.** The township board shall review and decide on special land use applications pursuant to *Section 13.05*.

**(C)** **Approval of Planning Commission Members.** In accordance with the Michigan Planning Enabling Act, Michigan Public Act 33 of 2008 as amended, members of the planning commission shall be appointed by the supervisor with the approval of the township board.

**(D)** **Approval of Zoning Board of Appeals Members.** In accordance with the Michigan Zoning Enabling Act, Michigan Public Act 110 of 2006 as amended, members of the zoning board of appeals shall be appointed and approved by the township board.

**(E)** **Setting of Fees.** The township board shall have the authority to set all fees for permits, applications, and requests for action pursuant to the regulations set forth in this ordinance. In the absence of specific action taken by the township board to set a fee for a specific permit or application, the appropriate township administrative official shall assess the fee based on the estimated costs of processing and reviewing the permit or application.

**Article 12:** Administrative Organization

# Section 12.03    Planning Commission (NEW SECTION)

(A) **In General.** The planning commission is designated as the commission specified in the Michigan Planning Enabling Act, Public Act 33 of 2008 as amended, and shall perform the duties of such commission as provided in the statute and Peninsula Township Ordinance #42 as amended.

(B) **Zoning Commission.** The planning commission is hereby designated as the succeeding body of the zoning commission specified in the Michigan Zoning Enabling Act, Public Act 110 of 2006 as amended, and shall perform the duties of said commission as provided in the statute and Peninsula Township Ordinance #42 as amended.

(C) **Ordinance to Create Township Planning Commission (Peninsula Township Ordinance #42 as amended).** Peninsula Township Ordinance #42 as amended creates the Peninsula Township Planning Commission and includes provisions for membership, appointment, compensation, terms, removal, vacancy, organization, officers, committees, meetings, rules, records, powers, duties, and conflict of interest.

# Section 12.04    Zoning Board of Appeals (currently Sections 5.1, 5.2, part of 5.3, and 5.7)

(A) **Establishment.** There is hereby established a zoning board of appeals in accordance with Act 110 of the Public Acts of Michigan of 2006 as amended. The zoning board of appeals shall perform its duties and exercise its powers as provided by the act as amended and in such a way that the objectives of this ordinance may be equitably achieved; that there shall be provided a means for competent interpretation and controlled flexibility in the application of this ordinance; that the health, safety and welfare of the public be secured; and that substantial justice be secured.

(B) **Membership.** There shall be a zoning board of appeals that shall consist of five members and two alternate members appointed by the township board. The first member of the zoning board of appeals shall be a member of the planning commission. One member may be a member of the township board but shall not serve as chairperson of the zoning board of appeals. The remaining members of the zoning board of appeals shall be selected from the electors of the township residing outside of incorporated cities and villages. The members selected shall be representative of the population distribution and of the various interests present in the township. An employee or contractor of the township board shall not serve as a member of the zoning board of appeals.

(C) **Terms.** The term of each member and alternates shall be for three years, except that of the members first appointed, two shall serve for two years and the remaining members for three. The terms of members serving because of their membership in the planning commission or township board shall be limited to the time they are members of the planning commission or township board, respectively. A successor shall be appointed not more than one month after the term of the preceding member has expired. All vacancies for unexpired terms shall be filled for the remainder of the term.

(D) **Compensation.** The total amount allowed the members of the zoning board of appeals in any one 1 year as per diem or as expenses actually incurred in the discharge of their duties shall not exceed a reasonable sum, which sum shall be appropriated annually in advance by the township board.

(E) **Removal.** Members of the zoning board of appeals may be removed by the township board for misfeasance, malfeasance, or nonfeasance in office upon written charges and after public hearing.

(F) **Conflicts of Interest.** A member shall disqualify himself from a vote in which he has a conflict of interest. Failure of a member to disqualify himself from a vote in which he has a conflict of interest shall constitute misfeasance or malfeasance in office.

**(G)** **Voting.** The concurring vote of a majority of the members of the zoning board of appeals shall be necessary to reverse any order, requirement, decision, or determination of any administrative official, or to decide in favor of an applicant, any matter upon which they are required to pass under this ordinance.

**(H)** **Meetings and Powers.** Meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the board in its rules of procedure may specify. The chairman or in his or her absence the acting chairman may administer oaths and compel the attendance of witnesses. All meetings of the zoning board of appeals shall be open to the public. The board shall maintain a record of its proceedings and file them in the office of the township clerk as a public record. The board shall not conduct business unless a majority of the members of the board are present.

**(I)** **Duties, Rules, Hearing and Decision of Appeals, and Right to and Grounds of Appeal.** The zoning board of appeals shall have the following specified powers and duties and may fix rules and regulations to govern its procedures:

   (1) **Interpretation of Zoning Ordinance.** The zoning board of appeals shall act upon all questions as they may arise in the administration of this ordinance, including the interpretation of the zoning maps. See *Section 13.06(C)(3)*.

   (2) **Administrative Appeals.** The zoning board of appeals shall hear and decide appeals from and review any order, requirements, decision, or determination made by the administrative official charged with enforcement of this ordinance. It shall also hear and decide all matters referred to it or upon which it is required to pass under this ordinance. Such appeal may be taken by any person aggrieved or by any officer, department, board, or bureau of the township, county, or state. The grounds of every determination shall be stated. See *Section 13.06(C)(1)*.

   (3) **Variances.** The zoning board of appeals shall have the authority to grant nonuse variances relating to the construction, structural changes, or alteration of buildings or structures related to dimensional requirements of this ordinance or to any other nonuse-related standard in this ordinance. See *Section 13.06(C)(2)*.

   (4) **Classifying Uses Not Specifically Mentioned.** Pursuant to *Section 13.06(C)(4)*, the zoning board of appeals shall have the power to classify a use that is not specifically mentioned along with a comparable permitted, special, or prohibited use for the purpose of clarifying the use regulations in any district.

**(J)** **Limited Duties and Powers.** The zoning board of appeals shall not have the power to alter or change the zoning district classification of any property, grant variances from uses of land, or to make any change in the terms or intent of this ordinance but does have power to act on those matters stated in *Section 12.04(I)*. No appeal shall be taken to the zoning board of appeals from a decision of either the planning commission or the township board in connection with a special land use.

# Article 13   Administrative Procedures

## Section 13.01    Fees

The fees for all applications (permits, site plans, special land uses, variances, appeals, etc.) or other zoning-related services shall be established by the township board. If the township determines that the fees will not cover the township's cost to review an application or provide a zoning-related service, including the costs incurred by the township to engage the services of qualified professional planners, engineers, attorneys, or other professionals to review an application or provide a zoning-related service, the applicant shall deposit with the township treasurer such additional fees in an amount equal to the additional costs as estimated by the director of planning or the zoning administrator (see *Section 13.02*).

## Section 13.02    Escrow (currently Section 4.3)

If the director of planning or the zoning administrator or any township commission or board determines that the fees will not cover the costs of the application review, then the applicant will deposit with the township treasurer additional fees in an escrow account. The additional fees will be an amount equal to the costs as estimated by the director of planning or the zoning administrator. The additional fees may include the review of the application, zoning board of appeals review, services provided by qualified professional planners, engineers, attorneys, other professionals, or other township costs related to the project.

The additional fees will be held in escrow in the applicant's name and will be used solely to pay these additional costs. If the amount held in escrow becomes less than 20% of the initial escrow deposit and review of the application or decision on the appeal is not completed, then the director of planning or the zoning administrator may require the applicant to deposit additional fees into escrow in an amount equal to the costs as estimated to complete the review or decide the appeal.

Failure of the applicant to make any required escrow deposit under this ordinance shall be deemed to make the application incomplete or the appeal procedurally defective, thereby justifying the denial of the application or the dismissal of the appeal.

Any development or construction on a property with an existing escrow for services directly related to the oversight of the project that allows an escrow to become deficient in monies may be issued a cease and desist order until the escrow is replenished to an amount that is satisfactory to cover the cost associated with the expenditures paid by the township treasurer.

Any cost incurred by the township in addition to the amount held in escrow will be billed to the applicant and shall be paid by the applicant prior to the issuance of any permit or the release of a final decision on an appeal.

Any unexpended funds held in escrow will be returned to the applicant following final action on the application or the final decision on the appeal.

## Section 13.03    Permits

**(A)  Land Use Permits (currently Section 4.1.3).**

    **(1)  General.** Any individual, corporation, association, officer, department, board, or bureau, including federal, state, county, or township governmental entities, planning to erect, change, or move a structure or to establish a new use for any premises in any land use district, shall file an application in writing with the zoning administrator for a land use permit. The zoning administrator shall issue a land use permit if such planned building, structure, mobile home, or land use is in compliance with the provisions of this ordinance. The application shall be on

(2)   a form prescribed by the zoning administrator and approved by the township board. The applicant shall furnish permits or approvals from the Grand Traverse County Health Department, the Grand Traverse County Road Commission, the Michigan Department of Environmental Quality, and the Grand Traverse County Soil Erosion and Sedimentation Control Department, and any other agency that requires a permit, and plans that will meet the requirements of the zoning ordinance before the zoning administrator may issue a permit. Each land use permit shall be issued in duplicate and the copies shall be distributed as follows:  one to the applicant to be retained until final approval has been granted and one to be retained by the zoning administrator as a part of the permanent records of the township. The zoning administrator shall promptly inform the applicant of the decision concerning the land use permit.

(3)   **Evidence of Ownership.** All applications for permits under the provisions of this ordinance shall be accompanied with evidence of ownership of all property affected by the coverage of the permit or written, signed authorization from the property owner(s).

(4)   **Property Boundaries.** The zoning administrator may require property boundaries to be located and staked by a registered land surveyor. In the case of properties located along a shoreline, if there is any question of location of the ordinary high water mark, the zoning administrator shall require this level to be set and staked by a registered land surveyor.

(5)   **Voiding of Permit.** Any permit granted under this section shall become null and void after one year from the date of granting such permit unless the development proposed shall have passed its first building inspection. Before voidance is actually declared, the zoning administrator shall notify the applicant of such voiding action by sending a notice by mail to the applicant at the address indicated on the permit application.

(6)   **Inspection.** The development or usage proposed by a land use permit shall be subject to two inspections: the first prior to the issuance of a building permit, and the second when the building is completed. The zoning administrator may require additional inspections, such as an inspection of the excavated footings and foundations before concrete is poured. It shall be the duty of the permit holder to notify the zoning administrator regarding the time that construction will be ready for inspection. Failure of the permit holder to make proper requests for inspection shall automatically cancel the permit and require the issuance of a new permit before occupancy may be permitted.

**(B)   Fees (currently Section 4.1.4). See *Section 13.01*.**

**(C)   Completion (currently Section 6.2.6).** Any dwelling, accessory building or addition must be completed on the exterior surface with a suitable finishing material including painting or staining in the case of wood, within two years from date of issuance of the land permit and prior to its occupancy.

**(D)   Prior Building Permits (currently Section 7.1.1).** Any building permit issued prior to the effective date of this ordinance shall be valid, in accordance with its terms, even though not conforming to provisions of this ordinance, provided that construction is commenced within 12 months of the date of the permit issuance and that the entire building shall be completed according to the plans filed with the permit application within 18 months of the issuance of the building permit.

**(E)   Uses for Which a Land Use Permit Is Not Required.**

(1)   **Home Occupations (see *Section 6.14*).**

# Section 13.04     Site Plan Review

**(A)** **Uses Requiring Site Plan Review (NEW SECTION).** In the case of minor projects such as remodeling or re-occupancy, site plan review procedures may be modified at the discretion of the zoning administrator or planning director to provide an administrative review by township staff in lieu of a more formal review by the planning commission and township board. Administrative review procedures are not intended to modify any ordinance, regulation, or development standard. The type of review is based on the development activity as follows:

| | Development Activity | Site Plan Review | Administrative Review |
|---|---|---|---|
| (1) | **All uses except single-family and two-family residences in the R-1A, R-1B, R-1C, and R-1D zoning districts, and their customary permitted and accessory uses.** | ✓ | |
| (2) | **All uses except single-family and two-family residences in the A-1 zoning district, and their customary permitted and accessory uses and farm buildings and operations.** | ✓ | |
| (3) | **All uses in the C-1 zoning district.** | ✓ | |
| (4) | **Any use or development involving a special land use** | ✓ | |
| (5) | **Re-occupancy of a building, provided all of the following are true:**<br>• No variances to the ordinance are required;<br>• Such use is conducted within a completely enclosed building;<br>• Re occupancy does not create additional parking demands; and<br>• Re occupancy does not substantially alter the character of the site. | | ✓ |
| (6) | **Remodeling or construction of an addition to an existing building or use, provided all of the following are true:**<br>• No variances to the ordinance are required; and<br>• The proposed new construction would be interior only and would not increase the total square footage of the building. | | ✓ |
| (7) | **Co-location of wireless communication facilities (see** _Section 6.37_) | | ✓ |
| (8) | **Wireless communication facilities or replacement of an existing wireless communication support structure** _(see Section 6.37)_ | ✓ | |

**(B)** **Required Information (currently part of Section 6.9.4.1, Section 6.9.4.2, Section 7.14.4, Section 8.4.6, and Section 8.7.3(4) (b) and (c)).** The information in the following table shall be required for all applications for site plan review. The zoning administrator, planning director, planning commission, or township board reserves the right to waive requirements that, at their discretion, are not relevant to a particular site.

| Required Information | | |
|---|---|---|
| (1) | **Site Plan Drawing Information** | |
| | (a) | Copies of site plan drawing on 24-inch x 36-inch paper. |
| | (b) | Scale of no less than one inch to 100 feet. |
| | (c) | Map of the entire site and any future phases of development. |
| | (d) | Location map showing the site in context with the surrounding area. |

| Required Information | | |
|---|---|---|
| | **(e)** | Date of most recent revisions. |
| | **(f)** | North arrow. |
| | **(g)** | Contours at five-foot intervals where slope greater than 10%, or |
| | **(h)** | Contours at two-foot intervals where slope is 10% or less. |
| | **(i)** | Site plans shall be sealed by a registered architect, engineer or surveyor. |
| (2) | **Application Information** | |
| | **(a)** | Name of project or development. |
| | **(b)** | Name and contact information of property owner. |
| | **(c)** | Name and contact information of the applicant, including the applicant's interest in the development. |
| | **(d)** | Name and contact information of person preparing site plan. |
| | **(e)** | Project location including address and township and county names. |
| | **(f)** | Legal description of the property matching the survey. |
| | **(g)** | Copies of documents including covenants, by-laws, and master deeds. |
| (3) | **Planning and Site Improvement Information** | |
| | **(a)** | Description of existing land use and zoning of the site. |
| | **(b)** | Area and dimensions of site. |
| | **(c)** | Location, type, dimensions, and use of all existing and proposed structures. |
| | **(d)** | Lot lines and number of units. |
| | **(e)** | Elevation plans, floor plans, and building materials for all proposed structures. |
| | **(f)** | Existing land use, zoning, and property owners of adjacent lots. |
| | **(g)** | Description of intended land use. |
| | **(h)** | Description and location of any areas intended for public use. |
| | **(i)** | Right-of-way easements showing location, width, and purpose. |
| | **(j)** | Locations, descriptions, and cut sheets of all illuminating devices, fixtures, lamps, supports, and reflectors. |
| | **(k)** | A photometric plan superimposed on the site plan. |
| | **(l)** | Location, size, and surface materials for all paved areas on the site. |
| | **(m)** | Proposed interior vehicular and pedestrian circulation patterns. |
| | **(n)** | A statement of deed restrictions. |
| (4) | **Engineering Information** | |
| | **(a)** | Copies of engineering plans and specifications on 24-inch x 36-inch paper. |
| | **(b)** | Location of water and sewer lines and riser pipes. |
| | **(c)** | Plans/specifications of water supply, sewage disposal and refuse facilities. |
| | **(d)** | Locations and details of lighting, electric, and gas systems. |
| | **(e)** | Proposed and existing storm sewers, sanitary sewers, and water mains. |
| (5) | **Environmental Information** | |
| | **(a)** | Locations and information for all wetlands on the property. The township may require a formal determination by the Michigan Department of Environmental Quality. |
| | **(b)** | Locations and information of existing natural features and soil types. |
| | **(c)** | The location and types of all significant existing vegetation, water courses and bodies, floodplains, and water retention areas. |
| | **(d)** | Location of all drainage easements that comply with the requirements of the Peninsula Township Stormwater Control Ordinance. |
| | **(e)** | Details on solid waste removal including dumpster and screening methods. |
| | **(f)** | A landscape plan that meets the requirements of *Section 8.08*. |

| Required Information | |
|---|---|
| (6) | **Other Information** |
| **(a)** | In instances where a site plan involves proposed construction of a structure greater than 5,000 square feet in total floor area (excluding those structures used exclusively for agricultural purposes, or single-family residences), the applicant may be required to provide ground-level renderings and three-dimensional graphics with oblique angles that illustrate the proposed building on the site. Submitted material may utilize digital design programs acceptable to the township and shall provide sufficient detail to convey an understanding of proposed building design, building mass, scale, vehicular/pedestrian circulation, and relationships between the development of the site and surrounding property. |
| **(b)** | Any other information deemed necessary by the zoning administrator, planning commission, or township board. |

**(C)   Site Plan Review Procedures (currently part of Section 6.9.5.3).**

(1)   The planning commission shall review the site plan and the reports of the county road commission, the county drain commissioner/soil erosion officer, county health department, county planning commission, township engineer, planning director, and zoning administrator.

(2)   If following the review of the site plan prescribed above, the planning commission determines that the proposed site plan meets all requirements of this ordinance, the planning commission shall make a recommendation to the township board to approve the site plan. If the township board determines that the proposed site plan meets all requirements of this ordinance, the township board shall approve the site plan. The township board may apply conditions to ensure the requirements of this ordinance are met.

(3)   If the site plan does not meet all of the requirements of this ordinance, the planning commission shall make a recommendation to the township board to deny the site plan. If the township board determines that the proposed site plan does not meet all of the requirements of this ordinance, the township board shall deny the site plan. The planning commission and township board shall state their reason(s) for denial in their official minutes.

**(D)   Duration of Approval (currently Section 6.9.6.2).** Approval of the site plan by the zoning administrator or township board, as applicable in *Section 13.04(A)*, shall be for a period of one year from the date of its approval. Within the one-year approval period, construction shall commence and the applicant shall make progress toward completion in accordance with the approved schedule and permit. The zoning administrator or township board, as applicable in *Section 13.04(A)*, may extend the one year period if applied for and granted in writing but only concerning its own requirements.

**(E)   Performance Guarantees (NEW SECTION).** After approval of a site plan but before construction, a performance guarantee shall be posted in accordance with *Section 13.09*.

**(F)   Revocation (NEW SECTION).**

(1)   If substantial development and completion of the use and buildings does not proceed in conformance with the site plan approval, or if physical or operational changes violate the order, application, or data accompanying the application, the township shall have full authority to revoke the site plan approval.

(2)   The following are grounds for revocation of a site plan approval:

   **(a)**   The failure to comply with any condition of site plan approval.

**(b)** The intentional provision of misleading information by the applicant (the provision of information is considered "intentional" when the applicant is aware of the inaccuracies or could have discovered the inaccuracies with reasonable diligence).

(3) The zoning administrator or code enforcement officer shall investigate alleged violations and determine whether to determine whether the development is proceeding in conformance with the site plan approval.

(4) Upon discovery of an alleged violation, the zoning administrator or code enforcement officer may issue a stop work order.

(5) The zoning administrator or township board, as applicable in *Section 13.04(A)*, shall have the authority to revoke any site plan approval when, after reasonable warning, the operator of any use permitted under this section fails to comply with any of the site plan requirements stipulated.

(6) The zoning administrator or township board, as applicable in *Section 13.04(A)*, may require additional conditions and safeguards to prevent injury or damage to adjoining properties that may impair public health, welfare, or safety.

# Section 13.05   Special Land Use Review

**(A)** **Special Land Use Permit Review Procedures (currently part of 6.9.5.3, part of Section 6.9.5.4, and Section 8.1.2).** An application for a special use permit for any land or structure use permitted under this article shall be submitted and processed under the following procedures:

(1) **Submission of Application.** Any application shall be submitted through the director of planning on a special form for that purpose. Each application shall be accompanied by the payment of a fee as established by the township board to cover costs of processing the application. No part of any fee shall be refundable.

(2) **Data Required.** Every application shall be accompanied by the following information and data:

**(a)** The special form supplied by the township planning staff filled out in full by the applicant, including a statement of supporting evidence showing compliance with the requirements of *Section 13.05(A)(3)*.

**(b)** Site plan pursuant to *Section 13.04(B)*.

**(c)** Preliminary plans and specifications of the proposed development.

(3) **Planning Commission and Township Board Actions.**

**(a)** Upon planning staff's determination that all required data and information has been provided, the planning staff shall forward the application to the planning commission for introduction. Upon the planning commission's concurrence that the application materials are complete, a public hearing shall be scheduled.

**(b)** The planning commission shall hold a public hearing on the application pursuant to *Section 13.08*. After holding the public hearing, the planning commission may recommend approval, denial, or approval with conditions to the township board, subject to the appropriate findings of *Section 13.05(B)* and other applicable requirements of this zoning ordinance.

**(c)** Upon receipt of the recommendation from the planning commission, the township board may hold a public hearing pursuant to *Section 13.08*.

**(d)** Decision and Conditions.

**(i)** **Findings.** Any decisions by the township board shall be preceded by a finding and determination that the standards set forth in *Section 13.05(B)* have or have not been met.

**(ii)** **Applicable Conditions.** Reasonable conditions may be required pursuant to *Section 13.05(B)(2)* with the approval of a special use permit, to the extent authorized by law, for the purpose of:

a. Ensuring that public services and facilities affected by a proposed land use or activity will be capable of accommodating increased services and facility loads caused by the land use or activity;
b. Protecting the natural environment and conserving natural resources and energy;
c. Ensuring compatibility with adjacent uses of land; and
d. Promoting the use of land in a socially and economically desirable manner.

**(iii)** **Purpose of Conditions**. Conditions imposed shall be:

a. Designed to protect natural resources and the public health, safety, and welfare of individuals in the project, those immediately adjacent, and the community as a whole;
b. Reasonably related to the purpose affected by the special use permit;
c. Necessary to meet the intent and purpose of this ordinance, and
d. Related to the objective of ensuring compliance with the standards of this ordinance.

All conditions imposed shall be made a part of the record of the approved special use permit.

(4) **Phasing.**

**(a)** When a project is proposed for development in phases, the planning and designing shall be such that, upon completion, each phase shall be capable of standing on its own in terms of the presence of services, facilities, and open space and shall contain the necessary components to ensure protection of natural resources and the health, safety, and welfare of the users of the project and the residents of the surrounding area.

**(b)** The township board may approve the final project for one phase at a time.

(5) **Commencement and Completion.**

**(a)** **Special Use Permits Not Involving Construction.** For special use permits not involving construction, a land use permit for the use shall be acquired within one year following final approval of the special use permit or within one year of the schedule established for the project in the approved special use permit, whichever is later.

If a land use permit is not received within such time, any approval of the special use shall expire and be null and void. An extension for a specified period may be granted by the township board upon good cause shown if such request is made to the township board prior to the expiration of the initial period.

**(b)** **Special Use Permits Involving Construction.** For special use permits involving construction, such construction shall be commenced within one year following final approval of the special use permit or within one year of the schedule established for the project in the approved special use permit, whichever is later.

If such construction is not commenced within such time, any approval of the final plan for the project shall expire. An extension for a specified period may be granted by the

township board upon good cause shown if such request is made to the township board prior to the expiration of the initial period.

(c) **Phased Development.** Each phase of the project shall be commenced within one year of the schedule established for the project phase in the approved special use permit.

(d) **Occupancy Permit.** An occupancy permit shall be received within one year of approval of a land use permit for any construction authorized by the special use permit.

If an occupancy permit is not received within such time, any approval of the final plan for the project shall expire. An extension for a specified period may be granted by the township board upon good cause shown if such request is made to the township board prior to the expiration of the initial period.

(e) **Expiration.** If a final plan has expired, a new application shall be required and shall be reviewed in light of the then existing and applicable law and ordinance provisions.

(6) **Effect of Approval.** A special use permit, with all conditions imposed, if any, shall constitute the land use authorization for the property, and all improvement and use shall be in conformity with the permit or subsequent amendment.

(B) **Basis for Determination (currently Section 8.1.3).** Before making a recommendation or decision on a special use permit application, the planning commission and township board shall apply the following general standards as well as the specific standards outlined in each section of this article:

(1) **General Standards.** The planning commission and township board shall review each application for the purpose of determining that each proposed use meets the following standards, and, in addition, shall find adequate evidence that each use on the proposed location will:

(a) Be designed, constructed, operated, and maintained so as to be harmonious and compatible with the existing or intended character of the general vicinity and zoning districts and that such a use will not change the essential character of the area in which it is proposed;

(b) Not be hazardous or disturbing to existing or future uses in the same general vicinity and will be a substantial improvement to property in the immediate vicinity and to the community as a whole;

(c) Be served adequately by essential facilities and services such as highways, streets, police, fire protection, drainage structures, refuse disposal, water and sewage facilities, and schools;

(d) Not create excessive additional requirements at public cost for public facilities and services;

(e) Not involve uses, activities, processes, materials, and equipment or conditions of operation that will be detrimental to any persons, property, or the general welfare by fumes, glare, odors, or noise; and

(f) Not conflict with the policy goals and actions of the Peninsula Township Master Plan.

(2) **Conditions and Safeguards.** The township board may impose such additional conditions and safeguards deemed necessary for the general welfare, for the protection of individual property rights, and for ensuring that the intent and objectives of this ordinance will be observed. The breach of any condition, safeguard, or requirement shall automatically invalidate the permit granted.

(3) **Specific Requirements.** In reviewing the impact of the special land use and site plan, the planning commission and the township board shall consider the applicant's evidence that the following standards are met:

(a) That the applicant may legally apply for site plan review;

(b) That all required information has been provided in accordance with this ordinance;

(c) That the proposed development conforms to all regulations of the zoning district in which it is located;

(d) That the plan meets the requirements of Peninsula Township for fire and police protection, water supply, sewage disposal or treatment, storm drainage, and other public facilities and services;

(e) That the plan meets the standards of other governmental agencies, where applicable, and that the approval of these agencies has been obtained or is assured;

(f) That natural resources will be preserved to a maximum feasible extent and that areas to be left undisturbed during construction have been indicated on the site plan and at the site;

(g) That the proposed development property respects floodways and floodplains on or in the vicinity of the subject property;

(h) That the soil conditions are suitable for excavation and site preparation and that organic, wet, or other soils that are not suitable for development will either be undisturbed or modified in an acceptable manner;

(i) That the proposed development will not cause soil erosion or sedimentation problems;

(j) That the drainage plan for the proposed development is adequate to handle anticipated stormwater runoff and will not cause undue runoff onto neighboring property or overloading of water bodies in the area;

(k) That grading or filling will not destroy the character of the property or the surrounding area and will not adversely impact the adjacent or neighboring properties;

(l) That structures, landscaping, landfills, or other land uses will not disrupt air drainage systems necessary for agricultural uses;

(m) That phases of development are in a logical sequence so that any one phase will not depend upon a subsequent phase for adequate access, public utility service, drainage, or erosion control;

(n) That the plan provides for the proper expansion of existing facilities such as public streets, drainage systems, and water sewage facilities;

(o) That landscaping, fences, or walls may be required by the planning commission and township board in pursuance of the objectives of this ordinance;

(p) That parking layout will not adversely affect the flow of traffic within the site or to and from the adjacent streets;

(q) That vehicular and pedestrian traffic within the site and in relation to streets and sidewalks serving the site shall be safe and convenient.

**(r)** That outdoor storage of garbage and refuse is contained, screened from view, and located so as not to be a nuisance to the subject property or neighboring properties; and

**(s)** That the proposed site is in accord with the spirit and purpose of this ordinance and not inconsistent with, or contrary to, the objectives sought to be accomplished by this ordinance and the principles of sound planning.

**(C)   Revocation (currently part of Section 8.7.3).**

**(1)** If substantial development and completion of the special land use and buildings does not proceed in conformance with the special land use approval, or if physical or operational changes violate the order, application, or data accompanying the application, the township shall have full authority to revoke the special land use.

**(2)** The following are grounds for revocation of a special land use:

**(a)** The failure to comply with any condition of special land use approval; and

**(b)** The intentional provision of misleading information by the applicant (the provision of information is considered "intentional" when the applicant was aware of the inaccuracies or could have discovered the inaccuracies with reasonable diligence).

**(3)** The zoning administrator, code enforcement officer, or township engineer shall investigate alleged violations and determine whether the development is proceeding in conformance with the special land use approval.

**(4)** Upon discovery of an alleged violation, the zoning administrator or code enforcement officer may issue a stop work order.

**(5)** The township board shall have the authority to revoke any special land use permit when, after reasonable warning, the operator of any use permitted under this section fails to comply with any of the special use permit requirements stipulated. In addition, the township board may require additional conditions and safeguards to prevent injury or damage to adjoining properties that may impair public health, welfare or safety.

# Section 13.06   Variances and Appeals

**(A)   Right to and Grounds of Variance or Appeal (currently part of Section 5.3).** Appeals and variance requests may be taken to the zoning board of appeals pursuant to *Section 12.04(I)*.

**(B)   Appeal and Notice Requirements (currently Section 5.4, Section 5.5, and Section 5.6).**

**(1)   Time to Appeal and Transmission of Record.** Appeals of decisions of the zoning Administrator or other officer must be made within 30 days by the filing with the zoning administrator or other officer from whom the appeal is taken and with the zoning board of appeals of a notice of appeal specifying the grounds of the appeal. The officer from whom the appeal is taken shall promptly transmit to the zoning board of appeals all the papers constituting the record upon which the action appealed was taken.

**(2)   Stay of Proceedings Pending Appeal.** An appeal stays all proceedings. If the officer from whom the appeal is taken certifies to the zoning board of appeals after the notice of appeals has been filed that by reason of facts stated in the certificate that a stay would cause imminent peril to life or property, proceedings shall not be stayed except by a restraining order, which may be granted by the zoning board of appeals or by the circuit court on application, on notice to the officer from whom the appeal is taken, and on due cause shown.

(3) **Hearings and Notices; Right to be Heard; Disposition of Appeals; Decision Final.** The zoning board of appeals shall fix a reasonable time for the hearing of the appeal and give due notice thereof in accordance with *Section 13.08*. Upon the hearing, any party may appear in person or by agent or by attorney. The zoning board of appeals shall make its decisions in accordance with this *Section 13.06* so that the spirit of the ordinance shall be observed, public safety secured, and substantial justice done. The decision of the zoning board of appeals shall be final, and any person aggrieved by a decision of the zoning board of appeals shall have the right to appeal to the circuit court within 30 days after the zoning board of appeals issues its decision in writing signed by the chairperson.

**(C)** **Standards of Review for Appeals and Variances.**

(1) **Appeals (currently Section 5.7.1).** The zoning board of appeals shall hear and decide appeals where it is alleged by the appellant that there is an error in any order, requirement, permit, decision, or refusal made by the zoning administrator or by any other official in administering or enforcing any provisions of this ordinance.

(2) **Variances (currently Section 5.7.3(1) and (2) and Section 5.7.3(4)).** The zoning board of appeals shall have the power to authorize, upon an appeal, specific variances from such requirements as lot area and width regulations, building height and bulk regulations, yard and depth regulations, and off-street parking and loading space requirements, provided all of the basic conditions listed herein, as well as any other applicable conditions, can be satisfied.

    **(a)** Basic Conditions.

        **(i)** That the need for the variance is due to unique circumstances or physical conditions such as narrowness, shallowness, shape, water, or topography, of the property involved and that the practical difficulty is not due to the applicant's personal or economic hardship;

        **(ii)** That the need for the variance is not the result of actions of the property owner (self-created) or previous property owners;

        **(iii)** That strict compliance with area, setback, frontage, height, bulk, density, or other dimension requirement will unreasonably prevent the property owner from using the property for a permitted purpose or will render conformity with those regulations unnecessarily burdensome (The fact that a property owner may incur additional costs in complying with this ordinance does not automatically make compliance unnecessarily burdensome;)

        **(iv)** That the variance will do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners;

        **(v)** That the variance will not cause adverse impacts on surrounding property, property values, or the use and enjoyment of property in the neighborhood; and

        **(vi)** That the variance shall not permit the establishment within a district of any use that is not permitted by right or any use for which a conditional use or temporary use permit is required.

    **(b)** **Rules.** The following rules shall be applied in the granting of variances:

        **(i)** The zoning board of appeals may specify, in writing, such conditions regarding the character, location, and other features that will, in its judgment, secure the objectives and purposes of this ordinance. The breach of any such condition shall automatically invalidate the permit granted.

**(ii)** Each variance granted under the provisions of this ordinance shall become null and void unless the construction authorized by such variance or permit commences within 6 months of the granting of the variance and the occupancy of the land, premises, or buildings authorized by the variance takes place within one year of granting the variance.

**(iii)** No application for a variance which has been denied wholly or in part by the zoning board of appeals shall be resubmitted for a period of one year from the date of the last denial, except on grounds of newly discovered evidence or proof of changed conditions found upon inspection by the zoning board of appeals to be valid.

**(c)** **Additional conditions in determining variances for decks or decks with attached seating and/or attached storage within the Great Lakes ordinary high water mark setback.** In determining whether to grant a variance permitting construction of a deck or of a deck with attached seating and or attached storage within the ordinary high water mark setback, the zoning board of appeals shall, in addition to considering basic conditions established by this ordinance, consider the following conditions:

**(i)** The physical characteristics of the waterfront property that may require the construction of a deck to make use of that property;

**(ii)** The proximity of the proposed structure to the main traveled portion of the roadway so as to ensure the safety of users or property;

**(iii)** The extent to which the proposed structure will obstruct the public view of the shoreline;

**(iv)** The degree of exposure of the structure to damage by the elements; and

**(v)** The aesthetics of the structure as viewed from both the land and the water.

**(d)** **Prohibited Variances (NEW).** No appeal shall be taken to the zoning board of appeals from a decision of the planning commission or the township board in connection with a special land use. Also, the zoning board of appeals shall not grant variances from uses of land.

(3) **Interpretations (currently Section 5.7.2). The zoning board of appeals shall have the power to:**

**(a)** Interpret, upon request, the provisions of this ordinance in such a way as to carry out the intent and purpose of this ordinance; and

**(b)** Determine the precise location of the boundary lines between zoning districts using guidance provided in *Section 3.03*.

(4) **Classifying Uses Not Specifically Mentioned (currently 6.1.4(2)).** The zoning board of appeals shall have the power to classify a use that is not specifically mentioned along with a comparable permitted, special, or prohibited use for the purpose of clarifying the use regulations in any district.

**(D)** **Attachment of Conditions (currently Section 5.7.3(3)(a)).** The zoning board of appeals may specify, in writing, such conditions regarding the character, location, and other features that will, in its judgment, secure the objectives and purposes of this ordinance. The breach of any such condition shall automatically invalidate the permit granted.

**(E)** **Approval Period (currently Section 5.7.3(3)(b)).** A variance granted under the provisions of this ordinance shall become null and void unless: the construction authorized by such variance or

**(F)**   permit has been commenced within 6 months after the granting of the variance and the occupancy of land, premises, or buildings authorized by the variance has taken place within one year of granting the variance.

**(G)**   **Re-Application (currently Section 5.7.3(3)(c)).** No application for a variance that has been denied wholly or in part by the zoning board of appeals shall be resubmitted for a period of one year from the date of the last denial except on the grounds of newly discovered evidence or proof of changed conditions found upon inspection by the zoning board of appeals to be valid.

**(H)**   **Performance Guarantees (currently Section 5.9).** In authorizing any variance, or in granting any other approvals, the zoning board of appeals may require that a performance guarantee pursuant to *Section 13.09* be furnished to ensure compliance with the requirements, specifications, and conditions imposed with the grant of variance or other approval and to ensure the discontinuance of a structure or activity by a stipulated time.

# Section 13.07     Amendments (currently Article 9)

**(A)**   **Initiation of Amendments (NEW SECTION).** The township board may amend, supplement, or change the regulations or the district boundaries of this ordinance pursuant to the authority and according to the procedure set forth in Act 110 of the Public Acts of 2006 as amended. Text amendments may be proposed by the township board, planning commission, or any interested person or organization. Changes in zoning district boundaries may be proposed by the township board, planning commission, any person having a freehold interest in the premises concerned, or by the designated agent of a person having a freehold interest in the property.

**(B)**   **Application for Amendment (NEW SECTION).** An application for an amendment to the text of this ordinance or an amendment to change the zoning classification of a particular property shall be commenced by filing an application with the planning director on the forms provided by the township and accompanied by the fees specified. The application shall describe the proposed amendment and shall be signed by the applicant. Applications for rezoning of a specific site shall be accompanied by a plot plan or survey that specifies the boundaries and legal description of the site. The planning director, planning commission, and township board may request additional information with the application.

**(C)**   **Amendment Review Procedures (NEW SECTION).** The amendment, be it a text or a map amendment, and application materials shall be prepared in accordance with the provisions of this section and shall be reviewed in accordance with the following procedure (amendments or application materials that do not meet the stipulated requirements shall be considered incomplete and shall not be eligible for consideration by the planning commission):

**(1)**   **Public Hearing.** A public hearing shall be held for all proposed amendments in accordance with the procedures set forth in the Michigan Zoning Enabling Act, PA 110 of 2006 as amended and summarized in *Section 13.08*.

**(2)**   **Planning Commission Consideration of the Proposed Amendment.** The planning commission shall review the proposed amendment, together with any reports and recommendations from staff, consultants, other reviewing agencies, and any public comments. The planning commission shall identify and evaluate all factors relevant to the petition, including the appropriate criteria listed in this section, and shall report its findings and recommendation to the township board.

**(3)**   **Township Board Action on the Proposed Amendment.** Upon receipt of the report and recommendation from the planning commission, the township board may approve or deny the proposed amendment. If determined to be necessary, the township board may refer the amendment back to the planning commission for further consideration. In the case of an amendment to the official zoning map, the township board shall approve or deny the amendment based upon its consideration of the criteria contained in this section.

**(D)** **Standards of Review for Amendments (NEW SECTION).** In considering any petition for an amendment to the text of this ordinance or to the zoning map, the planning commission and township board shall consider the following criteria that apply to the application in making findings, recommendations, and a decision. The planning commission and township board may also take into account other factors or considerations that are applicable to the application but are not listed below.

(1) Consistency with the goals, policies and objectives of the township's master plan and any sub-area plans. If conditions have changed since the master plan was adopted, consistency with recent development trends in the area shall be considered.

(2) Consistency with the basic intent and purpose of this zoning ordinance.

(3) The capability of the road system to safely and efficiently accommodate the expected traffic generated by uses permitted in the requested zoning district.

(4) The capacity of the township's utilities and services sufficient to accommodate the uses permitted in the requested district without compromising the health, safety and welfare of the township.

(5) That conditions have changed since the zoning ordinance was adopted or there was an error in the zoning ordinance that justifies the amendment.

(6) That the amendment will not be expected to result in exclusionary zoning.

(7) If a rezoning is requested, compatibility of the site's physical, geological, hydrological, and other environmental features with the uses permitted in the proposed zoning district.

(8) If a rezoning is requested, compatibility of all the potential uses allowed in the proposed zoning district with surrounding uses and zoning in terms of land suitability, impacts on the environment, density, nature of use, traffic impacts, aesthetics, infrastructure, and potential influence on property values.

(9) If a rezoning is requested, the boundaries of the requested rezoning district will be reasonable in relationship to surrounding zoning districts, and construction on the site will be able to meet the dimensional regulations for the requested zoning district.

(10) If a rezoning is requested, the requested zoning district is considered to be more appropriate from the township's perspective than another zoning district.

(11) If a rezoning is requested to allow for a specific use, rezoning the land is considered to be more appropriate than amending the list of permitted or special land uses in the current zoning district to allow the use.

(12) If a rezoning is requested, the requested rezoning will not create an isolated or incompatible zone in the neighborhood.

**(E)** **Notice of Adoption of Amendments (NEW SECTION).** Following adoption of an amendment by the township board, one notice of adoption shall be filed with the township clerk and one notice of adoption shall be published in a newspaper of general circulation in the township within 15 days after adoption in accordance with the Michigan Zoning Enabling Act, Public Act 110 of 2006 as amended. A record of all amendments shall be maintained by the township clerk. A zoning map shall be maintained by the township clerk that identifies all map amendments.

**(F)** **Referendum (NEW SECTION).** Within 30 days following the passage of the zoning ordinance, a petition signed by a number of registered electors may be filed with the township clerk requesting

**(G)** submission of this ordinance or part of this ordinance to the electors for their approval in accordance with Section 402 of the Michigan Zoning Enabling Act, PA 110 of 2006 as amended.

**(H)** **Rezoning (Zoning Map Amendment) with Conditions  Prohibited.** Rezoning with conditions, as authorized by Section 405 of the Michigan Zoning Enabling Act, shall be prohibited in the township. Any application for a rezoning amendment to the official zoning map that includes proposed conditions or voluntary use or development limitations shall be returned to the applicant without township review or consideration.


# Section 13.08   Public Hearing Procedures (currently Sections 7.12.1(8)(a) and 8.1.2(3))

**(A)** **Public Hearings (NEW SECTION).** The body charged with conducting a public hearing required by this ordinance shall, upon receipt of a completed application, select a reasonable time and place for such hearing. Such hearings shall be subject to the procedures set forth in the Michigan Zoning Enabling Act, Public Act 110 of 2006 as amended. The public hearing procedures of P.A. 110 in effect at the date of adoption are summarized below. Any further amendments to P.A. 110 that alter the public hearing procedure requirements following the date of adoption of this zoning ordinance will supersede the following procedures.

**(B)** **General Public Hearing Procedures (NEW SECTION).** The following procedures, which are described in *Section 13.08(C)* below, are applicable to all public hearings except zoning ordinance text and map amendments:

(1)   **Publication in a Newspaper of General Circulation.** Notice of the request shall be published in a newspaper of general circulation not less than 15 days before the date the application will be considered for approval.

(2)   **Personal and Mailed Notice.**

**(a)**   Notice shall be sent by mail or personal delivery to the owners of property for which approval is being considered.

**(b)**   Notice shall be sent to all persons to whom real property is assessed within 300 feet of the property, regardless of municipal jurisdiction.

**(c)**   Notice shall be given to the occupants of all structures within 300 feet of the property regardless of municipal jurisdiction. Notification need not be given to more than one occupant of a structure except that if a structure contains more than one dwelling unit or spatial area leased by different persons, one occupant of each unit or spatial area shall be given notice. If a single structure contains more than four dwelling units or other distinct spatial areas owned or leased by different persons, notice may be given to the manager or owner of the structure, who shall be requested to post the notice at the primary entrance(s) to the structure.

**(d)**   All notices must be given not less than 15 days before the date of the public hearing. Notice shall be deemed given when personally delivered or when deposited during normal business hours for delivery with the U.S. Postal Service or other public or private delivery service. If the name of the occupant is not known, the term "occupant" may be used for the intended recipient of the notice.

**(e)**   The township shall prepare a list of property owners and occupants to whom notice was mailed.

(3)   **Content.** Any notice published in a newspaper or delivered by mail shall:

**(a)** Describe the nature of the request.

**(b)** Indicate the property that is the subject of the request.

**(c)** Include a listing of all existing street addresses within the property. If no such addresses exist, other means of identifying the property may be used.

**(d)** Detail when and where the public hearing will occur.

**(e)** Detail when and where written comments may be submitted concerning the request.

**(C)** **Zoning Ordinance Amendment Public Hearing Procedures (NEW SECTION).** Public hearings for zoning ordinance amendments, including both text and map amendments, shall be noticed as follows:

(1) **Map Amendments Affecting 10 or Fewer Adjacent Parcels.** If the proposed map or text amendment will impact 10 or fewer adjacent parcels, notice shall be given as specified in *Section 13.08(B)*.

(2) **Text Amendments, or Map Amendments Affecting 11 or More Adjacent Parcels.** If a text amendment is proposed or map amendment is proposed that will impact 11 or more adjacent parcels, notice shall be given as specified in *Section 13.08(B)* with the exception that *Section 13.08(B)(2)* and *Section 13.08(B)(3)(c)* do not apply.

(3) **Notice to Other Entities.** Notice of the time and place of the public hearing shall also be given by mail to any of the following entities that have registered their name with the township clerk for the purposes of receiving public notice: any electric, gas, or pipeline public utility company; each telecommunication service provider; each railroad operating within the district or zone affected; and the airport manager of each airport.

(4) **Additional Information Required in Notice.** Any notice required under this section shall include the places and times at which the proposed text or map amendment may be examined.

# Section 13.09   Performance Guarantees (currently Sections 5.9, 6.9.6.3, and 7.10.12)

**(A)** **Performance Guarantee Authorized.** In authorizing any permit, site plan, special use permit, or variance, the township may require that a performance guarantee be furnished to ensure compliance with the requirements or conditions imposed by approval.

**(B)** **Development Agreement for Subdivision, Condominium, PUD, or Other Plan Approval**.

(1) If the township board approves a condominium, subdivision, PUD plan, or other plan deemed necessary by the township to have a development agreement, the township board shall instruct the township attorney to prepare a development agreement setting forth the conditions upon which such approval is based. The development agreement, after approval by the township board, shall be entered into between the township and petitioner prior to the issuance of a land use permit for any construction in accordance with the approved plan. All reasonable costs, as established by the township board, related to the preparation of said development agreement, shall be paid by the petitioner to the township treasurer prior to issuance of any land use permits.

(2) As a condition of the approval, the petitioner shall furnish a cash bond or irrevocable bank letter of credit from a bank chartered in the State of Michigan in the amount of the cost plus an additional 10% of the cost of the proposed improvements to common land, as estimated

by the township board, guaranteeing the completion of such improvement within a time to be set by the township board.

**(C)    Guarantee of Completion of Required Improvements.** The township board shall require all improvements and facilities to be completed before it approves the final plat or accept the project or phase as complete.

In lieu of the actual installation of required public improvements or soil erosion measures not covered by Part 91 of Public Act 451 of 1994 as amended, the township board shall require the applicant to provide a financial guarantee of performance in one or a combination of the following arrangements for those requirements that are over and beyond the requirements of the Grand Traverse County Road Commission, Grand Traverse County Drain Commissioner, and of any other agency responsible for the administration, operation, or maintenance of the applicable public improvement. The township board may waive financial guarantees of performance under this ordinance for road lights or street trees. Unless these improvements are otherwise specified, completion shall be required prior to the issuance of occupancy permits.

(1)    **Performance or Surety Bond.**

   (a)    **Accrual.** The bond shall accrue to the township, covering construction, operation, and maintenance of the specific improvements.

   (b)    **Amount.** The bond shall be in an amount equal to the total estimated cost for completing construction of the specific improvements, including contingencies, as estimated by the township board.

   (c)    **Term Length.** The term length in which the bond is in force shall be for a period to be specified by the township board for the specific improvements.

   (d)    **Bonding or Surety Company.** The bond shall be with a surety company acceptable to the township board authorized to do business in the State of Michigan.

   (e)    **Escrow Agreement**. The escrow agreement shall be drafted at the expense of the developer and approved by the township attorney.

(2)    **Cash Deposit, Certified Check, Negotiable Bond, or Irrevocable Bank Letter of Credit.**

   (a)    **Treasurer, Escrow Agent or Trust Company.** A cash deposit, certified check, negotiable bond, irrevocable bank letter of credit, or such surety acceptable by the township board shall accrue to the township. These deposits shall be made with the township treasurer or deposited with a responsible escrow agent or trust company subject to the approval of the township board.

   (b)    **Dollar Value.** The dollar value of the cash deposit, certified check, negotiable bond, or an irrevocable bank letter of credit shall be equal to the total estimated cost of construction of the specific improvements, including contingencies, as estimated by the township engineer and accepted by the township board.

   (c)    **Escrow Time.** The escrow time for the cash deposit, certified check, negotiable bond, or irrevocable bank letter of credit, shall be for a period to be specified by the township board.

   (d)    **Progressive Payment.** An agreement between the township and the developer may provide for progressive payment out of the cash deposit or reduction of the certified check, negotiable bond, or irrevocable bank letter of credit to the extent of the cost of the completed portion(s) of the improvement and acceptance of the completed portion(s) of the improvements by the township engineer and the planning director.

(3) **Condition of Township Approval of Final Road Project, Financial Guarantees.** With respect to financial guarantees, the approval of all final road projects shall be conditioned on the accomplishment of one of the following:

    **(a)** The construction of improvements required by this ordinance shall have been completed by the applicant and approved by the township board.

    **(b)** Surety acceptable to the township board shall have been filed in the form of a cash deposit, certified check, negotiable bond, irrevocable bank letter of credit, or surety bond.

(4) **Occupancy Prior to Completion of Improvements.** The zoning administrator may allow temporary occupancy of the development before all improvements required by this ordinance are installed provided that cash, a certified check, or an irrevocable bank letter of credit is submitted sufficient in amount and type to provide for the installation of improvements before the expiration of the temporary occupancy permit without expense to the township. The expiration date of a temporary occupancy permit shall be determined by the planning director upon issuance of the permit. The director of planning may deny a temporary occupancy permit if the improvements essential for occupancy have not been completed.

(5) **Inspection of Improvements under Construction.** Before approving a final project, an agreement between the applicant and the township board shall be made to provide for the township engineer and planning director to check and/or inspect the construction of improvements and conformity to plans.

(6) **Penalty in Case of Failure to Complete the Construction of an Improvement.** In the event the applicant shall, in any case, fail to complete the required improvements within the period of time as required by the conditions of the guarantee for the completion of improvements, it shall be the responsibility of the township board to proceed to have such work completed. In order to accomplish this, the township board shall reimburse itself for the cost and expense thereof by appropriating the cash deposit, certified check, irrevocable bank letter of credit, or negotiable bond that the applicant might have deposited in lieu of a surety bond or may take such steps as may be necessary to require performance by the bonding or surety company as included in a written agreement between the township board and the applicant.

# Section 13.10   Enforcement

**(A) Violations and Penalties (currently Sections 4.2.1 and 11.1).** Any person, firm, association, corporation, company, or other entity that fails to comply with any Peninsula Township ordinances, Michigan law, or any regulatory measures or conditions imposed by the planning commission, zoning board of appeals, or township board shall be found in violation. If such violation has not abated, ceased to exist, or otherwise been remedied within seven days after written notice of the violation has been sent, the violator will be deemed to be responsible for a municipal infraction as defined by Michigan statute. This infraction shall be punishable by a civil fine in an amount to be determined for each violation. The amount will be determined by the township violation fee schedule or in an amount determined by the court, along with all expenses (direct and indirect) incurred by the township. Each day that a violation continues to exist shall constitute a separate violation of this ordinance. A violator of this ordinance shall also be subject to such additional sanctions and judicial orders as authorized under Michigan law. Provisions of this ordinance may also be enforced by suit for injunctive relief.

**(B) Nuisance Per Se (currently Section 11.2).** Uses of land, dwellings, buildings, or structures, including tents and trailer coaches, used, erected, altered, razed, or converted in violation of any provision of this ordinance or the regulatory measures or conditions of the township board, planning

commission, or zoning board of appeals adopted pursuant hereto, are hereby declared to be nuisances per se.