UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC., a Michigan
Nonprofit Corporation, BOWERS HARBOR
VINEYARD & WINERY, INC., a Michigan          Honorable:
Corporation, BRYS WINERY, LC, a Michigan
Corporation, CHATEAU GRAND TRAVERSE,         Case No:
LTD, a Michigan Corporation, CHATEAU
OPERATIONS, LTD, a Michigan Corporation,     ORAL ARGUMENT REQUESTED
GRAPE HARBOR, INC. a Michigan Corporation,
MONTAGUE DEVELOPMENT, LLC, a
Michigan limited liability company, OV THE
FARM, LLC a Michigan limited liability
company, TABONE VINEYARDS, LLC. a
Michigan Limited Liability Company, TWO
LADS, LLC, a Michigan limited liability
company, VILLA MARI LLC, a Michigan
Limited Liability Company, WINERY AT
BLACK STAR FARMS, L.L.C., a Michigan
Limited Liability Company,

          Plaintiffs,

v

PENINSULA TOWNSHIP, Michigan Municipal
Corporation,
          Defendants.

---

MILLER, CANFIELD, PADDOCK
AND STONE, PLC
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI  49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com

---

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUCTION

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 8

II.     BACKGROUND FACTS.......................................................................................... 8

        A.      Peninsula Township's Winery Ordinances Impose Arbitrary Conditions............. 8

                1.      Section 6.2.7(1) Use by Right – Farm Processing Facility........................ 9

                2.      Section 8.7.3(1) Winery-Chateau ............................................................. 10

                3.      Section 8.7.3(12) Remote Winery Tasting Room..................................... 13

        B.      The Winery Ordinances Prevent the Wineries From Hosting Events and
                Compel the Wineries to Purchase Produce from Peninsula Township................ 14

        C.      Peninsula Township's Attorney Concluded These Ordinances are
                Unconstitutional............................................................................................... 14

III.    ARGUMENT......................................................................................................... 15

        A.      The Standard for Preliminary Injunctive Relief.................................................. 15

        B.      Plaintiffs are Likely to Succeed on the Merits of Their Claims .......................... 17

                1.      The Winery Ordinances Violate the First and Fourteenth
                        Amendment Protections of Freedom of Speech, Peaceable
                        Assembly, Expressive Association, and Free Exercise of Religion. ....... 18

                        a.      Peninsula Township's Ordinances are Not Content- or
                                Viewpoint-Neutral. ...................................................................... 18

                        b.      Peninsula Township's Requirements for Conducting
                                "Guest Activities" are Unconstitutional Prior Restraint's on
                                Speech Activities. ........................................................................ 20

                        c.      Peninsula Township's Ordinances Violate the Wineries'
                                First Amendment Right to Free Association ................................ 22

                        d.      Peninsula Township's Ordinances Act as a Prior Restraint
                                on the Free Exercise of Religion................................................... 24

                        e.      Peninsula Township's Ordinances Fail Strict Scrutiny
                                Analysis........................................................................................ 26

                                (1)     Peninsula Township Provides no Compelling
                                        Interest................................................................................. 26

                                (2)     First Amendment Restrictions Are Not Narrowly
                                        Tailored to Achieve the Township's Valid but
                                        Uncompelling Interests. ...................................................... 27

## TABLE OF CONTENTS
(continued)

**Page**

f.      Even if this Court Determines that Peninsula Township's Winery Ordinances are Content-Neutral, the Winery Ordinances are Still Unconstitutionally Overbroad and Fails Intermediate Scrutiny. ......................................................... 28

g.      Peninsula Township's Unconstitutionally Vague Definition of "Guest Activity" is a Violation of Due Process. ..................... 29

C.    An Injunction is Necessary to Prevent Immediate and Irreparable Harm to the Wineries. ................................................................................................. 38

D.    The Requested Injunctive Relief Would Not Unreasonably Harm Peninsula Township and is in the Public Interest. ............................................. 39

IV.    CONCLUSION.................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. United States*,
    509 U.S. 544 (1993)..................................................................................................18, 19

*Ashcroft v. American Civil Liberties Union*,
    542 U.S. 656 (2004)..........................................................................................................25

*Basicomputer Corp. v. Scott*,
    973 F.2d 507 (6th Cir. 1992) ..........................................................................................36

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000)..............................................................................................16, 20, 24

*Brandeis Machinery & Supply Corp. and State Equipment Co., v. Barber-Geene
    Co.*,
    503 F.2d 503 (6th Cir. 1974) ..........................................................................................15

*Burson v. Freeman*,
    504 U.S. 191 (1992)..........................................................................................................25

*C&A Carbone, Inc. v. Clarkstown*,
    511 U.S. 383 (1994)..........................................................................................................29

*CBS Inc. v. Young*,
    522 F.2d 234 (6th Cir. 1975) ..........................................................................................24

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)..........................................................................................................17

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994)............................................................................................................24

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*,
    541 U.S. 774 (2004)..........................................................................................................19

*Coalition to Defend Affirmative Action v. Granholm*,
    473 F.3d 237 (6th Cir. 2006) ..........................................................................................38

*Connection Distri. Co. v. Reno*,
    154 F.3d 281 (6th Cir. 1998) ....................................................................................36, 37

*Connection Distrib. Co. v. Holder*,
    557 F.3d 321 (6th Cir. 2009) ....................................................................................26, 37

*In re DeLorean Motor Co.*,
　755 F.2d 1223 (6th Cir. 1985) ........................................................................................14

*Dunn v. Blumstein*,
　405 U.S. 330 (1972)........................................................................................................24

*Epona v. Cty. of Ventura*,
　876 F.3d 1214 (9th Cir. 2017) ...................................................................................22, 23

*FW/PBS, Inc. v. City of Dallas*,
　493 U.S. 215 (1990)........................................................................................................19

*Gordon v. Holder*,
　721 F.3d 638 (D.C. Cir. 2013) ........................................................................................38

*Grayned v. City of Rockford*,
　408 U.S. 104 (1972)........................................................................................................28

*Greatness v. F.E.C.*,
　831 F.3d 500 (D.C. Cir. 2013)........................................................................................38

*Haig v. Agee*,
　453 U.S. 280 (1981)........................................................................................................24

*Jones v. Caruso*,
　569 F.3d 258 (6th Cir. 2009) ..........................................................................................14

*League of Women Voters v. Newby*,
　838 F.3d 1 (D.C. Cir. 2016)............................................................................................38

*Libertarian Party of Ohio v. Husted*,
　751 F.3d 403, 412 (6th Cir. 2014) ..............................................................................37, 38

*Liberty Coins, LLC v. Goodman*,
　748 F.3d 682 (6th Cir. 2014), cert. denied, 135 S.Ct. 950 (2015) ..........................................14

*Linmark Assocs., Inc. v. Willingboro*,
　431 U.S. 85 (1977)..........................................................................................................24

*Maine v. Taylor*,
　477 U.S. 131 (1986)........................................................................................................29

*Miller v. City of Cincinnati*,
　622 F.3d 524 (6th Cir. 2010) .......................................................................................20, 28

*N.Y. Times v. United States*,
　403 U.S. 713 (1971) (Black, J., concurring).........................................................................36

*NAACP v. Button*,
    371 U.S. 415 (1963)........................................................................................................27

*Newsom v. Norris*,
    888 F.2d 371 (6th Cir. 1989) ........................................................................................36

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................................14, 37

*Noey v. Saginaw*,
    271 Mich. 595 (1935) ........................................................................................32, 33, 34

*Obama for America v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ........................................................................................16

*Oschin v. Township of Redford*,
    315 Mich. 359 (1946) ...................................................................................................31

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*,
    52 F.3d 1373 (6th Cir. 1995) ........................................................................................37

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*,
    267 F.3d 503 (6th Cir. 2001) ........................................................................................19

*Police Dep't of Chicago v. Mosley*,
    408 U.S. 92 (1972)........................................................................................................16

*R.A.V. v. City of St. Paul, Minn.*,
    505 U.S. 377 (1992)......................................................................................................16

*R.S.W.W., Inc. v. City of Keego Harbor*,
    397 F.3d 427 (6th Cir. 2005.) ............................................................................32, 33, 34, 35

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)................................................................................................16, 17

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)..........................................................................................16, 20, 21

*Roth v. Bank of Commonwealth*,
    583 F.2d 527 (6th Cir. 1978) ........................................................................................15

*Russell v Lundergan-Grimes*,
    784 F.3d 1037 (6th Cir. 2015) ......................................................................................24

*Sable Commc'ns of California, Inc. v. F.C.C.*,
    492 U.S. 115 (1989)......................................................................................................24

*Sherman Bowling Center v City of Roosevelt Park*,
    154 Mich. App. 576 (1986)..................................................................................33, 34

*Skilling v. United States*,
    561 U.S. 358 (2010)...............................................................................................27

*Smith v. California*,
    361 U.S. 147 (1959)...............................................................................................27

*Ter Beek v. City of Wyoming*,
    297 Mich. App 446 (2012).....................................................................................31

*Ter Beek v. City of Wyoming* (*Ter Beek II*),
    495 Mich. 1 (2014) ...............................................................................................32

*Thompson v. Western States Medical Center*,
    535 U.S. 357 (2002)...............................................................................................26

*Unibar Maintenance Servs. Inc. v. Saigh*,
    283 Mich. App. 609 (2009)....................................................................................36

*United Food Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l*
    *Transit Auth.*,
    163 F.3d 341 (6th Cir. 1988) ...................................................................13, 19, 27

*United States v. Nat'l Dairy Prod. Corp.*,
    372 U.S. 29 (1963).................................................................................................28

*United States v. Playboy Entm't Group, Inc.*,
    529 U.S. 803 (2000)..........................................................................................17, 25

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)...............................................................................................26

*Wilson v. Williams*,
    961 F.3d 829 (6th Cir. 2020) .................................................................................13

**Statutes**

MCL 436.1403..................................................................................................................32

MCL 436.1536(7)(h).........................................................................................................34

MCL 436.1547.............................................................................................................11, 35

MCL 436.1916(11) .....................................................................................................11, 35

MCL 436.2113..................................................................................................................10

Peninsula Township Ordinance Section 6.2.7 ................................................................7

Peninsula Township Ordinance Section 8.7.2 ......................................................28, 29

Peninsula Township Ordinance Section 8.7.3 ...................................................... *passim*

Peninsula Townships Ordinance Section 6.7.2................................................... *passim*

**Other Authorities**

27 C.F.R. 4.25 ..............................................................................................................10

First Amendment ................................................................................................ *passim*

Fourteenth Amendment ................................................................................................16

U.S. Const. art I, §8, cl. 3.............................................................................................29

# I.
# INTRODUCTION

Defendant Peninsula Township admitted more than a year ago that its Winery Ordinances "should be revised as it is, under the First Amendment standards, an invalid suppression of the Wineries' First Amendment rights", "violate[] the Commerce Clause", and are preempted by the Michigan Liquor Control.  Yet, Peninsula Township continues to have the illegal ordinances in effect which continue to cause harm to the Plaintiffs.  Plaintiffs have attempted for over a year to work with Peninsula Township and have been promised new ordinances which do not infringe on their rights.  On September 21, 2020, Peninsula Township released an updated draft of its ordinances which contains all of the ordinances which Peninsula Township admits are illegal. Thus, Plaintiffs are left with no choice but to seek an injunction to prevent the continued enforcement of the illegal Winery Ordinances.

# II.
# BACKGROUND FACTS

## A.    Peninsula Township's Winery Ordinances Impose Arbitrary Conditions.

Plaintiff Wineries of Old Mission Peninsula (WOMP) Assoc. ("WOMP") is a Michigan non-profit corporation of member wineries along with fellow Plaintiffs Bonobo Winery, Bowers Harbor Vineyard, Chateau Grand Traverse, Chateau Chantal, Peninsula Cellars, Brys Winery, Hawthorne Vineyard, Winery at Black Star Farm, Mari Vineyard, Tabone Vineyards and Two Lad Winery (collectively, the "Wineries") (Compl., ¶¶ 14–25.)  The Wineries represent all wineries on Old Mission Peninsula in Peninsula Township.  To operate a winery in Michigan, a license from the Michigan Liquor Control Commission is required and Michigan has adopted a comprehensive set of laws and regulations governing winery operations: The Michigan Liquor Control Code.

8

On June 5, 1972, Peninsula Township adopted its Zoning Ordinance.   (Compl., ¶ 32.)[1] The Zoning Ordinance has been amended over time to add various provisions related to wineries. (*Id.* ¶ 33.)  Three specific provisions related to the licenses are at issue here: Section 6.2.7(19) Use by Right – Farm Processing Facility; Section 8.7.3(10) Winery-Chateau; and Section 8.7.3(12) Remote Winery Tasting Room.  Collectively, these are referred to as the "Winery Ordinances." The Winery Ordinances dictate, among other restrictions, whom the Wineries may serve, what the Wineries may say on their advertising/merchandise, where the Wineries may buy their produce, when the Wineries may operate their facilities, and how much land the Wineries must own.  As discussed below, the Winery Ordinances are draconian in their restrictions.

### 1.        Section 6.2.7(1) Use by Right – Farm Processing Facility

Peninsula Township's stated intent in enacting the Farm Processing Facility ordinance was "to promote a thriving local agricultural production industry and preservation of rural character by allowing construction and use of a Farm Processing Facility."  Section 6.7.2(19)(a).  (Compl., ¶ 36.)  Plaintiffs Two Lads and Black Star operate Farm Processing Facilities.  (*Id.*, ¶ 35.)  While Peninsula Township wishes to promote agriculture, its Winery Ordinances go much too far.

For example, a Farm Processing Facility is constrained in what it can manufacture and sell because "[t]he majority of the produce sold fresh or processed has to be grown on the specific farm operation."  Section  6.7.2(19)(a).    Thus,  a  Farm  Processing  Facility  cannot  supplement  its production by purchasing produce from an out-of-state farmer, or even its neighbor, and is further constrained in the types of produce it cannot offer produce of a type or variety not grown on the property.  To drive this point home, the Winery Ordnances dictate that "[e]ighty-five (85) percent of the produce sold fresh or processed has to be grown on Old Mission Peninsula."  *Id.*  By

---

[1] A copy of Peninsula Township's Zoning Ordinance is attached as **Exhibit 1**.

extension, a Farm Processing Facility cannot purchase more than 15% of produce it uses in its products from outside of Peninsula Township. (Compl., ¶ 48.)  In the wine industry, this certainly is a limitation given that not all varieties of grapes can be grown on Old Mission Peninsula.

In addition to the required produce percentages and the ban on events, Peninsula Township limits the type of merchandise for sale.  A Farm Processing Facility may only sell logo merchandise that "is directly related to the consumption and use of the fresh and/or processed agricultural produce." Section 6.7.2(19)(b)(1)(v)(1).  But the logo must be "prominently displayed and permanently affixed to the merchandize."  Section 6.7.2(19)(b)(1)(v)(2).  So, for example, a winery with a Farm Processing Facility license may sell a wine glass bearing its logo, but may not sell clothing, coffee cups, or bumper stickers bearing the same logo.  Section 6.7.2(19)(1)(v)(4). (Compl., ¶¶ 44–46.)

In the event of a violation of Section 6.7.2, the Township Board may "clos[e] the retail operations, including tasting, portions of the use" and may also impose civil fines.  Sections 6.7.2(19)(b)(15) and 4.2.1, respectively.

### 2.    Section 8.7.3(1) Winery-Chateau

Peninsula Township's stated intent in enacting its Winery-Chateau ordinance was to "permit construction and use of a winery, guest rooms, and single family residences as a part of a single site subject to the provisions of this ordinance."  Section 8.7.3(10)(a).  Bowers Harbor, Chateau Grand Traverse, Chateau Chantal, Hawthorne, Bonobo, Tabone, Brys, and Mari operate Winery-Chateaus. Like a Farm Processing Facility, the Winery Ordinances strictly control the operations of a Winery-Chateau.

According to the Winery Ordinances, a Winery-Chateau must have a minimum parcel size of 50 acres and at least "seventy-five (75%) percent of the site shall be used for the active production of crops that can be used for wine production, such as fruit growing on vines or trees."

10

Section 8.7.3(10)(c), (d), (h).  Most operations of Winery-Chateaus are prohibited without approval of Peninsula Township.  These, called Guest Activity Uses, may be allowed if the Peninsula Township Board grants pre-approval.  Section 8.7.3(10)(u).  But the number of Guest Activities Peninsula Township will approve is direct tied to a *quid pro quo* requirement that a Winery-Chateau must purchase 1.25 tons of grapes for each person participating in a Guest Activity Use from another property owner within Peninsula Township.[2]  Section 8.7.3(10)(u)3. Peninsula Township ties the tonnage requirement to the Guest Activity Use because "[t]he current Winery-Chateau section of the ordinance requires 75% of the site to be used for the active production of crops that can be used for wine production such as fruit growing on vines or trees, but does not require that any of the wine produced on the site by made from wine fruit grown on Old Mission Peninsula."  Section 8.7.3(10)(u)1(a).  Thus, Peninsula Township wanted to exclude the sale of fruit from anywhere but Peninsula Township.

Even when a Winery-Chateau complied with the tonnage requirement, this does not mean that it can host any events it wishes.  Peninsula Township strictly controls this as well.  The Winery Ordinances dictate what the Winery-Chateau may say and do: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."  Section 8.7.3(10)(u)1(b).  Thus, the Winery-Chateau is compelled to advertise in support of Peninsula Township agriculture. (Compl., ¶ 66.)  In addition, allowed Guest Activities are severely limited to the following:

---

[2] One such property owner who benefits from this requirement is the Peninsula Township Supervisor.

11

(a)      Wine and food classes.  Section 8.7.3(10)(u)2(a);

(b)      Meetings of non-profit groups based in Grand Traverse County but full course meals are not allowed. Section 8.7.3(10)(u)2(b);

(c)      Meetings of agricultural related groups that have a direct relationship to agricultural production subject to the zoning administrator's approval that the group has a direct connection to agriculture. Section 8.7.3(10)(u)2(c).

Clearly, these allowable uses are strict.  The Wineries are prohibited under the ordinance, for example, from hosting a meeting of the United Way, Specials Olympics, or American Heart Association.  (Compl., ¶ 69.)  The Wineries are also prohibited from hosting "entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."  Section 8.7.3(10)(u)2(d).  And even if the Wineries satisfy the acreage and tonnage requirements, get Peninsula Township Board approval, and put on a Guest Activity with an acceptable, agriculture-related message, if wine is served "it must be served with food and shall be limited to Old Mission Peninsula appellation wine produced at the Winery."[3]  Section 8.7.3(10)(u)2(e).

The Winery-Chateau Ordinance also conflicts with Michigan law.  The Wineries cannot perform Guest Activities—including wine tasting—past 9:30 PM, Section 8.7.3(10)(u)5(b), despite Michigan law allowing wineries to sell food and alcohol until 2:00 AM daily, MCL 436.2113.  Further, the Winery Ordinances limit alcohol sales only to the alcohol produced on site, Section 8.7.3(1)(u)5(c), even though Michigan law allows entities with catering permits to serve alcohol on the winery premises (with certain escrow requirements) regardless of where the alcohol is produced. (Compl., ¶ 81.)  The Winery Ordinances also prohibit amplified music, Section

---

[3] Old Mission Peninsula is an approved appellation by the federal government. Under 27 C.F.R. 4.25, for a wine to contain a label representing a particular appellation, seventy-five percent of the wine which makes up the product must be derived from fruit grown within the specific geographic area.  Thus, the Winery Ordinance in this instance limits the sale of wine to wine where seventy-five percent of the fruit was grown within Peninsula Township.

12

8.7.3(10(u)5(g), even though MCL 436.1916(11) explicitly allows Michigan licensed wineries to have music and singing.  The Winery Ordinances prohibit the Wineries from using their kitchen facilities for off-site catering, Section 8.7.3(10)(u)5(i), even though MCL 436.1547 enables wineries to obtain catering permits to sell food and drinks off premises.  Notably, as discussed below, both Michigan and federal courts found similar ordinances preempted.

Any violation of the Winery-Chateau Ordinance—even if the action is legal under Michigan law—"serve[s] as grounds for closing the Guest Activity Uses by the Township Board" and issuance of a fine.   Section 8.7.3(10)(u)8(d), Section 4.2.1.

### 3.    Section 8.7.3(12) Remote Winery Tasting Room

Like the restrictions on Winery-Chateaus, the restrictions on Remote Winery Tasting Rooms also conflict with the First Amendment and Michigan law.  A Remote Winery Tasting Room is subject to even more draconian restrictions that a Winery-Chateau as it cannot host any types of events.  In addition, sales by the bottle for consumption on the premises is not allowed, Section 8.7.3(12)(g), even though Michigan law explicitly allows sales by the bottle for consumption on the premises.  And a Remote Winery Tasting Room is not allowed to offer a full food menu, Section 8.7.3(12)(h), even though Michigan law allows a winery tasting room to operate a restaurant with a full menu.

The Winery Ordinances also compel a certain type of speech from and prevent the free trade and sale of goods by the Wineries operating a Remote Winery Tasting Room.  Section 8.7.3(12)(i) states that a Remote Winery Tasting Room may only sell non-food items which promote the winery and Peninsula Township agriculture and has the logo of the winery permanently affixed to the product.  Non-logoed products are not allowed to be sold.  Promotional items are limited to "corkscrews, wine glasses, gifts boxes, t-shirts, bumper stickers, etc."  Similarly, Section 8.7.3(12)(j) prevents a Remote Winery Tasting Room from selling packaged

13

food items unless the food item contains wine or fruit produced in Peninsula Township and bears the winery logo.  The food can only be for off-premises consumption and includes, as examples, "mustard, vinegar, non-carbonated beverages, etc."  Finally, a Remote Winery Tasting Room's "signs and other advertising may not promote, list or in any way identify any of the food or non food items allowed for sale in the tasting room."  Section 8.7.3(12)(k).

**B.      The Winery Ordinances Prevent the Wineries From Hosting Events and Compel the Wineries to Purchase Produce from Peninsula Township.**

The Winery Ordinances have a real impact on the Wineries.  Even though the Wineries are regularly asked to host weddings, corporate events, and political events, the Winery Ordinances and the Township's Ordinance Enforcement Officer prevent the Wineries from hosting these events.  (Compl., ¶¶ 97–101.)  The Wineries have each lost hundreds of thousands of dollars due to the Winery Ordinances.  (*Id.*, ¶ 102.) *See also* **Exhibits 2 and 3**.  The Wineries also lose customer good will when they regularly must turn them away due to the Winery Ordinances. (Compl., ¶ 103.)

Lost revenue and good will are not the only issue.  To comply with the various acreage and produce-tonnage requirements, the Wineries own or lease more than 1,407 acres of land in Peninsula Township and purchase fruit from Peninsula Township landowners holding an additional 219.5 acres. (*Id.*, ¶¶ 106–108.)  But for the Winery Ordinances, the Wineries would spend this money on other aspects of their business or would purchase fruit from farmers outside of Peninsula Township.  (*Id.*, ¶ 109.)

**C.      Peninsula Township's Attorney Concluded These Ordinances are Unconstitutional.**

The Wineries have tried to engage in the legislative process to resolve these issues in good faith.  In May 2019, the Wineries attended a Peninsula Township meeting to present their concerns to the Township Board.  (*Id.*, ¶ 111.)  After a series of letters were exchanged, Peninsula

14

Township's attorney conceded that several sections of the Winery Ordinances were preempted by Michigan law, including the ban on wineries opening a restaurant, the ban on off-site catering, the restriction on amplified music and the 9:30 PM closing time. (*Id.*, ¶¶ 112–116.)  *See* **Exhibits 4– 6**.  The Peninsula Township attorney also admitted the Winery Ordinances run into severe problems with the Commerce Clause, including the ban on out-of-county non-profit meetings, the limitation to meeting of agricultural-related groups, the requirement to sell only Old Mission Peninsula appellation wine, the need to purchase 1.25 tons of grapes from other farms in Peninsula Township, and the restriction on out-of-state grapes.  (*Id.*, ¶ 117.)  Finally, the Township attorney conceded that the Winery Ordinances violate the First Amendment in several ways including required winery logos on products, restriction on the types of products that may be sold, restriction on the sale of non-food items and limits on capacity based on the capacity of one winery's dining room.  (*Id.*, ¶ 118.)

Despite Peninsula Township' attorney's concessions, the Winery Ordinances remain in effect.[4]  Therefore, the Wineries move for preliminary injunctive relief to prevent the continued violation of their Constitutional rights.

### III.
### ARGUMENT

**A.    The Standard for Preliminary Injunctive Relief.**

The Court has the discretion to enter a preliminary injunction.  *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).  "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."  *United Food Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1988) (quoting *Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925

---

[4] Peninsula Township has proposed a revised ordinance, but it has not yet taken effect.  **Exhibit 7**.

15

(6th Cir. 1978).  The Sixth Circuit has established a four-factor analysis to determine whether a preliminary injunction should be issued:

> (1)    The likelihood that the movant will succeed on the merits;
>
> (2)    Whether the movant will suffer irreparable harm if the injunction is not granted;
>
> (3)    The probability that granting the injunction will cause substantial harm to others; and
>
> (4)    Whether the injunction advances the public interest.

*Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009).

An applicant for preliminary injunctive relief need not demonstrate that all of these factors are satisfied. On the contrary, "the four considerations applicable to preliminary injunction decisions are *factors to be balanced*, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (emphasis added).

"[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), cert. denied, 135 S.Ct. 950 (2015) (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).  "In short, 'because the questions of harm to the parties and the public interest cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is . . . whether the [law] at issue is likely to be found constitutional." *Caruso*, 569 F.3d at 266 (quoting *Connection Distri. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  Moreover, the third and fourth factors merge when the government is a defendant.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, each of the factors weighs heavily in favor of injunctive relief.  Therefore, this Court should enter a preliminary injunction prohibiting Peninsula Township from enforcing objectively unconstitutional ordinances against Plaintiffs.

**B.** **Plaintiffs are Likely to Succeed on the Merits of Their Claims**

To satisfy the first prong of the preliminary injunction analysis, the Wineries are not required to demonstrate that they will succeed on the merits at trial.  Nor are the Wineries required to demonstrate that they will probably succeed on the merits of their claims.  The Wineries must only demonstrate that the legal issues they raise are substantial enough to constitute "fair ground[s] for litigation and thus [require] more deliberate investigation." *Roth v. Bank of Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978).  This Court must only "satisfy itself, not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." *Brandeis Machinery & Supply Corp. and State Equipment Co., v. Barber-Geene Co.*, 503 F.2d 503 (6th Cir. 1974) (citing *American Federation of Musicians v. Stein*, 213 F.2d 679, 683 (6th Cir. 1954), cert. denied, 348 U.S. 873 (1954)).  "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for mere deliberate investigation." *Id.* (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir. 1953)).  The Wineries' constitutional claims far exceed this standard.  Peninsula Township concurs with most of the Wineries' assertions that the Winery Ordinances are illegal.  Unfortunately, the illegal Winery Ordinances remain on the books.  The few portions of the Winery Ordinances that remain contested are clearly problematic.  Considering the admitted illegality of most of the Winery Ordinances discussed below and certain illegality of those not admitted, the Wineries have easily demonstrated that they are likely to succeed at trial which makes preliminary injunctive relief fully appropriate.

17

**1.      The Winery Ordinances Violate the First and Fourteenth Amendment Protections of Freedom of Speech, Peaceable Assembly, Expressive Association, and Free Exercise of Religion.**

When a law is challenged on constitutional grounds, likelihood of success on the merits is usually the determinative factor in deciding whether to grant a preliminary injunction, as the other factors are generally met when that factor is met. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). The Winery Ordinances are content-based, act as a prior restraint on speech and are not narrowly tailored to advance any compelling government interest. The provisions are also restraints on peaceable assembly and expressive association which violate the First Amendment as applied to local governments through the Fourteenth Amendment. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

**a.      Peninsula Township's Ordinances are Not Content- or Viewpoint-Neutral.**

Peninsula Township admits that Sections 6.7.2(19)(b)(v), 8.7.3(12)(i), and 8.7.3(12)(k), which relate to logos on products and winery advertising, are all illegal suppressions of Free Speech. On August 23, 2019, Peninsula Township's attorney concluded that these ordinances sections "should be revised as it, under the First Amendment Standards, an invalid suppression of the Wineries' First Amendment Rights." **Exhibit 6**. However, as of the date of this Motion and Brief, the ordinances remain the law in Peninsula Township. Peninsula Township is clearly content with keeping an unconstitutional content-based ordinance on its books.

Peninsula Township's Winery Ordinances are content-based regulations on speech which are presumptively invalid under the First Amendment. *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 382 (1992). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Police Dep't*

18

*of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  Yet, Peninsula Township's Attorney's own words suggest that Peninsula Township has done exactly that.

Regulation of speech is considered content-neutral as long as it is "justified without reference to the content of the regulated speech."  *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 811 (2000) (citation omitted).  The Supreme Court recently examined the specific parameters of content-based restrictions in *Reed v. Town of Gilbert, Ariz.*  There, a regulation prohibited the display of outdoor signs without a permit.  The regulation exempted 23 categories of signs, including "Ideological Signs," "Political Signs," and "Temporal Directional Signs."  576 U.S. at 159–60.  The Supreme Court reversed the district and circuit courts' refusal to enjoin the ordinance, holding that even if the town's regulation was not based on *disagreement* with the message conveyed on the signs, it subjected the categories of "temporary," "political," and "ideological" signs to different restrictions.  *Id.* at 164–65.  The restrictions were therefore content-based on their face because they depended "entirely on the communicative content of the sign."  *Id.* at 164.  This was true regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained on each of the specific signs.  *Id.* at 165.  Similar to the prohibited restrictions in *Reed*, even the seemingly harmless desire to promote local agriculture by dictating content is prohibited.

In another case, the Supreme Court invalidated a city ordinance that banned newsracks containing commercial handbills but not newspapers.  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993). The Court held that, because the question "whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack," the ban was content-based under "any commonsense understanding of the term."  *Id.* at 429.  Like *Discovery Network*, the Peninsula Township's distinction between items bearing the

19

winery logo and items not bearing the winery logo is content-based and invalid.

Not only does the Township admit that Sections 6.7.2(19)(b)(v), 8.7.3(12)(i), and 8.7.3(12)(k) violate the First Amendment, Peninsula Township further compels speech by way of Section 8.7.3(10)(u)1(b) which require that the Wineries "help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

Peninsula Township's Winery Ordinances clearly compel speech.  The Wineries have demonstrated a likelihood of success on its First Amendment claim, making injunctive relief appropriate.

### b.    Peninsula Township's Requirements for Conducting "Guest Activities" are Unconstitutional Prior Restraint's on Speech Activities.

A "prior restraint" is a rule that restricts expression before it takes place rather than imposing penalties on the expression after it occurs. *Alexander v. United States*, 509 U.S. 544, 549–50 (1993). The elements of a prior restraint are:

> (1) a person seeking to exercise First Amendment rights is required to apply to the government for permission;
>
> (2) the government is empowered to determine whether the applicant should be granted permission on the basis of a review of the content of the proposed expression;
>
> (3) approval is dependent upon the government's affirmative action; and
>
> (4) approval is not a routine matter, but involves an examination of the facts, an exercise of judgment, and the formation of an opinion."

*Id*. at 554.

The fourth element is largely affected by the scope of the exercise of discretion by

20

government officials.  The absence of clear standards for officials' exercise of discretion invites abuse.  *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998) ("The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors.").  Moreover, an unlawful prior restraint may exist where, even if it is based on a content-neutral regulation, it "[places] unbridled discretion in the hands of a government official or agency . . . [and] may result in censorship."  *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001) (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 757, 1988)).  Thus, if "a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different that if the law had brazenly set out to discriminate on the basis of content." *Id.*  Lastly, the absence of time limits within which the government must issue (or not issue) the permit is impermissible. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990), holding modified by *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).  The Winery Ordinances offend the Supreme Court's concerns and are a model example of *Alexander* elements in action.

Here, the Winery Ordinances give Peninsula Township unbridled discretion to decide to grant or deny a permit for speech events.  The Winery Ordinances further give Peninsula Township the discretion to determine how many speech-related special events a resident may have on his or her property.  In making this determination, Peninsula Township can limit the number of speech-related special events that can be allowed on a property, with no minimum.  The Winery Ordinances provides little to no guidance for considering Guest-Activity Applications.  In reality, the decision to determine what is and is not allowed in Peninsula Township has been left to the

21

subjective view of Peninsula Township's Ordinance Enforcement Officer and his whims. Additionally, Peninsula Township has never proffered any policy directive regarding how much time they require to issue approval or denial. These collective failures clearly demonstrate the Wineries' likelihood of success on their claims of unconstitutional prior restraint, such than a preliminary injunction is an appropriate remedy.

### c.    Peninsula Township's Ordinances Violate the Wineries' First Amendment Right to Free Association

As if dictating, restricting and restraining speech were not enough, Peninsula Township unapologetically infringes upon the Wineries' First Amendment right to associate freely with any person or organization of their choosing.   The Township's exclusion of individuals and organizations from holding celebrations, meetings and other events not only severely burdens the Wineries' First Amendment rights but also denies Wineries the benefit of using their assets and properties to promote the very industry that the Township desires to promote.

The freedom of association is directly related to the First Amendment's freedoms of speech and assembly provisions.   The Supreme Court has held that the First Amendment protects expressive associations.  *See, e.g.*, *Roberts*, 468 U.S. at 618.  Expressive associations are those in which people partake in pursuit of their First Amendment speech. *See id*. at 622–23.  "A group need not associate 'for the 'purpose' of disseminating a certain message' to be protected; it is enough that a group 'engage[s] in expressive activity that could be impaired.'"  *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010) (quoting *Dale*, 530 U.S. at 655).  Where associational rights are directly and immediately burdened by a law, the government must prove that the law survives strict scrutiny.  *See Dale*, 530 U.S. at 648; *Roberts*, 468 U.S. at 623.

The Township's restrictions and harms mirror government action that the Supreme Court has recognized as unconstitutional interference with the right to expressive association.  *Dale*, 530

22

U.S. at 648; *Roberts*, 468 U.S. at 620–22.  One such way is by interfering with the internal organization of an expressive group. *Roberts*, 468 U.S. at 623.  "An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Id.* at 622.

Here, without Peninsula Township approval, Sections 8.7.3(10)(u)2(a)-(d) limit Guest Activities at the Wineries' establishments such that the Wineries are prohibited from hosting organizations like the United Way, Special Olympics and the American Heart Association and they are expressly prohibited from hosting "weddings, wedding receptions and family reunions . . . ."  Section 8.7.3(10)(u)2(d).  Instead, the Wineries are only allowed to host groups and organizations which Peninsula Township approves of: Grand Traverse County non-profits and agricultural groups like Future Farmers of America.  These restrictions savagely harm the local industry, not promote it.  The Wineries must turn away individuals and groups wishing to hold weddings, meetings and events, daily. Each polite declination of major business and marketing opportunity that the Wineries are *required* to communicate involves multitudes of disadvantageous aspects, including:

> (1) customers who wish to share their love for the Wineries by inviting large groups of friends, family, colleagues and business partners, who may not otherwise visit the Township, never send those invitations;
>
> (2) the necessary reduction in guests means that vast amounts of Township wine and food—intended to be promoted—goes unsold and the Wineries and farms miss untold golden opportunities to show their agricultural prowess;
>
> (3) instead of the cherishing the timeless and priceless joy associated with hosting a wedding at a Winery, these potential customers for life, and their guests, are left with a bad taste in their mouth after being turned away for reasons that are difficult to comprehend;
>
> (4) the Wineries relationships with Township food growers and livestock farms are stunted because the very events that will mean more business and promotion for all never occur; and

23

(5) by constantly turning potential customers away, the Wineries are left to manage their messaging so that they do not appear to be the ones discriminating against free association.

Every time that a Winery turns away those wishing to organize a wedding reception, a start-up business hoping to host an amazing event or a hospice charity seeking a location for its annual meeting, the Wineries: (1) lose the ability to promote themselves and the local industry (2) run the constant risk of damaged reputation by negative word-of-mouth and online reviews (3) are prevented from the ordinary freedom of aligning themselves with charitable endeavors *and*, astonishingly, (4) the Township's desire to promote local agriculture is gutted.  The Wineries face these problems every single day.

Peninsula Township's restrictions on the Wineries' right to freely associate is so rampant and clearly illegal that the Winery Ordinances barely deserve any review when analyzed under strict scrutiny.

### d.    Peninsula Township's Ordinances Act as a Prior Restraint on the Free Exercise of Religion.

The Winery Ordinances also constitute a prior restraint on the Wineries' free exercise of religion.  A facial challenge to a local zoning ordinance on free exercise grounds is appropriate where the zoning ordinance expressly "includes 'weddings' as part of a list of regulated activities, and treats other commercial activities . . . differently." *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1221 (9th Cir. 2017).  And when "the scheme g[ives] permitting officials unbridled discretion to grant or revoke permits," the zoning ordinance is especially problematic. *Id.*  Moreover, "[i]t is well settled that 'an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint.'" *Id.* (quoting *Shuttlesworth v. City of Birmingham*,

24

394 U.S. 147, 151 (1969)).  Thus, if the zoning ordinance lacks "definite and objective guiding standards," it is subject to discriminatory enforcement.  *Id.*

Applying these principles, the Ninth Circuit has ruled that Ventura County, California violated a landowner's First Amendment rights when it required him to request a permit to host an outdoor wedding on his 40-acre property.  *Id.* at 1217–18.  Because the County's permitting scheme contained no time limits and "confer[red] unbridled discretion on permitting officials," it was an unconstitutional prior restraint on the landowner's First Amendment right to the free exercise of religion.  *Id.* at 1226.

Here, the Winery Ordinances explicitly outlaw weddings but allow for "participation in approved township wide events."  Section 6.7.2(19)(a).  There are no guiding criteria for what a "township-wide event" would be.  And even if the Wineries were to apply for a Special Use Permit, there are no standards guiding Peninsula Township's decision.  For example, Section 8.1.3(2) allows "[t]he Town Board [to] impose such additional conditions and safeguards deemed necessary for the general welfare, for the protection of individual property rights, and for insuring that the intent and objectives of this Ordinance will be observed."  The same section continues that "The breach of any condition, safeguard, or requirement shall automatically invalidate the permit granted."  Thus, the Township Board gave itself the absolute discretion to deny an application for a Special Use Permit for any reason and *requires* that the application be denied if any of the Winery Ordinances have been violated.  As the Wineries have explained, the Winery Ordinances are riddled with unconstitutional provisions.  That the Township Board may rely on those unconstitutional standards to exercise unbridled discretion creates an impermissible prior restraint on the free exercise of religion in Peninsula Township.

25

### e.    Peninsula Township's Ordinances Fail Strict Scrutiny Analysis.

Content-based regulations and prior restraints are both subject to strict scrutiny.  *Russell v Lundergan-Grimes*, 784 F.3d 1037, 1050 (6th Cir. 2015).  *See also Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989); *CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) (A prior restraint of expression "bears a heavy presumption against its constitutional validity," and is subject to "the closest scrutiny.").  The strict scrutiny analysis in the freedom of association context closely resembles that in the speech context.  The Township cannot meet its threshold burden of showing that the restrictions on free association "serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  *Dale*, 530 U.S. at 640–41.

Strict scrutiny is "the most demanding test known to constitutional law."  *Russell*, 784 F.3d at 1050.   Peninsula Township's Winery Ordinances and restrictions on the Wineries are unconstitutional because they are not necessary to promote a compelling government interest and narrowly tailored to serve a compelling government interest.  *Id.*  Under strict scrutiny review, the burden is on the government to establish that those requirements are met.  *Id.*  Peninsula Township's Ordinance cannot pass strict scrutiny on any of the three challenged fronts.

### (1)    Peninsula Township Provides no Compelling Interest.

The strict scrutiny analysis fails at the outset because Peninsula Township's interests are not compelling.  The Supreme Court has recognized interests as "compelling" when the interests are fundamental to the ability of a free society to function.  *See, e.g.*, *Dunn v. Blumstein*, 405 U.S. 330, 345 (1972) (election fraud); *Haig v. Agee*, 453 U.S. 280, 307 (1981) (national security).  By contrast, the Court has struck down interests that it deemed "valid" but not "compelling," such as maintaining a stable, racially integrated neighborhood and minimizing the visual clutter associated with signs.  *Linmark Assocs., Inc. v. Willingboro*, 431 U.S. 85 (1977); *City of Ladue v. Gilleo*, 512

26

U.S. 43, 54 (1994).

Peninsula Township states its interests in passing the challenged ordinances as summarized below, while valid, none are compelling:

- "to promote a thriving local agricultural production industry and preservation of rural character by allowing construction and use of a Farm Processing Facility." Section 6.7.2(19)(a);

- to "permit construction and use of a winery, guest rooms, and single-family residences as a part of a single site subject to the provisions of this ordinance." Section 8.7.3(10)(a) and

- to "allow wine tasting in a tasting room that is not on the same property as the winery with which is associated." Section 8.7.3(12).

But nowhere does Peninsula Township state why its heavy-handed speech and association restrictions are necessary or fundamental for the township to function as a free society–plainly, they are not.  The strict-scrutiny analysis should end here.

### (2)    First Amendment Restrictions Are Not Narrowly Tailored to Achieve the Township's Valid but Uncompelling Interests.

Even if Peninsula Township had proffered an alleged compelling interest for its content-based restrictions and prior restraints, its restrictive methods are not narrowly tailored to serve that interest.  Narrow tailoring requires Peninsula Township to "show that the 'regulation is necessary to serve a compelling interest and is narrowly drawn to achieve that end.'"  *Burson v. Freeman*, 504 U.S. 191, 198 (1992) (quoting *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).  In evaluating whether a regulation is necessary, courts assess whether the "challenged restriction is the least restrictive means among available, effective alternatives." *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004).  Narrowly tailoring requires that "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."  *Playboy*, 529 U.S. at 813 (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997)).

27

It is difficult, if not impossible, to imagine a scenario where restricting First Amendment freedoms of speech and association are the least restrictive means for promoting local agriculture. Should this Court first determine that Peninsula Township's interests are compelling, restrictions on speech and association are surely not be best method of achieving those goals. For this plain reason, the Wineries have demonstrated a likelihood of success on the merits where an injunction is warranted.

> **f.** **Even if this Court Determines that Peninsula Township's Winery Ordinances are Content-Neutral, the Winery Ordinances are Still Unconstitutionally Overbroad and Fails Intermediate Scrutiny.**

By contrast to strict scrutiny, narrow tailoring under intermediate scrutiny "is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (citation omitted).  A statute is overbroad where it "'prohibits a substantial amount of protected speech' both 'in an absolute sense' and 'relative to the statute's plainly legitimate sweep.'" *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285 (2008)).  The United States Supreme Court has insisted that when the government seeks to carry out a permissible goal and it has a variety of effective means to do so, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002).

As *Thompson* prohibits, the Township's attempts to regulate, restrict, dictate, and restrain First Amendment rights of the wine industry is far from the only effective means to promote local agriculture and allow for a functioning winery industry.  One could fathom a myriad of less restrictive means to that end.  To name one, instead of requiring promotion of local agriculture at the priorly-restrained Guest Activities, an incentive- or subsidy-based program in exchange for that promotion would be less restrictive and may encourage more willing participants than the

28

current mandates.  Certainly, the individuals tasked with regulating the Peninsula Township wine industry could conjure less restrictive means to promote local agriculture.  Peninsula Township's Winery Ordinances fail intermediate scrutiny and the Wineries have a strong likelihood of success on the merits of their First Amendment claims, requiring an injunction.

### g. Peninsula Township's Unconstitutionally Vague Definition of "Guest Activity" is a Violation of Due Process.

In the First Amendment context, the "government may regulate . . . only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).  A law is impermissibly vague if it either fails to provide definite notice to individuals regarding what behavior is regulated or invites arbitrary and discriminatory enforcement, or both.  *See Skilling v. United States*, 561 U.S. 358, 402–03 (2010).  To satisfy due process, a statute must be stated "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement."  *Id.*  This general test of vagueness applies with particular force in review of laws dealing with speech.  "[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser."  *Smith v. California*, 361 U.S. 147, 151 (1959).

To succeed on a void-for-vagueness claim, the Wineries must establish that "[a regulation's] prohibited terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion."  *United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  "The void-for-vagueness doctrine . . . protects citizens against the impermissible delegation of basic policy matters 'for resolution on an *ad hoc* and subjective basis with the attendant dangers of arbitrary

29

and discriminatory application.'" *Miller*, 622 F.3d at 539 (quoting *UFCW*, 160 F.3d at 358–59). "A statute that fails to constrain 'an official's decision to limit speech' with 'objective criteria' is unconstitutionally vague." *Id.*

In vagueness cases arising under the First Amendment, courts are "concerned with the vagueness of the statute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct." *United States v. Nat'l Dairy Prod. Corp*., 372 U.S. 29, 36 (1963).  This is because "where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'  Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (citations omitted).

Here, the Wineries' First Amendment freedoms are at the mercy of a single Peninsula Township enforcement officer, armed with nothing but Section 8.7.2(10)(u).  Conspicuous by its absence from Section 8.7.2(10)(u) is any concise definition of "Guest Activity Uses."  Notably, Peninsula Township's enforcement officer does have Section 8.7.2(10(u)2(d) to inform him or her that "Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."  Section 8.7.2(10)(u)1(d) provides additionally, but equally unhelpful exclusions from "Guest Activity Uses" being "wine tasting and such related promotional activities as political rallies, winery tours and free entertainment (Example – "Jazz at Sunset")."

Of the *allowed* Guest Activity Uses found in Section 8.7.2(10)(u)2, not one escapes the burden of also being connected to one of the many First Amendment content-based restrictions or prior restraints.  Even the seemingly innocuous "Wine and food seminars and cooking classes" are encumbered by the mandate that the hosting winery include the proscribed promotional materials and statement as well as serve wine in violation of the Commerce Clause and dormant Commerce

Clause as discussed more fully below.  *See* Section 8.7.2(10)(u)2.  According to Peninsula

Township's own ordinances, Plaintiffs' have clearly demonstrated a likelihood of success on their

void-for-vagueness claim requiring that this Court enter a preliminary injunction.

> **3.      Peninsula Township's Winery Ordinances Violate the Commerce
> Clause and the Dormant Commerce Clause.**

Peninsula Township does not even protest that its ordinance discriminates against out of

Township fruit, fruit juice and wine and offend the Commerce Clause which gives the United

States Congress the authority to regulate commerce "among the several states."  U.S. Const. art I,

§8, cl. 3.  The Supreme Court has interpreted this positive power to also negate state action that

interfered with interstate commerce or regulates as only Congress may.  *See Maine v. Taylor*, 477

U.S. 131, 137–38 (1986).  "The central rationale for the rule against discrimination [under the

dormant Commerce Clause] is to prohibit state or municipal laws whose object is local

protectionism, laws that would excite those jealousies and retaliatory measures the Constitution

was designed to prevent."  *C&A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 390 (1994).  The

Supreme Court has "interpreted the Commerce Clause to invalidate local laws that impose

commercial barriers or discriminate against an article of commerce by reason of is origin or

destination out of State."  *Id.* (citing *Philadelphia v. New Jersey*, 437 U.S. 617 (1978) (striking

down New Jersey statute that prohibited the import of solid waste) and *Hughes v. Oklahoma*, 441

U.S. 322 (1979) (striking down Oklahoma law that prohibited the export of natural minnows)).

Here, Peninsula Township agrees that its ordnances should be amended in five ways to

make them compliant with the Commerce Clause and the Dormant Commerce Clause:

> (1)      **Non-Profit Meetings**. Section 8.7.3(10)(u)(2)(b) should be amended because it
> prohibits non-profit organizations from outside Grand Traverse County from holdings
> meetings at the Plaintiffs' premises. The Township attorney agrees that this restriction
> "begs the question of the impact on intestate commerce" and "should be amended . . . to
> ensure equal competition of out-of-county non-profits." **Exhibit 6, p 12**.

(2) **Agricultural Group Meetings**. Section 8.7.3(10)(u)(2)(c) which only allows meetings of agricultural groups that have a direct relationship to agricultural production should be revised because it violates the Commerce Clause. According to the Township attorney, Section 8.7.3(10)(u)(2)(c) "should be amended for clarity regarding other groups' ability to hold meetings at these wineries." **Exhibit 6, p 12**.

(3) **Old Mission Appellation Wine Service.** Section 8.7.3(10)(u)(2)(e) which limits wine served to only Old Mission Appellation wine certain events should be revised because it has an impact on out of township wine. The Township attorney's comments clearly state that "[t]his restriction violates the Commerce Clause . . . ." **Exhibit 6, p 12**.

(4) **Requirement to Buy Township Fruit.** Section 8.7.3(10)(u)(3) requires a winery to grow or purchase 1.25 tons of grapes from within the Township for each person allowed at a Guest Activity should be revised because it has an impact on every winery located outside of Peninsula Township. The Township attorney questions "whether this ordinance excludes out-of-state wine, and amending the same may be a measure to avoid certain issues." **Exhibit 6, p 13**.

(5) **Restriction of Out-of State Grapes**. Section 6.7.2(19)(b) which restricts the use of out-of state grapes is a restriction on interstate commerce and should be revised. According to the Township attorney, "[t]he potential problem with this ordinance is that it limits the Wineries' ability to use any out-of-state grapes and is, arguably, a restriction on interstate commerce." **Exhibit 6, p 13**.

The Township attorney concluded that "there are issues with the Commerce Clause that should be considered in future revisions" and "these items should be carefully considered and addressed." **Exhibit 6, p 13**. In the instances above, where the Township attorney does not expressly agree with the Wineries' assertion that the Ordinances violate the commerce clause, he recommends revisions. These revisions are necessary because the Wineries have soundly demonstrated a likelihood of success on the merits of their Commerce Clause and Dormant Commerce Clause claims such that an injunction is appropriate.

### 4. The Township Requires That Some Wineries Put Their Properties to an Impossible Use Such That A Regulatory Taking Has Occurred.

The Winery Ordinances unreasonably restrict how the Wineries may and may not use their property as it relates to advertising and events. Sections 8.7.3(10)(c) and (h) require that in order to be eligible for Winery Chateau privileges, the winery must be a minimum of 50 acres a and a

32

minimum of 75% of the property be used for fruit production.  Zoning ordinances must be reasonable, and the uses proscribed by Sections 8.7.3(10)(c) and (h) are impossible in several instances across the Township.  When "[i]t is practically impossible to use the lands in question . . . the zoning ordinances as applied to the propert[ies] are unreasonable and confiscatory, and therefore illegal." *Oschin v. Township of Redford*, 315 Mich. 359, 363 (1946) (citing *City of North Muskegon v. Miller*, 246 Mich. 52, 59 (1929).  In *Oschin*, the Township of Redford prohibited the continued use of a parcel for a lumberyard business, instead requiring that it be used for residential purposes.  *Id.*  Because that use was impractical and impossible, the zoning ordinance was deemed illegal.  *Id.*

Along the lines of *Oschin*, the unreasonable Winery Ordnances have forced some of the Wineries to invest in planting vines and fruit trees on portions of the property ill-suited for such activities and knowing the vines and trees would not result in usable crops, just to meet the Winery Ordinance requirement.  This land could be used for activities for which they are better suited.  For these reasons, the Wineries have demonstrated a likelihood of success on the merits of their regulatory taking claim and a preliminary injunction should issue.

### 5.    Peninsula Township's Winery Ordinances Directly Conflict With and are Preempted by the Michigan Liquor Control Code.

"A city ordinance that purports to prohibit what a state statute permits is void." *Ter Beek v. City of Wyoming*, 297 Mich. App 446, 452 (2012) (citing *Walsh v. City of River Rogue*, 385 Mich. 623, 636 (1971)).  "A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field." *Id.* (quoting *USA Cash #1 v. City of Saginaw*, 285 Mich. App. 262, 267, 776 N.W.2d 346 (2009)).  "A direct conflict exists between a local regulation and state statute when the local regulation prohibits what the statute permits." *Id.*  A local municipality may not enjoin

33

activity allowed by state law "simply by characterizing the conduct as a zoning violation." *Ter Beek v. City of Wyoming* (*Ter Beek II*), 495 Mich. 1, 21 (2014).  As the Michigan Supreme Court has explained, even if "a local zoning regulation [was] enacted pursuant to the [Michigan Zoning Enabling Act] does not save it from preemption." *Id.* at 21–22.

The Constitution of Michigan granted the Legislature the authority to establish a liquor control commission which, subject to statutory limitation, "shall exercise complete control of the alcoholic beverage traffic within this State".  *Noey v. Saginaw*, 271 Mich. 595, 596 (1935). Pursuant to this constitutional provision the Legislature enacted a statute creating a liquor control commission and wrote "(e)xcept as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic…." *Id*. at 596–97.

Numerous portions of the Ordinance are preempted.  First, and most obviously, is Section 8.7.3(10)(u)(5)(b) which requires that alcohol sales conclude at 9:30 p.m.  Peninsula Township's Attorney agree with Plaintiffs that "This ordinance should be revised as it is more restrictive than MCL 436.1403 and the Township ordinance fixes hours shorter than specified in the state statute." **Exhibit 6, p 10**. The Township agrees for good reason, numerous courts have determined that an ordinance requiring an entity licensed by the Michigan Liquor Control Commission to cease alcohol sales before 2:00 am is preempted.

"Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005.)  Thus, "there is a written regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit." *Id*. at 436.  "Under Michigan law, a liquor license is property which includes the right to serve alcohol until 2:00 a.m.  Accordingly, just as a

34

licensee's license could not be revoked without due process, neither can a licensee's right to serve alcohol until 2:00 a.m. be revoked without due process." *Id*.

In *Noey*, the Michigan Supreme Court determined that a local ordinance which required establishments selling alcoholic beverages to close by midnight was preempted by state law which permitted the sale of alcohol until 2:00 a.m. 271 Mich. at 595. The court concluded that "[u]nder the broad power thus conferred upon the liquor control commission by the Constitution and the statute, it must be held that its regulations relative to the hours of closing are binding upon all licensees, and are not affected by the provision in the ordinance relating thereto." *Id*. at 599.

Additionally, in *Sherman Bowling Center v City of Roosevelt Park*, 154 Mich. App. 576 (1986), the municipality had in place an ordinance which limited outdoor events with the sale of alcohol to Fridays and Saturdays, with entertainment ending at 11:00 p.m., the event ending by midnight and limited to once per year per licensee. The Court of Appeals determined that the ordinance was preempted as "a state statutory scheme occupies the field of regulation which defendant seeks to enter so as to preempt the field." *Id*. at 582. "State law expressly provides that MLCC is to have the exclusive authority to regulate the alcoholic beverage traffic in the manner which is attempted in the ordinance." *Id.* at 581–82. "The ordinance regulates various activities and imposes various requirements, but does so only in regard to establishments where alcoholic beverages are sold. The sale of alcoholic beverages is a determining factor in whether the ordinance applies to a given establishment. Because of this, the ordinance de facto regulates alcoholic beverage sales." *Id.* at 583. The court noted:

> Any law which provides that if activity A takes place, then activity B may not occur, necessarily provides that if activity B occurs, then activity A may not take place. For instance, one provision of defendant's ordinance states essentially that, if an establishment sells alcoholic beverages, there is to be no entertainment at its outdoor event after 11:00 p.m. Logically, this law also provides that if an

35

> establishment is to have entertainment at its outdoor event after 11:00 p.m., then it cannot sell alcoholic beverages."

*Id*. at 583.

> No matter what form an ordinance takes, or what language an ordinance employs, a city cannot regulate or control alcoholic beverage traffic unless authorized by statute. That function belongs exclusively to the MLCC. The MLCC is to determine what types of establishments may sell liquor, when such establishments may sell liquor, and where they may sell it (with certain explicit statutory exceptions). It is the MLCC and not an individual city which is given the authority to determine whether an establishment which operates a special outdoor event providing entertainment can or cannot sell alcoholic beverage.

*Id*.

> On the other hand, cities may, pursuant to their police power, regulate various activities. However, cities cannot use liquor sales as a determination of when or where another type of activity can take place. A law which uses liquor sales as a determinant regulates when and where liquor sales can take place.

*Id*. at 583–84.

> We do not wish to imply that cities may not regulate the number of outdoor events which can be held or the hours of such outdoor events. Nor do we wish to imply that cities may not regulate the hours within which outdoor entertainment can take place. Provided that they are otherwise valid, general regulations in this regard which are not tied to the sales of alcoholic beverages are not preempted by the authority granted to the MLCC. The bottom line is that a regulation will not be declared invalid under preemption principles if it applies to establishments which sell alcoholic beverages in a like manner as it does to establishments which do not sell alcoholic beverages.

*Id*. at 584.  Thus, pursuant to *Noey*, *R.S.W.W., Inc*, and *Sherman Bowling*, and as admitted in the

Township's Attorney's August 23, 2019 memo, Section 8.7.3(10)(u)(5)(b)—which requires guest

activities to end by 9:30 PM—is preempted by state law.

The Wineries assert and Peninsula Township agrees that Sections 8.7.3(10)(u)(2)(e) and

6.7.2(19), both prohibiting wineries from operating a restaurant, directly conflict with and are

preempted by MCL 436.1536(7)(h), which states, "A . . . wine maker, small wine maker [or]

brandy manufacturer . . . may own and operate a restaurant or allow another person to operate a

36

restaurant as part of the on-premises tasting room on the manufacturing premises." As noted by the Sixth Circuit "Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m." *R.S.W.W*, 397 F.3d at 431. Thus, any ordinance which prohibits a winery from serving food or operating a restaurant is preempted as the ability to operate a restaurant is explicitly allowed under Michigan law. Likewise, Section 8.7.3 10(u)(5)(g) prohibits a winery from off-site catering. But, MCL 436.1547 explicitly allows a winery to obtain a catering permit which allows it to serve food and drinks off its premises. Thus, the ordinance precludes what state law permits and is preempted. The Township attorney agrees: "As to Section 8.7.3(10)(u)(5)(i), alternative ordinances should be explored to ensure fully (sic) compliance with MCL 436.1547 for a winery properly licensed and permitted to engage in off-site catering under that state statute." **Exhibit 6, p 7**.

Lastly, Section 8.7.3(10)(u)(5)(g), which limits the wineries to playing only "amplified voice and recorded background music," is preempted by state law because it directly conflicts with and is more restrictive than MCL 436.1916(11), which allows for an orchestra, piano, other musical instrument performances, singing and the broadcast of federally licensed television without an MLCC Permit. This time, the Township attorney does not flat out agree with Plaintiffs, but suggests that "the restriction on amplified music should be revisited . . . ." **Exhibit 6, p 10**. Given that the Township attorney agrees that several portions of its Winery Ordinances directly conflict with and are preempted by the Michigan Liquor Control Code and that others should, at least, be "revisited" the Wineries have demonstrated a likelihood of success on the merits of their State Law Preemption claims making a preliminary injunction an appropriate remedy.

37

C.     **An Injunction is Necessary to Prevent Immediate and Irreparable Harm to the Wineries.**

It is well-settled that even minimal loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989); *N.Y. Times v. United States*, 403 U.S. 713, 715 (1971) (Black, J., concurring). If the Court does not grant this injunction, the Wineries, and those similarly situated, will suffer continued irreparable injury.   The content-based speech restrictions, required speech, prior-restraints, restrictions on association with groups and organizations, limits on hours of operation, and dictated supplier relationships trample the Wineries' constitutional rights and harm their business opportunities. Every time that a Winery turns a customer away because the ordinances prohibit that customer's desired event, the illegal ordinances adversely impacts goodwill.  The Wineries also continue to suffer irreparable harm from the Commerce Clause violations that protect Peninsula Township farmers at the expense of free trade between the states.  As the Township attorney admits, these restrictions are unconstitutional.

It is virtually impossible to ascertain the extent of the Wineries' losses attributable to the Winery Ordinances.  Clearly, they have lost money.  The Wineries have also lost significant customer goodwill as they were forced to turn customers away due to the Winery Ordinances.  In these circumstances, where injury and loss of goodwill are difficult to quantify, irreparable harm exists and injunctive relief is appropriate. *See Unibar Maintenance Servs. Inc. v. Saigh*, 283 Mich. App. 609, 631 (2009) (holding loss of reputation and good will are not quantifiable); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (holding plaintiff showed irreparably injury where it "had suffered, and would continue to suffer, competitive losses and losses of customer goodwill as a result of the defendants' actions."). And "[a]n injury is irreparable if it cannot be undone

38

through monetary remedies." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995). "[I]rreparable injury has been characterized as a loss of a movant's enterprise." *Id.* ("The impending loss or financial ruin of Performance's business constitutes irreparable injury…Furthermore, the type of irreparable harm which Performance is likely to suffer, the loss of its business, is precisely the type of harm which necessitates the granting preliminary injunctive relief…").

The Wineries have experienced and will continue to experience irreparable harm unless injunctive relief is grated.

**D.      The Requested Injunctive Relief Would Not Unreasonably Harm Peninsula Township and is in the Public Interest.**

Just as inconceivable that restrictions on First Amendment rights are the best way to support local agriculture, it is inconceivable that the Township would be harmed if enjoined from enforcing its unconstitutional, preempted, and commerce-stifling Winery Ordinances. A municipality has an interest in having its constitutional ordinances enforced. But that interest is not harmed where an unconstitutional ordinance is enjoined from enforcement. *See Connection Distrib.*, 154 F.3d at 288. Where it is determined that the plaintiff is likely to succeed on the merits of his constitutional challenge to an ordinance, the preliminary injunction causes no harm to the municipality. *Id.* The primary factor showing irreparable harm to the Wineries and tipping the scale in favor of injunctive relief, i.e., the denial of the Wineries' constitutional rights, also shows why the public interest is furthered by an injunction. *See Nken*, 556 U.S. at 434–35 (noting that the irreparable harm and public interest "merge" when the government is a party).

"[T]he public as a whole has a significant interest in . . . protection of First Amendment liberties." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014), (quoting *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir.1995)). "[I]t is always

39

in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Connection Distrib.*, 154 F.3d at 288). Further, "[]the public interest lies in a correct application of the federal constitution and statutory provisions upon which the claimants have brought this claim and ultimately . . . upon the will of the people of Michigan being effected . . . ." *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). Consequently, the public interest here favors issuance of a preliminary injunction for reasons similar to those discussed with respect to the other factors: "[E]nforcment of an unconstitutional law is always contrary to the public interest." *Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500, 511 (D.C. Cir. 2013)). There is in fact a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Because "it may be assumed that the Constitution is the ultimate expression of the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (quotation marks omitted), the public interest is served by ensuring that the Township does not irrevocably offend that document. Thus, this Court should therefore issue a preliminary injunction while this case is being litigated.

## IV.
## CONCLUSION

Peninsula Township admitted more than a year ago that its Winery Ordinances violated the Wineries' constitutional rights in numerous ways and portions of the ordinances were preempted by Michigan law. But Peninsula Township has done nothing since that point to alleviate the harm it has done, and continues to do, to the Wineries. Under these circumstances, a preliminary injunction more than warranted. Given the egregious conduct of Peninsula Township, awarding the Wineries their costs and attorneys' fees incurred in getting to this point is also more than warranted.

40

Respectfully submitted,

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.


By:    /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Stephen M. Ragatzki (P81952)
        Christopher J. Gartman (P83286)
        99 Monroe Avenue NW, Suite 1200
        Grand Rapids, MI  49503
        (616) 776-6333
        infante@millercanfield.com
        gartman@millercanfield.com

Dated:  October 21, 2020

41

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This Brief complies with the type-volume limitation of L. Civ. R. 7.2(b)(i) because this Brief contains 10,518 words.

/s/ Joseph M. Infante
Joseph M. Infante

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2020, I filed the foregoing Motion for Preliminary Injunction via the Court's CM/ECF System, which will automatically provide notice of the filing to all registered participants in this matter.

/s/ Joseph M. Infante
Joseph M. Infante

36715491.4/159392.00001