UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC.,
a Michigan Nonprofit Corporation,
BOWERS HARBOR VINEYARD
& WINERY, INC., a Michigan
Corporation, BRYS WINERY, LC,
a Michigan Corporation, CHATEAU
GRAND TRAVERSE, LTD,
a Michigan Corporation, CHATEAU
OPERATIONS, LTD, a Michigan
Corporation, GRAPE HARBOR, INC.                   Case № 1:20-cv-01008
a Michigan Corporation, MONTAGUE                  Hon. Paul L. Maloney
DEVELOPMENT, LLC, a Michigan                      Mag. Ray S. Kent
limited liability company, OV THE FARM, LLC
a Michigan limited liability company,
TABONE VINEYARDS, LLC. a Michigan
Limited Liability Company, TWO LADS, LLC,
a Michigan limited liability company,
VILLA MARI LLC, a Michigan
Limited Liability Company, WINERY
AT BLACK STAR FARMS, L.L.C.,
a Michigan Limited Liability Company,

        Plaintiff,

vs.

PENINSULA TOWNSHIP, a Michigan
Municipal Corporation,

        Defendant.

_____

MILLER, CANFIELD, PADDOCK et al
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com

GREGORY M. MEIHN (P38939)
MATTHEW T. WISE (P76794)
FOLEY & MANSFIELD, P.L.L.P.
Attorneys for Defendant
130 E. 9 Mile Rd.
Ferndale, MI 48220-3728
(248) 721-4200 / Fax: (248) 721-4201
gmeihn@foleymansfield.com
mwise@foleymansfield.com

## **DEFENDANT PENINSULA TOWNSHIP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Peninsula Township, by its attorneys, Foley & Mansfield, PLLP, hereby submit its Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and rely upon their Brief in Support of the same in support of their opposition to Plaintiffs' requested relief.

WHEREFORE, Defendant, Peninsula Township, respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction.

Dated:  December 11, 2020        By:    /s/ Matthew T. Wise
                                        Foley & Mansfield, PLLP
                                        130 E. 9 Mile Rd.
                                        Ferndale, MI 48220
                                        (248) 721-4200
                                        mwise@foleymansfield.com
                                        (P76794)

**<u>DEFENDANT PENINSULA TOWNSHIP'S BRIEF IN SUPPORT OF ITS
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION</u>**

i

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................1
   A.  The Parties ......................................................................................1
       1.  Peninsula Township and the PTZO ............................................1
       2.  Plaintiffs/WOMP ........................................................................2
   B.  Summary of Claims .........................................................................3

II.  FACTUAL BACKGROUND.........................................................................4
   A.  Background of Negotiations.............................................................4
       1.  PTZO Ordinances at Issue ..........................................................6
       2.  Farm Processing Facilities .........................................................7
   3.  Winery-Chateaus ................................................................................9
   4.  Remote Tasting Rooms ........................................................................9

III.  STANDARD OF REVIEW ........................................................................10

IV.  LAW AND ARGUMENT ...........................................................................11
   A.  Procedural Process is Ignored and WOMP Lacks Standing ..............11
   B.  Statutory Process for Amending Ordinances ....................................12
   C.  WOMP Lacks Standing....................................................................14
   D.  Reliance on Attorney Opinions During Negotiations is
       Improper ........................................................................................16
   E.  Plaintiffs' Request for Preliminary Injunction Should be Denied ......18
       1.  Plaintiffs Do Not have a Strong Likelihood of Success on
           the Merits ..................................................................................18
   i.  PTZO Does Not Violate 1st or 14th Amendment Protections...............20
       a.  Compelled/Suppressed Speech.................................................20
       b.  Prior Restraint and Vagueness ................................................23
   ii.  PTZO Does Not Violate the Commerce Clause or Dormant
       Commerce Clause.................................................................................26
   iii.  No Regulatory Taking Has Occurred ...............................................31
   iii.  The PTZO Ordinances are Not Preempted by the MLCC .................33
       a.  There is No Express Preemption...............................................34
       b.  There is no Field Preemption ..................................................40
       2.  Plaintiffs Will Not Otherwise Suffer Irreparable Injury...........43
       3.  Substantial Harm to Others and Public Interest .....................45

V.  CONCLUSION............................................................................................46

i

# INDEX OF AUTHORITIES

## CASES

*Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993)..................31

*Armstrong v. Ypsilanti Charter Township*, 248 Mich App 573, 585-587, 640 NW2d 321 (2001).......................................................................................................21

*Brown v. Chote*, 411 U.S. 452, 457, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973) 17

*C&A Carbone, Inc. v. Clarkston, New York*, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) ...................................................................................... 36, 37

*Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)........................................................ 28, 29, 30

Cf. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171, 92 S.Ct. 839, 846-848, 31 L.Ed.2d 110 (1972) ...................................................................... 33, 34

*City of Cleveland v. City of Brook Park*, 893 F.Supp. 742 (N.D. Ohio 1995) . 38, 40

*City of Loss Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).............................................................................................................56

*Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)................................................................................................ 33, 34

*Contech Casting, LLC v. ZF Steering Systems, LLC*, 931 F.Supp.2d 809 (2013)...55

*Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D.Cal.1990) ........................25

*Curry v. Baker*, 479 U.S. 1301, 1302, 107 S.Ct. 5, 93 L.Ed.2d (1986)..................26

*DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 208 (2004)..................................42

*Deruiter v. Byron Twp.*, 505 Mich. 130, 949 NW2d 91 (2020) ................ 47, 49, 50

*Detroit v. Qualls*, 434 Mich. 340, 363, 454 NW2d 374 (1990) ....................... 48, 49

*E. Ky. Res. v. Fiscal Court of Magoffin County*, 127 F.3d 532, 543 (6th Cir.1997) 39

*Extracorporeal Alliance, LLC v. Rosteck*, 285 F.Supp.2d 1028, 1040 (N.D.Ohio 2003) ...............................................................................................................53

*Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997) ............................................................................................ 28, 29

*Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.2000)....27

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (2003) ...................................................................................................................25

*Gora v. Ferndale*, 456 Mich. 704, 711-712, 576 N.W.2d 141 (1998) ....................31

*Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298 (1972)32

*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985).............................26

*Johnson v. Liquor Control Comm.*, 266 Mich. 682, 685, 254 NW 557 (1934) ......51

*Jott v. Clinton Township*, 224 Mich App 513 (1997) ........................................ 51, 52

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000) .............................................18

*Lexington-Fayette Urban Cnty. Gov't v. BellSouth Telecomms., Inc.*, 14 Fed.Appx. 636, 639 (6th Cir.2001).........................................................................................56

*Loesel v. City of Frankenmuth*, 2009 WL 1449049.......................................... 39, 40

*Maple BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich App 505, 515, 838 NW2d 915 (2013) ..................................................................................... 21, 45, 51

*Maple v. BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich App 5050 (2013)........51

*McKay v. United States*, 199 F.3d 1376, 1382 (Fed.Cir.1999)...............................43

*McNeil v. Charlevoix County*, 275 Mich App 686, 697 (2007) .............................44

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc)............................................................................................................18

*Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ...................................................................................................................28

*Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154, (6th Cir.1991).........................................................................................................54

iii

*Miller v. Fablus Twp. Bd.*, 366 Mich. 250, 255-257, 114 NW2d 205 (1962)48,   49, 50

*Nat'l Solid Waste Mgt. Ass'n v. Pine Belt Regional Solid Waste Mgt. Auth.*, 389 F.3d 491, 497 (C.A. 5, 2004) ...................................................................36

*Noey v. Saginaw*, 271 Mich. 595, 596 ..................................................45

*Nowell v. Hickey*, 2001 WL 381943 at *2 .........................................27

*Olsen v. Chikaming Township*, 235 Mich App 170, 179, 924 NW2d 889 (2018) ..21

*Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345 .....................................37

*Oschin v. Township of Redford*, 315 Mich. 359, 363 (1946) ........................... 41, 42

*Overstreet v. Lexington-Fayette Urban County Gov't¸* 305 F.3d 566, 573 (6th Cir.2002) ...........................................................................18

*Owosso v. Pouillon*, 254 Mich App 210, 213, 657 N.W.2d 538 (2002) ................31

*People v. Barton*, 253 Mich App 601, 603, 659 N.W.2d 654 (2002)....................31

*People v. Boomer*, 250 Mich App 534, 538, 655 N.W.2d 255 (2002) ...................31

*People v. Llewellyn*, 401 Mich. 314, 257 NW2d 902 (1977) ..................................44

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir.1995) ..........................................................................55

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) ...........................................................................39

*Planet Aid v Ypsilanti Twp.*, 26 F.Supp.3d 683 (E.D. Mich. 2014) .......................40

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (2001)..32

*R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir.2005) ...................46

*Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 106 S.Ct. 925, L.Ed.2d 29 (1986) ...........................................................................56

*Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ..........55

iv

*Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995) ...........................................................................................................................18

*Sherman Bowling Center v. Roosevelt Park*, 154 Mich. 576 (1987).......................51

*Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978) ...............................55

*U.S. v. Owens Contracting Services*, 994 F.Supp. 1095, 1108 (E.D.Mich.1994) ...25

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998) .................................................18

*University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)........................................................................................................17

*Van Buren Tp. v. Garter Belt, Inc.*, 258 Mich App 594, 610, 673 N.W.2d 111 (2003) ...........................................................................................................................31

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ...................................................... 33, 34

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 .....55

*Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)...................22

*Westlake Transportation*, 255 Mich App at 619, 662 NW2d 784..........................37

*Wheeler v. Charter Tp. Of Shelby*, 265 Mich App 657, 957 NW2d 180 (2005).....37

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 376-77, 172 L.Ed.2d 249 (2008) .......................................................................54

**RULES**

Fed. R Civ. P. 65 .....................................................................................................18

Fed. R. Civ. P. 10 ....................................................................................................25

Fed. R. Civ. P. 12(b)(6)............................................................................................25

Fed. R. Evid. 408 .....................................................................................................26

**STATUTES**

125.3306...................................................................................................................21

v

M.C.L. § 125.3042 ..................................................................................21

M.C.L. § 125.3307 ..................................................................................21

M.C.L. § 125.3308 ..................................................................................21

M.C.L. § 125.3402 ..................................................................................21

M.C.L. § 436.1536(7)(g) .........................................................................50

M.C.L. § 436.501(2) ...............................................................................54

M.C.L. §§ 125.3305 ................................................................................21

M.C.L. §436.1916(11) ............................................................................51

MCL § 125.3605 .....................................................................................22

## OTHER AUTHORITIES

Mich. Admin. Code R. 436.1003 ............................................................53

Mich. Admin. Code R. 436.1403(1) .......................................................51

Michigan Zoning Enabling Act ("MZEA") .............................................20

1843295 v1

I.    **INTRODUCTION**

    A.  **The Parties**

        *1.  Peninsula Township and the PTZO*

Peninsula Township ("Township") is a Township in Northern Michigan with a rich history of natural sights, as well as a long tradition of promoting agricultural and farming activities.  Its first Master Plan, adopted in 1968, included protecting agricultural lands as a goal.  In 1972, the Township adopted the Peninsula Township Zoning Ordinances ("PTZO"), at issue in this matter, which included establishment of the A-1 Agricultural District.  The Agricultural District is still the same land nearly fifty years later.  Back then, the only vineyard/winery within the Agricultural District was Plaintiff Chateau Grand Traverse.  The A-1 zoned areas limited uses such as the production, processing and wholesale and retail sales of various agricultural products.

In 1991, the Township amended its Master Plan to specify further the preservation and protection of two land areas within the Township:  The Agricultural Preserve Area and the Prime Scene View area.  In 1994, furthering these goals, the voters of the Township approved a tax increase of 1.25 mills to preserve, **in perpetuity**, the agricultural and open space character of the Township.  This direction was affirmed by the Township's voters in 2002 when they approved another millage of 2 mills for the 201 years that followed.

1

With these goals in mind, the PTZO included permits for wineries within the Township, which had options such as Farm Processing Facilities, permitting selling wine and food in accordance with agricultural regulations while permitting other bar/restaurant operations in commercial zones.  These established areas within the Agricultural District remain to this day and have operated to a point where eleven wineries operate within the Township, all of whom are Plaintiffs.

### 2. *Plaintiffs/WOMP*

Plaintiffs are primarily comprised of wineries operating under Special Use Permits ("SUP") which the Township previously approved consistent with the PTZO.   They are:

- *Chateau Grand Traverse*:  Around since prior to the 1972 enactment of the PTZO and now operating as a Winery-Chateau since SUP approval in 1994;

- *Bowers Harbor Vineyard*:  First operated as a Food Processing Plant and recently approved via SUP to operate as a Winery-Chateau in July 2019;

- *Chateau Chantal*:  Operating as a Winery-Chateau since SUP approval in 1990;

- *Black Star Farm*:  Operating as a Food Processing Plant since SUP approval in 1994;

- *Peninsula Cellars*:  A Food Processing Plant with a Remote Tasting Room since SUP approval in1998;

- *Tabone Vineyards*:  A Farm Processing Facility since SUP approval in 2000;

- *Brys Winery*:  A Winery-Chateau since SUP approval in 2001;

- *Two Lads*:  Operating as a Farm Processing Facility since 2007;

- *Oosterhouse Vineyards*:  A Winery-Chateau since SUP approval in 2013;

- *Hawthorne Vineyards*:  A Winery-Chateau since SUP approval in 2020;

- *Villa Mari*:  SUP approved as a Winery-Chateau.

Plaintiffs also include Wineries of Old Mission Peninsula ("WOMP"), a non-profit corporation with its members being the Plaintiffs above.

### B. <u>Summary of Claims</u>

This lawsuit and Plaintiffs' Motion are unsupported factually and legally and constitute an end around attempt to force the Township to change certain zoning ordinances as to Farm Processing Facilities, Winery-Chateaus and Remote Winery Tasting Rooms.  Plaintiffs claim that certain provisions  are unconstitutional, constitute regulatory takings and are preempted by the Michigan Liquor Control Code ("MLCC").  Their arguments are premised entirely upon an inadmissible legal opinion ("Opinion")  drafted by Gregory M. Meihn and the firm Foley & Mansfield, PLLP ("Firm"),[1] who were hired by the Township for the sole purpose of aiding the Township subcommittee that was engaged with Plaintiffs in settlement discussions on the very zoning issues that are now before this Court. The Township did not adopt or approve the opinions set forth in the Opinion and at

---

[1] The firm Foley & Mansfield, PLLC and Gregory M. Meihn, the author of the opinion letter, are not employees of Peninsula Township, but hired as counsel through a formal retainer agreement.

the November 2020 Board meeting, the Township Board publicly by motion, disagreed with and refused to adopt/approve the Opinions. Without the Opinion to substantiate their unfounded claims, these claims are legally and factually without merit and the Township requests that this Court deny the Plaintiffs' Motion.

## II.     FACTUAL BACKGROUND

### A.     Background of Negotiations

Negotiations regarding the PTZO can be traced back to March 12, 2019, when Plaintiffs' counsel sent correspondence to the Township regarding one of the Plaintiff wineries, Bowers Harbor Vineyards ("BHV").  (**Ex. 1**, 3.12.19 Letter). This letter discussed an application for land use variances submitted by BHV to the Township regarding their Winery-Chateau and that the Township was not enforcing certain PTZO provisions against BHV at that time.  The PTZO provisions from which BHV sought variance were Section 8.7.3(10)(c) and (h). Counsel claimed that the minimum site acreage and 75% production of crop use requirement were not enforceable as to BHV.  Plaintiffs' counsel argued these provisions were preempted by the MLCC.  (**Ex. 1**, p. 2).

Regardless, the Township subcommittee was tasked to engage BHV and all of the other wineries to find a suitable resolution.  Part of this task was to request the Firm provide an Opinion on the issues to help guide the subcommittee in its discussions with BHV and the wineries in the spirit of negotiating a resolution.  On

4

May 30, 2019, the Firm provided its Opinion stating that the provisions cited by

Plaintiffs' counsel were not preempted by the MLCC and provided a summary of

the new licensing requirements from the State of Michigan.  (ECF No. 3-5, Page

ID## 668-676).  Shortly thereafter, the Township subcommittee continued to

engage and negotiate with Plaintiffs to try and resolve the differences between the

Township's interests in maintaining the agricultural character of lands within their

jurisdiction and Plaintiffs' economic interests.   In a July 9, 2019 letter, one such

meeting was memorialized by Plaintiffs' counsel:

> Recently, Peninsula Township held a meeting with all the winery owners
> located within Peninsula Township to discuss issues that have arisen related
> to the Township's various winery ordinances.  At that meeting, the opinion of
> the winery owners was solicited as it relates to whether the current ordinances
> are working and as it related to the proposed revisions to the various winery
> ordinances that the **Township intends to work on over the next two years**.

(ECF No. 3-5, Page ID# 679)[emphasis added].

In furtherance of the discussions and negotiations, the Township

subcommittee inquired with the Firm about how to engage with the Plaintiffs

regarding their differences.  While noting in the Opinion that the Firm disagreed

with the opinion that the MLCC preempted the PTZO provisions, the Firm

provided a thorough analysis of the claims made by Plaintiffs' counsel in his July

9, 2019 letter to provide guidance to the subcommittee in the negotiations.  (ECF

No. 3-6, Page ID## 695-714).

From that point forward, the Township subcommittee and Plaintiffs continued to discuss and attempt to reconcile the differences with respect to the zoning ordinances as the Township Planning Commission was also endeavoring to perform a comprehensive re-write of the entirety of the PTZO, including the provisions applicable to the Plaintiffs.  Given the nature of the ongoing discussions with Plaintiffs, the Township did not want to propose new language to the PTZO regarding wineries without input, and to extent possible, agreement with Plaintiffs.

However, Plaintiffs determined it was in their best interest to inexplicably cease engaging with the Township in August 2020 when they were provided with the recent draft/template of the parties' discussions by the Township Planner with a request to comment and/or make modifications.  Plaintiffs never responded to the draft provided in August 2020 in August, September, or October 2020, and have refused overtures in November 2020 to reengage.  Instead, they filed this lawsuit.

### 1.    *PTZO Ordinances at Issue*

Plaintiffs have identified three general provisions within the PTZO which they claim are unenforceable:

- Section 6.7.2(19) – Farm Processing Facility
- Section 8.7.3(10) – Winery-Chateau
- Section 8.7.3(12) – Remote Winery Tasting Rooms

(ECF No. 3, Page ID# 439).

Based upon their pleadings, the Township presumes that there are no other

provisions within the PTZO with which the Plaintiffs have any issue.

### 2. *Farm Processing Facilities*

The first provision of the PTZO at issue is Section 6.7.2(19), applicable to

farm processing facilities in the Agricultural District.  The intent and purpose of

this land classification is important:

> This District is intended to recognize the unique ecological character of the
> Peninsula and to preserve, enhance, and stabilizing existing areas within the
> Township which are presently being used predominately for farming
> purposes, yet recognize that there are lands within the district being used
> predominately for farming purposes, yet recognize that there are lands within
> the district which are not suited to agriculture, therefore allowing other
> limited uses which are deemed to be compatible with agricultural and open
> space uses.

PTZO, Sec. 6.7.1 (ECF No. 1-1, Page ID# 81).

With this intent, the Townships permits various **uses by *right*** in these areas,

including a Farm Processing Facility.  PTZO, Sec. 6.7.2(19).  The intent of this

provision is equally important:

> It is the intent of this subsection to promote a thriving local agricultural
> industry and preservation of rural character by allowing construction and use
> of a Farm Processing Facility.  The Farm Processing Facility use includes
> retail and wholesale sales of fresh and processed agricultural produce but is
> not intended to allow a bar or restaurant on agricultural properties and the
> Township shall not approve such a license.  The majority of the produce sold
> fresh or processed has to be grown on the specific farm operation (land owned
> or leased for the specific farm operation) of the party owning and operating
> the Specific Farm Processing Facility.  Eight-five (85) percent of the produce
> sold fresh or processed has to be grown on Old Mission Peninsula.  Activities
> such as weddings, receptions and other social functions for hire are not

7

allowed, however, participation in approved township wide events is allowed. It is not the intent to grant any vested interest in non-agricultural uses of any structure built for a Farm Processing Facility.  This amendment is not intended to supersede any Conservation Easement.

Only Plaintiffs Two Lads and Black Star operate Farm Processing Facilities

and are subject to PTZO 6.7.2 (19), which requires:

- 85% of the juice for grape wine produced at such a facility will be from fruit grown in the Township to encourage the agricultural use of the A-1 land and preserve its character while permitting commercial activity (6.7.2(19)(b)(1)(ii and iii));

- Food sales are permitted on premises in accordance with the MLCC and Michigan Department of Agriculture permits[2] (6.7.2(19)(b)(1)(iv));

- Logo merchandise may be sold under certain conditions and items related to the farm operation and wine were permitted for sale as well, despite the agricultural zoning of the land (6.7.2(19)(b)(1)(v));

- At least 85% of the produce sold or processed shall be grown on the land "owned or leased" for the specific farm operation (6.7.2(19)(2)(I)).[3]

These requirements are legally enforceable, and consistent with the intent of this

provision of the PTZO and only apply to Two Lads and Black Star.

---

[2] Some of the actions proposed by Plaintiffs, or that they were already engaging in, involved commercial activities which opens them to commercial taxes.  Further, the Grand Traverse Health Division reached out to the Township with concerns that the septic systems were designed for wineries, not for food service.  (ECF No. 3-6, Page ID# 695).

[3] Based upon the Plaintiffs' pleadings and this Motion, it does appear that they contest the validity of subsections 6.7.2(19)(b)(3) through (b)(16) so they will not be addressed.

### 3.    *Winery-Chateaus*

The next provision challenged by Plaintiffs is Section 8.7.3(10), which

permits Winery-Chateaus to operate commercially in the Agricultural District

under certain conditions.  This provision stemmed, in part, from an August 15,

1989 public hearing regarding Winery-Chateaus.  A Winery-Chateau

subcommittee formed at that time concluded that "maintenance of agricultural

areas" was important and that this designation would encourage grape growing and

wine-making in the Township.  The provision now reads:

> It is the intent of this section permit construction and use of a winery, guest
> rooms, and single site subject to the provisions of this ordinance.  The
> developed site must maintain the agricultural environment, be harmonious
> with the character of the surrounding land and uses, and shall not create
> undue traffic, congestion, noise, or other conflict with the surrounding
> properties.

PTZO, 8.7.3(10)(a).

The clear intent is to permit Plaintiffs meeting the requirements of a Chateau to

engage in commercially-related activities on agricultural land that the Township

and its citizens have deemed invaluable years before Plaintiffs were in business.

### 4.    *Remote Tasting Rooms*

The last provision challenged by Plaintiffs is 8.7.3(12) and applies to tasting

rooms.  The intent of that provision is:

> It is the intent of this subsection to allow wine tasting in a tasting room that is
> not on the same property as the winery with which it is associated and to
> establish reasonable standards for the use.

9

PTZO, 8.7.3(12)(a).

This is another commercial use being permitted in the Agricultural District intended to maintain the character and use of that land while allowing Plaintiffs latitude for commercial activities that benefit them.  This provision requires that the winery manages the tasting room, that the wine tasted there be produced at the winery, permits sale of wine by the glass and by the bottle and retail sale of some food items.  The insignificant restrictions are consistent with the overarching intent of all the PTZO provisions.

## III.   <u>STANDARD OF REVIEW</u>

Fed. R Civ. P. 65 governs requests for preliminary injunctions.  The general purpose of a preliminary injunction "…is to merely preserve the relative positions of the parties until a trial on the merit can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981).  It is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits.  *Id.*; *E.g., Brown v. Chote*, 411 U.S. 452, 457, 93 S.Ct. 1732, 1735 (1973).  When deciding whether to issue a preliminary injunction, district courts in the Sixth Circuit consider the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997)

(en banc)(quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026,

1030 (6th Cir.1995).  These factors are to be balanced against each other.  *United*

*Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit*

*Auth.*, 163 F.3d 341, 347 (6th Cir.1998)(citation omitted).

"A preliminary injunction is an extraordinary remedy which should be

granted only if the movant carries his or her burden of proving that the

circumstances clearly demand it.  *Leary v. Daeschner*, 228 F.3d 729, 736 (6th

Cir.2000)(citing *McPherson*, 119 F.3d at 459).  Indeed, the Plaintiffs bear the

burden of proving that an injunction is proper.  *Overstreet v. Lexington-Fayette*

*Urban County Gov't¸* 305 F.3d 566, 573 (6th Cir.2002).  The proof required to

obtain a preliminary injunction is much more stringent than the proof required to

survive a summary judgment motion.  *Leary*, 228 F.3d at 729.

Plaintiffs' arguments and case law fall short of meeting the above standards

and a balancing of the four factors does not warrant the issuance of the

"extraordinary remedy" of a preliminary injunction.

## IV.   LAW AND ARGUMENT

### A.   Procedural Process is Ignored and WOMP Lacks Standing

Prior to addressing the merits of Plaintiffs' Motion, the Township must

address two fundamental flaws in Plaintiffs' lawsuit:  (1) A statutory process exists

for amending the PTZO rather than Plaintiffs strong-arming the Township; and, (2) WOMP does not have standing in this matter,[4] a fact detrimental to their ability to pursue these claims.  These issues preclude the request for injunctive relief.

**B.      Statutory Process for Amending Ordinances**

In their Complaint and Motion, Plaintiffs cite the Michigan Zoning Enabling Act ("MZEA"), claiming the PTZO violates the same.  (ECF No. 1, Page ID## 28-29).  Indeed, Plaintiffs claim that the PTZO "do[es] not promote public health, safety, and welfare" as contemplated by the MZEA.  (*Id.*, Page ID# 29, ¶ 183).  Plaintiffs' argument is incredulous.  The very intent and purpose of the PTZO is to "…protect the public health, safety, morals and general welfare of the inhabitants of the Township…" PTZO, 2.1.

Instead of going through the amendment process that was started in March 2020 and provided by the MZEA, Plaintiffs filed this lawsuit to avoid a statute they claim is violated.  The MZEA  proscribes the exact method in which an ordinance may be amended.  While the Township has attempted to engage in this very process, Plaintiffs have abandoned it.  The steps for amending an ordinance under the MZEA can be summarized:

---

[4] The Township intends to file a Motion for Partial Dismissal pursuant to Fed. R. Civ. P. 12(b) on this issue as to WOMP and as to nine of the other Plaintiffs alleging claims as they either have no standing and/or have failed to state a claim upon which relief may be granted.  The Township incorporates that Motion by reference herein via Fed. R. Civ. P. 10.

- The Planning Commission considers amended zoning language and holds at least one public meeting.  M.C.L. §§ 125.3305, 125.3306;

- The proposed amendments proceed to the zoning commission for further review.  M.C.L. § 125.3307;

- The proposed amendments are reviewed by the Township Board, with any comments from the initial public hearing.  M.C.L. § 125.3308;

- If necessary, the Township Board may hold another public hearing and if requested by interested property owners, must do so.  M.C.L. § 125.3402;

- If approved by a majority of the Township Board, the proposed amendments are published within 15 days of adoption, then permitting its citizens to file a petition, if desired, to put the amendments to a vote.  M.C.L. § 125.3042.

The Township has attempted to engage in negotiations with the Plaintiffs regarding their disagreement with the enforcement of these certain PTZO provisions. Plaintiffs have not alleged that they filed applications for Special Land Uses that were denied or any application for a variance or otherwise.  Plaintiffs do not claim they have been prohibited from operating during certain times of the night; or that they have been prohibited from providing food or any other service.  Indeed, they just seek to force the Township to amend its PTZO without any regard for one of the statutes under which they seek remedy.  This borders on a violation of separation of powers between the Township's local government and this Court's jurisdiction.  *See, e.g., Armstrong v. Ypsilanti Charter Township*, 248 Mich App 573, 585-587, 640 NW2d 321 (2001).

The MZEA grants local units of government authority to regulate land development use through zoning.  *Olsen v. Chikaming Township*, 235 Mich App 170, 179, 924 NW2d 889 (2018), citing *Maple BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich App 505, 515, 838 NW2d 915 (2013).  The MZEA also provides for judicial review of a local unit of government's zoning decision, providing that a decision of a zoning board of appeals is final, subject to appellate review by the circuit court.  MCL § 125.3605, *Olsen*, *supra* at 179.  Plaintiffs have not alleged or even attempted to go through the proper statutory channels, but seek special treatment from this Court to completely bypass Michigan law. In doing so, their request for an injunction is completely premature and should be denied.

### C.   WOMP Lacks Standing

WOMP is identified in the Complaint as a non-profit corporation operating in the Township.  (ECF No. 1, ¶ 14).  Based upon information on the WOMP website, re-branded as "Old Mission Peninsula Wine Trail," the organization self-describes itself:

> The Wineries of Old Mission Peninsula is a non-profit trade organization 501(C)(6) that includes ten wineries located on Old Mission Peninsula. The organization is dedicated to marketing the Old Mission Peninsula wineries and wine trail to tourists and visitors of the Traverse City area through collective advertising, branding, media relations, social media, and events. In 2001, five of the ten (current) partner wineries came together with a goal of bringing more people to their tasting rooms. Chateau Chantal, Bowers Harbor Vineyards, Chateau Grand Traverse, Peninsula Cellars, and Brys Estate were the only wineries on the peninsula at the time. In May 2002, the group was officially registered as the Old Mission Wine Growers Association. Since

14

then, the name changed to Wineries of Old Mission Peninsula and eventually to the Old Mission Peninsula Wine Trail.[5]

Because WOMP cannot articulate any harm to it and owns no property that is subject to the PTZO, it does not have standing in this case.

Indeed, in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197 (1975), the Supreme Court dismissed claims filed by various groups, including a non-profit organization in Rochester, NY which claimed that the defendant town's zoning ordinance violated their constitutional rights and violated civil rights statutes.  The Court dismissed the claim because all the plaintiffs lacked standing.  The Court held that "…**a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him**…" and without such allegations of "**particularized injury**", there is no need for judicial review.  *Id.* at 508.  The Court determined "the record devoid of the necessary allegations" because "…none of these petitioners has a present interest in any [municipal] property; none is himself subject to the ordinance's strictures; and none has even been denied a variance or permit by respondent officials."  *Id.* at 504.

Here, WOMP is merely a non-profit group of which the other Plaintiffs are apart.  Just as in *Warth*, it is not subject to the PTZO provisions itself nor does it

---

[5] See https://www.ompwinetrail.com/frequently-asked-questions/

have any financial interest in the other Plaintiffs.  Indeed, as a 501(c)(6), "whose purpose is to promote the common business interest and not to engage in a regular business of a kind ordinarily carried on for profit," WOMP cannot be fairly said to have any cognizable financial interest here.  I.R.C. 501(c)(6).  Moreover, in their ten-count Complaint and through one hundred and twenty-seven preliminary "factual" allegations, Plaintiffs have not articulated a single allegation which supports that any constitutional right afforded WOMP is being violated, how it is being deprived of the same, or how WOMP would incur any harm if their attempts to amend the PTZO through direct litigation are denied.  Accordingly, the Township requests that this Honorable Court dismiss WOMP from the complaint pursuant to Rule 12(b)(1) and (b)(6).

### D.    Reliance on Attorney Opinions During Negotiations is Improper

Plaintiffs spend considerable effort claiming that the Township has admitted certain provisions of the PTZO are against the law.  In doing so, they rely exclusively upon opinion letters drafted by the Firm.  (E.g., ECF No. 1, Page ID## 16-19,  ECF No. 3, Page ID## 16, 19, 32-33).  Plaintiffs' argument is flawed as they offer no action, adoption or discussion by the Township Board with respect to the Firm Opinion on these issues.  The Court will recall, the Firm was hired to provide an opinion on the issues by the Township for the sole purpose of aiding the Township subcommittee that was engaged with Plaintiffs in settlement discussions.

16

The Township Board did not adopt or approve the opinions set forth in the Opinion and in fact, at the November 23, 2020 Board meeting, the Township Board, publicly disagreed with some of the opinions provided in the Opinion and refused to adopt or approve the Opinions as its own.

Moreover, these opinions were part of negotiations, just as the opinions provided by Plaintiffs' counsel (E.g., ECF No. 1-4), regarding the PTZO provisions at issue in this lawsuit that were made before this litigation was filed. Indeed, in the most recent Opinion, the Firm made it clear that "…the Township seeks to work collaboratively with the Wineries in any future amendments to its ordinances…" (ECF No. 3-6).  The Sixth Circuit has recognized that statements made in these types of negotiations are often motivated by "a desire for peace rather than from a concession of the merits of claim;" and while parties may assume disputed facts to be true for negotiation purposes, this does not result in "the sort of evidence which parties would otherwise actually contend to be true." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (2003)(quoting *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D.Cal.1990).

Fed. R. Evid. 408 also mandates that "[a]s a matter of general agreement, evidence of an offer to compromise a claim is not receivable in evidence as an admission of, as the case may be, the validity or invalidity of the claim."  By presenting these opinions to the Court as admissions and frankly, by using them at

all in that regard, Plaintiffs are violating Fed. R. Evid. 408.  Moreover, an attorney's interpretation of the law is generally not binding on its client.  *See U.S. v. Owens Contracting Services*, 994 F.Supp. 1095, 1108 (E.D.Mich.1994).  The Opinion is not binding on the Township in this case as the Township specifically did not approve or adopt the Opinion at the November 23, 2020 Board meeting.

As a result, Plaintiffs' excessive overreliance on these opinions is not only improper but should be disregarded entirely.  Without them, Plaintiffs have failed to present and cannot present *any* evidence that the Township has adopted the Opinion as their own or that the PTZO are violative of their rights.

### E.   Plaintiffs' Request for Preliminary Injunction Should be Denied

#### 1.   *Plaintiffs Do Not have a Strong Likelihood of Success on the Merits*

As to the request for an injunction, the Township begins by addressing a crucial factor:  "whether, despite the failure to follow statutorily guided procedure and lacking standing, the Plaintiffs can demonstrate a likelihood of success on the merits.  In evaluating the same, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'"  *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009), citing *Sofinet v. INS*, 188 F.3d 703, 707 (C.A.7 1999).  As noted in the Standard of Review above, something "[m]ore than a mere 'possibility' of relief is required."  *Id.*

When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other.  See, *e.g., Curry v. Baker*, 479 U.S. 1301, 1302, 107 S.Ct. 5 (1986).  Plaintiffs must demonstrate "a strong or substantial *likelihood* or *probability* of success on the merits." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)(emphasis in original).  Additionally, when a court "lacks sufficient information" about facts necessary to determine the likelihood of success, a plaintiff has not borne his burden with respect to this factor. *See Nowell v. Hickey*, 2001 WL 381943 at *2.  While the factors are to be balanced, the failure to show a likelihood of success on the merits is fatal. *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.2000).

Here, Plaintiffs argue that they will succeed on claims that the PTZO violates the First and Fourteenth Amendment speech restrictions (ECF No. 3, Page ID## 456-469); that the PTZO Ordinances violate the Commerce Clause and Dormant Commerce Clause (*Id.*, Page ID## 469-470); that the PTZO Ordinances result in a regulatory taking (*Id.*, Page ID## 470-471); and that the PTZO Ordinances at issue are preempted by the Michigan Liquor Control Code.  (*Id.*, Page ID## 471-476).  The Township will address each in turn.

### i.      *PTZO Does Not Violate 1st or 14th Amendment Protections*

The Plaintiffs claim that the PTZO violates free speech concerns under the First Amendment is profoundly wrong and misguided.  (*Id.*, Page ID## 456-469). There are no provisions of the PTZO at issue that violate the First Amendment.

### a.      *Compelled/Suppressed Speech*

Plaintiffs argue that certain PTZO provisions, including 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a), applicable to Winery-Chateaus only, and 6.7.2(19)(v) compel speech by requiring them to provide promotional brochures, maps and related promotional materials as a part of their operation.  The Township acknowledges that "[t]he First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation."  *Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561, 100 S.Ct. 2343 (1980).  A restriction on protected commercial speech is reviewed under a four-prong test:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. [*Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), citing *Central Hudson Gas & Electric Corp.*, 447 U.S. at 563-566.].

Such a review here demonstrates that the protection of commercial speech is not limitless, and ordinances like those here pass constitutional muster.

In *Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457, 117 S.Ct. 2130 (1997), the Supreme Court held that marketing orders applicable to California fruit producers requiring them to pay for and use generic California-focused advertising as a part of their operation did not violate the First Amendment as compelled speech. The Supreme Court reasoned that none of the advertising "**promotes any particular message other than encouraging consumers to buy California tree fruit**" and that **"Respondent's criticism of generic advertising provides no basis for concluding that factually accurate advertising constitutes an abridgment of anybody's right to speak freely**." *Id.* at 472, 474. [emphasis added].

Just as in *Glickman*, there is nothing in the PTZO provisions cited by Plaintiffs that do anything more than encourage consumers to buy and enjoy the Township's wine, sites and natural surroundings.  They are not required to provide any particular message through generic Township advertising and are not otherwise restricted from promoting or advertising their own products.  As contemplated by the factors from *Central Hudson*, there is nothing about this advertising that is misleading or unlawful; it seeks to implement a substantial governmental interest in the Township's preservation of its lands and promotion of its local products; it clearly advances that interest and it does not

overextend further than is necessary.  Plaintiffs have failed to demonstrate that they are being compelled to engage in commercial speech contrary to this test.

Plaintiffs also argue that the PTZO 6.7.2 (19)(b)(v) improperly restricts their commercial speech.  Whether compelling or restricting, the *Central Hudson* test remains controlling on speech cases.  PTZO 6.7.2(19)(b)(v) provides that logo merchandise may be sold by a Farm Processing Facility as a matter of right provided it relates to use and consumption of the agricultural produce, the logo is affixed, and there are certain items specifically allowed and not allowed (clothing, coffee cups, bumper stickers).  Section 6.7.23(19)(b)(v) does not violate the First Amendment as the PTZO specifies the intent of the ordinances applicable to Farm Processing Facilities:  "to preserve the agricultural environment in the Agricultural district of the Township. (See 6.7.2(19)(a))."  The insignificant restrictions on what are specifically allowed or not specifically allowed does not preclude anything else.  There has been no showing that Plaintiffs have been prevented from advertising, merchandising their brands or selling any items they wish to sell to anyone.  Plaintiffs have failed to show any improper restriction or compelling of speech.

### b.    *Prior Restraint and Vagueness*

Plaintiffs next argue that  PTZO  8.7.3(10)(u)(2)(a) through (d) constitute

prior restraints and are unconstitutionally vague.  Neither is true.  "Statutes and

ordinances are presumed to be constitutional and the burden of proving

otherwise rests with the challenger." *Van Buren Tp. v. Garter Belt, Inc.*, 258

Mich App 594, 610, 673 N.W.2d 111 (2003), citing *Gora v. Ferndale*, 456

Mich. 704, 711-712, 576 N.W.2d 141 (1998); *People v. Boomer*, 250 Mich App

534, 538, 655 N.W.2d 255 (2002). Further, a statute or ordinances is construed

"...as constitutional unless it unconstitutionality is clearly apparent." *Id.* citing

*Owosso v. Pouillon*, 254 Mich App 210, 213, 657 N.W.2d 538 (2002); *People v.*

*Barton*, 253 Mich App 601, 603, 659 N.W.2d 654 (2002).

The term "prior restraint" is used to describe an administrative or judicial

order that forbids certain communications in advance of the time that the

communications are to occur. *Alexander v. United States*, 509 U.S. 544, 550,

113 S.Ct. 2766 (1993). "Temporary restraining orders and permanent

injunctions, which actually forbid speech activities, are classic examples of prior

restraints." *Id.*  Ordinances that are content-neutral and do not place the entirety

of control within city officials' discretion are not prior restraints. (See, e.g.,

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (2001)

an ordinance regulating the decibels of music played at a concert venue did not burden the content of protected speech or permit unfettered official discretion).

Here PTZO 8.7.3(10)(u)(2)(a) through (d) are content-neutral and permit the Plaintiffs to associate with organizations, groups, as well as advertise, sell items, etc. without the entirety of control within the Township's control.  These location-specific (agricultural district) and narrowly tailored PTZO provision are not prior restraints because they merely place minimal conditions on these activities—they are not entirely precluded as is required for a prior restraint. While Plaintiffs argue that they have been prevented from hosting events—that simply is not the case—they just do not want to comply with the bare minimum requirements of the PTZO because these narrowly tailored conditions require them to plan ahead.  This is not prior restraint, they are conditional approvals.

As none of these ordinances are prior restraints, the Township next addresses whether Section 8.7.3(10)(u)(4)(a) is unconstitutionally vague.  The legal standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298 (1972) and require that those against whom they're enforced must know what is prohibited and arbitrary/discriminatory enforment may also render a law impermissibly vague. *Id.*, cited by *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186 (1982) (in which the United States Supreme

24

Court reversed a ruling that an ordinance regulating the sale of paraphernalia "designed for use" in connection with drugs was not unconstitutionally vague even where the language of the ordinance contained ambiguities in the guidelines and concerns of insufficient standard for enforcement).

In reviewing a business regulation for vagueness, "the principal inquiry is whether the law affords for warning of what is proscribed." *Id.* at 503. "Moreover, this emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law." *Id.* Where there is no evidence as to "whether the ordinance has been enforced in a discriminatory manner..." it is not unconstitutionally vague. "...[T]he speculative danger of arbitrary enforcements does not render the ordinance void for vagueness." *Id.*, Cf. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171, 92 S.Ct. 839, 846-848 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688 (1971).

In arguing the Township's ordinances are unconstitutionally vague, Plaintiffs cite 8.7.3(10)(u)(4)(a) regarding SUP for Guest Activity Uses. In accordance with applicable case law, there is no evidence submitted by Plaintiffs that this section has been enforced in a discriminatory way and the Plaintiffs are put on notice of exactly what is proscribed and how it is determined by the Township. The guidelines in subsections (4)(a)(i) through (4)(a)(iii) are clear and require no interpretation whatsoever; there is nothing vague about them. Plaintiffs have also previously cited

25

the Remote Tasting Room ordinances, PTZO 8.7.3(12), for which none of them have articulated any use or facts related to the same, as vague, but these provisions are not unconstitutionally vague. Again, the standards under which the PTZO 8.7.3(10)(u)(4) and all of the portions of 8.7.3(12) could be enforced are clear to those subject to it and fully informs those of what is proscribed. Speculative danger of arbitrary enforcement does not preemptively render these sections unconstitutionally vague. *Cf. Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171, 92 S.Ct. 839, 846-848 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, (1971); *See also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186 (1982).

Plaintiffs have failed to identify any PTZO provisions constituting prior restraints or that are constitutionally vague and have otherwise failed to support the claim that the PTZO impermissibly infringes on their First Amendment rights.

### ii.  *PTZO Does Not Violate the Commerce Clause or Dormant Commerce Clause*

Plaintiffs claim that certain portions of Section 8.7.3(10) violate the Commerce Clause and Dormant Commerce Clause.  (ECF No. 3, Page ID## 469-470).  In doing so, Plaintiffs rely **exclusively** on the Opinion of the Firm and the interpretation provided.  The entirety of this argument set forth by the Plaintiffs is that the Firm opined in a certain manner, the Township is thus bound by it and as a

result, there can be no dispute that there is a likelihood of success on the merits. This argument is improper and unsustainable.

First, for the reasons set forth above in Section IV(D) of this Response, the Firm Opinions are *not* admissions of the Township and their presentation as such by the Plaintiff should be wholly disregarded. Second, the Opinion was provided to the Township subcommittee who was involved with the Plaintiffs to negotiate an amicable resolution of the parties. Third, the Township never approved or adopted the Opinions of the Firm and in fact the Township, at its November 23, 2020 Board meeting disagreed with some of the opinions provided in the Opinion and refused to adopt or approve the Opinions.

The wholesale reliance by Plaintiffs on the Opinions is enough to fully defeat their argument that they will be successful on the merits because they have completely failed to demonstrate the Township has admitted any of those conclusions.

Although Plaintiffs do not even provide any substantive argument to address it, the five PTZO provisions, 8.7.3(10)(u)(2)(b) and (c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3) and 6.7.2(19)(b), cited by the Plaintiffs do not violate the dormant Commerce Clause. The test to for determining whether a regulation or ordinance violates the dormant Commerce Clause involves a two-step analysis. The first inquiry is whether the challenged statute or ordinance facially discriminates against

interstate commerce. *C&A Carbone, Inc. v. Clarkston, New York*, 511 U.S. 383, 390, 114 S.Ct. 1677 (1994). "In other words, the inquiry concerns whether the statute or ordinance evinces 'a discriminatory purpose or merely a discriminatory effect.'" *Nat'l Solid Waste Mgt. Ass'n v. Pine Belt Regional Solid Waste Mgt. Auth.*, 389 F.3d 491, 497 (C.A. 5, 2004). Only if it is facially discriminatory will the governmental body then be required to show it has no other means to advance a legitimate local interest. *Wheeler v. Charter Tp. Of Shelby*, 265 Mich App 657, 957 NW2d 180 (2005), citing *C&A Carbone*, 511 U.S. at 392.

Plaintiffs have not argued nor do any of the PTZO provisions referenced just above contain language that would lead to a determination of "facial discrimination" against interstate commerce. As such, the question becomes whether the ordinance "merely regulates evenhandedly with only incidental effects upon interstate commerce." *Wheeler*, *supra* at 669, citing *Westlake Transportation*, 255 Mich App at 619, 662 NW2d 784 (citing *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. 1345). "The statute or ordinance will be upheld under this balancing test 'unless the burden imposed on interstate commerce is clearly excessive in retaliation to the putative local benefit.'" *Id.*

Here, the PTZO 8.7.3(10)(u)(2)(b) and (c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3) and 6.7.2(19)(b) do not present any "clearly excessive" burden on interstate commerce that would be deemed "in retaliation to the putative local

benefit."  These ordinances proscribe certain rules for non-profit meetings, agricultural group meetings, wine service, purchase of Township fruit and purchase of out-of-state grapes.  The Court is reminded of the very purpose and intent of this PTZO provision—**agricultural preservation, not economic protectionism.**  Indeed, the PTZO provisions do not prevent any wine manufacturer from making wine with grapes from Michigan or California or anywhere else.  **However, to the extent that a Farm Processing Facility *chooses* to locate itself within an A-1 Agricultural district, yes, they must process at least 85% local produce.  PTZO, 6.7.2.(19)(b)(2)**.

The intent is crucial: "to permissibly encourage agricultural activity in an agricultural district at an otherwise **commercially-motivated facility**."  As to Winery-Chateaus, the same is true.  When they offer activities beyond wine tasting, the PTZO requires a minimal volume of grapes to be grown locally, again to ensure that a "**commercially-motivated activity**" retains a connection to the agricultural purpose and zoning of the very land upon which the Plaintiffs operate.  PTZO 8.7.3(10)(u)(3).  These local benefits and concerns are paramount in this region of Michigan and are not only specifically contemplated by the PTZO, but have been upheld by Courts in this jurisdiction.

For instance, in *City of Cleveland v. City of Brook Park*, 893 F.Supp. 742 (N.D. Ohio 1995), the Court upheld a zoning ordinance limiting the construction of

new runways despite claims it violated the dormant Commerce Clause.  The Court reasoned that because the ordinances affected merely commerce generally, there was no violation.   *Id.* at 754.  The Court determined that the defendant's interest in determining the appropriate use of its land was a "substantial" one and although there was an effect on interstate travel, there was no violation of dormant Commerce Clause principles.

In addition, Plaintiffs have failed to explain how the PTZO favors in-state economic interests while burdening out-of-state interests.  Courts in this jurisdiction have held that this is insufficient to assert such a claim, let alone to succeed on the merits.  Indeed, in *Loesel v. City of Frankenmuth*, 2009 WL 1449049 (**Ex. 2**), the Court followed the reasoning in *City of Cleveland*, noting the Plaintiffs failed to explain how a statute "favors in-state economic interests while burdening out-of-state interests…" *Id.* at *3.  The Court reached this conclusion even where the plaintiff had provided an economic report purportedly demonstrating the financial benefit to them.  *See also Planet Aid v Ypsilanti Twp.*, 26 F.Supp.3d 683 (E.D. Mich. 2014)(where the Court dismissed claims of dormant Commerce Clause violations where the ordinance at issue applied "equally to all property owners within its boundaries", failed to demonstrate that it was being enforced "in a discriminatory fashion against out of state economic interests" and

that without such a showing, that they were "not likely to succeed on the claim that [the township's] zoning ordinance violates the Dormant Commerce Clause…").

The Plaintiffs claims here suffer from the same defects in *City of Cleveland*, *Loesel* and *Planet Aid* described above. The PTZO provisions at issue evenhandedly promote a "substantial" local zoning interests—"the maintenance of primarily agricultural activities in a unique agricultural district." Any incident effect on interstate commerce is just that, merely incident, and any burden on interstate commerce is not excessive relative to the benefits of these local interests. For example, the PTZO treats grapes from the Township the same as those from Napa Valley in California. It does not serve to ban out-of-state or out of Township grapes, it merely limits the volume of out-of-town grapes that may be processed at Farm Processing Facilities. This is hardly a discriminatory effect and it impacts all non-local, i.e., out-of-state growers, the same. The Plaintiffs have wholly failed to support this argument and as such, failed to demonstrate any likelihood of success on the merits for their dormant Commerce Clause claims.

### iii. *No Regulatory Taking Has Occurred*

Plaintiffs next skeletally argue that Sections 8.7.3(10)(c) and (h) constitute a regulatory taking because the provisions require that a Winery-Chateau be a minimum of fifty (50) acres and that 75% of the property be used for fruit production. (ECF No. 3, Page ID## 470-471). The intent of the Winery-Chateau

31

provision is again important here.  See PTZO Sec. 8.7.3(10)(a).  The intent of the Winery-Chateau is "to permit construction and use of winery, guest rooms, and single site subject to the provisions of this ordinance"… as to be "…harmonious with the character of the surrounding land and uses…" and "…shall not create undue traffic, congestion, noise, or other conflict with the surrounding properties." To ignore this intent, Plaintiffs argue that sometimes, it is possible that complying with the 75% fruit production standard of the PTZO leads to situation in which the Plaintiffs could have used their property for other activities.  What, they do not say, nor do they argue that they are unable to comply these requirements.  Rather, they offer a speculative view that may be "practically impossible" to comply with these requirements and cite *Oschin v. Township of Redford*, 315 Mich. 359, 363 (1946).

In *Oschin*, the Court held the plaintiffs could not possibly use the land they had purchased without running afoul of the defendant township's **newly implemented** zoning ordinances.  *Id.* at 363.  In so holding, they noted that the proposed use would be out of line with the locality and was impractical.  *Id.* Given the passage of new zoning ordinances, it was impossible for plaintiffs to use the land as residential property without some modification by the defendant township and thus, the Court held that because it had previously been zoned as partially residential, this was not permitted.  *Id.* at 362-363.

*Oschin* is inapplicable here.  Plaintiffs only claim with respect to a taking, which the *Oschin* Court never considered or held that situation constituted a taking, is that there might be better uses for some parts of their property than growing the fruit production required under the PTZO.  It is not that they can't comply with the ordinance like in *Oschin*, it is simply that they do not want to.  This hardly amounts to a regulatory taking.  "A regulatory taking occurs when the Government prevents a [property] owner from making a particular use of the property that *otherwise would be permissible.*" *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 208 (2004), citing *McKay v. United States*, 199 F.3d 1376, 1382 (Fed.Cir.1999)[emphasis of original].  Plaintiffs have not identified any manner in which the PTZO restricts them from using their property nor do they even claim they are unable to comply with the requirement as in *Oschin*.  Accordingly, they have no likelihood of success on the merits as to their regulatory takings claims.

### iii.     The PTZO Ordinances are Not Preempted by the MLCC

Plaintiff exclusive argument regarding preemption is that they conflict with the MLCC and thus, are preempted by the same.  Plaintiffs cite these provisions that they claim are preempted:

- 8.7.3(10)(u)(5)(b) – hours of operation for a Winery-Chateau for Guest Activity Uses where approved by Special Use Permit;

- 8.7.3(10)(u)(2)(e) – mildly restricts food service while permitting numerous types of the same via Special Use Permit for Winery-Chateaus (ECF No. 3, Page ID## 474-475);

- 8.7.3.10(u)(5)(g) – as to off-site catering—**note that this is the provision cited by Plaintiffs and does *not apply* to catering of any kind**. (ECF No. 3, Page ID# 475).  The Township assumes Plaintiffs refer to 8.7.3(u)(5)(i) which states that Winery-Chateaus may only use their kitchen facilities for "on-site food service…but not for off sit catering";

- 8.7.3.10(u)(5)(g) – mildly restricts amplified voice and background music and does not permit "amplified instrumental music" at Winery-Chateaus (ECF No. 3, Page ID# 475).

None of these provisions above are preempted.

As the Court is no doubt aware, the MLCC is a Michigan state law enacted for, among other things, the creation of a commission "for the control of the alcoholic beverage traffic within [Michigan]," and the enforcement/regulation of alcohol in the State of Michigan.  There are two situations in which a state law *may* preempt municipal regulations:   (1) where the local regulation directly conflicts with a state statute, i.e., "express preemption"; or, (2) if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation, i.e., "field preemption."  *People v. Llewellyn*, 401 Mich. 314, 257 NW2d 902 (1977).

### a.     There is No Express Preemption

As to express preemption, a conflict only potentially exists "Between a local regulation and a state statute when the local regulation permits what the statute prohibits or prohibits what the statute permits." *McNeil v. Charlevoix County*, 275

Mich App 686, 697 (2007).  Thus, if the MLCC does not expressly address that

which the PTZO seeks to regulate, there can be no express preemption.  Moreover,

even if the MLCC does address areas that the PTZO addresses, as long as the

municipal ordinance is not more restrictive than the MLCC, there is no

preemption.  *Maple v. BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich App 5050

(2013).  The requirements set forth in PTZO 8.7.3(10), as cited by Plaintiffs are not

regulated by any provision of the MLCC

    Plaintiffs appear to argue that the ordinances dealing with hours of operation

and food service are expressly preempted by the MLCC.  In arguing they will be

successful on the merits as to the ordinance governing the hours of operation,

Plaintiffs cite two cases.  Both are distinguishable from the issues at hand and/or

those which they have overextended to fit their positions.

    First, in *Noey v. Saginaw*, 271 Mich. 595, 596, a Michigan Supreme Court

case from over fifty (50) years before the MLCC was passed, the Plaintiffs claim

that the liquor control commission's authority then in place are "binding upon all

licensees, and are not affected by the provision in the ordinance relating thereto."

(ECF No. 3, Page ID# 473).  However, *Noey* is not instructive here because the

ordinance at issue there was *not a zoning ordinance* as the PTZO ordinances are

here.  Rather, it was a blanket prohibition on the sales in that particular

municipality after midnight.  The PTZO ordinance regarding hours of operation for

businesses is applicable only to the businesses that *choose* to locate in the A-1

Agricultural District.  There is no provision of the PTZO that is applicable to the

Township as a whole as was present in *Noey* and it is thus, inapposite here and

unsupportive of express preemption.

Plaintiffs also rely upon *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d

427 (6th Cir.2005) to make a conclusory statement that because they have liquor

licenses, they have an undeniable right to serve alcohol until 2 a.m. under the

MLCC.  (ECF No. 3, Page ID## 472-473).  Again, this case is easily

distinguishable from the instant situation.  In *R.S.W.W.*, the Sixth Circuit

determined there was a valid claim *only* where an existing pub's request for

variance and site plan regarding a change with its sign was contingent upon the

municipality's demand that the pub change its hours of operation and close at 11

p.m.  That was a due process claim, and one the Sixth Circuit perhaps rightly held

articulated at least a valid cause of action.  There was no zoning ordinance

involved in any form or fashion in *R.S.W.W.* and in fact, the issue of preemption

was not even on the Court's radar, let alone discussed or opined upon.  Indeed, the

Township here is not attempting to take away some right the Plaintiffs previously

held.  They were not asked to change their hours to do anything else; there is no

quid pro quo, there is only the PTZO ordinance applicable to the same.  *R.S.W.W.*

36

is completely distinguishable and inapplicable to Plaintiffs' claims of express preemption.

Notably, a recent Michigan Supreme Court case from 2020 did consider a situation in which a township's zoning ordinance regarding medical marijuana activities which added to, but did not conflict with state law on the same issue was entirely property.  In *Deruiter v. Byron Twp.*, 505 Mich. 130, 949 NW2d 91 (2020), the defendant township enacted an ordinance regulating the location of medical marijuana growing facilities, prohibiting the same from being operated in commercial districts of the township, while allowing them in residential districts. While the plaintiff grower argued that the Michigan Medical Marijuana Act ("MMMA") expressly addressed where growing could take place, and that these requirements directly conflicted with that MMMA and that the requirements for a permit/fees were improper, the Michigan Supreme Court rejected all of these arguments.  Indeed, the Court held that it was acceptable for the zoning ordinance to add on to the MMMA with respect to location.  *Id.* at 143.     In so reasoning, the Court recognized that local zoning in Michigan can go further than state law applicable to a similar area and "add to the conditions" of the state law.  The Court relevantly explained:

> Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or

> forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective.

"Mere differences in detail do not render them conflicting."  *Id.*at 146-147.

In reaching this conclusion, the Court also relied upon *Miller v. Fablus Twp. Bd.*, 366 Mich. 250, 255-257, 114 NW2d 205 (1962)("a local ordinance that prohibited powerboat racing and water skiing between the hours of 4:00 p.m. and 10:00 a.m. was not preempted by a state law that prohibited the activity 'during the period 1 hour after sunset to 1 hour prior to sunrise'"); and *Detroit v. Qualls*, 434 Mich. 340, 363, 454 NW2d 374 (1990)("a city ordinance regulating the quantity of fireworks a retailer may store was not in conflict with a state law that limited possession to a 'reasonable amount.'").

These principles are entirely applicable to the Plaintiffs claim that the PTZO provisions regarding hours of operation, food service and off-site catering are expressly preempted by the MLCC.  To the extent the PTZO restrict these operations, the PTZO does so exclusively in the context of Guest Activities related to Winery-Chateaus, not wine-tasting and sale.  PTZO Sec. 8.7.3(10)(u).  The purpose and intent, as noted above, is to ensure that activities that are not agricultural in nature, but instead commercial, are regulated in A-1 Agricultural districts.  PTZO Sec. 8.7.3(10)(m).  Plaintiffs argue that because the MLCC permits or addresses hours of operations, food service and catering, that the PTZO

cannot address or restrict them.  In fact, the MLCC *allows* wine manufacturers with an on-premises tasting room to seek an add-on permit for catering, food service and extended hours, among other things.  M.C.L. § 436.1536(7)(g).  However, it is not required and the PTZO ordinances applicable to the same do not conflict with the MLCC in this regard.

Although the PTZO provisions applicable to food service and catering in this context appear to limit full restaurant service, Plaintiffs may still offer food service with wine tasting.  Just as in *Deruiter*, *Miller* and *Qualls*, even if Plaintiffs can demonstrate these restrictions go further than the MLCC, they do not restrict that which is otherwise allowed.  The MLCC does not require that Plaintiffs be given a "restaurant" by virtue of their liquor license, it merely provides the opportunity to do so with additional permitting.  PTZO does not restrict their ability to do so when associated with wine-tasting and is otherwise completely unrestrictive in non-Agricultural districts within the Township.  Both the MLCC and PTZO allow for food "add-ons" with proper authorization and there is no express conflict.

As to the PTZO provisions regarding hours of operation, Plaintiffs argue there is an obvious preemption issue.  However, the MLCC provides that a licensee "shall not sell, give away, furnish alcohol, nor allow the consumption of any alcoholic liquor"…"on the licensed premises between 2:00 a.m. and 7 a.m. on any day, except as otherwise provided in the rule.  Mich. Admin. Code R. 436.1403(1).

The PTZO requires a Winery-Chateau to cease activities by 9:30 p.m.  Similar to *Deruiter* and *Miller*, the hours of operation permitted by the MLCC does not require wine-tasting rooms to remain open until 2 a.m., but the PTZO goes further with respect to the hours of operation.  This is fully permissible under Michigan law and there is no express preemption present here.

Finally, as to the issue of amplified instrumental music, Plaintiffs argue that M.C.L. § 436.1916(11) allows for an orchestra, piano and other musical instrument performances, singing…" … "without an MLCC permit).  (ECF No. 3, Page ID# 475).  The PTZO merely restricts amplified instrumental music.  The plain statutory language of M.C.L. § 436.1916(11) provides no mention, let alone an allowance or absolute right to amplify instrumental music—it does not speak to this at all.  Yet, Plaintiffs argue that this is expressly preempted by the MLCC. This position is untenable under basic preemption principles and accordingly, none of the provisions of the PTZO cited by Plaintiffs are expressly preempted by the MLCC.

### b.     There is no Field Preemption

Plaintiffs argue, relying upon *Sherman Bowling Center v. Roosevelt Park*, 154 Mich. 576 (1987), that the MLCC preempts the PTZO provisions already discussed in this section in their entirety under principles of field preemption.  This blatantly ignores subsequent binding opinions by Michigan Courts  In *Jott v.*

40

*Clinton Township*, 224 Mich App 513 (1997), the Court examined a local

ordinance that attempted to prohibit public nudity in establishments that serve

liquor and the plaintiff argued the ordinance was preempted because the

establishment served alcohol.  The Court disagreed, holding that local communities

**should be permitted to regulate [liquor] traffic within their own bounds in the**

**proper exercise of their police powers**…"  *Id.* at 541, citing *Johnson v. Liquor*

*Control Comm.*, 266 Mich. 682, 685, 254 NW 557 (1934)[emphasis added].  As to

issues involving amplified music, the PTZO do not regulate all types of music or

entertainment, but rather, merely restricts the amplified nature of the same in

accordance with its ordinance intentions.

 More recently still, in *Maple v. BPA, Inc. v. Bloomfield Charter Twp.*, 302

Mich App 5050 (2013), it was determined that the MLCC does not preempt every

local ordinance tangentially related to the sale of alcoholic beverages.  There, the

Court distinguished *Sherman Bowling* from the *Maple* case because again, just as

*Noey* is inapplicable, there *was no zoning ordinance at issue*.  As of 2013, that

Court, and the Township here, "…could not locate authority by which the state

recognized local control of the area in question"  *Id.* at 512.  The Court explicitly

held that through *Jott*, **there is no field preemption for liquor control**.  *Id.* at 513

 There is no field preemption and the Township has the right to regulate

alcohol sales to the extent there is no express preemption under the MLCC, which

there is not.  The provisions of the MLCC *require* compliance with local

ordinances, contemplating that there may be ordinances regarding alcohol

operations even though the MLCC may address these issues as well.  For example,

under Mich. Admin. Code R. 436.1003, "[a] licensee shall comply with all state

and local building, plumbing, ***zoning***, sanitation and health laws, rules and

ordinances as determined by the state and local enforcement officials…"  An

application for a new liquor license actually must be denied in the event it is

determined that the applicant is not complying with local zoning laws.  Mich.

Admin. Code R. 436.1105(3).  And, in municipalities such as the Township with

less than 600,000 in population, an application for a liquor license must be

approved by the local legislative body.  M.C.L. § 436.501(2).

It is evident that the MLCC not only contemplates local ordinances regarding

zoning ordinances, but actually *requires* compliance with the same—hardly

something the Legislature would explicitly articulate if they intended zoning

ordinances such as the PTZO to be entirely preempted by the MLCC.  Just as with

their other arguments, Plaintiffs' arguments regarding preemption do not lend any

credence to their position that they will be successful on the merits of their claims

and a preliminary injunction is not justified.

### 2.    *Plaintiffs Will Not Otherwise Suffer Irreparable Injury*

Plaintiffs "must always demonstrate some irreparable injury before a preliminary injunction may issue." *Extracorporeal Alliance, LLC v. Rosteck*, 285 F.Supp.2d 1028, 1040 (N.D.Ohio 2003).  Plaintiffs request must be something more than the "possibility of irreparable injury," as this 'possibility' standard is too lenient.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 376-77 (2008).  The moving party must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154, (6th Cir.1991).  *See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365 (2008)("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

The support for Plaintiffs' "irreparable harm" are claims of losses of "hundreds of thousands of dollars due to the Winery Ordinances" and loss of "customer good will when they regularly turn them away [due to the PTZO]." (ECF No. 3, Page ID# 452).  They direct the Court to their Exhibit 2 and 3 in this regard.  Exhibit 2 is a series of letters between the Township and the various Plaintiff wineries regarding apparent PTZO violations committed by the Plaintiffs

from as early as June 2014 and as recently as April 2019.  (ECF No. 3-2, Page ID## 647-659).  These letters do not articulate any harm that has been done to the Plaintiffs other than that the Township has attempted to enforce its PTZO provisions that have not otherwise been held unconstitutional, preempted or otherwise impermissible.  Exhibit 3 is comprised of two of the Plaintiffs, BHV and Two Lads, regarding vague and unsupported claims that their businesses have lost hundreds of thousands of dollars and customer good will.  These exhibits are nothing more than the "possibility of injury" and are not irreparable.  They also do not account for *any* "irreparable harm" for the ten other Plaintiffs in this lawsuit.

Moreover, to the extent these claims for lost money is supportable, Courts have been clear:  a party moving for a preliminary injunction must establish more than mere monetary injury.  *Contech Casting, LLC v. ZF Steering Systems, LLC*, 931 F.Supp.2d 809 (2013), citing e.g., *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937 (1974).  *See also*, *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958)("[I]injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").  Finally, all the Plaintiffs are still in business—financial hardship and associated issues have been held sufficient

usually where the entity would be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978); *See also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir.1995).  That is not alleged nor is it the case here.  Plaintiffs have failed to demonstrate irreparable harm and this factor is detrimental to their claims for an preliminary injunction.  *See Lexington-Fayette Urban Cnty. Gov't v. BellSouth Telecomms., Inc.*, 14 Fed.Appx. 636, 639 (6th Cir.2001)(The Sixth Circuit agrees that this factor is "typically regarded as the most important" factor.); *See also City of Loss Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660 (1983)(an injunction is "unavailable absent a showing of irreparable injury).

### 3. *Substantial Harm to Others and Public Interest*

With respect to the final two factors of whether to grant request for preliminary injunction, Plaintiffs group these together, arguing in a conclusory statement the Township would not be harmed.  This argument completely ignores the harm to and safety of the public.

Under the law a municipality has the authority to enact zoning ordinances like those here, including those aimed at protection of property values and character of unique property are important and substantial.  *See Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 106 S.Ct. 925 (1986).  The clear intent of every section

the Plaintiffs seek to force the Township to change is to "preserve the unique nature of the agricultural lands" and restricting unfettered commercial activity on those lands is a substantial interest.  Preventing the Township's enforcement of these intentions would constitute hardship and irreparable harm to the Township and its residents who have relied upon the enforcement of the PTZO in their day to day life activities.  Also left unconsidered by the Plaintiffs are adjacent landowners and other non-winery-related lands in the Agricultural district who have a right to enjoy their land in the way the Township intended and for which they purchased it.  Allowing Plaintiffs to engage in excessive and uncontrolled commercial activity harms both the Township and its citizenry and weighs against a preliminary injunction.

## V.   <u>CONCLUSION</u>

Peninsula Township requests that this Court deny the Plaintiffs' request for preliminary injunctive relief.

s/ <i>Gregory M. Meihn</i>
FOLEY & MANSFIELD PLLP
130 E. Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
gmeihn@foleymansfield.com
P38939

Dated:  December 11, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2020, I electronically filed PENINSULA

TOWNSHIP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR

PRELIMINARY INJUNCTION with the Clerk of the Court using the ECF system.

s/ *Gregory M. Meihn*
FOLEY & MANSFIELD PLLP
130 E. Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
gmeihn@foleymansfield.com

Dated:  December 11, 2020         P38939

47

1843295 v1