UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
            Plaintiffs, )
) No. 1:20-cv-1008
-v- )
) Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
            Defendant. )
)

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs' motion for a preliminary injunction (ECF No. 2). Plaintiffs seek to enjoin several subsections of Defendant Peninsula Township's Zoning Ordinance. For the reasons to be explained, the motion will be denied.

### I.

Plaintiff Wineries of Old Mission Peninsula Association ("WOMP") is a Michigan non-profit corporation comprised of member wineries. Ten of the eleven individual winery Plaintiffs are WOMP members; Bonobo Winery (associated with Plaintiff OV the Farm, LLC) is not. Each of these Plaintiffs are located on Old Mission Peninsula in Peninsula Township, Michigan.

Defendant Peninsula Township adopted its Zoning Ordinance on June 5, 1972. The Zoning Ordinance has been amended several times since then, but it remains applicable in Peninsula Township (*see* ECF No. 3-1). Plaintiffs complain that subsections of three provisions are "draconian" and unconstitutional: Section 6.2.7(19), governing Farm

Processing Facilities;[1] Section 8.7.3(10), governing Winery-Chateaus;[2] and Section 8.7.3(1), governing Remote Winery Tasting Rooms.[3] By the Court's count, within these three sections, Plaintiffs challenge at least 11 specific subsections as violative of several parts of the Constitution:[4]

| Ordinance | Constitutional Argument |
|---|---|
| 6.7.2(19)(b)(v) <br> 8.7.3(12)(i) <br> 8.7.3(12)(k) | Content-based speech regulations that violate the First Amendment |
| 8.7.3(10)(u)1(b) | Compelled speech that violates the First Amendment |
| 8.7.3(10)(u) | Prior restraint on speech that violates the First Amendment; Violation of the First Amendment's Freedom of Association |
| 8.7.3(10)(u)2(d) | Violation of the First Amendment's Freedom of Religion |
| 8.7.3(10) | Void for vagueness |
| 8.7.3(10)(u)(2)(b), (c), (e) <br> 8.7.3(10)(u)(3) <br> 6.7.2(19)(b) | Violations of the Commerce Clause and the Dormant Commerce Clause |
| 8.7.3(10)(c), (h) | Constitutes a Taking |

Plaintiffs also argue that four subsections are preempted by the Michigan Liquor Control Code: §§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(b), 6.7.2(19), and 8.7.3(10)(u)(5)(g).

In an attempt to remedy these issues, Plaintiffs attended a Peninsula Township meeting in May 2019 to present their concerns to the Township board. The parties began negotiating revisions to the Zoning Ordinances, but in September 2020, the Township

---

[1] Plaintiffs Black Star and Two Lads operate Farm Processing Facilities.
[2] Plaintiffs Bowers Harbor, Brys Winery, Chateau Grand Traverse, Chateau Operations, Bonobo, Tabone Vineyards, and Villa Mari operate Winery Chateaus.
[3] Plaintiff Grape Harbor operates a Remote Winery Tasting Room.
[4] Plaintiffs' brief in support of their motion for preliminary injunction is not a model of clarity. These are the claims that the Court has been able to identify and will discuss; to the extent that any other claims are made, the Court finds them to be insufficiently briefed to merit review at this time.

2

proposed a draft set of ordinances that did not include any of the changes Plaintiffs desire. At that point, Plaintiffs backed out of negotiations, and they filed this lawsuit in October 2020.

## II.

A trial court may issue a preliminary injunction under Federal Rule of Civil Procedure 65. A district court has discretion to grant or deny preliminary injunctions. *Planet Aid v. City of St. Johns, Michigan*, 782 F.3d 318, 323 (6th Cir. 2015). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The purpose of a preliminary injunction is to preserve the status quo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n. 13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)).

To determine whether a plaintiff has met this high bar, a court must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for Homeless & Service Employees Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). The four factors are not prerequisites that must be established at the outset but are interconnected considerations that

must be balanced together. *Northeast Ohio Coalition*, 467 F.3d at 1009; *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, however, the liklihood of success on the merits often will be the determinative factor." *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)) (cleaned up).

### III.

While the Court would normally evaluate the liklihood of success on the merits of Plaintiffs' claims first, in this case the Court finds it more appropriate to begin with the liklihood of irreparable harm. Three separate issues cut against a finding that Plaintiffs have suffered or will suffer irreparable harm.

First, the Zoning Ordinances have been on the books since 1972. They have been amended throughout their nearly-50-year history, but it appears that Plaintiffs have been aware of and operating under the challenged restrictions for quite some time. While Defendant does not assert laches as a defense, the Court takes Plaintiffs' long delay in pursuing their rights into account when evaluating their arguments.

Relatedly, Plaintiffs seek to completely upset the status quo in Peninsula Township. They ask this Court to enjoin several provisions of Peninsula Township's Zoning Ordinance without implementing any replacements. It is not the Court's place to draft new Ordinances, so presumably Plaintiffs seek to simply eliminate the Ordinances they view as offensive. To do so would be to completely upset the regulatory system that presently exists in Peninsula Township for the eleven wineries. This is the opposite of the purpose of a preliminary

4

injunction, which is to maintain the status quo until a decision on the merits can be reached. *See, e.g., University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Here, Plaintiffs seek to alter the landscape such that they would receive all the relief to which they would be entitled after a successful trial on the merits. Such a request cannot be granted unless the right to relief is "clear." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall*, 836 F. Supp. 428, 431 (W.D. Mich. 1993).

Third and finally, absent Plaintiffs' constitutional arguments (which will be discussed shortly), the irreparable harm they allege to have suffered is largely lost opportunities for profit: in other words, monetary harm. Generally, irreparable harm is harm that cannot be remedied with money damages. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). If Plaintiffs' constitutional arguments are unsuccessful, they are left with only harm that can be remedied by a payment, which is not irreparable harm.

Taking these three facts together, the Court is not convinced that Plaintiffs have suffered or will suffer truly irreparable harm if they are required to follow Peninsula Township's Zoning Ordinances during the pendency of this lawsuit.

## IV.

Against that backdrop, the Court must evaluate each of Plaintiffs' arguments and determine whether at least one argument establishes a liklihood of success on the merits. Because the Court concludes that no argument raises a strong enough liklihood of success to counterbalance the failure to establish irreparable harm, the Court will only briefly review all seven of Plaintiffs' arguments.

5

First up is Plaintiffs' argument that three subsections of the Township Ordinance are content-based speech regulations that violate the First Amendment. Section 6.7.2(19)(b)(v) mandates that Farm Processing Facilities may only sell logoed merchandise that is "directly related to the consumption and use of the fresh and/or processed agricultural produce sold at retail." Sections 8.7.3(12)(i) and (k) mandate that at Remote Winery Tasting Rooms, any retail sale of non-food items must have the winery's logo permanently affixed to the item, and that these Tasting Rooms may not advertise any "food or non-food items allowed for sale in the tasting room." Plaintiffs argue that these are impermissible content-based regulations; Defendant argues that they are permissible restrictions on commercial speech.

At this stage, the Court is not persuaded by Plaintiffs' argument. Nothing about these regulations appears to be related to the content of Plaintiffs' speech. Rather, they are regulations related to what products Plaintiffs may sell and where logos may be placed, which brings them much closer to restrictions on commercial speech than to content-based regulations. Thus, the Court applies the following four-part test:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563-66 (1980)).

There is nothing unlawful or misleading about the products or logos at issue. Defendant seeks to advance the government interest of preservation of Township lands, promotion of local interests, and promotion of the local economy. The Court finds that this

6

is a substantial government interest, at least for the purposes of this motion. *See, e.g., id.* (finding that "traffic safety and the appearance of the city" are substantial government goals). The subsections outlined above directly advance those interests, and on their faces, they do not appear to reach further than necessary to advance those objectives. Thus, Plaintiffs have failed to establish a substantial liklihood of success on the merits of this claim.

Second, Plaintiffs argue that § 8.7.3(10)(u)(1)(b) compels speech contrary to the First Amendment. That provision states that Winery Chateaus may host Guest Activities, and that those Guest Activities "are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations." Plaintiffs do not elaborate on their argument here, stating only that this ordinance "clearly compel[s] speech" (*see* ECF No. 3 at PageID.458.) The Court disagrees: this subsection clarifies the *intent* of Guest Activity Uses, but it does not appear to *mandate* Plaintiffs to take any specific action during Guest Activity Uses. In any event, Plaintiffs' cursory argument here is insufficient to demonstrate that they are clearly entitled to relief.

Third, Plaintiffs argue that § 8.7.3(10)(u) is a prior restraint on speech that violates the First Amendment because it allows the above Guest Activities to take place only after a Special Use Permit has been granted by the Township Board. "A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001). The elements of a prior restraint are: (1) one who seeks to exercise First Amendment rights

is required to apply to the government for permission; (2) the government is empowered to determine whether the applicant should be granted permission on the basis of a review of the content of the proposed expression; (3) approval is dependent upon the government's affirmative action; and (4) approval is not a routine matter, but involves an to the examination of the facts, an exercise of judgment, and the formation of an opinion. *See Southeast Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975). Plaintiffs have provided no proof that approval is not a routine matter, instead pointing only to the discretion provided to the Board by the Ordinance. While it is certainly possible that the Board examines the facts, exercises its judgment, and forms an opinion, it is equally possible that the Board approves all Guest Activity Use applications. Absent proof, Plaintiffs have failed to establish a concrete liklihood of success on the merits of this claim.

Next, Plaintiffs argue that this subsection violates the First Amendment's freedom of association. The First Amendment certainly includes a right to associate with others in pursuit of a wide variety of ways. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). That said, the right is not absolute. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* at 623. As outlined above, the Court finds the Township's interest in promoting the local economy and preserving certain types of land at least substantial, and it does not appear to be related to the suppression of ideas. It is possible that the Township could achieve its goals through less restrictive means of associational freedom, but Plaintiffs do not propose any alternate

restrictive means, so the Court finds that Plaintiffs have not clearly shown that *significantly less restrictive means* exist.

Still on the same subsection, Plaintiffs argue that this violates their right to freely exercise their religion because it prohibits them from hosting weddings. The Court finds that this argument is insufficiently briefed: Plaintiffs cite to a single out-of-circuit case in support of their position, and they have made no attempt to argue that the ordinance is anything but neutral.

"The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof . . . .*' " *Church of Lukumi Babalu Aye, Inc v. Hialeah*, 508 U.S. 520, 531 (1993) (alteration in original) (internal citation omitted). "[A] generally applicable law that incidentally burdens religious practices usually will be upheld." *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (order) (per curiam) (citing *Emp. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990)). While the subsection at issue may raise First Amendment issues, at this stage, the Court declines to enjoin enforcement of § 8.7.3(10)(u)(2)(d) for two reasons. First, because the subsection does not allow all commercial activities and disallow weddings; rather, it allows three discrete types of activities and disallows all others. It simply highlights that weddings are in the disallowed category. And second, it applies to all weddings (and all events, for that matter), secular and religious. At this stage, the Court cannot even find a facial non-neutrality, and therefore, the Court finds no violation of the First Amendment.

9

Next, Plaintiffs argue that the definition of "Guest Activity Uses" contained in § 8.7.3(10) is void for vagueness. To succeed on a void-for-vagueness claim, Plaintiffs must establish that "[a regulation's] prohibited terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion." *United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998). The Definition of allowable Guest Activity Uses is as follows:

> (a) Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class.
> (b) Meetings of 501- (C)(3) non-profit groups within Grand Traverse County. These activities are not intended to be or resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served.
> (c) Meetings of Agricultural Related Groups that have a direct relationship to agricultural production, provided that:
>   i. The meetings are scheduled at least one month in advance with the Zoning Administrator given adequate advance notice of the scheduling so that the Zoning Administrator can give prior approval;
>   ii. The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining "direct relationship to agricultural production";
>      (a) Food/wine educational demonstrations;
>      (b) Cooking show showcasing Peninsula produce and wine;
>      (c) Farmer's conferences;
>      (d) Regional farm producers;
>      (e) Cherry Marketing Institute and Wine Industry Conference
>      (f) Farm Bureau Conference
>      (g) Future Farmers of America and 4-H;
>      (h) Michigan State University/agricultural industry seminars.
>   iii. These meetings may include full course meals to demonstrate connections between wine and other foods.
>   iv. An appeal of the Zoning Administrators determination can be made to the Township Board.

10

Despite Plaintiffs' arguments to the contrary, this is not so vague that it must be struck down immediately. The Court finds that this subsection makes it plain that wine or food seminars, meetings of 501(C)(3) groups, and meetings of agricultural related groups are permitted; all other events are not. Again, while there may be some merit to Plaintiffs' argument that the approval process gives the Township Board unfettered discretion to approve or deny these permits, at this time, there is insufficient evidence to support that argument. Plaintiffs have failed to demonstrate a strong liklihood of success on the merits here.

Next, Plaintiffs argue that several provisions of the Zoning Ordinance violate the Commerce Clause and the Dormant Commerce Clause. But Plaintiffs support this argument only with statements made by the Township's attorney in July 2019. The Township has raised evidentiary issues that may preclude Plaintiffs from relying on this statement (*see* ECF No. 24 at PageID.960-962). Absent full briefing on the issue, the Court is disinclined to completely rely upon or reject the Townships' prior statement. But absent any legal argument, the Court is also disinclined to accept Plaintiffs' position on the Commerce Clause and the Dormant Commerce Clause. Accordingly, Plaintiffs have failed to establish a strong liklihood of success on this argument.

Finally, Plaintiffs allege that the requirement in §§ 8.7.3(10)(c) and (h)—that Winery Chateaus are a minimum of 50 acres and that a minimum of 75% of the property must be used for fruit production—is an unconstitutional taking. When it is "practically impossible" to use the land in question for a mandated purpose, "the zoning ordinances as applied to the propert[ies] are unreasonable and confiscatory, and therefore illegal." *Oschin v. Township*

11

*of Redford*, 315 Mich. 359, 363 (1946). Plaintiffs briefly allege that because of these restrictions, they are required to plant fruit on land ill-suited for fruit, but they provide no evidence to support that assertion. Again, the Court is not inclined to enjoin an entire regulatory system without clear indication that it is unconstitutional, and this argument has failed to meet this high bar.

In sum: none of Plaintiffs' constitutional arguments carry the day. The Court finds more merit in Plaintiffs' MLCC preemption arguments, but even if these arguments were completely successful, they would not establish irreparable harm in the same way success on a constitutional argument would. *See, e.g., Overstreet*, 305 F.3d at 578. Thus, the Court concludes that Plaintiffs have failed to establish a liklihood of success on the merits of their claims that is strong enough to overcome their failure to establish irreparable harm.

## V.

Absent a finding that Plaintiffs have established a strong liklihood of success on the merits of their claims and a finding that Plaintiffs have suffered or will suffer irreparable harm, there is no need for the Court to address the remaining factors or to balance the factors: the motion must be denied. But Defendant has raised two issues that the Court will briefly address.

First, Defendant argues that WOMP has not suffered an injury, so WOMP does not have standing. The Court disagrees: an organization has associational standing when "(1) the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in

the lawsuit." *Friends of Tims Ford v. Tenn. Valley Authority*, 585 F.3d 955, 967 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (quotation marks omitted)). This requires an association to "allege that its members, *or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (quotation marks removed, emphasis added)). Clearly WOMP's members have alleged injury, as they are also named Plaintiffs. Therefore, WOMP has associational standing to remain a Plaintiff.

Second, Defendant argues that Plaintiffs have failed to follow the proper statutory process for amending local Zoning Ordinances, and they should be required to pursue the applicable administrative remedies before pursuing this injunction. The Court agrees that pursuing negotiations, mediation with an independent third party, and/or the administrative process would be a more appropriate path to resolution of Plaintiffs' claims, but because Plaintiffs have raised facial Constitutional arguments about each challenged Ordinance, they are entitled to bring those claims without exhausting the applicable administrative remedies. *See, e.g., Paragon Properties Co. v. City of Novi*, 550 N.W.2d 772, 775 (Mich. 1996). Therefore, the Court need not deny the motion on this procedural point.

## ORDER

For the reasons stated in this opinion,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for a preliminary injunction (ECF No. 2) is **DENIED.**

**IT IS SO ORDERED.**

Date: January 15, 2021 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge