UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC., a Michigan
Nonprofit Corporation, et al.,

                           Case No: 1:20-cv-01008

              Plaintiffs,

v

                           Honorable Paul L. Maloney
PENINSULA TOWNSHIP, Michigan Municipal    Magistrate Ray S. Kent
Corporation,
              Defendant.

---

MILLER, CANFIELD, PADDOCK
AND STONE, PLC
*Attorneys for Plaintiffs*
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI  49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com

FOLEY & MANSFIELD, P.L.L.P.
*Attorneys for Defendant*
Gregory M. Meihn (P38939)
Matthew T. Wise (P76794)
130 East 9 Mile Road
Ferndale, MI 48220-3728
(248) 721-4200 / Fax: (248) 721-4201
gmeihn@foleymansfield.com
mwise@foleymansfield.com

---

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE</u>**

## TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................. 1

II.     ANALYSIS ......................................................................................................... 2

      1.      PTP Does Not Have a Right to Intervene ................................................. 2

            a.      PTP Lacks a Substantial Legal Interest in this Case ..................... 3

            b.      PTP May Protect its Interests Without Intervention ..................... 8

            c.      Peninsula Township Adequately Represents PTP's Interests ........ 9

      2.      The Court Should Not Grant PTP Permission to Intervene .................... 12

III.    CONCLUSION ................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Blount-Hill v. Zelman*,
  636 F.3d 278 (6th Cir. 2011) ...................................................................8

*Coal. to Defend Affirmative Action v. Regents of the Univ. of Mich.*,
  701 F.3d 466 (6th Cir. 2012) .................................................................11

*Coalition to Defend Affirmative Action v. Granholm*,
  501 F.3d 775 (2007).................................................................... *passim*

*Geier v. Sundquist*,
  No. 95-5844, 94 F.3d 644 (6th Cir. Aug. 14, 1996) ...............................11

*Grubbs v. Norris*,
  870 F.2d 343 (6th Cir. 1989) ...............................................................2, 8

*Grutter v. Bollinger*,
  188 F.3d 394 (6th Cir. 1999) .....................................................3, 5, 8, 10

*Jordan v. Michigan Conference of Teamsters Welfare Fund*,
  207 F.3d 854 (6th Cir. 2000) ..............................................................9, 10

*Joseph Skillken & Co. v. City of Toledo*
  528 F.2d 867 (6th Cir. 1975) ...............................................................7, 8

*Kirsch v. Dean*,
  733 F. App'x 268 (6th Cir. 2018) ......................................................12, 13

*Michigan State AFL-CIO v. Miller*,
  103 F.3d 1240 (6th Cir. 1997) ..........................................................2, 3, 9

*Northland Family Planning Clinic, Inc. v. Cox*,
  487 F.3d 323 (6th Cir. 2007) ...................................................... *passim*

*Paragon Properties Co. v. City of Novi*,
  452 Mich. 568, 550 N.W.2d 772 (1996)..................................................7

*Providence Baptist Church v. Hillandale Committee, Ltd.*,
  425 F.3d 309 (2005)................................................................... *passim*

*San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*,
  545 U.S. 323 (2005)................................................................................7

i

*South Carolina v. North Carolina*,
    558 U.S. 256 (2010)................................................................................13

*United States v. Detroit Int'l Bridge Co.*,
    7 F.3d 497 (6th Cir. 1993) .......................................................................3

*United States v. Michigan*,
    424 F.3d 438 (6th Cir. 2005) ...............................................................9, 12

**Statutes**

Michigan Zoning Enabling Act ................................................................1, 8

**Court Rules**

Fed. R. Civ. P. 24...................................................................................2, 12

Protect the Peninsula, Inc. ("PTP") is the self-proclaimed watchdog of Old Mission Peninsula.  But this does not give it the right to intervene in a lawsuit challenging the legality of Peninsula Township's winery ordinances.  PTP is not regulated by the ordinances at issue and Defendant Peninsula Township (the "Township") has demonstrated that it will vigorously defend the case.  Unlike PTP, Plaintiffs (collectively the "Wineries") are directly affected by the ordinances at issue and should be allowed to litigate their case without unnecessary intervention driving up the cost of litigation and ask the Court should deny its motion to intervene.

## I.    BACKGROUND

This lawsuit involves a facial challenge to portions of Defendant Peninsula Township's zoning ordinances (the "Winery Ordinances") which the Wineries allege are in violation of the rights to freedom of speech, expression, and exercise of religion; freedom of association; due process; and the dormant commerce clause.  [ECF No. 29, PageID.1116–24.]  The Wineries also allege that the Winery Ordinances amount to a regulatory taking, are preempted by the Michigan Liquor Control Code and violate the Michigan Zoning Enabling Act.  [*Id.* at PageID.1124–27.]

PTP is a non-profit corporation with the mission "[t]o foster and promote the benefits of life on Old Mission Peninsula to the members of PTP and the Old Mission Peninsula."  [ECF No. 41-2, PageID.2069, ¶ 12.]  PTP has led voter referendums against zoning decisions.  [*Id.* at PageID.2070–71, ¶¶ 16–17, 21.]  It has also filed a lawsuit to challenge zoning decisions and intervened in a state court lawsuit to challenge winery expansion.  [*Id.* at PageID.2070, ¶¶ 19–20.]  And, according to PTP, following the referendum and lawsuit, it negotiated an ordinance rewrite which became the current Winery Ordinance.  [ECF No. 41, PageID.1976.]

PTP believes its "has a continuing interest in preserving its historic litigation and referendum successes rejecting outcomes comparable to what Plaintiffs seek in this case (increased commercial-type retail, food services, and other activities at wineries in the agricultural district.)"

1

[*Id.* at PageID-1977.]  But PTP nor its members own or operate a winery.  PTP is not directly affected by the Winery Ordinance but instead seeks to enforce ordinance that affect the Wineries— no matter how illegal or unconstitutional they may be.  [*Id.*, PageID.2074, ¶ 28.]

## II.    ANALYSIS

A party seeking to intervene may do so as of right or by permission.  Fed. R. Civ. P. 24.  Intervention by PTP is inappropriate under both standards.

### 1.    PTP Does Not Have a Right to Intervene.

A party may intervene when the proposed intervenor "(1) is given an unconditional right to intervene by a federal statute" or "(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(1)–(2).  PTP does not allege a statutory right to intervene.  Instead, PTP must satisfy four elements to intervene: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court."  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citation omitted).  "[PTP] must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied."  *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (citation omitted).

The Wineries do not contest the timeliness of PTP's motion and instead focus on the remaining three elements which PTP has not satisfied.

### a.    PTP Lacks a Substantial Legal Interest in this Case.

"[PTP] must show that they have a substantial interest in the subject matter of this litigation."  *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citation omitted).  This is a

2

fact-specific inquiry, *Miller*, 103 F.3d at 1245, that asks whether the proposed intervenor has a "direct, significant legally protectable interest" in the proceedings, *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993).

Courts have allowed intervention when the proposed intervenor will be directly affected or regulated by the subject matter of the litigation. For example, when the United States government and Detroit International Bridge Company entered into a settlement agreement for the condemnation of land, an adjacent landowner to the Ambassador Bridge was allowed to intervene because the settlement agreement clearly contemplated condemnation of the adjacent landowner's property as well. *Detroit Int'l Bridge Co.*, 7 F.3d at, 501. In another case, the Michigan Chamber of Commerce could intervene when it was "also regulated by at least three of the four statutory provisions challenged by the plaintiffs." *Miller*, 103 F.3d at 1247. Finally, a group of prospective African-American and Latino/a applicants to the University of Michigan had a substantial interest in a lawsuit challenging the University's affirmative action policy because they planned to apply to the University themselves and would be directly impacted if the affirmative action policy were terminated. *Grutter*, 188 F.3d at 399.

Following *Miller* and *Grutter*, the Sixth Circuit emphasized that intervention as of right applies to proposed intervenors who are or would be directly affected by the challenged statutes, whose interests are not too attenuated, and who would not impede the government's autonomy to enforce its own laws. For instance, when a church raised a constitutional challenge to a local government's zoning ordinance, the Sixth Circuit rejected a motion to intervene by a committee of interested citizens. *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309 (2005). There, the church had applied for rezoning of a parcel, which the city council approved by drafting new ordinances. *Id.* at 311. Subsequently, the citizens' committee worked to obtain a

3

referendum which required that the new zoning ordinance be placed on the ballot for an upcoming election. *Id.* at 311–12. Voters then struck down the new ordinance. *Id.* The church then filed suit against the local government. *Id.* at 312. Like PTP in this case, the citizen committee sought to intervene as of right and "described itself as 'the duly authorized committee which circulated the referendum petitions.'" *Id.* The citizen committee also alleged that "its interest in opposing the rezoning, and that the right of the voters to vote on the ordinances . . . could be threatened or nullified by a proposed settlement." *Id.* The court denied intervention. *Id.* The church and local government thereafter entered a consent judgment which determined that the current ordinance "was unconstitutional as applied." *Id.* On appeal, the Sixth Circuit held that the citizen committee lacked a substantial legal interest because the referendum election had already happened, and because "concerns for state autonomy . . . deny private individuals the right to compel a state to enforce its laws." *Id.* at 317 (quoting *Diamond v. Charles*, 476 U.S. 54, 65 (1986)). In essence, *Providence Baptist Church* held that once an ordinance is on the books, any group involved in getting the ordinance passed loses its standing. *Id.* ("Hillandale Committee's alleged advocacy in getting the zoning ordinance on the November 2004 ballot does not suffice to make it a 'real party in interest in the transaction which is the subject of the proceeding…'")

After *Providence Baptist*, the Sixth Circuit returned to intervention in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007). An anti-abortion advocacy group had worked to put Legal Birth Definition Act on the ballot for a citizen initiative petition. *Id.* at 327. When a group of health-care facilities and physicians sued to challenge the Act, the advocacy group moved to intervene, stating it was a "ballot-question committee . . . which was formed to promote the passage of the Act." *Id.* at 328. The district court denied intervention. The Sixth Circuit affirmed noting intervention was improper because of two factors. First, the Sixth Circuit

noted it was "particularly significant" that the proposed intervenor "is not itself regulated by any of the statutory provisions at issue here." *Id.* at 345. The Sixth Circuit further emphasized that underlying precedent allowing intervention "all involved challenges by a public interest group to the procedure required to pass a particular rule, as opposed to the government's subsequent enforcement of the rule after its enactment." *Id.* The Sixth Circuit found "this distinction to be compelling, as the public at large—including public interest groups—has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process." *Id.* However, "in a challenge to the constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government, and the public's legal interest in the legislative process becomes less relevant." *Id.* The Sixth Circuit concluded by distinguishing *Grutter*, stating that "[i]f the statute in this case regulated [the anti-abortion group] or its members, [the anti-abortion group] would likely have a legal interest, much like the intervenors in *Grutter* who were applicants to the University of Michigan." *Id.* The Sixth Circuit emphasized that "[a]fter the Act's passage, however, [the anti-abortion group's] interest in the enforcement of the statute is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written." *Id.* at 346. Because the law already passed, the anti-abortion group's "interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right." *Id.*

The Sixth Circuit reiterated this holding in *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (2007). Michigan passed Proposal 2, which generally barred affirmative action in public employment, education and contracting. *Id.* at 777. When an opposition group filed suit, two groups who helped get Proposal 2 on the ballot moved to intervene. *Id.* at 778. The

district court rejected the motion.  *Id.* at 783.  Relying on the rationale from *Northland Family Planning*, the Sixth Circuit affirmed and emphasized that while a group may have an interest in the legislative or political process to enact a law, it has no substantial legal interest in enforcing the law unless it is directly regulated by it.  The Sixth Circuit explained that in *Northland Family Planning*, "we held that an organization involved in the process leading to the adoption of a challenged law, does not have a substantial legal interest in the subject matter of the lawsuit challenged the legality of the already-enacted law, unless the challenged law regulates the organization or its members."  *Id.* at 781.  It continued:

> Where, however, an organization has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that it supports—and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in to the lawsuit cannot be deemed substantial.

*Id.* at 782.  Even where a few members were Michigan residents and could say to be naturally affected by Proposal 2, the proposed intervenor had "only a generic interest shared by the entire Michigan citizenry."  *Id.*

Here, PTP generally claims that this lawsuit implicates its mission—namely, to "maintain the rural and agricultural character of the peninsula."  [ECF No. 41, PageID.1972.]  PTP claims that it helped draft the Winery Ordinance and that it wants to see continued enforcement because there will be generalized harms such as more guests, bigger parking lots, increased traffic, increased noise and longer hours of operation.  [ECF No. 41, PageID.1973–78.]  The Sixth Circuit rejected these generalized arguments in *Providence Baptist*, *Northland Family Planning*, and *Granholm*.  Notably, PTP does not claim that it is regulated by the Winery Ordinance.  Instead, it presents the sort of "general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that it supports"—that does not rise to the level of a

substantial legal interest.  *Granholm*, 501 F.3d at 782.  If it did, every resident of the Township could intervene.

PTP avers that its residents have a right to participate in a public hearing before the Township Planning Commission.  [ECF No. 41, PageID.1979.]  If PTP is attempting to steer the case back to the Township Zoning Board of Appeals and impose a finality requirement, that attempt should fail.  Both the United States Supreme Court and Michigan Supreme Court are clear that finality is not required for a facial challenge.  *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 325 (2005) (explaining that challengers "were never required to ripen in state court their claim that the city ordinance was facially invalid for failure to substantially advance a legitimate state interest"); *Paragon Properties Co. v. City of Novi*, 452 Mich. 568, 577, 550 N.W.2d 772, 775 (1996) ("Finality is not required for facial challenges because such challenges attack the very existence or enactment of an ordinance.").  The Wineries are facially challenging the Winery Ordinances and are properly before this Court.

Relatedly, if PTP is raising zoning concerns because it wants a seat at the settlement table, that attempt must also fail.  The Sixth Circuit dismissed this same argument in *Providence Baptist*, 425 F.3d at 312.  The *Providence Baptist* court concluded that the committee lacked an interest to challenge a negotiated settlement with a local government "because 'concerns for state autonomy . . . deny private individuals the right to compel a state to enforce its laws.'"  *Id.* at 317 (quoting *Diamond v. Charles*, 476 U.S. 54, 65 (1986)).  The same is true here.  PTP does not get to dictate how or why the Township may defend its ordinances.[1]

---

[1] PTP relies heavily on *Joseph Skillken & Co. v. City of Toledo* 528 F.2d 867 (6th Cir. 1975) to support its claim that neighboring property owners to have standing to intervene.  Notably, *Skillken* was decided well before *Providence Baptist*, *Northland Family Planning* and *Granholm*.  But, *Skillken* also involved a state statute which specifically provided standing to neighboring property owners who might be damaged.  *Id.* at 874.

Ultimately, PTP's "interest in maintaining a policy" is, at best, a generalized grievance that does not permit intervention in this lawsuit.  PTP's desire to defend an unconstitutional and illegal ordinance is a desire they may share other members of the general public.  However, only the Wineries are regulated by the Winery Ordinance.  *Northland Family Planning* and *Granholm* are clear that if PTP is not actually regulated by the Winery Ordinance, it lacks a substantial interest in this litigation.  PTP fails to make that showing, and that failure is fatal to PTP's motion to intervene.  *Grubbs*, 870 F.2d at 345.

### b.    PTP May Protect its Interests Without Intervention.

Even if PTP had a substantial interest in this case, it fails to explain how this interest might be impaired.  The question is not whether this case might impair the PTP's interests, it is whether PTP's lack of intervention might impair those interests. *See, e.g.*, *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (describing this factor as "the applicant's ability to protect its interest will be impaired without intervention").  This is necessarily tied to the underlying substantial interest.  For example, in *Grutter* the Sixth Circuit concluded that "access to the University for African-American and Latino/a students will be impaired to some extent and that a substantial decline in the enrollment of these students may well result if the University is precluded from considering race as a factor in admissions."  *Grutter*, 188 F.3d at 400.

PTP has no substantial interest here and misunderstands this factor when it claims that it is concerned that its "ability to participate in the zoning process through the traditional methods provided for public participation" may be impaired.  [ECF No. 41-2, PageID.2074, ¶ 29.]  The Wineries are not challenging the Michigan Zoning Enabling Act or the ability for the citizens of Peninsula Township to participate in the traditional processes there.  If, for example, the Wineries may sell logoed merchandise, how is PTP affected?  And even if there is increased traffic—one of PTP's big concerns—it is unclear how PTP will truly be affected.  The Wineries are not

8

challenging the speed limit or road appropriations in the Township.  PTP remains fully able to petition the Township, Grand Traverse County, and State of Michigan to change laws related to those concerns.  PTP's interests are incidental to the Winery Ordinances, and it remains fully able to petition the relevant entities if other concerns arise.

### c.     Peninsula Township Adequately Represents PTP's Interests.

"[A]pplicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit."  *United States v. Michigan*, 424 F.3d 438, 443–44 (6th Cir. 2005) (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)).  A proposed intervenor "fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty."  *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000).

In *Miller*, the Sixth Circuit determined that the Secretary of State and Attorney General may not adequately represent the Chamber's interests for two reasons.  First, the Court explained that "the Chamber, as a target of the statutes' regulations, would harbor an approach and reasoning for upholding the statutes that will differ markedly from those of the state, which is cast by the statutes in the role of regulator."  *Miller*, 103 F.3d at 1247.  Second, the Court emphasized that the Secretary of State failed to pursue an interlocutory appeal of the preliminary injunction temporarily invalidating provisions of the statute at issue.  *Id.* at 1248.  Neither rationale applies here.  PTP is not a "target" of the Township's Winery Ordinances; rather, its members are trying to see those Ordinances enforced against another party.  In addition, the Township has not failed to appeal from an order—the Township prevailed on the Wineries' preliminary injunction motion after thoroughly briefing the issues.

9

In *Grutter*, the Sixth Circuit found inadequate representation where there was the possibility that the University of Michigan was "unlikely to present evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria." *Grutter*, 188 F.3d at 400–01.  In essence, the University was unlikely to present evidence that its own admissions practices, absent affirmative action, discriminated against Black and Latino students. *Id.*  That rationale does not apply here.

In this case, Peninsula Township and PTP want the exact same thing—continued enforcement of the Winery Ordinance.  PTP has raised several reasons why its interest might be inadequately protected.  However, under the reasoning from *Jordan*, these interests are insufficient to overcome the general presumption of adequate representation.  First, PTP has not alleged any collusion between the Wineries and the Township.  This is not a case where the Township has abandoned its position.  The Township fully briefed and opposed the Wineries' motion for a preliminary injunction.  [ECF No. 24, 32.]  The Township was successful in defeating the Wineries' motion for preliminary injunction.  [ECF No. 34.]   Second, PTP has not demonstrated how its interests differ from the Township.  The Township has always vigorously maintained the constitutionality of the Winery Ordinance.  Third, PTP has not shown how the Township has failed in its duty.  As stated above, the Township has filed a comprehensive answer and substantial briefing to oppose the Wineries' preliminary injunction motion.

PTP claims a variety of interests that will not be adequately represented by the Township. [ECF No. 41, PageID.1981–82.]   For example, PTP claims that "[t]he Township's general governmental interests are not as acute as those of the PTP members residing close to wineries." [ECF No. 41, PageID.1981.]  It is unclear what this even means.  PTP's members are not the only persons residing near the Wineries.

Second, PTP claims that "[t]he Township does not have an interest in protecting the right to referendum, which belongs to registered voters, including PTP members."  [ECF No. 41, PageID.1981.]  Nothing in this lawsuit is designed to strip the right of referendum from the voters. If the Winery Ordinances are unconstitutional, they are unenforceable, no matter what the voters say.

Third, PTP claims that it "may seek to preserve the rights of referendum or appeal if this case resolved by consent, even if the Township did not."  [ECF No. 41, PageID.1981.]  *Providence Baptist* squarely rejected a motion to intervene and challenge a consent judgment because it would impede state autonomy.

Fourth, PTP claims that "[t]he Township has been sued for monetary damages, so its interests and priorities may diverge from PTP's in preserving zoning provisions."  [ECF No. 41, PageID.1982.]  The Township has not given any indication that its constitutional positions are tempered by the possibility of money damages.  Regardless, differences over the finer points of constitutional theory do not constitute inadequate representation.  *E.g.*, *Coal. to Defend Affirmative Action v. Regents of the Univ. of Mich.*, 701 F.3d 466, 491 (6th Cir. 2012) (overruled on other grounds) ("Any mere disagreement over litigation strategy ... does not, in and of itself, establish inadequacy of representation.") (internal quotation marks omitted); *Geier v. Sundquist*, No. 95-5844, 94 F.3d 644, at *2 (6th Cir. Aug. 14, 1996) (unpub. table decision) (explaining that disagreements over litigation strategy "are inadequate to form the basis of a right to intervene.").

Finally, PTP claims that "Plaintiffs rely on statements from the township attorney indicating that some of Plaintiffs' claims may be valid.  While the Township has renounced this position, this context raises the potential that PTP may view the facts and law differently than the township."  [ECF No. 41, PageID.1982.]  PTP also claims that "[p]rior to Plaintiffs' litigation, a

11

township subcommittee was tasked with finding a suitable resolution to claims that some wineries'

provisions were invalid." [*Id.*] The Township has distanced itself from its attorney's statements,

[See ECF No. 24, PageID.960–62], and the subcommittee never adopted a resolution to the

Wineries' claims.

PTP's interest boils down to keeping the Winery Ordinances on the books. This

generalized interest in enforcing a duly-enacted law is insufficient to intervene as of right.

*Granholm*, 501 F.3d at 782.

### 2.     The Court Should Not Grant PTP Permission to Intervene.

A Court may permit a party to intervene when the proposed intervenor "is given a

conditional right to intervene by federal statute" or "has a claim or defense that shares with the

main action a common question of law or fact." Fed R. Civ. P. 24(b)(1)(A)–(B). "To intervene

permissively, a proposed intervenor must establish that the motion for intervention is timely and

alleges at least one common question of law or fact." *Michigan*, 424 F.3d at 445. When an

intervenor "would complicate the case by requiring the adjudication of fact intensive issues

regarding the regulation of separate usufructuary rights," permissive intervention should be denied.

*Id.* Similarly, when the proposed intervenor seeks to make the same arguments as the named-

defendant, permissive intervention is improper. *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir.

2018) ("[W]e have previously rejected the suggestion that a proposed intervenor seeking to submit

a filing that substantially mirrors the positions advanced by one of the parties has necessarily

identified a common question of law or fact. [I]f that were true . . . any party wishing to intervene

to support one side of a lawsuit could simply reiterate the [positions] of that side and thus meet the

'common question' requirement." *Id.* (citation and internal quotations omitted, cleaned up)).

Further, when a proposed intervenor's involvement would "inhibit, not promote, a prompt

resolution," permissive intervention is not disfavored. *Granholm*, 501 F.3d at 784. This is

12

especially true where the proposed intervenors would "seek to file more claims, amend pleadings even further, and inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings." *Id.* (citation omitted).

Here, these factors weigh against permissive intervention.  PTP fails to state what arguments it would make beyond those already made by the Township.  As *Kirsch* instructs, any resident of the Township could make those same arguments and intervene if PTP is allowed to do so.  Additionally, PTP is injecting issues regarding traffic and property values that will inhibit, not promote, prompt resolution of this case.  Discovery will be focused on the issues of the Wineries' business losses and grape purchases and sales.  If PTP is involved, the parties will need discovery into the property values of PTP members and the Township as a whole.  That will delay resolution of this case.  PTP has already attempted to inject itself into the resolution of this matter.  As this Court is aware the Wineries and the Township have agreed to mediate and are confident the dispute can be resolved by mediation.  Counsel for PTP recently contacted the mediator selected by the parties in an attempt to attend the mediation even though PTP is not a party. The Wineries have informed the mediator that attendance of a non-party at a confidential mediation is inappropriate.

Ultimately, the Court retains the discretion to grant or deny permissive intervention. *Granholm*, 501 F.3d at 784.  If the Court is inclined to let PTP participate, it should be as an amicus only.  *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) ("Courts often treat amicus participation as an alternative to intervention."

## III.  <u>CONCLUSION</u>

The Wineries requests that the Court deny PTP's motion to intervene and aware the Wineries their costs and attorneys' fees incurred in responding to this motion.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:   /s/ Joseph M. Infante
      Joseph M. Infante (P68719)
      Stephen M. Ragatzki (P81952)
      Christopher J. Gartman (P83286)
      99 Monroe Avenue NW, Suite 1200
      Grand Rapids, MI  49503
      (616) 776-6333

Dated:  March 2, 2021

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This Brief complies with the type-volume limitation of L. Civ. R. 7.2(b)(i) because this Brief contains 4,300 words.

           /s/ Joseph M. Infante
           Joseph M. Infante

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, I filed the foregoing Response to Motion to Intervene via the Court's CM/ECF System, which will automatically provide notice of the filing to all registered participants in this matter.

           /s/ Joseph M. Infante
           Joseph M. Infante