UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
              Plaintiffs, )
) No. 1:20-cv-1008
-v- )
) Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
              Defendant. )
                                              )

## ORDER DENYING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiffs have moved to enforce a settlement agreement that they allegedly reached with Defendant Peninsula Township. The Township denies that the parties formally reached an enforceable agreement. For the reasons to be explained, Plaintiffs' motion to enforce the settlement agreement (ECF No. 100) will be denied.

### I.

Plaintiffs commenced this case in October 2020 alleging multiple violations of the United States Constitution and Michigan law by the Township's ordinances. While the parties' positions on the ordinances are vastly contrasting, the parties intended to reach a settlement in good faith and find an agreeable solution that was sufficient for both parties. The parties have participated in facilitative mediation since March 2021 until they allegedly reached a settlement agreement in September 2021.

When the parties originally began mediating, the mediation sessions were not successful. But in June 2021, the parties agreed to an "attorneys only" settlement conference,

and Defendant's counsel, Mr. Greg Meihn, agreed to provide the original settlement proposal. On August 2, 2021, Mr. Meihn emailed Plaintiffs' counsel, Mr. Joseph Infante, that "the [Township] Board is meeting next Tuesday and will go into closed session to provide me authority to provide a specific proposal" (ECF No. 101 at PageID.4013). The Board subsequently approved Mr. Meihn's authority to discuss settlement terms with Mr. Infante, and the attorneys then determined how the mediation process would proceed: The Township Board would have three members present at the in-person negotiations, and the other members would be "available by telephone" (*Id.*). Mr. Infante agreed to that negotiation process, but he also stated that if the parties reached an agreement, if "further process," such as a "further township meeting and notice process" were necessary to reach a final resolution, that further procedure would "be an issue" (*Id.*). While Plaintiffs have provided Mr. Meihn's email response to Mr. Infante's inquiry about "further process," most of the email has been redacted to protect the parties' statements during settlement negotiations (*see Exhibit 9*, ECF No. 101-9). Thus, based on the current record, it is unclear exactly what Mr. Meihn responded regarding the potential for "further process" and the necessity of a formal vote to finalize any settlement agreement.

The parties participated in about twenty-five hours of mediation over five sessions that occurred either in-person or via Zoom/telephone. On September 8, 2021, the parties' mediation session was successful, so they scheduled an in-person final mediation session for September 13 where the Township Board could finalize a settlement agreement. According to Mr. Infante, at the final mediation session, the mediator announced that the parties had reached a settlement agreement, which resolved all issues in the case (ECF No. 101-10 at

2

PageID.4051). Mr. Infante then drafted a settlement terms sheet, which he provided to the mediator and Mr. Meihn the following day. At about 4:00 p.m. on September 14, the attorneys conducted a telephone conference to discuss any edits to the settlement terms. Mr. Meihn stated that the Township Board did not have any edits to the agreement and confirmed that the terms "incorporated the parties' agreement" (*Id.* at PageID.4052).

The Township Board then held a meeting on the evening of September 14 to sign the settlement agreement. Plaintiffs assert that they believed the purpose of that meeting was to satisfy any "formalities" and that they already had an enforceable agreement. Mr. Infante also asserts that Mr. Meihn complimented his work on the settlement agreement and stated that it was "a done deal" (*Id.*). Yet the Township Board voted to table the signing of the settlement agreement due to the absence of one member of the Board. The Board then adjourned the meeting until October 6, 2021.

In between the September 14 and October 6 meetings, Protect the Peninsula (PTP), which is a volunteer organization whose request to intervene in this case was denied by this Court, encouraged members of the public to attend the October 6 meeting and voice opposition to the settlement agreement (*see "Upcoming Community Meeting About WOMP Litigation on Oct. 6" Flier*, ECF No. 101-15). Mr. Infante then questioned the purpose of the October 6 meeting and whether it would "give PTP another chance to rant and rave" and "give [the Board] cover to back out of the settlement" (ECF No. 101-16).

At the October 6 meeting, several members of the public attended, and the Board allowed public comment for ninety minutes. Plaintiffs assert that the public "seemingly threatened, or at least strongly implied," that if the Board signed the settlement agreement,

3

the members' political futures would "be at risk" (ECF No. 101 at PageID.4016). Moreover, based on Mr. Infante's comment at the meeting, it appears that many members of the public misunderstood the terms of the settlement agreement, especially considering the agreement was confidential and no member of the public was privy to its terms.[1] After the public comment portion of the meeting and the Board deliberated for about thirty minutes, all seven members of the Township Board unanimously voted to reject the settlement agreement.[2] After the meeting, Mr. Meihn emailed Mr. Infante and stated that "for the first time in my career I was unable to predict the Board's decision last night. I suspect they were influenced by the number of people on both-sides of the issue wanting to be involved in carving out the solution to our problem" (ECF No. 101-17).

Plaintiffs then filed the present motion seeking to enforce the settlement agreement that they believe the Board had already agreed to prior to the October 6 meeting. They assert

---

[1] Mr. Infante made one comment during the meeting to clarify the terms of the settlement agreement:
> Thank you I'll be very brief. Joe Infante, the attorney for the Wineries. I do not live in the Township. Just wanted to add a little more to what Mr. Meihn said, really for everyone out here. I've read all the letters and e-mails that have been submitted. Just a couple things we thought were important to clarify, what we're not looking for in this case. There were a lot of comments about nightclubs. The Wineries are not going to be nightclubs. Comments about being bars. The Wineries are not going to be bars. Comments about getting liquor licenses. The Wineries are actually not allowed to get liquor licenses under the law because they are manufacturers of alcohol they can't have a liquor license so they can't get those. Comments about the Wineries not wanting to buy OMP fruit anymore. That's—they're actually sort of really surprised by that. Old Mission Fruit is amazing fruit. They will buy every grape that you guys make. They can't get enough grapes from Old Mission. That's sort of the problem, there aren't enough grapes being grown for the Wineries, so they can't make as much wine as they can sell. So they will buy it if it is there. The last is five-acre wineries. That is not something that the wineries are asking for—to have five acre wineries. That's not in our Complaint so I don't know where that came from, but I read all those comments and I thought it was important to share what we're not looking for. Mr. Meihn is correct—we—25 hours or so of mediation I think, between in-person and Zoom. We worked really hard. It was contentious. It was fun, probably just for the lawyers. But we got to what we think is a good agreement, a bad agreement, we're happy, we're unhappy. I can tell you that, in this envelope right here, my clients all signed today. So all the Wineries have signed the settlement agreement today. We're ready to move forward.

(ECF No. 110 at PageID.4197).

[2] The Township asserts that the settlement agreement was an "all or nothing" proposal (ECF No. 110 at PageID.4194).

4

that on September 13, the entire Board agreed to the terms of the settlement agreement by telephone after the three members who were present for the in-person mediation session agreed to the settlement terms. Conversely, the Township asserts that pursuant to the Michigan Open Meetings Act, the agreement could not be finalized until the Board voted to approve the settlement agreement in a meeting open to the public. *See* Mich. Comp. Laws § 15.263(2). Thus, the Township asserts that it never formally agreed to the settlement terms.

## II.

In Michigan, township boards are given legislative authority, and each board must be comprised of seven members. *See* Mich. Comp. Laws § 42.5(1).

> Except as otherwise provided in this act, all legislative authority and powers of each charter township shall be vested in and shall be exercised and determined by a township board of 7 members composed of the supervisor, the township clerk, the township treasurer, and 4 trustees who shall be electors in the township.

*Id.* This statute works in conjunction with the Michigan Open Meetings Act, which requires public bodies to make decisions at meetings open to the public. *See* Mich. Comp. Laws § 15.263(2). A "meeting" under this Act requires the "convening of a public body at which a quorum is present." *Id.* § 15.262(b). Township boards thus have the power to enter into binding settlement agreements, but only after the board holds an open meeting where a quorum is present and subsequently decides to enter into the agreement.

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). However, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock v.*

*Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). To determine if the parties agreed on all material terms, courts must conclude that the parties had a "meeting of the minds" and that they objectively manifested the intent to enter into a settlement agreement. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 420 (6th Cir. 2000).

### III.

Although the Township appeared to agree to the settlement agreement after the parties' mediation sessions, the Township could not legally enter into a settlement agreement without doing so at an open meeting. *See* Mich. Comp. Laws § 15.263(2). While Plaintiffs may have believed that the Board's vote on whether to approve the settlement agreement was simply a formality, the vote—conducted at a meeting open to the public—was really a necessity required by the Michigan Open Meetings Act. *See id.* Thus, Plaintiffs' argument that the Township entered into a binding settlement agreement any time before the public meeting on October 6, 2021, is without merit.

Plaintiffs also argue that the parties reached a binding agreement on September 13 because a "constructive quorum" was present when the mediator allegedly announced that the parties had reached an agreement (*see* ECF No. 101 at PageID.4014-15). However, at each mediation session, the Township was cognizant of the number of members present. It ensured that only three members would be present at each mediation session to avoid a violation of the Open Meetings Act. Plaintiffs assert that because the other members of the board were "available by phone," the Township had a quorum at the September 13 mediation session. Yet, Plaintiffs have cited no authority that supports this position. The Court finds that the Board did not have a quorum at the September 13 mediation session.

Plaintiffs' argument that the parties reached an agreement on September 13 runs contrary to Plaintiffs' attorney's own statements. The day after the final mediation session, Mr. Infante drafted the settlement terms and sent the following email to the mediator and Mr. Meihn: "We can fill in the standard agreement terms *once the operative terms are agreed upon.* This is still pending review from my clients and may be missing items though I think I covered everything" (ECF No. 101-12 at PageID.4060) (emphasis added). Mr. Infante's statement supports the Township's argument that the parties had not agreed to the operative terms of the agreement yet, despite the successful mediation session the previous day. It was not until about 4:00 p.m. on September 14 that the entire Board had allegedly agreed to the settlement terms after consulting with Mr. Meihn.

Finally, Plaintiffs cite several cases in support of their argument that a formal vote by the Township Board was unnecessary to reach a binding settlement agreement. Unfortunately for Plaintiffs, every case is distinguishable from the present matter. In *Glen Electric Holdings GmbH v. Coolant Chillers, Inc.*, No. 1:10-cv-1109, 2013 WL 2407613 (W.D. Mich. May 31, 2013), the court found that the parties had reached a binding settlement agreement after the conclusion of a mediation session, despite failing to memorialize the agreement in writing immediately after the mediation. The court enforced the settlement terms because the day after the mediation session, the parties' counsel exchanged emails confirming the agreement and only made minor changes. *Id.* at *3. *Glen Electric* is distinguishable from the present matter because neither party was a public body that was required to make decisions in an open meeting. Thus, the court could enforce the settlement agreement that the parties had reached in their private mediation session.

7

The court in *Glen Electric* relied on *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) in reaching its decision that the parties entered into a valid oral settlement agreement because "the existence of a valid settlement agreement 'is not diminished by the fact that the parties have yet to memorialize the agreement.'" See *Glen Electric*, 2013 WL 2407613, at *6. However, *RE/MAX* is also distinguishable from the present matter because it involved an agreement that occurred on the record in open court. 271 F.3d at 646. Thus, the necessity of a written agreement was minimal considering the material terms were agreed upon on the record. *See id.* This case is not applicable to the present matter.

Plaintiff also cites to *Daftary v. Metropolitan Life Insurance Co.*, 136 F.3d 137 (5th Cir. 1998) because the Fifth Circuit affirmed the enforcement of a settlement agreement where one party refused to sign. However, *Daftary* is distinguishable from the present case because the parties in *Daftary* had authorized their attorneys to settle the case, where Mr. Meihn had no such authority. Mr. Meihn was authorized to compose a settlement proposal and negotiate on behalf of the Township, but he was not authorized to enter into a final, binding agreement.

The two cases that Plaintiffs cite that involve public bodies are also unpersuasive. In the out-of-circuit Georgia state law case of *Old Peachtree Partners, LLC v. Gwinnett County*, 726 S.E.2d 437 (Ga. Ct. App. 2012) the Georgia Court of Appeals enforced a settlement agreement that the County Board rejected because the board's approval was *not* a condition of the settlement, unlike the present matter where the Michigan Open Meetings Act requires board approval for any decision to be binding on a public body. And in *Duarte v. City of*

8

*Lansing*, No. 193627, 1997 WL 33343925, at *1 (Mich. Ct. App. Sept. 2, 1997), the settlement agreement was enforceable because five members, which was a quorum, of the City Council stated on the record during settlement negotiations that they would vote to approve the agreement at the next meeting. In the present case, there was no quorum during the mediation session where the parties allegedly reached an agreement.

The Court finds that the parties did not enter into a binding settlement agreement because the Township Board did not approve the agreement at the October 6 public meeting.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to enforce the settlement agreement (ECF No. 100) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will issue a notice of hearing on Plaintiffs' motion for sanctions (ECF No. 100) contemporaneously with this order.

**IT IS SO ORDERED.**

Date: November 15, 2021 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

9