UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
      Plaintiffs, )
       ) No. 1:20-cv-1008
-v- )
       ) Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
      Defendant. )
       )

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

In determining whether to approve a settlement agreement that results from mediation, the Peninsula Township Board (the "Board") members have the right to change their mind and reject the agreement, "but that change of mind has implications" (*Transcript of Motion for Sanctions Hearing*, ECF No. 131 at PageID.4443). That scenario is exactly what occurred in this matter: the Board and the Wineries participated in extensive mediation and the parties appeared to reach a tentative settlement agreement, yet when the time came to finalize the agreement at an open meeting, the Board unanimously rejected the settlement terms. The Court must now assess what implications shall be imposed as a result of the Board's rejection.

On September 13, 2021, the parties concluded mediation with the hopes that they had reached a tentative settlement. Mr. Joseph Infante, Plaintiffs' attorney, was tasked with drafting the settlement agreement according to the terms that the parties had agreed upon in mediation. Although the Board decided to table voting on the settlement terms at the

September 14 meeting due to the absence of one member, the Board eventually unanimously voted to reject the settlement terms at an open meeting on October 6, 2021. Thus, Plaintiffs subsequently brought their motion to enforce the settlement agreement or for sanctions (ECF No. 100).

For the reasons stated on the record, the Court granted Plaintiffs' motion for sanctions (*see* ECF No. 131). It held that it would "award Plaintiffs' attorney fees, travel costs, and other reasonable expenses related to the time the parties reached a tentative agreement on the evening of September 13, 2021, through the Board's rejection of the settlement terms" (ECF No. 127 at PageID.4389). Pursuant to this Court's order, Mr. Infante filed the present motion seeking attorney fees and costs (*see* ECF Nos. 132, 133). He requests $16,486.80 in attorney fees for the relevant time period, $875.68 in costs, and $11,780.40 for fees incurred as a result of bringing the motion for sanctions. For the following reasons, the Court will award Plaintiffs all of their requested costs and $16,266.80[1] in attorney fees. However, it declines to award Plaintiffs $11,780.40 for the attorney fees associated with bringing their motion for sanctions.

Attorney fees are calculated according to a reasonable standard; that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This starting point in determining attorney fees is called the "lodestar" method, which is "the guiding light of our fee-shifting jurisprudence." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010). The reasonable hourly rate

---

[1] This amount reflects the Court's reduction of $220.00 from Plaintiffs' total requested amount for attorney fees, associated with the work conducted by Mr. Scott Eldridge. This reduction is explained below.

2

"may then be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case." *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004).

Mr. Infante claims that he and his colleagues who worked on the case from September 13 through October 6 incurred $16,486.80 in attorney fees. He attached the relevant billing records to his motion (*see* ECF No. 133-1 at PageID.4482-4560).[2] The Township objects to this amount for a few reasons. It first objects to $168.00 billed to each Plaintiff (for a total of $1,848.00) on October 7, 2021, because that date is "outside of the Court's ordered time period" (ECF No. 134 at PageID.4674). While the Court agrees that October 7 is outside of the September 13 (the date the parties reached a tentative agreement) through October 6 (the date the Board rejected the settlement terms) time period, the Court finds that Mr. Infante's request for attorney fees related to his work on October 7, 2021, is reasonable.

The September 13 through October 6 timeline was intended to be a starting point for calculating Plaintiffs' awarded attorney fees—it was not a hard deadline. Following the motion for sanctions hearing, the Court ordered that it would grant Plaintiffs' motion for "attorney fees, travel costs, and other reasonable expenses *related to the time period* the parties reached a tentative agreement on the evening of September 13, 2021, through the Board's rejection of the settlement terms" (ECF No. 127 at PageID.4389) (emphasis added). In other

---

[2] Mr. Infante explains how he bills his clients in this matter: "For this case, Miller Canfield divides its time between the 11 Wineries and writes off small amounts of time to make the bills uniform. By writing off small amounts of time, the total hourly amounts have been reduced to 0.01-hour increments" (ECF No. 133 at PageID.4465). Mr. Infante's billing records indicate that he billed each client $824.40 from September 14 through the end of the month, and then he billed each client $674.40 from October 1 through October 7—the day after the Board rejected the settlement terms. After multiplying the sum of these amounts by 11, the total amount of attorney fees for this time period is $16,486.80, which is exactly what Mr. Infante has requested.

3

words, even if a requested fee, cost, or expense fell outside the time period from when the parties reached a tentative agreement to when the Board voted to reject the settlement terms, if that request was "related to" the relevant time period, the Court may exercise its discretion in determining whether to award the request.

On October 7, 2021, the day after the Board rejected the settlement terms, Mr. Infante billed his clients for traveling from Traverse City back to Grand Rapids, commencing legal research on the enforcement of the settlement agreement, and holding a video conference with his clients regarding the settlement agreement (*see* ECF No. 1331-1 at PageID.4529). The Court finds that this work is directly related to the Board's rejection of the settlement terms. Thus, the Court will award this request for attorney fees over the Township's objection.

Next, the Township also objects to Mr. Infante's calculation of attorney fees because "there was next to nothing going on in this case from September 14, 2021 up until the Township Board made its proper vote to reject the Plaintiffs' proposed settlement terms on the evening of October 6, 2021" (ECF No. 134 at PageID.4676). Although Mr. Meihn, the Township's counsel, may not have conferred with his client or conducted work on the matter during that time period, that does not mean that Mr. Infante did the same. In fact, Mr. Infante has provided detailed billing records from that time period explaining what work he did to prepare for the October 6 Board meeting (*see* ECF No. 133-1 at PageID.4482-4560). This objection is also overruled.

The Township also asserts an additional similar argument: that Mr. Infante engaged in "unnecessary" communications with his clients between September 14 and October 6.

4

The Township asserts that "Mr. Infante claims he had to answer questions about why the Township did not approve the agreement in the three weeks *between* September 14 and October 6" (ECF No. 134 at pageID.4677). However, the Township fails to provide a citation as to where Mr. Infante made such a statement. Nowhere in Mr. Infante's billing records between September 14 and October 6 does he state that he communicated with clients regarding the Board's rejection. Rather, he corresponded with his clients "regarding settlement status" and the "upcoming hearing" (ECF No. 133-1 at PageID.4520-21). Because the Court finds Mr. Infante's request for attorney fees associated with these communications to be reasonable, the Court will overrule the Township's objection.

The Township also objects to Mr. Infante's fees associated with attending the September 14 and October 6 meetings in person. Specifically in regard to the September 14 meeting, the Township argues that Mr. Infante's in-person attendance at the meeting was unnecessary because "he did not speak, did not need to be present for any reason, did not need to prepare and could have easily learned the results of any vote, which did not take place, via a brief phone call with the Township's counsel or watching the meeting on Stream Spot or accessing the minutes online" (ECF No. 134 at PageID.4682). The Court finds this argument without merit. Of course Mr. Infante was permitted to attend the September 14 meeting in-person—where the Board was *supposed to* vote on the settlement terms but decided to table the vote—in the event his clients or the Board had questions regarding the proposed terms or needed his assistance. After all, Mr. Infante was the individual who drafted the proposed settlement agreement. It was more than reasonable for Mr. Infante to attend the September 14 and October 6 meetings in-person, even if he could have watched

5

a live-stream recording or called Mr. Meihn to learn the results of the vote. Thus, this objection is also overruled.

Next, the Township argues that Plaintiffs' request for attorney fees should be reduced "across-the-board" by 5% due to Mr. Infante's use of "block billing" (ECF No. 134 at PageID.4684-85). Attorneys engage in "block billing" when they bill for "all work by a time keeper performed on a particular date . . . without specifying how much time was allotted to each individual task." *Potter v. Blue Cross Blue Shield*, 10 F. Supp. 3d 737, 743 (E.D. Mich. 2014). As an example of Mr. Infante's use of block billing, the Township points to his billing entry on September 14, 2021, where he billed for five different tasks in one entry, instead of breaking down the time associated with each individual task. Although this entry is clearly block billing, the Township has failed to provide binding Sixth Circuit or Supreme Court precedent that mandates a 5% reduction in a party's request for attorney fees when their attorney engages in block billing.[3] The Township provided a citation to *Potter*, 10 F. Supp. 3d at 737, a non-binding case out of the Eastern District of Michigan where the Court applied a 5% reduction in a request for attorney fees that were "vague and block billed." However, the Court finds that Mr. Infante's billing records are not vague. Rather, they sufficiently explain the work that Mr. Infante conducted. Due to the lack of case law supporting the Township's argument, the Court will not reduce Plaintiffs' request for attorney fees by 5%.

However, the Court finds one of the Township's arguments in favor of reducing Plaintiffs' attorney fees to be meritorious: that Plaintiffs cannot recover attorney fees for work

---

[3] The Court has also been unable to locate such a case.

6

conducted by attorneys who have not entered an appearance in this matter. Plaintiffs request attorney fees in the amount of $220.00[4] for Mr. Scott Eldridge's work on the matter, yet he has not entered an appearance on behalf of Plaintiffs. Although the case law on this issue is limited, the Court located one non-binding case that supports the Township's argument that it finds persuasive. *See Career Agents Network, Inc. v. Careeragentsnetwork.biz*, 722 F. Supp. 2d 814, 824 (E.D. Mich. 2010) (denying an award of attorney fees associated with a consultation with an attorney who had not entered an appearance in the case). District courts have the discretion to award attorney fees for work conducted before an attorney enters an appearance. *See Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). However, because Mr. Eldridge *never* entered an appearance, the Court declines to award Plaintiffs their requested $220.00 in attorney fees for Mr. Eldridge's work.[5]

After reducing Plaintiffs' request for attorney fees by $220.00 associated with Mr. Eldridge's work, the Court will award Plaintiffs a total of $16,266.80 in attorney fees.

Mr. Infante also requests an award of $875.68 in costs associated with the Township's tentative acceptance and subsequent rejection of the proposed settlement terms. The Township objects to the amount of costs that Plaintiffs request because these fees all appear

---

[4] The Township requests that Plaintiffs' award be reduced by $660.00 for Mr. Eldridge's work, yet the Court is unsure how the Township calculated this number. Mr. Infante explicitly requests $220.00 total for Mr. Eldridge's work, and his billing records confirm this amount (ECF No. 132 at PageID.4462). The Township believes that, in addition to the $220.00 worth of work that Mr. Eldridge completed in September, he also completed $660.00 worth of work in October. However, the provided billing records do not show that Mr. Eldridge billed for any work in this matter in October (*see* ECF No. 133-1 at PageID.4527-30). Therefore, the Court will only reduce Plaintiffs' award by $220.00 for the work that Mr. Eldridge completed in September, as the provided billing records indicate.

[5] The Township also notes that Mr. Robert DeJong has not entered an appearance in this matter, and thus, the inclusion of his fees is also improper. However, Plaintiffs are not requesting compensation for Mr. DeJong's work due to his insignificant amount of time spent on the matter. Thus, the Court need not reduce Plaintiffs' attorneys' fee award for Mr. DeJong's work. Further, the Court declines to grant the Board's request to strike the references to Mr. DeJong's work in Plaintiffs' petition. The Court finds that striking these references would be unnecessary.

7

to be outside the September 13 through October 6 time frame. Specifically, Mr. Infante requests costs for travel and a hotel stay from September 12 through 13, and for travel and a hotel stay from October 6 through 7 (ECF No. 133-1 at PageID.4562). For the same reasons as stated above in regard to Plaintiffs' request for attorney fees outside the outlined time period, the Court also finds that the requested costs are "related to" the relevant time period. Thus, the Court shall award Plaintiffs their requested costs.[6]

Finally, Mr. Infante requests attorney fees incurred in bringing the Plaintiffs' motion to enforce the settlement agreement or for sanctions, which was partially meritorious. Mr. Infante claims that Plaintiffs incurred $11,780.40 in fees related to drafting the motion, preparing for the hearing, and attending the hearing (*see* ECF No. 133 at PageID.4473-74). The Court declines to award these fees. The Court did not rule that it would award Plaintiffs their fees for bringing the motion for sanctions. Rather, it would award Plaintiffs their fees and costs for the time period between when the parties tentatively agreed on the settlement terms to when the Board rejected those terms. Plaintiffs' motion is clearly outside that time frame. Thus, this request will be denied.

---

[6] The Court would be remiss if it failed to address Mr. Meihn's allegations that Mr. Infante engages in unethical and illegal billing (*see* ECF No. 134 at PageID.4680). The basis of Mr. Meihn's allegations is that, in Mr. Infante's motion for fees and costs, he states that he stayed in a hotel after the Board meetings on September 14 and October 6 (*see* ECF No. 133 at PageID.4466), yet in his billing records, Mr. Infante billed for travel and a hotel stay on September 12 through 13 (*see* ECF No. 133-1 at PageID.4562), and then he only billed for travel—not a hotel stay—on September 14 (*see* ECF No. 133-1 at PageID.4484). Mr. Meihn makes the bold allegation that Mr. Infante billed his clients for driving from Traverse City to Grand Rapids on September 14 and that he also billed them for staying in a hotel on the same day. However, the billing records do not support Mr. Meihn's statement. Although Mr. Infante's motion states that he stayed in a hotel on September 14, he has *not* billed his clients for such a stay, nor does it appear that he is asking for costs related to a hotel stay on September 14. His records show that he stayed in a hotel on September 12 through 13—the night before the final mediation session in which the parties reached a tentative agreement—which the Court has found to be reasonably related to the relevant time period. While Mr. Meihn may be correct that there is a slight discrepancy between Mr. Infante's motion and his billing records, there does not appear to be any bad faith or evidence of duplicative or unethical billing. Mr. Meihn should tread carefully before accusing future opposing counsel of unethical or illegal practices.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for attorney fees and costs (ECF No. 132) is **GRANTED** in part and **DENIED** in part. Specifically, it is granted as to Plaintiffs' request for $16,266.80 for attorney fees, and for $875.68 for costs. It is denied as to Plaintiffs' request for $220.00 for attorney fees from Mr. Eldridge's work, and for $11,780.40 for attorney fees related to bringing their motion to enforce the settlement agreement or for sanctions. Therefore, Plaintiffs are awarded a total of $17,142.48 for attorney fees and costs.

Judgment to follow.

**IT IS SO ORDERED**.

Date: January 5, 2022                                /s/ Paul L. Maloney
                                                                                                  Paul L. Maloney
                                                                                                  United States District Judge