UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC.,
a Michigan Nonprofit Corporation,
BOWERS HARBOR VINEYARD                    Case № 1:20-cv-01008
& WINERY, INC., a Michigan               Hon. Paul L. Maloney
Corporation, BRYS WINERY, LC,            Magistrate Judge Ray S. Kent
a Michigan Corporation, CHATEAU
GRAND TRAVERSE, LTD,
a Michigan Corporation, CHATEAU
OPERATIONS, LTD, a Michigan
Corporation, GRAPE HARBOR, INC.
a Michigan Corporation, MONTAGUE
DEVELOPMENT, LLC, a Michigan
limited liability company, OV THE FARM, LLC
a Michigan limited liability company,
TABONE VINEYARDS, LLC. a Michigan
Limited Liability Company, TWO LADS, LLC,
a Michigan limited liability company,
VILLA MARI LLC, a Michigan
Limited Liability Company, WINERY
AT BLACK STAR FARMS, L.L.C.,
a Michigan Limited Liability Company,

              Plaintiffs,

vs.

PENINSULA TOWNSHIP, a Michigan
Municipal Corporation,

              Defendant.

| | |
|---|---|
| MILLER, CANFIELD, PADDOCK et al | GREGORY M. MEIHN (P38939) |
| JOSEPH M. INFANTE (P68719) | MATTHEW T. WISE (P76794) |
| CHRISTOPHER J. GARTMAN (P83286) | FOLEY & MANSFIELD, P.L.L.P. |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 99 Monroe Avenue NW, Suite 1200 | 130 E. 9 Mile Rd. |
| Grand Rapids, MI 49503 | Ferndale, MI 48220-3728 |
| (616) 776-6333 | (248) 721-4200 / Fax: (248) 721-4201 |
| infante@millercanfield.com | gmeihn@foleymansfield.com |
| gartman@millercanfield.com | mwise@foleymansfield.com |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56**

Defendant, Peninsula Township, through its attorneys, Foley & Mansfield, PLLP, submits its Motion for Summary Judgment Pursuant to Rule 56, relying upon its Brief in Support as the facts, evidence and law warranting dismissal.

WHEREFORE, the Township requests the Court grant Summary Judgment as to Counts I, II, III, IV, V, VI, VII, IX[1] and X of Plaintiffs' First Amended Complaint,[2] holding that there is no genuine issue of material of fact, that the Townships Ordinances are not unconstitutional and award the Township their reasonable costs and attorneys' fees incurred in defending this action.

Dated:  January 18, 2022                    By:    /s/ Gregory M. Meihn
                                                   Foley & Mansfield, PLLP
                                                   130 E. 9 Mile Rd.
                                                   Ferndale, MI 48220
                                                   (248) 721-4200
                                                   gmeihn@foleymansfield.com
                                                   P38939

---

[1] Plaintiffs filed a Motion for Partial Summary Judgment (ECF No. 135) that does not request summary judgment on Counts III, IX or X.  The Township requests those claims be dismissed.

[2] On May 11, 2021, the Township filed a Cross-Motion for Summary Judgment on Count VIII (State Law Preemption).  (ECF Nos. 61-62).  The Township will not reiterate those arguments, but incorporate by reference, under Fed. R. Civ. P. 10(c), its Motion and Brief herein.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC.,
a Michigan Nonprofit Corporation,
BOWERS HARBOR VINEYARD                    Case № 1:20-cv-01008
& WINERY, INC., a Michigan                Hon. Paul L. Maloney
Corporation, BRYS WINERY, LC,             Magistrate Judge Ray S. Kent
a Michigan Corporation, CHATEAU
GRAND TRAVERSE, LTD,
a Michigan Corporation, CHATEAU
OPERATIONS, LTD, a Michigan
Corporation, GRAPE HARBOR, INC.           ORAL ARGUMENT REQUESTED
a Michigan Corporation, MONTAGUE
DEVELOPMENT, LLC, a Michigan
limited liability company, OV THE FARM, LLC
a Michigan limited liability company,
TABONE VINEYARDS, LLC. a Michigan
Limited Liability Company, TWO LADS, LLC,
a Michigan limited liability company,
VILLA MARI LLC, a Michigan
Limited Liability Company, WINERY
AT BLACK STAR FARMS, L.L.C.,
a Michigan Limited Liability Company,

              Plaintiffs,

vs.

PENINSULA TOWNSHIP, a Michigan
Municipal Corporation,

              Defendant.

| | |
|---|---|
| MILLER, CANFIELD, PADDOCK et al | GREGORY M. MEIHN (P38939) |
| JOSEPH M. INFANTE (P68719) | MATTHEW T. WISE (P76794) |
| CHRISTOPHER J. GARTMAN (P83286) | FOLEY & MANSFIELD, P.L.L.P. |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 99 Monroe Avenue NW, Suite 1200 | 130 E. 9 Mile Rd. |
| Grand Rapids, MI 49503 | Ferndale, MI 48220-3728 |
| (616) 776-6333 | (248) 721-4200 / Fax: (248) 721-4201 |
| infante@millercanfield.com | gmeihn@foleymansfield.com |
| gartman@millercanfield.com | mwise@foleymansfield.com |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

## TABLE OF CONTENTS

1.   INTRODUCTION ...................................................................................................1

2.   FACTUAL BACKGROUND ...................................................................................1
     a.   Background of the Township.........................................................................1
     b.   History of Ordinances ..................................................................................3
     c.   Ordinances at Issue ......................................................................................5
          i.    Farm Processing Facility.....................................................................7
          ii.   Winery-Chateau - § 8.7.3(10) ............................................................7
          iii.  Remote Winery Tasting Room § 8.7.3(12)..........................................8
     d.   Plaintiffs' SUPs............................................................................................8

3.   LAW AND ARGUMENT ......................................................................................12
     a.   Standard of Review.....................................................................................12
     b.   SUP Agreements .........................................................................................12
     c.   Plaintiffs' Claims Barred by Leches ...........................................................13
     d.   No Unlawful Regulation of Commercial Speech ........................................14
     e.   There is No Prior Restraint or Compelling of Speech ................................18
          i.    Prior Restraint ...................................................................................18
          ii.   Compelling Speech .............................................................................19
     f.   There is No Violation of Freedom of Association or Regulation ...............20
     g.   The Ordinances Do Not Violate the Commerce Clause .............................20
     h.   The Ordinances Do Not Violate Due Process.............................................25
     i.   The Township's Ordinances Do Not Constitute a Regulatory Taking .......27
     j.   The Township's Ordinances Do Not Violate the Michigan Zoning and Enabling Act
          ..........................................................................................................................29
     k.   The Plaintiff's Are Not Entitled to Any Injunctive Relief ........................31
     l.   Township is Entitled to its Costs and Attorneys' Fees ..............................33

  4.   CONCLUSION.....................................................................................................34

i

## <u>INDEX OF AUTHORITIES</u>

## Cases

*Adams Outdoor Advertising v. Holland*, 234 Mich. App. 681, 691-92 (1999), *aff'd*, 463 Mich. 675 (2001) ................................................................................30

*Adams Outdoor Advertising v. Holland*, 234 Mich. App. 681, 692-93 ................30

*Alexander v. United States*, 509 U.S. 544, 550 (1993) ............................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986 ....................................12

*Baker v. Windsor Republic Doors*, 414 Fed.Appx. 764 (6th Cir.2011) .................33

*Burt Twp. v. Dep't of Natural Resources*, 459 Mich. 659, 666 (1999) .................30

*C&A Carbone, Inc. v. Clarkston, New York*, 511 U.S. 383, 390 (1994)................20

*Central Hudson* ........................................................................................................17

*Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561 (1980) ................................................................................................................15

*Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (2007).....................13

*City of Cleveland* ......................................................................................................24

*City of Cleveland v. City of Brook Park*, 893 F.Supp. 742 (N.D. Ohio 1995) ........23

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ................................................26

*Coates v. City of Cincinnati*, 402 U.S. 611, 614, ...................................................27

*Conlin v. Scio Twp.*, 262 Mich. App. 379, 394 (2004)...........................................30

*Costello v. United States*, 365 U.S. 265, 282 (1961)...............................................13

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991)13

*Euclid v. Ambler Reality Co.*, 272 U.S. 365, 195 (1926).......................................29

*Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457 (1997) ...........................15

*Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)................................26

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).....................................................33

*Houdek v. Centerville Twp.*, 276 Mich. App. 568, 584-85; 741 N.W.2d 587 (2007) .......................................................................................................................31

*Kirk v. Tyronee*, 398 Mich. 429, 439 (1976) .........................................................30

*Kropf v. Sterling Heights*, 391 Mich. 139, 158 (1974) ...........................................30

*Loesel v. City of Frankenmuth*, 2009 WL 1449049................................................23

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, (1992) ........................27

*Maple BPA v. Bloomfield Twp.*, 302 Mich. App. 505, 519 (2013) .........................31

*Marras v. Livonia*, 575 F.Supp.2d 807, 817 (E.D. Mich. 2008) ............................30

*Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir.2009); *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir.2008) ...........................12

*Nat'l Solid Waste Mgt. Ass'n v. Pine Belt Regional Solid Waste Mgt. Auth.*, 389 F.3d 491, 497 (C.A. 5, 2004) .............................................................................20

*Norman Corp. v. E. Tawas*, 263 Mich. App. 194, 201; 687 N.W.2d 681 (2004) ...30

ii

*Northeast Ohio Coalition for Homeless & Service Employees Int'l Union v. Blackwell*, 437 F.3d 999, 1009 (6th Cir.2006) ................................32
*Obiukwu v. U.S.*, 14 Fed.Appx. 368, 369 (2001)....................................13
*Ohio Republic Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.2008) ........32
*Oschin v. Township of Redford*, 315 Mich. 359, 363 (1946) ...................28
*Owosso v. Pouillon*, 254 Mich App 210, 213, 657 N.W.2d 538 (2002) ................18
*Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171 (1972) ............ 26, 27
*People v. Barton*, 253 Mich App 601, 603, 659 N.W.2d 654 (2002).....................18
*People v. Boomer*, 250 Mich App 534, 538, 655 N.W.2d 255 (2002)...................18
*Planet Aid v Ypsilanti Twp.*, 26 F.Supp.3d 683 (E.D. Mich. 2014) .......................24
*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (2001)..19
*Raabe v. Walker*, 383 Mich. 165, 177 (1970)............................................14
*Reilly v. Marion*, 113 Mich. App. 584, 587; 317 NW2d 693 (1982) .....................30
*Rochester v. Superior Plastics, Inc.*, 192 Mich. App. 273 (1991).....................31
*See Vance v. United States*, 965 F.Supp. 944, 946 (E.D.Mich.1997).....................13
*Square Lake Hills Condo. Ass'n v. Bloomfield Twp.*, 437 Mich. 310, 320 (1991) .29
*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002)...............................................27
*Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir.1985) ...............13
*U.S. v. United Foods, Inc.*, 533 U.S. 405, 410 (2001)..............................19
*United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358-59 (6th Cir.1998)........................25
*Van Buren Tp. v. Garter Belt, Inc.*, 258 Mich App 594, 610, 673 N.W.2d 111 (2003) .................................................................18
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) .................................................................27
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).................................................................26
*Wheeler* ...........................................................................21
*Wheeler v. Charter Tp. Of Shelby*, 265 Mich App 657, 957 NW2d 180 (2005), 511 U.S. at 392 .........................................................21

## Statutes

MCL §125.3201(1) ..................................................................29
MCL §125.3504(2) ..................................................................30
MCL §41.181 .......................................................................29

## Other Authorities

42 U.S.C. §1988..................................................................34
Const. 1963, Art. 7 § 34 ........................................................30

iii

## Rules

Fed. R. Civ. P. 56 ...................................................................................34

Fed. R. Civ. P. 65 ...................................................................................32

1. **Introduction**

After decades of agreement by the Plaintiff Wineries ("Plaintiffs") to voluntarily locate and operate wineries in the A-1 *agriculturally-zoned* districts ("A-1 District") of Peninsula Township ("Township"), the next generation of Plaintiffs' owners now seek to nullify their Special Use Permits, overturn the Township's Ordinances and turn their wineries into commercial hot-spots for their pecuniary gain.  Incredibly, the Ordinances the Plaintiffs challenge are the same ones the Plaintiffs *requested*, *helped draft* and *wanted*.  Plaintiffs wanted to continue to operate their agricultural facilities, but also offer small asides, like small plates of food and logoed merchandise items.  Now, they seek to completely undo their own creation and destroy the status quo in the Township without any alternative. Plaintiffs' attempts should be denied, and their legal claims dismissed via summary judgment.

2. **Factual Background**

   a. **Background of the Township**

Peninsula Township is a general township in Northern Michigan with a rich history of natural sights, and a long tradition of promoting agricultural and farming activities.  With a population under six thousand, the less than 32 square mile peninsula with "one road in and one road out" is home to some of the finest grapes, cherries and agricultural production in the nation. All the way back to 1968, when the Township adopted its first Master Plan, it sought to protect these precious and rare lands, its agricultural industry and the way of life central to its citizens.  In 1972, the Township adopted the Peninsula Township Zoning Ordinances ("PTZO")[1], establishing

---

[1] Plaintiffs challenge three sections of the nearly 150-page PTZO.  §6.7.2(19), a use by right in the A-1 District for Farm Processing Facilities; §8.7.3(10), a special use in the A-1 District for Winery-Chateaus; and, §8.7.3(12), a special use in the A-1 District for Remote Tasting Rooms.

1

the A-1 Agricultural District, and a separate C-1 Commercial District.  §6.1.1.  The A-1 District

was created with this intention:

> This District is intended to **recognize the unique ecological character** of the Peninsula and to **preserve, enhance, and stabilizing [sic] existing areas within the Township which are presently being used predominantly for farming purposes**, yet recognize that there are lands within the district which are not suited to agriculture, therefore allowing other limited uses which are deemed to be **compatible with agricultural and open space uses**.

§6.7.1 [emphasis added].

The Township also established the C-1 District for commercial uses:

> This section establishes the C-1 Commercial District to allow for convenience type shopping for Township residents and for limited marina and transient lodging facilities.  It is the purpose of this regulation to avoid undue congestion on major highways, to promote smooth and safe traffic flow along highway routs.  Commercial activities within this district are those which primarily offer goods and services which are generally required by a family at intervals of a week or less.

§6.6.1.

Uses permitted in the C-1 District include retail stores, shops, warehousing of products sold at

retail on the premises, service institutions, utilities, restaurants and taverns, recreational unit sales,

farm supply and implement dealers, professional offices and off street parking lots.  They also

include gasoline stations, marinas, hotels, motels and tourist courts.  §6.6.2(1)-(6).  The A-1 and

C-1 Districts were created fifty years ago with distinct purposes, ensuring uniformity within the

districts, compatible uses within the districts and to avoid spot zoning.  This was not an accident.

Significantly, the A-1 District is largely the same land nearly fifty years later.  Originally,

the only winery in the A-1 District was Chateau Grand Traverse.  The A-1 District limited uses

such as the production, processing and wholesale and retail sales of various agricultural products

to maintain the original intention of the district.  In 1991, the Township amended its Master Plan

---

(ECF No. 29, generally).  These sections shall be referred to as the "Ordinances" in this Brief, while the entirety of the Township's Zoning Ordinances shall be referred to as "PTZO."

to preserve two land areas:  Agricultural Preserve Area and Prime Scene View area.  (**Ex. 1**, Township Master Plan).  In 1994, voters of the Township approved a tax increase of 1.25 mills to preserve, in perpetuity, the agricultural and open space character of the Township, and also enacted the Purchase Development Rights Ordinance to continue the Township's strong interest in protecting traditional farming and agricultural lands.  (**Ex. 2**, PDR Ordinance).  This was affirmed by the Township's voters in 2002 with approval of another millage of 2 mills for  201 years.  The Township has long-preserved agriculture and has refined these intentions for decades.  (**Ex. 3**, Parsons, p. 15).

In conjunction, at the request of the wineries, the Township enacted Ordinances allowing the wineries to engage in some, reasonably restricted commercial activity in the A-1 District.  These operations within the A-1 District today have flourished into eleven wineries who chose to open and operate their agriculturally-focused operations within this district.  These wineries are now Plaintiffs in this litigation in 2022.

**b.  History of Ordinances**

Plaintiffs arrived in this Court in October of 2020 (ECF No. 1) to belatedly challenge the PTZO, which when created in 1972, stated if land was not already commercially developed, it would be reserved for agricultural use.  (**Ex. 3**, p. 16).  Since then, agriculture has provided a culture in the Township and has kept taxes down with limited capacity on infrastructure due to the geography of the land and limited road access.  (**Ex. 3**, pp. 16).  This has created the fabric of Township culture and community, protecting a way of life and the land.  *Id.*  Nearly everything the Township has approved in zoning for the last four decades has been done to protect, preserve and enhance agriculture.  (**Ex. 3**, pp. 19-20).

Some of the key events in the preservation of these interests are as follows:

2268552 v1

- Township enacted original Master Plan, demonstrating an emphasis on preserving the natural character, open areas and preserving agricultural lands and operations (**Ex. 1**);

- On September 28, 1987, Township created an Agricultural Study Committee to evaluate the impact of zoning and its Ordinances on its agriculturally-zoned lands as it continued to be particularly concerned with preserving the same (**Ex. 1**);

- On December 16, 1989, approximately thirty-two years ago, the Township approved Amendment 79, permitting agriculturally-zoned landowners to obtain a Special Use Permit ("SUP") to **operate a Winery-Chateau** provided it agreed to abide by the Township's Ordinances, specifically §8.7.3(10) and any conditions contained in the applicable SUP (**Ex. 4**);

- In 1991, the Township amended its Master Plan, considering the "big picture" of the Township's zoning and continuing its emphasis on preserving agricultural land (**Ex. 1**);

- On May 4, 1994, the Township enacted the PDR Ordinance (**Ex. 2**), further validating the ideas behind the Master Plan in protecting the agricultural segment to guarantee available land for agriculture (**Ex. 5**, Hayward, pp. 103-105);

- On May 12, 1998, twenty-three years ago, Township added Amendment 120 to its Ordinances, permitting agriculturally-zoned landowners to operate **Remote Tasting Rooms** associated with the wineries pursuant to a SUP and under §8.7.3(12) (**Ex. 6**);

- On July 9, 2002, nearly twenty years ago, the Township adopted Amendment 139, permitting agriculturally-zoned landowners to operate **Farm Processing Facilities** as a matter of right under §6.7.2(19) of the Township's Ordinances (**Ex. 7**), as well as permitting residences for the same via Amendment 146 months later (**Ex. 8**);

- On August 10, 2004, the Township adopted Amendment 141, permitting "Guest Activities" in accordance with the previous structures of the Winery-Chateau operation under §8.7.3(10)(**Ex. 9**);

- On August 11, 2009, the Township added Amendment 181, adding sales of wine by the glass for wineries (**Ex. 10**);

- And, on October 20, 2020, after decades of collaboration with the Township and its citizens to balance Plaintiffs' desire for more commercial activity in the A-1 District, Plaintiffs filed this litigation to force the Township to permit unfettered commercial operations. (ECF No. 1).

The historical development of the PTZO shows decades of action to maintain the Township's character and preserve agricultural lands.

2268552 v1

Plaintiffs attempt to paint an inaccurate picture that the Township has forced the Ordinances down their throats and rules with an iron fist.  To the contrary, testimony elicited demonstrates it was Plaintiffs that approached the Township to create these Ordinances.  Those involved in the development, drafting and consideration of these Ordinances testified:

- The Winery-Chateau Ordinance, §8.7.3(10), was originally requested by Bob Begin, who owned Chateau Chantal and wanted to have "a real Chateau" and sell food, drinks and have guests.  The origins of that Ordinance began with his proposal. (**Ex. 5**, pp. 68, 82-83); (**Ex. 3**, pp. 135, 139, 153); (**Ex. 11**, Wunsch, pp. 102-103);

- §8.7.3(10) was negotiated by the Township, Plaintiffs (including Bernie Kroupa, Bob Begin, Rex Hite and Bob Manety) and others within the community. And, all of the Ordinances were requested by the property owners interested in preserving the agricultural industry.  (**Ex. 5**, pp. 88-90, 15);

- Ed O'Keefe, of Chateau Grand Traverse, was instrumental in developing the Ordinances over the years, specifically including the Winery-Chateau Ordinance.  (**Ex. 3**, p. 42, 140); (**Ex. 11**, pp. 164-165);

- The Farm Processing Facility Ordinance, §6.7.2(19), was drafted, in part, by Bernie Kroupa, John Wunsch, Jed Hemming and Mark Nadolski. (**Ex. 5**, p. 46);

- The Remote Winery Tasting Room committee developed that Ordinance and included Dave and Joan Kroupa, as the individuals who brought about this idea. (**Ex. 5**, pp. 94-95; **Ex. 3**, p. 36); (**Ex. 11**, p. 162).

Plaintiffs were always involved, often spearheading, all of these Ordinances.  (**Ex. 3**, pp. 54-55). What was previously a collaborative effort beginning with the ideas of Mr. Begin and Mr. O'Keefe and shuttle diplomacy with the Township (**Ex. 3**, p. 178), has deteriorated from farmers who made good wine to a generation concerned only with money.  (**Ex. 3**, p. 125).

### c.  <u>Ordinances at Issue</u>

Plaintiffs seek to re-write history and abrogate the Township's Ordinances and ignore the overarching goals and intent of the PTZO:

<u>Section 2.1 Purposes</u>:  The purposes of this Ordinance are to protect the health, safety, morals and general welfare of the inhabitants of the Township; to provide for adequate light, air and convenience of access to secure safety from fire and other dangers; to avoid undue

<div align="center">5</div>

concentration of population by regulating minimum open spaces and by regulating and limiting types and locations of buildings and regulating the location of trades, industries, and buildings designated for specific uses; to provide for the orderly development of the Township; to encourage the use of lands and resources of the Township in accordance with their character and adaptability; to provide for safety in traffic, adequacy of parking and reduce hazards to life and property; to facilitate the development of adequate systems of fire protection, education, recreation, water supplies and sanitary facilities; and to conserve life, property, natural resources and the use of public funds for public services and improvements to conform with the most advantageous use of lands, resources and properties.

§2.1.

And while Plaintiffs discount these explicitly stated intents and purposes of the PTZO, as well as the specific intents of the provisions at issue, that is entirely improper and overlooks the language of the Ordinances itself.[2]  Township Supervisor, Rob Manigold, testified he "wholeheartedly agrees" with §2.1 for all of the Ordinances and believes all of those purposes and interests were involved in enacting them. (**Ex. 12**, Manigold, pp. 225-227).  The Ordinances cannot be viewed in the vacuum in which Plaintiffs attempt to place them.

And, an individual and attorney involved in drafting all of the Ordinances testified about the initial concerns in developing these Ordinances, and compared them with others he had seen fail to preserve agriculture, noting many others had lost control, but the Township wanted to prevent that, which was a "big deal." (**Ex. 3**, pp. 231-232).  The underpinning of the PTZO is crucial and has played a vital role in the development of the three Ordinances here.

---

[2] Plaintiffs will likely argue the Township had to articulate its interests in enacting the Ordinances and it was limited to four.  This representation is false.  Plaintiffs submitted overbroad interrogatories asking the Township to articulate its interests and it relied upon the plain language of the Ordinances.  (**Ex. 13**, Interrogatory Answers, ##6-8).  Although the Court was able to glean these interests in denying Plaintiffs' Motion for Preliminary Injunction by reading the Ordinances, Plaintiffs were apparently unable to do so and forced the issue, at which time the Township *again relied upon the language in the Ordinances* and *also* stated governmental interests it sought to advance and protect.  (**Ex. 14**, Supplemental Interrogatory Answers, ##6-8).

6

### i.  Farm Processing Facility – §6.7.2(19)

The first Ordinance at issue is § 6.7.2(19), for Farm Processing Facilities, a use by right

that does not require a SUP or approval by the Township in the A-1 District.  The intent states:

> Statement of Intent:  It is the intent of this subsection **to promote a thriving agricultural production industry and preservation of rural character** by allowing constructing and use of a Farm Processing Facility.  The Farm Processing Facility use includes retail and wholesale sales of fresh and processed agricultural produce but is not intended to allow a bar or restaurant on **agricultural properties** and the Township shall not approve such a license. The majority of the produce sold fresh or processed has to be grown on the specific farm operation (land owned or leased for the specific farm operation) of the party owning and operating the Specific Farm Processing Facility.  Eight-five (85) percent of the produce sold fresh or processed has to be grown on Old Mission Peninsula.  Activities such as weddings, receptions and other social functions for hire are not allowed, however, participation in approved township wide events is allowed.  **It is not the intent to grant any vested interest in non-agricultural uses of any structure built for a Farm Processing Facility**.

(**Ex. 15**).

This Ordinance applies to only *three* Plaintiffs—2 Lads, Tabone Vineyards and Black Star Farm,

so allegations made regarding other Ordinances by these three are irrelevant.

### ii.  Winery-Chateau – §8.7.3(10)

Plaintiffs also protest § 8.7.3(10), for Winery-Chateaus via SUPs, Plaintiffs' creation

through Bob Begin of Chateau Chantal when they wanted commercial activity on their

agriculturally-zoned lands.  The intent states:

> It is the **intent of this section** to permit construction and use of a winery, guest rooms, and single family residences as a part of a single site subject to the provisions of this ordinance. The developed site **must maintain the agricultural environment, be harmonious with the character of the surrounding land and uses, and shall not create undue traffic, congestion, noise, or other conflict with the surrounding properties**.

(**Ex. 16**).

Bob Begin *requested* this and created the original proposal.  (**Ex. 3**, p. 233).  This section applies

only to: Villa Mari, Hawthorne, Bowers Harbor, Oosterhouse, Brys, Chateau Chantal and

7

2268552 v1

Chateau Grand Traverse.  Plaintiffs all complain about this Ordinance, but it only applies to those with SUPs that agreed to comply with the PTZO.

### iii.  Remote Winery Tasting Room – §8.7.3(12)

Plaintiffs also attempt to forcibly change §8.7.3(12), permitting Remote Winery Tasting Rooms via SUPs.  The intent was to permit wine tasting not on the same property and "**establish reasonable standards for the use.**"  (**Ex. 17**).

There is only *one* Plaintiff operating via SUP as a Remote Tasting Room, Peninsula Cellars. This section does not apply to any other Plaintiff.

### d.  **Plaintiffs' SUPs**

Plaintiffs seek to upend the Township's Ordinances and claim the regulatory structure is "vague" or violates law.  Yet, Plaintiffs blatantly ignore the language of the agreements they have entered into with the Township through the various SUPs they have applied for, negotiated and executed.  They all agreed to both the terms and conditions of the SUPs, but also to abide by the PTZO, including these Ordinances.  Their feigned ignorance is intentional and highlights their effort to distance themselves from their role in creating the Ordinances.  Almost all Plaintiffs have operated under SUPs in which they agreed to abide by these Ordinances.

The following SUPs and agreements existed long before Plaintiffs filed this lawsuit:

**_Chateau Chantal_**:  SUP No. 21, replaced by SUP 95 in 2004 (ECF No. 63-2, ID##2775-2782), agreed to restrict food service to registered guests, agreed to special permits for outdoor events, including limitations upon hours of conduct, limitation on outdoor festivals, and a "catch-all" provision in which they agreed to use the land only for those uses in the SUP and to comply with the entirety of the PTZO, unless amended. (ECF No. 63-3, ID##2784-2799). And shortly after Bob Begin helped develop §8.7.3(10), agreed to a Consent Judgment, stipulating:

8

> The winery-chateau known as "Chateau Chantal" shall not directly or indirectly sell wine by the glass to anyone on the winery-chateau premises, nor shall it directly or indirectly sell or provide food or other beverages to persons who are not "registered guests" unless specifically approved by a resolution or motion passed by a majority of the Peninsula Township Board.

(ECF No. 63-4, ID##2801-2805).  Current CEO Marie Chantal admitted her father helped establish the Ordinances and their operations are largely unchanged since 1993.  (**Ex. 18**, Chantal, pp. 7-8, 12-13).  She admitted she did not know what was in their SUP and could not explain why they denied they agreed to terms and conditions in their SUP.  (**Ex. 18**, pp. 47-50, 52-53).

*__Chateau Grand Traverse__*:  SUP No. 24 agreed to abide by § 8.7.3, with reasonable restrictions on food service, activities and outdoor gatherings and "at such hours and in such manner as to not be disruptive to neighboring properties" as well as the "catch-all" provision. (ECF No. 63-5, ID##2807-2823).  They have not amended their SUP or challenged the Ordinances.

*__Bowers Harbor__*:  SUP No. 132 specifically agreed to abide by §8.7.3(10), and:

> The petitioner shall comply with all state, county, **township** and other governmental regulations relative to the establish for a parcel zoning A-1, agricultural, with the above permitted use(s) on site…

> Zoning compliance is based on the governing special land use document, approved site plan, and Articles **6 and 8** of the Peninsula Township Zoning Ordinance.

(ECF No. 63-6, ID##2825-2855).

This is explicit agreement to comply with Ordinances they claim are invalid.  Their General Manager since 1997, Spencer Stegenga, testified they have not amended their SUP.  (**Ex. 19**, Stegenga, p. 50).  They applied for the SUP because it allowed guest activities, put less restrictions on purchasing grapes and allowed hosting events.  (**Ex. 19**, pp. 48-49).

**_Black Star Farms_**:  Although operating a Farm Processing Facility as a matter of right, has SUP No. 34, originally agreed to in 1994 and contains the same "catch-all" provision for compliance. (ECF No. 63-7, ID##2857-2879).  Their General Manager since 2016 testified she has never read the Ordinance and did not know what a Farm Processing Facility is.  (**Ex. 20**, Fenton, pp. 28-29).

**_Brys Winery_**:  SUP No. 115, amended _four times_, without challenging the "restrictions" since its inception and was not interested in guest activities. (ECF No. 63-9, ID##2897-2992).  Their representative testified Brys completely understands the Winery-Chateau Ordinance (**Ex. 21**, Brys, pp. 18-19), but pled ignorance to the contents of the SUP.  (**Ex. 21**, p. 11).

**_Villa Mari_**:  SUP No. 126 agreed to food and beverage services consistent with the Ordinances and for registered guests only, and the identical compliance provision for Bowers Harbor above.  (ECF No. 63-10, ID##2994-3020).  Villa Mari has never attempted to amend its SUP.  Their VP of Operations, Alex Lagina, testified it become a Winery-Chateau so they could engage in _more activities_, including overnight guests not previously permitted.  (**Ex. 22**, Lagina, pp. 22-23).  He is fully aware of the SUP, its contents and the requirements of the Ordinances.  (**Ex. 22**, p. 26).

**_Tabone Vineyards_**:  SUP No. 73, approved in 2000, contains the "catch-all" compliance provision.  (ECF No. 63-11, ID##3022-3032).  When transferred to them, Tabone Vineyards did not change this SUP.  Their owner, Mario Tabone, recognized his winery does not need to have a SUP.  (**Ex. 23**, Tabone, pp. 6, 11-12, 15).

**_Oosterhouse Vineyards_**:  SUP No. 118 agreed and acknowledged:

> I hereby acknowledge that I have received a true copy of the Special Land Use and I have been informed of said requirements of this Special Land Use and of the requirements of the Peninsula Township Zoning Ordinance, pertaining to the operation of the approved Winery Chateau.

10

(ECF No. 63-12, ID##3034-3050).

They have not amended this SUP since its approval.  Their owner and GM, Todd Oosterhouse, testified the SUP allows them to function as a Winery-Chateau and the activities in which it permits his winery to engage are in the SUP.  (**Ex. 24**, Oosterhouse, pp. 15-16, p. 64).

 ***Peninsula Cellars***:  SUP No. 62, contains the same "catch-all" provision above.  (ECF No. 63-13, ID##3053-3061).  This SUP issued in November of 1998.  Peninsula Cellars has done nothing to change its terms in nearly twenty-three years.  Their GM, John Kroupa is aware of the SUP and knows they have been operating under it since 1998, but denies they ever agreed to it for the sole reason he was not there when his mother signed it.  (**Ex. 25**, Kroupa, pp. 8, 12, 25-26).  He could not provide any reason for this denial even after seeing the SUP under which his business has operated under for decades.  (**Ex. 25**, p. 28).

 ***Hawthorne Vineyards***:  SUP No. 135 contains the same compliance provision quoted above for Bowers Harbor.  (ECF No. 63-14, ID##3063-3072).  Their GM, Ann Petty John, acknowledged they signed the SUP and were informed of the requirements of the Ordinances (**Ex. 26**, Petty John, pp. 13-14), but largely relied on Chateau Chantal for her knowledge of almost everything and was not even aware of the substance of Plaintiffs' challenges to the Ordinances.  (**Ex. 26**, p. 23).

 ***Two Lads***:  Not operating via SUP, Two Lads has not challenged its compliance with the Ordinances in nearly a decade and a half.  Their GM and co-owner, Chris Baldyga, testified he was concerned with hours restrictions (do not exist in §6.7.2(19))(**Ex. 27**, Baldyga, p. 11) and was aware of the purported limitations of the Ordinances before operating.  (**Ex. 27**, p. 24).

 The significance of the SUPs cannot be swept aside. Plaintiffs' attempts to ignore them is transparent:  they cannot provide any legitimate reason for why they would request and help

<div align="center">11</div>

develop these Ordinances, agree to the terms and conditions of the SUPs and agree to comply with the same for years and years, and now pretend they do not exist.  The SUPs carry much more weight than Plaintiffs care to admit and should be considered in the Court's analysis of the Township's request for summary judgment.

### 3.  Law and Argument

#### a.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although evidence and inferences are drawn against the moving part, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the find for the [non-moving party]."  *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir.2009); *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir.2008)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In this analysis, "the judge's function is not…to weigh the evidence and determine the truth of the matter, but to determine whether this is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

#### b.  SUP Agreements

Plaintiffs cannot use groundless state law claims or federal challenges to the viability of the Ordinances to set aside the SUPs and these contracts should be enforced. So as to not duplicate its arguments, the Township relies on this argument, previously made in its Cross-Motion for Summary Judgment on Plaintiffs' state law preemption claims (ECF No. 63, ID##2755-2758), to the remainder of Plaintiffs' claims.  Summary judgment is appropriate via the SUP agreements and Plaintiffs have not presented any viable argument otherwise.

12

**c.  Plaintiffs' Claims Barred by Laches**

Before addressing the lack of substantive merit to Plaintiffs' claims, the Township must

emphasize Plaintiffs' "long delay in pursuing their rights" in evaluating their claims.  (ECF No.

34, Page ID# 1867).  The *most recent* of the Ordinances has been law for nearly *two decades*

with the first one apart of the PTZO for over *three decades*.  Yet, while Plaintiffs claim these

Ordinances are so offensive they are unconstitutional, they have not challenged them until

October 2020.  They could have challenged them when they helped create them decades ago, and

also at each time they obtained and/or amended their SUPs.  If this is not a lack of diligence in

pursuing their rights, it is difficult to imagine what is.

Laches is a "negligent and unintentional failure to protect one's rights."  *Elvis Presley*

*Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991).  A defense of laches

requires two elements: (1) lack of diligence by the party against whom the defense is asserted;

and, (2) prejudice to the party asserting the defense.  *Obiukwu v. U.S.*, 14 Fed.Appx. 368, 369

(2001), citing *Costello v. United States*, 365 U.S. 265, 282 (1961). Laches does not result from a

mere lapse of time, but where the "…plaintiff may have misled the defendant or others into

acting on the assumption the plaintiff has abandoned his claim, or acquiesces in the situation, or

changed circumstances may make it more difficult to defend against the claim."  *Chirco v.*

*Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (2007).  Court have also referred to an

analogous statute of limitations in applying the laches doctrine.  *Tandy Corp. v. Malone & Hyde,*

*Inc.*, 769 F.2d 362, 365 (6th Cir.1985).  And, laches may still apply even if some action has been

taken within that limitations period.  *See Vance v. United States*, 965 F.Supp. 944, 946

(E.D.Mich.1997).

§8.7.3(10) was approved December 16, 1989.  §8.7.3(12) was enacted May 12, 1998.

§6.7.2(19) was adopted July 9, 2002.  Michigan courts recognize the manifest desirability of

zoning stability "once it has been ordained and relied upon for any fair period of repose…"

*Raabe v. Walker*, 383 Mich. 165, 177 (1970).  Decades later, Plaintiffs argue the Ordinances are

illegal.  Plaintiffs have done nothing to pursue these claims or challenge these Ordinances, likely

because they helped create them and benefitted from them.  Plaintiffs acquiesced to the

Ordinances and agreed to abide by them via their SUPs, resulting in the prejudice to the

Township today.  For example, many involved in requesting, considering and drafting these

Ordinances are no longer living, yet Plaintiffs argue the Township cannot articulate government

interests in enacting the same.  This is made more prejudicially difficult when certain individuals

are no longer present.  Dismissal is appropriate in light of this inexplicable delay and prejudice.

**d.  No Unlawful Regulation of Commercial Speech**

Plaintiffs' First Amended Complaint ("FAC"), Counts I and II, claim their freedom of

speech is being violated under the First and Fourteenth Amendments.  (ECF No. 29, ID##1116-

1119).  They claim the Ordinances unlawfully regulate their speech in a content-based manner.

Plaintiffs claim §§6.7.2(19)(b)(V), 8.7.3(12)(j) and 8.7.3(12)(k) are the offending sections, none

of which apply to Winery-Chateaus.  The Court preliminarily ruled "none of these regulations

appeared to be related to the content of Plaintiffs' speech", but perhaps could be reasonable

restrictions on commercial speech.  (ECF No. 34, ID#1869).  Discovery has not changed this

conclusion.

Preliminarily, the "[t]he First Amendment, as applied to the States through the Fourteenth

Amendment, protects commercial speech from unwarranted governmental regulation."  *Central*

*Hudson Gas & Electric Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 561 (1980).  A restriction on

protected commercial speech is reviewed under a four-prong test:

> (1)  The First Amendment protects commercial speech only if that speech concerns lawful
> activity and is not misleading. A restriction on otherwise protected commercial speech is
> valid only if it (2) seeks to implement a substantial governmental interest, (3) directly
> advances that interest, and (4) reaches no further than necessary to accomplish the given
> objective. [*Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d
> 800 (1981)].

The protection of commercial speech is not limitless and the Ordinances here are constitutional.

In *Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457 (1997), the Supreme Court

held marketing orders applicable to California fruit producers requiring them to pay for and use

generic California-focused advertising as part of their operation did not illegally compel speech.

None of the advertising "promotes any particular message other than encouraging consumers

to buy California tree fruit" and "Respondent's criticism of generic advertising provides no

basis for concluding that factually accurate advertising constitutes an abridgment of anybody's

right to speak freely."  *Id.* at 472, 474.

As to provisions of §8.7.3(12), there is no restriction that does anything more than

encourage consumers to enjoy the Township's wine, sites and natural surroundings.  They are not

required to articulate a particular message and are not restricted from advertising their own

products.  There is nothing misleading or unlawful; it seeks to protect a substantial governmental

interest in the Township's preservation of its lands and promotion of its local products; it clearly

advances that interest and it does not overextend further than is necessary. Plaintiffs cannot

demonstrate they are being compelled to engage in commercial speech.

**Moreover, in conjunction with the interests stated in the plain language of *each* of the**

**Ordinances**, the Township identified additional governmental interests of the Ordinances:

1.  *Preserving the agricultural industry and providing permanent land for the same*.

15

Certain things are needed to keep agricultural industry viable, including availability of land; the lack of fragmented land; the lack of extra incursion of human presence making typical farming more difficult (e.g., spray, mow, things that make noise, things that cause smells); (**Ex. 11**, p. 21-22; **Ex. 5**, p. 15). Consideration was given to what is commercial, residential and agricultural.  (**Ex. 5**, pp. 42-44); while listing the types of food and having things produced on site help promote that interest without over commercialization.  (**Ex. 3**, pp. 67-69, 71, 78).

2. *Maintaining the Township's character.*

The township has had a character of agriculture.  The Township has had a character of being rural.  If you go back to the original master plans in the late, developed in the late sixties, passed in the early seventies, revised in the late seventies, revised again in the eighties, and the current one, all of them identify rural character as being of prime interest for the residents. And so keeping the land in farming and staying with the Township has always decided every time it came up, not adding to commercial zoning so that we would be able to retain a balanced blend with some residents, and a primary use and experience of an agricultural area, which means planted crops.

(**Ex. 11**, pp. 22-23).

3. *Providing economically feasible public sewer and water systems to serve future populations.*

Infrastructure in the Township is limited, with one road in and one road out, including for farmers. (**Ex. 3**, pp. 45-46).  Increased traffic, population density and commercial activity will adversely impact the existing water/sewer systems so the Township's current systems may not be sufficient. (**Ex. 11**, p. 24).

4. *Establishing a complete buildout population scenario and permitting the vertical integration of agricultural production without changing the agriculturally-zoned lands of the township to commercial property inconsistent with the use of those respective districts.*

If, in the future, the intent is to maintain the farmland and industry, you do not want to increase population density. This can be accomplished by "minimizing development, minimizing commercial activity, because those are the things that would interfere with being able to retain that

16

agricultural character and viability as an industry." (**Ex. 11**, pp. 25-26).  The Ordinances advance

these interests, protect erosion of the same and their claims in Counts I and II are without merit.

Plaintiffs also argue §6.7.2(19)(b)(v) improperly restricts their commercial speech.  The

*Central Hudson* test does not support this.  §6.7.2(19)(b)(v) provides logoed merchandise may be

sold by provided it relates to use and consumption of the agricultural produce, the logo is affixed,

and there are certain items specifically allowed and not.  §6.7.2(19)(b)(v) only encourages and

protects the intent of §6.7.2(19) as a whole: "to preserve the agricultural environment in the

Agricultural district of the Township." (**Ex. 15**).  The Court previously agreed:

> There is nothing unlawful or misleading about the products or logos at issue.  Defendant
> seeks to advance the government interest of preservation of Township lands, promotion of
> local interests, and promotion of the local economy.  The Court finds that this is a substantial
> government interest, at least for purposes of this motion.

(ECF No. 34, ID##1869-1870).

The testimony and evidence support the Court's prior finding.

When considering this Ordinance, numerous interests were sought to be protected:

> …the inevitable increase in use of infrastructure, traffic, et cetera, that there would be a
> balance of continuing to have a reason to keep more land in agriculture.  By doing that, we're
> addressing the interests of maintaining the character of the township.  We were addressing
> with size of the buildings, and things like that, the intent of the township to keep an open
> vista, our open view sheds, our rural character.  We were attempting to address the interests
> of keep incompatible uses separate, such as, you know, a commercial area is not an area that
> you have residents.  That's for commercial.  Our agricultural area is an area that you don't
> want to have incursion of commercial and bringing of extensive numbers of individuals in
> for ancillary retail and other things.  The basic welfare of your residents, the compatibility
> and functionality of your agriculture, and the appropriate respect to the intent of the
> ordinance to have zones for appropriate use and to not juxtapose inappropriate uses.

(**Ex. 11**, pp. 157-158).

The inclusion of logos on the products is intended to link Plaintiffs' ability to sell some

merchandise to their benefit to the agricultural nature of the lands and business.  (**Ex. 28**, Coulter,

pp. 75-76).  Protecting these interests, and the harms that would come if they are eroded are

extensive.  They do not reach further than necessary, are not unlawful or misleading and tie into the Township's stated intent for agriculture. These insignificant restrictions do not preclude Plaintiffs from advertising, merchandising their brands or selling any items they wish to sell to anyone so long as they are related to the agricultural status of their lands.

### e.   There is No Prior Restraint or Compelling of Speech

Next, Plaintiffs allege §8.7.3(10)(u) regarding Guest Activities available to Winery-Chateaus is a prior restraint on their speech. In rejecting this claim, the Court noted, "Plaintiffs have provided no proof that approval is not a routine matter, instead pointing only to the discretion provided to the Board by the Ordinance."  (ECF No. 34, ID#1871).  Plaintiffs also claim §8.7.3(10)(u)(1)(b) improperly compels their speech,  even though it only expresses an intention to promote Township agriculture, not requiring them to do anything.  (**Ex. 16**).  The Court correctly clarified this misconception:  "…this subsection clarifies the *intent* of Guest Activity Uses, but it does not appear to *mandate* Plaintiffs to take any specific action during Guest Activity Uses."  (ECF No. 34, ID#1870).  The Township will address each in turn.

### i.   Prior Restraint

"Statutes and ordinances are presumed to be constitutional and the burden of proving otherwise rests with the challenger." *Van Buren Tp. v. Garter Belt, Inc.*, 258 Mich App 594, 610, 673 N.W.2d 111 (2003); *People v. Boomer*, 250 Mich App 534, 538, 655 N.W.2d 255 (2002). Further, a statute or ordinances is construed "...as constitutional unless its unconstitutionality is clearly apparent." *Id.* citing *Owosso v. Pouillon*, 254 Mich App 210, 213, 657 N.W.2d 538 (2002); *People v. Barton*, 253 Mich App 601, 603, 659 N.W.2d 654 (2002).

The term "prior restraint" is used to describe an order that forbids certain communications in advance of the time that the communications are to occur. *Alexander v.*

*United States*, 509 U.S. 544, 550 (1993). "Temporary restraining orders and permanent injunctions, which actually forbid speech activities, are classic examples of prior restraints." *Id.* Ordinances that are content-neutral *and* do not place the entirety of control within city officials' discretion are not prior restraints. (See, e.g., *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (2001) ordinance regulating decibels of music at a concert venue did not burden the content of protected speech or permit unfettered official discretion).

§§8.7.3(10)(u)(2)(a) through (d) are content-neutral and permit the Plaintiffs to associate with organizations, groups, as well as advertise, sell items, etc. in a manner not entirely in control of the Township.  These location-specific (A-1 District) and narrowly tailored provisions are not prior restraints because they merely place minimal conditions on these activities—they are not entirely precluded as is the standard.  This is not prior restraint; they are conditional approvals.  Plaintiffs' claims in this regard should be dismissed.

### ii.  Compelling Speech

Plaintiffs also claim §8.7.3(10)(u)(1)(b) improperly compels their speech.  Again, as this provision *only* states an intent, not a requirement compelling anyone to do anything.  While the First Amendment prevents governmental actors from prohibiting speech, it also prevents them from compelling individuals to express certain views.  *U.S. v. United Foods, Inc.*, 533 U.S. 405, 410 (2001).  The plain language of this section emphasizes Guest Activities are "intended to help in the promotion of Peninsula agriculture…" and then provides certain examples.  Nowhere does it say the Plaintiffs are *required* to do anything and Plaintiffs cannot prove otherwise.  These claims should be dismissed.

**f.    There is No Violation of Freedom of Association or Religion**

Count III alleges two subsections of the "Guest Activities" Ordinance for Winery-Chateaus violates the First Amendment rights to freedom of association and religion.  (ECF No. 29, ID##1120-1121).  Plaintiffs have not requested summary judgment for the same and appear to have abandoned it.  The Township adopts and incorporates by reference its arguments made in opposition to Plaintiffs' request (and denial of the same) for a preliminary injunction and the Court's prior ruling to request summary judgment on this Count.  (ECF No. 24; ECF No. 34, ID##1871-1872).  Count III should be dismissed.

**g.    The Ordinances do Not Violate the Commerce Clause**

Count V and VI claim the Ordinances violate the Commerce Clause by discriminating against interstate commerce and by creating an excessive burden on interstate commerce.  (ECF No. 29, ID##1122-1124).  Specifically, they allege §§8.7.3(10)(u)(2)(b) and (c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3) for Winery-Chateaus and §6.7.2(19)(b) for Farm Processing do so.  When they initially made this claim, they relied exclusively upon a pre-suit memorandum from the Township attorney and the Court ruled those statements were insufficient. (ECF No. 34, ID#1874).  Discovery has not yielded any further support.

To determine whether an ordinance violates the Commerce Clause, there are two inquiries.  First is whether the challenged statute or ordinance facially discriminates against interstate commerce.  *C&A Carbone, Inc. v. Clarkston, New York*, 511 U.S. 383, 390 (1994).  "In other words, the inquiry concerns whether the statute or ordinance evinces 'a discriminatory purpose or merely a discriminatory effect.'"  *Nat'l Solid Waste Mgt. Ass'n v. Pine Belt Regional Solid Waste Mgt. Auth.*, 389 F.3d 491, 497 (C.A. 5, 2004).  Only if it is facially discriminatory will the governmental body then be required to show it has no other means to advance a

legitimate local interest. *Wheeler v. Charter Tp. Of Shelby*, 265 Mich App 657, 957 NW2d 180

(2005), 511 U.S. at 392. And second, as to Plaintiffs' allegations, the question becomes whether

the ordinance "merely regulates evenhandedly with only incidental effects upon interstate

commerce." *Wheeler*. "The statute or ordinance will be upheld under this balancing test 'unless

the burden imposed on interstate commerce is clearly excessive in retaliation to the putative local

benefit.'" *Id.*

      Here, §§8.7.3(10)(u)(2)(b) and (c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3) and 6.7.2(19)(b) do

not present any "clearly excessive" burden on interstate commerce deemed "in retaliation to the

putative local benefit." These ordinances proscribe certain regulations for non-profit meetings,

agricultural group meetings, wine service, purchase of Township fruit and purchase of out-of-

state grapes. The very purpose and intent of these Ordinances is crucial: **agricultural**

**preservation, not economic protectionism.** They do not restrict any Plaintiff from doing

anything with wine *except* non-agricultural, commercial activities in the A-1 District. The PTZO

allows them to:

- Unlimited wine-making on five-acre parcels with no restriction on grapes. §8.5;

- Unlimited sale of wine and wine tasting in the C-1 District, regardless of where the grapes are obtained or where the wine is made.

- Unlimited sale of wine (by the glass or bottle) and wine tasting in the A-1 District at a Winery-Chateau tasting room. §8.7.3(10)(a)-(t).

Plaintiffs can do all of this with out-of-Township grapes. These Ordinances do not prevent any

wine manufacturer from making wine with grapes from elsewhere in Michigan, California or

anywhere else; they merely place guidelines on how much to process locally in order to achieve

the stated intent of the Ordinance.

For instance, the three Plaintiffs who chose to operate a Farm Processing Facility will process at least 85% local produce. §6.7.2.(19)(b)(2).  A use by right, this allows a 1500 square foot retail area while tying it into agricultural purposes.  The Ordinances ensure what is happening does not become endless commercial activity.  This is not a "clearly excessive" burden, but rather, a regulation to help preserve the Township's agricultural industry. The Ordinance also contains an exception if "crop conditions or natural disaster result in a shortage of locally-grown fruit for a particular year…"  §6.7.2(19)(b)(2)(ii).  The intent is crucial: "to permissibly encourage agricultural activity in an agricultural district at an otherwise commercially-motivated facility."

And, these interests are clear:

> To repeat myself from yesterday, my point of view has multiple levels.  On the most basic level, when you begin—when you have a township that has residents and has active agricultural, when you have a township that has stated its intent to keep that agriculture active and has plenty of stated intent in several sections for the well-being and safety of the residents, then when you start having an activity that will increase traffic, that will potentially cause harms in terms of the ability to operate a farm with standard practices, such as spraying and mowing, when you have residents who will be impacted by added traffic and activity, then there is a benefit gleaned in the balance of knowing that more of the intent of the community to keep land in active agriculture will be supported naturally be these guardrails that were put in place in the collaborative process with winery owners to develop these rules. So it is on the base level of benefit to balance off the potential added harms and stress upon infrastructure, et cetera.

(**Ex. 11**, pp. 87-88).

This Ordinance not only promotes all of these interests, but it also permits them to go outside the Township during any year, including bad growing years.  (**Ex. 3**, pp. 72-73, 92).  The desire is to have the facility grow produce on land preserved for that reason so the purposes of preserving it are not eroded, decreasing production in the community.  (**Ex. 3**, pp. 95-96).  Only 50% of the 85% of produce has to be grown on the land the person owns or leases, so this is not as restrictive as the Plaintiffs claim.  (**Ex. 3**, p. 96). The Township wants Plaintiffs to grow as much

22

as they can, but is mindful of preventing an excessive commercial development with massive wineries in the A-1 District.  This is not an outright restriction on outside agriculture, it is a well-balanced effort to maintain the intentions of decades to help a small Township with limited infrastructure sustain its lifestyle.

As to  subsections of §8.7.3(10), Plaintiffs' claims are equally flawed.  Plaintiffs helped create an Ordinance requiring that when they offer activities beyond wine tasting, the Ordinance requires a minimal volume of grapes to be grown locally, again to ensure a "commercially-motivated activity" retains a connection to the agricultural purpose and zoning of the land upon which they operate.  §8.7.3(10)(u)(3).  This provision is *very limited*, only applying to wine Plaintiffs give away at agricultural events.  §8.7.3(10)(u)(2)(d).  These are the least agricultural activities permitted in the entire A-1 District and do not discriminate against outside grapes, but do ensure an agricultural component to the most commercially-oriented activity permitted.  These local benefits and concerns are paramount in this region of Michigan and are not only specifically contemplated by the Ordinances, but are legally valid.

In *City of Cleveland v. City of Brook Park*, 893 F.Supp. 742 (N.D. Ohio 1995), the Court upheld a zoning ordinance limiting the construction of new runways as compliant with the Commerce Clause because the ordinances merely affected commerce generally.  *Id.* at 754.  The Court determined the defendant's interest in determining the appropriate use of its land was a "substantial" one and even though there was clearly an inherent effect on interstate travel, the burden did not it violate the Commerce Clause.  The same is true here.

Moreover, there is no evidence these Ordinances favors in-state economic interests while excessively burdening out-of-state interests.  Where Plaintiffs cannot meet this burden, dismissal is proper.  In *Loesel v. City of Frankenmuth*, 2009 WL 1449049 (**Ex. 29**), the Court noted

23

plaintiffs failed to explain how a statute "favors in-state economic interests while burdening out-of-state interests…"  *Id.* at *3.  This was true even where plaintiff had provided an economic report purportedly demonstrating the financial benefit to them.  *See also Planet Aid v Ypsilanti Twp.*, 26 F.Supp.3d 683 (E.D. Mich. 2014) (Court dismissed Commerce Clause claims where ordinance at issue applied "equally to all property owners within its boundaries", failed to demonstrate it was being enforced "in a discriminatory fashion against out of state economic interests" and without such a showing…", their claims could not succeed.

Plaintiffs' Commerce Clause claims have the same defects as those in *City of Cleveland*. The Ordinances evenhandedly promote a "substantial" local zoning interest—"the maintenance of primarily agricultural activities in a unique agricultural district."  Any incident effect on interstate commerce is merely incidental and any burden on interstate commerce is not excessive relative to the benefits of these local interests.  Plaintiffs would have the Court believe they receive no benefit from this Ordinance they created; that is not the case.  With a balanced regulation on growing grapes locally, the Ordinance again serves to help them thrive and, in addition, gives them what they asked for over thirty years ago—events and activities in the A-1 District are commercial in nature with reasonable limitations.

Notably, despite Plaintiffs' protestations, the Ordinances treat grapes from the Township the same as those from Napa Valley.  It does not serve to ban out-of-Township grapes, it merely limits the volume of out-of-town grapes that may be processed in a manner to maintain the A-1 District and preserve the same intentions the Township has sought for decades.  This is hardly a discriminatory effect and it impacts all non-local, i.e., out-of-state growers, the same. Plaintiffs have no evidence to support a different finding and these claims should be dismissed.

24

**h.   The Ordinances Do Not Violate Due Process**

Count IV alleges a violation of due process that "the person of average intelligence cannot tell from the face of the Winery Ordinances what constitutes a 'Guest Activity'…and cannot govern his or her behavior to comply with the Winery Ordinances."  (ECF No. 29, ID#1121, ¶ 270).  This is §8.7.3(10).  This is the *only* claim they make in their FAC as to a "void-for-vagueness."

Plaintiffs must establish that "[a regulation's]" prohibited terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion."  *United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358-59 (6th Cir.1998).  In denying enjoinment of this subsection, the Court concluded this provision "**makes it plain**" what is permitted and what is not and there was not a strong likelihood of success on the merits.  (ECF No. 34, ID#1874).  Discovery has not changed this finding regarding §8.7.3(10).

The Township's Director of Zoning, who is tasked with approving and/or denying proposed Guest Activities, defined a guest activity for a Winery-Chateau as follows:

Q:   Okay.  So tell me what a guest activity is.

A:   So a guest activity in a winery-chateau, if a SUP allows it, because have some that do not allow it, they don't qualify for guest activities, which means that they have a room rental, and those guests are with the room rentals.  So they're activities that are with the registered guest within the winery.

(**Ex. 30**, Deeren, pp. 23-24).  This can also include events, for example, such as weddings as long as they are with registered guests of the wineries and the specific SUP permits it.  (**Ex. 30**, p. 24).  The intent was to both give examples of what Plaintiffs and the Township had previously negotiated, and provide some limitations to the same.  (**Ex. 3**, pp. 180-181).  Where there is any confusion, all Plaintiffs have to do is ask and as has been the way for decades, the Township is

25

happy to discuss what they want to do in terms of a Guest Activity.  Plaintiffs have already engaged in activities not specifically listed in the Ordinances or in their SUPs.  The Ordinance provides "good-faith examples" and defines what it is, what's allowed, what the requirements are and then to engage in a special use process specifically outlined for doing so.  (**Ex. 3**, pp. 183-184).  Even the CEO of Chantal Chantal testified that she was able to tell what was permitted based upon that Ordinance and what was not.  (**Ex. 18**, pp. 12-13; p. 45).

The standard for evaluating vagueness found in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) requires those against whom a law is enforced to know what is prohibited and disallows discriminatory enforcement.  *Id.*, cited by *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (in which the Supreme Court reversed a ruling that an ordinance regulating the sale of paraphernalia "designed for use" in connection with drugs was not unconstitutionally vague even where the language of the ordinance contained ambiguities in the guidelines with concerns of insufficient standard for enforcement).   "[T]he principal inquiry is whether the law affords for warning of what is proscribed." *Id.* at 503. "Moreover, this emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law." *Id.* Where there is no evidence as to "whether the ordinance has been enforced in a discriminatory manner..." it is not unconstitutionally vague. "...[T]he speculative danger of arbitrary enforcements does not render the ordinance void for vagueness." *Id.*, Cf. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).

Plaintiffs claim §8.7.3(10)(u)(4)(a) is vague.  However, there is no evidence that this section has been enforced in a discriminatory way and Plaintiffs are put on notice of exactly what is proscribed and how it is determined by the Township. The guidelines in subsections (4)(a)(i)

through (4)(a)(iii) are clear and require no interpretation whatsoever; there is nothing vague about them. The standards under which §8.7.3(10)(u)(4) could be enforced are clear to those subject to it and fully informs those of what is proscribed. Speculative danger of arbitrary enforcement does not preemptively render these sections unconstitutionally vague. *Cf. Papachristou v. City of Jacksonville*, 405 U.S. 156, 168-171 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, (1971; *See also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). Plaintiffs' claims in this regard should be dismissed.

### i.   The Township's Ordinances Do Not Constitute a Regulatory Taking

Count VII claims, with referencing any specific provision of the Ordinance, that the same "deprive Plaintiffs of the full use of their property." (ECF No. 29, ID#1124, ¶ 283). Plaintiffs have not requested summary judgment on this claim and seem to have abandoned it. The Court recognized Plaintiffs' claim that "…the requirement of §§8.7.3(10)(c) and (h)—that Winery-Chateaus are a minimum of 50 acres and that a minimum of 75% of the property must be used for fruit production is…" not an unconstitutional taking. (ECF No. 34, ID#1874). In support of this conclusion, noting they had not provided any evidence to support it. (ECF No. 34, ID#1875). Discovery shows they have no evidence to support that any part of the Ordinances constitutes a regulatory taking in violation of the 5th or 14th Amendments.

The Supreme Court has recognized that "[l]and-use regulations are ubiquitous and most of them impact property values in some tangential way—often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few governments could afford." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002). Indeed, in one of the seminal cases on this issue, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, (1992), the Supreme Court held that

27

there are two types of regulatory takings:  (1) when a regulation compels the property to suffer a physical "invasion of his property[3];" and, (2) when a regulation denies *all* economically beneficial or productive use of land.  *Lucas*, *supra* at 1015.  As to the latter, the *Lucas* Court believed there were strong reasons to enforce the rule that only "…when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking."  *Id.* at 1019.  Michigan law comports with these principles, as previously recognized by this Court:  "When it is 'practically impossible' to use the land in question for mandated purpose, 'the zoning ordinances as applied to the proper[ties] are unreasonable and confiscatory, and therefore illegal.'"  *Oschin v. Township of Redford*, 315 Mich. 359, 363 (1946). (ECF No. 34,  ID##1874-1875).  Plaintiffs have not suffered any taking under these principles.

Plaintiffs operate wineries, whether as Winery-Chateaus or Remote Tasting Rooms pursuant to SUPs, or as a Farm Processing Facility as a matter of right in accordance with the Ordinances.  They *all* have continued to operate as such for decades, or at least years, and now, simply because they cannot do whatever they please in terms of commercial activity, they claim a taking.  It is evident from the record that they certainly have been able to continue in economically viable operations and that the two sections of the Ordinance--§§8.7.3(10)(c) and (h)—have not made it "practically impossible" for the Plaintiffs to operate as wineries.  Plaintiffs have produced documents in this matter, marked attorneys-eyes only, which demonstrate that they are *extremely economically viable*.  The law does not say, if a landowner is not as viable as

---

[3] Plaintiffs have not alleged such a taking.  Rather, they apparently allege that the Township's Ordinances restrict *some* uses or *additional uses they want* to engage in on their lands in the A-1 District.

it would like, then there is a taking.  And, that, at best, is what Plaintiffs are claiming and may be able to show, but it does not create a question of fact for Count VIII and it should be dismissed.

> **j.   The Township's Ordinances Do Not Violate the Michigan Zoning and Enabling Act**

Next, Count IX of Plaintiffs' FAC makes the conclusory allegation that the Ordinances "do not promote public health, safety and welfare." (ECF No. 29, ID#1127, ¶ 297).  Identical to their claims in Count VII, Plaintiffs do not move for summary judgment on this claim in their competing Motion (ECF No. 135) because they have no basis for the same and indeed, have no basis for these claims at all.

The Michigan Legislature has empowered townships to establish zoning regulation through the Michigan Zoning Enabling Act ("MZEA"), MCL §125.2302(1), and permits the same where townships "adopt ordinances regulating the public health, safety, and general welfare of persons and property."  MCL §41.181; *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 195 (1926); *See also Square Lake Hills Condo. Ass'n v. Bloomfield Twp.*, 437 Mich. 310, 320 (1991).  The MZEA provides:

> A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, ***to ensure that use of land is situated in appropriate locations and relationships***, **to limit the inappropriate overcrowding of land and congestion population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation system, sewage disposal, water,** energy, education, recreation, and other public service and facility requirements, and **to promote public health, safety, and welfare**.

MCL §125.3201(1)[emphasis added].

Michigan law further permits townships to regulate special uses within various districts in their township by establishing the standards or conditions upon which such uses may be allowed.

*Reilly v. Marion*, 113 Mich. App. 584, 587; 317 NW2d 693 (1982).  Special land use permits are not an exception to the ordinance, but permit certain uses of land authorized under specific conditions.  *Id.*  The MZEA defines the scope of permissible standards for special uses. MCL §125.3504(2).

The status and force of township zoning authority is enhanced by the Michigan constitution, which specifically states that the grant of authority to local governments must "be liberally construed in their favor."  Const. 1963, Art. 7 § 34; *Burt Twp. v. Dep't of Natural Resources*, 459 Mich. 659, 666 (1999).  Zoning ordinance are generally presumed valid.  *Kirk v. Tyronee*, 398 Mich. 429, 439 (1976)(citing *Kropf v. Sterling Heights*, 391 Mich. 139, 158 (1974)).  A township's policy and decisions reflected in its zoning ordinances "must be respected unless unconstitutional or contrary to law."  *Adams Outdoor Advertising v. Holland*, 234 Mich. App. 681, 691-92 (1999), *aff'd*, 463 Mich. 675 (2001).  The burden of proof to show that no reasonable governmental interest is advanced by the ordinance is on the challenger, not the township defending the zoning ordinance.  *Id.*

Michigan courts have found legitimate governmental interests in regulating through zoning such matters as traffic safety, aesthetics, avoiding overcrowding, preserving open space, prohibiting land application of septage, reducing alcohol-related death and injuries, establish permissible noise levels, and protecting environmentally sensitive natural resources from developmental encroachment.  *See Marras v. Livonia*, 575 F.Supp.2d 807, 817 (E.D. Mich. 2008); *Conlin v. Scio Twp.*, 262 Mich. App. 379, 394 (2004); *Norman Corp. v. E. Tawas*, 263 Mich. App. 194, 201; 687 N.W.2d 681 (2004); *Adams Outdoor Advertising v. Holland*, 234 Mich. App. 681, 692-93; *Houdek v. Centerville Twp.*, 276 Mich. App. 568, 584-85; 741 N.W.2d

587 (2007); *Maple BPA v. Bloomfield Twp.*, 302 Mich. App. 505, 519 (2013); *Rochester v. Superior Plastics, Inc.*, 192 Mich. App. 273 (1991).

As shown above, the Ordinances at issue are not unconstitutional nor are they contrary to the law.  Indeed, the Township has articulated multiple reasonable governmental interests advanced by their current zoning structure.  The very language of the three Ordinances contested supports this, as quoted in the Factual Background section of this Brief, and as supported by the testimony of the witnesses identified to further articulate these interests. These intents in enacting and the interests advanced and preserved by the Ordinances have clearly been recognized as promoting the health, safety and welfare of the Township and have been acknowledged by Courts in this jurisdiction as permissible, valid and enforceable under the law.

And, for the reasons set forth above in opposition to Plaintiffs' other claims, the Township, although it is not their burden, has clearly shown the reasonable governmental interests advanced by these Ordinances.  These Ordinances are intended to, and do, regulate the use of land in the A-1 District and preserve the relationship between the Plaintiffs' uses of those land in conjunction with agricultural uses, residential uses, and address traffic, noise and other legally valid interests associated with expanded commercial activities.  Accordingly, Count XI of Plaintiffs' FAC should be dismissed under Rule 56.

### k.  The Plaintiffs are Not Entitled to Any Injunctive Relief

As the Court is aware, it denied the Plaintiffs' request for a preliminary injunction over a year ago, on January 15, 2021, holding that the Plaintiffs could not show any irreparable harm or, at that time, a strong likelihood of success on the merits, that would warrant upsetting the status quo in the Township.  The Court concluded, "[a]bsent a finding that Plaintiffs have established a strong likelihood of success on the merits of their claims and a finding that Plaintiffs have

31

suffered or will suffer irreparable harm, there is no need for the Court to address the remaining factors or to balance the factors: the motion must be denied."  (ECF No. 34, ID#1875).  Over a year later, nothing has changed, but Count X of Plaintiffs' FAC remains a request for injunctive relief in which the Plaintiffs have asked this Court to enjoin the Township from utilizing its Ordinances, permanently.  (ECF No. 29, ID##1127-1129).

The legal elements required to be satisfied for the issuance of an injunction under Fed. R. Civ. P. 65, san "extraordinary remedy," are the same as that for a preliminary injunction. Plaintiffs must meet a high bar and argue four factors that weigh in their favor:  (1) whether Plaintiffs can demonstrate a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republic Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.2008)(quoting *Northeast Ohio Coalition for Homeless & Service Employees Int'l Union v. Blackwell*, 437 F.3d 999, 1009 (6th Cir.2006).  The factors are "interconnected considerations that must be balanced together," though the likelihood of success on the merits will often be determinative where the claims are based on a constitutional violation.  (ECF No. 34, ID##1866-1867).

Here, the Court's prior holdings are instructive.  As to Plaintiffs' claim they have suffered or will suffer irreparable harm, the Court made three findings:  (1) Plaintiffs have been aware of and operating under the challenged Ordinances for quite some time and their long delay must be taken into account when evaluating their claims; (2) the Court cannot draft new Ordinances, and upsetting the status quo, the opposite of the purpose of an injunction, without any proposed replacements—i.e., to "complete upset the regulatory system that presently exists in Peninsula Township for the eleven wineries;" and, (3) the primary harm alleged by Plaintiffs is monetary

harm, "lost opportunities for profit," which underscores their motives and intentions with respect to unfettered commercial activity in the Township's A-1 District.  (ECF No. 34, ID##1867-1868).  None of these three findings have changed.

As to their potential *strong* likelihood on the merits, the Township relies upon the arguments set forth above and in its Cross-Motion for Partial Summary Judgment on Plaintiffs' preemption claims as demonstrating that Plaintiffs not only do not have a *strong* likelihood on the merits, they have no likelihood of prevailing because the Township is entitled to summary judgment on all claims in the FAC.  The Township also relies upon its Response to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 24, ID##989-990) for its arguments in opposition to the other two factors, public interest and substantial harm to others, which also weigh in favor of denying any injunctive relief requested such that  Count X be dismissed.

### l. <u>Township is Entitled to its Costs and Attorneys' Fees</u>

Plaintiffs assert claims under 42 U.S.C. §1983 (ECF No. 29, ID#1088 ¶ 7).  And, in any action or proceeding to enforce a provision of §1983, the court permits a prevailing party to be awarded reasonable attorneys' fees and costs.  42 U.S.C. §1988(b).  "To be a 'prevailing party,' a party must 'succeed on any significant issue in litigation…"  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This Circuit recognizes that when a municipality prevails and claims are unreasonable and lack foundation, attorney fees are appropriate.  *See Baker v. Windsor Republic Doors*, 414 Fed.Appx. 764 (6th Cir.2011).

Because the Township is entitled to summary judgment on all of Plaintiffs' claims, the Plaintiffs were involved in writing these Ordinances, have waited decades to challenge them and they have exhibited bad faith in doing so, the Township is entitled to its reasonable attorneys' fees and costs in defending this meritless lawsuit for no less than fifteen months thus far instead

33

of continuing to engage with the Township in the collaborative process in which all interests were being considered, balanced and common goals could have been achieved.

**4.  <u>Conclusion</u>**

For the reasons set forth above, and those in ECF No. 62 and 63, the Township requests that this Court grant summary judgment in its favor under Fed. R. Civ. P. 56, thereby dismissing all of Plaintiffs' claims against it, with prejudice, and enter an Order awarding the Township its reasonable costs and attorneys' fees in an amount to be properly evidenced to the Court consistent with 42 U.S.C. §1988.

Dated: January 18, 2022

By:     <u>/s/ Gregory M. Meihn</u>
Foley & Mansfield, PLLP
130 E. 9 Mile Rd.
Ferndale, MI 48220
(248) 721-4200
gmeihn@foleymansfield.com
P38939

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, and I hereby certify that I have mailed by US Postal Service and sent via email to the following:  none.

<div style="text-align: right;">

By:    <u>/s/ Gregory M. Meihn    </u>

Foley & Mansfield, PLLP

130 E. 9 Mile Rd.

Ferndale, MI 48220

(248) 721-4200

gmeihn@foleymansfield.com

P38939

</div>

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA (WOMP) ASSOC.,
a Michigan Nonprofit Corporation,
BOWERS HARBOR VINEYARD
& WINERY, INC., a Michigan
Corporation, BRYS WINERY, LC,
a Michigan Corporation, CHATEAU
GRAND TRAVERSE, LTD,
a Michigan Corporation, CHATEAU
OPERATIONS, LTD, a Michigan
Corporation, GRAPE HARBOR, INC.
a Michigan Corporation, MONTAGUE
DEVELOPMENT, LLC, a Michigan
limited liability company, OV THE FARM, LLC
a Michigan limited liability company,
TABONE VINEYARDS, LLC. a Michigan
Limited Liability Company, TWO LADS, LLC,
a Michigan limited liability company,
VILLA MARI LLC, a Michigan
Limited Liability Company, WINERY
AT BLACK STAR FARMS, L.L.C.,
a Michigan Limited Liability Company,

Case № 1:20-cv-01008-PLM-RSK
Hon. Paul L. Maloney
Mag. Ray S. Kent

        Plaintiff,

vs.

PENINSULA TOWNSHIP, a Michigan
Municipal Corporation,

        Defendant.

| | |
|---|---|
| MILLER, CANFIELD, PADDOCK AND STONE, PLC<br>Joseph M. Infante (P68719)<br>Stephen M. Ragatzki (P81952)<br>Christopher J. Gartman (P83286)<br>99 Monroe Avenue NW, Suite 1200<br>Grand Rapids, MI 49503<br>(616) 776-6333<br>infante@millercanfield.com<br>gartman@millercanfield.com | GREGORY M. MEIHN (P38939)<br>MATTHEW T. WISE (P76794)<br>FOLEY & MANSFIELD, P.L.L.P.<br>Attorneys for Defendant<br>130 E. 9 Mile Rd.<br>Ferndale, MI 48220-3728<br>(248) 721-4200 / Fax: (248) 721-4201<br>gmeihn@foleymansfield.com<br>mwise@foleymansfield.com |

## **CERTIFICATE OF RULE COMPLIANCE – WORD COUNT**

*Foley & Mansfield, P.L.L.P.*
*130 East Nine Mile Road*
*Ferndale, MI  48220  (248) 721-4200*

2268555 v1

Gregory M. Meihn, counsel for Defendant, Peninsula Township, hereby certifies that Defendant's Motion and to Compel Responses to Defendants' Second Request for Production and Brief in Support (ECF No. 97) contains 10,794 words, using 365 MSO, in compliance with W.D. LCivR 7.2(b)(i).

<div style="margin-left:50%">

s/ *Gregory M. Meihn*

FOLEY & MANSFIELD PLLP
130 E. Nine Mile Road
Ferndale, MI 48220
(248) 721-4200
gmeihn@foleymansfield.com
P38939

</div>

Dated:  January 18, 2022