UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA  )
ASSOCIATION, *et al.*,              )
             Plaintiffs,  )
                     )    No. 1:20-cv-1008
-v-                     )
                     )    Honorable Paul L. Maloney
PENINSULA TOWNSHIP,        )
             Defendant.  )
                     )

## OPINION REGARDING SUMMARY JUDGMENT MOTIONS

This matter is before the Court on multiple motions for summary judgment: Plaintiffs' motion for partial summary judgment (ECF No. 53); Defendant's cross motion for partial summary judgment (ECF No. 62); Plaintiffs' motion for partial summary judgment (ECF No. 135); and Defendant's motion for summary judgment (ECF No. 142). The Court held a hearing on these motions on April 22, 2022.

## I.    Content of Each Motion

Each party has filed a summary judgment motion containing preemption arguments, and each party has also filed a summary judgment motion containing constitutional arguments. The content of each motion is as follows:

Plaintiffs' motion for partial summary judgment (ECF No. 53) seeks summary judgment on Count VIII[1]: state law preemption.

---

[1] *See Plaintiffs' First Amended Complaint*, ECF No. 29.

Defendant's cross motion for partial summary judgment (ECF No. 62) seeks summary judgment on Count VIII: state law preemption.

Plaintiffs' motion for partial summary judgment (ECF No. 135) seeks summary judgment on Count I: facial challenge to violation of rights to free speech, expression, and religion; Count II: as-applied challenge to violation of free speech; Count IV: violation of due process; Count V: violation of the dormant commerce clause via discrimination against interstate commerce; Count VI: violation of the dormant commerce clause via an excessive burden on interstate commerce; and Count VII: a regulatory taking in violation of the Fifth Amendment.[2]

Defendant's motion for summary judgment (ECF No. 142) seeks summary judgment on all counts, except Count VIII, which is addressed in its first motion for partial summary judgment.

For the following reasons, the Court will grant in part and deny in part each preemption summary judgment motion, grant in part and deny in part Plaintiff's constitutional summary judgment motion, and deny in its entirety Defendant's constitutional summary judgment motion.

## II.    Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[2] Neither of Plaintiffs' motions seek summary judgment on Count III: violation of freedom of association; Count IX: violation of the Michigan Zoning Enabling Act; or Count X: injunctive relief.

P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks omitted). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-

moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.    Facts

The Plaintiffs[3] (collectively, "Plaintiffs" or "the Wineries") in this matter are several wineries located in Peninsula Township, Traverse City, Michigan. Plaintiffs have sued Peninsula Township ("Defendant" or "the Township") for several restrictions and regulations in the Peninsula Township Zoning Ordinance. Specifically, the sections that apply to Plaintiffs are Section 6.2.7(19), which governs Farm Processing Facilities;[4] Section 8.7.3(10), which governs Winery-Chateaus;[5] and Section 8.7.3(12), which governs Remote Winery Tasting Rooms.[6] Whether a property constitutes a Farm Processing Facility, Winery-Chateau, or Remote Winery Tasting Room depends on how the property is zoned. For this

---

[3] Specifically, Plaintiffs are the Wineries of the Old Mission Peninsula Association ("WOMP"), Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor"), Brys Winery, LC ("Brys Estate"), Chateau Grand Traverse, Ltd. ("Grand Traverse"), Chateau Operations, Ltd. ("Chateau Chantal"), Grape Harbor, Inc. ("Peninsula Cellars"), Montague Development, LLC ("Hawthorne"), OV the Farm LLC ("Bonobo"), Tabone, Vineyards, LLC ("Tabone"), Two Lads, LLC ("Two Lads"), Villa Mari, LLC ("Villa Mari"), and Winery at Black Star Farms LLC ("Black Star").

[4] Plaintiffs Black Star, Two Lads, and Tabone have licenses to operate Farm Processing Facilities (ECF No. 29 at PageID.1092).

[5] Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, and Villa Mari have licenses to operate Winery-Chateaus (ECF No. 29 at PageID.1097-98). Pursuant to a joint venture and lease agreement between Hawthorne and Chateau Chantal, Chateau Chantal conducts licensed Winery-Chateau operations, under the Township Ordinances, on Hawthorne's property (*Id.* at PageID.1107).

[6] Plaintiff Peninsula Cellars has a license to operate a Remote Winery Tasting Room (ECF No. 29 at PageID.1108).

opinion, collectively, these three sections of the Peninsula Township Zoning Ordinance will be referred to as the "Township Ordinances" or the "Ordinances."

Some of the restrictions in the Township Ordinances that Plaintiffs challenge include: regulations of advertising, regulations of bar and restaurant operations, vagueness of the term "Guest Activity," limitations on hours of operation, prohibition of hosting events such as weddings and family reunions, prohibition of amplified music, and regulations requiring the Wineries to use a certain percentage of Old-Mission-Peninsula-grown grapes and ingredients in producing wine, among numerous other restrictions. The Township Ordinances have sparked problems among the parties for years. The Wineries allege that after a decade of attempting to change the Township Ordinances with no success, they were forced to file this lawsuit (ECF No. 136 at PageID.4719).

## IV.     Preemption Summary Judgment Motions[7]

### A. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 53)

This motion seeks summary judgment on Count VIII: state law preemption. Plaintiffs ask the Court to find that §§ 6.7.2(19)(a), 6.7.2(19)(b)(1)(iv), 8.7.3(10)(u)(2)(a)–(c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i) of the Township Ordinances are preempted by Michigan law. Interestingly, the first amended complaint does not challenge all of these sections in Count VIII. It only alleges that

---

[7] The Court notes that not every Plaintiff has standing to challenge every section of the Ordinances at issue: § 6.7.2(19) only applies to Farm Processing Facilities, § 8.7.3(10) only applies to Winery-Chateaus, and § 8.7.3(12) only applies to Remote Winery Tasting Rooms. See *supra* notes 4–6 for a breakdown of what type of entity each Winery constitutes. Because the first amended complaint does not delineate which Plaintiffs are challenging which sections of the Township Ordinances (*see* ECF No. 29), the Court will note which Plaintiffs have standing to raise each argument in a footnote after each heading. Only WOMP, via associational standing, has standing to raise every challenge in the first amended complaint.

§§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i) are preempted by state law (ECF No. 29 at PageID.1125-26).

It appears that the discrepancy between the number of challenged Township Ordinances sections in the first amended complaint and the partial summary judgment motion is due to the first amended complaint being the operative pleading, which is worded more narrowly than the original complaint. While the original complaint did not name any specific sections in the preemption count, the first amended complaint specifically alleged that §§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i) are preempted by Michigan law (*compare Complaint*, ECF No. 1 at PageID.28) ("Peninsula Township has enacted ordinances which prohibit conduct which is expressly allowed by the Michigan Liquor Control Code . . . The Peninsula Township ordinances which conflict with Michigan law are preempted."), (*with First Amended Complaint*, ECF No. 29 at PageID.1125-26) (naming three specific sections that Plaintiffs argue are preempted).

Although the first amended complaint was the operative pleading at the time Plaintiffs filed their motion for partial summary judgment, Plaintiffs were apparently unaware that their first amended complaint narrowed the scope of their preemption challenge (*see Transcript of Summary Judgment Motion Hearing*, ECF No. 159 at PageID.5909). Moreover, Plaintiffs argue that, through discovery, they learned that the Township is enforcing more restrictions than those specifically outlined in the Township Ordinances, leading Plaintiffs to broaden the scope of their challenges (*Id.*). However, because the first amended complaint only challenges three specific sections of the Township Ordinances, the Court will only determine whether those three sections—§§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i)—

are preempted by Michigan law. At this time, there remains a genuine issue of material fact as to whether any section of the Township Ordinances other than the three specifically named sections in the first amended complaint are preempted by Michigan law.

### 1. Plaintiffs' State-Granted Licenses

To operate a winery in Michigan, a license from the Michigan Liquor Control Commission is required. The Michigan Liquor Control Code ("MLCC") governs winery operations and allows wineries to have certain licenses and permits. Each Plaintiff possesses multiple permits and at least one license (wine maker,[8] small wine maker,[9] small distiller,[10] or brandy manufacturer,[11] for example) (*see* ECF No. 54 at PageID.2277-78) (showing a table of each Plaintiff's license(s) and permits). Plaintiffs argue that the Township Ordinances conflict with many of the rights that they have been granted under the MLCC, according to their respective licenses and permits.

### 2. Conflict Preemption Standard

"In the context of conflict preemption, a direct conflict exists when 'the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits.'" *DeRuiter v. Township of Byron*, 949 N.W.2d 91, 96 (Mich. 2020) (quoting *People v. Llewellyn*, 257 N.W.2d 902, 904 n.4 (Mich. 1977)); *see also Walsh v. City of River Rouge*, 189 N.W.2d 318, 324 (Mich. 1971) ("Assuming the city may add to the conditions, nevertheless the ordinance attempts to prohibit what the statute permits. Both statute and

---

[8] Plaintiff Grand Traverse has a Wine Maker license.
[9] Plaintiffs Bowers Harbor, Brys Estate, Chateau Chantal, Peninsula Cellars, Hawthorne, Bonobo, Tabone, Two Lads, Villa Mari, and Black Star have Small Wine Maker licenses.
[10] Plaintiffs Grand Traverse and Bonobo have Small Distiller licenses.
[11] Plaintiff Chateau Chantal has a Brandy Manufacturer license.

ordinance cannot stand. Therefore, the ordinance is void."). However, a local unit of government may add conditions to rights granted in a state statute because "additional regulation to that of a state law does not constitute a conflict therewith." *Nat'l Amusement Co. v. Johnson*, 259 N.W. 342, 343 (Mich. 1935). But where a state statute allows certain conduct and a local ordinance forbids it, "the ordinance is void." *Id.*

### 3. Analysis[12]

Based on the standard outlined above, the Township Ordinances may add limitations or restrictions to the rights granted in the MLCC, but they may not contain an absolute prohibition on what the MLCC permits. In other words, restrictions and limitations are permissible, but outright prohibitions (on permitted activities under the MLCC) are not.

The following table summarizes the sections of the Township Ordinances that Plaintiffs challenge based on preemption, compared with the relevant Michigan law:

| Activity Regulated | Type of Facility Regulated | Township Ordinance | Michigan Law |
|---|---|---|---|
| Hours of Operation | Winery-Chateau | Section 8.7.3(10)(u)(5)(b): "Hours of operation for Guest Activity Uses shall be determined by the Town Board, but no later than 9:30 PM daily." | Mich. Comp. Laws § 436.2114(1): "Notwithstanding R 436.1403 and R 436.1503 of the Michigan administrative code and except as otherwise provided under this act or rule of the commission, an on-premises and an off-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day." |
| Music | Winery-Chateau | Section 8.7.3(10)(u)(5)(g): During Guest Activity Uses, "No amplified instrumental | Mich. Comp. Laws § 436.1916(11): "The following activities are allowed without the granting of a permit under |

---

[12] Only sections of the Township Ordinances applicable to Winery-Chateaus are challenged in Count VIII. Thus, only Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

| | | music is allowed, however amplified voice and background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes." | this section: (a) The performance or playing of an orchestra, piano, or other types of musical instruments, or singing." |
|---|---|---|---|
| Catering | Winery-Chateau | Section 8.7.3(10)(u)(5)(i): During Guest Activity Uses, "Kitchen facilities may be used for on-site food serve related to Guest Activity Uses but not for off site catering." | Mich. Comp. Laws § 436.1547: Authorizes holders of catering permits to "sell and deliver beer, wine, and spirits in the original sealed container to a person for off-premises consumption but only if the sale is not by the glass or drink and the permit holder serves the beer, wine, or spirits." |

### a. Section 8.7.3(10)(u)(5)(b): Limitation of Hours of Operation at Winery-Chateaus

This section of the Township Ordinances governs the hours of operation of Winery-Chateaus during Guest Activity Uses: "Hours of operation for Guest Activity Uses shall be determined by the Town Board, but no later than 9:30 PM daily." *See* § 8.7.3(10)(u)(5)(b). On the other hand, the MLCC allows holders of certain licenses to operate later than 9:30 p.m. Under Michigan law, these establishments are instead prohibited from selling alcohol between 2:00 a.m. and 7:00 a.m. on Monday–Saturday, and between 2:00 a.m. and noon on Sundays. *See* Mich. Comp. Laws § 436.2114(1); Mich. Admin. Code R. 436.1403; Mich. Admin. Code R. 436.1503.

Plaintiffs rely on *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) in support of their argument that the hours restrictions in the Township Ordinances are preempted. However, *Keego Harbor* is not a preemption case; it is an unconstitutional

conditions case, and it is entirely distinguishable. In *Keego Harbor*, the city engaged in "an unlawful harassment campaign" to force Goose Island, a brewery and the plaintiff in the case, to close at 11:00 p.m. *Id.* at 431. Although the Sixth Circuit held that the city could not force Goose Island to close at 11:00 p.m., the rationale behind this holding was that by withholding governmental benefits from Goose Island unless it closed at 11:00 p.m., the city was violating the unconstitutional conditions doctrine. *Id.* at 436. There was no preemption discussion in *Keego Harbor*, and nowhere did the Sixth Circuit hold that the city's 11:00 p.m. closing rule conflicted with Michigan law. Therefore, the Court does not find *Keego Harbor* to be persuasive.[13]

The Court holds that the Township Ordinances do not conflict with Michigan law regarding hours of operation. Rather, they place a further limitation on the hours that MLCC licensees may sell alcohol. Had Michigan law *expressly permitted* license holders to sell alcohol between the hours of 7:00 a.m. and 2:00 a.m. the following day on Monday–Saturday, and between the hours of noon on Sunday and 2:00 a.m. the following Monday morning, then the Township Ordinance's prohibition on furnishing alcohol after 9:30 p.m. would be preempted. *See id.* at 435 ("On its face, the [Michigan law] rule does not grant licensees a right to remain open *until* 2:00 a.m. but merely provides that licensees cannot sell

---

[13] Plaintiffs also cite to *Noey v. City of Saginaw*, 261 N.W. 88 (Mich. 1935) in support of their argument that when a municipality shortens the hours of operation permitted by state law, the ordinance is preempted. The Court finds this case unpersuasive and easily distinguishable. When this case was decided, the Michigan Constitution contained a provision stating that the liquor control commission "shall exercise complete control over the alcoholic beverage traffic within the state." *Id.* at 88. Based on that language, the Michigan Supreme Court held that "Under the broad power thus conferred upon the liquor control commission by the Constitution and the statute, it must be held that its regulations relative to the hours of closing are binding upon all licensees. . . ." *Id.* at 89. Today, the Michigan Constitution contains no such provision, meaning that the hours of operation of establishments with licenses pursuant to the MLCC are *not* binding on all licensees. Thus, *Noey* is not applicable to the current case. *See also Mutchall v. City of Kalamazoo*, 35 N.W.2d 245 (Mich. 1948) (explaining that the MLCC was adopted to "meet the objections raised in *Noey*, so as to permit local authorities to control the closing time of licenses establishments") (internal citation omitted).

liquor *after* 2:00 a.m.”). However, because the Township Ordinances merely place a further limitation on a right granted under Michigan law, and because Winery-Chateaus can comply with both the hours limitations in the Township Ordinances and Michigan law at the same time, the Court holds that § 8.7.3(10)(u)(5)(b) is not preempted.

### b. Section 8.7.3(10)(u)(5)(g): Prohibition of Amplified Instrumental Music and Regulation of Amplification Level of Music at Winery-Chateaus

Section 8.7.3(10)(u)(5)(g) regulates amplified music played at Winery-Chateaus during Guest Activity Uses: “No amplified instrumental music is allowed, however amplified voice and background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes.” *See* § 8.7.3(10)(u)(5)(g). Under Michigan law, establishments that hold an “on-premise consumption” license under the MLCC are not required to receive a permit for “The performance or playing of an orchestra, piano, or other types of musical instruments, or singing.” Mich. Comp. Laws § 436.1916(11).

This section of the Township Ordinances can be broken down into two distinct restrictions: (1) a prohibition of amplified instrumental music, and (2) a limitation on the amplification level of music. The Court holds that the complete prohibition of amplified instrumental music is preempted by Michigan law, which expressly allows certain licensees to have musical instrument performances without a permit. However, the limitation on the amplification level of music is merely a limitation and not a prohibition. Thus, the “No amplified instrumental music is allowed” language is preempted by Mich. Comp. Laws

§ 436.1916(11), but the regulation of the amplification level of music—a mere limitation—is not preempted.

### c.   Section 8.7.3(10)(u)(5)(i): Prohibition of the Use of Kitchens for Off-Site Catering at Winery-Chateaus:

The last section of the Township Ordinances that Plaintiffs challenge via preemption is the section regarding catering by Winery-Chateaus during Guest Activity Uses: "Kitchen facilities may be used for on-site food service related to Guest Activity Uses but not for off site catering." *See* § 8.7.3(10)(u)(5)(i). This section appears to permit Winery-Chateaus to use their kitchens to prepare food for events on the premises, but it prohibits Winery-Chateaus from preparing food in their kitchens for events taking place off the premises.

The relevant section of the MLCC contains no such restriction. Mich. Comp Laws § 436.1547 authorizes holders of catering permits to "sell and deliver beer, wine, and spirits in the original sealed container to a person for off-premises consumption but only if the sale is not by the glass or drink and the permit holder serves the beer, wine, or spirits."

The Court finds that conflict preemption exists between these two statutes. The Township Ordinances prohibit the use of Winery-Chateau kitchens for off-site catering, while Michigan law permits the use of Winery-Chateau kitchens (if they have a catering permit[14]) for off-site catering, with limited restrictions. Therefore, the Court holds that § 8.7.3(10)(u)(5)(i) is preempted by Mich. Comp. Laws § 436.1547.

---

[14] The Court notes that no Winery-Chateau currently possesses a catering permit (ECF No. 54 at PageID.2277-78). However, despite the fact that no Winery-Chateau currently possesses the rights associated with a catering permit, the Court does not believe that there is a standing issue for the Winery-Chateaus here. Plaintiffs note that the "Winery Chateaus . . . would like to use their kitchens for off-site catering" (*Id.* at PageID.2299). Although Defendant argues that the Winery-Chateaus "never asked" to use their kitchens for catering, and thus, they essentially do not have standing to challenge a restriction on catering, the Court finds that such a request would be futile. Why would Winery-Chateaus go through the hassle of requesting a catering permit from the State if the Township prohibits the Wineries from off-site

In sum, the Court finds that § 8.7.3(10)(u)(5)(i) and the part of § 8.7.3(10)(u)(5)(g) prohibiting amplified instrumental music are preempted by state law, and Plaintiffs' partial summary judgment motion as to these sections will be granted. But § 8.7.3(10)(u)(5)(b) and the remaining language of § 8.7.3(10)(u)(5)(g) are not preempted by state law, and Plaintiffs' motion as to these sections will be denied.

## B.  Defendant's Cross Motion for Partial Summary Judgment (ECF No. 62)

Contained in the Township's response to the Wineries' motion for partial summary judgment on the preemption claim, the Township also moved for summary judgment on the preemption claim. The Township argues that the three sections of the Township Ordinances analyzed above—§§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i)—are not conflict preempted by state law.

### 1.  Effect of the Special Use Permits

At the outset, much of the Township's motion argues that Plaintiffs have agreed to the challenged regulations through Special Use Permits ("SUPs"),[15] which the Township argues constitute contracts (*see* ECF No. 63 at PageID.2755-58). The Township asserts: "[T]he SUPs approved and agreed to by the Plaintiffs are contractual agreements between each Winery and the Township and, each contract contains an express agreement by the Plaintiffs to abide by the very terms and conditions they now claim are preempted" (*Id.* at PageID.2756).

---

catering? As Plaintiff's counsel noted at the summary judgment motion hearing, there is no "exhaustion" requirement to bring a preemption claim (ECF No. 159 at PageID.5919).
[15] The SUPs are attached to Defendants' motion as exhibits 1, 2, 4, 5, 6, 8, 9, 10, 11, 12, and 13. The Court also notes that Plaintiffs Two Lads, Black Star, and Tabone are not subject to an SUP (*see* ECF No. 70 at PageID.3146).

The Court finds that the SUPs that Plaintiffs are subject to are not contractual agreements. "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 871 (Mich. 2016). The SUPs are not supported by consideration. "To have consideration there must be a bargained-for exchange"; "[t]here must be a benefit on one side, or a detriment suffered, or service done on the other." *Id.* When the Township approved the SUPs for the Wineries, there was no bargained-for exchange. After the approval of each Winery's respective SUP, the Wineries were then permitted to engage in certain commercial activities that otherwise would not be permitted. However, it is unclear what the Township has received from issuing the SUPs. There does not appear to be any bargained-for exchange that would meet the consideration requirement of a valid contract. *See Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex. Ct. App. 1997) ("[W]hen a building permit is issued, none of the elements of a contract are present. There is no offer, no acceptance, and no consideration."); *Forest Serv. v. Emps. For Env't Ethics v. U.S. Forest Serv.*, 689 F. Supp. 2d 891, 903 (W.D. Ky. 2010) (holding that despite the parties classifying their agreements as "contracts," "the plain meaning of the documents [is] that these 'contracts' were intended to be special-use permits," and identifying the difference between permits and contracts).

### 2. Analysis

As outlined in Section IV.A.3, some of the challenged sections of the Township Ordinances are preempted, while others are not. In accordance with the analysis above, the Township's motion for partial summary judgment will be granted as to § 8.7.3(10)(u)(5)(b)

14

and part of § 8.7.3(10)(u)(5)(g), and it will be denied as to § 8.7.3(10)(u)(5)(i) and part of § 8.7.3(10)(u)(5)(g).

## V.   Constitutional Summary Judgment Motions

### A.  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 135)

Plaintiffs also seek summary judgment as to Counts I, II, IV, V, VI, and VII of the first amended complaint based on constitutional arguments.

#### 1.   Commerce Clause & Dormant Commerce Clause[16]

The Wineries' first argument in their constitutional summary judgment motion is that several sections of the Township Ordinances violate the dormant Commerce Clause because they discriminate against and place an excessive burden on out-of-state commerce. The Commerce Clause allows Congress to regulate interstate commerce. U.S. Const. art. 1, § 8, cl. 3. The Commerce Clause also contains a "negative" aspect (the "dormant Commerce Clause") that denies states the ability to unjustifiably "discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994); *New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988) ("This 'negative' aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.").

---

[16] Only sections of the Township Ordinances applicable to Farm Processing Facilities and Winery-Chateaus are challenged under the Commerce Clause. Thus, only Plaintiffs Black Star, Two Lads, Tabone, Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

State laws that are challenged under the dormant Commerce Clause are subject to a two-tiered analysis. *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 593 (8th Cir. 2003). First, the court determines whether the challenged state law discriminates against interstate commerce. *See Or. Waste Sys.*, 511 U.S. at 99. The term "discrimination" in this context means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* If the challenged state law is discriminatory, it is *per se* invalid. *Granholm v. Heald*, 544 U.S. 460, 476 (2005). Unless the state can demonstrate "under rigorous scrutiny, that it has no other means to advance a legitimate local interest," the *per se* invalid law must be struck down. *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994). Only if the court determines that the challenged law is *not* discriminatory must it proceed to the second tier of the analysis: the statute will be invalidated as unconstitutional "if the burden [the statute] imposes on interstate commerce 'is clearly excessive in relation to its putative local benefits.'" *Hazeltine*, 340 F.3d at 593 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Plaintiffs challenge several sections of the Township Ordinances as invalid pursuant to the dormant Commerce Clause. The following sections place regulations on produce and wine sold at certain wineries, according to how much of the produce and grapes/wine were produced at the winery. Some sections also limit wine sales, during Guest Activity Uses, to only wine produced on-site.

- Section 6.7.2(19)(a) – applies to Farm Processing Facilities
    - Ordinance text: "The majority of the produce sold fresh or processed has to be grown on the specific farm operation (land owned or leased for the specific farm operation) of the party owning and operating the Specific Farm

16

Processing Facility. Eighty-five (85) percent of the produce sold fresh or processed has to be grown on Old Mission Peninsula."

- Section 6.7.2(19)(b)(1)(ii) – applies to Farm Processing Facilities
  - Ordinance text: "Grape wine that is processed, tasted and sold in a Farm Processing Facility under this section is limited to 'Old Mission Peninsula' appellation wine meaning 85% of the juice will be from fruit grown on Old Mission Peninsula."

- Section 6.7.2(19)(b)(1)(iii) – applies to Farm Processing Facilities
  - Ordinance text: "Fruit wine, other than grape wine, that is processed, tasted and sold in a Farm Processing Facility under this section is limited to wine bearing a label identifying that 85% of the juice is from fruit grown on Old Mission Peninsula."

- Section 6.7.2(19)(b)(2)(i) – applies to Farm Processing Facilities
  - Ordinance text: "Not less than 85 percent of all of the agricultural produce sold fresh or processed shall be grown on Old Mission Peninsula and a majority shall be grown on the land owned or leased for the specific farm operation by the same party owning and operating the specific Farm Processing Facility."

- Section 6.7.2(19)(b)(2)(v) – applies to Farm Processing Facilities
  - Ordinance text: "Dried fruit, a minimum of 85% by weight which is grown on Old Mission Peninsula and a minimum of 50% by weight which is grown on the farm, may be dried off premises and sold in the Farm Processing Facility retail room, provided no more than the amount of fruit sent out for this processing is returned for retail sale."

- Section 8.7.3(10)(u)(2)(e) – applies to Winery-Chateaus
  - Ordinance text: "No food service other than as allowed above or as allowed for the wine tasting may be provided by the Winery-Chateau. If wine is served, it shall only be served with food and shall be limited to Old Mission appellation wine produced at the Winery, except as allowed by Section 6. below."

- Section 8.7.3(10)(u)(3) – applies to Winery-Chateaus
  - Ordinance text: "In order to offer Guest Activity Uses, the owner of the Winery-Chateau shall, in addition to the agricultural production on the minimum acreage required for the Winery-Chateau, grow in Peninsula Township or purchase grapes grown in Peninsula Township for the previous growing season equal to 1.25 tons of grapes for each person allowed to participate in Guest Activity Uses up to the maximum number approved by the Township Board in a Special Use Permit. If the amount of grapes cannot

17

be documented by the Zoning Administrator, the numbers of persons allowed to participate in Guest Activity Uses shall be reduced proportionally."

- Section 8.7.3(10)(u)(5)(c) – applies to Winery-Chateaus
  - Ordinance text: "No alcoholic beverages, except those produced on the site, are allowed with Guest Activity Uses."

- Section 8.7.3(10)(u)(5)(d) – applies to Winery-Chateaus
  - Ordinance text: "Sales of wine by the glass or sales of bottles of wine for ON PREMISES consumption are NOT ALLOWED except as provided in Section 2(e) above."

The Court finds that Plaintiffs' arguments under the dormant Commerce Clause persuasive. In a recent case out of the District of Minnesota, the court recently struck down the Minnesota Farm Wineries Act, which required a "farm winery to produce wine 'with a majority of the ingredients grown or produced in Minnesota.'" *Alexis Bailly Vineyard, Inc. v. Harrington*, 482 F. Supp. 3d 820, 824 (D. Minn. 2020). Under the first step of the dormant Commerce Clause's two-tier analysis, the court found this provision to be discriminatory on its face because it "expressly favors and benefits in-state economic interests— namely, in-state growers and producers of winemaking ingredients as well as wineries that use mostly in-state ingredients—while disfavoring and burdening those same economic interests outside of Minnesota." *Id.* at 827. Because the provision was discriminatory, the court then analyzed the statute under strict scrutiny. *Id.* In an attempt to justify the law, the state argued that it had an interest in promoting "an agro-tourism industry for wine growers and producers on Minnesota farm land." *Id.* at 828. The court found that even though Minnesota may have had a legitimate interest in encouraging domestic industry, the dormant Commerce Clause invalidated the provision. *Id.* In reaching this conclusion, the court stated:

> The Commissioner has neither argued nor presented evidence that out-of-state winemaking ingredients are more dangerous than in-state winemaking ingredients. And the Act itself belies any such suggestion, as the Act permits a licensed farm winery to use out-of-state ingredients so long as those ingredients do not exceed 49 percent of the final product. Moreover, the Commissioner makes no effort even to suggest that there are no reasonable nondiscriminatory alternative methods of promoting an "agro-tourism industry" for wine in Minnesota.

*Id.* As such, the court struck down, under the dormant Commerce Clause, the requirement that Minnesota wine makers must use a majority of ingredients grown in the state to produce wine. *Id.*

Here, the Township Ordinances impose even stricter regulations. For example, for Farm Processing Facilities to make wine, 85% of the juice that they use must come from grapes and fruit grown on Old Mission Peninsula. *See* §§ 6.7.2(19)(b)(1)(ii), 6.7.2(19)(b)(1)(iii). Because the Township Ordinances, on their face, discriminate against all out-of-state farmers, they are *per se* invalid unless these challenged sections pass strict scrutiny. *See Granholm*, 544 U.S. at 473 ("Allowing States to discriminate against out-of-state wine 'invite[s] a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause.'"); *Hazeltine*, 340 F.3d at 593. Thus, the Court need not move to the second tier of the dormant Commerce Clause analysis. Rather, the Township must demonstrate that these sections of the Township Ordinances survive under strict scrutiny. *See Hazeltine*, 340 F.3d at 593.

To meet its burden, Defendant must justify the Township Ordinances with a legitimate purpose and show that no other non-discriminatory means could achieve this purpose. *See id.* The Township's stated justification is:

> The intent and interests advanced by this section, at the most basic level, are in preservation of agricultural [sic] in the Township (outlined extensively above by Mr. Parsons and Mr. Hayward's testimony) and to ensure that, in these limited circumstances, distinctly non-commercial retail activity in the A-1 District is at least tied to active farming production elsewhere in that zoning district.

(ECF No. 143 at PageID.5365). Moreover, Township Supervisor Robert Manigold—whom the Township specifically identified to testify as to the governmental interests that the Township Ordinances seek to advance (ECF No. 159 at PageID.5973, 5947-48)—identified the governmental interest of "maintain[ing] the [Township's] character by keeping a strong agricultural component" (ECF No. 136-1 at PageID.4759). When Supervisor Manigold was asked whether there is a harm to this governmental interest if the Wineries purchased a percentage of their grapes outside of Peninsula Township, he answered "yes," because "[i]t takes away from the farming component on Peninsula Township" (*Id.* at PageID.4768).

Even if "the preservation of the agricultural industry and associated lands themselves" (ECF No. 143 at PageID.5373) and "maintain[ing] the [Township's] character by keeping a strong agricultural component" (ECF No. 136-1 at PageID.4759) are legitimate Township interests, (which they likely are not considering such protection of a local industry is exactly what the dormant Commerce Clause seeks to prohibit), it does not appear that the Township Ordinances actually help the Township achieve this interest. The owner of Two Lads vineyard testified that there are years where the supply of grapes on Old Mission Peninsula simply cannot meet the demand (*see* ECF No. 136-12 at PageID.4878). He testified that in some years, "there's not enough fruit" to be grown on the Peninsula, and that they cannot keep the tasting room satisfied, let alone make as much wine as they could sell (*Id.*). In

20

essence, it appears that the Township Ordinances' requirements regarding how much Old Mission Peninsula fruit must go into the Wineries' wine harms the Wineries—which are local agricultural businesses.[17] The Court finds that the Township has failed to meet its burden under strict scrutiny as to any section requiring the Wineries to purchase a certain percentage of product from Old Mission Peninsula farmers. Accordingly, the Court will render unlawful §§ 6.7.2(19)(a), 6.7.2(19)(b)(1)(ii), 6.7.2(19)(b)(1)(iii), 6.7.2(19)(b)(2)(i), 6.7.2(19)(b)(2)(v), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3), 8.7.3(10)(u)(5)(c), and 8.7.3(10)(u)(5)(d) as violations of the dormant Commerce Clause.

### 2.  Regulation of Commercial Speech[18]

Next, Plaintiffs challenge several sections of the Township Ordinances as an unlawful regulation of commercial speech. "Commercial speech" is defined as "expression related solely to the economic interests of the speaker and its audience," and as "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 493 (1995) (Stevens, J., concurring). When laws restrict commercial speech, they "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). This analysis is colloquially called the *Central Hudson* test. *See generally Cent. Hudson Gas & Elec. Corp. v. Pub. Serv.*

---

[17] Mr. Infante's comments at a public meeting further support the conclusion that these restrictions harm the Wineries' businesses:

> [There have been] [c]omments about the Wineries not wanting to buy OMP fruit anymore. That's—they're actually sort of really surprised by that. Old Mission Fruit is amazing fruit. They will buy every grape that you guys make. They can't get enough grapes from Old Mission. That's sort of the problem, there aren't enough grapes being grown for the Wineries, so they can't make as much wine as they can sell. So they will buy it if it is there.

(ECF No. 110 at PageID.4197).

[18] Sections of the Township Ordinances applicable to all Plaintiffs are challenged as unlawful regulations of commercial speech; all Plaintiffs have standing to raise the following arguments.

*Comm'n*, 447 U.S. 557 (1980). Under the *Central Hudson* test, if the speech concerns lawful activity and is not misleading, then the burden is on the government to (1) identify a substantial governmental interest, (2) show that the regulation directly advances that interest, and (3) show that the regulation "is not more extensive than necessary to serve that interest." *Id.* at 566.

The sections that Plaintiffs argue unconstitutionally regulate their commercial speech are as follows:[19]

- Section 6.7.2(19)(a) – applies to Farm Processing Facilities
  - Ordinance text: "Activities such as weddings, receptions and other social functions for hire are not allowed, however, participation in approved township wide events is allowed."

- Section 6.7.2(19)(b)(1)(v) – applies to Farm Processing Facilities
  - Ordinance text: "Logo merchandise may be sold provided:
    1. The logo merchandise is directly related to the consumption and use of the fresh and/or processed agricultural produce sold at retail;
    2. The logo is prominently displayed and permanently affixed to the merchandise;
    3. Specifically allowed are: a) gift boxes/packaging containing the approved products for the specific farm operation; b) Wine Glasses; c) Corkscrews; d) Cherry Pitter; and e) Apple Peeler; and
    4. Specifically not allowed are unrelated ancillary merchandise such as: a) Clothing; b) Coffee Cups; c) Bumper Stickers."

- Section 6.7.2(19)(b)(6) – applies to Farm Processing Facilities
  - Ordinance text: "The total floor area above finished grade (one or two stories) of the Farm Processing Facility including retail space room shall be no larger than 6,000 square feet or .5% of the parcel size whichever is less. The retail state shall be a separate room and may be the greater of 500 square feet in area or 25% of the floor area above finished grade. The facility must consist of more than one building, however, all buildings shall be located on the 20 acre minimum parcel that contained the Farm Processing Facility. Underground buildings are not limited to, and may be in addition to, the 6,000 square feet

---

[19] The Court has already determined that the *Central Hudson* test applies to three of these challenged sections (*see* ECF No. 34 at PageID.1869). The Court finds that it also applies to the remainder of these sections, excluding §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d).

of floor area provided that it is below pre-existing ground level and has not more than one loading sock exposed."

- Section 8.7.3(10)(m) – applies to Winery-Chateaus
  - Ordinance text: "Accessory uses such as facilities, meeting rooms, and food and beverage services shall be for registered guests only. These uses shall be located on the same site as the principal use to which they are accessory and are included on the approved Site Plan. Facilities for accessory uses shall not be greater in size or number than those reasonably required for the use of registered guests."

- Section 8.7.3(10)(u)(1)(b) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

- Section 8.7.3(10)(u)(1)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include wine tasting and such related promotional activities as political rallies, winery tours and free entertainment (Example – 'Jazz at Sunset') which are limited to the tasting room and for which no fee or donation of any kind is received."

- Section 8.7.3(10)(u)(2)(a) – applies to Winery-Chateaus
  - Ordinance text: "Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class."

- Section 8.7.3(10)(u)(2)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."

- Section 8.7.3(10)(u)(5)(c) – applies to Winery-Chateaus
  - Ordinance text: "No alcoholic beverages, except those produced on the site, are allowed with Guest Activity Uses."

- Section 8.7.3(10)(u)(5)(g) – applies to Winery-Chateaus
  - Ordinance text: "No amplified music is allowed, however amplified voice and recorded background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes."

23

- Section 8.7.3(10)(u)(5)(h) – applies to Winery-Chateaus
  - Ordinance text: "No outdoor displays of merchandise, equipment or signs are allowed."

- Section 8.7.3(12)(i) – applies to Remote Winery Tasting Rooms
  - Ordinance text: "Retail sale of non-food items which promote the winery or Peninsula agriculture and has the logo of the winery permanently affixed to the item by silk screening, embroidery, monogramming, decals or other means of permanence. Such logo shall be at least twice as large as any other advertising on the item. No generic or non-logo items may be sold. Promotional items allowed may include corkscrews, wine glasses, gift boxes, t-shirts, bumper stickers, etc."

- Section 8.7.3(12)(k) – applies to Remote Winery Tasting Rooms
  - Ordinance text: "Signs and other advertising may not promote, list or in any way identify any of the food or non-food items allowed for sale in the tasting room."

At the outset, the Township questions whether weddings and other similar types of large gatherings constitute "commercial speech" (*see* ECF No. 143 at PageID.5373-74). Presumably then, the Township argues that the *Central Hudson* test cannot apply to §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), which prohibit Farm Processing Facilities and Winery-Chateaus from hosting weddings, family reunions, and other social functions. The Township has not argued that the *Central Hudson* test does not apply to any of the other sections listed above. Accordingly, the Township has conceded that the *Central Hudson* test is applicable in determining if the remaining sections constitute unlawful violations of commercial speech.

As for whether weddings and other similar activities constitute commercial speech, the Court agrees with the Township that the prohibition of these types of events does not constitute a regulation of commercial speech under the First Amendment because weddings themselves are not speech intended to promote a commercial transaction. Plaintiffs identify

24

two Ninth Circuit cases that held that weddings are protected expression under the First Amendment, but neither identifies weddings as *commercial* speech. *See Epona v. Cty. of Ventura*, 876 F.3d 1214 (9th Cir. 2017); *Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012). Nevertheless, in her deposition, the Township's Director of Zoning, Christina Deeren, conceded that the Township has likely been improperly restricting the Wineries from hosting weddings, family reunions, etc. (*see* ECF No. 136-6 at PageID.4819). As explained below in Section V.A.7, the Wineries will be granted summary judgment as to any section of the Township Ordinances that prohibits the hosting of weddings and other similar social gatherings, given the Township's concessions.

Excluding §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), the Court will apply the *Central Hudson* test to the remaining eleven sections of the Township Ordinances that the Wineries challenge as unlawful regulations of commercial speech. Under this test, the burden is on the Township to justify the sections of the Ordinances that restrict commercial speech with a substantial government interest. *See Cent. Hudson*, 447 U.S. at 566. The Court finds that the Township has failed to meet its burden.

In response to Plaintiffs' motion for summary judgment, the Township completely ignored the *Central Hudson* test (*see* ECF No. 143 at PageID.5373-75), and in its own motion for summary judgment, the Township's analysis of the *Central Hudson* test was limited to about two pages (*see* ECF No. 142 at PageID.4983-85). The Township's alleged justification for these sections of the Ordinances is to (1) preserve the agricultural industry and provide permanent land for this industry, (2) maintain the township's agricultural character, (3) provide economically feasible public sewer and water systems, and (4) establish

a "complete buildout population scenario," and permit the vertical integration of agricultural production without changing the agriculturally zoned lands of the township to commercial property inconsistent with the use of those respective districts. (*Id.* at PageID.4982-83). In a nutshell, these stated interests are "to preserve the agricultural environment in the Agricultural district of the Township" (*Id.* at PageID.4984).

Even assuming that the preservation and maintenance of the agricultural environment of Peninsula Township is indeed a substantial Township interest, the Township has failed to establish that the Township Ordinances (1) directly advance that interest, and (2) are narrowly tailored using the least-restrictive means. Not only does the Township's motion completely fail to address the last two prongs of the *Central Hudson* test, but Supervisor Manigold's deposition also confirms that these challenged sections of the Township Ordinances likely do not advance the stated interests, and that the Township never considered less-restrictive means:

> Q. Okay. So if we're talking about logoed items, how does limiting the sale of merchandise to logoed items that relate to fresh or processed agriculture, how does that further one of these four governmental interests?
>
> A. I don't know.
>
> Q. Okay. And if you don't know how it furthers it, I mean, do you know what the harm is the government was trying to prevent by having this ordinance?
>
> A. No.
>
> Q. Okay. And do you know if the government considered less-restrictive means?
>
> A. Whatever we considered is in that document.
>
> Q. In the ordinance?

A. Mmm-hmm.

Q. So there's nothing else that says, "We considered these four other ordinances and we rejected those?"

A. I'm unaware of that.

Q. Okay. Is the Township still enforcing this ordinance?

A. Yes.

Q. And at the end it says: Specifically not allowed are unrelated ancillary merchandise such as clothing, coffee cups, bumper stickers.
Okay, how does prohibiting clothing, coffee cups, and bumper stickers, how does that further a governmental interest?

A. I can tell you, at the time there was a concern if we were going to get this passed that it not turn agricultural into commercial uses. So I'm guessing, my guess is that's what that's in there for.

Q. Okay, but that wasn't one of the four governmental interests the Township has identified, right? So how does it fit into one of these four governmental interest that you—

A. Don't know.

Q. And what is the harm, what is the harm if a farm processing facility sells a logoed T-shirt? What's the harm to the governmental interest?

A. Don't know.

Q. I'm assuming you don't know if there were any less-restrictive means considered?

A. Not that I recall.

(*Deposition of Robert Manigold*, ECF No. 136-1 at PageID.4770).

Given the Township's admissions, the Court finds that the Township Ordinances do

not directly advance the four governmental interests that the Township has identified (ECF

No. 142 at PageID.4982-83). Moreover, the Township admits that it did not consider less-restrictive means when drafting these sections of the Township Ordinances that unquestionably regulate commercial speech. Therefore, the Township has failed to meet its burden under the *Central Hudson* test, and the Wineries are entitled to summary judgment on their commercial speech claim as to §§ 6.7.2(19)(b)(1)(v), 6.7.2(19)(b)(6), 8.7.3(10)(m), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(1)(d), 8.7.3(10)(u)(2)(a), 8.7.3(10)(u)(5)(c), 8.7.3(10)(u)(5)(g), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k). Plaintiffs' summary judgment motion on their commercial speech claim as to §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d) is denied.

### 3. Content-Based Restrictions on Speech[20]

Next, Plaintiffs argue that certain sections of the Ordinances act as content-based restrictions on speech, that the Township cannot carry its burden under strict scrutiny, and that these sections should consequently be struck down.

Plaintiffs argue that the following sections are content-based restrictions:

- Section 8.7.3(10)(u)(1)(b) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

- Section 8.7.3(10)(u)(2)(b) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of 501(c)(3) non-profit groups within Grand Traverse County. These activities are not intended to resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served."

---

[20] Only sections of the Township Ordinances applicable to Winery-Chateaus are challenged as content-based regulations of speech. Thus, only Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

- Section 8.7.3(10)(u)(2)(c) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production [may be approved], provided that:
    i. The meetings are scheduled at least one month in advance with the Zoning Administrator given adequate advance notice of the scheduling so that the Zoning Administrator can give prior approval;
    ii. The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining 'direct relationship to agricultural production';
        (a) Food/wine educational demonstrations; (b) Cooking showcasing Peninsula produce and wine; (c) Farmer's conferences; (d) Regional farm producers; (e) Cherry Marketing Institute and Wine Industry Conference (f) Farm Bureau Conference (g) Future Farmers of America and 4-H; (h) Michigan State University/agricultural industry seminars.
    iii. These meetings may include full course meals to demonstrate connections between wine and other foods.
    iv. An appeal of the Zoning Administrators determination can be made to the Township Board."

- Section 8.7.3(10)(u)(5)(a) – applies to Winery-Chateaus
  - Ordinance text: "Requirements for Guest Activity Uses –
    (a) All Guest Activity Uses shall include Agricultural Production Promotion as part of the activity as follows:
        i. Identify 'Peninsula Produced' food or beverage that is consumed by the attendees;
        ii. Provide 'Peninsula Agriculture' promotional materials;
        iii. Include tours through the winery and/or other Peninsula agricultural locations."

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Wineries argue that the four sections above are content-based restrictions because they *only* apply to the Wineries, not golf courses, country clubs, bed & breakfasts, and other special uses that also take place in agricultural zones. Because those facilities—unlike Winery-Chateaus—do not have any restrictions on what merchandise can be

sold, what events can be held, and what food/alcohol can be served, Plaintiffs argue that these restrictions are content-based because they "depend on a Winery being the speaker" (ECF No. 136 at PageID.4736).

This argument misconstrues the definition of "content-based." Content-based speech targets a certain type of speech based on its message or content, not who conveys that message or content. For example, in *Reed*, a regulation that prohibited the display of outdoor signs without a permit but exempted 23 categories of signs, including "ideological signs," "political signs," and "temporal directional signs," was an unconstitutional content-based regulation of speech because the regulation depended "entirely on the communicative content of the sign." 576 U.S. at 159-60, 164. In *Reed*, who was communicating this content was irrelevant; rather, it was the content itself that was regulated. Applying this definition to the present matter, the Township Ordinances do not prohibit certain content. Instead, they place regulations on the Wineries during certain activities. Accordingly, Plaintiffs' motion for summary judgment as to their content-based regulation of speech claim will be denied.

### 4.  Prior Restraints[21]

Plaintiffs argue that the following sections are unlawful prior restraints on speech, and that again, the Township cannot carry its burden under strict scrutiny:

- Section 6.7.2(19)(b)(6) – applies to Farm Processing Facilities
  - Ordinance text: "The total floor area above finished grade (one or two stories) of the Farm Processing Facility including retail space room shall be no larger than 6,000 square feet or .5% of the parcel size whichever is less. The retail state shall be a separate room and may be the greater of 500 square feet in area

---

[21]  Only sections of the Township Ordinances applicable to Farm Processing Facilities and Winery-Chateaus are challenged as an unlawful prior restraint on speech. Thus, only Plaintiffs Black Star, Two Lads, Tabone, Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

or 25% of the floor area above finished grade. The facility must consist of more than one building, however, all buildings shall be located on the 20 acre minimum parcel that contained the Farm Processing Facility. Underground buildings are not limited to, and may be in addition to, the 6,000 square feet of floor area provided that it is below pre-existing ground level and has not more than one loading sock exposed."

- Section 8.7.3(10)(u)(2)(a) – applies to Winery-Chateaus
  - Ordinance text: "Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class."

- Section 8.7.3(10)(u)(2)(b) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of 501(c)(3) non-profit groups within Grand Traverse County. These activities are not intended to resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served."

- Section 8.7.3(10)(u)(2)(c) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production [may be approved], provided that:
    i. The meetings are scheduled at least one month in advance with the Zoning Administrator given adequate advance notice of the scheduling so that the Zoning Administrator can give prior approval;
    ii. The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining 'direct relationship to agricultural production';
      (a) Food/wine educational demonstrations; (b) Cooking showcasing Peninsula produce and wine; (c) Farmer's conferences; (d) Regional farm producers; (e) Cherry Marketing Institute and Wine Industry Conference (f) Farm Bureau Conference (g) Future Farmers of America and 4-H; (h) Michigan State University/agricultural industry seminars.
    iii. These meetings may include full course meals to demonstrate connections between wine and other foods.
    iv. An appeal of the Zoning Administrators determination can be made to the Township Board."

"The term 'prior restraint' describes administrative and judicial orders that block expressive activity before it can occur." *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001). There is a "heavy presumption" against the

31

constitutional validity of prior restraints. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). If a licensing statute places "unbridled discretion in the hands of a government official or agency, [it] constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). The elements of a prior restraint are: (1) one who seeks to exercise First Amendment rights is required to apply to the government for permission; (2) the government is empowered to determine whether the applicant should be granted permission on the basis of a review of the content of the proposed expression; (3) approval is dependent upon the government's affirmative action; and (4) approval is not a routine matter, but involves an examination of the facts, an exercise of judgment, and the formation of an opinion. *See Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940).

Pursuant to the three sections above applicable to Winery-Chateaus, Winery-Chateaus cannot host wine and food seminars, cooking classes, meetings of 501(c)(3) non-profit groups, and meetings of agriculture-related groups without the prior approval from the Director of Zoning. Moreover, before Plaintiffs can host a "Guest Activity," the Director of Zoning must approve the event. According to Director Deeren, such activities must be "agriculturally related" (ECF No. 136 at PageID.4742-43). Director Deeren determines whether an activity is "agriculturally related" based on what information the winery-host provides (*Id.* at PageID.4743). There does not appear to be any definite criteria or definition to determine what type of activity is "agriculturally related." Instead, Director Deeren makes that determination, and she has regularly denied many events, such as Yoga in the Vines, Painting in the Vines, and snow shoeing (*Id.*).

It appears that Director Deeren can exercise unfettered discretion when choosing whether or not to allow a Winery to host a Guest Activity. The Township Ordinances fail to define "agriculturally related," leaving room for Director Deeren to make that determination. Plaintiffs have provided multiple examples where they have applied to host a certain Guest Activity and Director Deeren has denied their application to do so (*Id.* at PageID.4743-44). The Court originally denied Plaintiffs' motion for a preliminary injunction on their prior restraint claim because "Plaintiffs have provided no proof that approval is not a routine matter, instead pointing only to the discretion provided to the Board by the Ordinance" (ECF No. 34 at PageID.1871). Now that discovery is completed, Plaintiffs provide Director Deeren's statements in her deposition, as well as correspondence between different Wineries and Township representatives showing the Township denying a Winery's request to host a Guest Activity (*see* ECF Nos. 136-6, 136-14, 136-15, 136-16, 136-17).

The Court holds that Plaintiffs have demonstrated the necessary elements to show that §§ 8.7.3(10)(u)(2)(a)–(c) of the Township Ordinances constitute an unlawful prior restraint. In the Township's motion for summary judgment,[22] it asserts that

> §§ 8.7.3(10)(u)(2)(a) through (d) are content-neutral and permit the Plaintiffs to associate with organizations, groups, as well as advertise, sell items, etc. in a manner not entirely in control of the Township. These location-specific (A-1 District) and narrowly tailored provisions are not prior restraints because they merely place minimal conditions on these activities—they are not entirely precluded as the standard. This is not a prior restraint; they are conditional approvals.

---

[22] The Township makes no attempt to carry its burden under strict scrutiny in its response to the Plaintiffs' motion (*see* ECF No. 143 at PageID.5376-77).

(ECF No. 142 at PageID.4986). This meager argument is not enough to carry the Township's burden under strict scrutiny. Not only does the Township fail to explain how these sections are narrowly tailored (it simply makes that conclusion), but the Township also provided no evidence in support of its statement that these events are not entirely precluded. Plaintiffs provided multiple examples of events that they were prohibited from holding, while the Township did not provide examples of any events it permitted Plaintiffs to hold.

Plaintiffs will be granted summary judgment as to their prior restraint claim regarding §§ 8.7.3(10)(u)(2)(a)–(c). Because Plaintiffs' motion contains no argument regarding § 6.7.2(19)(b)(6) as a prior restraint, and the motion merely makes such a conclusion (*see* ECF No. 136-9 at PageID.4852), there is still a genuine issue of material fact as to whether § 6.7.2(19)(b)(6) acts as a prior restraint of speech. Accordingly, Plaintiffs' motion for summary judgment on their prior restraint claim will be granted as to §§ 8.7.3(10)(u)(2)(a)–(c), and it will be denied as to § 6.7.2(19)(b)(6).

### 5. Compelling Speech[23]

Next, Plaintiffs argue that the following sections unlawfully compel speech and that the Township has failed to carry its burden under strict scrutiny:

- Section 8.7.3(10)(u)(1)(b) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

---

[23] Only sections of the Township Ordinances applicable to Winery-Chateaus are challenged for unlawfully compelling speech. Thus, only Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

- Section 8.7.3(10)(u)(5)(a) – applies to Winery-Chateaus
  - Ordinance text: "Requirements for Guest Activity Uses -
    (a) All Guest Activity Uses shall include Agricultural Production Promotion as part of the activity as follows:
    i. Identify 'Peninsula Produced' food or beverage that is consumed by the attendees;
    ii. Provide 'Peninsula Agriculture' promotional materials;
    iii. Include tours through the winery and/or other Peninsula agricultural locations."

"Laws that compel speakers to utter or distribute speech bearing a particular message are subject to . . . rigorous [strict] scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Plaintiffs argue that the above two sections compel speech because they require a Winery-Chateau to promote Township agriculture at all Guest Activities by doing one of the following: (1) identifying "Peninsula Produced" food or beverages, (2) providing "Peninsula Agriculture" promotional materials, or (3) including tours through the wineries or other agricultural locations. In denying Plaintiffs' motion for a preliminary injunction, the Court found that these sections of the Township Ordinances merely clarify the intent of Guest Activity Uses, but that they did not mandate—in violation of the First Amendment—Plaintiffs to take these actions during a Guest Activity Use (ECF No. 34 at PageID.1870). However, during Director Deeren's deposition, she explained that when hosting a Guest Activity, the winery-host is not required to comply with all three of the criteria, but they *must* comply with at least one criterion in order to host the activity (*see* ECF No. 136 at PageID.4745). Because the Township requires the Wineries to comply with at least one of the above three criterion when they host a Guest Activity, these sections do function as a mandate, and in turn, do compel speech.

The Court will grant Plaintiffs' summary judgment motion as to their compelling speech claim because again, the Township failed to carry its burden under strict scrutiny. In its response to Plaintiffs' motion for summary judgment, the Township failed altogether to raise an argument that these sections do not compel speech (*see* ECF No. 143). In its own motion for summary judgment, the Township argues, in six sentences, that these sections do not compel speech because these provisions describe the Township Ordinances' intent rather than mandate speech (ECF No. 142 at PageID.4986) ("[T]his provision *only* states an intent, not a requirement compelling anyone to do anything."). However, after discovery, Plaintiffs' motion demonstrates that the Township is indeed enforcing these sections as a mandate, and as such, the Township has failed to meet its burden.

Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) unlawfully compel speech in violation of the First Amendment, and Plaintiffs' summary judgment motion will be granted as to their compelling speech claim.

### 6.  Vagueness of "Guest Activity" in Violation of the Due Process Clause[24]

The term "Guest Activity" is used numerous times throughout § 8.7.3(10) of the Township Ordinances, which is applicable to Winery-Chateaus. When a Winery-Chateau is hosting a "Guest Activity," they are subject to additional restrictions. *See, e.g.*, § 8.7.3(10)(u)(2)(e) (prohibiting food service during Guest Activity Uses); § 8.7.3(10)(u)(5)(b) ("Hours of operation for Guest Activity Uses shall be determined by the Town Board, but

---

[24] Only sections of the Township Ordinances applicable to Winery-Chateaus are challenged under the Due Process Clause. Thus, only Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal) have standing the raise the following arguments.

no later than 9:30 PM daily."); § 8.7.3(10)(u)(5)(g) (prohibiting "amplified instrumental music" during Guest Activity Uses). Plaintiffs argue that the term "Guest Activity" is void for vagueness in violation of the Due Process Clause.

"[L]aws so vague that a person of common understanding cannot know what is forbidden are unconstitutional on their face." *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971) (invalidating a city ordinance that made it a criminal offense for people on sidewalks to "conduct themselves in a manner annoying to persons passing by"). The question of whether a law is void for vagueness rests on whether its prohibitions are clearly defined. *See Grayned v. City of Rockford*, 408 U.S. 104, 108-14 (1972) (upholding an "antipicketing" and "antinoise" ordinance because it was "clear what the ordinance as a whole prohibits").

Section 8.7.3(10)(u) defines "Guest Activity Uses" as "Activities by persons who may or may not be registered guests." Section 8.7.3(10)(u)(2) then gives examples of Guest Activity Uses that "may be approved" by the Township Board: wine and food seminars, cooking classes, meetings of 501(c)(3) non-profit groups, and meetings of agriculture groups. However, this language is ambiguous as to whether these activities are the *only* permitted Guest Activity Uses (subject to approval by the Board) or whether they are merely examples.

During their depositions, different Township representatives appeared to have differing definitions of "Guest Activity" (*compare Deposition of Christina Deeren*, ECF No. 136-6 at PageID.4812) (concluding that a Guest Activity is "limited to persons who are renting a lodging room"), (*with Deposition of Gordon Hayward*, ECF No. 136-5 at PageID.4805) (concluding that a Guest Activity is "an activity allowed under the winery-chateau site for persons who are not staying overnight"). Moreover, Supervisor Manigold

admitted that he did not know what "Guest Activity" means, and he stated that he felt the entirety of § 8.7.3(10) must be rewritten (*See Deposition of Robert Manigold*, ECF No. 136-1 at PageID.4773).

Based on multiple Township representatives' depositions, there appears to be clear confusion as to what constitutes a "Guest Activity," and consequently, whether Winery-Chateaus may host certain activities and what regulations are applicable during different activities. The Township has represented that weddings, wedding receptions, entertainment events, and family reunions are not Guest Activities for which a Winery-Chateau needs Township approval, but that wine pairings, vineyard tours, painting classes, and happy hours are Guest Activities that require prior Township approval (*see* ECF No. 136 at PageID.4750). What types of activities require prior approval and what types of activities do not is certainly confusing and this determination is important, given that "violations will not be tolerated" and "court enforcement action" will be taken in the event of a violation (ECF No. 136-23 at PageID.4928).

In response, the Township asserts that multiple Winery representatives have testified that they understand what the term "Guest Activity Use" means, and that one Winery owner initially helped draft § 8.7.3(10) of the Township Ordinances (*see* ECF No. 143 at PageID.5377). Moreover, the Township cites the Court's order denying Plaintiffs' motion for a preliminary injunction, where the Court found that the provision defining Guest Activity Uses "makes it plain" what types of activities are permitted (ECF No. 34 at PageID.1874).

However, if the Township had quoted the entirety of the Court's preliminary injunction order, it would have noted that the Court found that "this subsection makes it

38

plain that wine or food seminars, meetings of 501(C)(3) groups, and meetings of agricultural related groups are permitted; all other events are not" (*Id.*).[25] But after discovery, it is clear that these three activities are not the *only* permitted Guest Activity Uses (*see Deposition of Christina Deeren*, ECF No. 136-6 at PageID.4819). Given the Township's understanding of (or lack thereof) the term, it is entirely ambiguous.

Further, even if the Plaintiffs think they understand the term "Guest Activity," what is important is how *the Township* understands and enforces the term. And if the Township is enforcing varying meanings of the term, it is certainly vague. The Court finds that there is no genuine dispute of material fact as to whether the term "Guest Activity" in § 8.7.3(10) is vague—it is vague in violation of the Due Process Clause and Plaintiffs' motion will be granted as to this claim. Therefore, any subsection of § 8.7.3(10) that uses the term "Guest Activity," is unconstitutional and must be stricken from the Township Ordinances.

### 7.  Weddings & Hours of Operation[26]

Lastly, Plaintiffs contend that, based on Township representatives' answers during depositions, the Township conceded that the Wineries may indeed host weddings, receptions, family reunions, and other similar gatherings, and that there is no explicit closing time for non-Guest-Activity-Uses (*see* ECF No. 136 at PageID.4751-52).

---

[25] At this stage in this litigation, this Court's "determinations at the preliminary-injunction stage have no preclusive effect upon its determinations at the merits stage regarding [a motion for summary judgment]." *Resurrection Sch. v. Hertel*, -- F.4th --, 2022 WL 1656719, at *21 (6th Cir. May 25, 2022) (Bush, J., dissenting).

[26] Only Winery-Chateaus—Plaintiffs Bowers Harbor, Brys Estate, Grand Traverse, Chateau Chantal, Bonobo, Villa Mari, and Hawthorne (through its joint venture and lease agreement with Chateau Chantal)—have standing to challenge the wedding prohibition under § 8.7.3(10)(u)(2)(d) and the hours restriction under § 8.7.3(10)(u)(5)(b). Only Farm Processing Facilities—Plaintiffs Black Star, Two Lads, and Tabone—have standing to challenge the wedding prohibition under § 6.7.2(19)(a).

In regard to the prohibition on Farm Processing Facilities and Winery-Chateaus from hosting weddings and other gatherings in §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), the Township has admitted that the Wineries do not need prior approval before hosting such events:

> Q. [W]e've established that under 2(d), entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass are not guest activity uses, correct?
>
> A. Yes.
>
> Q. Okay. So then my follow-up question to that is, because they are not guest activity uses, winery-chateaus do not need your approval, as the director of zoning, to engage in entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass, correct?
>
> A. Yes.

(ECF No. 136-6 at PageID.4819).

As to the restriction on hours of operation in § 8.7.3(10)(u)(5)(b)—which applies *only* to Winery-Chateaus during Guest Activity Uses—Supervisor Manigold explained that he "infers" this restriction to apply to all Wineries during all activities. He stated that even though the Township Ordinances do not require Winery-Chateaus to close at 9:30 p.m. during non-Guest-Activity-Uses, he believes the 9:30 closing time is "inferred" as applicable to every activity and Winery, and he enforces it as such (ECF No. 136-1 at PageID.4779). In other words, the language of § 8.7.3(10)(u)(5)(b) only requires Winery-Chateaus to close at 9:30 p.m. during Guest Activity Uses, yet the Township enforces the 9:30 p.m. closing time for *all* business at *all* Wineries.

40

Plaintiffs argue that based on the Township's concessions regarding weddings and enforcement of a closing-time requirement that is not written into the Township Ordinances, they should be granted summary judgment on these issues. The Township failed to respond to this argument all together. Neither the Township's response to Plaintiffs' motion for summary judgment nor the Township's own motion for summary judgment discusses Plaintiffs' wedding/closing-time argument or the Township's concessions. As such, the Township has conceded these issues. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011). Accordingly, Plaintiffs' motion for summary judgment will be granted as to §§ 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), which prohibit the hosting of large gatherings such as weddings, and § 8.7.3(10)(u)(5)(b), which establishes the 9:30 p.m. closing time. Moreover, the Township is prohibited from enforcing such restrictions on any Plaintiff.

## B.  Defendant's Motion for Summary Judgment (ECF No. 142)

### 1.  Laches

Before addressing its substantive arguments, the Township asserts that it is entitled to summary judgment on all claims because Plaintiffs' claims are barred by the affirmative defense of laches. The Township notes that the most recent Ordinance was enacted almost twenty years ago, and the oldest challenged Ordinance was enacted over thirty years ago (ECF No. 142 at PageID.4980).

"A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 493 (6th Cir. 2007). The defense of laches is assessed on a case-by-case basis: "Whether the party confronted with a laches defense has been

sufficiently diligent is a fact-dependent inquiry. In other words, how quickly a party must seek judicial review of a challenged statute or state action depends on all the circumstances." *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 681 (W.D. Mich. 2010).

The Township argues that laches applies because the Wineries are challenging the Township Ordinances decades after their enactment, and due to this delay "certain individuals"—many people involved in requesting, considering, and drafting the Ordinances—are no longer available, which is prejudicial to the Township (ECF No. 142 at PageID.4981).

Although the Township may be able to meet the first element of laches (delay), it has failed to established evidence of the second element (prejudice). The Township has not named any essential individuals who are "no longer present," and this argument is undermined considering the Township asserts that the Wineries' owners have helped craft the Ordinances. Moreover, the Wineries assert that they have "been trying for decades" to change the Township Ordinances, and when it was clear that negotiation was unsuccessful, the Wineries brought this lawsuit (*see* ECF No. 136 at PageID.4719). The Wineries also claim that five of the Plaintiff-Wineries were established within the last eight years, and some of the older Wineries have recently been passed down to a second generation (ECF No. 146 at PageID.5728), which would explain their more recent challenges to the Township Ordinances and refute any Township claim as to lack of diligence by the Wineries.[27]

---

[27] The Wineries also argue that laches does not apply to Constitutional claims, but that argument does not hold water. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) ("[A] constitutional claim can become time-barred just as any other claim can."); *MI Chamber of Commerce*, 725 F. Supp. 2d at 680 (applying a laches analysis to federal constitutional claims).

Given that the Township has not shown that it is prejudiced by the Wineries' delay in bringing this suit, the Court finds that the Township has failed to meet its burden in proving the affirmative defense of laches.

### 2.  Commercial Speech

The Township has moved for summary judgment as to §§ 6.7.2(19)(b)(1)(v), 8.7.3(12)(i), and 8.7.3(12)(k), arguing that these sections of the Township Ordinances do not constitute unlawful regulations of commercial speech (ECF No. 142 at PageID.4981). For the reasons explained above in Section V.A.2, the Township has failed to meet its burden under the *Central Hudson* test as to these three sections, as well as the eight other sections that Plaintiffs challenge under their commercial speech argument. As such, the Township's motion for summary judgment on the commercial speech claims will be denied.

### 3.  Prior Restraints

Defendant next argues that §§ 8.7.3(10)(u)(2)(a)–(d) are merely "conditional approvals," and thus do not act as prior restraints (ECF No. 142 at PageID.49486). For the reasons stated above in Section V.A.4, the Court finds that §§ 8.7.3(10)(u)(2)(a)–(c) are indeed unlawful prior restraints on speech; Defendant's motion for summary judgment on the prior restraint claim as to these sections will be denied. In regard to § 8.7.3(10)(u)(2)(d), the Court need not determine whether this section functions as an unlawful prior restraint because the Court has already struck this unlawful section. *See supra*, Section V.A.7.[28]

---

[28] Defendant somewhat intertwines a "content-based" argument in the section of its motion regarding prior restraints: "§§ 8.7.3(10)(u)(2)(a) through (d) are content-neutral and permit the Plaintiffs to associate with organizations, groups, as well as advertise, sell items, etc. in a manner not entirely in control of the Township" (ECF No. 142 at PageID.4986). However, it does not appear that Defendant has moved for summary judgment premised on a "content-based" argument. As the Court explained above in Section V.A.3, Plaintiffs are not entitled to summary judgment on their content-based

### 4. Compelling Speech

The Township only moves for summary judgment on the compelling speech claim as to one section of the Township Ordinances: § 8.7.3(10)(u)(1)(b) (ECF No. 142 at PageID.4986). For the reasons stated above in Section V.A.5, the Township has failed to carry its burden under strict scrutiny for this argument. The Township's motion for summary judgment will be denied as to the compelling speech claim.

### 5. Freedom of Association/Freedom of Religion

The Township requests dismissal of Plaintiffs' freedom of association/freedom of religion claim because "Plaintiffs have not requested summary judgment for the same and appear to have abandoned it" (ECF No. 142 at PageID.4987). However, as Plaintiffs point out, choosing not to move for summary judgment on a claim does not mean that they have abandoned it (ECF No. 145 at PageID.5645). Rather, Plaintiffs presumably seek to litigate this claim at trial. A motion for summary judgment is a discretionary motion. *See* Fed. R. Civ. P. 56(a) ("A party *may* move for summary judgment. . . ."). Because neither party's summary judgment motion properly developed an argument on this claim, neither party will receive a judgment as a matter of law as to the freedom of association/freedom of religion claim.[29] The Township's summary judgment motion as to this claim will be denied, and the claim will not be dismissed.

---

regulation of speech argument, but due to Defendant's failure to move for summary judgment on this argument, Defendant is also not entitled to summary judgment on the content-based regulation of speech claim.

[29] The Wineries ask for summary judgment on this claim in their response to Defendant's motion for summary judgment (ECF No. 146 at PageID.5744), but the Court will not consider this request, which has been raised for the first time in a response to a motion. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

### 6.  Commerce Clause & Dormant Commerce Clause

Next, the Township seeks summary judgment as to §§ 8.7.3(10)(u)(2)(b)–(c), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3), and 6.7.2(19)(b), arguing that these sections do not violate the Commerce Clause because they do not discriminate against or create an excessive burden on interstate commerce (ECF No. 142 at PageID.4987). For the reasons stated above in Section V.A.1, the Court finds that these sections of the Township Ordinances violate the dormant Commerce Clause. Defendant's motion for summary judgment as to the Commerce Clause claim will thus be denied.

### 7.  Due Process

The Township also seeks summary judgment as to Count IV, which alleges that the term "Guest Activity," used several times throughout § 8.7.3(10), is vague in violation of the Due Process Clause. For the reasons stated above in Section V.A.6, the Court holds that the term "Guest Activity" is indeed unconstitutionally vague. Thus, Defendant's summary judgment motion as to this claim will be denied.

### 8.  Regulatory Taking

Defendants next seek summary judgment on Count VII of Plaintiffs' first amended complaint, which alleges that the Township Ordinances "deprive Plaintiffs of the full use of their property," constituting a regulatory taking (ECF No. 29 at PageID.1124). The Fifth Amendment's Takings Clause protects private citizens from the government taking their property "for public use, without just compensation." U.S. Const. amend. V. There are several different types of takings: (1) a *per se* taking via a physical invasion, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); (2) a regulatory taking where

a regulation denies a property owner full use of their property, *see Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978); and (3) takings where a regulation denies all economically beneficial or productive use of land, *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).

At issue here is a regulatory taking where the Township Ordinances deny Plaintiffs the full benefit of their land. Accordingly, the Court must address the *Penn Central* factors to determine if the Ordinances constitute a regulatory taking. These factors include: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectation, and (3) the character of the governmental action. *See Penn Central*, 438 U.S. at 124.

Defendant's motion fails to address the *Penn Central* factors. Instead, it focuses its discussion on the fact that the Wineries have not been denied *all* economically beneficial and productive uses of their land (*see* ECF No. 142 at PageID.4995). This contention is indeed correct because presumably, the Wineries operate businesses that generate revenue. However, under the *Penn Central* factors, 100% economic deprivation is not required to find a regulatory taking. Rather, the Court must simply assess the "economic impact" of the regulation. Because the Township's motion fails to do so, the Court will deny the Township summary judgment as to this claim.

In response, Plaintiffs—without moving for summary judgment as to this claim in their own summary judgment motion—now seek summary judgment on their Count VII Takings Clause claim. In support, they argue that their "economic expert" has estimated that over the last five years, the Wineries have lost at least $200 million in profits due to the Township

46

Ordinances (ECF No. 146 at PageID.5747). However, they provide no evidentiary support for this number. Moreover, it is procedurally improper for the Wineries to seek summary judgment in a response to the Township's motion for summary judgment. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). As such, neither party will receive summary judgment as to the Takings Clause claim.

### 9.  Michigan Zoning Enabling Act

Next, Defendant seeks summary judgment on Count IX of Plaintiffs' first amended complaint, which alleges that the Township Ordinances "do not promote public health, safety, and welfare" (ECF No. 29 at PageID.1127) in violation of the Michigan Zoning Enabling Act ("MZEA"). *See* Mich. Comp. Laws § 125.3101, *et seq.* Defendant argues that the Township Ordinances do not violate the MZEA because they "are not unconstitutional nor are they contrary to law" (ECF No. 142 at PageID.4998) Under Michigan law, local townships may establish zoning regulations and "adopt ordinances regulating the public health, safety, and general welfare of persons and property." Mich. Comp. Laws § 41.181. More specifically,

> A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, to ensure that use of the land is situated in appropriate locations and relationships, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare.

Mich. Comp. Laws § 125.3201(1). Although zoning ordinances are generally presumed valid, *see Kirk v. Tyrone Twp.*, 247 N.W.2d 848, 852 (Mich. 1976), they cannot be unconstitutional or contrary to law, *see Adams Outdoor Advert. v. City of Holland*, 600 N.W.2d 339, 344 (Mich. Ct. App. 1999). Because of this presumption of validity, the burden of proof is on the party challenging the zoning ordinance. *Id.* at 345.

Plaintiffs have not moved for summary judgment on this claim. Instead, in their response to the Township's motion for summary judgment, they note that their MZEA claim rises and falls with their constitutional/preemption arguments (ECF No. 146 at PageID.5748). In other words, whatever sections that the Court ultimately determines are unconstitutional will also violate the MZEA, and vice versa. *See Crossroads Outdoor LLC v. Green Oak Charter Twp.*, No. 18-cv-11368, 2019 WL 1326641, at *12 (E.D. Mich. Mar. 25, 2019) (declining to dismiss the plaintiff's MZEA claim because a constitutional claim was still pending). This contention aligns with Defendant's argument that it is entitled to summary judgment on the MZEA claim because "the Ordinances at issue are not unconstitutional nor are they contrary to law" (ECF No. 142 at PageID.4998). Because the Court has determined that numerous sections of the Township Ordinances are unconstitutional, and in turn, they also violate the MZEA, Defendant cannot be granted summary judgment on this claim.

### 10. Injunctive Relief

Lastly, Plaintiffs' first amended complaint contains an injunctive relief count. The Court has already denied Plaintiffs' motion for a preliminary injunction (ECF No. 34). The Court found that, at that time, Plaintiffs were unlikely to succeed on the merits of their claims and that they were not facing an irreparable harm, considering some of the Township

48

Ordinances have been on the books since 1972 (*see id.* at PageID.1867). The Township argues that the Court's ruling is instructive. It argues that because injunctive relief was inappropriate at the beginning of this lawsuit, it is also inappropriate now.

However, "findings of fact and conclusions of law made by a court [at the] preliminary injunction [phase] are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Now that discovery is completed, Plaintiffs' arguments on the merits are much stronger. As with the MZEA claim, Plaintiffs' right to enjoin certain sections of the Township Ordinances rises and falls with their constitutional/preemption arguments. In accordance with this opinion, the Court will enjoin the Township from enforcing all of the sections of the Township Ordinances that the Court has found unconstitutional or contrary to law.

## ORDER

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for partial summary judgment (ECF No. 53) is **GRANTED** in part and **DENIED** in part in accordance with the opinion above.

**IT IS FURTHER ORDERED** that Defendant's cross motion for partial summary judgment (ECF No. 62) is **GRANTED** in part and **DENIED** in part in accordance with the opinion above.

**IT IS FURTHERED ORDERED** that Plaintiffs' motion for partial summary judgment (ECF No. 135) is **GRANTED** in part and **DENIED** in part in accordance with the opinion above.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 142) is **DENIED** in its entirety in accordance with the opinion above.

**IT IS SO ORDERED**.

Date:  June 3, 2022                                        /s/ Paul L. Maloney
                                                                     Paul L. Maloney
                                                                     United States District Judge