Ex 1 - PTP Proposed Motion to Dismiss Plaintiffs State Law Claims, Brief in Support, and Exhibits

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA
ASSOCIATION, *et al.,*

       Plaintiffs,

                                    Case No.: 1:20-cv-01008-PLM-RSK

v                                      Honorable Paul L. Maloney

                                      Magistrate Ray S. Kent

PENINSULA TOWNSHIP,

       Defendant.

---

Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
Miller, Canfield, Paddock and Stone, PLC
*Attorneys for Plaintiffs*
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
**infante@millercanfield.com**
**gartman@millercanfield.com**

Gregory M. Meihn (P38939)
Matthew T. Wise (P76794)
Foley & Mansfield, P.L.L.P.
*Attorneys for Defendant*
130 E. 9 Mile Rd.
Ferndale, MI 48220-3728
(248) 721-4200 / Fax: (248) 721-4201
**gmeihn@foleymansfield.com**
**mwise@foleymansfield.com**

Tracy J. Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
*Attorney for Intervening Defendant*
420 E. Front Street
Traverse City, MI 49686
(231) 714-9402
**tjandrews@envlaw.com**

---

## MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS
## AND BRIEF IN SUPPORT
## FILED BY INTERVENING DEFENDANT PROTECT THE PENINSULA, INC.

## MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS
## FILED BY PROPOSED INTERVENER PROTECT THE PENINSULA, INC.

Proposed Intervener Protect the Peninsula, Inc. (PTP), by its attorney, Law Office of Tracy Jane Andrews, PLLC, moves to dismiss Plaintiffs' two claims arising out of state law: Count VIII, State Law Preemption; and Count IX, Violation of Michigan Zoning Enabling Act. PTP moves to dismiss these claims under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction or should decline to exercise subject matter jurisdiction over these claims. PTP further moves to dismiss these claims under Fed. R. Civ. 12(b)(6) because Plaintiffs have failed to state claims upon which relief can be granted. Judicial economy supports consideration of PTP's arguments related to the lack of subject matter jurisdiction prior to considering the merits of Plaintiffs' state law claims. Even if the Court were to find subject matter jurisdiction over these claims, juridical economy further favors early resolution of Plaintiffs' state law claims on the merits. Proposed Intervener Defendant files the attached brief in support of this motion.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 3

STATEMENT OF FACTS .................................................................................. 4

ARGUMENT ....................................................................................................... 7

**A.   THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS UNDER FED. R. CIV. P. 12(B)(1) BECAUSE THE COURT LACKS OR SHOULD DECLINE TO EXERCISE SUPPLEMENTAL SUBJECT MATTER JURISDICTION OVER THESE CLAIMS.** ........................................................... 7

    1.   Standard of Review ........................................................................... 7

    2.   The Court lacks supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a). .................................................... 8

    3.   The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c). ............................................... 11

       (a)   *Plaintiffs' state law claims involve novel and complex state law issues.* ............... 12

       (b)   *Plaintiffs' federal claims are secondary to the state preemption claims and are also likely to be dismissed.* ......................................................... 17

       (c)   *There would be minimal harm to Plaintiffs if this Court declines to exercise jurisdiction over Plaintiffs' state law claim.* .................................................. 17

**B.   THE COURT SHOULD DISMISS BOTH OF PLAINTIFFS' STATE LAW CLAIMS UNDER FED. R. CIV. P. 12(B)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.** ......................................................................... 18

    1.   Standard of Review ........................................................................... 18

    2.   Plaintiffs' claims that zoning rules conflict with and are thus preempted by state liquor laws fail as a matter of law. ..................................................... 19

       (a)   *There is no conflict regarding restaurants and catering.* .................................. 22

       (b)   *There is no conflict regarding amplified music.* ........................................... 26

       (c)   *There is no conflict regarding hours of operation.* ........................................ 26

    3.   Plaintiffs claim that the winery rules violate the MZEA fails as a matter of law. ..... 31

CONCLUSION.................................................................................................... 34

CERTIFICATE OF COMPLIANCE UNDER LOCAL RULE 7.2(b)(ii)................... 35

**BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS**
**FILED BY INTERVENING DEFENDANT PROTECT THE PENINSULA, INC.**

### INTRODUCTION

Proposed Intervener Protect the Peninsula, Inc. (PTP) moves to dismiss Plaintiffs' two claims arising out of state law: Count VIII, State Law Preemption, which asserts that certain provisions in the Peninsula Township Zoning Ordinance (PTZO) conflict with state law; and Count IX, Violation of Michigan Zoning Enabling Act (MZEA), which asserts that winery rules in the PTZO are not authorized by state zoning law. (ECF No. 29, PageID.1126-1127.) This motion is filed on two grounds: under Rule 12(b)(1), because this Court lacks, or should decline to exercise, supplemental jurisdiction over these state law claims; and under Rule 12(b)(6), because Plaintiffs have failed to state claims for relief.

The Court should dismiss Plaintiffs state law claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs' state law claims lack a common nucleus of operative facts with Plaintiffs' federal constitutional claims and thus fail to invoke the Court's supplement subject matter jurisdiction under 28 U.S.C § 1367(a). The former challenge zoning restrictions on hours of operations, food service, and amplified music in agricultural districts as supposedly preempted by liquor laws contained in the Michigan Liquor Control Code (MLCC). The latter involve First Amendment and Commerce Clause challenges to advertising rules, wedding restrictions, and fruit-buying requirements. Plaintiffs raise novel, complex, and quintessentially state and local – not federal – legal issues, and these state law claims threaten to predominate over Plaintiffs' federal claims. The Court should thus decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

Plaintiffs' state law claims also fail as a matter of law. The preemption claim fails because the cited zoning provisions do not conflict with state liquor control laws. The state controls the

traffic of alcohol; the zoning rules attempt to limit commercial activities in the agricultural district, irrespective of alcohol sales. Plaintiffs' claim that the zoning ordinance winery provisions are beyond township zoning authority also fails as a matter of law because the provisions are safely within the broad zoning authority granted by the legislature for Michigan townships to ensure appropriate land uses relative to competing uses and community interests.

This motion to dismiss Plaintiffs' Claims VIII and IX is presently ripe for consideration, and judicial economy favors dismissal. The state claims are questions of law that do not require further fact development. It is appropriate and efficient for this Court to consider whether it has subject matter jurisdiction over the claims before or alongside considering their merits. Since Plaintiffs' attorney has declared its state law preemption claim in particular to be its "core" claim, and given the dubious merits of Plaintiffs' federal claims, resolution of Plaintiffs' state law claims will likely facilitate early resolution of this litigation and conserve judicial and litigants' resources.

## STATEMENT OF FACTS

On October 21, 2020, Plaintiffs Wineries of Old Mission Peninsula Association (WOMP) and the 11 wineries that operate in Peninsula Township sued the township, alleging a panoply of complaints with the winery provisions in the zoning ordinance. (ECF No. 29, PageID.1116-1129.) On February 16, 2021, PTP filed a motion to intervene aligned as a defendant to protect its and its' members' substantial interests implicated by Plaintiffs' challenges to the zoning ordinance. (ECF No. 40.)

Plaintiffs argue that various rules in the zoning ordinance violate their federal constitutional rights. The rules that allegedly suffer such infirmities relate to wineries' advertising; the types of events wineries may host (*e.g.*, weddings or political events); the minimum parcel size for wineries; requirements to use locally grown grapes; and additional Guest Activities restrictions.

(ECF No. 34, PageID.1865, 1869-1875.) The Court has indicated that, for purposes of "likelihood of success on the merits" to support preliminary injunction, none of the constitutional claims carry the day. (*Id.*)

In addition to their federal claims, the wineries argue that other zoning rules are preempted by state liquor laws. These allegedly preempted rules relate to hours of operation, amplified music, and restaurant and catering services. (ECF No. 29, PageID.1125-1126.) Plaintiffs also argue that the winery rules as a whole contravene the MZEA because they do not promote public health, safety and welfare. (ECF No. 29, PageID.1126-1127.)

More particularly, Plaintiffs claim five zoning rules are preempted by state law:[1]

| Issue | Township Winery Provision | State Law |
|---|---|---|
| Hours of Operation | **PTZO 8.7.3(10)(u)(5)(b)** | **Mich. Admin. Code R. 436.1403(1)** |
| | Hours of operation for Guest Activity Uses shall be as determined by the Town Board, but no later than 9:30 PM daily. | Except as provided in subrule (7) of this rule, an on-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day nor between the hours of 2 a.m. and 12 noon on Sunday and shall not sell, give away, or furnish spirits between the hours of 2 a.m. and 12 midnight on Sunday, unless issued a Sunday sales permit by the commission which allows the licensee to sell spirits on Sunday between the hours of 12 noon and 12 midnight. |
| Music | **PTZO 8.7.3(10)(u)(5)(g)** | **MCL 436.1916(11)** |
| | No amplified instrumental music is allowed, however amplified voice and recorded background music is allowed, provided the amplification level is no | The following activities are allowed without the granting of a permit under this section: (a) The performance or playing of |

[1] Plaintiffs Complaint Count VII claims the hours, music, and catering rules are preempted, but does not raise the two restaurant rules. (ECF No. 29, PageID.1125-1126.) Plaintiffs' Motion for Preliminary Injunction argued the five rules listed here conflict with the cited state laws. (ECF No. 3, PageID.471-475.) Plaintiffs' Motion for Partial Summary Judgment added four more rules to the list: 6.7.2(19)(b)(1)(iv) and 8.7.3(10)(u)(2)(a)-(c). (ECF No. 54, PageID.2277.) Plaintiffs' motion did not identify which state law(s) these four additional rules supposedly conflict with, nor otherwise support its assertion that they are preempted by state law. (ECF No. 54, PageID.2301.). PTP addresses the five rules that Plaintiffs claim be in conflict with identified state laws.

|  |  |  |
|---|---|---|
|  | greater than normal conversation at the edge of the area designated within the building for guest purposes. | an orchestra, piano, or other types of musical instruments, or singing. |
| **Catering** | **PTZO 8.7.3(10)(u)(5)(i)** | **MCL 436.1547(3)** |
|  | Kitchen facilities may be used for on-site food service related to Guest Activity Uses but not for offsite catering. | The commission may issue a catering permit to a specially designated distributor, specially designated merchant, or public on-premises licensee, as a supplement to that license, to allow the sale and delivery of beer, wine, or spirits in the original sealed container at locations other than the licensed premises and to require the catering permit holder to serve beer, wine, or spirits at the private event where the alcoholic liquor is not resold to guests. The commission shall not issue a catering permit to an applicant who delivers beer, wine, or spirits but does not serve the beer, wine, or spirits. |
| **Restaurants** | **PTZO 6.7.2(19)(a) +**<br>**PTZO 8.7.3(10)(u)(2)(e)** | **MCL 436.1536(7)(h)** |
|  | 6.7.2(19)(a) (Food Processing Facilities, Statement of Intent): The Farm Processing Facility use includes retail and wholesale sales of fresh and processed agricultural produce but is not intended to allow a bar or restaurant on agricultural properties and the Township shall not approve such a license.<br><br>8.7.3(10)(u)(2)(e) (Winery Chateau): No food service other than as allowed above or as allowed for wine tasting may be provided by the Winery-Chateau. If wine is served, it shall only be served with food and shall be limited to Old Mission Peninsula appellation wine produced at the Winery, except as allowed by Section 6. below. | A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises. If the brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer allows another person to operate a restaurant on the manufacturing premises, the brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer must hold a participation permit naming as a participant the other person. The other person must meet the requirements for a participant in R 436.1041(3) of the Michigan Administrative Code. |

These cited zoning rules may apply to individual wineries through a Special Use Permit (SUP) issued to the winery. (ECF No. 32, PageID.1624-26.) While there may be distinctions between individual wineries, any such differences have no relevance to Plaintiffs' claim that each zoning rule conflicts with state law. Plaintiffs have not challenged the application of these rules but instead challenge the rules themselves. While Plaintiffs request monetary damages for these claims, Plaintiffs have provided no statutory or other basis to support damages arising out of their state law claims. (ECF No. 29, PageID.1126-1127.)

## ARGUMENT

**A.** **THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS UNDER FED. R. CIV. P. 12(B)(1) BECAUSE THE COURT LACKS OR SHOULD DECLINE TO EXERCISE SUPPLEMENTAL SUBJECT MATTER JURISDICTION OVER THESE CLAIMS.**

Plaintiffs assert that this Court has supplemental jurisdiction over its two state law claims. (ECF No. 29, PageID.1088.) Plaintiffs state law claims are unrelated to, and are not part of the same case or controversy as, its federal constitutional claims. Moreover, the state claims raise novel and complex issues of Michigan law and substantially predominate over the federal claims, which are likely to be dismissed. Therefore, under 28 U.S.C. § 1367(a) and (c), this Court lacks or should decline to exercise supplemental jurisdiction over the state claims. The Court should therefore dismiss these claims under Fed. R. Civ. P. 12(b)(1).

### 1.   Standard of Review

The plaintiff has the burden of proving subject matter jurisdiction in order to survive a motion under Rule 12(b)(1) challenging the tribunal's subject matter jurisdiction. *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n. Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). In considering a motion to dismiss for lack of subject matter jurisdiction, a court is not restricted to accepting as true the allegations in pleadings but instead "is free to weigh the evidence and satisfy

itself as to the existence of its power to hear the case." *United States v. Ritchie,* 15 F. 3d 592, 598 (6th Cir. 1994). District courts generally have broad discretion in deciding whether to decline or elect to exercise supplemental jurisdiction over state law claims. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F3d 1244, 1254 (6th Cir. 1996) (citation omitted).

### 2. The Court lacks supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

A federal district court has supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In order to find supplemental jurisdiction over state law claims, the state and federal claims must derive from a common nucleus of operative fact. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966). The question is whether the state and federal claims are such that they would ordinarily be expected to be tried in one judicial proceeding. *Id.*

While no strict guidelines define the existence of a common nucleus of operative fact, the Sixth Circuit has found supplemental jurisdiction proper when there is "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims." *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986). Where the facts relevant to resolution of each the state and federal claims are completely separate and distinct, then the claims do not share a common nucleus of operative fact. *See Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 999 (E.D. Mich. 1996). If a plaintiff may reasonably elect to assert its state and federal claims in separate actions, that suggests the claims do not arise out of the same case or controversy. *Id.* at 999-1000 (citations omitted).

Plaintiffs' state law preemption and violation of MZEA claims do not form the same case or controversy or share the same operative facts as its federal constitutional claims. Plaintiffs' state

preemption claim challenges whether a local municipality may, under zoning, regulate business operations of an entity that holds a state license to make and sell wine. Plaintiffs' violation of MZEA claim challenges the parameters local zoning authority. The federal constitutional claims challenge various rules related to commercial speech, religious ceremonies, interstate commerce, and takings. The shared operative facts include only general identities of the parties (each winery is subject to different rules and SUP conditions) and the challenged rules are codified in the PTZO. Even where the same entities and agreements or properties are involved, that is not sufficient to find they share operative facts. *See Salei*, 913 F. Supp. at 999-1000 (no supplemental subject matter jurisdiction where state and federal claims involved same parties and related to same settlement agreement but involved "distinct and independent set of events" and plaintiff could bring the claims separately). *See also Habich v. Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (no abuse of discretion in refusing to review state claims involving same agency and property as federal claims).

Within the PTZO, Plaintiffs claim different provisions are preempted by state liquor laws than those that supposedly violate their federal constitutional rights. (ECF No. 34, PageID.1865.) The preemption claim relates to operational hours, amplified music, and restaurant and catering provisions; the federal claims assail rules related to advertisements, retail sales, local produce requirement, and gatherings. The facts and legal regimes relevant to hours of operation and preemption have no bearing on nor intersection with the facts and law relevant to logo sizes and hosting of religious or secular events.

Distinct operative facts apply to the state and federal claims. In support of their preemption claim, Plaintiffs describe their state licenses and permits. (ECF No. 54, PageID.2277-2278.) Plaintiffs claim zoning rules conflict with rights they claim to have under their state licenses and permits or have the right to seek under state law. Such permits are irrelevant to their federal claims.

To support their federal claims, Plaintiffs may take issue with how the township administers zoning (ECF No. 34, PageID.1871, 1874), but such facts are irrelevant to their state claims.

The claim that state liquor licensing laws preempt local zoning invokes state administrative rules and state agency authority; the unrelated federal claims do not. Plaintiffs claim they are not subject to zoning provisions because state law grants them "the absolute right to operate a restaurant as part of their tasting rooms." (ECF No. 54, PageID.2296.) Putting aside its lack of merit, this argument implicates the validity of Michigan Liquor Control Commission rules and rulings requiring licensees to comply with local ordinances. Mich. Admin. Code R. 436.1003 (licensees shall comply with, *inter alia*, local building, plumbing, zoning, sanitation, and health laws, rules, and ordinances); Mich. Liquor Control Comm'n Dec. Ruling (Aug. 26, 1988) (**Ex A**) (Chateau Chantal must comply with "any standards imposed on its business operation through application of local ordinances"). Resolution of the preemption claims may impact the state agency that administers liquor licenses and all municipalities that regulate licensees' business activities through zoning and otherwise. Plaintiffs' federal claims lack such effects, indicating they are not part of the same case and controversy as the state claim.

In addition, the injuries and remedies attendant to the state and federal claims are distinct. *See Salei,* 913 F. Supp. at n. 5 (state and federal claims were separate and distinct where plaintiff asserted separate injury resulting from each) (citing *Am. Fire & Casualty Co. v. Finn*, 341 U.S. 5, 14 (1951)). Success on the preemption claims (which is unlikely) would void the hours of operation, restaurant and catering, and amplified music rules. Success on any of the myriad federal constitutional claims (also unlikely) would void rules on logos, hosting weddings, appellation, or growing requirements, as well as potentially entitle Plaintiffs to damages. There is no damages opportunity in the unlikely situation that Plaintiffs succeed on their state claims.

While Plaintiffs might prefer to have all their distinct grievances with the township heard before this tribunal, that is insufficient to confer power on this court to hear Plaintiffs' state law claims. Absent an overlap of operative facts, which Plaintiffs' claims lack, the Court lacks supplemental jurisdiction over Plaintiffs' state law claims, so they should be dismissed.

### 3.  The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c).

Even if Plaintiffs' state and federal claims shared a common nucleus of operative facts (they do not), the Court nevertheless should not exercise jurisdiction over these state law claims under 28 U.S.C. § 1367(c). The first factor supporting rejection of supplemental jurisdiction here is that Plaintiffs' state law claims involve novel and complex state law issues, which have not been "squarely addressed" by the state court. 28 U.S.C. § 1367(c)(1); *cf. Justiana v. Niagara County Dep't of Health,* 45 F. Supp. 2d 236, 241 (N.Y.W.D. 1999) ("this court is not facing a situation in which state law is unclear"). Second, Plaintiffs' state law claims substantially predominate over its federal claims, forming the "core" of Plaintiffs' lawsuit. 28 U.S.C. § 1367(c)(2); *Gibbs,* 383 U.S. at 726-27 ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."). The third factor is that Plaintiffs' federal claims are likely to be dismissed. *See* 28 U.S.C. § 1367(c)(3); *Harper v Auto Alliance Inter. Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (court should avoid "needlessly deciding state law issues"); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (when state claim does not bear on federal claim, that counsels against exercising supplemental jurisdiction).

Supplemental jurisdiction is a doctrine of discretion, not right. *Habich,* 332 F.3d at 535. District courts have flexibility in ascertaining whether to exercise supplemental jurisdiction over

state law claims. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."). Courts should "hesitate to exercise jurisdiction over state claims" where judicial economy, convenience, and fairness are not present. *Gibbs*, 383 U.S. at 726. "The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own State's law in the first instance." *Allen v. City of Sturgis,* 559 F. Supp.2d 837, 852 (W.D. Mich. 2008) (citation omitted). This is particularly the case here, where Plaintiffs invokes the delicate balance between competing state and local interests, and where the state judges are elected by, and thus directly accountable to, their citizens. *See State Farm Mut. Auto. Ins. Co. v. Carter,* 2008 U.S. Dist. LEXIS 108050 n. 15 (W.D. Mich. Oct. 28, 2008).

### (a) Plaintiffs' state law claims involve novel and complex state law issues.

Plaintiffs' state claims invoke both liquor control and land use laws. In Michigan, the power to control alcoholic beverages is a matter of both state and local control. *Bundo v. Walled Lake,* 395 Mich. 679, 238 N.W.2d 154 (1976) (local community has broad control over and special interests in regulation of establishments selling alcoholic beverages); *Roselind Inn, Inc. v McClain*, 118 Mich. App. 724, 731; 325 N.W.2d 551 (1982) (recognizing "a local community's broad power to control the alcoholic beverage traffic in its area"); *Jott, Inc. v. Clinton Charter Twp*., 224 Mich. App. 513, 541-43; 569 N.W.2d 841 (1997) ("this grant of authority [to MLCC] does not preclude local communities from controlling alcoholic beverage traffic within their boundaries in the proper exercise of their police powers"). State courts have considered the parameters of those respective state and local interests in numerous cases. *See Johnson v. Liquor Control Comm.,* 266 Mich. 682, 685; 254 N.S. 557 (1934) ("The very nature of the liquor business is such that local communities,

as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor control commission as to those matters wherein the commission is given exclusive powers by the legislature."); *Maple BPA v. Bloomfield,* 302 Mich. App. 505, 513; 838 N.W.2d 915 (2013) ("We conclude that the Commission's decision to recognize local zoning authority indicates that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales. Thus, we conclude that the state has not expressly provided that its authority to regulate the field of liquor control is exclusive."); *Fuller Cent. Park Prop. v. Birmingham*, 97 Mich. App. 517, 527; 296 N.W.2d 88 (1980) (recognizing distinct state and local interests in liquor businesses).

Zoning, too, is a state and local matter, and one where courts –state and federal – have a particularly limited role. *See Ken-N.K., Inc. v. Vernon Twp.,* 18 Fed. Appx. 319 (6th Cir. 2001) (invoking abstention in part because pending state proceedings "implicate an important state and local interest: the enforcement and application of zoning ordinances and land-use regulations.") (citations omitted). Michigan courts have long and consistently acknowledged the limited role of the judiciary in reviewing municipal zoning ordinances:

> It is not for this Court to second guess the local governing bodies in the absence of a showing that that body was arbitrary or capricious in its exclusion of other uses from a single-family residential district. Justice Smith aptly pointed this out in *Brae Burn, Inc, v Bloomfield Hills,* [350 Mich. 425, 430-32; 86 N.W.2d 166 (1957)].
>
>> [T]his Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is

> the ballot box, not the courts. We do not substitute our judgment for
> that of the legislative body charged with the duty and responsibility
> in the premises.

*Kropf v. Sterling Heights*, 391 Mich. 139, 161; 215 N.W.2d 179 (1974)).

Plaintiffs' state claims would have this Court discern whether township land use restrictions on businesses located in agricultural districts, who hold a license to make and sell liquor, conflict with state alcohol traffic laws or exceed zoning authority granted by state law. This Court should not wade into these issues invoking "the balance of power between state and local authorities" and "delicate issues of state law." *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1022 (9th Cir. 2004) (finding no abuse of discretion where district court declined jurisdiction over claim that state law preempted county ordinance); *see also Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1124 (C.D. Cal. 2013) (declining supplemental jurisdiction over claim that state law preempted county ordinance).

It is not appropriate for a federal court to "undertake a leap in interpretation in the absence of any supporting precedent." *Anderson v. Detroit Transp. Corp.*, 435 F. Supp. 3d, 783. 801 (E.D. Mich. 2020). To the contrary, a district court may decline supplemental jurisdiction over complex state law claims where state courts have not authoritatively addressed the issue. *See Beechy v. Cent. Mich. Dist. Health Dept.*, 274 F. Appx. 481, 482 (6th Cir. 2008) (district court refused supplemental jurisdiction over state law claim because of "the paucity of decisions interpreting" the applicable state statute); *Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (district court refused supplemental jurisdiction over claim that statute violated the state constitution); *cf Justiana,* 45 F. Supp. 2d at 241 (exercising supplemental jurisdiction where state appellate court had directly addressed issue and outcome would be same if state or federal court resolved claim).

There is no Michigan precedent preordaining the outcome Plaintiffs seek through their preemption claim. To the contrary, as discussed in detail below in Section B.2, caselaw confirms that zoning coexists alongside and may go further than state law without running afoul of preemption. Plaintiffs cite no case finding that state liquor laws conflict with and preempt a local zoning ordinance. (ECF No. 54, PageID.2290-2301.) The closest Plaintiffs come is *Noey v. Saginaw*, a 1935 Michigan Supreme Court field preemption case, which prompted a legislative fix specifically to ensure townships <u>may</u> regulate liquor establishment hours of operation. *Mutchall v. Kalamazoo*, 323 Mich. 215, 223; 35 N.W.2d 245 (1948). Neither of the other two cases Plaintiffs rely on (*RSWW Inc. v. Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) and *Sherman Bowling Center v. Roosevelt Park*, 154 Mich. App. 576, 397 N.W.2d 839 (1987)) address conflict preemption between state liquor laws and local zoning.

Nor does Michigan caselaw establish that the township rules exceed township zoning authority. To the contrary, as discussed in detail below in Section B.3, township ordinances are clothed with a constitutional presumption of validity, and Michigan cases recognize broad local zoning authority to ensure land uses are consistent with neighboring uses, minimize traffic, preserve open space, support agricultural production, and advance legitimate community interests.

Plaintiffs also raise novel arguments to support their state claims. In its motion for partial summary judgment, Plaintiffs assert that a statute effective December 19, 2018, grants then-existing wineries "the absolute right to operate a restaurant as part of their tasting rooms," thus inoculating these wineries from township zoning that prohibits restaurants in the agricultural district. (ECF No. 54, PageID.2278-2279, 2296.) *See* MCL 436.1536 (Act 408 of 2018, eff. Dec. 19, 2018). No Michigan court has considered Plaintiffs' interpretation of this law, let alone reached the unprecedented conclusion that pre-existing tasting rooms may add restaurants, irrespective of

local zoning. Plaintiffs suggest that, because "local legislative approval" is not required for various optional state liquor permits (entertainment, catering, outdoor service), these activities are exempt from local zoning. (ECF No. 54, PageID.2279-2280, 2299.) Plaintiffs rely on a state agency website and form to support their novel argument. (*Id.*, citing Exhibits L to O.) No Michigan court has endorsed Plaintiffs' proffered interpretation of state law and state agency informal guidance. To the contrary, agency rules and Michigan cases require state licensees to comply with state law and local regulations addressing the same activities. Mich. Admin. R. 436.1003, 436.1105(3); *Mesquite, Inc. v. Southgate*, 2008 Mich. App. LEXIS 1975 (Sept. 23, 2008) (unpublished opinion) (**Ex B**) (no entitlement to MLCC entertainment permit where activity did not comply with zoning requirements). The agency whose website Plaintiffs cite has unequivocally confirmed that licensees (namely, Plaintiff Chateau Chantal) must comply with "any standards imposed on its business operations through applicable local ordinances" and that any permission granted by the state is "null and void" if the winery is unable to meet local zoning standards. Mich. Liquor Control Comm'n Declaratory Ruling (Aug. 6, 1988) (**Ex A).**

Michigan law either requires dismissal of Plaintiffs claims on the merits, as discussed in Section B, or dismissal to allow a state court to consider the claims. There is no clear state law precedent supporting Plaintiffs state law claims for this Court to simply mechanically apply here. Plaintiffs would have this Court redefine the balance between state and local regulations in a way that no Michigan courts have done. Principles of comity favor federal court avoidance of these claims. *Anderson*, 435 F. Supp. 3d, 783, 801 ("This is exactly the type of claim that is best reserved for review by the Michigan courts themselves, who have greater experience and interest in clarifying Michigan law. It is not an issue that should be decided by summary judgment in a federal court.").

(b) *Plaintiffs' federal claims are secondary to the state preemption claims and are also likely to be dismissed.*

A district court may decline to exercise supplement jurisdiction over state law claim where either the state claims predominate over the federal claims or the federal claims have been dismissed. 28 U.S.C. § 1367(c)(2), (3). Here, the former is clear and the latter is likely.

This litigation arguably began when Plaintiffs asserted that the township winery rules were preempted by the MLCC. (ECF No. 29, PageID.1113.) Plaintiffs' attorneys subsequently invented novel constitutional theories. (ECF No. 1-5, PageID.229-243.) This Court has already concluded, albeit preliminarily, that none of Plaintiffs' constitutional claims appear to have a high likelihood of success, whereas the preemption claim may have "more merit." (ECF No. 34, PageID.1869-1875.) After that ruling, Plaintiffs' counsel declared their preemption claims predominant:

> [WOMP attorney Joseph] Infante tells *The Ticker*[,] "[the court] said that the preemption claims by the wineries have merit, and those are sort of our core claims – dealing with restaurant, catering, hours of operation, entertainment, music, that kind of stuff. So we were very happy with that language."

*New Wrinkles Emerge in Old Mission Peninsula Wineries Lawsuit*, The Ticker, Feb. 19, 2021 **(Ex D)**. Given this context, it is reasonable to conclude both that the state preemption claim will substantially predominate over Plaintiffs' federal claims, which will likely be dismissed. These factors further support declining jurisdiction over the state claims.

(c) *There would be minimal harm to Plaintiffs if this Court declines to exercise jurisdiction over Plaintiffs' state law claim.*

Dismissing Plaintiffs' state claims without prejudice would allow a party to properly raise in state court particular claims that state laws conflict with zoning rules, with appellate review by Michigan state courts as needed. This allows Michigan courts to interpret recent statutes and historic precedent, apply appropriate weight to state agency rules and declarations, and maintain

the balance between state and local interests in liquor traffic and local interests in land use controls. The harm to Plaintiffs would be minimal delay. As this Court has recognized, the zoning ordinance has been on the books for nearly 50 years, and the wineries have been operating under them for decades. (ECF No. 34, PageID.1867-1868.) For the same reason, there is no urgency or time sensitivity for this Court to resolve these issues now, as opposed to dismissing them without prejudice for a state court to consider them forthwith. *Cf. Justiana,* 45 F. Supp. 2d at 241 ("[T]his case presents a somewhat unusual circumstance in that the determination of plaintiffs' claims is highly time-sensitive, as defendants will begin enforcing the challenged regulations on April 30, 1999. Declining supplemental jurisdiction over the state law claim would substantially delay any determination in this matter and result in unfairness to the litigants."). This case is still in early stages, further minimizing harm should a litigate seek a state court resolution. *See Nat'l Westminster Bank v. Grant Prideco,, Inc.*, 343 F. Supp. 2d 256, 258 (S.D.NY 2004) ("The Court's investment of time and resources in the matter is not so extensive as to warrant retention on that ground. The extensive discovery taken by the parties is readily available for use in the state courts.").

For all these reasons, the Court should dismiss Plaintiffs' state claims under Rule 12(b)(1).

**B.** **THE COURT SHOULD DISMISS BOTH OF PLAINTIFFS' STATE LAW CLAIMS UNDER FED. R. CIV. P. 12(B)(6)) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

**1. Standard of Review**

Plaintiffs' state claims – that some zoning rules conflict with state liquor laws and are beyond township zoning authority – are facial challenges to the validity of the rules. (ECF No. 29, PageID.1125-1127; ECF No. 28, PageID.1079-1082.) A motion to dismiss under Fed. R. Civ. P.

12(b)(6) tests whether the plaintiff pleaded a cognizable claim in its complaint. *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988). "Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citation omitted). Both of Plaintiffs' state law claims should be dismissed under Rule 12(b)(6).

### 2. Plaintiffs' claims that zoning rules conflict with and are thus preempted by state liquor laws fail as a matter of law.

Whether a municipal ordinance conflicts with state law "is sometimes difficult of solution, and cannot be determined by any fixed rule." *Nat'l Amusement Co. v. Johnson*, 270 Mich 613, 616 (1970) (citation omitted). Conflict may be found where a local ordinance permits what a statute prohibits or prohibits an activity that state law permits. *See DeRuiter v. Byron Twp.*, 505 Mich. 130, 140; 949 N.W.2d 91 (2020) (citing *People v. Llewellyn*, 401 Mich. 314, 322; 257 N.W.2d 902 n. 4 (1977)). A local ordinance may add to the conditions in state law "as long as its additional requirements do not contradict the requirements set forth in the statute." *Id.* at 147; *Nat'l Amusement*, 270 Mich at 616.

In *Deruiter*, the Michigan Supreme Court held that a zoning ordinance did not conflict with the Michigan Medical Marihuana Act (MMMA) by placing limits on where a caregiver may cultivate marijuana (*i.e.*, in "the main building" of "a single family detached dwelling"), even though the MMMA specifies that the plants must be kept and grown in an "enclosed, locked facility." *Id.* at 143-44. The Court found the MMMA specifies the type of structure marijuana plants must be grown and kept in but "does not speak to *where* marijuana may be grown." *Id.* at 144 (emphasis in original). The Court found the zoning ordinance geographical restrictions "adds to and complements" the limitations imposed by the MMMA, without contradiction. *Id.* at 147.

In analyzing the zoning ordinance for conflict with the MMMA, *Deruiter* recognized Michigan precedent establishing that there is no conflict "when a locality enacted regulations that are not 'unreasonable and inconsistent with regulations established by state law,' so long as the state regulatory scheme did not occupy the field." *Id.* at 145-46 (citing *Detroit v. Qualls,* 434 Mich. 340, 363; 454 N.W.2d 374 (1990)). As described by *Deruiter, Qualls* held no conflict between a city ordinance regulating the quantity of fireworks a retailer may store and a state law that limited possession to a "reasonable amount." *Id.* at 146 (quoting *Qualls*, 434 Mich at 363). *Deruiter* also favorably cited *Miller v. Fabius*, where the Supreme Court "held that a local ordinance that prohibited powerboat racing and water skiing between the hours of 4:00 p.m. and 10:00 a.m. was not preempted by a state law that prohibited the activity 'during the period 1 hour after sunset to 1 hour prior to sunrise.'" *Id.* (quoting *Miller v. Fabius*, 366 Mich 250, 255-257; 114 N.W.2d 205 (1962)). *Deruiter,* like *Qualls* and *Miller,* quoted favorably as follows from Am Jur:

> The mere fact that the State, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance *enlarges upon the provisions of a statute by requiring more than the statute* requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance *goes further in its prohibition, but not counter to the prohibition under the statute*, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.

*Id.* at 146-47 (citations omitted, emphases added).

The *Deruiter* court distinguished the subject ordinance, which permissibly added to state provisions by placing limits on where within the township the activity may take place, from one which prohibited and penalized all medical marijuana cultivation in a township. *Id.* at 142-45 (discussing *Ter Beek II v. City of Wyoming,* 495 Mich. 1, 846 N.W.2d 531 (2014)). In contrast to the *Ter Beek* township-wide prohibition, the *Deruiter* ordinance was appropriately crafted under the township's "inherent authority to regulate land use under the Michigan Zoning Enabling Act []" by imposing locational requirements not addressed in the MMMA. *Id.* at 147-48.

The state regulates the production and sale of alcohol. State law does not require a winery to remain open until 2:00 a.m., to provide amplified music, or to provide restaurant and catering services. The state does not regulate the land use aspects of licensees. On the other hand, the township limits business operations in the agricultural district, without regard to whether a Winery-Chateau is making or selling wine or instead selling chocolates and hosting conferences. The zoning regulates the location of businesses and addresses community effects of land uses. The township may restrict hours of operation, amplified music, and catering and restaurants, and it may apply these restrictions to businesses who are also state liquor licensees. These zoning provisions add to state law without contradiction. The rules that Plaintiffs challenge do not prohibit or ban in the township an otherwise lawful activity (*i.e.*, wine making or sales).

The Liquor Control Commission requires its licensees to comply with both its requirements and local zoning ordinances, among other laws. Mich. Admin. Code R. 436.1003 ("A licensee *shall comply with* all state and local building, plumbing, *zoning*, sanitation, and health laws, rules, and ordinances as determined by the state and local law enforcement officials who have jurisdiction over the licensee.") (emphasis added); R. 436.1105(3) (license application "shall be denied" if application does not meet all zoning and other ordinances); Mich. Liquor Control

Comm'n Declaratory Ruling (Aug. 26, 1998) (**Ex A**) (advising that Chateau Chantal "must comply with the requirements of R 436.1003 [] in meeting any standards imposed on its business operation through applicable local ordinances" and if zoning results in Chateau's inability to meet MLCC rules, then permission to sell wine for on-premises consumption "shall be considered null and void."). These rules recognize that municipalities may regulate licensees' commercial activities. *Oppenhuizen v. Zeeland*, 101 Mich. App. 40, 48; 300 N.W.2d 445 (1980) ("the MLCC regulation [now Rule 436.1003] recognizes the authority of the municipality over those areas of local control which involve all commercial activity."); *Maple BPA,* 302 Mich. App. at 513 (Rule 436.1003 indicates "that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales"); *Allen v. Liquor Control Comm.*, 122 Mich. App. 718, 333 N.W.2d 20 (1982) (liquor license applicant must comply with state rules and local ordinances).

The following sections address each purported conflict between zoning and state law.

### (a) *There is no conflict regarding restaurants and catering.*

There is no conflict between zoning rules that do not allow restaurants in the agricultural district, including at Food Processing Facilities (Section 6.7.2(19)(a)) and Winery-Chateaus (Section 8.7.3(10)(u)(2)(e)), and the statute recognizing that a wine-maker "may own and operate a restaurant." MCL 436.1536(7)(h). Nor is there conflict between the winery provisions that prohibit catering by Winery-Chateaus (Section 8.7.3(10)(u)(5)(i)) and MCL 436.1547(3), which allows the Michigan Liquor Control Commission to issue a catering permit to licensees.

Plaintiffs characterize the zoning ordinance as "taking away th[e] right" to operate a restaurant with their tasting room. (ECF No. 28, PageID.1082.) This misunderstands both the MLCC and zoning. The MLCC statutes are part of Public Act 58 of 1998. The purpose of the MLCC is to control alcoholic beverage trafficking and sales, including by restaurants and caterers.

MCL 436.1201(2) (vesting commission with control over alcoholic beverage traffic, including manufacture, importation, possession, transportation and sale). The MLCC does not regulate, permit or require restaurants or catering services; it regulates their alcohol sales. The MLCC recognizes that these food service businesses are licensed and regulated by a different agency (Department of Agriculture and Rural Development) under a different statute. MCL 436.1111(5) ("'Restaurant' means a food service establishment defined and licensed under the food law, 2000 PA 92, MCL 289.1101 to 289.8111. A restaurant that does not hold a license issued by the commission under this act shall not manufacture, market, deliver, or sell alcoholic liquor in this state."); MCL 436.1547 (liquor commission may issue a catering permit to a licensee that is also licensed for food service "under the food law of 2000, 2000 PA 92, MCL 289.1101 to 289.8111"). By its terms, the statute providing that "local approval" is not required for an on- or off-premises tasting room permit if the tasting room existing on December 19, 2018 (MCL 436.1536(17)) bears only on the tasting room permit. It is does not say, and it would be unreasonable and unsupported to stretch it to mean, that a pre-existing tasting room also has a vested right to subsequently open a restaurant in a zoning district where restaurants are not permissible land uses. The MLCC does not guarantee or vest in licensees a right to own or operate a restaurant or provide catering services.

Under zoning that has been in place for many decades, restaurants and catering are not authorized land uses in the agricultural district. The zoning ordinance seeks to limit non-agricultural activities in the agricultural district. *See* PTZO §§ 6.7.1 (intent of A-1 District), 8.7.3(10)(a) (intent of Winery-Chateau Special Use Permit). Restaurants and catering are not banned in Peninsula Township; they are allowed in the commercial district. PTZO § 6.6.2. These are not permitted land uses in the agricultural district, even for entities that make and sell wine.

Plaintiffs have no entitlement under state liquor laws to operate a restaurant or provide catering services in the agricultural district of Peninsula Township.

There is no conflict between a zoning ordinance regulating the location of restaurants and catering services and the MLCC provisions recognizing these as activities licensees "may" be authorized to engage in. MCL 436.1536(7)(h); MCL 436.1547(3). *See Deruiter,* 505 Mich at 147 (rejecting conflict where geographical restriction in zoning ordinance "adds to and complements" state restrictions); *Frens Orchards, Inc. v. Dayton Twp.*, 253 Mich App 129, 137; 654 NW2d 346 (2002) (no conflict between state health and safety regulations for migrant camps and zoning ordinance regulating "the location of a use of land within the township"). *See also Murphy v. Mich. Bell Co.*, 447 Mich. 93, 100; 523 N.W.2d 310 (1994) (what follows "may" is discretionary, while what follows "shall" signals a mandatory act). The zoning ordinance appropriately regulates the effects of these activities on neighbors and the community. *See Jott, Inc. v. Clinton Charter Twp*., 224 Mich. App. 513, 527; 569 N.W.2d 841 (1997) (township may limit location of protected activities to limit secondary effects). There is no conflict between the two regulatory regimes.

Under Plaintiffs' theory, restaurants and caterers would be exempt from zoning if they hold a liquor license, but remain subject to zoning if they do not. Alternatively, according to Plaintiffs, tasting rooms that existed on December 19, 2018, in particular are entitled to a operate a restaurant irrespective of zoning, but new tasting rooms are subject to zoning. (ECF No. 54, PageID.2296.) Neither theory can be squared with the MLCC rules requiring licensees to comply with local zoning. Neither theory makes sense, either. The MLCC does not regulate land use; it regulates alcoholic beverages sales. Zoning addresses noise, traffic, aesthetics, compatible land uses, and neighborhood impacts. Moreover, the zoning statute specifies when it is subject to other acts (electric transmission and regional transit), when it exempts activities from zoning (oil and gas

wells), when it applies particular standards to particular activities (extraction mining), and when it provides particular exceptions or allowances. MCL 125.3205, 3205a, 3205d, 3206. The legislature did not exempt MLCC licensees from zoning, which is meaningful. *Bennett v. Mackinac Bridge Auth*, 289 Mich. App. 616, 632; 808 N.W.2d 471 (2010) (legislative omission of statutory provision is "very strong evidence of legislative intent") (citation omitted). It would be arbitrary, inconsistent with the purpose of the MLCC, and unsupported by caselaw to interpret the MLCC to effectively exempt restaurants or catering from zoning because they sell alcohol and/or co-locate with a tasting room in existence on December 19, 2018.

By extension, Plaintiffs' interpretation of conflict preemption would invalidate local zoning of all activities that MLCC allows licensees to engage in. Besides restaurant and catering service, the MLCC allows licensees to host motorsports events, dancing, contests, topless activity-entertainment, and others. MCL 436.1518; MCL 436.1916. By specifying allowable (not prohibited) activities for licensees, the MLCC does not conflict with local regulation of these activities. *See Mallach v. Mt. Morris*, 287 Mich. 666, 668-69; 284 N.W. 600 (1939) ("Although the constitutional provision mentioned and the statute enacted pursuant thereto, [citation omitted], grant broad regulatory powers over the alcoholic beverage traffic to the commission, the city was not thereby deprived of the right to exercise its power to regulate and control dancing in public places as conferred by the provisions of its charter. The fact that the commission likewise has by rule attempted to exercise control of dancing in licensed establishments is of no importance."); *see also Tally v. Detroit*, 54 Mich. App. 328; 220 N.W.2d 778 (1974); *Mesquite, Inc. v. Southgate*, 2008 Mich. App. LEXIS 1975 (Sept. 23, 2008) (unpublished opinion) (**Ex B**) (no entitlement to MLCC entertainment permit where activity did not comply with zoning requirements).

There is no conflict between zoning restrictions on restaurants and catering in the agricultural district and MLCC provisions allowing licensees to own and operate restaurants and permitting licensees to serve alcohol at catered functions.

        (b) *There is no conflict regarding amplified music.*

There is no conflict between zoning, which prohibits amplified instrumental music at Winery-Chateaus in the agricultural district, and MCL 436.1916(11), which allows a licensee to have orchestra, piano, and other musical instrument performances, or singing.

The MLCC does not regulate music; it regulates alcohol sales and trafficking, and it allows (but does not require) licensees to provide live orchestral music and signing. The MLCC is silent on amplification. The zoning rule allows a winery to provide music, but it does not allow amplification. The amplified music rule is not tied to the sale of wine: it applies to a dry breakfast conference for farmers at 10:00 a.m. Thursday morning and in the tasting room every Saturday evening. The zoning rule does not contradict, it goes permissibly further than the MLCC. *Deruiter*, 505 Mich. at 147. By restricting amplified music, including in places and at events where wine is served, the zoning ordinance appropriately regulates the effects of loud music on neighbors and the community. *See Nixon v. Webster Twp.*, 2020 Mich. App. LEXIS 438, 2020 WL 359625 (Jan. 21, 2020, unpublished decision) (**Ex C**) (upholding zoning decision by local board that found "the sounds of hundreds of wedding attendees and amplified music for dancing and celebrating are not traditional agricultural sounds or noise associated with agricultural activities.").

        (c) *There is no conflict regarding hours of operation.*

Plaintiffs claim that the zoning rule requiring Winery-Chateaus to cease operations by 9:30 p.m. daily (Section 8.7.3(10)(u)(5)(b)) conflicts with MCL 436.2114 and MLCC Rule 436.1403(1), which both prohibit liquor sales between 2 a.m. and 7 a.m. This claim also fails.

Plaintiffs mischaracterize the state provision as allowing alcohol sales until 2.a.m. (ECF No. 28, PageID.1080.) The plain language in both the statute and rule does not allow wineries to stay open until 2 a.m.; it prohibits liquor sales between 2 a.m. and 7 a.m. By requiring guest activities (including wine sales) to end by 9:30 p.m., the zoning ordinance does not prohibit what state law allows. The ordinance goes further than the state; it adds to and complements the state limits without contradiction, which is permissible. *Deruiter*, 505 Mich. at 146 (citing with approval *Miller*, 366 Mich. at 255-57, for upholding local ordinance prohibited powerboat racing and water skiing between 4:00 p.m. and 10:00 a.m. where state law prohibited similar activities "during the period 1 hour after sunset to 1 hour prior to sunrise."). A zoning rule allowing wineries to serve alcohol until 3 a.m. would permit what state law prohibits, thus contradicting state law. That is not this case.

Plaintiffs rely on three cases to support their position that the zoning hours rule conflicts with the state hours rule, but none are persuasive. (ECF No. 3, PageID.471-475; ECF No. 54, PageID.2291-2294.) In *Noey v Saginaw*, 271 Mich 595, 261 N.W. 88 (1935), the Court considered the state Rule 436.1401 and a Saginaw ordinance that required places licensed to sell liquor for on-site consumption to close between midnight and 7 a.m. The question was "whether the regulation of the commission, which intervened, or the city ordinance is controlling." *Id.* at 597. *Noey* held that complete control and regulation of liquor traffic was vested in the Commission and that Saginaw lacked any specific statutory or charter power to adopt its ordinance. The Court found the legislative act creating the Commission (Section 52 of Act No. 8 of 1933) explicitly repealed the Saginaw ordinance by providing as follows: "All other acts and parts of acts, general, special or local, and all ordinances and parts of ordinances inconsistent with or contrary to the provisions of this act *are hereby repealed*." *Id.* at 599 (emphasis added). However, the Michigan legislature

subsequently repealed that local ordinance repeal language. The Michigan Supreme Court explained in *Mutchall v. Kalamazoo* that "[t]he act [Act 8 of 1933] was amended so as to meet the objections raised in *Noey* [], so *as to permit local authorities to control the closing time of licensed establishments*." 323 Mich. 215, 223; 35 N.W.2d 245 (1948) (emphasis added). The MLCC no longer repeals local ordinances. Since *Noey,* Michigan courts confirm that local municipalities may regulate alongside the Liquor Control Commission, so long as the regulations are not contradictory. *Jott,* 224 Mich. App. at 541-43 ("this grant of authority [to MLCC] does not preclude local communities from controlling alcoholic beverage traffic within their boundaries in the proper exercise of their police powers"). Given *Noey's* broad holding, subsequent Michigan courts recognize *Noey* as instructive on <u>field</u> preemption, which Plaintiffs do not claim. *See People v. Llewellyn*, 401 Mich. 314, 323-324; 257 N.W.2d 902 (1977); *Rental Prop. Owners Ass'n v. Grand Rapids*, 455 Mich 246, 257; 566 N.W.2d 514 (1997); *but see Maple BPA,* 302 Mich. App. at 513 (treating *Noey* as a conflict case, and holding MLCC does not field-preempt local zoning).

Plaintiffs' reliance on *Noey* is misplaced for additional reasons. Unlike in *Noey* where the Court found no specific statutory power authorizing the Saginaw ordinance, the Peninsula rule is a zoning ordinance authorized by the MZEA, which vests townships with broad zoning authority. MCL 125.3201. The Saginaw ordinance prohibited late-hour intoxicating liquor sales for onsite consumption citywide; the Peninsula rule limits wineries' activities late at night in the agricultural district, whether wine tasting or a local non-profit board meeting. *See Jott*, 224 Mich. App. at 527.

Plaintiffs also rely on *RSWW Inc. v. Keego Harbor,* 397 F3d 427 (6th Cir. 2005). In that case, an existing brew-pub sought a variance and site plan amendment and permission to change the name on its sign, and the city refused unless the brew-pub agreed to close earlier than 2 a.m. The brew-pub sued the city alleging a violation of the unconstitutional conditions doctrine, which

the district court dismissed for lack of subject matter jurisdiction. *Id* at 432. In evaluating whether the brew-pub had a property interest at stake, the Court noted that Rule 436.1403 (quoted above) does not "on its face" grant licensees the right to remain open *until* 2:00 a.m, "but merely provides that licensees cannot sell liquor *after* 2:00 a.m." *Id.* at 435 (emphasis in original). Even so, the Court noted that the *Noey* court determined "that a Michigan city ordinance cannot fix closing hours to a period shorter than that specified in the state rule." *Id.* (citing *Noey*, 271 Mich. 595). For purposes of the whether the brew-pub asserted a federal claim, the Sixth Circuit concluded "there is a written regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit." *Id.* at 435-36. The Sixth Circuit decided the brew-pub at least raised a constitutional question within the district court jurisdiction regarding whether it had property interest in remaining open until 2 a.m. *Id.* at 436

 *RSWW* does not help Plaintiffs' claim. That case did not consider whether a zoning ordinance that sets the operational hours for activities located in a zoning district, including activities by liquor licensees, conflicts with the MLCC. The city in *RSWW* was not attempting to apply or enforce a zoning ordinance provision. Rather, the city refused to grant other zoning and administrative approvals and permits related to the brew-pub's sign in an effort to compel the brew-pub to close earlier than 2 a.m. The Sixth Circuit did not discuss conflict or preemption at all. Nor did the court recognize that the legislature changed the MLCC after *Noey* "so as to permit local authorities to control the closing time of licensed establishments." *Mutchall*, 323 Mich. at 223. For decades, the Peninsula Township zoning ordinance has established operational hours for wineries in the agricultural district. These provisions have been incorporated into SUPs, and Plaintiffs have operated under them for many years. (ECF No. 29, PageID.1095-1096, 1103-1101.) Plaintiffs do not nor could they assert any property interest in remaining open until 2 a.m., and the

Township is not seeking concessions from the wineries to comply with the zoning ordinance or the wineries' special use permits. *RSWW* does not help Plaintiffs' claim.

Plaintiffs' reliance on *Sherman Bowling Center v. Roosevelt Park*, 154 Mich. App. 576, 397 N.W.2d 839 (1987) is also misplaced. This case involved an ordinance adopted under the township's general police power, which regulated outdoor and dancing events, with additional restrictions applicable to MLCC-license holders. *Id* at 580-81. The court found no conflict preemption but concluded the ordinance was field-preempted because "it regulates alcoholic beverage traffic and no state statute authorizes the city to control alcoholic beverage traffic in the manner which is attempted in the ordinance." *Id.* at 581-82. The ordinance specifically tied its restrictions to alcohol sales, which is the exclusive authority of the Liquor Control Commission. *Id.* at 583. The court distinguished the ordinance in that case, where events and hours were regulated only *because* they sold alcohol, from an ordinance that regulated activities that applied generally, including to alcohol sales:

> It is the MLCC and not an individual city which is given the authority to determine whether an establishment which operates a special outdoor event providing entertainment can or cannot sell alcoholic beverages. On the other hand, cities may, pursuant to their police power, regulate various activities. However, cities cannot use liquor sales as a determinant of when or where another type of activity can take place. *A law which uses liquor sales as a determinant regulates when and where liquor sales can take place.* We do not wish to imply that cities may not regulate the number of outdoor events which can be held or the hours of such outdoor events. Nor do we wish to imply that cities may not regulate the hours within which outdoor entertainment can take place. Provided that they are otherwise valid, general regulations in this regard which are not tied to the sales of alcoholic beverages are not preempted by the authority granted to the MLCC.

*Id.* at 583 (emphasis added).

The winery provisions here are the type that *Sherman Bowling* indicates are proper. The hours of operation rule prevent late night hours for *all* Guest Activities at all Winery Chateaus in

the agricultural district, including meetings, classes, seminars, and conferences, regardless of whether wine is served. PTZO § 8.7.3(10)(u)(5)(b). The rule does not regulate alcohol sales or impose additional requirements on the sale of alcohol. Instead, it attempts to limit the adverse impacts of commercial operations on adjoining land uses and to maintain consistency with other permitted activities in the agricultural district. Moreover, the winery rule is a zoning ordinance authorized by the MZEA, unlike the ordinance in *Sherman Bowling*. *Maple BPA*, 302 Mich App. at 512 ("We conclude that *Sherman Bowling Ctr* is distinguishable because it did not involve a *zoning* ordinance and the Court in that case could not locate authority by which the state recognized local control of the area in question.") (emphasis in original).

### 3.   Plaintiffs claim that the winery rules violate the MZEA fails as a matter of law.

The Court should dismiss Plaintiffs claim that the township zoning provisions applicable to wineries in the agricultural district "do not promote the public health, safety and welfare" and therefore exceed the Township's authority under the MZEA. (ECF No. 29, PageID.1127.) Michigan townships have statutory authority to enact and enforce zoning ordinances for the orderly planning of their communities. MCL 125.3101 *et seq*. The MZEA provides:

> A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, *to ensure that use of the land is situated in appropriate locations and relationships*, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare.

MCL 125.3201(1) (emphasis added).

Michigan law also permits townships to regulate special uses within districts by establishing the standards or conditions upon which such uses may be allowed. *Reilly v. Marion*, 113 Mich. App. 584, 587; 317 NW2d 693 (1982). Special land uses are only allowed under specific conditions. *Id.* (citation omitted). The MZEA provides broad authority to a township to define the scope of permissible special use standards:

> The standards shall be consistent with and promote the intent and purpose of the zoning ordinance and shall insure that the land use or activity authorized *shall be compatible with adjacent uses of land, the natural environment, and the capacities of public services and facilities affected by the land use*. The standards shall also insure that the land use or activity is consistent with the public health, safety, and welfare of the local unit of government.

MCL 125.3504(2) (emphasis added).

Through MCL 125.3201, the Legislature has empowered local governments to zone for the broad purposes identified in that statute. *Kyser v. Kasson Twp*, 486 Mich 514, 520; 786 NW2d 543 (2010). The status and force of township zoning authority is enhanced by the Michigan constitution, which specifically states that the grant of authority to local governments must "be liberally construed in their favor." Const. 1963, Art 7, § 34; *Burt Twp v Dep't of Nat. Resources*, 459 Mich. 659, 666; 593 N.W.2d 534 (1999). Zoning ordinances are presumed valid. *Kirk v. Tyronee*, 398 Mich. 429, 439; 247 N.W.2d 848 (1976) (citing *Kropf*, 391 Mich. at 158). A zoning ordinance may be invalid if there is no reasonable governmental interest being advanced by the zoning. *Id.* The municipality's policy and philosophical decisions reflected in its zoning ordinance "must be respected unless unconstitutional or contrary to law;" separation of powers precludes the judiciary from imposing "by judicial fiat its policy and philosophical decisions on another branch of government." *Adams Outdoor Advertising v. Holland*, 234 Mich. App. 681, 691-92; 600 N.W.2d 339 (1999), *aff'd,* 463 Mich. 675 (2001). A zoning ordinance may be invalid as violating

the MZEA if there is not a reasonable governmental interest advanced by the ordinance. *Id.* at 692. The burden of proof is on the party challenging the ordinance, not the defending municipality. *Id.* (citing *Kropf,* 391 Mich. at 162). The ordinance itself may establish its specific purpose. *Id.*

Under the broad grant of zoning authority, Michigan courts have found legitimate governmental interests in regulating through zoning such matters as traffic safety; aesthetics; avoiding overcrowding; preserving open space; prohibiting land application of septage; reducing alcohol-related death and injuries; establishing permissible noise levels; and protecting environmentally sensitive natural resources from developmental encroachment. *See Marras v. Livonia,* 575 F. Supp. 2d 807, 817 (E.D. Mich. 2008); *Conlin v Scio Twp.*, 262 Mich. App. 379, 394 (2004); *Fredricks v. Highland Twp.*, 228 Mich. App. 575, 594; 579 N.W.3d 441 (1998); *Norman Corp. v. E. Tawas*, 263 Mich. App. 194, 201 687 N.W.2d 861 (2004); *Adams Outdoor Advertising*, 234 Mich. App. at 692-93; *Houdek v. Centerville Twp.*, 276 Mich. App. 568, 584-85; 741 N.W.2d 587 (2007); *Maple BPA*, 302 Mich. at 519; *Rochester v. Superior Plastics, Inc.* 192 Mich. App. 273, 277; 480 NW2d 620 (1991).

Plaintiffs broadly challenge the Peninsula Township Zoning Ordinance chapters for Farm Processing Facility (use by right), and its Winery-Chateau and Remote Winery Tasting Room (special uses). (ECF No. 29, PageID.1092-1095, 1097-1102, 1108-1110.) The intent of the Farm Processing Facility provisions is as follows: "It is the intent of this subsection to promote a thriving local agricultural production industry and preservation of rural character by allowing construction and use of a Farm Processing Facility." PTZO § 6.7.2(19)(a). The intent of the Winery-Chateau provisions is as follows:

> It is the intent of this section to permit construction and use of a winery, guest rooms, and single family residences as a part of a single site subject to the provisions of this ordinance. *The developed site must maintain the agricultural environment, be harmonious with the character of the*

*surrounding land and uses, and shall not create undue traffic congestion, noise, or other conflict with the surrounding properties*.

PTZO §8.7.3(10)(a) (emphasis added). The intent of the Remote Winery Tasting Rooms is as follows: "It is the intent of this subsection to allow wine tasting in a tasting room that is not on the same property as the winery with which is [*sic*] associated and to establish reasonable standards for the use." PTZO § 8.7.3(12).

Plaintiffs have not cited caselaw supporting their "lack of authority" claim. There is no serious question that the three chapters are within the township's general zoning authority. They each seek to regulate to maintain land in agricultural uses, to preserve the relationship between non-agricultural commercial activities at wineries located in the agricultural district with impacts on nearby residential and agricultural uses, to address traffic, to preserve scenic vistas, and to address other community impacts associated with winery activities. Given the content of the ordinances, their presumed validity, the breadth of zoning authority under the MZEA, and Plaintiffs' unmet burden to prove otherwise, the Court should dismiss Plaintiffs' sweeping claim that the winery provisions exceed Township zoning authority.

## CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiffs' Count VIII (preemption) and IX (lack of authority), either for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

**CERTIFICATE OF COMPLIANCE UNDER LOCAL RULE 7.2(b)(ii)**
**FOR PROTECT THE PENINSULA'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS STATE LAW CLAIMS**

In accordance with W.D. Mich. LCivR 7.2(b)(ii), I certify as follows:

The brief in support of the Motion to Dismiss Plaintiffs State Law Claims filed by

Proposed Intervenor Protect the Peninsula, Inc. consists of 10,523 words, not including the

caption, table of contents, signature block, and exhibits. The name of the word processing

software that was used to generate the word count is *Microsoft Word*.

Date:   April 27, 2021          By: _____
                                     Tracy Jane Andrews (P67467)
                                     Attorney for PTP
                                     LAW OFFICE OF TRACY JANE ANDREWS, PLLC
                                     420 E. Front Street
                                     Traverse City, MI 49686
                                     (231) 946-0044
                                     tjandrews@envlaw.com