UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*,                 )
                        Plaintiffs,    )
                                       )        No. 1:20-cv-1008
-v-                                    )
                                       )        Honorable Paul L. Maloney
PENINSULA TOWNSHIP,                    )
                        Defendant,     )
                                       )
and                                    )
                                       )
PROTECT THE PENINSULA, INC.,           )
                        Intervenor-Defendant. )
_____)

## OPINION AND ORDER

On November 17, 2022, the Court heard oral argument on three pending motions in this case, filed by Intervenor-Defendant Protect the Peninsula, Inc. ("PTP"): (1) a motion to amend the Case Management Order ("CMO") (ECF No. 249); (2) a motion to dismiss the Wineries' state-law claims (ECF No. 250); and (3) a motion to set aside the June 3, 2022, summary judgment opinion and order (ECF No. 285). At the hearing, the Court indicated that it would deny the partial motion to dismiss, and it took the remaining two motions under advisement to prepare a written opinion. This opinion and order resolves all three motions. For the following reasons, the Court will deny the partial motion to dismiss, and grant in part the motion to amend the CMO and motion to set aside the summary judgment opinion and order.

## I.    PTP's Partial Motion to Dismiss

When the Sixth Circuit permitted PTP to intervene in this matter, it also opined that this Court should consider PTP's challenge to supplemental jurisdiction. *See Wineries of the Old Mission Peninsula v. Twp. of Peninsula, Ass'n*, 41 F.4th 767, 777 n.4 (6th Cir. 2022) [hereinafter "*WOMP Appeal I*"] ("Protect the Peninsula is free to raise its argument regarding supplemental jurisdiction to the district court"). PTP originally raised this argument in a motion to dismiss that the Court declined to consider after the Court denied PTP's motion to intervene (*see* ECF No. 108 at PageID.4172-73). However, now that PTP is a party in this matter, the Court will consider PTP's supplemental jurisdiction challenge, raised in a partial motion to dismiss.

PTP's partial motion to dismiss seeks to dismiss the Wineries' state-law claims: Count VIII (preemption) and Count IX (violations of the Michigan Zoning Enabling Act ("MZEA")). PTP moves to dismiss these claims under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction or should decline to exercise supplemental jurisdiction over these claims. The partial motion to dismiss also raises arguments under Rule 12(b)(6), but PTP has withdrawn those arguments, conceding that the Wineries' have stated a claim for the purpose of surviving a Rule 12(b)(6) motion to dismiss (*see* ECF No. 298).

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual

challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

First, PTP argues that the Court lacks subject matter jurisdiction over the Wineries' state-law claims because the state-law claims do not arise out of the same case or controversy as the constitutional claims. *See* 28 U.S.C. § 1367(a) (allowing district courts to exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). To have jurisdiction over state-law claims, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). However, "if considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Id.* To promote judicial economy, "if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002).

PTP asserts that the state-law claims and constitutional claims do not arise out of a common nucleus of operative facts because different factual inquiries support the state and federal claims. PTP argues that the state-law claims relate to questions regarding zoning, operational hours, amplified music, and restaurant/catering provisions (ECF No. 250 at PageID.8923). PTP then argues that, on the other hand, the federal claims relate to questions regarding advertisements, retail sales, local produce requirements, and gatherings (*Id.*). Essentially, PTP argues that the state-law and federal claims challenge different provisions of the Township Ordinances, which all impose totally distinct regulations over different things. As PTP stated at the motion hearing, when looking at the complaint as a whole, the preemption claims "stand alone."

In the Court's judgment, PTP's characterization of "common nucleus of operative facts" is far too narrow. Because the Wineries challenge the Township Ordinances as a whole—but each specific subsection for a different legal reason(s)—the Court finds that the state-law and federal constitutional claims arise out of a common nucleus of operative facts. Notably, the Wineries indicate that all of the subsections of the Township Ordinances they challenge under the preemption claim are also challenged for constitutional reasons as well (*see* ECF No. 263 at PageID.9446) (challenging § 8.7.3(10)(u)(5)(b) under preemption *and* because it is unconstitutionally vague; challenging § 8.7.3(10)(u)(5)(g) under preemption *and* because it is unconstitutionally vague and an unlawful restriction on commercial speech; challenging 8.7.3(10)(u)(5)(i) under preemption *and* because it is unconstitutionally vague). Finally, the Wineries request permanent injunctive relief for any subsection of the Township Ordinances that the Court finds unlawful—either because they are preempted or because

they are unconstitutional—which further supports the conclusion that all the Wineries' claims arise out of a common nucleus of operative facts. The Wineries' claims are all related, regardless of the legal theory that the Wineries utilize to challenge each specific subsection of the Township Ordinances. Therefore, the Court will abide by the default assumption that it shall exercise supplemental jurisdiction over all the related claims arising out of state law. *See Blakely*, 276 F.3d at 861.

Moreover, it would be grossly inefficient to force the Wineries to challenge certain subsections of the Township Ordinances in state court and challenge other subsections of the same scheme of Ordinances in federal court. To promote judicial economy and consistency among court orders, one court should adjudicate the entirety of the Wineries' claims. This Court is strikingly familiar with the facts and legal theories of this case, and the Court finds that it should retain this case in its totality to promote the consistent and expeditious adjudication of this case.

In sum, the state-law claims and the constitutional claims arise out of a common nucleus of operative facts, permitting the Court to exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

Second, PTP argues that even if the state-law and federal claims arise out of a common nucleus of operative facts, the Court should use its discretion under § 1367(c) and decline to exercise supplemental jurisdiction over the state-law claims. Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a claim if (1) it raises a novel or complex issue of State law, (2) it substantially predominates over the federal claims, (3) the district court dismissed all the federal claims, or (4) there are other

compelling reasons to decline jurisdiction. Further, district courts should consider judicial economy, convenience, and fairness to the litigants when determining whether to exercise supplemental jurisdiction: "if these are not present[,] a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726.

PTP argues that this Court should decline to exercise supplemental jurisdiction over the state-law claims for two reasons. First, PTP asserts that the state-law claims raise novel and complex issues of state law (ECF No. 250 at PageID.8925-30) (citing 28 U.S.C. § 1367(c)(1)). PTP asserts that the Wineries' state-law claims invoke liquor control and land use laws, which raise questions regarding a local township's zoning power, and are therefore issues more appropriate for a state court to adjudicate. *See, e.g., Roseland Inn, Inc. v. McClain*, 325 N.W.2d 551, 555 (Mich. Ct. App. 1982) (recognizing "a local community's broad power to control alcoholic beverage traffic in its area"); *see also, e.g., Ken-N.K. Inc. v. Vernon Twp.*, 18 F. App'x 319, 324 (6th Cir. 2001) (invoking abstention in favor of ongoing state proceedings because the state proceedings "implicate[d] an important state and local interest: the enforcement and application of zoning ordinances and land-use regulations"). PTP asserts that this Court would have to interpret local zoning ordinances to determine if they are preempted by Michigan state law, which is a question Michigan courts have not reached. Therefore, PTP argues that this Court should decline to exercise supplemental jurisdiction over this novel state-law issue.

In response, the Wineries argue that the preemption claim does not raise novel or complex issues of state law because "the Wineries ask the Court to apply well-established principles of conflict preemption under Michigan law" (ECF No. 263 at PageID.9442). The

Court agrees with the Wineries' characterization of the principles of conflict preemption. There exists a plethora of case law generally outlining the steps in a conflict preemption analysis, which the Court has already conducted in this very case (*see* ECF No.  162 at PageID.5987-93). Further, as for the MZEA state-law claim, the Wineries argue that the Township Ordinances violate the MZEA because they are unconstitutional or contrary to law, which is not a novel or complex issue of state law (ECF No. 263 at PageID.9442) (citing *Adams v. Outdoor Advert., Inc. v. City of Holland*, 600 N.W.2d 339, 344 (Mich. Ct. App. 1999), *aff'd*, 625 N.W.2d 377 (Mich. 2001)) (explaining that the MZEA does not give a municipality authority to enact ordinances that are "unconstitutional or contrary to law"). Again, the Court agrees with the Wineries. As the Court explained in its summary judgment opinion, the "MZEA claim rises and falls with [the] constitutional/preemption arguments" (ECF No. 162 at PageID.6028). Therefore, neither the preemption claim nor the MZEA claim is so novel and complex that the Court should decline to exercise jurisdiction over these state-law claims under § 1367(c)(1).

To add an additional wrinkle to the issue of whether the Court should exercise supplemental jurisdiction, the Township asserts that the state-law claims raise a different novel, complex issue of state law: whether damages are available if the Wineries prevail on their state-law claims (ECF No. 272 at PageID.9925). Notably, the Township has failed to object to the Court exercising supplemental jurisdiction over the state-law claims, meaning the Township has effectively waived such a challenge.[1] *See Lawless v. Steward Health Care*

---

[1] The Township did assert the argument that damages are not available for the Wineries' state-law claims in a motion in limine filed on July 11, 2022 (*see* ECF No. 189). Judge Kent denied that motion (ECF No. 226), and this Court affirmed Judge Kent's order after resolving the Township's objections to the order (ECF No. 284).

*Sys., LLC*, 894 F.3d 9, 20 (1st Cir. 2018) (affirming the district court's discretionary exercise of supplemental jurisdiction because the "parties never challenged the district court's continuing exercise of supplemental jurisdiction" and therefore "waived any such challenge"). Nevertheless, at this stage of the case, the Court is not inclined to dismiss the Wineries' state-law claims based on the Township's argument that the availability of damages for the state-law claims is a novel and complex issue of state law. On one hand, the Township argues that "the availability of money damages for Plaintiffs' state law claims has never been decided by a Michigan court" (ECF No. 272 at PageID.9925). Conversely, the Wineries argue that other circuits have permitted damages in preemption cases and that Michigan law allows for damages when an ordinance is declared unenforceable (ECF No. 213 at PageID.7834-36). Despite the seemingly lack of case law supporting either party's argument, the Court does not believe that this lack of case law is a sufficient reason to decline exercising jurisdiction over these claims. If this litigation reaches the point that the Court needs guidance from Michigan courts regarding the availability of damages for the Wineries' state-law claims, the Court is inclined to certify such a question to the Michigan Supreme Court. *See Sherwood v. Tenn. Valley Auth.*, 925 F. Supp. 2d 906, 916 (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449-50 (6th Cir. 2009)) (explaining that certifying an issue to a state supreme court "is appropriate 'when the question is new and state law is unsettled'").

Further, the second reason PTP argues this Court should decline to exercise supplemental jurisdiction under § 1367(c) is because the state-law claims predominate over the federal claims (ECF No. 250 at PageID.8931). The only support PTP presents for this

8

argument is a statement to *The Traverse City Ticker* from the Wineries' attorney, Mr. Joseph Infante, from February 19, 2021, following the issuance of the Court's opinion denying the Wineries' motion for a preliminary injunction (*Id.*). After the Court denied the Wineries' motion for a preliminary injunction, Mr. Infante apparently told *The Traverse City Ticker* that the preemption claims are the Wineries' "core claims" (*Id.*). Since Mr. Infante made this statement, this case has proceeded through discovery, which greatly affected the viability of many of the Wineries' claims. In the Court's judgment, Mr. Infante's single statement, from over a year and nine months ago, does not show that the Wineries' state-law claims predominate over the federal claims. As the Wineries point out, they have raised only two state-law claims, compared to the seven federal constitutional claims (ECF No. 263 at PageID.9445). Therefore, the Wineries' state-law claims do not "substantially predominate" over the federal claims within the meaning of § 1367(c)(2).

In sum, because the state-law and federal claims arise out of a common nucleus of operative facts, and because the state-law claims do not raise novel, complex issues of state law, nor do they substantially predominate over the federal claims, the Court will, in its discretion, exercise supplemental jurisdiction over the state-law claims. Further, after considering judicial economy, convenience, and fairness to the litigants, the Court finds that the most efficient avenue to resolve this case is for this Court to adjudicate the Wineries' state-law claims. Therefore, the Court will deny PTP's motion to dismiss the Wineries' state-law claims under Rule 12(b)(1).

## II.     PTP's Motion to Set Aside the Summary Judgment Opinion and Order

On June 3, 2022, this Court issued an opinion finding many sections of the Township Ordinances to be preempted, unconstitutional, or otherwise contrary to law (ECF No. 162). The Court issued an injunction on July 19, 2022 (ECF No. 206), prohibiting the Township from enforcing the sections of the Township Ordinances that the Court held to be contrary to law in the June 3 summary judgment opinion and order ("the June 3 Order"). Following the Township's appeal of that injunction, the Sixth Circuit vacated the injunction, given the changed landscape of this matter and the fact that the June 3 Order issued before PTP was permitted to intervene. *See Wineries of the Old Mission Peninsula Ass'n v. Peninsula Twp.*, No. 22-1534 (6th Cir. Aug. 23, 2022) (ECF No. 251) [hereinafter "*WOMP Appeal II*"].

Based on the language in *WOMP Appeal II*, it is unquestionable that at least part of the June 3 Order (ECF No. 162) must be set aside. *See WOMP Appeal II*, No. 22-1534, at 8 ("PTP's intervention changes the landscape [of this case] and requires reconsideration of the district court's partial grant of summary judgment and issuance of an injunction"). Given this direction from the Sixth Circuit, PTP has moved to set aside the entire June 3 Order under Fed. R. Civ. P. 54(b) (ECF No. 285). It is undisputed that at least part of the June 3 Order must be set aside—the question for the Court is whether the entire Order, or whether only certain pieces of the Order, must be set aside.

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). This authority allows district courts "to afford such relief from [interlocutory orders] as justice

requires." *Citibank N.A. v. Fed. Deposit Ins. Corp.,* 857 F. Supp. 976, 981 (D.D.C.1994); *see also Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir.1981). Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Reich v. Hall Holding Co.,* 990 F. Supp. 955, 965 (N.D. Ohio 1998).

PTP argues that the entire June 3 Order must be set aside due to a controlling change in the law and because doing so would prevent manifest injustice to PTP. PTP's argument regarding a controlling change in the law is rooted in the two opinions and mandates issued by the Sixth Circuit in this case. *See WOMP Appeal I,* 41 F.4th at 767; *WOMP Appeal II,* No. 22-1534. Admittedly, the June 3 Order was issued before PTP became a party in this matter and before both Sixth Circuit opinions and mandates issued. While the landscape of this litigation has certainly changed after PTP's intervention, it does not necessarily follow that "a change of controlling law" has occurred. *See Petition of U.S. Steep Corp.,* 479 F.2d 489, 494 (6th Cir. 1973) (equating a change in controlling authority to "a subsequent contrary view of the law"). Neither opinion issued by the Sixth Circuit in this matter constitutes a "subsequent contrary view of law" with respect to any of the issues analyzed in the June 3 Order. Following PTP's intervention, the Sixth Circuit questioned the merits of the June 3 Order, given that the Wineries were granted summary judgment on many issues due to the Township's waivers, concessions, and defaults. *See WOMP Appeal II,* No. 22-1534, at 4. Yet, the Sixth Circuit did not create a new rule of law that necessarily requires the Court to

11

set aside the entirety of the June 3 Order. Rather, it indirectly directed the Court to reconsider certain conclusions in the June 3 Order after hearing PTP's defenses.

On the other hand, the Court agrees that PTP would face a manifest injustice if the entirety of the June 3 Order remained effective without giving PTP the opportunity to raise defenses to the Wineries' claims that implicate PTP's interests. At the outset, the Sixth Circuit permitted PTP to intervene in this matter based on "the effects that this litigation will have on [PTP members'] properties" and because "these members are primarily concerned with safeguarding their land values, ensuring the quiet enjoyment of their homes, and preserving the viability of their farms." *WOMP Appeal I*, 41 F.4th at 775. And because the Township could not adequately represent these interests, the Sixth Circuit permitted PTP to intervene to protect its members' property interests. *See id.* at 775. The Sixth Circuit then remanded the matter "for further proceedings in accord with this opinion." *Id.* at 777. Based on the language of the opinion and mandate, PTP has an interest in the Wineries' claims that affect their property interests. *See United States v. Campbell*, 168 F.3d 263, 266-67 (6th Cir. 1999) (explaining how district courts should interpret appellate court mandates). Therefore, PTP may defend against the Wineries' claims that could potentially affect PTP members' property interests. And because the June 3 Order analyzes such claims, the analyses and conclusions in the June 3 Order regarding such claims must be set aside.

Moreover, in *WOMP Appeal II*, the Sixth Circuit expressed a specific concern with the conclusions in the June 3 Order that were "based not on the merits of the legal arguments, but on the Township's waivers, defaults, and/or concessions . . . on various of the Wineries' claims." *WOMP Appeal II*, No. 22-1534, at 4. This language is explicit: the June 3 Order

must also be set aside with respect to the claims that the Wineries were granted summary judgment on based on the Township's failure to defend.

In sum, in compliance with the direction from the Sixth Circuit, the Court will not set aside the entirety of the June 3 Order. Instead, the portions of the June 3 Order that (1) grant summary judgment to either party on claims affecting PTP members' property interests, and (2) grant summary judgment to the Wineries on the claims that the Township failed to defend, will be set aside. However, even if a portion of the June 3 Order fits under these two categories, but PTP's intervention would not have affected how the Court concluded on that particular issue, then such a portion of the Order will not be set aside.[2]

Given this direction, the Court is now tasked with picking apart the June 3 Order and determining exactly which portions will be set aside, and which portions will remain intact. The Court finds that the following sections of the June 3 Order must be set aside, due to the claims discussed in these sections affecting PTP members' property interests:

1. Section IV: the entirety of the analysis on preemption (PageID.5985-95);

2. Subsection V.A.4: the analysis regarding prior restraints (PageID.6010-14);

3. Subsection V.A.7: the analysis regarding weddings & hours of operation (PageID.6019-21);

4. Subsection V.B.9: the analysis regarding the MZEA (PageID.6027-28);

5. Subsection V.B.10: the analysis regarding injunctive relief (PageID.6028-29).

---

[2] Unless the Court explicitly indicates otherwise, the analysis in the June 3 Order regarding the Township's constitutional motion for summary judgment will not be set aside. The Court acknowledges that the Township has its own motion for relief from the June 3 Order pending—which the Court intends to deny—that the Court will thoroughly discuss in a separate opinion. As a preview, the Township had its opportunity to fully defend against the Wineries' constitutional claims, and it essentially failed to do so. The Township does not get a second bite at the apple via the reconsideration of its motion for summary judgment simply because PTP has been permitted to intervene in this matter.

Further, the following sections of the June 3 Order must be set aside, due to the Township's failure to defend against the claims discussed in these sections:

1. Subsection V.A.2: the analysis regarding commercial speech (PageID.6001-08);

2. Subsection V.A.5: the analysis regarding compelling speech (PageID.6014-16).

For clarity's sake, the Court is _not_ setting aside Subsection V.A.3 (content-based restrictions; PageID.6008-10), Subsection V.B.1 (laches; PageID.6021-23); Subsection V.B.5 (freedom of association/freedom of religion; PageID.6024); and Subsection V.B.8 (regulatory taking; PageID.6025-27) because no party received summary judgment on these claims, and thus, these issues are still ripe for trial. The Court also will _not_ set aside Subsection V.A.1 (dormant Commerce Clause; PageID.5995-6001) because this claim does not affect PTP members' property interests, nor was summary judgment granted to the Wineries on this claim due to the Township's failure to defend. Finally, the Court will _not_ set aside Subsection V.A.6 (vagueness/due process; PageID.6016-19) because although this claim may implicate PTP members' property interests, PTP's intervention does not change the Wineries' entitlement to summary judgment on this issue. Looking at the Township Ordinances on their face, the term "Guest Activity Use" is vague, and it is unconstitutional for the reasons that the Court has previously articulated, regardless of whether PTP is a party in this matter and had the opportunity to defend against this claim (_see_ ECF No. 211 at PageID.7812-13).

Although a large percentage of the June 3 Order will be set aside, the Court is not suggesting that PTP may participate in defending against all these claims. There are certain issues that PTP possesses such an attenuated interest in (if any interest at all), in which the

14

Court is not inclined to automatically permit PTP to defend against simply because the corresponding portion of the June 3 Order has been set aside. Which issues PTP will be permitted to defend against is discussed in the following section.

Therefore, in accordance with the discussion above, the Court will grant in part PTP's motion to set aside the June 3 Order.

### III.   PTP's Motion to Amend the Case Management Order

Shortly after PTP was permitted to intervene in this matter, and while trial was still scheduled to commence in August 2022, PTP filed a motion to amend the CMO (ECF Nos. 229, 249). Considering all the dates in the current CMO (ECF No. 72) have now passed without PTP participating in discovery or meaningful motion practice, the CMO must be amended. The dates in the amended CMO will depend largely on how much discovery PTP needs to take.

To determine to what extent the CMO must be amended, the Court ordered all the parties to file a supplemental brief addressing what role they wish PTP to play in this litigation (*see* ECF No. 246). Generally, each party proposed the following as to PTP's role in this case:

- **PTP:** allow PTP to participate as a full party; give PTP access to all discovery; allow PTP to pursue its own discovery, including taking depositions and identifying its own expert and lay witnesses; allow PTP to file a motion for summary judgment; allow PTP to respond to Plaintiffs' motion for summary judgment; allow PTP to participate in mediation and trial (*see* ECF No. 262).

- **Township:** allow PTP to participate as a full party; rewind this case to February 2021 and vacate/set aside everything that has happened since then; give PTP access to the full evidentiary record, including the Wineries' financial data; allow PTP to conduct its own discovery; permit the Township to participate in all future discovery (*see* ECF No. 270).

- **Wineries:** limit PTP's participation to only issues relevant to PTP; allow PTP to access most of the evidentiary record, excluding the Wineries' financial data; prohibit PTP from re-deposing witnesses that have already been deposed, unless the Magistrate Judge determines that the deposition would be non-duplicative; limit testimony from PTP witnesses regarding the history of the ordinances; allow PTP to disclose its land use planning and fruit production experts; prohibit the Township from changing its evidentiary record; prohibit the Township from re-filing its motions for summary judgment (*see* ECF No. 271).

The Court will not rewind this case back to February 2021. Even PTP has acknowledged that it does not wish "to go back to square one" (*see Transcript of August 8 Hearing*, ECF No. 239 at PageID.8684-85) (showing that PTP responded in the negative when the Court asked if PTP wanted "to go back to square one?"); (*see Township's Response Concurring with PTP's Motion to Amend the CMO*, ECF No. 233 at PageID.8480) ("PTP has not requested that this case start over or that the Court otherwise vacate the prior action thus far."). Considering the reason why PTP has been permitted to intervene in this matter and how its intervention requires this case to move forward, the Court will (1) allow PTP to conduct limited discovery; (2) permit PTP to file a motion for summary judgment, limited to the issues that it has an interest in, to which both the Wineries and the Township may respond; (3) permit the Wineries to file a new motion for summary judgment discussing any issue that is still live due to the setting aside of the June 3 Order; (4) permit the Township to file a new motion for summary judgment limited to the preemption claim; and (5) determine exactly which issues PTP has an interest in and consequently, which claims PTP may defend against.

### A. Issues PTP Has an Interest In

As the Court indicated above, although the Court will set aside much of the June 3 Order, PTP will not necessarily be permitted to defend against every claim that is ripe for trial, even if summary judgment on a specific claim has not been granted to the Wineries nor the Township. PTP seeks to participate in this case without limitations and defend against every one of the Wineries' claims (*see* ECF No. 262). It argues that because the Sixth Circuit placed no limitations on PTP's participation as a party, this Court should not do so either (*see id.* at PageID.9423). PTP cites several cases that it argues supports the conclusion that PTP now shares the same rights as the original parties. *See, e.g.*, *Ross v. Bernhard*, 396 U.S. 531, 541 n.15 (1970) ("[W]hen intervention is permitted generally, the intervenor has a right to a jury trial on any legal issues he presents") (citation omitted); *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993) ("We agree that '[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.'"). PTP therefore takes the broad position that it may participate in all issues in this matter, although it does not provide any argument as to how it has an interest in each specific claim or issue.

However, there exists a plethora of Supreme Court and Sixth Circuit case law holding that district courts may limit an intervenor's participation in a case to certain issues. *See, e.g.*, *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 963 n.1 (6th Cir. 2009) ("Federal courts have the authority to apply appropriate conditions or restrictions on an intervention as of right."); *Ross*, 396 U.S. at 541 n.1 ("[T]he right to intervene in some cases may be limited. . . ."); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987)

17

(Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party."); *see also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). The Wineries argue that PTP should only be permitted to defend against the claims PTP has an interest in (*see* ECF No. 271).

After the partial setting aside of the June 3 Order, the only claims that have been adjudicated are the dormant Commerce Clause claim and the vagueness/due process claim—every other claim is still live. Of the claims that are still live, PTP may participate in defending against these claims if it has an interest in the claim, or in other words, if the adjudication of the claim would affect PTP members' property interests. As explained above, the Sixth Circuit permitted PTP to intervene based on PTP members' concerns regarding "the effects this litigation will have on their properties," *WOMP Appeal I*, 41 F.4th at 775, and it found that the "property interests" of PTP's members satisfied the "substantial legal interest" requirement of intervention. *Id.* at 771. PTP's interests are summarized as "safeguarding [PTP members'] land values, ensuring the quiet enjoyment of their homes, and preserving the viability of their farms." *Id.* Therefore, only those claims that could affect PTP members' land values, quiet enjoyment of their properties, and the viability of their farms will be the claims that PTP may participate in.

Under this framework, the Court finds that PTP has an unquestionable interest in the following issues: preemption, prior restraints, weddings, hours of operation, freedom of

18

religion, regulatory taking, injunctive relief, MZEA, and laches. PTP will be permitted to pursue discovery, file motions, and generally participate in this case related to these issues.

On the other hand, PTP appears to have a very attenuated interest (if any interest at all) in the remaining issues: commercial speech, content-based restrictions, and compelling speech. If PTP wishes to defend against the claims related to these issues, PTP may file a brief, within twenty-eight days of the date of this order, showing that it has an interest in these three issues. If PTP files such a brief, the Wineries may respond within twenty-one days. The Court will then issue an order determining whether PTP may defend against the claims related to these three issues. After the Court determines whether PTP may participate in this case in regard to these three issues, or PTP's time for filing its brief expires, the parties will be ordered to confer to create a joint status report regarding a discovery plan, summary judgment motion briefing schedule, and tentative dates for an amended CMO.

### B. Limited Discovery

As the Court indicated at the motion hearing on November 17, PTP will be allowed to access the evidentiary record and discovery materials, excluding documents related to the Wineries' financial information. According to a certificate of service filed by the Wineries, the Wineries have served the entire discovery record in this matter, excluding financial disclosures, on PTP (ECF No. 299). At this stage in the litigation, the Court finds that permitting PTP to access the Wineries' financial documentation is inappropriate, given that PTP will not be responsible for the payment of damages in the event that the Wineries prevail. *See WOMP Appeal I*, 41 F.4th at 777 ("The Township faces the possibility of

damages. Protect the Peninsula's members do not."). If PTP wishes to access these documents during discovery, PTP may file an appropriate motion.

As for discovery that PTP seeks to pursue, such discovery will be limited to the issues that PTP has an interest in. That is, PTP may pursue discovery related to the nine issues that the Court indicated PTP has an interest in. And depending on the outcome of the Court's decision on the remaining three issues, PTP may be able to pursue discovery related to those issues. As the Court indicated in the previous subsection, after the Court explicitly determines the claims that PTP may defend against, the Court will order the parties to confer. After they confer and file a joint status report, the Court will issue an amended CMO.

Finally, in regard to the Township's role in discovery moving forward, the Township will merely play a reactive role. The Township may not initiate discovery. However, it can certainly respond to discovery requests and attend any depositions that PTP takes.

### C.  Motions for Summary Judgment

Following the close of discovery, PTP may file a motion for summary judgment, limited to the issues it has an interest in. The Wineries and the Township will be permitted to respond to this motion in accordance with Local Rule 7.2(c). The Wineries may also file a new motion for summary judgment, to which the Township and PTP may respond in accordance with the briefing schedule outlined in Local Rule 7.2(c). Lastly, although the Township will be permitted to file a motion for summary judgment regarding the preemption claim—because the entirety of the June 3 Order regarding preemption will be set aside—the Township will not be permitted to file a motion for summary judgment regarding any of the constitutional claims.

### IV.    Conclusion

In accordance with the opinion above,

**IT IS HEREBY ORDERED** that PTP's partial motion to dismiss (ECF No. 250) is **DENIED**.

**IT IS FURTHER ORDERED** that PTP's motion to set aside the summary judgment opinion and order (ECF No. 285) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that PTP's motion to amend the Case Management Order (ECF No. 249) is **GRANTED** in part. Within **twenty-eight days** of this order, PTP may file a brief articulating whether it has an interest in the commercial speech, content-based restrictions, and compelling speech issues. If PTP files such a brief, the Wineries may respond within **twenty-one days**. After the Court determines which claims PTP may defend against, the parties will be ordered to confer and provide a joint status report outlining what discovery PTP intends to conduct, as well as proposed dates for an amended Case Management Order. Following the Court's review of the joint status report, an amended Case Management Order will issue.

**IT IS SO ORDERED**.

Date:  December 2, 2022                            /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge