UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WINERIES OF THE OLD MISSION PENINSULA ASSOC (WOMP), a Michigan nonprofit corporation; BOWERS HARBOR VINEYARD & WINERY INC, a Michigan corporation; BRYS WINERY LC, a Michigan corporation; CHATEAU GRAND TRAVERSE LTD, a Michigan corporation; CHATEAU OPERATIONS LTD, a Michigan corporation; GRAPE HARBOR INC, a Michigan corporation; MONTAGUE DEVELOPMENT LLC, a Michigan limited liability company; OV THE FARM LLC; a Michigan limited liability company; TABONE VINEYARDS LLC, a Michigan limited liability company; TWO LADS LLC, a Michigan limited liability company; VILLA MARI LLC, a Michigan limited liability company; WINERY AT BLACK STAR FARMS LLC, a Michigan limited liability company, | |
|       Plaintiffs, | Case No. 1:20-cv-01008<br><br>HON. PAUL L. MALONEY<br>MAG. JUDGE RAY S. KENT<br><br>**PTP'S MOTION AND REVISED BRIEF FOR RECONSIDERATION OF TWO ASPECTS OF ORDER ECF 301** |
| v | |
| PENINSULA TOWNSHIP, a Michigan municipal corporation, | |
|       Defendant, | |
| and | |
| PROTECT THE PENINSULA, INC., | |
|       Intervenor-Defendant. | |

| | |
|---|---|
| Joseph M. Infante (P68719) | Gregory M. Meihn (P38939) |
| Christopher J. Gartman (P83286) | Matthew T. Wise (P76794) |
| *Miller, Canfield, Paddock* | *Gordon Rees Scully Mansukhani* |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 99 Monroe Ave., NW, Suite 1200 | 37000 Woodward Avenue, Suite 225 |
| Grand Rapids, MI 49503 | Bloomfield Hills, MI 48304 |
| (616) 776-6333 | (313) 756-6428 |
| infante@millercanfield.com | gmeihn@grsm.com |
| gartman@millercanfield.com | mwise@grsm.com |
| | |
| Timothy A. Diemer (P65084) | William K. Fahey (P27745) |
| Eric P. Conn (P64500) | John S. Brennan (P55431) |
| *Jacobs and Diemer, P.C.* | Christopher S. Patterson (P74350) |
| Of Counsel for Defendant | *Fahey Schultz Burzych Rhodes PLC* |
| The Guardian Building | Co-Counsel for Defendant |
| 500 Griswold Street, Suite 2825 | 4151 Okemos Road |
| Detroit, MI 48226 | Okemos, MI 48864 |
| (313) 965-1900 | (517) 381-0100 |
| tad@jacobsdiemer.com | wfahey@fsbrlaw.com |
| econn@jacobsdiemer.com | jbrennan@fsbrlaw.com |
| | cpatterson@fsbrlaw.com |
| | |
| Tracy Jane Andrews (P67467) | Holly L. Hillyer (P85318) |
| *Law Office of Tracy Jane Andrews, PLLC* | *Olson, Bzdok & Howard, P.C.* |
| Attorneys for Intervener | Co-Counsel for Intervener |
| 420 East Front Street | 420 East Front Street |
| Traverse City, MI 49686 | Traverse City, MI 49686 |
| (231) 946-0044 | (231) 946-0044 |
| tjandrews@envlaw.com | holly@envlaw.com |

**PROTECT THE PENINSULA'S MOTION AND REVISED BRIEF FOR RECONSIDERATION OF TWO ASPECTS OF ORDER ECF 301**

## PROTECT THE PENINSULA'S MOTION FOR RECONSIDERATION OF TWO ASPECTS OF ORDER ECF 301

In its Order issued December 2, 2022 ("December Order"), this Court addressed three motions filed by Protect the Peninsula, Inc (PTP) – one to dismiss state claims, one to amend the case management order, and one to vacate the June 3, 2022 summary judgment order ("June Order"). (ECF 301) Among other conclusions in the December Order, the Court decided it would not vacate parts of its June Order addressing the dormant Commerce Clause and whether "Guest Activity Use" is unconstitutionally vague. (ECF 301, PageID.10698) The result appears to prevent PTP from advocating through briefing and trial on these claims. PTP respectfully moves, under Fed. R. Civ. P. 54(b),[1] the common law, and LCivR 7.4, for reconsideration of the decisions to not set aside the Commerce Clause and vagueness sections of the June Order. These claims impact PTP members' property interests, Township advocacy was inadequate, and PTP engagement would materially alter their outcome.

PTP files a revised brief in support of this motion following the Court's January 4, 2022 denial of PTP's previous motion seeking permission to exceed the word count limit. This brief meets the word count limit and attempts to follow the guidance in the Court's January 4 Order. (ECF 307, PageID.11197) To the extent there was ambiguity in PTP's original brief, PTP clarifies that this motion seeks reconsideration of the part of the December Order (ECF 301) addressing the Commerce Clause and vagueness claims and thus shows palpable defects in that part of the December Order. While this motion indirectly implicates two parts of the June Order, this is a motion for reconsideration of the December Order, not the June Order.

---

[1] Rule 59(a) or Rule 60(b)(5) or (6) might also be appropriate.

iii

**TABLE OF CONTENTS**

I.    LEGAL STANDARD ................................................................................................ 1

II.   ARGUMENT.............................................................................................................. 2

   A.   The Court Erred in Determining the Commerce Clause Claim Does Not Affect PTP Members' Property Interests. ................................................................................................ 2

   B.   The Court Erred in Determining Summary Judgment was Granted to the Wineries Not Due to the Township's Failure to Defend the Commerce Clause Claims........................... 4

   C.   The Court Erred in Concluding the Term "Guest Activity Use" is Vague................... 7

   D.   The Court Erred in Preventing PTP From Defending Two Claims............................ 11

III.  CONCLUSION ....................................................................................................... 14

**REVISED BRIEF IN SUPPORT**

I.  **LEGAL STANDARD**

District courts may revisit non-final rulings under common law and Fed. R. Civ. P. 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. 2004); *Hewitt v. McCrary*, 387 F.Supp.3d 761, 773 (E.D. Mich. 2019). This may be justified, *inter alia*, (1) when new evidence is available, (2) to correct clear error, or (3) to prevent manifest injustice. *Rodriguez*, 89 Fed.Appx. at 959 (citation omitted). Western District rules provide for a reconsideration motion that (1) does not present the same issues ruled upon by the court, (2) demonstrates palpable defect, and (3) shows a different disposition of the case may result from correction. W. D. Mich. LCivR 7.4(a).

PTP has not previously briefed its members' property interests in the zoning provisions challenged under Commerce Clause and vagueness theories, nor the evidence and arguments that resulted in the June Order. The Sixth Circuit granted PTP intervention by right to defend the validity of challenged zoning; Plaintiffs never argued and the circuit court never suggested PTP intervention should be limited by claims. (ECF 215) In response to PTP's motion to amend the case management order and delay trial, the Wineries resisted delay but never dissected their claims according to PTP interests or otherwise. (ECF 229, 234) The Court ordered PTP to reply to the Wineries' response and address "the role it intends to play in this litigation." (ECF 246) In that reply, PTP maintained that its timely intervention by right entitles PTP to defend the validity of challenged zoning. (ECF 262) In sur-reply, the Wineries argued PTP has nothing to add on vagueness, the Commerce Clause, and other claims. (ECF 271, PageID.9755-57) PTP then moved to set aside the June Order based on the Sixth Circuit's August 23, 2022 order vacating the Court's injunction and requiring reconsideration of the June Order. (ECF 285) The Wineries opposed

1

vacating all but three sections. (ECF 294)

In the December Order, the Court retained the Commerce Clause part of the June Order, reasoning that it does not affect PTP members' property interests and summary judgment was not granted for lack of Township defense, and the vagueness analysis because PTP cannot change its conclusion that "Guest Activity Use" is vague. (ECF 301, PageID.10698) Not setting aside these parts of the June Order means finality in this Court that the ten Peninsula Township Zoning Ordinance[2] (ZO) provisions challenged under these two theories are unconstitutional and invalid. (ECF 162, PageID.5995-6001, 6016-19)

This motion is not repeating the same issues already ruled on. PTP demonstrates palpable defects in the conclusions that it lacks interest in and/or cannot meaningfully contribute on the Commerce Clause and vagueness analyses, and shows a different disposition may result from correction.

**II.     ARGUMENT**

**A. The Court Erred in Determining the Commerce Clause Claim Does Not Affect PTP Members' Property Interests.**

The Wineries claim aspects of zoning that "mandate … [the] purchase [of] local grapes" violate the Commerce Clause. (ECF 136, PageID.4723) While the June Order focused principally on the 85% local grape provisions, it invalidated nine zoning provisions, including sections and subsections without grape source limits. (ECF 162, PageID.5996-6001) For 2 Farm Processors, the Court invalidated requirements that the majority (≥51%) of grapes processed must be grown by that processor and 85% on the peninsula. (ECF 162, PageID.5995 n. 16) For eight Chateaus,

---

[2] A version of the Zoning Ordinance is at ECF 1-1. It excludes amendments since August 2009. https://www.peninsulatownship.com/ordinance.html

2

the Court invalidated zoning sections limiting wine sales and service, food service, and the number Guest Activity Use participants. (*Id.*)

The Court erred in at least three ways in concluding these claims do not affect PTP members' property interests. First, as discussed in **Part D** below, the Court erred in dissecting PTP's litigation role by claims resolved in the June Order, contrary to the Sixth Circuit mandates. Second, the Court erred in concluding PTP members lack property interests in the Commerce Clause claims before giving PTP a reasonable opportunity to demonstrate those interests.

Third, the Court erred because invalidating nine zoning provisions under the Commerce Clause unquestionably affects PTP members' property interests. Mark Nadolksi and Barbara Wunsch testified their interests are affected by the Farm Processing Facility local produce provisions. (**Ex 2,** Nadolski Aff. ¶¶ 11-15; **Ex 4,** Wunsch Aff. ¶¶ 17-18) Essentially, these provisions keep Farm Processors agricultural. The requirement to make and sell wine made from grapes where a majority were grown on-site and a portion may be grown by other peninsula farmers prevents Farm Processors from becoming heavy industrial facilities processing all imported fruit. Limiting Farm Processors from trucking in more or all grapes limits associated traffic disruptions to the peaceful use and enjoyment of PTP members' property, and their ability to efficiently move equipment among farms and harvested fruit off the peninsula for processing. Since most grapes processed at 2 Lads and Black Star originate on their farms or within the peninsula, fewer trucks traverse the single primary road onto the peninsula, which is already congested and limits access to PTP members' property. PTP members' property interests are directly impacted by activities on adjacent and nearby properties; requiring robust grape-growing as a condition of secondary tasting and retail appropriately limits the scope, intensity, frequency, and scale of non-agricultural industrial and commercial activities. But for the onsite and local

conditions, Farm Processors may expand non-agricultural activities by making and selling more wine, bringing additional visitors and commercial activity. Without grape source limits, Farm Processors are likely to become more intense and less compatible with adjacent and nearby residential and farming land uses, creating potential for nuisance and conflict, as well as deteriorating property values.

Provisions limiting wine sales and service, food service, and the number of participants for Chateau Guest Activity Uses also affect PTP members' property interests, as attested by Ms. Wunsch, John Jacobs, Scott Philips, and Michele Zebell. (**Ex 1**, Jacobs Aff. ¶¶ 17-18; **Ex 3,** Phillips Aff. ¶¶ 17-18; **Ex 4**, Wunsch Aff. ¶¶ 25-26; **Ex 5**, Zebell Aff. ¶¶ 16-17) While Chateaus may offer tasting room and overnight guest activities, Guest Activity Uses authorize additional activities, which the challenged provisions ensure retain an agricultural connection with limited external effects. Guest Activity Uses with unlimited food and beverage service and numbers of participants would likely draw more visitors, staff, deliveries, and commercial activities and cause Chateaus to function more like bars, restaurants, and commercial event centers than agricultural facilities. These activities threaten more traffic, noise, conflict, and commercialization far exceeding that associated with agricultural activities, wine tasting, and overnight accommodations for a few dozen people. Eliminating limits on the nature and scale of Guest Activity Uses impairs PTP members' property values, quality of life, farm operations, and use and enjoyment of property, as they testify.

    **B. The Court Erred in Determining Summary Judgment was Granted to the Wineries Not Due to the Township's Failure to Defend the Commerce Clause Claims.**

While the Court states it did not grant summary judgment to the Wineries on their Commerce Clause claims due to the "the Township's failure to defend" (ECF 301, PageID.10698),

4

it seemed to reach the opposite conclusion in rejecting the Township's motion to alter the June Order. There, the Court stated, "the present motion is the first time that the Township has argued that the *Pike* balancing test should apply to the dormant Commerce Clause analysis. This argument is therefore effectively waived." (ECF 211, PageID.7809) Whether the ordinance discriminates against interstate commerce and is *per se* invalid, or instead is valid unless its burdens on interstate commerce are "clearly excessive in relation to the putative local benefits," determines its odds of surviving a Commerce Clause challenge. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); *see Eastern Ky. Resources v. Fiscal Court*, 127 F.3d 532, 540 (6th Cir. 1997). The Court's recognition of the Township's failure to even invoke *Pike* as the applicable standard of review is reason enough to set aside the Commerce Clause part of the June Order. Given the Township's inadequate defense, it is palpable error and manifestly unjust to prohibit PTP from invoking *Pike* to defend against the Commerce Clause claims.

There are other failures in the Township's defense of the Commerce Clause claims that likely influenced the June Order, which should not bind PTP. The Township failed to address the threshold requirement for the Wineries to demonstrate that the challenged zoning both burdens the flow of interstate grape commerce <u>and</u> benefits local grape farmers. *Eastern Ky.,* 127 F.3d at 541; *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 372 (6th Cir. 2013). As here, however, an ordinance may distinguish between in- and out-of-peninsula grapes. *Eastern Ky*., 127 F.3d at 541. The Wineries failed to meet their burden and prove the existence of an interstate[3] grape market, and

---

[3] The Township never responded to the Wineries' assertion that a 1994 Michigan Department of Agriculture letter warned of the harms of an ordinance restricting out-of-township produce. (ECF 136, PageID.4726 n. 4, citing ECF-136-11). The letter, which predates all challenged zoning, urged the Township to develop land development strategies that support Old Mission Peninsula appellation. It recognized the "strong economic incentives for wineries worldwide to grow as many grapes as possible close to the winery," accessing nearby grapes only when needed. This suggests the wine grape market is particularly local and regional within the state – not *inter*state.

5

that the challenged provisions burden it. *See Wood Marine Service v. Harahan*, 858 F.2d 1061, 1065 (5th Cir 1988). And they failed to prove the ordinance benefits peninsula farmers. Peninsula zoning allows Farm Processors to grow all grapes they process, or grow 85% and purchase 15% from Leelanau or California; in either case, they buy <u>no</u> peninsula grapes.[4] And the ordinance allows peninsula winemakers to buy 100% of grapes from anywhere in the world, make wine in the Township, then distribute it worldwide as a Food Processor (ZO § 8.5), Chateau, Remote Tasting Room, or Commercial facility.

The Township also failed to effectively distinguish the Wineries' claims from cases challenging trade embargos, categorical commerce bans, and special privileges for instate entities. *See Dean Milk Co. v. Madison*, 340 U.S. 349, 350 (1951); *Fort Gratiot Sanitary Landfill, Inc., v. Mich. Dep't of Nat. Res.*, 504 U.S. 353, 355 (1992); *Granholm v. Heald,* 544 U.S. 460 (2005); *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003); *Alexis Bailly Vineyard, Inc., v. Harrington*, 482 F.Supp.3d 820 (2020). Unlike every one of those cases, this case involves land use zoning; unlike every one of those cases, this ordinance freely permits importing grapes into the Township. *See Wood Marine,* 858 F.2d. at 1065-66; *Guschke v City of Oklahoma City,* 763 F.2d 379, 384-85 (10th Cir. 1985); *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 34-36 (1st Cir. 2007); *Moskovic v. New Buffalo,* __ F. Supp.3d __; Case No. 1:21-cv-144 at *12-13 (W.D. Mich. Oct. 31, 2022) **(Ex 15)**.

PTP would assert other defenses the Township did not. For example, the June Order grants summary judgment to three Plaintiffs not subject to local produce provisions, thus lacking

---

[4] **Ex 6**, p. 3 ("premise [is] that 'if you grow it and process/package it, you can sell it.'").

standing.[5] (ECF 162, PageID.5995 n.16) The Township did not assert that the Commerce Clause claims expired for most Wineries. They accrued no later than when the Township authorized each Plaintiff to become a Farm Processor or Chateau, and expired three years later. *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986) (3-year limitations period); *Bannister v. Knox Cnty. Bd. of Educ.,* 49 F.4th 1000, 1008 (6th Cir. 2022) (Section 1983 claim presumptively accrues on first day plaintiff may sue, when they have "a complete and present cause of action") (citation omitted); *Brantley Cty. Dev. Partners v. Brantley Cty.,* 559 F. Supp.3d 1345, 1366 (S.D. Ga. 2021) (Commerce Clause claim accrued when zoning ordinance barring interstate waste imports was enacted; ongoing ill-effects were "consequences of a one-time constitutional violation")*;* *BNSF Ry. Co. v Cicero,* 592 F. Supp. 3d 716, 734 (N.D. Ill. 2022) (Commerce Clause injury occurred when challenged ordinance enacted); *Randy's Sanitation, Inc. v. Wright Cty.,* 65 F.Supp.2d 1017, 1022 (D.C. Minn. 1999) (claim accrued when challenged policy took effect).

Given the Township's inadequate defenses to the Commerce Clause claims, it is palpable error to retain that part of the June Order.

C. **The Court Erred in Concluding the Term "Guest Activity Use" is Vague.**

There are several palpable errors in the December Order decision to not vacate the vagueness part of the June Order. (ECF 301, PageID.10698) First, the December Order states that "[l]ooking at the Township Ordinances *on their face,* the term 'Guest Activity Use' is vague." (*Id.,* emphasis added) But the June Order vagueness analysis is based on depositions by Township witnesses Deeren, Hayward, and Manigold (ECF 162, PageID.6017-18), Plaintiffs' briefing and exhibits (ECF 162, PageID.6018), and assertions about "how *the Township* understands and

---

[5] Tabone operates as a Food Processing Plant. (ECF 32-2; **Ex 9)** Bonobo and Chateau Grand Traverse are Chateaus with SUPs that do not authorize Guest Activity Uses. (ECF No. 32-6, PageID.1767, 1770; **Ex 14**; **Ex 8**)

7

enforces the term." (ECF 162, PageID.6019, emphasis in original) It is error to maintain the June Order vagueness decision on the basis the ordinances are vague "on their face," when the Court found them vague based on evidence and briefing that PTP had no opportunity to counter.

Second, it is error to preemptively conclude that PTP's intervention would not change the outcome. (ECF 301, PageID.10698) PTP would effectively counter Plaintiffs' arguments and evidence, compelling a different result. As a threshold matter, Plaintiffs assert an improper facial challenge to zoning. Courts typically consider only as-applied rather than facial challenges to civil laws that do not interfere with constitutional rights, and subject them to less stringent review. *Belle Maer Harbor v. Harrison Twp.*, 170 F.3d 553, 557 (6th Cir. 1999); *Ass'n of Cleveland Fire Fighters v. Cleveland,* 502 F.3d 545, 551 (6th Cir. 2007); *Get Back Up, Inc. v. Detroit*, Case No. 11-13909F (E.D. Mich. July 1, 2013) ("A zoning ordinance is void for vagueness if it is so vague as to be no rule or standard at all.") (citations and quotations omitted) (**Ex 16**). The Township accepted without support this facial challenge subjecting Guest Activity Uses zoning to more stringent review, but that should not limit PTP.

Furthermore, neither Plaintiffs nor the Township discussed critical differences in ordinance provisions and SUPs addressing activities for guests, instead conflating *activities* for *guests* with the term "*Guest Activity Uses*." Some Wineries may host overnight guests, and activities for those guests, under Sections 8.7.10(m) and (r).[6] Some may host "Guest Activity Uses" under Section 8.7.10(u). Some host activities under other parts of the ordinance. It seems Chateau Grand Traverse's SUP does not permit Guest Activity Uses but does permit overnight guests, so "guest

---

[6] Sections (m) and (r), adopted in 1989 in the original Chateau ordinance, allow accessory facilities and activities for "registered guests only." The 1998 consent judgment declared these sections "mean[] guests that are registered to stay overnight." (ECF 31-11, PageID.1838) The Township later amended the ordinance to allow Guest Activity Uses. (**Ex 7**, pp. 5-6)

8

activities" at Chateau Grand Traverse are activities for overnight guests. (**Ex 8**) Bonobo's SUP authorizes it to host guest activities for non-overnight guests under Section 8.7.3(10)(m), not "Guest Activity Uses" under Section 8.7.3(10)(u). (ECF No. 32-6, PageID.1767, 1770; **Ex 14**) Hawthorne's SUP authorizes it to host "Guest Activity Uses" but not overnight guests. (ECF 32-10, PageID.1836) Until recently, Bowers Harbor was not a Chateau but hosted guest activities under its Special Open Space use SUP. (**Ex 11**)

While each Winery has different authorizations under different ordinance sections and SUP conditions, these are glossed over in depositions and briefing that the Court relied upon in finding "Guest Activity Uses" vague. (ECF 162, PageID.6017-19) These unaddressed differences explain Deeren's testimony that guest activities are limited to overnight guests, which appeared central to the Court's vagueness analysis. (ECF 162, Page ID.6017) In her job, as she testified, Deeren routinely evaluates winery requests to host an event or activity by consulting "their SUP" and the ordinance. (ECF 136-6, PageID.4812) But in her deposition, she was asked questions about "events," "activities," "guest activities" and "entertainment," without reference to zoning sections, SUPs, or individual wineries. (ECF 136-6) So, for example, she accurately testified as follows:

> Q.· ·Okay. So tell me what a guest activity is.
> A.· ·So a guest activity in a winery-chateau, if an SUP allows it, because we have some that do not allow it, they don't qualify for guest activities, which means that they have a room rental, and those guests are with the room rentals. So they're activities that are with the registered guest with the winery.
> Q. Okay. So a guest activity is limited to persons who are renting a lodging room --
> A. Correct.
> Q. -- at a winery?
> A. Correct.

(ECF 136-6, PageID.4812) This exchange does not show inconsistent interpretations of "Guest Activity Uses" because some Chateau SUPs do limit guest activities to overnight guests. (ECF

9

162, Page ID.6017; **Ex 8**) PTP would provide relevant context where the Wineries and Township have inexplicably failed to do so.

PTP would also put the deposition of former Supervisor Manigold into context. (ECF 162, PageID.6018) At no time in his long term in office did he have authority to interpret, apply, or enforce zoning ordinance provisions.[7] Consistent with the Michigan Zoning Enabling Act, the ordinance gives the Zoning Administrator full responsibility and authority over zoning, and none to the supervisor. MCL §§ 125.3501, 125.3502, 125.3503(4); ZO § 4.1.1, 4.1.2. Manigold was one of seven Township Board members who pass ordinances and approve SUPs, but he had no zoning authority. MCL § 125.3102(n). He is also a farmer, which has led to his recusal from SUP decisions. (**Ex 13**, pp. 3, 9) In deposition, he was asked not about the definition of Guest Activity Uses, but about Section 8.7.3(10)(u)(1)(b) and (d). (ECF 136-1, PageID.4773) When asked if 1(b) needs changing, he said, "I think personally we've gotta get rid of this whole ordinance and start a new one, my feeling." *Id.* Perhaps the Township was reluctant to argue its former Supervisor's feelings about "these ordinances" warrant little weight in this case, but PTP lacks such reservations. Given the Court's explicit reliance on Manigold's testimony in granting summary judgment to the Wineries on their vagueness claim, and PTP members' undeniable interest in zoning subject to this claim, it is error to maintain that part of the June Order without any opportunity for PTP to address his testimony.

PTP intervention alters the June Order vagueness analysis in additional ways. The Court relied on misleading briefing and quoted irrelevant exhibits to support its conclusion that "there appears to be clear confusion as to what constitutes a 'Guest Activity.'" (ECF 162, PageID.6018, discussing ECF 136, PageID.4750 and quoting ECF No. 136-23, PageID.4928) The cited and

---

[7] Deeren has full zoning responsibility. (ECF 136-6, PageID.4810, 4812-13)

10

quoted references address a 2017 compliance issue at Bowers Harbor. (ECF 136, PageID.4750, ECF-136-22, 136-23, 136-24, 136-25) At that time, Bowers Harbor operated under *Special Open Space uses* SUP #32 under Section 8.7.2(3), not a *Chateau* SUP under Section 8.7.3(10). (**Ex 11**) Rather than authorizing any "Guest Activity Uses" under Section 8.7.3(10)(u), Bowers Harbor's SUP #32 authorized exactly 2 events per week, capped at 20 per year, with unique event specifications.[8] (*Id.*, p. 2). The 2017 correspondence discussed in the Wineries' briefing and quoted in the June Order was interpreting "events" under SUP #32. (ECF 136-23; **Ex 10**) Bowers Harbor had challenges with SUP #32 starting in 2015 until mid-2019, when the Township approved SUP #132 authorizing Bowers Harbor to become a Chateau and host "Guest Activity Uses." (**Ex 12**; ECF 32-7, PageID.1782) Where the Wineries highlighted an inapplicable local land use quagmire to support their vagueness claim, the Township never refuted its relevance, and the Court erroneously relied on it to invalidate Guest Activity Uses, PTP should have the opportunity to set the record straight.

In sum, PTP intervention, and with it the opportunity to defend against the vagueness claim, is likely to alter the Court's previously articulated reasons for granting summary judgment on vagueness, and the Court's contrary conclusion is palpably erroneous.

### D. The Court Erred in Preventing PTP From Defending Two Claims.

The Court erred in retaining two parts of the June Order, thus preventing PTP from defending those claims after it intervened to defend the validity of zoning. The Court recognized the integral zoning framework, and the request for permanent injunction for any subsection found

---

[8] No more than 50 guests may attend events; events not to occur during specified business hours; events limited to 3 hours; events occur 6:30 pm - 9:30 pm. (**Ex 11**, p. 2)

unlawful, when it rejected PTP's jurisdiction motion. (ECF 301, PageID.10688, 10689) That integral framework and the effect of injunction is the foundation of PTP intervention – it is not discrete legal theories, but invalidation of zoning that threatens PTP members' interests. *WOMP v. Peninsula*, 41 F.4th 767, 772-73 (6th Cir. 2022) (*WOMP I*) ("this litigation, which will establish the validity or invalidity of the zoning ordinance, necessarily bears directly on the property interests Protect the Peninsula's members seek to preserve.") (quotation omitted). This litigation threatens PTP's ability to enforce zoning violations as nuisances *per se*. *WOMP I*, 41 F.4th at 773. PTP members might initiate enforcement directly with the Township, and violations result in suspension of retail and commercial privileges – the same privileges this litigation seeks to expand. ZO §§ 6.7.2(19)(b)(15), 8.7.3(10)(u)(8)(d). Categorically excluding PTP from defending claims effectively predetermines no PTP member would ever have standing to enforce the challenged zoning, which is unprecedented and unfair, and contrary to the Sixth Circuit intervention order. *U.S. v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (district courts must "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.").

Retaining two parts of the June Order and preventing PTP from defending against those claims also contravenes the Sixth Circuit order vacating the injunction. This Court recognized the Sixth Circuit vacated the injunction because PTP intervention changed the landscape. (ECF 301, PageID.10694) The Sixth Circuit vacated the whole injunction, not parts of it, and said PTP intervention "requires reconsideration of the district court's partial grant of summary judgment." (ECF 251, PageID.8982) While the Court found it undisputed that "at least part of the June 3 Order must be set aside," the Sixth Circuit mandate does not support reconsidering or setting aside only some parts while retaining other parts. The Sixth Circuit vacated the injunction because "PTP has

not *yet* been able to defend *the ordinances*;" it had "serious questions" about the merits of injunction based on an order resulting from the Township's defenses; and "the prejudice that PTP faces by not having been able to raise arguments against the injunction before the district court." (ECF 251, PageID.8978, emphasis added). PTP's primary and most powerful arguments against injunction require defending against the merits of each claim giving rise to injunction, including Commerce Clause and vagueness. The Sixth Circuit's mandate is meaningless as to the Commerce Clause and vagueness claims if the June Order analysis on those claims is preserved. *Id,* PageID.8982*; see also Sanguine Ltd. v. U.S. Dept. Interior*, 798 F.2d 389, 391 (10th Cir. 1986) (prior order resolving validity of challenged rule was necessarily set aside, else "what value is the right of intervention we held exists in this case?"). Given this clear, broad mandate, it is palpable error to retain intact two parts of the June Order invalidating ten zoning provisions based entirely on pre-PTP briefing.

While cases cited by the Court suggest an intervener's participation may be limited, none dissected claims by legal theories nor precluded a timely intervener by right from defending dubious legal claims. (ECF 301, PageID.10701-10702) *See Friends of Tims Ford v. Tenn. Valley Auth.*, 985 F.3d 955, 963 n.1 (6th Cir. 2009) (noting in passing that it was unclear whether interveners were limited to remedial stages of NEPA litigation, nor was the issue fully briefed for appeal); *Ross v. Bernhard*, 396 U.S. 531, 541 n.15 (1970) (case did not involve intervention, but court noted: "although the right to intervene may in some cases be limited, when intervention is permitted generally, the intervenor has a right to a jury trial on any legal issues he presents.") (citations omitted); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) (distinguishing permissive and by right intervention, rejecting interlocutory appeal of conditions imposed on permissive intervener because district court has

13

more discretion over permissive interveners, and recognizing potential abuse of discretion to impose severe participation restrictions on intervener by right).

### III.   CONCLUSION

The Sixth Circuit decided PTP members have substantial interests to intervene by right, and PTP provided testimony supporting its members' property interests in the subject challenged zoning sections. The Sixth Circuit ordered reconsideration of the merits of the June Order due to inadequate pre-intervention briefing, and PTP provided claim-specific arguments and evidence that the Commerce Clause and vagueness claims warrant further briefing. Preventing a timely intervener by right from defending dubious claims with profound impacts on their property interests is manifestly prejudicial and palpably erroneous. PTP respectfully requests the Court reconsider its decisions retaining the Commerce Clause and vagueness analyses in the December Order and permit PTP to defend against these claims henceforth.

Respectfully submitted,

Date:   January 9, 2023

By:   /s/ Tracy Jane Andrews
Tracy Jane Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
Attorneys for Intervener
420 East Front Street
Traverse City, MI 49686
(231) 946-0044
tjandrews@envlaw.com

Date:   January 9, 2023

By:   /s/ Holly L. Hillyer
Holly L. Hillyer (P85318)
Olson, Bzdok & Howard, P.C.
Co-Counsel for Intervener
420 East Front Street
Traverse City, MI 49686
(231) 946-0044
holly@envlaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)

This Brief complies with the word count limit of L. Ci. R. 7.3(b)(i). This brief was written using Microsoft Word version 2016 and has a word count of 4,243words.

Respectfully submitted,

Date:   January 9, 2023          By:   /s/ Tracy Andrews
                                       Tracy Jane Andrews (P67467)
                                       Law Office of Tracy Jane Andrews, PLLC
                                       Attorney for Intervener
                                       tjandrews@envlaw.com

Date:   January 9, 2023          By:   /s/ Holly L. Hillyer
                                       Holly L. Hillyer (P85318)
                                       Olson, Bzdok & Howard, P.C.
                                       Co-Counsel for Intervener
                                       holly@envlaw.com

## CERTIFICATE OF SERVICE

I, Tracy Jane Andrews, hereby certify that on the 9th day of January, 2023, I electronically filed the foregoing document with the ECF system which will send a notification of such to all parties of record.

By:   /s/ Tracy Jane Andrews
      Tracy Jane Andrews (P67467)