UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, *et al.*,       Plaintiffs,<br><br>-v-<br><br>PENINSULA TOWNSHIP,       Defendant,<br><br>and<br><br>PROTECT THE PENINSULA, INC.,       Intervenor-Defendant. | No. 1:20-cv-1008<br><br>Honorable Paul L. Maloney |

## ORDER REGARDING PTP'S INTERESTS AND DENYING PTP'S MOTION FOR RECONSIDERATION

As this Court and the Sixth Circuit have indicated, the intervention of Intervenor-Defendant Protect the Peninsula, Inc. ("PTP") has changed the landscape of this matter (*see* ECF No. 301 at PageID.106940); (*see also* No. 251 at PageID.8982) [hereinafter "*WOMP Appeal II*"]. In December 2022, this Court set aside much of the summary judgment opinion and order ("the June 3 Order") (ECF No. 162), which it issued prior to PTP's intervention (*see* ECF No. 301) [hereinafter "the December 2 Order"]. The Court held that "PTP would face a manifest injustice if the entirety of the June 3 Order remained effective without giving PTP the opportunity to raise defenses to the Wineries' claims that implicate PTP's interests" (*Id.* at PageID.10696). Following the setting aside of portions of the June 3 Order, of the claims that were ripe for trial, the Court found that, based on PTP members' property interests, PTP had an interest in the following issues: preemption, prior restraints, weddings,

hours of operation, freedom of religion, regulatory taking, injunctive relief, MZEA, and laches (*Id.* at PageID.10702-03). Thus, the Court held that it would permit PTP to generally participate in this case with respect to these issues. However, the Court also questioned whether PTP had an interest in three additional issues: commercial speech, content-based restrictions, and compelling speech (*Id.* at PageID.10703). It therefore gave PTP the opportunity to file a supplemental brief showing that it has an interest in these three issues, in accordance with the Sixth Circuit's rationale as to why it allowed PTP to intervene in this matter. PTP filed such a brief (ECF No. 304), and the Wineries filed a response (ECF No. 310). This order addresses those interests.

### A. PTP's Interests

The Court previously summarized PTP's interests in this litigation:

> [T]he Sixth Circuit permitted PTP to intervene based on PTP members' concerns regarding "the effects this litigation will have on their properties," *WOMP Appeal I*, 41 F.4th at 775,[1] and it found that the "property interests" of PTP's members satisfied the "substantial legal interest" requirement of intervention. *Id.* at 771. PTP's interests are summarized as "safeguarding [PTP members'] land values, ensuring the quiet enjoyment of their homes, and preserving the viability of their farms." *Id.* Therefore, only those claims that could affect PTP members' land values, quiet enjoyment of their properties, and the viability of their farms will be the claims that PTP may participate in.

(ECF No. 301 at PageID.10702). Based on this guidance from the Sixth Circuit, the Court questioned whether PTP had an interest in defending against the Wineries' claims regarding commercial speech, content-based restrictions, and compelling speech. These claims challenge sections of the Township Ordinances that restrict the sale of logo merchandise,

---

[1] *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767 (6th Cir. 2022).

2

restrict the square footage of retail space areas, prohibit weddings and gatherings, limit accessory uses, limit guest activity uses, restrict advertising and promotions, limit the sale of food and beverages, and require the use of certain promotional materials, among other provisions. In the December 2 Order, the Court opined that PTP appeared to have an "attenuated interest" in these claims, as they did not appear to affect PTP members' property interests (*see* ECF No. 301 at PageID.10703).

PTP's asserted interests in defending against these claims can be summarized as their interest in preventing increased traffic, noise, visitors, and activity near their property (ECF No. 304 at PageID.10853) ("If [the] invalidation [of ordinance sections regarding gatherings, retail space, and the sale of logo merchandise] leads to weddings and events for hire, or unlimited retail, or larger retail and processing spaces, then Farm Processing Facilities will become far more intense commercial land uses. Undoing limits on events, retail activity, and facility size will result in more visitors, more deliveries, earlier starts and later ends to the commercial day, and more."); (*Id.* at PageID.10854) ("Invalidation of [a provision regarding overnight guests] resulting in the removal of those limitations and the expansion of events at Winery-Chateaus would harm PTP's members by bringing more visitors, traffic, noise, and activity to the wineries for reasons other than to buy or taste wine, and during times activity levels at wineries would otherwise be low."); (*Id.* at 10854-55) ("Wineries may also become indistinguishable from bars and restaurants if allowed to offer unlimited food and beverage services to anyone, which would mean more traffic, noise, and activity related to increased numbers of patrons, food and other deliveries, and staff."); (*Id.* at PageID.10857) ("Limiting advertising to wine alone means Peninsula Cellars is drawing people to taste and buy wine,

3

not to buy knick-knacks. Invalidation of these provisions resulting in the removal of these limitations would harm PTP's members by bringing more visitors and adding to traffic congestion."); (*Id.* at PageID.10858) ("[I]f [guest activity uses] are unlimited as a result of the invalidation of any one of them, that would likely lead to more commercial activities and more visitors, traffic, deliveries, staff, and activity taking place Winery-Chateaus.").

In response, the Wineries assert that the commercial speech, compelling speech, and content-based restrictions claims do not implicate PTP members' property interests because the above identified interests (i.e., increased traffic, noise, congestion, etc.) do not affect PTP members' land values, quiet enjoyment, or viability of their farming operations. They assert that "generalized concerns about traffic congestion, economic harms, aesthetic harms, environmental harms, and the like are not sufficient to establish that one has been aggrieved by a zoning decision." (ECF No. 310 at PageID.11440) (quoting *Saugatuck Dunes Coastal All. v. Saugatuck Twp.*, 983 N.W.2d 798, 816 (Mich. 2022)). Based on the numerous Michigan cases that the Wineries cite, the Court agrees that PTP members' general concerns about increased traffic and noise with the invalidation of certain sections of the Township Ordinances would not give PTP *standing* to challenge zoning decisions under the Michigan Zoning Enabling Act ("MZEA") (*see id.* at PageID.11442-46).

However, PTP need not establish standing. Rather, the Court ordered PTP to show that it has an interest, related to PTP members' property interests, in defending against the Wineries' commercial speech, compelling speech, and content-based restrictions claims. In the Court's judgment, PTP has met that low burden. PTP's concerns with the sections of the Township Ordinances that the Wineries seek to invalidate via the commercial speech,

4

compelling speech, and content-based restrictions claims may potentially implicate—albeit, at the very most, tenuously—PTP members' property interests in the quiet enjoyment of their land and maintaining their land's value.

Most importantly, permitting PTP to defend against every live claim in this litigation promotes the expeditious adjudication of this case. Now that PTP is a party in this litigation, logically, it makes sense to allow PTP to participate in this case with respect to all the claims that are ripe for trial. Therefore, the Court will permit PTP to fully defend against the Wineries' commercial speech, compelling speech, and content-based restrictions claims.[2]

### B. Motion for Reconsideration

Additionally, PTP has also filed a motion for reconsideration (ECF No. 308) of the December 2 Order (ECF No. 301), which set aside portions of the June 3 Order. Specifically, in the December 2 Order, the Court declined to set aside the granting of summary judgment to the Wineries on the dormant Commerce Clause and the vagueness/due process claims, and PTP seeks reconsideration of the Court's decision to not set aside these portions of the June 3 Order. The Court will deny PTP's motion for reconsideration.

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). In this district, a motion for reconsideration may be granted when the moving

---

[2] In their response brief, the Wineries also argue that the Court should strike the affidavits attached to PTP's brief because they contain speculation or hearsay without factual support (ECF No. 310 at PageID.11441). Because the Court did not rely on those affidavits in deciding whether PTP had an interest in the commercial speech, compelling speech, and content-based restrictions claims, the Court declines to strike the affidavits. If the Wineries still seek to strike those affidavits, they may file the appropriate motion.

party demonstrates a "palpable defect" by which the Court and parties have been misled and a showing that a different disposition of the case "must result" from the correction of the mistake. W.D. Mich. LCivR 7.4(a). Typically, "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). The decision to grant or deny a motion for reconsideration is within the district court's discretion. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 694, 681 (6th Cir. 2012) (citation omitted).

### 1. Dormant Commerce Clause

In regard to the dormant Commerce Clause claim, the Court declined to set aside the granting of summary judgment to the Wineries on this claim because it "does not affect PTP members' property interests, nor was summary judgment granted to the Wineries on this claim due to the Township's failure to defend" (ECF No. 301 at PageID.10698). PTP argues that the Court erred in reaching both of these conclusions.

As for PTP's alleged property interests that are affected by the outcome of the Wineries' dormant Commerce Clause claim, PTP again complains of the potential for increased traffic and noise:

> The requirement to make and sell wine made from grapes where a majority were grown on-site and a portion may be grown by other peninsula farmers prevents Farm Processors from becoming heavy industrial facilities processing all imported fruit. Limiting Farm Processors from trucking in more or all grapes limits associated traffic disruptions to the peaceful use and enjoyment of PTP members' property, and their ability to efficiently move equipment among farms and harvested fruit off the peninsula for processing.

6

(ECF No. 308 at PageID.11205); (*see also id.* at PageID.11206) ("Provisions limiting wine sales and service, food service, and the number of participants for Chateau Guest Activity Uses also affect PTP members' property interests."). As stated above, while the Court found that PTP had shown that the commercial speech, compelling speech, and content-based restrictions claims tenuously affect PTP members' property interests, based on the potential for increased traffic and noise, the Court reached this conclusion to promote the expeditious adjudication of this case and because these claims are still ripe for trial.[3] The dormant Commerce Clause claim, on the other hand, is *not* ripe for trial,[4] as the Court declined to set aside the granting of summary judgment to the Wineries on this claim. Therefore, PTP must show that the Court's decision not to set aside the granting of summary judgment to the Wineries on this claim, based on the determination that this claim does not affect PTP members' property interests, was a "palpable defect" and that a different disposition "must result" from the correction of this error. *See* W.D. Mich. LCivR 7.4(a).

The Court finds that PTP has not met this burden. At best, PTP merely disagrees with this Court as to whether the disposition of the dormant Commerce Clause claim affects PTP members' property interests. *See Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, No. 1:12-cv-1143, 2013 WL 12085183, at *1 (W.D. Mich. Dec. 31, 2013) ("Disagreement with

---

[3] Importantly, the Court set aside the portions of the June 3 Order granting summary judgment to the Wineries on the commercial speech and compelling speech claims due to the Township's failure to defend against these claims, not because the Court found that PTP members' property interests would be affected by the disposition of these claims (ECF No. 301 at PageID.10698). The Court declined to set aside the portion of the June 3 Order regarding the content-based restriction claim because no party had been granted summary judgment on that claim, and therefore, it was still ripe for trial regardless of whether the Court set aside that portion of the June 3 Order (*Id.*).

[4] To reiterate, this claim is not ripe for trial because the Court specifically found that this claim did not implicate PTP members' property interests (ECF No. 301 at PageID.10698).

the Court's interpretations of facts, or applications of the correct law, rarely provide a sound basis for a motion for reconsideration."). PTP's argument—that there *may* be more trucks importing grapes grown outside of Peninsula Township and that there *may* be more traffic from visitors who want to enjoy food and retail shopping at the Wineries if the dormant Commerce Clause discussion in the June 3 Order is not set aside—does not show that a "different disposition of [the dormant Commerce Clause claim] must result" from setting aside the granting of summary judgment to the Wineries on this claim. Therefore, the court will not grant PTP's motion based on the argument that the dormant Commerce Clause claim affects PTP members' property interests.

PTP also argues that, in declining to set aside the dormant Commerce Clause discussion in the June 3 Order, the Court erred in determining that the Township adequately defended against this claim. To support this argument, PTP argues that, in moving for summary judgment and responding to the Wineries motion for summary judgment, the Township failed to apply the *Pike*[5] balancing test, which directs the Court to look at the local benefit versus the burden on commerce from the challenged regulation (*see* ECF No. 308 at PageID.11207). The Court has already rejected this argument once before when deciding the Township's motion to alter or amend judgment (*see* ECF No. 211 at PageID.7809).

Nevertheless, even if the Township had thoroughly argued the *Pike* balancing test, the Court still would have reached the same conclusion. As the Court indicated in the June 3 Order, the *Pike* balancing test is only relevant if the Court reaches the second step of the

---

[5] *Pike v. Bruce Church, Inc.*, 39 U.S. 137 (1970).

8

dormant Commerce Clause analysis (ECF No. 162 at PageID.5996) ("Only if the court determines that the challenged law is not discriminatory must it proceed to the second tier of the analysis: the statute will be invalidated as unconstitutional "if the burden [the statute] imposes on interstate commerce 'is clearly excessive in relation to its putative local benefits.'" *Hazeltine*, 340 F.3d at 593 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))."). In this case, the Court did not reach the second step of the analysis (*Id.* at PageID.5999). Because the Township Ordinances were facially discriminatory, the Court then analyzed the Ordinances under strict scrutiny (*Id.*) ("Because the Township Ordinances, on their face, discriminate against all out-of-state farmers, they are *per se* invalid unless these challenged sections pass strict scrutiny. Thus, the Court need not move to the second tier of the dormant Commerce Clause analysis. Rather, the Township must demonstrate that these sections of the Township Ordinances survive under strict scrutiny.") (internal citations omitted).[6] Therefore, because the Court needed not move to the second step of the analysis and apply the *Pike* balancing test, the Township's failure to apply the test was irrelevant.

---

[6] The Eastern District of Michigan has summarized the two-step analysis under the dormant Commerce Clause, including when the *Pike* balancing test comes into play, very thoroughly:

> The Sixth Circuit "typically emplo[ies] [sic] a 'two-tiered analysis' " of dormant Commerce Clause challenges. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 552 (6th Cir. 2021) (quoting *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010)). At the first tier, the Court must discern whether the challenged law facially discriminates against intrastate commerce. *Davis*, 553 U.S. at 338, 128 S.Ct. 1801. Facially discriminatory laws are "virtually *per se* invalid," *Id.*, (quoting *Or. Waste Systems, Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)), only surviving judicial scrutiny if they "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Or. Waste Systems, Inc.*, 511 U.S. at 101, 114 S.Ct. 1345. Non-facially discriminatory laws incidentally burden commerce while appearing neutral. *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Those laws are assessed at the second tier and are "upheld unless the burden imposed on [intrastate] commerce is clearly excessive in relation to the putative local benefits." *Id.*

*Attitude Wellness, LLC v. Village of Pickney*, -- F. Supp. 3d --, 2022 WL 1050305, at *3 (E.D. Mich. Apr. 7, 2022).

Finally, even if the Court had reached the second step and applied the *Pike* balancing test, the Court still would have found that the Township Ordinances violate the dormant Commerce Clause. The Court has already opined that the Township's justifications for the Ordinances—the preservation of the agricultural industry in Peninsula Township—are likely not legitimate, and even if they were, the Ordinances are not actually helping the Township achieve these interests associated with maintaining the agricultural industry (*see id.* at PageID.6000-01). The burden that the Township Ordinances impose on interstate commerce outweighs the local benefits. And PTP's argument that the Ordinances burden only *intra*state commerce fares no better. *See, e.g., Dean Milk Co v. City of Madison*, 340 U.S. 349, 354 n.4 (1951); *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 504 U.S. 353, 361 (1992) ("Respondents . . . argue . . . that the Waste Import Restrictions . . . do not discriminate against interstate commerce on their face or in effect because they treat waste from other Michigan counties no differently than waste from other States. Instead, respondents maintain, the statute regulates evenhandedly to effectuate local interests and should be upheld because the burden on interstate commerce is not clearly excessive in relation to the local benefits. *Cf.* [*Pike*, 397 U.S. at 142]. We disagree, for our prior cases teach that a State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself."). The Court therefore rejects PTP's arguments regarding the *Pike* balancing test and the burdens on intrastate commerce.

Lastly, PTP's remaining arguments also fail to show that a palpable defect exists in the December 2 Order with respect to the Court retaining the dormant Commerce Clause

analysis in the June 3 Order. For the reasons stated in the Wineries' response to PTP's motion, Tabone, Chateau Grand Traverse, and Bonobo have standing to pursue their claims (*see* ECF No. 311 at PageID.11663).[7] And PTP's assertion that the Wineries' Commerce Clause claims are time-barred ignores the fact that, for claims brought via § 1983 for alleged "ongoing" constitutional violations from an unconstitutional statute, a new claim arises and a new statute of limitations period commences with each new injury. *See Kuhnle Bros. Inc. v. Cty. of Geauga*, 103 F.3d 516, 522-23 (6th Cir. 1997); *see also Flynt v. Shimazu*, 940 F.3d 457, 462-63 (9th Cir. 2019) (applying the "continuing violation" rule to a dormant Commerce Clause claim).

For these reasons, the Court finds that PTP has failed to show a palpable defect in the December 2 Order in regard to the retention of the dormant Commerce Clause discussion in the June 3 Order.

### 2. Vagueness/Due Process

PTP also seeks reconsideration of the December 2 Order with respect to the Court's decision not to set aside the granting of summary judgment to the Wineries on their vagueness/due process claim. The December 2 Order stated,

> [T]he Court will not set aside [the discussion on the vagueness/due process claim in the June 3 Order] because although this claim may implicate PTP members' property interests, PTP's intervention does not change the Wineries' entitlement to summary judgment on this issue. Looking at the Township Ordinances on their face, the term "Guest Activity Use" is vague, and it is unconstitutional for the reasons that the Court has previously articulated, regardless of whether PTP is a party in this matter and had the opportunity to defend against this claim.

---

[7] The record also contradicts PTP's claim that Tabone is not a Farm Processing Facility (*see, e.g.*, ECF No. 29-4 at PageID.1305).

11

(ECF No. 301 at PageID.10698).

In its motion for reconsideration, PTP argues that (1) in the June 3 Order, the Court reviewed deposition testimony, meaning that it did not find the term "Guest Activity Use" in the Township Ordinances to be vague on its face, and (2) if PTP could provide context to the Township representatives' testimony, the Court would find that "Guest Activity Use" is not vague. Neither of these arguments are persuasive, let alone establish a palpable defect in the December 2 Order.

In addition to the thorough analysis in the June 3 Order, the Court has now visited the issue of whether the term "Guest Activity Use" is vague on its face twice before (*see* ECF No. 211 at PageID.7813) ("[Even if the Court only reviewed the text of the Ordinance on its face, the term ["Guest Activity Use"] is clearly vague."); (ECF No. 301 at PageID.10698) ("Looking at the Township Ordinances on their face, the term 'Guest Activity Use' is vague, and it is unconstitutional for the reasons that the Court has previously articulated."). For the third time, the definition of "Guest Activity Use" is vague on its face, and therefore, violates the Due Process Clause. The Court does not need PTP to provide context to any Township representatives' deposition testimony because the term is vague on its face. The Court therefore rejects PTP's arguments regarding the vagueness/due process claim.

In sum, PTP has failed to show a palpable defect in this Court's December 2 Order and that a different disposition of the order "must result" from a correction of such error. The Court will therefore deny PTP's motion for reconsideration.

Accordingly,

12

**IT IS HEREBY ORDERED** that PTP is permitted to defend against the Wineries' claims regarding commercial speech, content-based restrictions, and compelling speech. As with the Wineries' other claims, PTP will be permitted to pursue discovery, file motions, and generally participate in this case with regard to these three claims.

**IT IS FURTHER ORDERED** that PTP's motion for reconsideration (ECF No. 308) is **DENIED**.

An order regarding a Joint Status Report and a Rule 16 Scheduling Conference will issue shortly.

**IT IS SO ORDERED**.

Date:  February 21, 2023                                           /s/ Paul L. Maloney          
                                                                                Paul L. Maloney
                                                                                United States District Judge