# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA ASSOC. (WOMP), a Michigan nonprofit corporation; BOWERS HARBOR VINEYARD & WINERY, INC, a Michigan corporation; BRYS WINERY, LC, a Michigan corporation; CHATEAU GRAND TRAVERSE, LTD, a Michigan corporation; CHATEAU OPERATIONS, LTD, a Michigan corporation; GRAPE HARBOR, INC, a Michigan corporation; MONTAGUE DEVELOPMENT, LLC, a Michigan limited liability company; OV THE FARM, LLC, a Michigan limited liability company; TABONE VINEYARDS, LLC, a Michigan limited liability company; TWO LADS, LLC, a Michigan limited liability company; VILLA MARI, LLC, a Michigan limited liability company; WINERY AT BLACK STAR FARMS, LLC, a Michigan limited liability company;

       Plaintiffs,

v

PENINSULA TOWNSHIP, a Michigan municipal corporation,

       Defendant,

and

PROTECT THE PENINSULA, INC.,

       Intervenor-Defendant.

Case No. 1:20-cv-01008

HON. PAUL L. MALONEY
MAG. JUDGE RAY S. KENT

**PROTECT THE PENINSULA'S MOTION FOR ACCESS TO CERTAIN WITHHELD DOCUMENTS**

Joseph M. Infante (P68719)
Christopher J. Gartman (P83286)
Stephen Michael Ragatzki (P81952)
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
99 Monroe Ave., NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com
ragatzki@millercanfield.com

Barry Kaltenbach
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
227 Monroe Street, Ste 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

Scott Robert Eldridge (P66452)
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
One E. Michigan Avenue, Ste 900
Lansing, MI 48933
(517) 487-2070
eldridge@millercanfield.com

John Stephen Gilliam (P81421)
*Plunkett & Cooney*
Attorneys for Defendant
38505 Woodward Ave. Ste 100
Bloomfield Hills, MI 48034
(248) 433-7082
jgilliam@plunkettcooney.com

Thomas J. McGraw (P48817)
Bogomir Rajsic, III (P79191)
*McGraw Morris, P.C.*
Attorneys for Defendant
2075 W. Big Beaver Road, Ste 750
Troy, MI 48084
(248) 502-4000
tmcgraw@mcgrawmorris.com
brajsic@mcgrawmorris.com

William K. Fahey (P27745)
John S. Brennan (P55431)
Christopher S. Patterson (P74350)
*Fahey Schultz Burzych Rhodes PLC*
Co-Counsel for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100
wfahey@fsbrlaw.com
jbrennan@fsbrlaw.com
cpatterson@fsbrlaw.com

Tracy Jane Andrews (P67467)
*Law Office of Tracy Jane Andrews, PLLC*
Attorneys for Intervenor-Defendant
420 East Front Street
Traverse City, MI 49686
(231) 946-0044
tjandrews@envlaw.com

Holly L. Hillyer (P85318)
*Olson, Bzdok & Howard, P.C.*
Co-Counsel for Intervenor-Defendant
420 East Front Street
Traverse City, MI 49686
(231) 946-0044
holly@envlaw.com

**PROTECT THE PENINSULA'S MOTION
FOR ACCESS TO CERTAIN WITHHELD DOCUMENTS**

In its December 2, 2022, Opinion and Order (December Order) (ECF 301), the Court found that, "[a]t this stage in the litigation," it would be inappropriate to permit Intervenor-Defendant Protect the Peninsula, Inc. (PTP) access to the Wineries' "financial documentation" since PTP is not responsible for payment of damages. (ECF 301, PageID.10703-10704) The Court provided that PTP may file an appropriate motion if PTP wishes access during discovery.

Since then, the Wineries provided approximately 8,500 pages of Winery documents produced in discovery to Defendant Peninsula Township (the Township) and withheld about 3,600 pages. This motion requests access to subset of withheld documents. PTP does *not* request "financial documentation" related to Winery operations (*e.g.*, tax returns, cash flow, and profit and loss and other financial statements). PTP requests access to two subsets of non-financial documents the Wineries have improperly characterized as financial and withheld:

(a) Mr. Larson's revised report, all schedules and attachments, and depositions; and

(b) documents identified by the Wineries as trial exhibits. (ECF 190, PageID.7373-7376).

These withheld, non-financial documents may shed light on individual Wineries' claimed injuries, the adequacy of pleadings, the merits of claims, injunctive relief, and PTP's defenses. These are documents already produced to the Township. The Wineries intend to admit them as trial exhibits, so they presumptively will become public. PTP access would streamline discovery, avoid unnecessary delay, assist in evaluating and defending the claims, and facilitate settlement. To alleviate concerns about pre-trial public dissemination of potentially sensitive material, the Wineries may designate documents to be treated confidentially in discovery under the Protective Order (ECF 75), which binds PTP.

## **BRIEF IN SUPPORT**

## **TABLE OF CONTENTS**

1.  **THE WINERIES WITHHELD DOCUMENTS THAT PROVIDE INFORMATION ABOUT THEIR CLAIMS AND INJURIES.** ................................................................... 2
2.  **THE REQUESTED DOCUMENTS ARE NECESSARY FOR PTP TO EFFICIENTLY CONDUCT DISCOVERY AND DEFEND AGAINST THE WINERIES' CLAIMS.** ........................................................................................................ 5
3.  **THE PROTECTIVE ORDER (ECF 75) ADEQUATELY PROTECTS THE WINERIES' INTERESTS.** ................................................................................................ 8
4.  **WITHHOLDING THE INFORMATION FROM PTP IS CONTRARY TO PUBLIC POLICY AND PUNITIVE.** ............................................................................ 10
    **CONCLUSION** .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*American Tel. & Tel. Co. v. Grady*, 594 F.2d 594(7th Cir. 1978), *cert. denied*, 440 U.S. 971 (1979) ........ 11
*Bannister v. Knox Cnty. Bd. of Educ.,* 49 F.4th 1000 (6th Cir. 2022) ............................................................ 6
*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357 (6th Cir. 2010) .................... 5, 15
*Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165 (6th Cir.1983) ........................................ 5, 11
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) ....................... 7
*City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219 (N.D. Cal. 2003) .......................... 7
*Cleveland Newspaper Guild, Loc. 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147 (6th Cir. 1988) ................... 6
*Doe v. Déjà Vu Consulting, Inc*., 925 F.3d 886 (6th Cir. 2019) .................................................................. 15
*In re Ohio Execution Protocol Litig.,* 845 F.3d 231 (6th Cir. 2016) .......................................................... 14
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................................... 6
*Meyer Goldberg, Inc. v. Fisher Foods*, 823 F.2d 159 (6th Cir. 1987) ........................................................ 11
*Nix v. Sword*, 11 Fed. Appx. 498 (6th Cir., May 24, 2001) ........................................................................ 11
*Proctor & Gamble Co. v. Banker's Trust Co.,* 78 F.3d 219 (6th Cir. 1996) ............................................... 11
*Serrano v. Cintas Corp*., 699 F.3d 884 (6th Cir. 2012) .............................................................................. 14
*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016) ............................ 12
*Vignes-Starr v. Lowe's Home Ctrs*., 544 F. Supp. 3d 774 (W.D. Ky. 2021) ............................................... 12
*Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334 (Fed. Cir. 1998) ......................................................................... 9
*WOMP v. Peninsula Twp*, 41 F.4th 767 (6th Cir. 2022) ............................................................................. 13
*Xoran Holdings v. Luick & Tungsen Med. Network*, Case No. 16-13703 (E.D. Mich. July 23, 2018) ....... 10

**Other Authorities**

Joanna C. Schwartz, *How Governments Pay- Lawsuits, Budgets, and Police Reform*, 63 UCLA L. Rev. 1144, 1174-76 (June 2016) ...................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................................................... 12
Fed. R. Civ. P. 26(a)(1)(A)(iii) ..................................................................................................................... 9
Fed. R. Civ. P. 26(b)(1) ................................................................................................................................ 5

Pursuant to Court direction in the December 2, 2022, Opinion and Order (December Order) (ECF 301), PTP moves for access to particular withheld documents related to the Wineries' alleged injuries that the Wineries produced in discovery and intend to use as trial exhibits. In the December Order, the Court stated that PTP would be "allowed to access the evidentiary record and discovery materials, excluding documents related to the Wineries' financial information." (ECF 301, PageID.10703) The Court stated PTP may file a motion to access that information during discovery. (*Id.*, PageID.10704)

PTP has reviewed the record received from the Wineries and now requests access to certain withheld documents: the Larson reports, schedules, and depositions; and all proposed trial exhibits.[1] Without this access, PTP is at a significant disadvantage to evaluate the merits of the Wineries' claims, to mount a full defense to their claims, and to negotiate a fair resolution to their claims. The withheld documents may[2] illuminate which Wineries claim injuries from what zoning provisions and legal claims, since when, and to what extent – information not otherwise compiled in pleadings nor discovery. The Wineries indicated they intend to rely upon these documents in trial, and the strong presumption favoring public disclosure in adjudication means they would likely become fully public at that time. To the extent the Wineries maintain the requested documents are particularly sensitive and warrant limited distribution before trial, they may so

---

[1] The Larson report and foundational data are also proposed trial exhibits. (ECF 190, PageID.7375-7376)

[2] As noted below, PTP is able to identify the documents and has some idea of their contents because (a) the Wineries filed Mr. Larson's original report (without schedules) in the public docket, and (b) the Wineries summarily described proposed trial exhibits. Using these clues, as well as the contents of similarly-described documents that were provided to PTP, PTP has deduced their likely contents. For obvious reasons, PTP cannot definitively address the contents of the requested documents.

designate them under the Protective Order. (ECF 75) PTP is bound by that Order, and it adequately protects against pre-trial public disclosure. Continuing to withhold the identified exchanged documents from PTP through discovery is unjustifiable, and instead appears punitive.

### 1. The Wineries withheld documents that provide information about their claims and injuries.

PTP seeks access to two sets of documents: Mr. Larson's full reports and depositions, and all proposed trial exhibits. They are not "financial documentation" the Court permitted the Wineries to withhold when they shared the case record with PTP. (ECF 301, PageID.10703) They are not Winery tax returns, profit and loss statements, cash flow statements, and other such financial materials, which are the documents the Wineries indicated are sensitive and irrelevant to PTP. (ECF 302, PageID.10822 (Counsel for the Wineries stated PTP has "no need to see, for example, tax returns, financial statements, P and L"); ECF 234, PageID.8495 ("The Wineries object to sharing tax returns and financial records and data if PTP is allowed to participate in discovery.")

The Wineries withheld documents related to Mr. Larson's expert report, including the schedules supporting his initial report and his revised report and supporting schedules. In addition, his deposition testimony and exhibits are unavailable to PTP. The Wineries designated Mr. Larson's reports, schedules, and deposition as "Attorney Eyes Only" (AEO) (ECF 171-1), though the basis for AEO designation is unclear. Mr. Larson did not rely upon or reveal sensitive Winery financial documents for his report. (ECF 302, PageID.10822 (Larson reviewed "activities the Wineries were prohibited from engaging in" and did not review "tax returns, financial statements, P and L"); ECF 171-1, PageID.6370-6371 (Larson materials relied upon); ECF 284, PageID.10190 (addressing Larson report))

2

PTP has a glimpse into Mr. Larson's analysis because the Wineries filed his original report in the public docket, notwithstanding the AEO designation. (ECF 171-1) It indicates the withheld schedules identify particularized harms and injuries for each Winery. (ECF 171-1, PageID.6368-6370) These details are absent from the Wineries' pleadings and not tabulated elsewhere. (ECF 29; **Ex A,** Wineries' Initial Disclosures) Moreover, the original Larson report indicates the Wineries advanced a different set of zoning provisions as allegedly causing injury to the Wineries, compared to those identified in the operative complaint (ECF 29) and in summary judgment motions as reflected in the Court's summary judgment order[3] (ECF 162). For example, the public Larson report identified 4 provisions harming Farm Processing Facilities (ECF 171-1, PageID.6366); the First Amended Complaint identified about 13 provisions harming Farm Processing Facilities (ECF 29, PageID.1092-1095); and the Court's summary judgment order invalidated 7 provisions under various of the Wineries' theories (ECF 162, PageID.5996-5997, 6002, 6021). While Peninsula Cellars claimed "tens of thousands of dollars of lost revenue, over the years" (ECF 29-12, PageID.1338), the report cites no Remote Tasting Room provisions as the source of injury (ECF 171-1). The Larson schedules undoubtedly provide useful, clarifying details about the Wineries' specific injuries.

PTP is entitled to know which Wineries claim to be injured by which provisions in the zoning ordinance, under which legal theory, since when, and to what extent, and it appears Mr. Larson's analysis efficiently illuminates those issues. PTP is not seeking to depose Mr. Larson. These materials do not reveal sensitive "financial documentation" for any Winery. The Wineries plan to admit the report as a trial exhibit, and PTP is unaware of any basis upon which it may be

---

[3] PTP acknowledges some of the Court's summary judgment order (ECF 162) was vacated (ECF 301); PTP refers to it here for its succinct lists of zoning provisions at issue under various of the Wineries' legal theories.

3

sealed at trial. There would be no additional cost or burden to the Wineries to provide access to PTP. As a result, PTP requests access to the full reports, schedules, deposition transcripts, and deposition exhibits.

PTP also requests access to all documents the Wineries identified as proposed trial exhibits in the Proposed Final Pretrial Order (Proposed Pretrial Order) (ECF 190) but did not provide to PTP. PTP did not receive the 3,643 documents produced by the Wineries with Bates numbers WOMP0008228 to 11871, yet most of the Wineries' proposed trial exhibits are within that span. (ECF 190, PageID.7373-7376) These withheld trial-exhibit documents relate to: prior litigation (Black Star, Suttons Bay v. OMP, WOMP008747), bulk wine purchases (Bonobo Bulk Wine Purchases, WOMP008702–8704), sales summaries (Bonobo Sales Summaries, WOMP008692–8694), information sheets (Chateau Chantal Information Sheets, WOMP008228–8237, 8240, 8471–8472), events (Mari Event Invoices, WOMP008325–8330), and much more. (*Id.*) At the same time the Wineries withheld these proposed trial exhibits, they provided documents addressing the same topics: Black Star grape delivery reports from 2012 to 2020 (WOMP0000163-187), Bonobo bulk wine purchase invoices and summaries (WOMP0000218-220), Chateau Chantal projected wedding revenues (WOMP000767); Hawthorne costs and sales data (WOMP0001009-1014). There is no obvious rationale for why some documents are withheld while others providing similar data were provided.

PTP is entitled to all documents the Wineries may rely upon at trial, including those related to events, sales, historic activities, and more. The requested documents relate to the Wineries' claims and injuries, and they are not sensitive "financial documents." These are calculations and documents the Wineries must voluntarily disclose. Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring voluntary early disclosure of calculations and, *inter alia*, "materials bearing on the nature and

4

extent of injuries suffered"); *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 367-70 (6th Cir. 2010) (rule obligates plaintiff to provide computation of each category of claimed damages and supporting evidentiary material else face sanctions). They are all designated as trial exhibits, meaning they are destined for public disclosure. *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178-79 (6th Cir.1983) (civil trials presumptively open to public). There is no sound basis to withhold them from PTP alone until trial.

### 2. The requested documents are necessary for PTP to efficiently conduct discovery and defend against the Wineries' claims.

Rule 26 authorizes relatively expansive discovery, providing that a party may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information about the nature, timing, and scope of claimed avoided activities and lost profits, as well as explanations of the relationship between alleged harms and the challenged provisions, is necessary for the development and presentation of PTP's defenses. No two Wineries are alike; the individual characteristics of their geography, location, neighborhood, accessibility, time of initiation, and other factors result in individually-approved site plans, setbacks, operating conditions, easements, sizes, and other limitations tailored to the land and location. The contours of activities permitted and denied, and of the injuries each has suffered, necessarily differ by Winery, as likely reflected in the withheld documents. With 11 Plaintiff-Wineries each subject to particular zoning provisions and conditions, it would be useful for PTP to know – for discovery, motions and settlement purposes – about each plaintiff's injuries, which the requested documents presumably outline.

5

For example, PTP may seek to dismiss claims of some Wineries that lack standing because they have not suffered a cognizable injury that is fairly traceable to the challenged provisions or that can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). This includes Wineries that are not subject to challenged zoning, or that are subject to easements prohibiting commercial activities irrespective of zoning. PTP anticipates presenting affirmative defenses like laches and the expiration of statutes of limitations, which inquire when each Winery suffered alleged injuries particular to each legal theory, and their subsequent diligence. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1008-1010 (6th Cir. 2022) (accrual of statute of limitations for Section 1983 claim depends on specific constitutional right invoked); *Cleveland Newspaper Guild, Loc. 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1153 (6th Cir. 1988) (laches "requires proof of . . . lack of diligence by the party against whom the defense is asserted"). Defending the merits of challenged provisions requires consideration of the extent to which those provisions advance governmental interests and burden constitutionally protected speech or conduct. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980) (restrictions cannot burden commercial speech beyond the level necessary to "directly advance" a governmental interest).

The Wineries' complaint (ECF 29) does not describe each Wineries' alleged injuries with particularity nor trace them to any challenged provisions. The Wineries' Initial Disclosures provide a generic or collective computation of damages for all Plaintiffs, noting their intent to rely on an expert witness regarding their computation of damages. (**Ex A**, Wineries' Initial Disclosures, pp. 9-10). Information about which Wineries claim to be harmed by which provisions, since when, and to what extent, is articulated in the Larson attachments, and PTP should have access to it to facilitate efficiency and avoid duplication and the potential for unnecessary conflict. *See City &*

*County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (compelling discovery where initial damages disclosures lacked detail necessary for defendants to "make informed decisions as to settlement and discovery"). The Larson report references schedules detailing the Wineries' testifying expert's understanding of the relationship between challenged provisions and the harms they allegedly caused, the identity of each Winery that claims to have been injured in each category, and the amount and timing of such injuries – *i.e.*, lost profits, resulting in collective damages as follows: (ECF 171-1, PageID.6371)

| | |
|---|---:|
| Total lost profits form increased grape costs | $235,825 |
| Total lost profits from lost catering | $1,468,500 |
| Total lost profits from limited hours | $66,138,000 |
| Total lost profits from lost restaurant sales | $53,912,655 |
| Total lost profits from lost merchandise sales | $712,500 |
| Total lost profits from lost small event hosting (small events) | $6,883,877 |
| Total lost profits from lost event hosting (large events and weddings) | $74,210,988 |
| TOTAL DAMAGES | $203,562,344 |

The referenced schedules and analysis and other withheld trial exhibits presumably explain, for example, whether Bowers Harbor claims injuries preceding its receipt in July 2019 of a Winery-Chateau Special Use Permit or whether Hawthorne claims injuries preceding approval in July 2020 of its Winery-Chateau Special Use Permit. The requested withheld analyses and other materials may clarify how many events, event guests, and restaurant and retail customers the Wineries have turned away. This would shed light on what commercial and retail activities the neighbors have been spared in the past because of the zoning ordinances, which bears on the

7

governmental interests advanced by the challenged zoning provisions and their reasonableness. Some document the scope of historic activities by the Wineries, such as actual revenue from food and merchandise sales and profits from permitted activities and events; these details also bear on the reasonableness of the challenged zoning provisions – the balance the ordinance struck between commercial activities that are allowed and those that the Wineries wish were allowed. Details about how long into the night and how many days of the year the Wineries believe they were denied profit-making activities are instructive of both avoided historic nuisances and future potential impacts to neighbors. Information about the nature and scope of commercial activity particular Wineries refrained from pursuing to support claims of lost profits is also relevant to appropriate contours of injunctive relief. These details weigh on PTP's laches defense, which requires consideration of any evidentiary and/or economic prejudice the Wineries' excessive delay in filing suit may have caused PTP and its members. *See Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) ("[A] defendant may establish either evidentiary or economic prejudice.").

In sum, the complete Larson reports and schedules and withheld trial documents would go a long way to efficiently – and without cost or burden – identify which Wineries assert injury under which legal theories, since when, what activities have been avoided, and what may be sought if they prevail.

### 3. The Protective Order (ECF 75) adequately protects the Wineries' interests.

The Wineries and Township stipulated to entry of a Protective Order (ECF 74), and the Court entered their proposed Order in August 2021 (ECF 75). That Protective Order adequately protects the Wineries' business and commercial interests in any confidential or sensitive

8

information they produced. The Protective Order, which the Court entered "[t]o expedite the flow of discovery material, to facilitate the prompt resolution of disputes over claims of confidentiality, and to provide adequate protection for business and personal information," governs all information produced in discovery. (ECF 75, PageID.3200-3201) It allows any party to designate materials they produce as "Confidential" if they "in good faith reasonably believe[]" those materials contain "non-public, confidential, proprietary, commercially sensitive or personally sensitive information," and "Attorneys' Eyes Only" (AEO) if they believe the materials contain "highly sensitive business or personal information, the disclosure of which is likely to cause significant harm to an individual or to the business or competitive position of the designating party." (*Id.*, PageID.3201-3202) The Order provides the process for disputes over document designations and remedial measures in case of violation. (*Id.*, PageID.3206, 3208)

PTP was granted intervention by right, became a defending party, and is subject to the Protective Order. Concerns the Wineries may have about particularly sensitive materials should be resolved by designating them Confidential or even AEO, not by withholding them from PTP. The Wineries already compiled and produced the requested material to the Township, a Michigan municipality subject to public interest and scrutiny. Producing the same material to PTP, subject to the Protective Order, imposes no increased risk of public disclosure of sensitive documents.

It does not appear the withheld documents PTP requests qualify for the AEO designation. Damages calculations are not obviously sensitive, let alone AEO-level secret. *See Xoran Holdings v. Luick & Tungsen Med. Network*, Case No. 16-13703 (E.D. Mich. July 23, 2018) (**Ex B**) (AEO protects especially sensitive information or information to be provided to a competitor) (citations and quotations omitted). Parties must provide damages calculations voluntarily in initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). The proposed payor of damages here is a taxpayer-

9

funded municipality. The documents will become public exhibits at trial. PTP does not understand why the Township accepted the AEO designation for the Larson materials – effectively preventing elected Township trustees from understanding the calculations underlying a claim for $203 million (revised to $135 million) in damages. *See Brown,* 710 F.2d at 1180 ("common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know."). Nevertheless, if the Court grants PTP access to the requested documents, PTP will comply with the Protective Order, including its dispute process, should PTP disagree with any confidentiality designation.

### 4. **Withholding the information from PTP is contrary to public policy and punitive.**

Discovery is generally conducted in the public. *Meyer Goldberg, Inc. v. Fisher Foods*, 823 F.2d 159, 162 (6th Cir. 1987) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.") (quoting *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied*, 440 U.S. 971 (1979)); *Proctor & Gamble Co. v. Banker's Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996) ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and is circumscribed by a long-established tradition which values public access to court proceedings."). The party seeking an order to prevent document disclosure to another party has the burden to provide good cause exists. *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir., May 24, 2001) (citations omitted); *Vignes-Starr v. Lowe's Home Ctrs*., 544 F. Supp. 3d 774, 777 (W.D. Ky. 2021) ("Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public.") (citation omitted). To establish good cause, the party seeking a protective order "must articulate specific facts showing

'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix*, 11 Fed. App. at 500 (citations omitted).

The public interest in this case is enormous. It involves claims related to the constitutionality of a municipal zoning ordinance, the outcome of which will have implications for thousands of residents, as well as every municipality in Michigan that relies on land use regulation to minimize the adverse impacts of commercial activities associated with wineries located in agricultural districts. It involves a demand for $135 million in damages against a rural township with 6,000 residents and about 2,500 households – about $54,000 per household. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access."). And although the Court may order only the Township to pay any damages award if the Wineries prevail, it is the public that ultimately bears their cost. *See* Joanna C. Schwartz, *How Governments Pay- Lawsuits, Budgets, and Police Reform*, 63 UCLA L. Rev. 1144, 1174-76 (June 2016) (reviewing how municipalities pay for judgments and settlements involving law enforcement agencies and providing examples of adverse impacts on the public).

The Court's stated rationale for requiring PTP to file a motion to seek access to "financial documentation" is the Sixth Circuit recognition that PTP will not be responsible for payment of damages in the event the Wineries prevail. (ECF 301, PageID.10703) In considering whether the Township inadequately represents PTP interests, the Sixth Circuit noted key differences in our respective interests:

> In sum, overlapping interests do not equal convergent ones for the purposes of assessing representation under Rule 24(a). The Township faces the possibility of damages. Protect the Peninsula's members do not. Protect the Peninsula's members own homes near the Wineries. The Township does not. It is not difficult to see how the two entities' interests could diverge. There is certainly a "potential" for inadequate representation here. Under these

11

>circumstances, and because all the other requirements of Rule 24(a) are met, intervention as of right is warranted.

*WOMP v. Peninsula Twp*, 41 F.4th 767, 777 (6th Cir. 2022) (citations omitted). The Sixth Circuit here was addressing inadequacy of representation, one of four prongs to intervene by right in Fed. R. Civ. P. 24(a). It does not logically follow from this analysis that PTP has no legitimate interest in access to documents outlining the Wineries' claims of injury, where the injury is financial in nature. To the contrary, as discussed above, the withheld documents – including those addressing how the Wineries calculate their damages – describe the Wineries' injuries and bear on injunction and PTP defenses. Moreover, while PTP may not be responsible for writing the ultimate damages check, its members may suffer some responsibility to pay them. The Sixth Circuit opinion does not justify withholding from PTP through discovery the requested documents.

The Wineries may again assert they are justified in withholding financial documents on the basis PTP is an adversary of the Wineries. (ECF 302, PageID.10822) That is not a legitimate basis to withhold relevant, compiled, produced, soon-to-be-public trial exhibits from PTP in discovery. PTP is not a competitor of the Wineries. The Wineries may be competitors of each other, and some have been adversaries in litigation themselves.[4] They produced the requested documents to their common counsel and to their adversary and municipal regulator, and they planned to produce them at trial. The conclusory and obvious point that PTP is (and has in the past been) in an adversarial position vis-à-vis the Wineries is insufficient justification for withholding documents from PTP. *In re Ohio Execution Protocol Litig.,* 845 F.3d 231, 236 (6th Cir. 2016) ("To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1) 'with a particular and specific demonstration of fact, as

---

[4] For example, WOMP and Chateau Grand Traverse sued the Township and Black Star Farms in 2007 over a Farm Processing Facility land use permit.

12

distinguished from stereotyped and conclusory statements.'") (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). To the extent the Wineries are concerned about public dissemination of sensitive materials, the solution is found in the Protective Order providing measures to prevent dissemination of sensitive materials.

The public interest in encouraging settlement further favors granting PTP access to the requested documents. *See Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 889 (6th Cir. 2019) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.") (citations and internal quotations omitted). By requiring plaintiffs to disclose the calculations and evidentiary support for all damages, including lost profits, Rule 26(a) permits opposing parties to independently analyze the claims. *Bessemer & Lake Erie R.R. Co.,* 596 F.3d at 370. Continuing to withhold from PTP relevant and complete information about the Wineries' case – including their injuries and damages – prevents PTP from being able to sufficiently evaluate the strength of their evidence and whether to continue litigating or whether to settle. PTP as an organization is not responsible to pay damages, but PTP members – Peninsula Township taxpayers – are ultimately responsible for the bill. Productive settlement discussions require the parties to discuss their interests and positions in good faith, which the Wineries cannot do while simultaneously withholding the basis, scope, extent of their claims of financial injuries from PTP.

## **CONCLUSION**

The requested documents are not financial documents nor inherently highly sensitive. They are relevant to PTP defenses. There is no cost or burden on the Wineries in producing them to PTP. And they will become fully public at trial. Accordingly, the continued withholding of the

documents from PTP through discovery serves only to handicap and prejudice PTP in mounting a vigorous defense to the Wineries' claims. It further undermines the potential for productive settlement discussions. PTP respectfully requests access to the documents identified above.

Respectfully submitted,

Date:   April 10, 2023            By:   /s/ Tracy Jane Andrews
                                        Tracy Jane Andrews (P67467)
                                        Law Office of Tracy Jane Andrews, PLLC
                                        Attorney for Intervener
                                        420 East Front Street
                                        Traverse City, MI 49686
                                        (231) 946-0044
                                        tjandrews@envlaw.com


Date:   April 10, 2023            By:   /s/ Holly L. Hillyer
                                        Holly L. Hillyer (P85318)
                                        Olson, Bzdok & Howard, P.C.
                                        Co-Counsel for Intervener
                                        420 East Front Street
                                        Traverse City, MI 49686
                                        (231) 946-0044
                                        holly@envlaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)

This Brief complies with the word count limit of L. Ci. R. 7.3(b)(i). This brief was written using Microsoft Word version 2016 and has a word count of 3,952 words.

Respectfully submitted,

Date:   April 10, 2023        By:   /s/ Tracy Jane Andrews
                                    Tracy Jane Andrews (P67467)
                                    Law Office of Tracy Jane Andrews, PLLC
                                    Attorney for Intervener
                                    420 East Front Street
                                    Traverse City, MI 49686
                                    (231) 946-0044
                                    tjandrews@envlaw.com

Date:   April 10, 2023        By:   /s/ Holly L. Hillyer
                                    Holly L. Hillyer (P85318)
                                    Olson, Bzdok & Howard, P.C.
                                    Co-Counsel for Intervener
                                    420 East Front Street
                                    Traverse City, MI 49686
                                    (231) 946-0044
                                    holly@envlaw.com

## CERTIFICATE OF SERVICE

I, Tracy Jane Andrews, hereby certify that on the 10th day of April, 2023, I electronically filed the foregoing document with the ECF system which will send a notification of such to all parties of record.

By:   /a/ Tracy Jane Andrews
      Tracy Jane Andrews (P67467)

15