UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

                    Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

                    Defendant,

and

PROTECT THE PENINSULA,

                    Intervenor-Defendant.
.

Case No.:  1:20-cv-1008-PLM
Hon. Paul L. Maloney
Magistrate Judge Ray S. Kent

**<u>NON- PARTY MICHIGAN TOWNSHIP
PARTICIPATING PLAN'S MOTION
TO DISQUALIFY COUNSEL FOR
PLAINTIFFS</u>**

**\*\*ORAL ARGUMENT REQUESTED\*\***

| | |
|---|---|
| Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>Joseph Mikhail Infante (P68719)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000)<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>300 Ottawa Avenue, NW, Suite 820<br>Grand Rapids, MI  49503<br>(616) 288-3700/Fax (616) 214-7712<br>brajsic@mcgrawmorris.com |

| | |
|---|---|
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com |
| John Stephen Gilliam<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave. Ste 100<br>Bloomfield Hills, MI 48034<br>(248) 433-7082<br>jgilliam@plunkettcooney.com | Tracy Jane Andrews<br>LAW OFFICE OF TRACY JANE ANDREWS<br>Attorneys for Intervenor Protect the Peninsula, Inc.<br>619 Webster Street<br>Traverse City, MI 48686<br>(231) 714-9402<br>tjandrews@envlaw.com |
| Holly L. Hillyer (P85318)<br>OLSON BZDOK & HOWARD PC<br>Attorneys for Intervenor Protect the Peninsula, Inc.<br>420 E. Front Street<br>Traverse City, MI 49686<br>(231) 946-0044<br>holly@envlaw.com | Thomas A. Basil, Jr. (P45120)<br>David R. Schambach (P85690)<br>SHINNERS & COOK, P.C.<br>Attorneys for Non-Party Michigan Township<br>Participating Plan<br>5195 Hampton Place<br>Saginaw, Michigan 48604-9576<br>Telephone: (989) 799-5000<br>tbasil@shinnerscook.com<br>dschambach@shinnerscook.com |

## **NON-PARTY MICHIGAN TOWNSHIP PARTICIPATING PLAN'S MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS**

Non-Party, the Michigan Township Participating Plan, by counsel, moves to disqualify Miller Canfield as Plaintiffs' counsel based on Miller Canfield's conflict of interest pursuant to the Michigan Rules of Professional Conduct ("MRPC") Rule 1.7.  Pursuant to Local Rule 7.1(a) and (b), a supporting brief and documentation are attached.

Respectfully Submitted,

SHINNERS & COOK, P.C.
*/s/ David R. Schambach*
David R. Schambach (P85690)
Thomas A. Basil, Jr. (P45120)
5195 Hampton Place
Saginaw, Michigan 48604-9576
Telephone: (989) 799-5000

Dated: May 23, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 23, 2023, I filed the foregoing via the Court's CM/ECF System, which will automatically provide notice of the filing to all registered participants in this matter.

*/s/ David R. Schambach*
David R. Schambach

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

             Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

             Defendant,

And

PROTECT THE PENINSULA,

             Intervenor-Defendant.

_____/

Case No.:  1:20-cv-1008-PLM
Hon. Paul L. Maloney
Magistrate Judge Ray S. Kent

**<u>NON- PARTY MICHIGAN TOWNSHIP
PARTICIPATING PLAN'S BRIEF IN
SUPPORT OF ITS MOTION TO
DISQUALIFY COUNSEL FOR
PLAINTIFFS</u>**

**\*\*ORAL ARGUMENT REQUESTED\*\***

| | |
|---|---|
| Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>Joseph Mikhail Infante (P68719)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000)<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>300 Ottawa Avenue, NW, Suite 820<br>Grand Rapids, MI  49503<br>(616) 288-3700/Fax (616) 214-7712<br>brajsic@mcgrawmorris.com |

1

| | |
|---|---|
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com |
| John Stephen Gilliam<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave. Ste 100<br>Bloomfield Hills, MI 48034<br>(248) 433-7082<br>jgilliam@plunkettcooney.com | Tracy Jane Andrews<br>LAW OFFICE OF TRACY JANE<br>ANDREWS<br>Attorneys for Intervenor Protect the<br>Peninsula, Inc.<br>619 Webster Street<br>Traverse City, MI 48686<br>(231) 714-9402<br>tjandrews@envlaw.com |
| Holly L. Hillyer (P85318)<br>OLSON BZDOK & HOWARD PC<br>Attorneys for Intervenor Protect the<br>Peninsula, Inc.<br>420 E. Front Street<br>Traverse City, MI 49686<br>(231) 946-0044<br>holly@envlaw.com | Thomas A. Basil, Jr. (P45120)<br>David R. Schambach (P85690)<br>SHINNERS & COOK, P.C.<br>Attorneys for Non-Party Michigan Township<br>Participating Plan<br>5195 Hampton Place<br>Saginaw, Michigan 48604-9576<br>Telephone: (989) 799-5000<br>tbasil@shinnerscook.com<br>dschambach@shinnerscook.com |

## NON- PARTY MICHIGAN TOWNSHIP PARTICIPATING PLAN'S BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 3

EXHIBITS .................................................................................................................... 4

I.    INTRODUCTION ................................................................................................ 4

II.   FACTUAL BACKGROUND ............................................................................... 6

III.  ARGUMENT ..................................................................................................... 10

   a.    The Michigan Rules of Professional Conduct ultimately require Miller Canfield's disqualification from representing Plaintiffs in this matter ...................................... 10

2

b.   In the alternative, Plaintiffs are not entitled to recover retroactive damages for their 42 U.S.C. § 1983 Claims..................................................................................... 16

IV.  CONCLUSION AND RELIEF REQUESTED ................................................... 17

## TABLE OF AUTHORITIES
<u>Cases</u>

*Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993).....................................10

*El Camino Res., LTD. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007)..........................................................................................................10, 13, 14, 15

*In re Snyder*, 472 U.S. 634, 645 n.6, (1985)...............................................................................10

*Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006) and 472 F.3d 436 (6th Cir. 2007)...........................................................................................................10

*Picker Int'l, Inc. v. Varian Assoc., Inc.*, 869 F.2d 578, 583-84 (Fed. Cir. 1989)...................13

*Unified Sewage Agency of Washington Co. Ore. v. Jelco*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981)................................................................................................................13, 14

*Stratagem Dev. Corp. v. Heron Int'l, N.V.*, 756 F. Supp. 789, 794 (S.D.N.Y. 1991)....................................................................................................................13

*Fla. Ins. Guar. Ass'n v. Carey Canada, Inc.*, 749 F. Supp. 255, 261 (S.D. Fla. 1990)..............13

*Hartford  Acc. & Indem. Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 540 (S.D.N.Y. 1989)......13

*Harte Biltmore Ltd. v. First Penn. Bank, N.A.*, 655 F. Supp. 419, 421 (S.D. Fla. 1987)...........13

*Ehrich v. Binghamton Consol. Sch.*, 210 F.R.D. 17, 25 (N.D.N.Y. 2002)............................13

*Edelman v. Jordan*, 415 U.S. 651, 677, (1974).......................................................................16

*Quern v. Jordan,* 440 U.S. 332, 350-366 (1979)......................................................................16

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 60, (1994)....................................16

Statutes

42 U.S.C. § 1983……………………………………………………………………....16

Michigan Laws

1982 P.A. 138……………………………………………………………..…………..4, 5

Michigan Rules of Professional Conduct ("MRPC")

Rule 1.7……………………………………………………..…..……6, 8, 10, 11, 12, 14, 15

Rule 1.9……………………………………………………..………..6, 8, 11, 14, 15

MRPC Terminology - "Consult" or "Consultation"………………………………………12, 14

## EXHIBITS

Exhibit A - Management Agreement with G.B. Kenrick & Associates, Inc., a Michigan corporation, doing business as Tokio Marine HCC - Public Risk Group ("TMHCC").

Exhibit B - MTPP Ledger of Premiums Received from Peninsula Township

Exhibit C - Affidavit of David Kensler

Exhibit D - Affidavit of Jennifer Venema

Exhibit E - List of MTPP Re-Insurance Carriers

Exhibit F - Miller Canfield Invoice Summary and Proof of Payment for Legal Services Rendered to MTPP from July 2010 through May 17, 2022

Exhibit G - Letter from Miller Canfield's General Counsel in response to ECF 336-13, PageID.12432, 12433

## I.     INTRODUCTION

The Michigan Township Participating Plan ("MTPP") is an entity organized and existing under

1982 P.A. 138 of the State of Michigan.  MTPP is managed pursuant to a Management Agreement

with G.B. Kenrick & Associates, Inc., a Michigan corporation, doing business as Tokio Marine

HCC - Public Risk Group ("TMHCC"). (A copy of this Management Agreement is attached hereto

as Exhibit A).  MTPP was organized for the purpose of arranging insurance coverage for Michigan townships and other governmental entities, and to provide risk management and claims administration services for such entities.  (Exhibit A at page 1).  Defendant, Peninsula Township, was a member of MTPP, and obtained its insurance coverage through MTPP, from April 1, 1986, to July 21, 2014.  (MTPP Ledger of Premiums Received from Peninsula Township attached hereto as Exhibit B).

MTPP was established in 1985 by David Kensler as one its founding members.  (Affidavit of David Kensler attached hereto as Exhibit C at page 2).  The MTPP board hired Miller, Canfield, Paddock & Stone ("Miller Canfield") as its general counsel in the fall of 1985.  *Id.*  Miller Canfield acted as general counsel to MTPP and was deeply involved in MTPP's business and insurance affairs.  *Id.*  In Miller Canfield's own words, "Miller Canfield has been legal counsel to [MTPP] since its inception in 1985. [Miller Canfield] also played key role in drafting the authorizing legislation for [MTPP], being P.A. 138 of 1985."  (ECF 340-1, PageID.12518).  In fact, Miller Canfield's relationship with MTPP "extended even beyond the normal attorney-client relationship," such that personal bonds between Miller Canfield attorneys and MTPP personnel were established.  *Id.*  Quite plainly, Miller Canfield was general counsel to MTPP until February 13, 2023, when it fired MTPP in response to MTPP's request for information about the conflict of interest, which is the subject of this motion.  (ECF 329-9, PageID.11997, 11998).

Miller Canfield acted as MTPP's general counsel from 1985 until February 13, 2023.  (*See* Exhibit C at page 2; *see also* Affidavit of Jennifer Venema attached hereto as Exhibit D at page 2).  Plaintiffs' claims for damages in this matter appear to date back to June 5, 1972, when Peninsula Township adopted its original zoning ordinance.  (ECF 29, PageID.1092).  As such, Miller Canfield acted as general counsel to MTPP for thirty-eight (38) of the fifty-one (51) year

damages period that Plaintiffs claim.  If Plaintiffs are awarded damages for this period, MTPP will be responsible to pay a portion of such damages on Peninsula Township's behalf.  Therefore, MTPP's interests are directly in conflict with Plaintiffs' (and therefore Miller Canfield's) and Miller Canfield has then engaged in representation of Plaintiffs in direct conflict with the Michigan Rules of Professional Conduct ("MRPC") Rule 1.7 and Rule 1.9.  Accordingly, Miller Canfield must be disqualified from representing Plaintiffs in this matter.[1]

## II.     FACTUAL BACKGROUND

MTPP is designed to make money for its more than thirteen hundred townships, governmental entities, and members by providing dividends and discounts for participation in municipal insurance arrangements.  (Exhibit D at page 2).  From 1985 until 2011 MTPP's structure was essentially that of a group insurance pool - where MTPP arranged insurance coverage for Michigan townships and other governmental entities.  *Id*.  MTPP was re-insured by an independent third-party carrier selected by MTPP.  *Id.*  The reinsurer varied for given re-insurance periods.  *Id.* MTPP carries its own contingency policy (similar to tail insurance) to cover losses from 1985 to 2011.[2]  *Id.*  The contingency policy covers claims in the event that a re-insurer fails for any given re-insurance period.  *Id.*  Losses from 1985-2011, which are not covered by a re-insurer and which are in excess of the contingency policy limits, are the responsibility of MTPP.  *Id.*

In 2011, MTPP restructured and contracted with TMHCC to be the risk manager and administrator of MTPP's applicable insurance policies.  *Id.*  Accordingly, TMHCC issued a master

---

[1] Alternatively, Plaintiffs could simply amend their pleadings such that their claimed damages period would not begin until July 22, 2014 since the last policy of insurance Peninsula Township obtained through MTPP terminated on July 21, 2014.

[2] MTPP has respectfully declined to provide copies of its Contingency Policy documents with this Brief.  MTPP would be willing to produce such documents if requested, provided that such documents may only be produced under seal due to the proprietary business information contained therein.

policy for MTPP effective July 1, 2011, through July 1, 2019 (hereinafter the "Master Policy").[3]
*Id.* at page 3.  Each individual township member of MTPP which obtained insurance through
MTPP was issued a certificate of insurance under the Master Policy.  *Id.*  As an added benefit to
MTPP's members, because of the restructuring and relationship with TMHCC, MTPP began
offering dividends to its members based on profitability and introduced the MTPP Grant Program.
*Id.*  In addition, TMHCC pays MTPP a fee pursuant to the parties' restructuring agreement.  *Id.*
Miller Canfield facilitated, conducted, and/or drafted all of the negotiation and contracting
between MTPP and TMHCC with respect to MTPP's restructuring, dividend arrangement, and the
foregoing complex legal arrangements.  *Id.*  Indeed, the entire organization, income generation,
and operational structure was arranged and conducted by Miller Canfield since MTPP's inception.
*Id*.

Peninsula Township was an MTPP member and had obtained insurance through MTPP
since 1986.  *Id*. at page 2.  Accordingly, Peninsula Township continued its relationship with MTPP
following the restructuring and obtained certificates of insurance under the Master Policy
beginning July 21, 2011 and ending July 21, 2014.  *Id*. at page 3.  Thus, any claims paid under the
Master Policy between July 21, 2011 and July 21, 2014 would directly affect MTPP's income and
the dividends MTPP offers to its members.  *Id*.  In addition, Claims paid under the Master Policy
between July 21, 2011 and July 21, 2014 resulting in a significant loss would negatively affect the
performance of the Master Policy plan, MTPP's income, MTPP's competitiveness in the market.
*Id.*  Consequently, all members who are issued certificates of insurance under the Master Policy

---

[3] MTPP has respectfully declined to provide copies of its U.S. Specialty Insurance Company
Common Policy – Declarations for the policy period of July 1, 2011, through July 1, 2019, with
this Brief.  MTPP would be willing to produce such documents if requested, provided that such
documents may only be produced under seal due to the proprietary business information
contained therein.

plan would be subject to increases in their premiums.  *Id.*  Given the current scope of Plaintiffs' alleged damages dating back to 1972, MTPP will be financially liable to satisfy at least a portion of a judgment against Defendant Peninsula Township.  *See id.*

MTPP will also be directly responsible for damages under the re-insurance program.  If Plaintiffs are awarded damages for a time period when a given re-insurance company has failed, liability then shifts to MTPP.  *See id.* at page 2.  From 1985 to 2014, MTPP utilized at least seven (7) different re-insurers.  (List of MTPP Re-Insurance Carriers attached hereto as Exhibit E).  Some of these re-insurers have in fact failed as noted, and it remains unknown if others have also failed.  *See id.; see also* Exhibit D at page 2.  As such, should Plaintiffs succeed in their claims for damages against Peninsula Township, MTPP would be directly responsible for damages attributable to the failed re-insurers.  *See id.*  In addition, if Plaintiffs are awarded damages for any time period from 1985 to 2011, and such damages are in excess of its contingency policy limits, then MTPP will be directly responsible to satisfy the remaining judgment whether the re-insurer has failed or not.  *See* Exhibit D at page 2.

Because of the nature of these insurance relationships, claims for damages, and potential liability, counsel for Defendant Peninsula Township contacted Miller Canfield to notify them of the potential conflict.[4]  (ECF 329-1, PageID.11975, 11976).  Miller Canfield's response to such notification is perplexing.  Rather than withdrawing from representing Plaintiffs, or consulting with MTPP and requesting a conflict waiver as required by MRPC Rules 1.7 and 1.9, Miller

---

[4] In this regard, there may in fact be only two law firms which had reason to know that Miller Canfield had a conflict of interest with this case and MTPP.  Those firms being: 1) Miller Canfield, and 2) McGraw Morris.  Miller Canfield would have had reason to know of the conflict due to its thirty-eight (38) year representation of MTPP as its general counsel, and McGraw Morris had reason to know of the conflict because it represented MTPP in its litigation cases.  As this Court is aware, McGraw Morris became defense counsel of late.

Canfield asked its own client (at the time), MTPP, whether or not MTPP thought that Miller

Canfield had a conflict.  (ECF 329-4, PageID.11985; ECF 329-5, PageID.11989; ECF 329-6,

PageID.11991).  Obviously confused by Miller Canfield's request, Linda Preston, the MTPP Board

President asked Jennifer Venema to forward her email to Miller Canfield which stated:

> I don't think I fully understand the situation. Miller Canfield has a case and did a
> conflicts check way back when and it was not a conflict? Or it just wasn't done?
> Maybe it doesn't matter, but the board may want to know how we got into this.
>
> When Miller Canfield drafted the Par-Plan By-Laws, they recommended the
> following language:
>
>> Rule 3. Scope of Protection. The Par-Plan chose to adopt the forms
>> and endorsements of conventional insurance protection and to re
>> insure/insure these coverages 100% as opposed to utilizing a risk
>> pool of members funds to pay individual and collective losses up to
>> a given retention and then to have retention and then to have
>> reinsurance/insurance above that retention amount.
>
> Miller Canfield worked on the By-law language generally and the structure of the
> Par-Plan. And Ashley Higginson is our general counsel. When someone asks for a
> legal analysis or to give a legal opinion we rely on Ashley and Miller Canfield to
> provide it. And that is really what you are asking. Something like, does Miller
> Canfield have a conflict of interest with the Par-Plan, which is like a legal opinion,
> isn't it? And I am not our lawyer Ashley is, or you guys are.
>
> So would you please give us a formal legal opinion, as our lawyers, from Miller
> Canfield that we will we (sic) never be responsible for any money, damages, or
> anything associated with your -litigation matter against Peninsula Township- which
> you have been working on -for the past couple years.  Because this conflict or lack
> of a conflict looks like it's for the benefit of Miller Canfield we wouldn't expect to
> be charged for the opinion.
>
> If you can get that to me before our next March 3rd exec committee meeting, I can
> get that in front of them and then we can have full board review at its next meeting
> in April.  (ECF 329-7, PageID.11993).

In response, Miller Canfield fired MTPP, its client of thirty-eight (38) years allegedly because of

"a conflict [that] ar[ose] after representation ha[d] already been undertaken," despite this assertion

being patently false, as described in more detail below.  (ECF 329-9, PageID.11997).

### III.   <u>ARGUMENT</u>

**a.    The Michigan Rules of Professional Conduct ultimately require Miller Canfield's disqualification from representing Plaintiffs in this matter**

Federal Courts have the inherent authority to oversee attorneys practicing before them and to set standards for their conduct.  *See Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993).  Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law.  *El Camino Res., LTD. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007).   However, federal courts, are entitled to look to the state rules of professional conduct for guidance.  *Id. citing In re Snyder*, 472 U.S. 634, 645 n.6, (1985); *see also Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), vacated in part on other grounds, 472 F.3d 436 (6th Cir. 2007) (applying Michigan Rules of Professional Conduct).  Accordingly, this Honorable Court must evaluate Miller Canfield's conduct in accordance with the Michigan Rules of Professional Conduct ("MRPC").

MRPC Rule 1.7 - Conflict of Interest: General Rule, states that:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> >
> > (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation.  When representation of multiple clients in a single matter is undertaken, the consultation shall include

10

explanation of the implications of the common representation and the advantages and risks involved.

MRPC Rule 1.9 - Conflict of Interest: Former Client, states that:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

The principles in Rule 1.7 determine whether the interests of the present and former client are adverse.  Comments to MRPC 1.9.  The scope of a "matter" for purposes of th[e]s[e] rule[s] may depend on the facts of a particular situation or transaction.  *Id.*  The lawyer's involvement in a matter can also be a question of degree.  *Id.*  When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.  *Id.*  The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.  *Id.*

Loyalty is an essential element in the lawyer's relationship to a client.  Comments to MRPC 1.7.  An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined.  *Id.*  Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests.  *Id.*  The conflict in effect forecloses alternatives that would otherwise be available to the client.  *Id.*  The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.  *Id.*  Consideration should be given to whether the client wishes to accommodate the other interest involved.  *Id.*

11

A client may consent to representation notwithstanding a conflict.  *Id.*  However, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."  *Id.*  Moreover, a client may consent to representation notwithstanding a conflict only after "consultation."  MRPC Rule 1.7.  "Consult" or "consultation" as defined by the MRPC requires "communication reasonably sufficient to permit the client to appreciate the significance of the matter in question."  MRPC Terminology - "Consult" or "Consultation."

This is the root of Miller Canfield's conflict of interest.  An impermissible conflict of interest existed before its representation of Plaintiffs, and such representation should have been declined.  However, Miller Canfield proceeded to represent Plaintiffs in this matter, and to make matters worse, at no time, did Miller Canfield "consult" with MTPP, its client of thirty-eight (38) years, as required by the MRPC.[5]  (ECF 329-4, PageID.11985; ECF 329-5, PageID.11989; ECF 329-6, PageID.11991).  Even if Miller Canfield had consulted with MTPP as required by the MRPC, an objective disinterested lawyer would have concluded that MTPP should not agree to the representation under the circumstances.  Accordingly, Miller Canfield should not have asked

---

[5] Undersigned counsel notes that while the Model Rules of Professional Conduct adopted by the American Bar Association (Model Rules) are advisory rather than binding, Rule 1.7 of the Model Rules requires "informed consent," denoting an agreement to a proposed course of conduct after the lawyer has communicated "adequate information and explanation about the materials risks of and reasonably available alternatives to the proposed course of conduct." The consent of the client must also be confirmed in writing.  Model Rules 1.7(b)(4); Model Rules 1.0(e).

Under the Model Rules, informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Model Rules 1.0(e). The information required depends on the nature of the conflict and the nature of the risks involved. Comment [18] to Model Rules 1.7.

MTPP to waive the conflict so it could represent Plaintiffs.  Regardless, MTPP was obviously so confused by Miller Canfield's cryptic communications and request, that Linda Preston, the MTPP Board President's first sentence of her email response to Miller Canfield's request for a conflict wavier is: "I don't think I fully understand the situation."  (ECF 329-7, PageID.11993).

Rather than clarifying its request and engaging in meaningful consultation as required by the MRPC, Miller Canfield fired MTPP, its client of thirty-eight (38) years claiming that "a conflict [that] ar[ose] after representation ha[d] already been undertaken." (ECF 329-9, PageID.11997). This statement is false - just like Miller Canfield's claim that "[it] is not and has never been MTPP's general counsel."  (ECF 336, Page ID.12260; *see also* ECF 340, Page ID.12508, 12509; *see also* ECF 340-2, Page ID. 12522, 12523).

The courts universally hold that a law firm will not be allowed to drop a client in order to resolve a direct conflict of interest, thereby turning a present client into a former client.  *El Camino Res., LTD.*, 623 F. Supp. 2d at 877-78; *see also e.g., Picker Int'l, Inc. v. Varian Assoc., Inc.*, 869 F.2d 578, 583-84 (Fed. Cir. 1989); *see also Unified Sewage Agency of Washington Co. Ore. v. Jelco*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981); *see also Stratagem Dev. Corp. v. Heron Int'l, N.V.*, 756 F. Supp. 789, 794 (S.D.N.Y. 1991); *see also Fla. Ins. Guar. Ass'n v. Carey Canada, Inc.*, 749 F. Supp. 255, 261 (S.D. Fla. 1990); *see also Hartford  Acc. & Indem. Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 540 (S.D.N.Y. 1989); *see also Harte Biltmore Ltd. v. First Penn. Bank, N.A.*, 655 F. Supp. 419, 421 (S.D. Fla. 1987).

Pursuant to this universal rule, the status of the attorney/client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to the court.  *El Camino Res., LTD.*, 623 F. Supp. 2d at 878; *see also Ehrich v. Binghamton Consol. Sch.*, 210 F.R.D. 17, 25 (N.D.N.Y. 2002).  "If this were not the case, the challenged attorney could always

convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Id. quoting Unified Sewage Agency*, 646 F.2d at 1345 n.4.  This unilateral abrogation of the duty of loyalty cures nothing, but serves to make matters worse.  *Id.*

Miller Canfield acted as general counsel to MTPP for thirty-eight (38) years, providing legal services and counseling on everything MTPP ever needed beginning with drafting the very legislation that enables its existence, attending every or nearly every board meeting, maintaining minutes since 1985, defending against threats of litigation, and involving itself with all large losses sustained by MTPP.  (*See* Exhibit C at page 2; Exhibit D at page 3; *see also* ECF 340-1, PageID.12518).  Over the past twelve (12) years, Miller Canfield has billed, and MTPP has paid, $268,373.91 in attorney fees.  (*See* Exhibit C at page 2; *see also* Miller Canfield Invoice Summary and Proof of Payment for Legal Services Rendered to MTPP from July 2010 through May 17, 2022, attached hereto as Exhibit F).  As such, no objective disinterested lawyer could reasonably believe that Miller Canfield's decision to represent Plaintiffs would not affect its relationship with its current client, MTPP.  *See El Camino Res., LTD.*, 623 F. Supp. 2d at 870 (*e.g.* fees approaching $300,000 indicate a significant attorney client relationship).

Yet, when this conflict of interest was brought to its attention, Miller Canfield claimed it didn't have enough information on the matter - despite its extensive, intimate, thirty-eight (38) year knowledge of MTPP's complex inner workings - and fired MTPP.  (*See* ECF 329-9, PageID.11997).  Thus, at the time that the conflict arose, MTPP was a current client of Miller Canfield, not a former client, and the conflict must be analyzed in the context of MRPC Rule 1.7, not MRPC Rule 1.9.

Under MRPC Rule 1.7, regardless of whether Plaintiffs' interests are determined to be "directly adverse," or "materially limited" by Miller Canfield's responsibilities to MTPP, the

MRPC requires "communication reasonably sufficient to permit the client to appreciate the significance of the matter in question."  MRPC Terminology - "Consult" or "Consultation.[6]"  In this case, Miller Canfield did not "consult" with MTPP as required by the MRPC and there was no waiver.  Instead, Miller Canfield fired its client of thirty-eight (38) years in a sham attempt to couch the conflict under the more lenient standard in Rule 1.9 dealing with former clients.  (ECF 329-4, PageID.11985; ECF 329-5, PageID.11989; ECF 329-6, PageID.11991).  "[Miller Canfield] is not privileged to extinguish its duty of loyalty to [MTPP] by unilaterally turning it into a former client," and Miller Canfield conduct must be addressed by this Court.  *El Camino Res., LTD.*, 623 F. Supp. 2d at 879.  In this regard, MRPC Rule 1.7 ultimately requires Miller Canfield's disqualification based on the current state of affairs.

That said, Peninsula Township made numerous attempts to have Miller Canfield confirm that Plaintiffs' damages in this matter are limited to a period of time not beginning until July 22, 2014.  (ECF 336-13, PageID.12432, 12433).  However, on March 14, 2023, Miller Canfield expressly refused to agree to such limitation.  (Letter from Miller Canfield's General Counsel in response to ECF 336-13, PageID.12432, 12433 attached hereto as Exhibit G).  It was at this moment that MTPP realized Miller Canfield was unwilling to protect its interests.  Accordingly, at MTPP's most recent monthly board meeting held on April 17, 2023, the MTPP board voted to present this Motion to disqualify Miller Canfield as Plaintiffs' counsel.[7]  (Exhibit D at page 3; ECF 340-4, PageID.12534).  Had MTPP been notified of this conflict of interest at an earlier time, it would have taken appropriate action at that time.  (*See* Exhibit D at page 3).  As such, this Motion,

---

[6] *See also* footnote 5 above.
[7] Notably, this board meeting was the first MTPP board meeting held without an attorney from Miller Canfield present in its thirty-eight (38) year history, that we are aware of.

while late in the stages of litigation, is being made at the earliest possible moment that it could be presented to this Honorable Court.  *See id.*

**b.**    **In the alternative, Plaintiffs are not entitled to recover retroactive damages for their 42 U.S.C. § 1983 Claims**

Alternatively, MTPP hereby briefly raises the constitutional argument that Plaintiffs are not entitled recover damages retroactively in this matter should Miller Canfield be found not to have a conflict of interest.   In this regard, Plaintiffs have raised claims challenging the constitutionality of the relevant zoning ordinances as violations of freedom of speech, freedom of expression, free exercise of religion, freedom of association, and due process under the first and fourteenth amendments to U.S. Constitution.  (*Id.*, PageID.1116, 1118, 1120, 1121).  As stated previously, Plaintiffs' claims for damages in this matter appear to date back to June 5, 1972, when Peninsula Township adopted its original zoning ordinance at issue in this litigation.  (ECF 29, PageID.1092).  However, U.S. Supreme Court precedent with respect to 42 U.S.C. § 1983 claims against non-federal governmental entities is clear that "a federal court's remedial power … is necessarily limited to prospective injunctive relief, and may not include a retroactive award." *Edelman v. Jordan*, 415 U.S. 651, 677, (1974) (internal citations omitted).

The U.S. Supreme Court affirmed this principle again in 1979, holding that governmental entities are not "persons" for purposes of 42 U.S.C. § 1983, and thus are not liable for retroactive awards of damages in suits based on regulations they promulgate.  *See Quern v. Jordan,* 440 U.S. 332, 350-366 (1979).  It follows that if a non-federal governmental entity "were vulnerable at any time to retroactive damages awards in federal court, its ability to set its own agenda, to control its own internal machinery, and to plan for the future -- all essential perquisites of sovereignty -- would be grievously impaired."  *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 60, (1994).

Accordingly, it is MTPP's position that Plaintiffs' damages, if any, began in the year 2020 at the time they filed suit in this matter.  Furthermore, while Plaintiffs have refused to agree to limit their damages as plead in order to avoid a conflict of interest under the Michigan Rules of Professional Conduct[8], MTPP does not believe that Plaintiffs will ultimately be entitled to recover the retroactive damages that their pleadings seek.  As such, should this Honorable Court agree with MTPP on this matter and Order that all damages in Plaintiffs case shall not begin prior to 2020, then MTPP would not perceive a conflict of interest under the Michigan Rules of Professional Conduct and would deem this Motion moot.

## IV.   <u>CONCLUSION AND RELIEF REQUESTED</u>

WHEREFORE, non-party MTPP respectfully requests an Order from this Honorable Court disqualifying Miller Canfield as Plaintiffs' counsel.  In the alternative, non-party MTPP respectfully requests an Order from this Honorable Court requiring Plaintiffs to amend their pleadings such that their claimed damages period may not begin until July 22, 2014.

Respectfully Submitted,

SHINNERS & COOK, P.C.
*/s/ David R. Schambach*
Thomas A. Basil, Jr. (P45120)
David R. Schambach (P85690)
5195 Hampton Place
Saginaw, Michigan 48604-9576
Telephone: (989) 799-5000

Dated: May 23, 2023

---

[8] *See* Exhibit G.

17

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.3(B)(I)**

This Brief complies with the type-volume limitation of L. Civ. R. 7.3(b)(i) because this Brief contains 4,300 words.

*/s/ David R. Schambach*
David R. Schambach

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2023, I filed the foregoing via the Court's CM/ECF System, which will automatically provide notice of the filing to all registered participants in this matter.

*/s/ David R. Schambach*
David R. Schambach

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

                           Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

                           Defendant,

and

PROTECT THE PENINSULA,

                           Intervenor-Defendant.
                                                  /

Case No.:  1:20-cv-1008-PLM
Hon. Paul L. Maloney
Magistrate Judge Ray S. Kent

| | |
|---|---|
| Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>Joseph Mikhail Infante (P68719)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>300 Ottawa Avenue, NW, Suite 820<br>Grand Rapids, MI  49503<br>(616) 288-3700/Fax (616) 214-7712<br>brajsic@mcgrawmorris.com |
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431) |

| | |
|---|---|
| One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com |
| John Stephen Gilliam<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave. Ste 100<br>Bloomfield Hills, MI 48034<br>(248) 433-7082<br>jgilliam@plunkettcooney.com | Tracy Jane Andrews<br>LAW OFFICE OF TRACY JANE<br>ANDREWS<br>Attorneys for Intervenor Protect the<br>Peninsula, Inc.<br>619 Webster Street<br>Traverse City, MI 48686<br>(231) 714-9402<br>tjandrews@envlaw.com |
| Holly L. Hillyer (P85318)<br>OLSON BZDOK & HOWARD PC<br>Attorneys for Intervenor Protect the<br>Peninsula, Inc.<br>420 E. Front Street<br>Traverse City, MI 49686<br>(231) 946-0044<br>holly@envlaw.com | Thomas A. Basil, Jr. (P45120)<br>David R. Schambach (P85690)<br>SHINNERS & COOK, P.C.<br>Attorneys for Intervenor Michigan Township<br>Participating Plan<br>5195 Hampton Place<br>Saginaw, Michigan 48604-9576<br>Telephone: (989) 799-5000<br>tbasil@shinnerscook.com<br>dschambach@shinnerscook.com |

## CERTIFICATE OF ATTEMPT TO OBTAIN CONCURRENCE REGARDING MICHIGAN TOWNSHIP PARTICIPATING PLAN'S MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS

Pursuant to Local Rule 7.1(d), undersigned counsel for the Michigan Township Participating Plan contacted Attorney Joseph Infante with Miller Canfield for the Plaintiff on Tuesday, May 16, 2023, regarding its Motion to Disqualify Counsel for Plaintiffs in a good-faith effort to resolve the dispute or obtain concurrence, and was informed that this Motion is OPPOSED.

Respectfully Submitted,


*/s/ David R. Schambach*
David R. Schambach (P85690)
Thomas A. Basil, Jr. (P45120)
SHINNERS & COOK, P.C.
Attorneys for Intervenor Michigan Township
Participating Plan
5195 Hampton Place
Saginaw, Michigan 48604-9576
Telephone: (989) 799-5000
tbasil@shinnerscook.com
dschambach@shinnerscook.com


## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2023, I filed the foregoing via the Court's CM/ECF
System, which will automatically provide notice of the filing to all registered participants in this
matter.

*/s/ David R. Schambach*
David R. Schambach