UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
     Plaintiffs, )
     )  No. 1:20-cv-1008
-v- )
     )  Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
     Defendant, )
     )
and )
     )
PROTECT THE PENINSULA, INC., )
    Intervenor-Defendant. )
_____ )

## ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

   This matter is before the Court on Intervenor-Defendant Protect the Peninsula, Inc.'s

("PTP") objections (ECF No. 388) to Magistrate Judge Kent's order granting in part the

Plaintiff-Wineries' motion to compel (ECF No. 383). Because Judge Kent's order is not

contrary to law, The Court will overrule PTP's objections and affirm the entirety of the order.

<h3 align="center">I.  Facts</h3>

   After discovery closed in this matter and PTP was permitted to intervene, PTP moved

to modify the then-operative Case Management Order ("CMO") (ECF No. 249). In the

order granting in part PTP's motion to modify the CMO, the Court explained that PTP

would be able to participate in limited discovery:

> As for discovery that PTP seeks to pursue, such discovery will be limited to
> the issues that PTP has an interest in. That is, PTP may pursue discovery
> related to the nine issues that the Court indicated PTP has an interest in. And
> depending on the outcome of the Court's decision on the remaining three

issues, PTP may be able to pursue discovery related to those issues. As the Court indicated in the previous subsection, after the Court explicitly determines the claims that PTP may defend against, the Court will order the parties to confer. After they confer and file a joint status report, the Court will issue an amended CMO.

(ECF No. 301 at PageID.10704). The Court also explicitly stated that the Township "will merely play a reactive role" in discovery for the remainder of the case (*Id.*). That order was silent as to the Wineries' pursuit of discovery from PTP.

The Court then issued a second amended CMO outlining how this case would proceed following PTP's intervention and its role in discovery (ECF No. 343). The second amended CMO was tailored to PTP's role in the case, given that it had yet to participate as a party. The second amended CMO specifically noted that PTP would be permitted to serve up to 25 interrogatories and take up to 12 depositions (*Id.* at PageID.12547). The Court also imposed the following time limitations for depositions: "4 hours for new witnesses and 2 hours for witnesses who were previously deposed" (*Id.*).

But before the Court issued the second amended CMO, the Wineries served PTP with 11 interrogatories, 45 requests for production of documents ("RFPs"), and 37 requests to admit (ECF No. 322). PTP responded, but it also raised numerous objections (*see* ECF No. 347-1). The Wineries' discovery requests were aimed at pursuing information related to the 64 affirmative defenses PTP asserted in its amended answer (ECF No. 291 at PageID.10328-36). Of those 64 affirmative defenses, 37 were newly raised in PTP's amended answer. Many of PTP's affirmative defenses implicate PTP's members' interests in their property in Peninsula Township (*see* ECF No. 393 at PageID.14649-50) (providing examples of PTP's affirmative defenses that implicate the interests of "PTP and its

2

members"). In its initial disclosures, PTP also identified seven individuals who could testify as to "PTP and PTP member interests" (*see* ECF No. 393 at PageID.14651).

After PTP objected to the Wineries' first set of discovery requests, the Wineries filed a motion to compel (ECF No. 346). PTP's primary argument in response to the motion to compel was that the second amended CMO permitted only PTP to pursue discovery; it did not permit the Wineries to pursue discovery from PTP. Judge Kent held a hearing on the motion to compel on June 8, 2023 (ECF No. 371). Judge Kent granted in part and denied in part the motion to compel, specifically finding that the Wineries may pursue discovery from PTP, among many other nuanced findings (*see* ECF No. 383). Judge Kent also requested that the Wineries and PTP submit a proposed order in accordance with his oral rulings from the bench. They submitted such an order, and PTP has now filed several objections to that order (ECF No. 388). In response, the Wineries ask the Court to affirm the entirety of Judge Kent's order (ECF No. 393). On July 6, 2023, the Court heard oral argument on the objections (*see* ECF No. 400). As the Court indicated at the hearing, the Court will overrule PTP's objections.

## II.    Law

Rule 72(a) allows a party to object to a ruling by a magistrate judge by filing objections in the district court where the case is assigned. Fed. R. Civ. P. 72(a). Under the rule, the district court judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

The clearly erroneous standard applies to factual findings, which may be reversed only if the reviewing court, in light of the entire record, is left with the definite and firm conviction that a mistake has been made. *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence  is left with the definite and firm conviction that a mistake has been committed."); *United States v. Mandycz*, 200 F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)). This standard does not empower a reviewing court to reverse the magistrate judge's finding because it would have decided the matter differently. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)).

The magistrate judge's legal conclusions are reviewed under the "contrary to law" standard. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). The reviewing court must exercise independent judgment with respect to those legal conclusions and may overturn those conclusions which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Id.* (citation omitted). Because of the broad discretion afforded the magistrate judge, objections to discovery-related orders by a magistrate judge are frequently reviewed under the abuse of discretion standard. Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 3069 (2d ed. 2013).

### III.    Analysis

### A.  Wineries' Pursuit of Discovery from PTP

First, although it is not expressly stated in the order, PTP essentially appeals the entirety of Judge Kent's order because it allows the Wineries to pursue discovery from PTP. PTP argues that this Court "declined to reopen discovery for the original parties," and the second amended CMO reflects as much, as it only outlines the discovery efforts that PTP may take (*see* ECF No. 388 at PageID.14186-87) ("The Second CMO is clear and unambiguous that Plaintiffs may not depose PTP member[s] or serve interrogatories, absent good cause."). In response, the Wineries argue that, while the second amended CMO was primarily focused on PTP, it did not say that the Wineries could not engage in reciprocal discovery from PTP (*see* ECF No. 393 at PageID.14654). This argument is supported by the fact that the Court explicitly stated that the Township would not be permitted to take discovery following PTP's intervention, and it did not order the same for the Wineries (*see* ECF No. 301 at PageID.10704) ("[I]n regard to the Township's role in discovery moving forward, the Township will merely play a reactive role. The Township may not initiate discovery. However, it can certainly respond to discovery requests and attend any depositions that PTP takes.").

When Judge Kent considered this argument, he decided that the Wineries could pursue discovery from PTP. Judge Kent noted that discovery is a "two-way street," and that basic principles of fairness allow for both parties to take discovery from each other:

> Judge Maloney's order or orders were silent on plaintiffs' ability to do discovery against your client. [PTP] interpret[s] that as [the Wineries] don't get discovery. [The Wineries] interpret that as we get discovery because Judge

> Maloney was not silent as to the Township's ability to conduct additional discovery. He said no. I'm saying they get discovery. I mean, it's a two-way street. It always is. I can't imagine a system where only one side gets discovery and the other doesn't. And you chose to enter the fray and so you'll be treated the same as everybody else has been treated and that is you're subject to discovery. . . .

> I am ruling that [the Wineries are] entitled to discovery. The basis of my ruling is simple fairness. I mean, you can't have a litigation where one side gets discovery and the other doesn't. You're on the other side. You entered of your own volition. You're subject to discovery.

(*Transcript of Motion to Compel Hearing*, ECF No. 378 at PageID.14052-54). Alternatively, Judge Kent ruled that PTP had waived any objections to the Wineries' ability to conduct discovery, considering PTP had already responded to the Wineries' discovery requests:

> If you want an alternate basis, on the interrogatories at least, by answering, you waived any objection to not responding to discovery. I don't particularly want to go there because I think it's just fair that both sides are treated equally the same.

(*Id.* at PageID.14054).

The Court agrees with Judge Kent's ruling that discovery is a "two-way street." It would be unfair and prejudicial to the Wineries to allow PTP to take discovery from the Wineries but not allow the Wineries to take discovery from PTP. At the objections hearing, PTP argued that the Wineries had already engaged in months of discovery prior to PTP's intervention, and therefore, the Wineries need not engage in additional discovery. However, during the original discovery period, the Wineries took discovery from the Township, not PTP.[1] Thus, now that PTP is a party, principles of fairness allow the Wineries to pursue

---

[1] The Court acknowledges that at least one member of PTP was deposed during the original discovery period, but that deposition occurred because that individual (or individuals) was identified by the Township, following an order from Judge Kent, to identify specific individuals who could identify the governmental interests underlying the ordinances at

reciprocal discovery from PTP. Moreover, Judge Kent's alternative basis for his ruling—that PTP waived any objections to the Wineries' ability to pursue discovery from PTP—is also reasonable. PTP has not identified any authority providing that Judge Kent's order is contrary to law, and therefore, the Court affirms Judge Kent's oral ruling that the Wineries are permitted to take discovery from PTP.

### B.  "Relitigating" Intervention (RFPs #22, 24, 25)

Next, PTP objects to Judge Kent's order granting in part the Wineries' motion to compel responses to RFPs #22, 24, and 25, which seek documents related to PTP members' property interests, spray records, and trucking records:

RFP #22:

- **Request:** For every member of PTP identified on the list produced in response to Request to Produce #1, produce every deed, lease, mortgage, or other instrument demonstrating that the member has an interest in real property located within Peninsula Township.

- **Order:** Plaintiffs' motion with respect to Request to Produce # 22 is **GRANTED IN PART**. PTP shall produce documents showing the property interest of each of its members in Peninsula Township.

RFPs #24 & 25:

- **Request #24:** For every member of PTP identified on the list produced in response to Request to Produce #1 who also is a farmer, produce all trucking records for transporting produce within or outside Peninsula Township since January 1, 2017.

- **Request #25:** For every member of PTP identified on the list produced in response to Request to Produce #1 who is also a farmer, produce all spray schedules and records since January 1, 2017.

---

issue. As far as the Court is aware, that individual(s) was not deposed in his capacity as a member of PTP (*see Deposition of John Wunsch*, ECF No. 142-12).

- **Order:** Plaintiffs' motion with respect to Requests to Produce # 24 and 25 is **GRANTED IN PART.** PTP shall either present its sole farmer member (represented by counsel for PTP to be Barbara Wunsch) for a deposition to answer these discovery requests or produce the documents to Plaintiffs. If PTP chooses to produce documents, it may designate them according to the Protective Order at ECF No. 75. Plaintiffs may subsequently challenge any designations according to ECF No. 75.

(ECF Nos. 347-1; 383).

PTP appeals the granting in part of these RFPs because PTP argues that the documents sought in these requests are "aimed at revisiting PTP members' intervention interests" (ECF No. 388 at PageID.14188). According to PTP, the Wineries seek to "probe the basis for PTP members' interests" and use such information to challenge PTP's intervention (*Id*.).

At the hearing on the motion to compel, the issue of PTP's intervention was raised numerous times. During argument related to PTP's production of a privilege log, PTP's attorney noted that PTP and the Township had signed a joint defense agreement (ECF No. 378 at PageID.14072) ("Well, why would communications between me and the Township— we have a joint defense agreement. We have a common interest in defending this litigation."). The Wineries' attorney immediately jumped on this statement and explained that he would "move to have [PTP's] intervention dismissed because one of the intervention factors is that the Township is unable to represent their interest because they don't share an interest" (*Id*.). The issue of PTP's intervention was also brought up during the Wineries' argument on RFPs #24 and #25:

> MR. INFANTE: But the other thing is what I hear Ms. Andrews saying -- you know, it's funny. Her defense to producing documents is, well, that's not relevant because the only issue that's relevant is the face of the ordinance -- on

the face of the ordinance is it constitutional or is it preempted by state law. Then why are they here? Why did they insert themselves into –

THE COURT: Okay. All right. That's an – that's an argument for a different judge on a different day.

(*Id.* at PageID.14088). Every time the Wineries attempted to challenge whether PTP's intervention was proper, Judge Kent declined to hear any argument on the issue, noting that it was not an issue for him to decide that day and that the Wineries "can file the motion" to challenge PTP's intervention if they so pleased (*see id.* at PageID.10472).

PTP's argument challenging the order regarding RFPs #22, 24, and 25 solely concerns the Wineries' efforts to "relitigate" intervention. Although the Wineries may challenge PTP's intervention in the future, Judge Kent's rulings on RFPs #22, 24, and 25 were not based on the Wineries' future attempts to challenge PTP's intervention. In fact, Judge Kent shut down such arguments every time the Wineries' counsel raised them. Instead, Judge Kent granted in part the Wineries' motion to compel documents sought under RFP #22 to ensure that PTP members do indeed own property in Peninsula Township[2] (*see id.* at PageID.14080-83), and he granted in part the Wineries' motion to compel documents sought under RFPs #24 and 25—documents related to PTP farmers' spraying and trucking efforts—because PTP put its members' use of their property at issue in affirmative defenses Q and JJJ (*see id.* at PageID.14084-89); (*see also PTP's Amended Answer*, ECF No. 291 at PageID.10329, 10335). Because PTP's objection misconstrues Judge Kent's reasoning for granting the

---

[2] Judge Kent denied the request with respect to the Wineries' pursuit of mortgage and appraisal documents (*see* ECF No. 378 at PageID.14080-83).

motion to compel responses to RFPs #22, 24, and 25, and Judge Kent's order is not contrary to law, the Court affirms Judge Kent's order on this issue.

### C. Searching for Texts and Other Communications (RFPs #5-12, 15)

Next, PTP objects to Judge Kent's order granting in part the Wineries' motion to compel responses to RFPs #5-12 and 15, which seek documents related to PTP members' communications regarding this lawsuit:

> **RFP #5:** Produce all communications between PTP members referring or relating to this Lawsuit.
>
> **RFP #6:** Produce all communications between PTP members referring or relating to any Peninsula Township Winery.
>
> **RFP #7:** Produce all communications between PTP, or any member of PTP, and any current or former member of the Peninsula Township Board and/or the following Peninsula Township officials: planner, director of zoning, zoning administrator, assessor, sheriff deputy, treasurer, ordinance enforcement officer, office manager, supervisor or clerk referring or relating to this Lawsuit.
>
> **RFP #8:** Produce all communications between any member of PTP and any of Peninsula Township's attorneys (past or present) referring or relating to this Lawsuit.
>
> **RFP #9:** Produce all communications between any member of PTP and any third party referring or relating to this Lawsuit.
>
> **RFP #10:** Produce all communications between any member of PTP and any member of the Peninsula Township Board and/or the following Peninsula Township officials: planner, director of zoning, zoning administrator, assessor, sheriff deputy, treasurer, ordinance enforcement officer, office manager, supervisor or clerk since October 1, 2020 referring or relating to any Peninsula Township Winery.
>
> **RFP #11:** Produce all communications between any member of PTP and any of Peninsula Township's attorneys (past or present) since October 1, 2020 referring or relating to any Peninsula Township Winery.

**RFP #12:** Produce all communications between any member of PTP and any third party since October 1, 2020 referring or relating to any Peninsula Township Winery.

**RFP #15:** Produce all communications between PTP, its members, and/or its attorneys and any members of the public regarding how "Plaintiff's intended engagement in commercial activity in the A-1 Agricultural district without the limitation established by the challenged zoning provisions would be injurious to the public and the surrounding land uses, and therefore would constitute public nuisances in fact and per se."

**Order:** Plaintiffs' motion with respect to Requests to Produce # 5–15 is **GRANTED IN PART.** For Requests to Produce # 5–15, PTP must search text messages from each of its members for the period from October 21, 2020 (i.e., the date the original complaint was filed in this lawsuit) to the present for information about any claims or defenses (including PTP's affirmative defenses) in this lawsuit. For Requests to Produce # 11, 13, 14, and 15, PTP shall perform an additional search for responsive documents. Once all responsive documents have been produced, PTP shall submit an affidavit from its current president attesting to the fact that all responsive documents have been produced with respect to each individual request. To the extent that any responsive documents contain privileged information, PTP shall log that in a privilege log as ordered below.

(ECF Nos. 347-1; 383).

PTP objects to this portion of Judge Kent's order for three reasons: (1) PTP already searched for responsive documents to these requests and found very few;[3] (2) these requests seek irrelevant documents; and (3) the amount of discovery requested is not proportional to the needs of this case (*see* ECF No. 388 at PageID.14191).

PTP essentially raised all of these arguments at the motion to compel hearing,[4] and Judge Kent either outwardly rejected them or ordered PTP to "try searching again" by

---

[3] PTP did not search for responsive text messages; it only searched for responsive emails because "PTP reasonably concluded texts would be even more labor-intensive and less fruitful" (ECF No. 388 at PageID.14191).
[4] Judge Kent's asserted failures to "address relevancy" and "consider proportionality" were two out of three of PTP's main arguments asserted at the objections hearing in front of this Court.

conducting another search for responsive documents and producing an affidavit attesting to its search efforts. For example, with respect to PTP's argument that searching for such responsive documents/text messages would be overburdensome, Judge Kent noted that PTP only had "a handful of members"—eleven to be exact (*see* ECF No. 378 at PageID.14075). Moreover, Judge Kent limited the scope of these requests by ordering PTP to produce only "communications regarding the claims and defenses in this case":

> MR. INFANTE: I want communications regarding the claims and defenses in this case. They have 67 affirmative defenses, and we plan to start knocking those out.
>
> THE COURT: Okay. Stop right there. I'm ordering that. So search for -- if there are discussion – text discussions with your members by or involving your members on your members' devices having to do with claims or defenses including all of the affirmative defenses, produce them. If there aren't any, affidavit from the president [of PTP].

(*Id.* at PageID.14079-80).

Given the limited scope of Judge Kent's order regarding RFPs #5-12 and 15, and the fact that it is not unreasonable to order PTP to "search again" for documents in response to these requests—especially considering PTP has yet to search through its eleven members' text messages—the Court rejects all of PTP's arguments on RFPs #5-12 and 15 and affirms Judge Kent's order addressing these RFPs.

### D. Privilege Log

Finally, PTP objects to Judge Kent's rulings regarding the preparation of a privilege log. PTP invoked various privileges in response to RFPs #5-15 and 27-32 (*see* ECF No. 341-1). Judge Kent ordered PTP to produce a privilege log with the following parameters:

> Plaintiffs' motion with respect to its request for PTP to produce a privilege log is **GRANTED**. PTP shall prepare a privilege log and deliver it to Plaintiffs. PTP has no obligation to log attorney-client privileged documents between its members and its attorneys since it filed its motion to intervene. However, if PTP is claiming privilege over any communications with Peninsula Township's attorneys, PTP must log all of those communications regardless of when they occurred.

(ECF No. 383 at PageID.14127). PTP raises two objections to this portion of Judge Kent's order: (1) that it should not be obligated to log attorney-client privileged documents between its members and attorneys from the time this case was commenced to when PTP moved to intervene (October 21, 2020 through February 16, 2021); and (2) logging privileged work-product communications between PTP and the Township's counsel is unnecessary and overly burdensome.

First, with respect to logging privileged documents between the date this case was commenced and the date PTP moved to intervene, PTP merely argues that "[t]here is no practical reason for PTP to log" such communications (*see* ECF No. 388 at PageID.14194). PTP raised this exact argument, almost verbatim, in its response to the Wineries' motion to compel (*see* ECF No. 364 at PageID.13315). Albeit, without specific reasoning, Judge Kent rejected this argument:

> MS. ANDREWS: Well, and, Your Honor, we addressed this in our response, but we intervened in February. I was hired in late October prior to intervention. I'm not sure what those first four months gain us. PTP was represented in this -- I sent a letter to counsel saying PTP has an interest and we intend to intervene. So I'm not sure those -- I think it's approximately November, December, January, three and a half months of correspondence.

> THE COURT: Well, is -- I mean, I think you still have to log it.

(ECF No. 378 at PageID.14070). In its objection, PTP fails to develop a substantive argument as to why these communications should not be logged, the Court considers it waived.[5] It is not clear why PTP believes "there is no practical reason" for PTP to log these communications. Given the contentious nature of this case, the numerous past discovery disputes, and the inevitable future discovery disputes, the Court finds that there are many practical reasons for PTP to log allegedly privileged communications.

Second, with respect to logging "privileged" communications between PTP and the Township's counsel, at the motion to compel hearing, the Wineries argued that such communications are not privileged, as the Township is not a client of PTP's (*see* ECF No. 378 at PageID.14071-72) ("MR. INFANTE: -- they have to log. But what they're going to log and what they're not going to log because we don't believe that communication -- communications with the members of PTP, sure, privileged. Communications with the -- between Ms. Andrews and the Township, not privileged. Andrews and the Township attorneys, not privileged."). In response, PTP acknowledged that PTP and the Township signed a joint defense agreement,[6] making such communications privileged (*see id.* at PageID.14072). Judge Kent acknowledged that, due to the joint defense agreement, such communications are privileged, but to be safe, ordered PTP to log them:

> I mean, you're asking for communications between PTP's lawyers and the Township's lawyers, and I'm saying those communications are -- accepting

---

[5] Moreover, this argument is merely repeated from PTP's response to the motion to compel, and the Court can also overrule this objection for this reason. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in th[e] context [of Fed. R. Civ. 72(b)(2)].").

[6] PTP and the Township executed the joint defense agreement on October 27, 2021 (*see* ECF No. 395), six days after this Court denied PTP's motion to intervene and over a year after the Wineries commenced this case.

> your representation as an officer of the court, Ms. Andrews, that there's a joint defense agreement, I'm recognizing the joint defense privilege and saying that those documents do not have to be produced. I suppose we could log them . . . That way we know what they are. At least we'd know generally what they are.

(*Id.* at PageID.14073). Now, PTP argues that such communications are irrelevant to the claims in this lawsuit and logging them would be overly burdensome.

For the same reasons articulated above—especially due to the contentious nature of this case and the Wineries' assertions that they intend to challenge PTP's privilege designations (*see* (ECF No. 393 at PageID.14661)—the Court finds that Judge Kent was not incorrect in erring on the side of caution and ordering PTP to log these communications. Moreover, with respect to PTP's argument that logging such communications would be overly burdensome, at the motion to compel hearing, PTP conceded that it was unsure how many communications were at issue, and therefore, Judge Kent rejected this argument:

> MS. ANDREWS: We believe that would be excessively burdensome considering –
>
> THE COURT: How many could there be?
>
> MS. ANDREWS: Fair question. I don't know. That's a fair question.
>
> THE COURT: Well, how can you argue it's excessively burdensome then?
>
> MS. ANDREWS: You're -- no. You're – it's –
>
> THE COURT: Log them. I don't think it's going to be that burdensome.

(*Id.* at PageID.10473-74). In the Court's judgment, PTP has failed to show that Judge Kent's order providing that PTP log its privileged communications between PTP and Township attorneys is contrary to law.

Alternatively, PTP asks the Court to allow PTP to produce only a categorical privilege log instead of a detailed privilege log in order to protect its litigation strategies (*see* ECF No. 388 at PageID.14196). But the Wineries "intend to challenge the privilege designations on these communications, so a categorical privilege log is not helpful" (ECF No. 393 at PageID.14661). Indeed, considering challenges to PTP's privilege log appear to be inevitable, a detailed privilege log seems to be necessary instead of a general categorical privilege log.

Because PTP has failed to meet its burden in establishing that Judge Kent's order is contrary to law, the Court will affirm the entirety of the order and overrule PTP's objections.

Accordingly,

**IT IS HEREBY ORDERED** that PTP's objections to the Magistrate Judge's order (ECF No. 388) are **OVERRULED**. The Magistrate Judge's order granting in part and denying in part the Wineries' motion to compel (ECF No. 383) is **AFFIRMED** in its entirety.

**IT IS SO ORDERED**.

Date:  July 14, 2023                                     /s/ Paul L. Maloney
                                                                    Paul L. Maloney
                                                                    United States District Judge

16