UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

                Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

                Defendant,

and

PROTECT THE PENINSULA,

                Intervenor-Defendant.

Case No.: 1:20-cv-1008-PLM
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

**BRIEF IN SUPORT OF DEF.
PENINSULA TOWNSHIP'S
MOTION FOR SUMMARY
JUDGMENT ON PREEMPTION
CLAIMS**

**\*\*ORAL ARGUMENT REQUESTED\*\***

| | |
|---|---|
| Joseph Mikhail Infante (P68719)<br>Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000)<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>Tracey R. DeVries (P84286)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>300 Ottawa Avenue, NW, Suite 820<br>Grand Rapids, MI 49503<br>(616) 288-3700/Fax (616) 214-7712<br>brajsic@mcgrawmorris.com<br>tdevries@mcgrawmorris.com |
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com |

| | |
|---|---|
| John Stephen Gilliam (P81421)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave. Ste 100<br>Bloomfield Hills, MI 48034<br>(248) 433-7082<br>jgilliam@plunkettcooney.com | Tracy Jane Andrews (P67467)<br>Holly L. Hillyer (P85318)<br>TROPOSPHERE LEGAL<br>Attorneys for Intervenor<br>619 Webster Street<br>Traverse City, MI 48686<br>(231) 714-9402<br>tracy@tropospherelegal.com<br>holly@tropospherelegal.com |

**<u>BRIEF IN SUPPORT OF DEFENDANT PENINSULA TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT ON PREEMPTION CLAIMS</u>**

**<u>** ORAL ARGUMENT REQUESTED**</u>**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

EXHIBITS .......................................................................................................... iv

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS .............................................................................. 2

   A.  Statutory Grant of Authority for the PTZO ........................................... 2

   B.  Winery Operations Under the PTZO As Challenged in Plaintiffs' First Amended
       Complaint.......................................................................................... 3

       1.   Section 6.7.2(19) – Farm Processing Facility. ................................. 4

       2.   Section 8.7.3(10) – Winery-Chateau........................................... 4

       3.   Section 8.7.3(12) – Remote Winery Tasting Room. ......................... 5

   C.  Plaintiffs Claim Preemption of Winery-Related Ordinances....................... 5

   D.  The Township Amended the "Winery Ordinances" Through Amendment 201 in
       December, 2022. ................................................................................ 8

LAW AND ARGUMENT ....................................................................................... 10

III.  STANDARD OF REVIEW ........................................................................... 10

IV.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A CASE OR CONTROVERSY
      ON THE PREEMPTION CLAIM................................................................... 11

   A.  Because the Township has Taken no Actions Against Plaintiffs, the Preemption Claim
       Amounts to Plaintiffs' Attempt to Obtain an Advisory Opinion Regarding the Interplay
       between the MLCC and PTZO. ............................................................ 12

   B.  Plaintiffs' Preemption Claims are Moot because Amendment 201 to the PTZO
       Removed the Sections of the PTZO Plaintiffs Claim are Preempted by the MLCC......... 15

V.    THE MLCC DOES NOT PREEMPT THE PTZO.............................................. 18

   A.  Discussion of Statutory Underpinnings of the MZEA and MLCC.................. 19

   B.  Preemption Standards ........................................................................ 200

   C.  None of the Ordinances Challenged Constitute a Complete Prohibition on the Conduct in
       Peninsula Township, but Rather Limit the Conduct Based on the Township's Authority to
       Zone. ............................................................................................... 24

       1.   The PTZO can regulate Plaintiffs' hours of operation................................ 24

       2.   The PTZO can regulate amplified music. ........................................... 28

       3.   The PTZO can regulate catering. ..................................................... 30

       4.   The PTZO can regulate restaurants. ................................................ 31

VI.   PLAINTIFFS ARE NOT ENTITLED TO MONEY DAMAGES FOR A PREEMPTION
      CLAIM AND, IF THEY ARE, PENINSULA TOWNSHIP IS IMMUNE UNDER THE
      MICHIGAN GOVERNMENTAL TORT LIABILITY ACT. ............................... 33

CONCLUSION AND RELIEF REQUESTED ............................................................ 35

TABLE OF AUTHORITIES

Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937) ............................................. 13

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ............................................................. 10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............ 10

*Assiniboine & Sioux Tribes of Ft. Peck Indian Reservation v. Bd. of Oil & Gas Conservation*, 792 F.2d 782 (9th Cir. 1986) .................................................................................................. 12

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289; 99 S.Ct. 2301 (1979) ..................... 11

*Bench Billboard Co. v. City of Covington, Ky.*, 2010 WL 420064 (E.D. Ky., Feb. 1, 2010) ....... 15

*Bundo v. Walled Lake*, 395 Mich. 679; 238 N.W.2d 154 (1976) ................................................ 26

*Cady v. City of Detroit*, 289 Mich. 499; 286 N.W. 805 (1939) .................................................. 21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .................... 10

*Davis v. McCourt*, 226 F.3d 506 (6th Cir. 2000) ....................................................................... 10

*DeRuiter v. Twp. of Byron*, 505 Mich. 130; 949 N.W.2d 91 (2020) ................................... passim

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889 (6th Cir. 1991) .......................... 10

*Flast v. Cohen*, 392 U.S. 83; 88 S.Ct. 1942 (1968) .................................................................... 11

*Gonzaga Univ. v. Doe*, 536 U.S. 273; 122 S.Ct. 2268 (2002) ..................................................... 33

*Grand/Sakwa of Northfield, LLC v. Northfield Twp.*, 304 Mich.App. 137; 851 N.W.2d 574 (2014) .............................................................................................................................. 16, 17

*Grubb v. W.A. Foote Memorial Hosp. Inc.*, 741 F.2d 1486 (6th Cir. 1984) ................................ 33

*Harris Corp. v. Comair, Inc.*, 712 F.2d 1069 (6th Cir. 1983) .................................................... 33

*Heath Twp. v. Sall*, 442 Mich. 434; 502 N.W.2d 627 (1993) .................................................... 17

*In re Bradley Estate*, 491 Mich 367; 835 N.W.2d 545 (2013) .................................................... 34

*Johnson v. City of Detroit*, 446 F.3d 614 (6th Cir. 2006) .......................................................... 33

*Jott, Inc. v. Clinton Charter Twp.*, 224 Mich. App. 513; 569 N.W.2d 841 (1997) ............... 20, 26

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) ..................................................... 12

*Klyman v. City of Troy*, 40 Mich.App. 273; 198 N.W.2d 822 (1972) ......................................... 16

*Landon Holdings, Inc. v. Grattan Twp.*, 257 Mich. App. 154; 667 N.W.2d 93 (2003) ......... 16, 17

*Lyon Charter Twp. v. Petty*, 317 Mich. App. 482; 896 N.W.2d 477 (2016) ............................... 17

*MacDonald Advertising Co. v. McIntyre*, 211 Mich. App. 406; 536 N.W.2d 249 (1995) ........... 16

*Mack v. City of Detroit*, 467 Mich. 186; 649 N.W.2d 47 (2002) .......................................... 34, 35

*Maple BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich. App. 505; 838 N.W.2d 915 (2013) ........................................................................................................................ 20, 21, 26

*Mutchall v. City of Kalamazoo*, 323 Mich. 215; 35 N.W.2d 245 (1948) .................................... 26

*Nat'l Amusement Co. v. Johnson*, 270 Mich. 613; 259 N.W.2d 342 (1935) ............................... 23

*Noey v. Saginaw*, 271 Mich. 595; 261 N.W. 88 (1935) .............................................................. 26

*Oldham v. Am. Civ. Liberties Union Found. of Tenn., Inc.*, 849 F.Supp. 611 (M.D. Tenn. 1994) ....................................................................................................................................... 12

*Oppenhuizen v. Zeeland*, 101 Mich. App. 40; 300 N.W.2d 445 (1980) ...................................... 20

*Padecky v. Muskegon Charter Township*, ___ N.W.2d ___, 2022 WL 4112075 (2022) ....... 24, 25

*People v. Llewellyn*, 401 Mich. 314, 322; 257 N.W.2d 902 (1977) ........................................... 21

*R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) ..................................... 27

*Railway Mail Assn. v. Corsi*, 326 U.S. 88; 65 S.Ct. 1483 (1945) .............................................. 11

*Renne v. Geary*, 501 U.S. 312; 111 S.Ct. 2331 (1991) .............................................................. 11

*Rodney Lockwood & Co. v. City of Southfield*, 93 Mich. App. 206; 286 N.W.2d 87
  (1979)… ...................................................................................................... 16, 17, 18
*Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648 (6th Cir. 2005) ..................... 13, 15
*St. Francis Health Care Centre v. Shalala*, 205 F.3d 937 (6th Cir. 2000) ................................... 10
*Ter Beek v. City of Wyoming*, 495 Mich. 1, 24 n.9; 846 N.W.2d 531 (2014) ................. 23, 24, 32
*Tuscola Wind III, LLC v. Almer Charter Township*, 327 F.Supp.3d 1028 (E.D. Mich. 2018)..... 15
*Van Buren Twp. v. Garter Belt Inc.*, 258 Mich. App. 594; 673 N.W.2d 111 (2003) .................. 27
*Vill of Belle Terre v. Boraas*, 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974) ......................... 21
*Walsh v. City of River Rouge*, 385 Mich. 623; 189 N.W.2d 318 (1971) ..................................... 21

Statutes
MCL 125.3201 ............................................................................................................................... 21
MCL § 125.3291 ............................................................................................................................... 3
MCL 125.3401(5) .......................................................................................................................... 28
MCL 125.3801 ................................................................................................................................. 2
MCL 436.1536(7)(g) ...................................................................................................................... 19
MCL 436.1536(7)(h) ................................................................................................................. 19, 32
MCL 436.1547 ............................................................................................................................... 30
MCL 436.1547(1)(b) ................................................................................................................ 30, 32
MCL 436.1916(11) .................................................................................................................. 19, 28,29
MCL 436.2114 .......................................................................................................................... 24, 25
MCL 691.1407(1) ..................................................................................................................... 34, 35

Other Authorities
13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3529 (3d ed.
  2023).......................................................................................................................................... 12
Mich. Admin. Code R 436.1403 .................................................................................................... 24
Mich. Admin. Code R. 436.1003 ............................................................................................ passim
Mich. Admin. Code R. 436.1003(1) ....................................................................................... passim
Mich. Admin. Code R. 436.1105(3) .............................................................................................. 22

Rules
Fed. R. Civ. P. 56(e) ...................................................................................................................... 10

Constitutional Provisions
CONST Art. 7, §34 ........................................................................................................................ 21
U.S. Const. Art. III, sec 2............................................................................................................... 11

EXHIBITS

Exhibit 1       -          Township Master Plan ECF No. 29-1, PageID.1180

Exhibit 2       -          Zoning Ordinance Amendment No. 201

Exhibit 3                   Select Liquor Licenses Issued to Plaintiffs

Exhibit 4       -           *Padecky v. Muskegon Charter Township*, ___ N.W.2d ___, 2022 WL 4112075 (2022)

## I.  INTRODUCTION

Defendant Peninsula Township is entitled to summary judgment on Plaintiffs' preemption claims. Plaintiffs assert various sections of the Peninsula Township Zoning Ordinance ("PTZO") are preempted by the Michigan Liquor Control Code ("MLCC").  Such claims are legally unsupported.  First, Plaintiffs lack standing to assert the preemption claims as there is no case or controversy supporting this declaratory action.  Further, in December, 2022, the Township passed Amendment 201 to the PTZO that eliminates all of the challenged ordinance sections.  As such, Plaintiffs' preemption claims are moot.

If Plaintiffs' preemption claims survive the standing and mootness challenges set forth below, the MLCC does not preempt the PTZO.  The MLCC governs the sale of liquor in Michigan, does not preempt the PTZO (a zoning ordinance enacted pursuant to the MZEA) but rather requires license holders to comply with all local zoning. The MLCC imposes the co-existence between local zoning and statewide regulation through the state law's plain language, the administrative rules, and licenses issued by the Liquor Control Commission (the "Commission"). *See* Mich. Admin. Code R. 436.1003.

This co-existence is logical as the MLCC governs licensing of the sale of liquor, while the PTZO governs the use of land the structures that exist on it (e.g., when and where the use of land is permissible).  Pursuant to binding Michigan precedent, the Township is authorized by the MZEA and the zoning ordinance to place further restrictions on principal liquor-related uses and activities, the structures they are located within, and the related accessory uses and activities, so long as those restrictions do not amount to a complete prohibition of the use or activity.  Here, the PTZO does not ban Plaintiffs from engaging in any of the activities they propose. To the contrary, Plaintiffs must simply comply with land-use requirements. All of Plaintiffs operate in the A-1 Agricultural

District ("A-1 District"), which is limited to agricultural uses and permitted accessory uses. However, Plaintiffs propose using their agriculturally-zoned land to engage in commercial uses. Plaintiffs are not prohibited from engaging in commercial uses within the Township.  If that is what they seek, they are free to engage in those activities in the C-1 Commercial District ("C-1 District").

Finally, if Plaintiffs' preemption claim survives on the merits, money damages are not recoverable for a preemption claim.  Even if money damages were recoverable, the Township is immune under the Governmental Tort Liability Act ("GTLA"), MCL 691.1401, *et seq.*

## II.    STATEMENT OF FACTS

### A.  Statutory Grant of Authority for the PTZO

Pursuant to the powers granted by successor state laws to the MZEA, MCL 125.3101, *et seq.*, and the Michigan Planning and Enabling Act, MCL 125.3801, *et seq.* ("MPEA"), in 1972 the Township adopted a comprehensive municipal zoning ordinance based on its plan to preserve farmland and open space, which has been amended at various points since.  (ECF No. 29-1). The PTZO has the express purpose of, among other things: (1) protecting "the public health, safety, morals and general welfare" of the Township's inhabitants; (2) encouraging "the use of lands and resources of the Township in accordance with their character and adaptability"; (3) "to provide for safety in traffic, adequacy of parking and reduce hazards to life and property; and (4) "to conserve life, property, natural resources and the use of public funds to public services and improvements to conform with the most advantageous use of lands, resources and properties."  (ECF No. 29-1, PageID.1142).

The MZEA expressly permits the Township's purposes in enacting the Ordinances:

A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning

jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, <u>to ensure that use of the land is situated in appropriate locations and relationships</u>, <u>to limit the inappropriate overcrowding of</u> land and congestion of population, <u>transportation systems, and other public facilities</u>, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, <u>and to promote public health, safety, and welfare.</u>

MCL § 125.3291 (emphasis added).

Plaintiffs operate on land planned under the Township land use plan and zoned by the PTZO as A-1 agricultural. Some of Plaintiffs, consistent with other farmland and open space within the Township, are further subject to development rights agreements and the Township's related regulations of the same.[1] Pursuant to authority granted to the Township under the MZEA and MPEA, the intent and purpose of creation of the A-1 District is:

> This District is intended to recognize the unique ecological character of the Peninsula and to preserve, enhance, and stabilizing existing areas within the Township which are presently being used predominately for farming purposes, yet recognize that there are lands within the district which are not suited to agriculture, therefore allowing other limited uses which are deemed to be compatible with agricultural and open space uses.

(Exhibit 1, Township Master Plan).  The Master Plan further describes the existing land uses and zoning for the Township, including the A-1 District, and future land use for the A-1 District. (Exhibit 1 at 20-34).

B. <u>Winery Operations Under the PTZO As Challenged in Plaintiffs' First Amended Complaint.</u>

Plaintiffs, except for organizational Plaintiff Wineries of Old Mission Peninsula, are subject to compliance with the PTZO, including, but not limited to, general regulations,

---

[1] See Township Ordinance No. 23, as amended:
https://www.peninsulatownship.com/uploads/1/0/4/3/10438394/ordinance_23_-_3rd_ammendment_purchase_of_development_rights.pdf .

definitions, supplemental regulations, site plan approvals, and the terms of each of their Special Use Permits ("SUP"). Plaintiffs broadly challenge winery operations under three sections of the PTZO: Section 6.7.2(19) (farm processing facilities), Section 8.7.3(10) (winery-chateaus), and Section 8.7.3(12) (remote tasting rooms).[2]

    1.   <u>Section 6.7.2(19) – Farm Processing Facility</u>.

Farm Processing Facilities are permitted as a use by right under the PTZO. As such, so long as the use is in compliance with the conditions and regulations of the PTZO (for example, general regulations, site plans and land use permits for structures) and the specific limitations contained in Section 6.7.2(19), no SUP is required for a winery to operate as a Farm Processing Facility. They must, however, obtain approval through applicable site plan review, farm processing permits and land use permits. Plaintiffs operating as a Farm Processing Facility allegedly include:

- Winery at Black Star Farms, L.L.C.
- Two Lads, LLC
- Tabone Vineyards, LLC[3]

    2.   <u>Section 8.7.3(10) – Winery-Chateau</u>.

Winery-Chateaus are permitted only pursuant to a SUP and site plan approval. *See* Section 8.7.2 Special Uses that May be Permitted. Plaintiffs operating as a Winery-Chateau allegedly include:

- Bowers Harbor Vineyard & Winery, Inc.
- Brys Winery, LC
- Chateau Grand Traverse, Ltd.
- Chateau Operations, LTD
- OV the Farm, LLC
- Villa Mari, LLC

---

[2] Plaintiffs only challenge specific sections of the PTZO, but their operations are further subject to the general police power ordinances adopted by the Township, which have not been the subject of this litigation.

[3] The Township is not conceding that Tabone Vineyards, LLC has proper approvals to operate as a Farm Processing Facility.

- Montague Development, LLC

3. Section 8.7.3(12) – Remote Winery Tasting Room.

Remote Winery Tasting Rooms are permitted only pursuant to a SUP and site plan approval. *See* Section 8.7.2 Special Uses that May be Permitted. The Plaintiff operating as a Remote Winery Tasting Room is allegedly:

- Grape Harbor, Inc.

Plaintiffs allege they started their wineries at different times.

C. Plaintiffs Claim Preemption of Winery-Related Ordinances.

Plaintiffs assert that various portions of the PTZO are preempted by the MLCC. However, the portions of the PTZO Plaintiffs assert are preempted continue to morph over time. The sections Plaintiffs assert are preempted have changed from Plaintiffs' First Amended Complaint (ECF No. 29) and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 334).

In Plaintiffs' First Amended Complaint, they assert only three sections of the PTZO are preempted:

- "Section 8.7.3(10)(u)(5)(b) conflicts with Mich. Admin Code R. 436.1403(1), which allows wineries to serve alcohol until 2:00 AM every night." (ECF No. 29, PageID.1125, ¶290 of Plaintiffs' First Amended Complaint).

* * *

- "Section 8.7.3(10)(u)5(g) conflicts with MCL 436.1916(11), which grants wineries the right to hose [sic] "[t]he performance or playing of an orchestra, piano, or other types of musical instruments, or singing" without a permit." (*Id.* at PageID.1126, ¶291 of Plaintiffs' First Amended Complaint).

* * *

- "The Winery Ordinances, including Section 8.7.3(10)(u)5(i), conflict with MCL 436.1536, which states a "wine maker [or] small wine maker . . . may own and operate a restaurant . . . as part of the on-premises tasting room . . .," and with MCL 436.1547, which allows Plaintiffs to [sic] a restaurant to cater private events off their premises where they may serve food and alcohol they manufacture."

(*Id.* at PageID.1126, ¶292 of Plaintiffs' First Amended Complaint).

In Plaintiffs' Motion for Partial Summary Judgment (ECF No. 333), they assert that eight sections of the PTZO are preempted:

> Plaintiffs respectfully request that this Court enter a judgment in their favor and find Sections 6.7.2(19)(a) (no restaurant), 6.7.2(19)(b)(1)(iv) (limited food), 8.7.3(10)(u)(2)(b) (no full course meals), 8.7.3(10)(u)(2)(e) (no food service), 8.7.3(12)(j) (packaged food for off-premise consumption, only), 8.7.3(10)(u)(5)(b) (limited hours), 8.7.3(10)(u)(5)(g) (no amplified instrumental music) and 8.7.3(10)(u)(5)(i) (no catering) of Peninsula Township's Ordinances are preempted by Michigan law.

(ECF No. 333, PageID.12013).

Plaintiffs challenge sections of the PTZO that were not alleged in Count VIII of Plaintiffs' First Amended Complaint. The Court has recognized this discrepancy. (ECF No. 162, PageID.5986, "However, because the first amended complaint only challenges three specific sections of the Township Ordinances, the Court will only determine whether those three sections – §§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i) – are preempted by Michigan law."). The Township will address preemption for each PTZO section despite Plaintiffs not alleging five of the challenged section in their First Amended Complaint.[4]

| Use Regulated | Type of Facility Regulated | Ordinance Text |
|---|---|---|
| Restaurants | Farm Processing Facility | **6.7.2(19)(a)** – The Farm Processing Facility use includes retail and wholesale sales of fresh and processed agricultural produce but is not intended to allow a bar or restaurant on agricultural properties and the Township shall not approve such a license. |

---

[4] By making this argument, the Township does not agree to litigate the unasserted claims by consent. The Township is merely preserving its arguments.

| Restaurants | Farm Processing Facility | **6.7.2(19)(b)(1)(iv)** – Sales of wine by the glass in a tasting room is allowed pursuant to the minimum requirements of the Michigan Liquor Control Commission rules and related Michigan Department of Agriculture permits regarding the sales of limited food items for on-premises consumption |
| --- | --- | --- |
| Restaurants | Winery-Chateau | **8.7.3(10)(u)(2)(b)** – Meetings of 501-(C)(3) non-profit groups within Grand Traverse County. These activities are not intended to be or resemble a bar or restaurant and therefore full course meals are not allowed, however light lunch or buffet may be served. |
| Restaurants | Winery-Chateau | **8.7.3(10)(u)(2)(e)** – No food service other than as allowed above or as allowed for wine tasting may be provided by the Winery-Chateau. If wine is served, it shall only be served with food and shall be limited to Old Mission Peninsula appellation wine produced at the Winery, except as allowed by Section 6. below. |
| Restaurants | Remote Tasting Room | **8.7.3(12)(j)** – Retail sale of packaged food items allowed in addition to bottled wine are those which contain wine or fruit produced in Peninsula Township. Such food items shall be produced in a licensed food establishment and properly labeled including the winery logo as the dominant logo. Such food items shall be intended for off premise consumption. Such allowed packaged food items |

| | | may include mustard, vinegar, non-carbonated beverages, etc. |
|---|---|---|
| Facility Operation Hours | Winery-Chateau | **8.7.3(10)(u)(5)(b)** – Hours of operation for Guest Activity Uses shall be as determined by the Town Board, but no later than 9:30 PM daily. |
| Accessory Use<br><br>-Music | Winery-Chateau | **8.7.3(10)(u)(5)(g)** - No amplified instrumental music is allowed, however amplified voice and recorded background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes. |
| Catering | Winery-Chateau | **8.7.3(10)(u)(5)(i)** – Kitchen facilities may be used for on-site food service related to Guest Activity Uses but not for off site catering. |

D. <u>The Township Amended the "Winery Ordinances" Through Amendment 201 in December, 2022.</u>

After completing the public process required by the MZEA, on December 13, 2022, the Township passed Zoning Ordinance Amendment No. 201.  (Exhibit 2, Amendment 201). Amendment 201 makes comprehensive changes to the PTZO and moots a significant number of Plaintiffs' claims, not just the preemption claims.

Amendment 201 addresses many of the concerns raised in this litigation. For example, Amendment 201 addresses the Court's previous ruling that struck the term "Guest Activity" from the PTZO as being unconstitutionally vague.  (ECF No. 162, PageID.6019).  That previous ruling was not altered by the Court's Opinion and Order setting aside a substantial portion of its previous June 3, 2022 Opinion and Order. (ECF No. 301, PageID.10698, "[T]he Court will <u>not</u> set aside

8

Subsection V.A.6 (vagueness/due process; PageID.6016-19) because although this claim may implicate PTP members' property interests, PTP's intervention does not change the Wineries' entitlement to summary judgment on this issue.").

Every provision of the PTZO that Plaintiffs challenge as preempted by the MLCC has been removed from the PTZO via Amendment 201.

First, Farm Processing Facilities have been eliminated from the PTZO. Section 6.7.2(19) – Farm Processing Facility has been replaced with Section 6.7.2(19) – Wholesale Farm Processing Facility. (Exhibit 2 at 3-9). As such, Section 6.7.2(19)(a) and Section 6.7.2(19)(b)(1)(iv) no longer exist in the form challenged in Plaintiffs' Complaint. (*Id.*). Moving forward, pursuant to Section 6.7.3(22), the Township will recognize Retail Farm Processing Facilities as a subordinate, accessory use permitted by SUP subject to the requirements of Section 8.7.3(10) and (11) which have been repealed and replaced. (*Id.* at 9). Now, pursuant to Section 8.7.3(10), Retail Farm Processing Facility (Indoors Only), and Section 8.7.3(11), Retail Farm Processing Facility (with Outdoor Seating), are permitted only as subordinate, accessory uses by SUP. (*Id.* at 10-22).

Further, Winery-Chateaus have been eliminated from the PTZO through the repeal of Section 8.7.3(10) – Winery-Chateau. A winery-chateau use is no longer permitted under the PTZO. As such, prior provisions affecting Winery-Chateaus—Sections 8.7.3(10)(u)(2)(b), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i)—no longer exist in the PTZO. They have been completely eliminated.

Finally, Section 8.7.3(12) – Remote Tasting Rooms has been amended. As such, Section 8.7.3(12)(j) no longer exists in the form challenged by Plaintiffs. Instead, under the PTZO, Section 8.7.3(12)(h) provides:

> Those Remote Tasting Rooms that hold a liquor license may serve limited food items indoors to offset the effects of consuming alcohol. Food items are limited to

9

snacks that require minimal preparation such as cheese and crackers, dried fruit and nuts, and chocolates. No restaurants, cafes or off-site catering shall be permitted as part of a Remote Tasting Room.

(*Id.* at 23).

Amendment 201's effect leaves those Plaintiff wineries who are operating consistent with lawful approvals to now be governed under the PTZO's nonconforming use provisions—not the provisions that Plaintiffs challenge.

## LAW AND ARGUMENT

### III.     STANDARD OF REVIEW

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009), which "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325; 106 S. Ct. 2548, 2552 (1986).

Once the moving party meets this burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Alexander*, 576 F.3d at 558. The nonmoving party cannot rest on its pleadings but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Irrelevant factual disputes do not create a genuine issue of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). The opposing party must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). The failure to prove an essential element renders all other facts immaterial. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

## IV.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE A CASE OR CONTROVERSY ON THE PREEMPTION CLAIM.

Article III limits federal judicial jurisdiction to "cases" and "controversies."  U.S. Const.

Art. III, sec 2.  The Supreme Court has grappled with the words "cases" and "controversies" and

has noted the two are complementary:

> but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

> Justiciability is itself a concept of uncertain meaning and scope.

*Flast v. Cohen*, 392 U.S. 83, 94-95; 88 S.Ct. 1942 (1968).

"Concerns of justiciability go to the power of the federal courts to entertain disputes, and

to the wisdom of their doing so."  *Renne v. Geary*, 501 U.S. 312, 315; 111 S.Ct. 2331 (1991); *see*

*Flast*, 392 U.S. at 97 (reasoning the doctrine of justiciability "has become a blend of constitutional

requirements and policy considerations"). Courts must determine whether a case presents a

justiciable case or controversy on the particular facts of the case and individual parties rather than

on the application of the law to assumed general characteristics of the plaintiffs. *See Babbitt v.*

*United Farm Workers Nat. Union*, 442 U.S. 289, 297; 99 S.Ct. 2301 (1979) ("The difference

between an abstract question and a 'case or controversy' is one of degree . . . , and is not discernible

by any precise test.").

> The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'

*Id.* at 298 (quoting *Railway Mail Assn. v. Corsi*, 326 U.S. 88, 93; 65 S.Ct. 1483 (1945)).

11

Justiciability has led to the development of several different categories, including advisory opinion, ripeness, mootness, standing, and political questions.  "But whether courts speak in terms of 'justiciability,' 'standing,' or 'ripeness,' they all are asking the same question: does a case or controversy exist?"  *Oldham v. Am. Civ. Liberties Union Found. of Tenn., Inc.*, 849 F.Supp. 611, 614 (M.D. Tenn. 1994).  "There is no reason to demand a final expression in terms of standing, ripeness, mootness, or political question doctrine, if—without relying on the frequently question-begging terminology of any single concept—the court is able to conclude that there is no sufficient need for deciding the issues tendered for decision."  13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3529 (3d ed. 2023).  *See also Assiniboine & Sioux Tribes of Ft. Peck Indian Reservation v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 787 (9th Cir. 1986) ("[A]lthough for clarity, we discuss [ripeness, advisory opinions, and standing] separately, we recognize that a flexible approach to justiciability, that is less concerned with specific categories, and more with underlying policies may be most useful.").

A.  <u>Because the Township has Taken No Actions Against Plaintiffs, the Preemption Claim Amounts to Plaintiffs' Attempt to Obtain an Advisory Opinion Regarding the Interplay between the MLCC and PTZO.</u>

In declaratory actions, courts are often tasked with a difficult duty of deciding "between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies."  *Kardules v. City of Columbus*, 95 F.3d 1335, 1343–44 (6th Cir. 1996).  The Sixth Circuit has cautioned that to satisfy the case or controversy requirement in a declaratory judgment context, the dispute "'must be definite and concrete' and must allow for 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"  *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648,

651 (6th Cir. 2005) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241, 57 S.Ct. 461 (1937)).

The present case does not present a justiciable case or controversy for purposes of Article III.  Plaintiffs have been operating their wineries for, in some cases, more than 30 years.  Presently, there exists no attempt to revoke Plaintiffs' SUPs and no enforcement actions are underway. Plaintiffs have presented no requests for amendments to the SUPs, no requests for variances, no requests for rezoning, or any other request for interpretation of the ordinance that has been denied. Nevertheless, Plaintiffs file a declaratory action seeking a judicial determination that the PTZO is preempted. Preemption can be asserted in a declaratory action; however, a case or controversy must exist.  Here, there is none.  The Township has undertaken no action whatsoever that creates a conflict between the parties. To the contrary, as Plaintiffs allege in their First Amended Complaint, the Township and Plaintiffs had been working together for years to amend the PTZO. Instead of taking any action that would create a case or controversy, Plaintiffs seek a declaration that the PTZO is preempted by the MLCC.

While not in the zoning context, the Sixth Circuit has previously addressed such tactics in *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x. 648, 651 (6th Cir. 2005).  In 1997, Sankyo Corporation ("Sankyo") and one of its officers, Masahiro Nakamura, created the Nakamura Trading Corporation ("NTC") as a joint enterprise. Sankyo and NTC carried on a business relationship without a written agreement until 2002, when they entered into a written "Basic Distributorship Agreement". *Id.* at 648-649.  The agreement provided that if a dispute arose, arbitration would occur in Illinois if Sankyo filed suit, but would occur in Japan if NTC filed suit. *Id.* at 649.

In May of 2003, Sankyo sent a letter to NTC purporting to terminate the agreement. *Id.* At a meeting in July, 2003 between Sankyo and NTC, NTC indicated to Sankyo it was owed $3 million by Sankyo. Sankyo disagreed. When it did, NTC sent correspondence reiterating its demand and indicating it was prepared to litigate the case. *Id.* In a letter dated August 10, 2003, NTC submitted a draft complaint to Sankyo and later correspondence imposed three deadlines by which it would sue Sankyo if Sankyo failed to respond or tender a counter-offer. *Id.*

Sankyo let the first two deadlines of September 10, 2003 and September 28, 2003 pass without incident. However, rather than waiting until the final deadline of the end of October, 2003, Sankyo filed suit seeking declaratory and injunctive relief in the United States District Court for the Eastern District of Michigan. *Id.* Sankyo asked the Court to declare that any claims that might be raised relating to the agreement would be subject to mandatory arbitration in Japan. *Id.* After briefing, the district court dismissed Sankyo's declaratory action because there was no case or controversy. *Id.* at 650.

Sankyo appealed and argued the test for determining whether a case or controversy exists in the context of potential litigation is whether the defendant's actions created a reasonable apprehension on the plaintiff's part that the defendant would file suit. *Id.* at 650. The Sixth Circuit disagreed.

> To the contrary, to meet the jurisdictional requirements of Article III's "case" or "controversy" requirement, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The Supreme Court has clearly identified what qualifies as injury in fact: "[W]e have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (some quotations marks omitted); *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County, Tennessee*,

14

274 F.3d 377, 399 (6th Cir.2001) ("Ripeness requires that the 'injury in fact be certainly impending.'").

<div align="center">*     *     *</div>

While the underlying facts are not uncommon, Sankyo's response is somewhat atypical. More commonly, NTC would decide whether or not to sue Sankyo, and, if it elected to do so, Sankyo, at that time, would file a motion to compel arbitration. In this case, Sankyo is attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance. Such a novel approach is precluded by the Case and Controversy requirement of the United States Constitution.

*Sankyo*, 139 F.App'x. at 651-652.

See also *Bench Billboard Co. v. City of Covington, Ky.*, 2010 WL 420064 (E.D. Ky., Feb. 1, 2010) (holding that declaratory challenge to ordinance did not present a case or controversy where city took no action against plaintiff as result of ordinance); *Tuscola Wind III, LLC v. Almer Charter Township*, 327 F.Supp.3d 1028, 1051-1052 (E.D. Mich. 2018) (reasoning that "[i]n the absence of an actual SLUP application, Tuscola's concerns over the availability of the moratorium are merely hypothetical," and that as such, any "decision regarding the validity of the moratorium would thus constitute an advisory opinion.")

Here, there is no ongoing case or controversy regarding the sections of the PTZO Plaintiffs assert are preempted by the MLCC.  Similar to *Sankyo*, Plaintiffs seek an advisory opinion from this Court that, in the chance the Township does take some action against Plaintiffs, the MLCC preempts the PTZO.  This preemptive action, however, does not create a live case or controversy that grants this Court jurisdiction under Article III to adjudicate Plaintiffs' preemption claims.  As such, Count VIII of Plaintiffs' First Amended Complaint should be dismissed.

B.  <u>Plaintiffs' Preemption Claims are Moot because Amendment 201 to the PTZO Removed the Sections of the PTZO Plaintiffs Claim are Preempted by the MLCC.</u>

As a corollary under the case and controversy requirement, the claims must not be moot. Here, the Township adopted comprehensive changes to the PTZO in December, 2022. Amendment 201 effectively moots Plaintiffs' preemption claims.

As an initial matter, the Court must first determine which version of the PTZO is the relevant zoning ordinance in reaching its conclusion regarding preemption. In this case, the Court should apply the general rule that the law in effect at the time of the decision is the law to be applied. As such, Amendment 201 should be applied.

"[I]f a zoning ordinance has been amended [after suit was filed] . . . a court will give effect to the amendment[.]'" *Grand/Sakwa of Northfield, LLC v. Northfield Twp.*, 304 Mich. App. 137, 142; 851 N.W.2d 574 (2014) (quoting *Klyman v. City of Troy*, 40 Mich. App. 273, 277-278; 198 N.W.2d 822 (1972)). "In determining which version of a zoning ordinance a court should apply, 'the general rule is that the law to be applied is that which was in effect at the time of decision.'" *Landon Holdings, Inc. v. Grattan Twp.*, 257 Mich. App. 154, 161; 667 N.W.2d 93 (2003) (quoting *MacDonald Advertising Co. v. McIntyre*, 211 Mich. App. 406; 536 N.W.2d 249, 251 (1995)). Under this general rule, the Court should apply the modifications to the PTZO contained in Amendment 201 as it contains the current version of the zoning ordinance. Amendment 201 eliminates all of the ordinance sections Plaintiffs assert are preempted by the PTZO. As such, Plaintiffs' challenges to the subject ordinance provisions are moot.

This general rule is subject to two "narrow" exceptions which are not appliable here. *See Grand/Sakwa*, 851 N.W.2d at 578. "'A court will not apply an amendment to a zoning ordinance where (1) the amendment would destroy a vested property interest acquired before its enactment, or (2) the amendment was enacted in bad faith and with unjustified delay.'" *Id.* (quoting *Rodney Lockwood & Co. v. City of Southfield*, 93 Mich. App. 206; 286 N.W.2d 87, 89 (1979)).

16

First, Plaintiffs do not have a vested property interest in a prior nonconforming use where the use was not previously lawful. The Michigan Supreme Court has described a "prior nonconforming use [as] a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp. v. Sall*, 442 Mich. 434; 502 N.W.2d 627, 629 (1993). "To be protected, the nonconforming use must have been legal at one time; a use that violates the zoning ordinances since its inception does not draw such protection." *Lyon Charter Twp. v. Petty*, 317 Mich. App. 482; 896 N.W.2d 477, 481 (2016).

There can be no dispute the uses Plaintiffs seek via this lawsuit (e.g., extended hours, restaurants, catering, and amplified music) are not and never have been lawful uses of the Plaintiffs' property in the A-1 District.  The proposed uses violated the PTZO since its inception. As such, the uses Plaintiffs seek were not permitted prior to Amendment 201.  Plaintiffs did not acquire a vested property interest prior to Amendment 201.  *See Grand/Sakwa*, 851 N.W.2d at 578 ("The first exception does not apply here because there is no vested property interest at issue. At the time of the sale, the property was zoned AR and remained so until the amendment rezoning it LR was adopted. Plaintiffs concede that the township board's 2003 decision to rezone the property SR–1 never took effect because it was superseded by the referendum. Thus, there was never any vested right to develop the property under any zoning classification other than AR.").

Second, there is no evidence of bad faith with unjustified delay.  "'[T]he test to determine bad faith is whether the amendment was enacted for the purpose of manufacturing a defense to plaintiff's suit.'"  *Landon Holdings*, 667 N.W.2d 93 at 98 (quoting *Rodney Lockwood*, 286 N.W.2d at 89).  A court should apply a new ordinance even if "it serve[s] to strengthen [the municipality's] litigating position."  *Grand/Sakwa*, 851 N.W.2d at 579. "The factual determination that must

control is whether the *predominant* motivation for the ordinance change was improvement of the municipality's litigation position." *Id.* (emphasis in original).  In *Rodney Lockwood*, the Michigan Court of Appeals found that the bad faith exception did not apply in the following circumstances:

> There is evidence to indicate that the amendment was intended to clarify an ambiguous ordinance. There is also evidence that it had always been the intent of the city council to prohibit persons from living on three levels within the zoning classification. The amendment did not simply rezone plaintiffs' property, but applied equally to all apartment structures throughout the city.

*Rodney* Lockwood, 286 N.W.2d at 89.

The Township was not manufacturing a defense to this case in passing Amendment 201 to the PTZO, nor was the improvement of the Township's litigation position (to the extent it was considered at all) the predominant motivation for the amendment.  To the contrary, Amendment 201 removes sections of the PTZO which were raised by the Court in its previous ruling.  (*See* ECF No. 162 (holding that the PTZO was ambiguous)).

The Court should apply Amendment 201 when reaching its decision in this matter.  In doing so, Plaintiffs' preemption challenges are rendered moot as all challenged provisions have been removed from the ordinance.

## V.    THE MLCC DOES NOT PREEMPT THE PTZO.

Even if the Court determines that the previous version of the PTZO, and not Amendment 201, should be applied, Plaintiffs' preemption claims fail as a matter of law.

The Township has not taken steps to wholly prohibit Plaintiffs' uses, including the operation of restaurants, the playing of amplified music, and operations past 9:30 p.m. The Township has instead done nothing more than curtail the intensity and scope of Plaintiffs' uses to conform to applicable agricultural zoning regulations. Liquor establishments can freely operate in the Township's commercial district without such limits. Plaintiffs have never been prohibited from

18

operating restaurants, playing amplified music, and operating past 9:30 p.m. in the Township. Rather, consistent with the MZEA's authority to divide the Township into proper land use districts and specify the uses that operate within each, the Township merely restricts the location and intensity of liquor uses depending upon the land use district where it is located.

A. Discussion of Statutory Underpinnings of the MZEA and MLCC.[5]

Plaintiffs aver they are each licensed as a Small Wine Maker or Wine Maker under the MLCC, each possessing a tasting room permit.

Plaintiffs contend, once they have obtained a tasting room permit, they may also receive from the MLCC "'a Sunday sales permit, catering permit, dance permit, entertainment permit, specific purpose permit, extended hours permit, [and] authorization for outdoor service.'" (ECF No. 334, PageID.12022-12023, quoting MCL 436.1536(7)(g)).

Plaintiffs contend that by mere possession of a tasting room permit they may operate a restaurant. Plaintiffs point to MCL 436.1536(7)(h), which provides that a small wine maker or wine maker may "may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises."

Plaintiffs finally contend they are entitled to the performance or playing of any type of musical instrument or singing without any further permit. MCL 436.1916(11) provides, "[t]he following activities are allowed without the granting of a permit under this section: [t]he performance or playing of an orchestra, piano, or other types of musical instruments, or singing."

---

[5] The Township previously engaged in an even more detailed discussion of the statutory underpinnings of the MLCC and MZEA and relevant preemption standards in Section V(A) and (B) of its Amended Response to Plaintiffs' Motion for Partial Summary Judgment on Preemption Claims. (ECF No. 353, PageID.12914-12923). However, due to word count restrictions, these sections have been revised in the present brief. The Township, nevertheless, advises that further discussion of these issues are contained in the above-referenced pages.

Plaintiffs contend possessing licenses and permits to sell liquor and engage in accessory uses immunizes them from local zoning. The MLCC, the Commission, and Michigan courts disagree. The Commission issued Mich. Admin. Code R. 436.1003(1) which provides that: "**A licensee shall comply with all state and local** building, plumbing, **zoning**, sanitation, and health **laws, rules, and ordinances** as determined by the state and local law enforcement officials who have jurisdiction over the licensee." (emphasis added).  The Commission warns every licensee— at the top of each of their licenses—that they shall comply with local zoning requirements.  After a license is issued, the Commission warns all license holders that the license is granted "with the stipulation that the licensee is in compliance with Commission Rule R 436.1003." (Exhibit 3, Excerpted Licenses from Michigan Liquor Control Commission).  The license then restates the rule and warns, "[i]ssuance of this license by the Michigan Liquor Control Commission **does not waive this requirement**." (*Id.* (emphasis added)).

Michigan courts recognize municipalities' power to regulate MLCC licensees' operations through zoning. *See Maple BPA, Inc. v. Bloomfield Charter Twp.*, 302 Mich. App. 505, 513; 838 N.W.2d 915 (2013) (recognizing that Rule 436.1003 "indicates that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales"); *Jott, Inc. v. Clinton Charter Twp.*, 224 Mich. App. 513, 541-543; 569 N.W.2d 841 (1997) (concluding that "this grant of authority [to the MLCC] does not preclude local communities from controlling alcoholic beverage traffic within their boundaries in the proper exercise of their police powers."); *Oppenhuizen v. Zeeland*, 101 Mich. App. 40, 48; 300 N.W.2d 445 (1980) ("the MLCC regulation [now R. 436.1003] recognizes the authority of the municipality over those areas of local control which involve all commercial activity.").

B.  <u>Preemption Standards</u>

"In the context of conflict preemption, a direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *DeRuiter v. Twp. of Byron*, 505 Mich. 130, 140; 949 N.W.2d 91 (2020) (internal citations omitted). "If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand." *Walsh v. City of River Rouge*, 385 Mich. 623, 635-36; 189 N.W.2d 318 (1971). As such, so long as the PTZO is not more restrictive than the state statute on the particular issue being regulated, there is no conflict preemption. *Maple BPA*, 838 N.W.2d at 922.  The PTZO may add to the conditions of state law "as long as its additional requirements do not contradict the requirements set forth in the statute." *DeRuiter*, 505 Mich. at 147 (citing *People v. Llewellyn*, 401 Mich. 314, 322; 257 N.W.2d 902 (1977)).

Michigan law has long recognized the importance of allowing local governments to exercise zoning power as a way to plan development, preserve security and economic structure, stabilize property values, attract and retain citizenship, *Cady v. City of Detroit*, 289 Mich. 499, 513; 286 N.W. 805, 810 (1939), and to "protect that sometimes difficult to define concept of quality of life." *Vill of Belle Terre v. Boraas*, 416 US 1, 13; 94 S Ct 1536, 1543; 39 L Ed 2d 797 (1974). Accordingly, the MZEA, MCL 125.3101 *et seq*., comprehensively addresses local land use regulation, codifying the general power of local governmental units to regulate land use.

Section 201 of the MZEA specifically provides that local government units may establish zoning districts within its zoning jurisdiction. MCL 125.3201. This authority is to be "liberally construed" in favor of the Township. CONST Art. 7, § 34. Therefore, the MZEA authorizes a municipality's zoning regulations so long as those regulations are not "inconsistent and irreconcilable with" the Act. *Walsh*, 385 Mich. at 635-36.

21

The MLCC contemplates the coexistence between state-level regulation of liquor and local zoning. Again, the Commission has adopted a rule obligating licensees to comply with local zoning. Mich. Admin. Code R. 436.1003(1). Moreover, if an applicant for a license does not meet all zoning requirements, the MLCC requires the denial of the application. Mich. Admin. Code R. 436.1105(3).

This issue has been addressed by the Michigan Supreme Court in *DeRuiter* which held that a zoning ordinance that added restrictions on medical marijuana, but did not completely prohibit the activity, was not in conflict with the Michigan Medical Marijuana Act ("MMMA"). In *DeRuiter*, Byron Township enacted an ordinance regulating the location of medical marijuana growing facilities, prohibiting growing facilities in the commercial district but permitting them in residential districts. Plaintiff DeRuiter argued the MMMA preempted the zoning ordinance because the MMMA expressly addressed where growing facilities could be located.

The Michigan Supreme Court rejected DeRuiter's arguments. The Michigan Supreme Court held the township's zoning ordinance was not preempted by the MMMA, which prohibited any penalty for the medical use of marijuana, because the zoning ordinance did not conflict with the MMMA's conditions on cultivation of marijuana or penalize that activity, but simply proscribed a location for lawful land uses.

The *DeRuiter* Court rejected DeRuiter's argument that the only limitation permissible under the MMMA was that the caregiver restrict cultivation to an enclosed, locked facility:

> Were we to accept DeRuiter's argument, the only allowable restriction on where medical marijuana could be cultivated would be an "enclosed, locked facility" as that term is defined by the MMMA. MCL 333.26423(d). Because the MMMA does not otherwise limit cultivation, the argument goes, any other limitation or restriction on cultivation imposed by a local unit of government would be in conflict with the state law. We disagree. The "enclosed, locked facility" requirement in the MMMA concerns what type of structure marijuana plants must be kept and grown in for a patient or caregiver to be entitled to the protections offered by MCL 333.26424(a)

<div align="center">22</div>

and (b); the requirement does not speak to where marijuana may be grown. <u>In other words, because an enclosed, locked facility could be found in various locations on various types of property, regardless of zoning, this requirement is not in conflict with a local regulation that limits where medical marijuana must be cultivated.</u>

*DeRuiter*, 505 Mich. at 143-144 (emphasis added).

The *DeRuiter* Court noted it "presumed that 'the city may add to the conditions' in the statute but found it impermissible that 'the ordinance attempt[ed] to prohibit what the statute had permit[ted].' *DeRuiter*, 505 Mich. at 144 (quoting *Nat'l Amusement Co. v. Johnson*, 270 Mich. 613, 617; 259 N.W.2d 342 (1935)). The ordinance in *Ter Beek II*, similar to the ordinance in *Nat'l Amusement*, "had the effect of wholly prohibiting an activity" that the MMMA allowed. But, as the Supreme Court cautioned, "does not mean that the local law cannot 'add to the conditions' in the MMMA. *DeRuiter*, 505 Mich. at 145. Critically, "DeRuiter's argument would result in an interpretation of the MMMA that forecloses all local regulation of marijuana—the exact outcome we cautioned against in *Ter Beek II*." *DeRuiter*, 505 Mich. at 145 (citing *Ter Beek v. City of Wyoming*, 495 Mich. 1, 24 n.9; 846 N.W.2d 531 (2014) (*Ter Beek II*)).

Ultimately, the Michigan Supreme Court ruled:

The geographical restriction imposed by Byron Township's zoning ordinance adds to and complements the limitations imposed by the MMMA; we therefore do not believe there is a contradiction between the state law and the local ordinance. As in *Qualls* and *Miller*, the local ordinance goes further in its regulation but not in a way that is counter to the MMMA's conditional allowance on the medical use of marijuana. We therefore hold that the MMMA does not nullify a municipality's inherent authority to regulate land use under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, so long as the municipality does not prohibit or penalize all medical marijuana cultivation, like the city of Wyoming's zoning ordinance did in *Ter Beek II*, and so long as the municipality does not impose regulations that are "unreasonable and inconsistent with regulations established by state law." *Qualls*, 434 Mich. at 363, 454 N.W.2d 374. In this case, Byron Township appropriately used its authority under the MZEA to craft a zoning ordinance that does not directly conflict with the MMMA's provision requiring that marijuana be cultivated in an enclosed, locked facility.

23

*DeRuiter*, 505 Mich. at 147-148. *See also Padecky v. Muskegon Charter Township*, ___ N.W.2d ___, 2022 WL 4112075 (2022) (Exhibit 4) (holding that licensee under the peddler's statute had the right to sell goods in the township, but he remained subject to where the use was permitted under the zoning ordinance). Importantly, in *DeRuiter*, *Ter Beek II*, and *Padecky* the statutes involved contained no language explicitly requiring the licensee to comply with local zoning. Here, however, through Rule 436.1403, the MLCC explicitly requires licensees to comply with local zoning.

Under Michigan law the Township has the right to zone the wineries as both an inherent right and as expressly authorized by the Commission's administrative rules. The PTZO does not preclude Plaintiffs from operating a restaurant, having amplified music, or extended hours at every location in the Township. To the contrary, Plaintiffs are free to operate a restaurant, have amplified music, or extended hours – just not in the A-1 District.

C. <u>None of the Ordinances Challenged Constitute a Complete Prohibition on the Conduct in Peninsula Township, but Rather Limit the Conduct Based on the Township's Authority to Zone.</u>

1. *<u>The PTZO can regulate Plaintiffs' hours of operation.</u>*

Plaintiffs asserts Section 8.7.3(10)(u)(5)(b) of the previous version of the PTZO is preempted by MCL 436.2114 and Mich. Admin. Code R. 436.1403. The Court previously correctly determined that it does not and should reach the same conclusion this time as well. The MLCC provides:

(1) Notwithstanding R 436.1403 and R 436.1503 of the Michigan administrative code <u>and except as otherwise provided under this act or rule of the commission</u>, <u>an on-premises and an off-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day.</u>

[MCL 426.2114].

The MLCC *prohibits* the sale of liquor between 2 a.m. and 7 a.m. The statute does not provide that licensees shall be allowed to sell alcohol from 7 a.m. to 2 a.m. as the Plaintiffs demand. (ECF No. 334, PageID.12032).

Moreover, the statute expressly recognizes that the time limitations on liquor sales are subject to the control of Commission Rules. MCL 436.2114 ("except as otherwise provided under this act or rule of the commission . . .).  Again, it bears repeating the Commission has enacted a rule that compels licensees to comply with local zoning requirements: "**A licensee shall comply with all** state and **local** building, plumbing, **zoning**, sanitation, and health **laws, rules, and ordinances** as determined by the state and local law enforcement officials who have jurisdiction over the licensee."  Mich. Admin. Code R. 436.1003(1).

The PTZO provides that in the A-1 District, Winery-Chateaus, which are only permitted as a special use pursuant to a SUP, are limited in the hours they can operate. The PTZO does not prohibit what is otherwise permitted by the MLCC. To the contrary, the PTZO has simply added further restrictions or limitations on the wineries' conduct. The PZTO (which must be read in its entirety as a zoning ordinance, not in a piecemeal fashion reviewing each ordinance individually) expressly allows for taverns and restaurants in the C-1 commercial zone. Plaintiffs, however, have not sought to operate in the commercial zone; they want to engage in commercial activities in the agricultural zone. The C-1 commercial zone does not contain any limit restrictions on hours of operation. As such, if Plaintiffs want to operate from 7:00 a.m. until 2:00 a.m., they are free to do so in the commercial zone. The PTZO, therefore, is not a prohibition on the hours of operation as Plaintiffs can operate at extended hours elsewhere in the township.  This is the exact result contemplated in *DeRuiter* and *Padecky* – the Township has not prohibited the activity, it has merely placed limitations on when and where the activities can occur.

In support of their position in previous rounds of briefing, Plaintiffs have historically relied on inapplicable and distinguishable cases.  First, Plaintiffs routinely point to *Noey v. Saginaw*, 271 Mich. 595; 261 N.W. 88 (1935). *Noey* is distinguishable for several reasons. First, the City of Saginaw adopted a generally-applicable ordinance – not a zoning ordinance that applies only to the A-1 district – which forced all places that were licensed to sell liquor to close at 12:00 p.m. *Id.* at 597. The ordinance at issue here is a zoning ordinance that is not a blanket prohibition on the sale of liquor in the entire municipality. Section 8.7.1(10)(u)(5)(b) applies only to licensees who voluntarily apply for and receive special use approval to operate in the A-1 district.

Moreover, the Supreme Court rather quickly distanced itself from *Noey*. In *Mutchall v. City of Kalamazoo*, 323 Mich. 215, 223; 35 N.W.2d 245 (1948), the Michigan Supreme Court recognized that the MLCC "was amended so as to meet the objections raised in [*Noey*], so as to permit local authorities to control the closing time of licensed establishments." Since 1935, Michigan courts have distanced themselves from the proposition in *Noey* that the MLCC field preempts all local regulation of liquor and have expressly permitted local municipalities to regulate liquor through police power ordinances. *See Jott*, *supra*, 224 Mich. App. at 541 (concluding that "this grant of authority [to the MLCC] does not preclude communities from controlling alcoholic beverage traffic within their boundaries in the proper exercise of their police powers."; *see also Maple BPA*, *supra*, 302 Mich. App. at 513 ("We conclude that the Commission's decision to recognize local zoning authority indicates that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales. Thus, we conclude that the state has not expressly provided that its authority to regulate the field of liquor control is exclusive."); *Bundo v. Walled Lake*, 395 Mich. 679, 700-701; 238 N.W.2d 154 (1976) (reaffirming the principal that "the power of local communities to control alcoholic beverage traffic is extremely broad" but that

municipalities may not act arbitrarily or capriciously); *Van Buren Twp. v. Garter Belt Inc.*, 258 Mich. App. 594, 608; 673 N.W.2d 111 (2003) (noting the continuation of the "longstanding broad authority of a local government to regulate liquor traffic within its jurisdiction" in finding that state law does not preempt local regulation of nudity at establishments licensed to sell alcohol).

Next, Plaintiffs historically point to the Sixth Circuit's decision in *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) for the proposition that they have the unquestionable right to sell liquor from 7:00 a.m. to 2:00 a.m. in the A-1 District. *Keego Harbor* does not grant Plaintiffs this right.  The Court previously rejected Plaintiffs' reliance on *Keego Harbor* and should do so again. *Keego Harbor* is an unconstitutional conditions case, not a preemption case. There is no discussion of preemption in *Keego Harbor*, let alone discussion that the MLCC preempts local zoning. This makes perfect sense, as the municipal action disputed in *Keego Harbor* had nothing to do with zoning. In *Keego Harbor*, the city regulated Goose Island, the plaintiff brewery, in an attempt to force them to close at 11:00 p.m. *Id.* at 431. The Sixth Circuit held that the city could not force the brewery to close at 11:00 p.m., but in reaching that conclusion, the Sixth Circuit reasoned that the city was withholding governmental benefits from the brewery unless it closed by 11:00 p.m., in violation of the unconstitutional conditions doctrine. *Id.* at 436. *Keego Harbor* is neither a preemption nor zoning case. As such, it is not persuasive. In fact, the Sixth Circuit notes that the MLCC does not grant licensees the right to remain open until 2:00 a.m., but rather licensees cannot sell liquor after 2:00 a.m. *Id.* at 435 ("On its face, the rule does not grant licensees a right to remain open *until* 2:00 a.m. but merely provides that licensees cannot sell liquor *after* 2:00 a.m."). This is the correct conclusion that shows the PTZO is not preempted – as explained in *DeRuiter*, it is permissible for the Township to place further limitations on the activity.

Finally, Plaintiffs argue the former Township Supervisor made concessions during his deposition regarding using facilities for registered guests and operating hours. (ECF No. 334, PageID.12027, 12039-12040). The former Township Supervisor is not empowered to administer, interpret or enforce the PTZO, nor can the former Supervisor's comments replace or short circuit this Court's preemption analysis.  Like all other Townships, the Township adopts and amends the PTZO by majority vote of the Township Board through a public process. *See* MCL 125.3401(5). Under the PTZO, no single official is authorized to change the terms of the PTZO, and only the ZBA (or a court of competent jurisdiction), through a written decision, can interpret the meaning of the PTZO. (ECF No. 29-1, PageID.1160, PTZO Sections 4.1.1, 4.1.2).  The former Supervisor's thoughts about what an ordinance means does not bind the Township, amend the ordinance, or change this Court's preemption analysis.

2. *The PTZO can regulate amplified music.*

Next, Plaintiffs assert that MCL 436.1916(11) preempts Section 8.7.3(10)(u)(5)(g) of the PTZO that regulates amplified music in the A-1 District only. Plaintiffs assert this Court previously found the entirety of Section 8.7.3(10)(u)(5)(g) was preempted. (ECF No. 334, PageID.12040). This is false. The Court previously held that "complete prohibition of amplified instrumental music is preempted by Michigan law . . . [h]owever, the limitation on the amplification level of music is merely a limitation and not a prohibition" and was therefore not preempted. (ECF No. 162, PageID.5991-5992). Respectfully, the Court was only halfway correct in its conclusion. The PTZO is not preempted by the MLCC.

Section of 8.7.3(10)(u)(5)(g) of the PTZO – again, which no longer exists – provided: "No amplified instrumental music is allowed, however amplified voice and recorded background music is allowed, provided the amplification level is no greater than normal conversation at the edge of

the area designated within the building for guest purposes." Plaintiffs assert they have an unconditional right to amplification of music in the A-1 District, relying on MCL 436.1916(11) which provides: "The following activities are allowed without the granting of a permit under this section: (a) The performance or playing of an orchestra, piano, or other types of musical instruments, or singing."  Plaintiffs claim the "Legislature did not leave an option for local units of government to alter this right." (ECF No. 334, PageID.12040).  This is incorrect.

The Township, through the PTZO, does not prohibit the sound amplification in the entire Township, rather it only restricts sound amplification in the A-1 District. The Township is merely regulating land use through zoning. Like the zoning ordinance upheld in *DeRuiter*, the Township limits sound amplification in the A-1 District, where the Winery-Chateau Plaintiffs are operating. This is not preempted by the MLCC. The MLCC, at MCL 436.1916(11), provides: "The following activities are allowed without the granting of a permit under this section: (a) The performance or playing of an orchestra, piano, or other types of musical instruments, or singing." Section 1916(11) of the MLCC deals with permitting and licensing. It does not address the subject of the Township's zoning ordinance: land use. The Commission expressly recognizes the right of local municipalities to zone and requires that all licensees comply with local zoning.  Mich. Admin. Code R. 436.1003(1).

Section 1916(11) does nothing more than allow a licensee, without an additional permit from the Commission, to have musical performances, subject to local zoning regulations, Mich. Admin. Code R. 436.1003(1).

Ultimately, the Township has not prohibited Plaintiffs from playing amplified music; it has prohibited property from being used for commercial activity where not permitted. Plaintiffs remain free to play amplified music *in an otherwise lawful manner*. It cannot be said the PTZO prohibits

the amplification of music. Plaintiffs can play amplified music as part of a permitted special land use in the C-1 District, and they can also play amplified music in any other manner traditionally permitted by the PTZO and local regulation. This is the exact result contemplated by *DeRuiter*.

### 3. *The PTZO can regulate catering*.

Plaintiffs contend they have an unequivocal right to cater in the A-1 District. Specifically, Plaintiffs assert Section 8.7.3(10)(u)(5)(i) of the PTZO is preempted by MCL 436.1547. The Court previously held the PTZO was preempted by the MLCC. Respectfully, the Court reached the incorrect conclusion on this issue.

Section of 8.7.3(10)(u)(5)(i) of the PTZO – again, which no longer exists – provided: "Kitchen facilities may be used for on-site food service related to Guest Activity Uses but not for off site catering." Plaintiffs contend they have the unconditional right to use their kitchens in the A-1 agricultural zone for off-site catering (a commercial use), relying on MCL 436.1547(1)(b).

As above, the PTZO does not prohibit the use of a licensee's kitchen for catering, rather it restricts the use of the kitchen for catering purposes – a commercial use – in the A-1 District. Again, the Township is regulating land use through zoning. *DeRuiter* offers the road map. The PTZO limits restricts the use of kitchens for commercial purposes in the A-1 District, where the Winery-Chateau Plaintiffs are operating. This is not preempted by the MLCC. Section 1547 of the MLCC deals with permitting and licensing – it allows for the granting of a permit to a license holder to cater.  It does not address land use. The Commission leaves local regulation of land uses in place, recognizing the power of municipalities to zone.  Mich. Admin. Code R. 436.1003(1).

Section 1547 allows the Commission to grant a catering permit to a licensee. As with sound amplification, this is <u>still</u> subject to local zoning regulations.  Mich. Admin. Code R. 436.1003(1). Nowhere in §1547 does the MLCC require that local municipalities grant the Plaintiffs the right to

engage in commercial uses of their property without any respect to local zoning. Again, *DeRuiter* explains that local municipalities may enact additional requirements beyond what the statute requires, so long as the Township has not prohibited the use.  *DeRuiter*, 505 Mich. at 146.

Ultimately, the Township has not prohibited Plaintiffs from using their kitchens for catering purposes; it has prohibited property from being used for commercial activity where not permitted. Plaintiffs remain free to use their kitchens for catering *in an otherwise lawful manner*. The PTZO does not prohibit the use. Plaintiffs can use their kitchens for catering as a special land use in the C-1 District, and they can also do so in any other manner traditionally permitted by the PTZO and local regulation. This is the exact result contemplated by *DeRuiter*.

### 4.   *The PTZO can regulate restaurants.*

Finally, while Plaintiffs did not challenge any sections in the PTZO regarding the operation of restaurants in their First Amended Complaint, Plaintiffs now assert that the PTZO is preempted to the extent it limits the operation of restaurants in the A-1 District. The Court previously determined there was a genuine issue of material fact regarding whether sections not alleged in the First Amended Complaint were preempted. (ECF No. 162, PageID.5986-5987). Specifically, Plaintiffs challenge the following sections of the PTZO:

- Section 6.7.2(19)(a)
- Section 6.7.2(19)(b)(1)(iv)
- Section 8.7.3(10)(u)(2)(b)
- Section 8.7.3(10)(u)(2)(e)
- Section 8.7.3(12)(j)

Plaintiffs contend they have an unequivocal right to operate restaurants – yet another commercial use – in the A-1 District. In support of this position, Plaintiffs point to MCL 436.1547(1)(b) which provides: "A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a

31

restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises."

The analysis regarding restaurants is substantially similar to the previous sections on sound amplification and catering. Plaintiffs assert the "Liquor Control Code is unequivocal that tasting rooms may have restaurants" and that the MLCC "gives the Wineries the right to operate a restaurant as part of their tasting rooms." (ECF No. 334, PageID.12045). While the MLCC does permit licensees to operate a restaurant, it does not preclude local regulation of the land use through zoning. *See* Mich. Admin. Code R. 436.1003(1). The PTZO does not prohibit the restaurants as a land use in the entire Township, rather it restricts restaurants – a commercial use – in the A-1 District. This is a land use regulation permitted under the MZEA. Plaintiffs seek to engage in a commercial land use in an agricultural zone. There is no prohibition of this use in the C-1 District. To the contrary, restaurants are a specifically contemplated use in the C-1 District. The PTZO's limitation on the location of this commercial use is not preempted by the MLCC.

Section 1547 of the MLCC is a permitting statute, it allows a licensee to operate a restaurant – a "wine maker . . . may own and operate a restaurant . . . as part of the on-premises tasting room on the manufacturing premises." MCL 436.1536(7)(h). It does not address land use, nor does it restrict a municipality from imposing further restrictions on the activity. The Commission leaves local regulation of land uses in place, recognizing the power of municipalities to zone. *See* Mich. Admin. Code R. 436.1003(1).

*DeRuiter* and *Ter Beek II* are dispositive. The PTZO does not completely prohibit restaurants, but rather adds restrictions that restaurants are permitted in the commercial but not agricultural zoning district. Plaintiffs' use of their land is subject to zoning. *See* Mich. Admin.

Code R. 436.1003(1). The MLCC does not *require* that local municipalities grant Plaintiffs the right to engage in commercial uses of their property without any respect to local zoning.

## VI. PLAINTIFFS ARE NOT ENTITLED TO MONEY DAMAGES FOR A PREEMPTION CLAIM AND, IF THEY ARE, PENINSULA TOWNSHIP IS IMMUNE UNDER THE MICHIGAN GOVERNMENTAL TORT LIABILITY ACT.

Plaintiffs claim entitlement to monetary damages for their preemption claim, (ECF No. 29, PageID.1126), but there is no basis under Michigan law to award money damages for this claim. But even if there were, the Township is immune under the GTLA.

Put simply, there is no Michigan appellate authority that exists to support an award for damages for a state-law claim of preemption.  The claim cannot be pursued for money damages under 42 U.S.C. § 1983, which is limited to rights secured by federal law. *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006).  Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285; 122 S.Ct. 2268 (2002).

Recognizing money damages as an available remedy under a state-law preemption claim would result in this Court substantially expanding state-law remedies which no Michigan court has done.  The Court should decline to do so under fundamental principles of federalism and comity.  The Sixth Circuit has historically cautioned against federal courts expanding principles of state law to create new or expanded theories of liability.  *See Grubb v. W.A. Foote Memorial Hosp. Inc.*, 741 F.2d 1486, 1500 (6th Cir. 1984) ("Our respect for the role of the state courts as the principal expositors of state law counsels restraint by the federal court in announcing new state-law principles . . . .") (vacated on other grounds, 759 F.2d 546 (1985)); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("We deem it inappropriate for a federal court sitting in

diversity to add a new cause of action to state law."). As a matter of law, money damages are not contemplated as a remedy for a preemption claim.

Assuming Plaintiffs were entitled to money damages for a preemption claim, the Township is immune from the damages claim under the GTLA. The Township is immune from all "tort" liability. MCL 691.1407(1). Specifically, MCL 691.1407(1) provides in relevant part, "Except as otherwise provided in this Act, a governmental agency is immune from tort liability if the government agency is engaged in the exercise or discharge of a governmental function." This immunity is expressed and construed in the broadest possible fashion. *In re Bradley Estate*, 494 Mich. 367; 835 N.W.2d 545 (2013). Governmental immunity is not an affirmative defense, but is rather a characteristic of government that the plaintiff must overcome to state a valid claim. *Mack v. City of Detroit,* 467 Mich. 186, 201-201; 649 N.W.2d 47 (2002). Under Michigan law, it is well settled that unless one of the six statutory exceptions applies, a governmental entity is immune.

Money damages for a preemption claim constitutes "tort" liability under the GTLA. The GTLA does not define the term "tort liability". But the Michigan Supreme Court in *In re Bradley* addressed that issue and noted that Michigan common law, like its roots in English common law, recognizes the distinction between torts and contracts as the two types of civil wrongs. *In re Bradley Estate*, 494 Mich. at 383. The Michigan Supreme Court held:

> Our analysis, however, requires more. MCL 691.1407(1) refers not merely to a "tort," nor to a "tort claim" nor to a "tort action," but to "tort liability." The term "tort," therefore, describes the type of liability from which a governmental agency is immune. As commonly understood, the word "liability," refers to liableness, i.e., "the state or quality of being liable." To be "liable" means to be "legally responsible [.]" Construing the term "liability" along with the term "tort," it becomes apparent that the Legislature intended "tort liability" to encompass legal responsibility arising from a tort. **We therefore hold that "tort liability" as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.**

34

*Id.* at 385 (emphasis added).

Here, the wrong alleged is not premised on a breach of a contractual duty.  Rather, the claim is premised on "some other civil wrong".  In that case, the GTLA may operate to bar the claim – if the action permits an award of damages as compensation for the injury.  If the Court concludes Plaintiffs are entitled to money damages for a preemption claim, then the Township is immune unless Plaintiffs prove an exception to governmental immunity.  It is Plaintiffs' burden to plead in avoidance of governmental immunity and no such attempt has been made here.  *Mack*, 467 Mich. 186, 201-202.

Even if money damages were available as a remedy for the preemption claim, the Township is entitled to immunity from that remedy pursuant to MCL 691.1407(1).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated, Defendant Peninsula Township respectfully requests that this Honorable Court grant it summary judgment on Plaintiffs' preemption claim.

<div style="margin-left:40%">

McGRAW MORRIS, P.C.
Attorneys for Defendant Peninsula Township

</div>

Dated:  September 11, 2023          BY:     */s/      Bogomir Rajsic, III*
                                            Bogomir Rajsic, III (P79191)
                                            Tracey R. DeVries (P84286)
                                            300 Ottawa Avenue, NW, Ste. 820
                                            Grand Rapids, MI  49503
                                            (616) 288-3700 - brajsic@mcgrawmorris.com

                                            Thomas J. McGraw (P48817)
                                            2075 W. Big Beaver Rd., Suite 750
                                            Troy, MI 48084
                                            (248) 502-4000 - tmcgraw@mcgrawmorris.com