UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

             Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

             Defendant,

And

PROTECT THE PENINSULA,

             Intervenor-Defendant.

Case No.:  1:20-cv-1008-PLM
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

**PENINSULA TOWNSHIP'S
RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT ON AFFIRMATIVE
DEFENSES**

**\*\*ORAL ARGUMENT REQUESTED\*\***

_____/

| | |
|---|---|
| Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>Joseph Mikhail Infante (P68719)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for  Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000)<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>McGRAW MORRIS P.C.<br>Attorneys for  Defendant<br>300 Ottawa Avenue, NW, Suite 820<br>Grand Rapids, MI  49503<br>(616) 288-3700/Fax (616) 214-7712<br>brajsic@mcgrawmorris.com |
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com |

| | |
|---|---|
| John Stephen Gilliam (P81421)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave. Ste 100<br>Bloomfield Hills, MI 48034<br>(248) 433-7082<br>jgilliam@plunkettcooney.com | Tracy Jane Andrews (P67467)<br>Holly L. Hillyer (P85318)<br>TROPOSPHERE LEGAL<br>Attorneys for Intervenor<br>619 Webster Street<br>Traverse City, MI 48686<br>(231) 714-9402<br>tracy@tropospherelegal.com<br>holly@tropospherelegal.com |

## RESPONSE OF DEFENDANT PENINSULA TOWNSHIP TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
I.    INTRODUCTION ........................................................................................................... 1
LAW AND ARGUMENT .......................................................................................................... 2
II.   STANDARD OF REVIEW ............................................................................................. 2
III.  ARGUMENT .................................................................................................................... 3

   A. Plaintiffs Have Not Attempted to Meet Their Evidentiary Burden to Support a Motion for
      Summary Judgment. ............................................................................................................ 3

   B. Plaintiffs Are Not Entitled to Summary Judgment on the Township's Statute of Limitations
      Affirmative Defense. To the Contrary, the Statute of Limitations Completely Bars
      Plaintiffs' Claims. ............................................................................................................... 4

   C. Plaintiffs Are Not Entitled to Summary Judgment on the Township's Laches Defense. .... 10

   D. Plaintiffs Are Not Entitled to Summary Judgment on Jurisdictional Requirements. ........... 12

      1.    Plaintiffs failed to achieve finality – a jurisdictional requirement for their takings and
          as-applied challenges. ................................................................................................. 12
      2.    Plaintiffs' claims for declaratory and injunctive relief are moot – depriving this Court
          of subject matter jurisdiction. ..................................................................................... 20

   E. The Township Does Not Intend to Pursue Affirmative Defenses Z and AA. ...................... 22

   F. The Township Does Not Intend to Pursue Affirmative Defense V ...................................... 22

   G. Plaintiffs Are Not Entitled to "Summary Judgment" on Questions Regarding Admissibility
      of Evidence. ....................................................................................................................... 22

   H. The Township Agrees that Affirmative Defenses Related to Plaintiffs' Preliminary
      Injunction That Was Denied Are Now Moot. ................................................................... 24

   I.  The Township Has Not Abandoned Affirmative Defenses C, E, or V. .............................. 24

   J.  Plaintiffs Are Not Entitled to "Summary Judgment" on Non-Affirmative Defenses. ......... 25

   K. Plaintiffs Are Not Entitled to Summary Judgment on Affirmative Defense H. .................. 28

   L. The Township Does Not Intend to Pursue Affirmative Defense X. ..................................... 29

   M. Plaintiffs Are Not Entitled to Summary Judgment on Abstention. ..................................... 29

   N. Plaintiffs Are Not Entitled to Summary Judgment on Waiver as it is Entirely Possible
      that Plaintiffs Waived Their Constitutional Rights. ........................................................... 31

   O. The Township Agrees that Should It Wish to Raise Additional Affirmative Defenses, an
      Amended Answer Would be Required. ............................................................................. 32

CONCLUSION AND RELIEF REQUESTED ......................................................................... 32

TABLE OF AUTHORITIES

**Cases**

*A to Z, Inc. v. City of Cleveland*, 281 Fed. Appx. 458 (6th Cir. 2008) .......................... 6

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ..................................... 2, 3

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986) ...................... 2

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 118
    S.Ct. 542 (1997 ............................................................................................. 5

*Bigelow v. Michigan Department of Natural Resources,* 970 F.2d 154 (6th Cir. 1992) ............. 14

*Braun v. Ann Arbor Charter Township,* 519 F.3d 564 (6th Cir. 2008) ........................ 14

*Burger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718 (6th Cir. 1993) ......................... 21

*Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 85 S. Ct. 1050 (1965)....................... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ............ 2

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007) ............. 23

*Crosby v. Pickaway Cnty. Gen. Health Dist.*, 303 Fed. Appx. 251 (6th Cir. 2008) ............. 15

*Davidson v. America Online, Inc.*, 337 F.3d 1179 (10th Cir. 1993)............................. 7

*Davis v. McCourt*, 226 F.3d 506 (6th Cir. 2000).............................................. 2

*Delta Business Center, LLC v. City of Taylor*, No. 2:19-CV-13618, 2020 WL 4284054 (E.D.
    Mich., July 27, 2020) ..................................................................................... 15

*Dibrell v. City of Knoxville*, 984 F.3d 1156 (6th Cir.2021)................................. 6

*Dubuc v. Green Oak Twp.,* 406 Fed. Appx. 983, 989-991 (6th Cir. 2011) .................... 14

*Eason v. Whitmer,* 485 F.Supp.3d 876, 881 (E.D. Mich. 2020) ............................. 11

*Eidson v. State of Tenn. Dept. of Children's Servs.* 510 F.3d 361 (6th Cir.2007)........... 6

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889 (6th Cir. 1991).......... 2

*Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882 (4th Cir. 2023) ............. 7

*Ford Motor Co. v. Trans. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986).................. 27

*Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019) ..................................... 30

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020) ................................ 5

*Garza v. Norfolk S. Ry. Co.*, 536 Fed. Appx. 517, 519 (6th Cir. 2013)...................... 2

*Goldsmith v. Sharrett*, 614 Fed. Appx. 824 (6th Cir. 2015) ................................ 9

*Grace Cmty Church v. Lenox Twp.,* 544 F.3d 609 (6th Cir. 2008)................... 14, 18, 20

*Harrison v. Michigan*, 722 F.3d 768, 772–73 (6th Cir. 2013).............................. 7

*Hilsey v. Ocean Spray Cranberries, Inc.*, 2019 WL 13198721 (S.D. Cal., July 3, 2019).......... 28

*Hochman v. Bd. of Ed. Of City of Newark*, 534 F.2d 1094 (3d Cir. 1976) .................. 19

*Insomnia Inc. v. City of Memphis, Tenn.,* 278 Fed. Appx. 609 (6th Cir. 2008).......... 14, 17, 16, 18

*Intl. Outdoor, Inc. v. City of Troy*, 361 F.Supp.3d 713 (E.D. Mich. 2019) ................ 21

*Johnson v. Indresco, Inc.*, 124 F.3d 197 (table), 1997 WL 468329, at *3 (6th Cir. 1997).......... 11

*Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838 (6th Cir.2015) ............... 6

*Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) ..................................... 30

*Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 930 (6th Cir. 2017) ................. 21

*Knick v. Twp. of Scott, Pa.*, ___ U.S. ___; 139 S.Ct. 2162 (2019)........................ 15

*Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 567 (S.D. Cal. 2012) ................ 28

*Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997) .................. 8, 9

*Laney Brentwood Homes, LLC v. Town of Collierville*, 144 Fed. Appx. 506 (6th Cir. 2005) ....... 7

ii

*Lichenstein v. Hargett,* 489 F. Supp.3d 742 (M.D. Tenn. 2020) ................................. 11

*Lomree, Inc. v. Pan Gas Storage, LLC,* 499 Fed. Appx 417 (6th Cir. 2012) ............................. 27

*LRL Props. V. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995).......................... 7

*McDonough v. Smith,* ___ U.S. ____, 139 S. Ct. 2149 (2019)...................................... 5

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010)... 13, 14, 16, 18

*Moskovic v. City of New Buffalo*, 2023 WL 179680 (W.D. Mich., Jan. 13, 2023) .................... 23

*Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393, 396 (6th Cir. 2004).................................... 7

*NanoLogix, Inc. v. Novak*, 2016 WL 1170776 (N.D. Ohio, March 25, 2016)............................. 3

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ........................................... 7

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808; 123 S.Ct. 2026 (2003)...... 13

*Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) ................................... 11

*Oberer Land Dev. Ltd. v. Sugarcreek Twp., Ohio*, No. 21-3834, 2022 WL 1773722 (6th Cir., June 1, 2022) ........................................................................................................ 15

*Obiukwu v. U.S.*, 14 Fed. Appx. 368, 369 (6th Cir. 2001)....................................................... 11

*Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 64 S. Ct. 582 (1944) ............... 4

*River City Capital, LP. v. Bd. of Cty. Comm'rs*, 491 F.3d 301 (6th Cir. 2007) ........................ 13

*Robinson v. Genesee Cty. Sheriff's Dept.*, 2018 WL 4145933 (E.D. Mich., Aug. 30, 2018)....... 10

*Sharpe v. Cureton*, 319 F.3d 259, 268-269 (6th Cir. 2003)........................................................ 7

*Shaw v. City of Riverview*, No. 16-11693, 2017 WL 914245 (E.D. Mich., Mar. 8, 2017).......... 16

*St. Francis Health Care Centre v. Shalala*, 205 F.3d 937 (6th Cir. 2000) .................................... 2

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................................................ 19

*Sullivan v. City of Augusta*, 310 F.Supp.2d 348 (D. Me. 2004) ................................................ 19

*Thatcher Enterprises v. Cache Cnty. Corp.*, 902 F.2d 1472, 1476 (10th Cir. 1990)................... 31

*Tini Bikinis-Saginaw, LLC v. Saginaw Charter Twp.*, 836 F.Supp.2d 504 (E.D. Mich. 2011)................................................................................................................... 18, 21, 22

*Uzuegbunam v. Preczewski*, ___ U.S. ___; 141 S. Ct. 792, 796 (2021)...................................... 21

*Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091 (2007) ............................................................ 5

*Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008)..................................................... 13

*Williamson County Reg. Planning Com. v. Hamilton Bank of Johnson County,* 473 U.S. 172 (1985) .................................................................................................................... 14

*Yetto v. City of Jackson*, 2019 WL 464603 (E.D. Tenn., Feb. 5, 2019) ......................................... 8

**Statutes**

42 U.S.C. § 1983 ....................................................................................................................... 5

**Rules**

Fed. R .Civ. P. 8(b) .................................................................................................................. 28

Fed. R .Civ. P. 12(f) .................................................................................................................. 1

Fed. R .Civ. P. 56(e) .................................................................................................................. 2

Fed. R. Civ. P. 56(f)(1) ............................................................................................................. 3

iii

## I.       INTRODUCTION

Plaintiffs have filed a motion for summary judgment claiming they are entitled to judgment in their favor on each of Defendant Peninsula Township's (the "Township") thirty-three affirmative defenses raised in its Answer.  (ECF No. 439; ECF No. 35).  Plaintiffs' motion for summary judgment – a motion that requires them to meet the initial burden to show there is no genuine issue of material fact – contains no factual discussion and instead claims a discussion of facts is unnecessary.  Plaintiffs seek summary judgment on the Township's affirmative defenses, negative defenses (which are really elements of the prima facie case of Plaintiffs' myriad claims), and even evidentiary issues. The Court should not indulge Plaintiffs' factually and legally unsupported request.

The Township properly pled each and every one of its affirmative defenses.  Plaintiffs have not filed a motion to strike the defenses under Fed. R. Civ. P. 12(f).  The Township is entitled to challenge Plaintiffs' ability to prove the underlying elements of their causes of action (negative defenses) and to otherwise present their affirmative defenses in response to Plaintiffs' claims at trial.  In this introduction the Township cannot reasonably preview the entirety of its response to Plaintiffs' fourteen arguments. But, by way of example, Plaintiffs cannot: (1) obtain summary judgment on their failure to timely file their claims (*see* Sections III(B) and (C), *infra*); (2) defeat a challenge to this Court's subject matter jurisdiction (*see* Section III(D), *infra*); (3) resolve evidentiary disputes (*see* Section III(G), *infra*); or (4) obtain summary judgment in their favor on elements of their causes of action through challenges to the Township's negative defenses (*see* Section III(J), *infra*).

Plaintiffs are not entitled to summary judgment as discussed below.  In the interest of conserving Court resources, the Township has conceded certain affirmative defenses that are inapplicable.

## LAW AND ARGUMENT

## II.    STANDARD OF REVIEW

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009), which "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325; 106 S. Ct. 2548, 2552 (1986).  "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.*, 536 Fed. Appx. 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)).

Once the moving party meets this burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Alexander*, 576 F.3d at 558.  The nonmoving party cannot rest on its pleadings but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Irrelevant factual disputes do not create a genuine issue of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). The opposing party must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). The failure to prove an essential element renders all other facts immaterial. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

Pursuant to Fed. R. Civ. P. 56(f)(1), "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f)(1).

## III.    ARGUMENT

### A.    Plaintiffs Have Not Attempted to Meet Their Evidentiary Burden to Support a Motion for Summary Judgment.

Plaintiffs' brief in support of their motion for summary judgment contains no factual discussion or citation to any evidence.  Indeed, Plaintiffs errantly assert that, "[t]his motion does not require this Court to delve into factual disputes . . . or permits this Court to make legal rulings on issues for which the facts are truly undisputed . . . ."  (ECF No. 440, PageID.15548).

From the outset, this violates the basic requirements of dispositive motion practice established by the United States Supreme Court decades ago.  In *Celotex*, the Supreme Court concluded that the moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal citation omitted). Only at that point does the burden shift to the nonmoving party. *Alexander*, 576 F.3d at 558.

Plaintiffs have not even attempted to satisfy their initial burden of presenting evidence showing the lack of a genuine issue of material fact such that the burden shifts to the Township. In this case, Plaintiffs' motion should be denied on that basis alone.  *See NanoLogix, Inc. v. Novak*, 2016 WL 1170776, at *8-*9 (N.D. Ohio, March 25, 2016) ("Novak's motion for summary judgment on his counterclaim relies entirely on the allegations in his pleading, and defendant has not properly supported his motion with evidence from the record as required by Rule 56 and the case law. The Court is not required to search the record for evidence that supports a moving party's

3

motion . . .  Summary judgment motions that are not properly supported as required by Rule 56 must be denied . . . Accordingly, Novak's motion for summary judgment on his counterclaim is denied.") (internal citations omitted).

Even if Plaintiffs had supported their motion with any evidence, they are still not entitled to summary judgment on the Township's affirmative defenses.

B. Plaintiffs Are Not Entitled to Summary Judgment on the Township's Statute of Limitations Affirmative Defense. To the Contrary, the Statute of Limitations Completely Bars Plaintiffs' Claims.

The Township properly pled that Plaintiffs' "claims are barred in whole or in part as a result of the expiration of the applicable statute of limitations." (ECF No. 35, PageID.1950). Plaintiffs have not presented any evidence to demonstrate they are entitled to summary judgment on this defense.  By responding to this motion, the Township is not conceding that Plaintiffs have carried their initial burden of proof.

The Township's affirmative defense is entirely valid and will be addressed at trial (if Plaintiffs' claims are not dismissed before then).

The United States Supreme Court has reasoned:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428, 85 S. Ct. 1050, 1054, 13 L. Ed. 2d 941 (1965) (quoting *Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 586, 88 L. Ed. 788 (1944)).

Plaintiffs' claims concern events that occurred years and, in several cases, decades ago. Indeed, Chateau Grand Traverse first obtained an SUP to operate as a Winery-Chateau under the Peninsula Township Zoning Ordinance ("PTZO") in 1990.  Universally, Plaintiffs assert that they were harmed when they first obtained an SUP or land-use approval.  Nevertheless, Plaintiffs let their claims "slumber" as the Supreme Court described and, in waiting to file suit until October, 2020, "evidence has been lost [and] memories have faded.".

Plaintiffs' claims asserted pursuant to 42 U.S.C. § 1983 ("Section 1983") are subject to a three-year statute of limitations. In cases brought pursuant to Section 1983, "state law determines which statute of limitations applies," while "federal law determines when the statutory period begins to run." *Harrison v. Michigan*, 722 F.3d 768, 772–73 (6th Cir. 2013). Sixth Circuit precedent makes clear that Michigan's three-year statute of limitations for injuries to persons or property applies to claims brought under Section 1983. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020).  Plaintiffs' claims in Counts I, II, III, IV, V, VI, and VII are, therefore, subject to a three-year statute of limitations.

Plaintiffs' constitutional claims accrued years, and in many cases, decades ago.  While state law controls the length of the limitations period, federal law determines the event that causes the three-year clock to start running (i.e., the "accrual date"). *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091 (2007). The Supreme Court has previously warned that in the § 1983 context the accrual date is the first day that a plaintiff may sue on a claim, which occurs once the plaintiff has "a complete and present cause of action[.]" *Id.* (*quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S. Ct. 542 (1997)); *McDonough v. Smith*, ___ U.S. ____, 139 S. Ct. 2149, 2155 (2019).

The Sixth Circuit has applied the Supreme Court's "complete and present cause of action" standard through a "discovery rule" for § 1983 claims. *See, e.g.*, *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015). "[A]s developed in [the Sixth] Circuit, the statute of limitations period begins to run [for § 1983 claims] when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). The Sixth Circuit recently recognized its "discovery rule" is not wholly consistent with the Supreme Court's "standard rule" for accrual of federal claims:

> The "standard" accrual "rule" for federal claims starts the limitations period "when the plaintiff has a complete and present cause of action" that can be raised in court. The Supreme Court has contrasted [the] "standard" rule with a "discovery" rule that ties the start of the limitations period to when the plaintiff discovered (or should have discovered) the cause of action. ... In this § 1983 context, the Court has started its accrual analysis with the standard rule: that a claim accrues when the plaintiff has a complete cause of action. Our § 1983 case law, by contrast, has started the accrual analysis with the competing discovery rule: that the claim accrues when the plaintiff knows of, or should have known of, that cause of action.

*Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021). The *Dibrell* panel, however, declined to "resolve this tension" because the claims at issue were barred even if the standard rule were applied. *Id.*

"'[I]n determining when the cause of action accrues in section 1983 actions, we have looked to what events should have alerted the typical lay person to protect his or her rights." *Edison v. State of Tenn. Dept. of Children's Servs.* 510 F.3d 361, 635 (6th Cir. 2007) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

In the takings and zoning context, Plaintiffs' claims accrued when the Township granted Plaintiffs' their land-use approvals. *See A to Z, Inc. v. City of Cleveland*, 281 Fed. Appx. 458 (6th Cir. 2008) (holding that the statute of limitations for a § 1983 action that challenged zoning ordinance accrued when the city ordered the denial of a zoning permit); *see also Epcon Homestead,*

6

*LLC v. Town of Chapel Hill*, 62 F.4th 882 (4th Cir. 2023) (affirming a district court holding that "Epcon knew or had reason to know of the [inclusionary zoning provision's] mandates, including the fee-in-lieu alternative, certainly by the time the [special use permit] was issued in October 2014, when it—or its affiliates—agreed to abide by the Ordinance's terms."). Therefore, in this case, Plaintiffs' claims accrued, at the latest, when they received their most recent land-use approval.

To avoid the dismissal of their claims based on the running of the statute of limitations, Plaintiffs rely on a theory of alleged continuing violations.  Federal courts recognize that, when a pattern or practice of behavior results in a continuing violation of a plaintiff's rights, the statute of limitations is deemed to begin running only with the conclusion of the pattern of harmful conduct such as when the last wrongful event occurs. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  When a plaintiff can establish a continuing violation, the statute of limitations expands to reach back to the first date of the violation.  *Sharpe v. Cureton*, 319 F.3d 259, 268-269 (6th Cir. 2003).  However, a continuing violation "requires continued action and not simply continuing harm or 'passive inaction.'"  *Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393, 396 (6th Cir. 2004).  Moreover, the Sixth Circuit has been reluctant to apply the continuing violations doctrine outside of the context of Title VII claims.  *LRL Props. V. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995); *Laney Brentwood Homes, LLC v. Town of Collierville*, 144 Fed. Appx. 506, 511 (6th Cir. 2005).

However, a continuing violation claim still fails when "'the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred.'"  *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 1993) (internal citation omitted).  As the United States District Court for the Western District

of Tennessee reasoned in *Yetto v. City of Jackson*, 2019 WL 464603, at *7 (E.D. Tenn., Feb. 5, 2019):

> The Eleventh Circuit also has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been able to determine that a violation had occurred." *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]" *Id.* (alteration in original) (internal quotation marks and citation omitted). *See also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("The doctrine applies [when] there is no single incident that can fairly or realistically be identified as the cause of significant harm."); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) ("[M]ere continuing impact from past violations is not actionable.").

Plaintiffs' claims arise from discrete actions by the Township: passing amendments to the PTZO or approving land-use permits. These actions were certainly ascertainable by Plaintiffs. If they did not have a viable cause of action at that time, they should have known of the cause of action once they obtained either a permit to operate as a Farm Processing Facility or an SUP, through which they tacitly agreed to operate pursuant to the terms of the PTZO. As identified *supra*, for all Plaintiffs except for Hawthorne (obtained its SUP in 2020) and Bowers Harbor (obtained its most recent SUP in 2019), these actions occurred far beyond three years before they filed this action. The continuing violations theory does not apply here because the Township was not taking any ongoing actions against Plaintiffs. Moreover, Plaintiff wineries are part of the Plaintiff Winery Association (WOMP) who would have had reasonable knowledge of the wineries alleged injuries. Rather, Plaintiffs have based their case on the alleged continuing harms of actions that took place years, if not decades ago. Any reasonably prudent plaintiff would be aware of the actions comprising such harms.

Plaintiffs errantly rely on the Sixth Circuit's decision in *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997). In *Kuhnle Brothers*, Geauga County enacted Resolution

91-87 which prohibited Kuhnle Brothers, a trucking company, from traveling on certain roads to access a stone quarry. *Id.* at 521.  In a separate action, Ohio state courts subsequently ruled that a Geauga County resolution similar to Resolution 91-87 was unconstitutional and, therefore, the county stopped enforcing Resolution 91-87.  *Id.*  Kuhnle Brothers filed suit against the county more than two years after the resolution was passed (the relevant statute of limitations was two years) but less than two years after the county stopped enforcing the resolution.  The Sixth Circuit held that "the continued enforcement of an unconstitutional ordinance cannot be insulated by the statute of limitations." *Id.* at 522.  The Sixth Circuit further reasoned that "each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm' on Kuhnle." *Id.*  In other words, Kuhnle Brothers was "actively deprived . . . of its asserted constitutional rights every day that [Resolution 91–87] remained in effect." *Id.*

Kuhnle Brothers, however, is distinguishable. First, in *Kuhnle Brothers*, it was not the plaintiff that initially litigated the constitutionality of the ordinance.  That was resolved earlier and the plaintiff sought relief following another action.  Here, Plaintiffs are the ones who have alleged the ordinance is unconstitutional and are not simply seeking the same relief obtained by a different party, like in *Kuhnle Brothers*. Further, the Sixth Circuit in *Goldsmith v. Sharrett*, 614 Fed. Appx. 824 (6th Cir. 2015), distinguished the scope of *Kuhnle Brothers*.  In *Goldsmith*, a prisoner plaintiff complained that "a series of events involving repeated seizures of his manuscripts by prison staff" gave rise to a First Amendment claim.  *Id.* at 825.  The plaintiff in *Goldsmith*, relying on *Kuhnle Brother*, alleges that eventually the defendants "instituted a complete and ongoing ban on his writing" which he claims "constitute[ed] a continuing violation of his rights under the First Amendment." *Id.* at 828.

The *Goldsmith* panel found *Kuhnle Brothers* inapplicable because the resolution in *Kuhnle Brothers* was found to be unlawful, yet remained on the books. *Id.* The Sixth Circuit reasoned:

> The case at bar is very different from *Kuhnle Brothers*, however. First, in *Kuhnle Brothers*, the law at issue—Resolution 91–87—was determined to be unlawful. *See id.* at 518. Here, Goldsmith has failed to allege facts to establish that there was a ban on his writing that could possibly constitute a continuing violation of his constitutional rights. Rather, Goldsmith alleges a series of discrete, easily identifiable incidents—i.e., individual seizures of his manuscripts followed by individual hearings. In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court contrasted a continuing violation with discrete acts that are "easy to identify." Continuing violations in the Section 1983 context are akin to hostile-work environment claims where the harm "cannot be said to occur on any particular day" and individual incidents are not actionable on their own. *Id.* at 115, 122 S.Ct. 2061. A generous reading of Goldsmith's complaint reveals a host of significant discrete events.

*Goldsmith*, relying on Supreme Court precedent, recognizes that a continuing violations theory that is predicated on discrete acts by a defendant, acts that were readily ascertainable by the plaintiffs (e.g., the passing of an ordinance, the granting of an SUP that requires compliance with an ordinance, etc.) that are, on their own, actionable, the continuing violations theory does not apply. *See also Robinson v. Genesee Cty. Sheriff's Dept.*, 2018 WL 4145933 at *5 (E.D. Mich., Aug. 30, 2018) ("When the alleged 'continuing violation' consists of actions that are actionable on their own, they do not qualify in the aggregate as a continuing violation.") (citing *Goldsmith*, 614 Fed. Appx. at 828-829).

Plaintiffs are not entitled to summary judgment on the Township's statute of limitations defense and it certainly does not operate to simply limit Plaintiffs' damages.

C. Plaintiffs Are Not Entitled to Summary Judgment on the Township's Laches Defense.

The Township properly pled that Plaintiffs' claims are barred by the doctrine of laches. (ECF No. 35, PageID.1952). Plaintiffs errantly claim that they are entitled to judgment on the

affirmative defense because laches is not a defense to injunctive relief.  Plaintiffs, however, impliedly concede that the Township's laches defense applies to their claims for money damages.

In support of their position, Plaintiffs cite to *Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002), a patent case. When applied in complete context, *Natron* does not prevent laches from barring a claim for injunctive relief:

> Finally, we are not persuaded by Nartron's argument that even if its 11–year delay in bringing suits constitutes laches, it is nonetheless entitled to prospective injunctive relief. Laches only bars damages that occurred before the filing date of the lawsuit. *Kellogg*, 209 F.3d at 568; *TWM Mfg. Co. Inc. v. Dura Corp.*, 722 F.2d 1261, 1268 (6th Cir.1984). It does not prevent plaintiff from obtaining injunctive relief or post-filing damages. *Kellogg*, 209 F.3d at 568; TWM, 722 F.2d at 1268. "[T]o defeat a suit for injunctive relief, **a defendant must also prove elements of estoppel** which requires more than a showing of mere silence on the part of a plaintiff; **defendant must show that it had been misled by plaintiff** through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark." *SCI Systems, Inc. v. Solidstate Controls, Inc.* 748 F.Supp. 1257, 1261–62 (S.D.Ohio 1990).

*Id.* at 412-13 (emphases added). Contrary to Plaintiffs' position, laches can certainly bar a request for injunctive relief.

Courts throughout the Sixth Circuit have consistently applied laches to claims for equitable relief.  *See Obiukwu v. U.S.*, 14 Fed. Appx. 368, 369 (6th Cir. 2001) ("The court properly construed Obiukwu's motion a civil action seeking equitable relief. *See id.* Thus, it was subject to the defense of laches[.]"); *Johnson v. Indresco, Inc.*, 124 F.3d 197 (table), 1997 WL 468329, at \*3 (6th Cir. 1997) (affirming trial court's application of laches to request for injunctive relief on EPA claim); *Lichenstein v. Hargett,* 489 F. Supp. 3d 742, 752-53 (M.D. Tenn. 2020) ("Laches generally is potentially applicable to requested equitable relief (including but not limited to injunctions) sought in civil actions.") (citing *Obiukwu*, 14 Fed. Appx. at 369); *Eason v. Whitmer,* 485 F.Supp.3d 876, 881 (E.D. Mich. 2020) (laches barred injunctive relief).

Contrary to Plaintiffs' claim, laches is a defense to their claim for injunctive relief. Plaintiffs have not shown they are entitled to summary judgment on this defense.

D.  <u>Plaintiffs Are Not Entitled to Summary Judgment on Jurisdictional Requirements.</u>

The Township asserted that Plaintiffs' claims are barred because they failed to "exhaust administrative remedies or to satisfy jurisdictional requirements."  (ECF No. 35, PageID.1950). This argument lays bare Plaintiffs' complete and utter misunderstanding of the requirement to achieve finality before filing suit in the zoning context or the fact that a substantial portion of their claims are now moot.

Plaintiffs cite no evidence in support of their broad assertion that the Township's affirmative defense is subject to summary judgment.  The Township's pending motions to dismiss for lack of subject matter jurisdiction (ECF No. _____ and _____) demonstrate that Plaintiffs failed to achieve finality on their takings and as-applied constitutional claims and that Amendment 201 to the PTZO moots Plaintiffs' claims for injunctive and declaratory relief in Counts I, II, III, IV, V, VI, VII, and X.

**1.  Plaintiffs failed to achieve finality – a jurisdictional requirement for their takings and as-applied challenges.**

Frankly, Plaintiffs lost the forest for the trees when they saw the word "exhaustion" and ignored that, in the zoning context, satisfying jurisdictional requirements primarily turns on achieving finality.  This applies to both Plaintiffs' regulatory takings claim (Count VII) and their as-applied challenges (Counts II and III).

Here, Plaintiffs filed a federal lawsuit asserting takings and as-applied challenges to the PTZO without obtaining a final decision regarding the application of the PTZO to their respective properties regarding the claims alleged in the lawsuit.  Because Plaintiffs failed to achieve finality, their takings and as-allied challenges are not ripe and this Court lacks subject matter jurisdiction.

The requirement of finality emanates from the ripeness requirements of Article III of the United States Constitution.  Ripeness encompasses "Article III limitations on judicial power" as well as "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808; 123 S.Ct. 2026 (2003) (internal citation and quotation marks omitted).  Through enforcement of ripeness requirements, courts discourage "premature adjudication" of legal questions and avoid judicial entanglement in abstract controversies. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc).  Ripeness "is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *River City Capital, LP. v. Bd. of Cty. Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007) (internal citation and quotation marks omitted).

The Sixth Circuit in *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010), explained how the ripeness doctrine has evolved into a "finality" requirement in the land-use context.  The "insistence on finality" is a foundational prerequisite for any federal land-use claim:

> To decide whether a dispute has ripened into an action amenable to and appropriate for judicial resolution, we ask two questions: (1) is the dispute "fit" for a court decision in the sense that it arises in "a concrete factual context" and involves "a dispute that is likely to come to pass"? and (2) what are the risks to the claimant if the federal courts stay their hand? *Warshak*, 532 F.3d at 525; *see Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507. In the land-use context, the demands of "a concrete factual context" and "a dispute that is likely to come to pass" converge in an insistence on "finality," an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute. In the related context of takings claims under the Fifth and Fourteenth Amendments, courts likewise insist that a claimant "obtain[ ] a final decision regarding the application of the zoning ordinance[s] ... to its property," *Williamson Cnty. Reg.'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a requirement rooted in ripeness considerations, *see id.* at 186–94, 105 S.Ct. 3108; *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012–13, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In addition to

takings claims, we have applied the finality requirement to other constitutional and
statutory challenges to local land-use requirements. *See Grace Cmty. Church*, 544
F.3d at 615 (RLUIPA); *Insomnia Inc. v. City of Memphis*, 278 Fed. Appx. 609, 613
(6th Cir.2008) (Free Speech Clause); *Bannum, Inc. v. City of Louisville*, 958 F.2d
1354, 1362 (6th Cir.1992) (Equal Protection Clause).

*Miles Christi*, 629 F.3d at 537.

The seminal case of *Williamson County Reg. Planning Com. v. Hamilton Bank of Johnson
County,* 473 U.S. 172 (1985) and its progeny highlight the importance of this process and have
cautioned federal courts not to interfere with this process.

As set forth by the Court in *Williamson County,* 473 U.S. at 187: "[A] claim that the
application of government regulations affects a taking of a property interest is not ripe until the
government entity charged with implementing the regulations has reached a final decision
regarding the applicability of the regulations to the property at issue." Local regulatory decisions
are generally not ripe for constitutional attack until all of the state law processes have been
exhausted. *Braun v. Ann Arbor Charter Township,* 519 F.3d 564 (6th Cir. 2008); *Bigelow v.
Michigan Department of Natural Resources,* 970 F.2d 154 (6th Cir. 1992).

Contrary to Plaintiffs' argument, Plaintiffs' regulatory takings claims (Count VII) and as-
applied constitutional claims (Counts II and III) are no ripe – and they have, therefore, not satisfied
jurisdictional requirements – until they prove they have received "a final decision regarding the
application of the regulations to the property at issue." *Grace Cmty Church v. Lenox Twp.,* 544
F.3d 609, 615 (6th Cir. 2008) ("*Grace I*") (quoting *Insomnia Inc. v. City of Memphis, Tenn.,* 278
Fed. Appx. 609, 612 (6th Cir. 2008)).  *See also, Dubuc v. Green Oak Twp.,* 406 Fed. Appx. 983,
989-991 (6th Cir. 2011); *Beacon Hill Farm Associates II, Ltd. Partnership v. Loudoun Cty. Bd. of
Sup'rs*, 875 F.2d 1081 (4th Cir. 1989) (discussing distinctions between facial and as-applied
challenges in relationship to finality requirements).

14

Plaintiffs, in incorrectly focusing on exhaustion, do correctly note that the Supreme Court in *Knick v. Twp. of Scott, Pa.*, ___ U.S. ___; 139 S.Ct. 2162 (2019) recently modified existing requirements regarding exhaustion prior to proceeding on a *takings* claim only. Pre-*Knick*, plaintiffs were required to prove two requirements before pursuing a takings claim in federal court: (1) the government entity charged with implementing the regulations had reached a final decision regarding the applications of the regulations to the property at issue; and (2) the property owner has exhausted the proper state procedures (i.e., the property owner filed and pursued a case in state court). *See, e.g.*, *Crosby v. Pickaway Cnty. Gen. Health Dist.*, 303 Fed. Appx. 251, 259 (6th Cir. 2008) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)).  But in *Knick*, the Supreme Court eliminated the exhaustion requirement.

However, the *Knick* Court explicitly left the "finality" requirement intact, meaning that there must still be a "final" decision before a takings claim is ripe for judicial review in federal court.  *Id.* at 2169 ("Knick does not question the validity of this finality requirement, which is not at issue here."); *see also, Oberer Land Dev. Ltd. v. Sugarcreek Twp., Ohio*, No. 21-3834, 2022 WL 1773722, at *4, n.1 (6th Cir., June 1, 2022) ("The Supreme Court recently overruled *Williamson County* in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), but left in place *Williamson County*'s finality requirement: that a takings claim 'is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.' *Williamson Cnty.*, 473 U.S. at 186; *Knick*, 139 S.Ct. at 2169"); *Delta Business Center, LLC v. City of Taylor*, No. 2:19-CV-13618, 2020 WL 4284054, at *2 (E.D. Mich., July 27, 2020) ("The finality requirement, which was not at issue in *Knick*, was left intact. This means that there still must be a 'final' decision before a takings claim is ripe for judicial review in federal court.").  Accordingly, Plaintiffs are still obligated to meet the

"final decision" requirement to establish that their Fifth Amendment regulatory takings claims are ripe for judicial review.

The Sixth Circuit has explained, "[i]n the land-use context, the demands of 'a concrete factual context' and 'a dispute that is likely to come to pass' converge in an insistence on 'finality,' an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute." *Miles Christi*, 629 F.3d at 537. Therefore, the Sixth Circuit has cautioned, "courts . . . insist that a claimant 'obtain[] a final decision regarding the application of the zoning ordinance[s] . . . to its property,' a requirement rooted in ripeness consideration[.]" *Id.* (internal citations omitted). *See also Shaw v. City of Riverview*, No. 16-11693, 2017 WL 914245, at *7-8 (E.D. Mich., Mar. 8, 2017) ("Finality requires the plaintiff to demonstrate that the decision-making body has reached a final decision regarding the application of the regulation at issue.") (citing *Lilly Investments v. City of Rochester*, 674 Fed. Appx. 523, 526 (6th Cir. 2017)).

The requirement for finality is well-founded in the ripeness doctrine, as "a final, definitive decision from local zoning authorities ensures that federal review – should the occasion eventually arise – is premised on concrete and established facts and that all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement in constitutional disputes." *Insomnia Inc. v. City of Memphis, Tenn.*, 278 Fed. Appx. 609, 615 (6th Cir. 2008) (internal citation and quotation marks omitted).

Plaintiffs' regulatory takings claim is subject to finality, which Plaintiffs failed to achieve before filing this suit. Plaintiffs are not entitled to summary judgment on this issue.

Further, the finality requirement applies not only to Plaintiffs' regulatory takings claim, but also to their as-applied constitutional claims (Counts II and III) as well.[1]  *See Miles Christi*, 629 F.3d at 537 ("In addition to takings claim, we have applied the finality requirement to other constitutional and statutory challenges to local land-use requirements.").  Here, the same finality requirements as discussed *supra* regarding the takings claim applies to Plaintiffs' as-applied First Amendment claims in Counts II and III.

The Sixth Circuit's decision in *Insomnia, Inc.* leads the analysis.  In *Insomnia, Inc.*, the trial court dismissed the plaintiffs' First Amendment claim for lack of ripeness.  In affirming the trial court, the Sixth Circuit rejected the plaintiffs' argument, "that, in the First Amendment context, there is no finality requirement; rather, an injury to land use becomes legally cognizable as soon as the adverse governmental decision is made." *Insomnia, Inc.*, 278 Fed. Appx. at 612.  In reaching its conclusion, the Sixth Circuit noted that the Second Circuit in *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2nd Cir. 2005) departed from its decision in *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.83 (2nd Cir. 2002) and required finality in the First Amendment context.  *Insomnia, Inc.*, 278 Fed. Appx. at 614-615.

In *Insomnia, Inc.*, the Sixth Circuit noted that the Second Circuit utilizes a two-part analysis to determine whether a plaintiff is subject to finality.  *Id.* at 615.  The Court asks "'whether the [plaintiffs] experienced an immediate injury as a result of [the defendant's] actions and (2) whether requiring the [plaintiffs] to pursue additional administrative remedies would further define their alleged injuries.'"  *Id.* (quoting *Murphy*, 402 F.3d at 351).  The Sixth Circuit applied the Second Circuit's two-part test in *Insomnia, Inc.*, and concluded that the plaintiffs had "not suffered an immediate injury as a result of the Defendant's actions."  *Id.*  at 615.  To the contrary, had the

---

[1] The Township agrees that there is no finality requirement for facial challenges.

plaintiffs followed the available administrative options, "there is a chance that their proposal [would] be approved" and they would have obtained the result they sought. *Id.* As the Sixth Circuit noted, "[s]uch an outcome would discharge any claim of First Amendment retaliation and obviate the need for federal review. If, however, Plaintiffs' renewed plan . . . is rejected, this outcome [would] further define the contours of Plaintiffs' claim of First Amendment retaliation." *Id.* at 615-616. The *Insomnia, Inc.* Court concluded: "Taken together, these two prongs indicate that the district court acted properly in dismissing Plaintiffs' claim as premature." *Id.* at 616. Finally, the Sixth Circuit also observed that this result comports with policy considerations that underly the finality requirement, including ensuring "the development of a full record," providing the plaintiffs a chance to obtain the relief requested without judicial entanglement in constitutional disputes, and showing "respect for federalism principles by recognizing that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Id.*

Here, the analysis from *Insomnia, Inc.* is instructive. Had Plaintiffs worked through the administrative options available to them, "there is a chance" they would have been successful in obtaining the approvals they seek to compel through this lawsuit without the need for federal review or that the outcome in obtaining finality would "further define the contours" of the claim. *Id.* at 615-616. *See also Miles Christi*, 629 F.3d 533 (analyzing application of finality requirement in First Amendment context); *Grace Community Church v. Lenox Twp.*, 544 F.3d 609 (6th Cir. 2008); *Tini Bikinis-Saginaw, LLC v. Saginaw Charter Twp.*, 836 F.Supp.2d 504 (E.D. Mich. 2011) (finding as-applied First Amendment claim not ripe because plaintiff failed to achieve finality).

Plaintiffs' reliance on cases discussing exhaustion of administrative remedies with respect to as-applied challenges is misplaced because none of the cases deal with constitutional claims in the land-use context. (*See* ECF No. 440, PageID.15550-15551). Again, this is a zoning case, not

18

an employment dispute or case dealing with a protestor attempting to exercise their First Amendment rights.  Plaintiffs' citation to *Sullivan v. City of Augusta*, 310 F.Supp.2d 348 (D. Me. 2004) is not supportive as that case was not in the land-use context, but rather involved a First Amendment claim regarding a plaintiff's application to host a parade.  Similarly, *Hochman v. Bd. of Ed. Of City of Newark*, 534 F.2d 1094 (3d Cir. 1976) is a First Amendment case dealing with claims in the employment, not land use, context.  Finally, Plaintiffs cite extensively to *Steffel v. Thompson*, 415 U.S. 452 (1974), which, similar to *Sullivan*, addresses exhaustion with respect to a First Amendment claim involving threatened prosecution for protesting the Vietnam War.  *Steffel* is not a land-use claim.

Even on as-applied challenges, Plaintiffs must still achieve finality.

Achieving finality would not have been futile.  In support of their futility argument, Plaintiffs do not point to a single instance of the Township denying an application for a land-use permit, SUP, or variance request.  The reason for this is clear: the Township historically worked with Plaintiffs, including granting SUP amendments and variances. Instead, Plaintiffs' only "evidence" that achieving finality would have been futile is that the Township did not amend its ordinance in 2019 despite "stat[ing] that it would work with the Wineries to revise the ordinances to bring them into compliance."  (ECF No. 440, PageID.15552).

The Sixth Circuit has regularly rejected such vague assertions of "futility".  In *Miles Christi*, the plaintiff claimed that Township officials interfered with its religious practices by requiring a site plan to justify and allow additional parking. Plaintiff did not submit a site plan and the Township issued tickets. There was an administrative process to seek a variance from the site plan requirement. In an effort to avoid the finality requirement, plaintiff argued that the Township's positions were well defined. The Court rejected the argument that past conduct sheds

light on what government officials may do in the future. In soundly rejecting the futility argument, the Court stated, "We might have an idea on what a few township officials think but, by filing this lawsuit when it did, Miles Christi pretermitted the opportunity to submit this issue to the body given decision making authority over it." *Miles Christi*, 629 F.3d at 539.

Further, in *Grace Community Church*, *supra*, the plaintiff brought claims under the RLUIPA, together with constitutional claims based on the Township's revocation of a special use permit. The decision was not appealed to the Township zoning board of appeals. In affirming dismissal, the Court analyzed and endorsed the finality requirement and rejected the "church's argument that pursuit of administrative relief would have been futile . . ." 544 F.3d at 617. The Court confirmed, "finality is a prerequisite to litigation." *Id.*

Plaintiffs' regulatory as-applied First Amendment claims, Counts II and III, are subject to finality, which Plaintiffs failed to achieve before filing this suit.  Plaintiffs are not entitled to summary judgment on this issue.

### 2.  Plaintiffs' claims for declaratory and injunctive relief are moot – depriving this Court of subject matter jurisdiction.

In Counts I (Facial Challenge to Violation of Freedom of Speech, Freedom of Expression and Free Exercise of Religion Under the First and Fourteenth Amendments), II (As-Applied Challenge to Violation of Plaintiffs' Freedom of Speech Under the First and Fourteenth Amendments), III (Violation of Freedom of Association Under the First and Fourteenth Amendments), IV (Violation of Due Process), V (Dormant Commerce Clause – Discrimination Against Interstate Commerce), VI (Dormant Commerce Clause – Excessive Burden on Interstate Commerce), VII (Regulatory Taking), and X (Injunctive Relief), Plaintiffs seek injunctive and declaratory relief regarding sections of the PTZO which were completely removed via Amendment 201.  Because the challenged sections of the PTZO related to Farm Processing Facilities have been

removed from the ordinance, the Court no longer has subject matter jurisdiction over the requests for declaratory and injunctive relief. This does not apply to Plaintiffs' claims for damages.

"'Mootness results when events occur during the pendency of the litigation which render the court unable to grant the requested relief.'" *Burger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993) (quoting *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). Similar to finality (which deals with ripeness) mootness affects whether the Court has subject matter jurisdiction. "A federal court 'lacks jurisdiction to consider any case or issue that has lost its character as a present, live controversy and thereby becomes moot.'" *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 930 (6th Cir. 2017) (quoting *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009)). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, ___ U.S. ___; 141 S. Ct. 792, 796 (2021).

"'Generally, when an ordinance is repealed any challenges to the constitutionality of that ordinance become moot.'" *Tini-Bikinis*, 836 F.Supp.2d at 519 (quoting *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir.2000)). While this generally does not apply to claims for damages, it does moot claims for declaratory and injunctive relief. *See Tini-Bikinis*, 836 F.Supp.2d at 520 (citing *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 ("We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect.")). *See also Intl. Outdoor, Inc. v. City of Troy*, 361 F.Supp.3d 713 (E.D. Mich. 2019) (rejecting claims for declaratory and injunctive relief as moot given amendment to challenged ordinance).  As the Eastern District of Michigan in *Tini-Bikinis* reasoned, declaring a repealed ordinance void and/or enjoining its enforcement would be an empty act:

> In this case, as in *Brandywine*, Plaintiffs' First Amendment claim for injunctive and declaratory relief regarding the 2010 Ordinance is moot. Indeed, declaring a

21

> repealed ordinance void and enjoining its enforcement—particularly when the current ordinance is also before the Court—would be an empty act. In the vernacular, declaring it void would be as meaningful as shooting a dead horse. And enjoining its enforcement, moreover, would be shooting the horse once again.

836 F.Supp.2d at 520.

The same analysis applies in this case. Every section of the PTZO that Plaintiffs challenge as unconstitutional has been removed through Amendment 201. Entering an order declaring that sections of an ordinance that no longer exist would be tantamount to an advisory opinion. As the *Tini-Bikinis* court concluded, it "would be an empty act." *Id.* at 520. Further, enjoining the enforcement of the PTZO, given that it has been completely rewritten to remove each and every one of the challenged sections, would be shooting a dead horse not once, but twice.

The claims for declaratory and injunctive relief in Counts I, II, III, IV, V, VI, VII, and X are moot and should be dismissed for lack of subject matter jurisdiction. Again, this does not apply to Plaintiffs' request for damages.

E.   The Township Does Not Intend to Pursue Affirmative Defenses Z and AA.

The Township does not intend to pursue the contracts-based affirmative defenses identified in Affirmative Defenses Z and AA. (ECF No. 35, PageID.1952).

F.   The Township Does Not Intend to Pursue Affirmative Defense V.

The Township does not intend to pursue the affirmative defenses identified in Affirmative Defense V. (ECF No. 35, PageID.1952).

G.   Plaintiffs Are Not Entitled to "Summary Judgment" on Questions Regarding Admissibility of Evidence.

In Affirmative Defenses I and J, the Township raises defenses to the admissibility to pre-litigation opinions rendered during the course of pre-litigation negotiations. Specifically, in Affirmative Defense I, the Township pled, "Plaintiff's reliance on the legal opinions rendered by

the Defendants' attorney during pre-litigation negotiations in this matter is inadmissible and improper" and in Affirmative Defense J, the Township pled "The Defendant has not made any admissions or otherwise adopted its attorney's pre-litigation legal opinions upon which Plaintiffs' claims rely."  (ECF No. 35, PageID.1950-1951).

For purposes of Plaintiffs' motion, to the extent Plaintiffs agree that the admissibility to the pre-litigation opinions is better suited to motion *in limine* practice, the Township agrees that Affirmative Defenses I and J are unnecessary.  However, the Township **does not** concede that "summary judgment" should be granted regarding the underlying admissibility of the evidence.  The opposite is true.  There are substantial evidentiary issues regarding the alleged "admissions" of the Township's prior counsel during pre-litigation negotiations.

Plaintiffs essentially seek to admit the statements as proof of legal conclusions.  This is not supported.  Admissions typically only relate to matters of fact and courts are reluctant to treat an attorney's statements regarding opinions and legal conclusions as binding judicial admissions.  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (concluding that "legal conclusions are rarely considered to be binding judicial admissions.").  *See also Moskovic v. City of New Buffalo*, 2023 WL 179680, at *3 (W.D. Mich., Jan. 13, 2023) (rejecting Plaintiffs' reliance on party "admissions" regarding the application of law, "But even if Watson agreed that the ZO permitted short-term rentals, the City's witnesses cannot make an admission about the law. It is the Court's province and duty to "say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Statements by the parties do not control the Court's analysis of the ZO. The Court looks first and foremost at the text of the ZO to ascertain its meaning. (*See* 10/31/2022 Op. 14 (citing *Brandon Charter Twp. v. Tippett*, 616 N.W.2d 243, 245 (Mich. Ct. App. 2000).)).

The Court should decline to enter summary judgment on the issue of admissibility of evidence which is an issue that should be reserved for motions *in limine* and trial.  Finally, if the Court determines that the letters are not admissible, the Township requests that they not be considered as evidence at the dispositive motion phase.

H. <u>The Township Agrees that Affirmative Defenses Related to Plaintiffs' Preliminary Injunction That Was Denied Are Now Moot.</u>

In Affirmative Defenses K and EE, the Township asserted that the Court should issue a preliminary injunction.  (ECF No. 35, PageID.1951-1952).  Indeed, the Court denied Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 34).

I. <u>The Township Has Not Abandoned Affirmative Defenses C, E, or V.</u>

In Affirmative Defense C, the Township pled, "Plaintiffs have failed, neglected and/or refused to properly and adequately mitigate the damages they claim to have suffered."  (ECF No. 35, PageID.1950).  Plaintiffs assert that the Township has abandoned this defense because it has not supplemented discovery responses.  However, Plaintiffs' discovery request did not request "the Township to elaborate" on this defense:

> **Interrogatory #13**:   Describe in detail what steps and measures Plaintiffs should have taken "to properly and adequately mitigate the damages they claim to have suffered and "to take advantage of preventative and corrective opportunities provided" relating to Defendant's allegations in Paragraph C and V of its Affirmative Defenses. Identify any documents relating hereto.

> **ANSWER:**   Objection. Interrogatory #13 calls for a legal conclusion. Discovery in this matter is just beginning and ongoing such that this interrogatory is premature. Subject to and without waiving the same, the Defendant has provisionally pled this Affirmative Defense in accordance with Fed. R. Civ. P. 8 and if discovery does not support said defense, Defendant will waive the same.

(ECF No. 440-1, Page.15571-15572).  Plaintiffs' discovery request does not ask for the Township to identify what evidence it will rely on in support of its defense that Plaintiffs failed to mitigate their damages.  Instead, Plaintiffs asked the Township to reach a legal conclusion as to what the

wineries *should* have done to mitigate damages regarding uses for their properties that have never been permitted before.

The Township certainly intends to attack Plaintiffs' failure to mitigate at trial. However, its arguments are wholly dependent on the case the Plaintiffs put forth. The Township may argue that for decades Plaintiffs had the ability to seek appeals regarding their land-use approvals and failed to do so, or that Plaintiffs could have sought variances or interpretations from the ZBA. The Township has not abandoned this defense.

The Township, however, does not intend to pursue Affirmative Defense E.

Finally, the Township does not intend to pursue Affirmative Defense V, which was already resolved in Section II(F) *supra*.

J. Plaintiffs Are Not Entitled to "Summary Judgment" on Non-Affirmative Defenses.

Plaintiffs assert they are entitled to "summary judgment" on eighteen of the Township's defenses, in particular:

- A.   Plaintiffs have failed to state a claim upon which relief can be granted.

- F.    Plaintiffs have failed to identify any Michigan or federal law in which zoning ordinance provisions were invalidated for restrictions placed on liquor-license holders.

- G.    Plaintiffs have prayed for damages that are not awardable under controlling law.

- K.    Plaintiffs do not have a strong likelihood of success on the merits of their claims such that injunctive relief is improper.

- L.    Plaintiffs have failed to identify irreparable injury such that their claim for injunctive relief is improper.

- M.    Defendant maintains that there will be substantial harm to others and that harm to the public interest weigh against Plaintiffs' claims for injunctive relief.[2]

- N.     Plaintiffs have failed to identify the damage claims for violation of the First and Fourteenth Amendment in which they state zoning ordinance provisions were unconstitutional.

- O.      Plaintiffs have failed to identify any provision of Peninsula Township's zoning ordinances that compel or suppress their speech in violation of the First our Fourteenth Amendment.

- P.      Plaintiffs have failed to identify any provision of Peninsula Township's zoning ordinances that constitute prior restraints or are unconstitutionally vague.[3]

- Q.     Defendants provided Plaintiffs with adequate due process with respect to the claims made in this matter.

- R.     Plaintiffs have failed to identify any provision of the Defendant's zoning ordinances that violate the dormant Commerce Clause.[4]

- S.      The Defendant's zoning ordinances have nor resulted in any regulatory taking as to the Plaintiffs.

- T.     The Michigan Liquor Control Code does not expressly preempt any portion of the Defendant's zoning ordinances.

- U.      The Defendant's zoning ordinances are not subject to field preemption by the Michigan Liquor Control Code.

- W.     Defendant acted at all times pertinent herein, within the bounds of the law and in good faith

- DD.   The Plaintiff's purpose in this litigation is the opposite of the requested injunctive relief.

- EE.    This Court has determined that the Plaintiffs have not suffered irreparable harm.

- FF.    This Court has preliminarily determined that the Plaintiffs have not established a strong likelihood of success on the merits of their claims in the First Amended Complaint.

(ECF No. 440, PageID.15559-15560).

Plaintiffs assert these defenses are not affirmative defenses, but instead attack Plaintiffs'

ability to prove their claims at trial.  Indeed, the Township was putting Plaintiffs on notice of its

anticipated defenses to the merits of Plaintiffs' claims.  However, instead of moving to strike the defenses, Plaintiffs are asking for *summary judgment* on them.  It is unusual for courts to grant summary judgment to a plaintiff on an issue for which it has the burden of proof at trial. *Lomree, Inc. v. Pan Gas Storage, LLC,* 499 Fed. Appx 417, 420 (6th Cir. 2012). "In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* (quoting *Anderson*, 477 at 254). "When the party with the ultimate burden of persuasion on an issue moves for summary judgment, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Id.* (*Timmer v. Michigan DOC,* 104 F.3d 883, 843 (6th Cir. 1997).

Plaintiffs' request for relief – entry of an order granting summary judgment to Plaintiffs on the defenses attacking Plaintiffs' ability to prove their claims – implies that Plaintiffs want judgment in their favor on those issues.  This is entirely improper, especially in a motion devoid of any factual development and legal support.  The defenses identified negate an element of Plaintiffs' case.  As such, they are indeed not *affirmative* defenses, but rather *negative* defenses. *See Ford Motor Co. v. Trans. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) (noting distinction between affirmative and negative defenses).  In *Ford*, the Sixth Circuit explained the difference between affirmative and negative defenses:

> An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case; as such, they are derived from the common law plea of "confession and avoidance." 5 C. Wright & A. Miller, Federal Practice & Procedure § 1270, at 289 (1969). On the other hand, some defenses negate an element of the plaintiff's *prima facie* case; these defenses are excluded from the definition of affirmative defense in Fed. R. Civ. P. 8(c). 2A J. Moore & J. Lucas, Moore's Federal Practice ¶¶ 8.27[1], 8.27[4] (2d ed. 1985).

795 F.2d at 546.

27

There is nothing procedurally improper regarding a party pleading negative defenses, despite there being no obligation to plead them to begin with. To the contrary, "simple mislabeling on [Defendant's] part is not grounds for striking or granting partial summary judgment on its defenses." *Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 567 (S.D. Cal. 2012) (denying motion for summary judgment on negative defenses). "Negative defenses may also be raised in [Defendant's] answer. *See* Fed. R .Civ. P. 8(b) . . . The Court fails to see how identifying a defense as 'affirmative,' when in actuality it is not, makes that defense legally insufficient." *Id.*; *see also Hilsey v. Ocean Spray Cranberries, Inc.*, 2019 WL 13198721 (S.D. Cal., July 3, 2019) (denying motion for summary judgment on negative defenses).

Plaintiffs have not even approached sustaining their burden to show they are entitled to summary judgment on the Township's negative defenses. Plaintiffs provide no evidence and cite no case law supporting their position. Instead, every case Plaintiffs cite merely discusses what is and is not an affirmative defense.

The Court should not entertain such a drastic and unsupported request.

### K.  Plaintiffs Are Not Entitled to Summary Judgment on Affirmative Defense H.

In defense H, the Township states, "Plaintiffs have failed to follow the statutorily prescribed process for amending a zoning ordinance under the Michigan Zoning Enabling Act." (ECF No. 35, PageID.1952). Plaintiffs take that plain language and reach the conclusion that, somehow, the Township is implying "the Court does not have the authority to declare the Ordinances unlawful".  (ECF No. 440, PageID.15561).  First, this defense is not affirmative, but rather negative similar to those discussed *supra*.  This defense does not challenge the Court's ability to provide a remedy through enjoining provisions of the PTZO (which the Township submits is now moot), but instead challenges Plaintiffs' ability to carry their burden at trial, as well

as any claim or request by Plaintiffs to have the Court sit as a super-zoning commission and provide remedies and rights through any equitable relief that is broader than the PTZO or those terms of Plaintiffs' land-use permits.  There remains no basis to conclude that Plaintiffs are entitled to summary judgment on a negative defense.  *See* Section II(J) *supra*.

Second, Plaintiffs again fail to cite **any** evidence that they "are not looking to 'amend' the Ordinances."  (ECF No. 440, PageID.15561).  Despite providing no evidence, Plaintiffs conclude they are entitled to summary judgment.  Plaintiffs have not even attempted to carry their initial burden showing they are entitled to summary judgment that would then shift the obligation to the Township to show a genuine issue of material fact.  Plaintiffs are not entitled to summary judgment.

Finally, Plaintiffs tacitly seek summary judgment on the availability of remedy at trial – entry of an order that the PTZO violates the constitution.  That remains Plaintiffs' burden to prove.  To the extent any challenged section of the PTZO remains in effect after the passage of Amendment 201 and *if* Plaintiffs are successful at trial, it is possible unlawful provisions could be invalidated.  But Plaintiffs must prove the elements of their claims.

Summary judgment on this issue should be denied.

L.  The Township Does Not Intend to Pursue Affirmative Defense X.

Plaintiffs do not raise claims against individuals and, as such, the Township does not intend to pursue the affirmative defenses identified in Affirmative Defense X.  (ECF No. 35, PageID.1952).  However, if Plaintiffs' position changes, the Township reserves the right to assert this defense.

M.  Plaintiffs Are Not Entitled to Summary Judgment on Abstention.

Plaintiffs preemptively assert that the Township should be forever precluded from arguing abstention.  In reality, this is not a motion for summary judgment on an affirmative defense, it is a request that the Court never permit a party to assert abstention – an issue that could affect this Court's subject matter jurisdiction.  *See Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (cautioning that "'The doctrine of abstention, under which a [d]istrict [c]ourt may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it.'") (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188; 79 S.Ct. 1060 (1959)). *See also Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019) (noting that *Younger* abstention "cautions federal courts against exercising jurisdiction in cases where they are asked to enjoin pending state proceedings."); *Jones*, 848 F.3d at 749 ("*Pullman* abstention, as this exception has come to be called, does not 'involve the abdication of federal jurisdiction, but only the postponement of its exercise[.]'").

The entirety of Plaintiffs' argument on abstention is limited to two paragraphs and less than a single page of their brief.  (ECF No. 440, PageID.15562).  Again, without citing any evidence or a single case, Plaintiffs conclude: "There are several abstention doctrines, but none of them would warrant this Court declining to hear the merits of this dispute."  (*Id.*).  Frankly, the argument is so vague the Township is not even on notice regarding *which* abstention doctrine(s) Plaintiffs believe could not apply. *Pullman* abstention? *Younger* abstention? Once Plaintiffs present their claims and defenses at trial, it is entirely possible that abstention would be appropriate under several potential variables.  It is also possible that before trial that abstention would be appropriate. This could result in the rejection of supplemental jurisdiction, dismissal due to lack of subject matter jurisdiction, or others. But Plaintiffs ask this Court to conclude now – before any proofs have been submitted

– that the Township should never be permitted to raise these foundational and indeed jurisdictional issues.

The Court should reject this request.

N. Plaintiffs Are Not Entitled to Summary Judgment on Waiver as it is Entirely Possible that Plaintiffs Waived Their Constitutional Rights.

In Affirmative Defense CC, the Township asserts that Plaintiffs have "waived their ability to challenge the zoning conditions placed upon their [SUPs]."  (ECF No. 35, PageID.1952).  Plaintiffs ask this Court to grant summary judgment in their favor that they have not waived their ability to challenge.  Plaintiffs are not entitled to summary judgment as it is entirely possible that Plaintiffs have waived their constitutional rights and it is, similar to the Township's failure to mitigate defense, premature prior to any proofs being entered to reach a determination on this issue.

Contrary to Plaintiffs' broad assertion that they "could not have" waived their constitutional rights, the cases cited by Plaintiffs support that waiver is indeed possible.  (ECF No. 440, PageID.15562-15563) (citing *U.S. v. Royster*, 204 F. Supp. 750 (N.D. Ohio 1961); *Wilkicki v. Brady*, 882 F. Supp. 1227 (D.R.I. 1995)).  Waiver in the land-use context is possible, "Whether the reason is called laches, estoppel, waiver, or public policy, challenges to the procedural invalidity of a zoning ordinance and constitutional challenges based thereon must be brought within a reasonable time from enactment of the ordinance. If not brought in a timely manner, the plaintiff will be barred from challenging the zoning ordinance." *Thatcher Enterprises v. Cache Cnty. Corp.*, 902 F.2d 1472, 1476 (10th Cir. 1990) (applying laches where plaintiff waited 17 years after adoption of the ordinance and 9 years from the time they received a conditional use permit allowing limited commercial uses in the agricultural zoning district, to make challenges to the zoning ordinance).

The Township certainly intends to attack Plaintiffs' waiver at trial.  But its arguments are dependent Plaintiffs' case in chief.  Again, the Township may argue that for years Plaintiffs knew of their alleged constitutional claims, yet let them slumber instead of taking action to vindicate their rights. Plaintiffs could have, for example, sought amendments to their land-use approvals, sought variances or interpretations from the ZBA, and then appeal an adverse decision to the Circuit Court.  Plaintiffs failed to do so.  Plaintiffs cite only to their SUPs, claiming there is nothing in the SUPs that contains a waiver of constitutional rights (ECF No. 440, PageID.15563), but present no evidence regarding their actions in response.

Plaintiffs are not entitled to summary judgment on this affirmative defense. Plaintiffs claim they could not have, as a matter of law, waived their claims.  This is incorrect. The Township should be entitled to assert a waiver defense at trial.

O.  The Township Agrees that Should It Wish to Raise Additional Affirmative Defenses, an Amended Answer Would be Required.

In Affirmative Defense GG, the Township pled that it "reserves the right to file further affirmative defenses and to amend its affirmative defenses upon the completion of discovery." (ECF No. 35, PageID.1952).  The Township agrees that, if it wishes to plead additional affirmative defenses, a motion to amend would be required.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated, Defendant Peninsula Township respectfully requests that this Honorable Court deny Plaintiffs' Motion for Partial Summary Judgment on Defendant Peninsula Township's Affirmative Defenses.

McGRAW MORRIS, P.C.
Attorneys for Defendant Peninsula Township

Dated:  October 6, 2023          BY:    */s/    Bogomir Rajsic, III*
                                         Bogomir Rajsic, III (P79191)

32

Tracey R. DeVries (P84286)
300 Ottawa Avenue, NW, Ste. 820
Grand Rapids, MI  49503
(616) 288-3700
brajsic@mcgrawmorris.com

Thomas J. McGraw (P48817)
2075 W. Big Beaver Rd., Suite 750
Troy, MI 48084
(248) 502-4000
tmcgraw@mcgrawmorris.com