UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
                 Plaintiffs, )
                 )     No. 1:20-cv-1008
-v- )
                 )     Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
                 Defendant, )
                 )
and )
                 )
PROTECT THE PENINSULA, INC., )
                 Intervenor-Defendant. )
_____ )

## ORDER RESOLVING MOTIONS TO DISMISS

Peninsula Township filed two motions to dismiss. (ECF Nos. 458, 462). The Township brings prudential standing arguments under Federal Rule of Civil Procedure 12(b)(1) to challenge the Wineries' takings claims and as-applied constitutional claims. The Wineries (the "Plaintiffs") filed a single response to the two motions. (ECF No. 487). The Court will deny the motions because employing the finality doctrine in this matter would be futile, and Plaintiffs' claims are not moot.

## I. Background

Plaintiffs in this matter are several wineries located in Peninsula Township, Traverse City, Michigan. Plaintiffs sued Peninsula Township ("Defendant" or "the Township") for several restrictions and regulations in the Peninsula Township Zoning Ordinance ("PTZO"). Some of the restrictions in the PTZO that Plaintiffs challenge include: regulations of

advertising, regulations of bar and restaurant operations, vagueness of the term "Guest Activity," limitations on hours of operation, prohibition of hosting events such as weddings and family reunions, prohibition of amplified music, and regulations requiring the Wineries to use a certain percentage of Old-Mission-Peninsula-grown grapes and ingredients in producing wine, among numerous other restrictions. The PTZO has sparked problems among the parties for years.

The Township adopted its zoning ordinance in 1972. The PTZO has been amended since then with the incorporation of several winery related ordinances. Some of those winery related ordinances are Section 6.7.2(19) Use by Right – Farm Processing Facility; Section 8.7.3(10) Winery-Chateau; Section 8.7.3(12) Remote Winery Tasting Room. The purpose of the Farm Processing Facility was "to promote a thriving local agricultural production industry and preservation of rural character by allowing construction and use of a Farm Processing Facility." Section 6.7.2(19)(a).

Plaintiffs assert that the Township routinely enforced the PTZO against them from January 2014 to July 2022. (ECF No. 487 at PID 18740–43). Plaintiffs list over twenty instances where the Township, through varying degrees of formality, informed the Wineries that there was a PTZO violation. For example, the Township sent Bowers Harbor a violation letter regarding a planned wedding reception and weekly live music. The Township sent an ordinance violation letter to Two Lads for two planned events, and Two Lads cancelled their events. Other examples include the Township threatening citations show that the Township enforced the PTZO against the Wineries. The deposition of Christina Deeren, the

Township's director of zoning, also confirmed that the Township regularly enforced the PTZO. (ECF No. 469-2). In December 2022, the Township passed Amendment 201 to the PTZO.

The first motion to dismiss concerns Two Lads, LLC, Black Star Farms, LLC, and Tabone Vineyards, LLC; these Plaintiffs operate as a "use by right" under the PTZO. (ECF No. 458).[1] The second motion to dismiss concerns Bowers Harbor Vineyard & Winery, Inc., Brys Winery, LC, Chateau Operations, Ltd., Grape Harbor, Inc., Montague Development, LLC, OV The Farm, LLC, and Villa Mari, LLC. (ECF No. 462). These Plaintiffs operate under "special use permits" ("SUPs"). Peninsula Cellars operates as a Remote Winery Tasting Room.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for the lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). A factual attack challenges the factual existence of subject matter jurisdiction. *Cartwright*, 751 F.3d at 759. "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine

---

[1] The Township argues that Tabone actually operates under an SUP. (ECF No. 459 at PID 16323).

the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60. When reviewing a factual attack on its jurisdiction, "no presumptive truthfulness applies to the factual allegations." *Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.*, 410 F. Supp. 2d 665, 668 (N.D. Ohio 2005). The Township makes a factual challenge.

### III. Analysis

The Township argues that Plaintiffs did not receive a final decision regarding the application of the PTZO to their properties, and thus, did not reach "finality." The Township argues that for the Wineries to achieve finality, Wineries operating under an SUP would need to either (1) seek an amendment from the Township Board, (2) seek a non-use variance from the Township Zoning Board of Appeals ("ZBA"); or (3) appeal a determination of the Zoning Administrator to the ZBA. As for Wineries operating as a use by right or remote winery tasting room, the Township argues that to achieve finality, they would need to either (1) seek an appeal to the ZBA to the extent that they feel aggrieved by the Zoning Administrator's application of the PTZO to their property; (2) seek a non-use variance from the application of the PTZO to the ZBA; (3) or seek an interpretation of the provisions of the PTZO.

In response, the Wineries assert that the Township's finality argument is based on bad law. The Wineries also assert that the application of the PTZO against the Wineries, coupled with seemingly routine enforcement, renders their claims ripe.

Second, the Township asserts some of the Wineries' claims are moot because the original ordinance has been repealed and is no more. Plaintiffs' position is that the Township

4

had issued permits to each of the Wineries under the old ordinances and those old ordinances live on through their special use permits. Additionally, Plaintiffs maintain that the newest version of the PTZO, Amendment 201, is very similar to its predecessor.

As explained below, the Township's finality argument is based on good law, and the finality requirement remains intact. But based on the totality of the circumstances in this case, the Court determines it would be unwise to release the Township of these claims on prudential standing grounds. Plaintiffs' claims are ripe and not moot.

A. Finality

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Court held that a property owner whose property was taken by a local government had not suffered a violation of his Fifth Amendment rights—and thus could not bring a federal takings claim in federal court—until a state court denied his claim for just compensation under state law.[2] The Court overturned that exhaustion requirement in *Knick v. Township of Scott*, 139 S. Ct. 2162, 2169 (2019). But the Court left in place *Williamson County's* finality requirement. *Id. Williamson County's* finality requirement, in general, requires a plaintiff to seek a variance from the local zoning board prior to suing in federal court. 473 U.S. at 191.

---

[2] "While [finality and exhaustion] often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Williamson Cnty.*, 473 U.S. at 193

The Supreme Court recently addressed the "finality" requirement and explained that it is "relatively modest." *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021). Finality "ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm." *Id.* (citing *Horne v. Dep't of Agric.*, 569 U.S. 513, 525 (2013)).

The *Pakdel* Court overturned the Ninth Circuit when it "required petitioners to show not only that the San Francisco Department of Public Works had firmly rejected their request for a property-law exemption (which they did show), but *also* that they had complied with the agency's administrative procedures for seeking relief." *Pakdel*, 141 S. Ct. at 2228. The Court rejected the Ninth Circuit's approach because it was at odds with the "settled ruled . . . that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." *Id.* (citing *Knick*, 139 S. Ct. at 2167). The *Pakdel* Court also cited *Williamson County* for an example of the Court's "since-disavowed prudential rule that certain takings actions are not 'ripe' for federal resolution until the plaintiff 'seek[s] compensation through the procedures the State has provided for doing so.'" *Pakdel*, 141 S. Ct. at 2228–29. In sum, *Pakdel* shunned *Williamson County's* state remedy exhaustion requirement and made clear that finality requires Plaintiffs to show "there [is] no question . . . about how the regulations at issue apply to the particular land in question." *Id.* at 2230. *Pakdel*, however, did not overrule *Williamson County's* finality requirement. *See also Oberer Land Devs. Ltd. v. Sugarcreek Twp.*, No. 21-3834, 2022 WL 1773722, at *4 (6th Cir. June 1, 2022).

The Sixth Circuit has extended the finality requirement "beyond claims of regulatory takings to various other constitutional claims arising out of land use disputes." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 613 (6th Cir. 2008) (alleging denial of planned subdivision "out of aversion to the adult entertainment business" in violation of the First and Fourteenth Amendments).

"A claim is unripe when 'it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 448 (6th Cir. 2023) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "In land-use cases, the necessary event is simply that the government has adopted a 'definitive position' as to 'how the regulations at issue apply to the particular land in question.'" *Cath. Healthcare Int'l, Inc.*, 82 F.4th at 448 (quoting *Pakdel*, 141 S. Ct. at 2230).

The Sixth Circuit recently put the *Pakdel* decision to work and held that a Catholic group's land use claim was ripe after the township had twice denied the group's "special land-use permit" for their religious displays. *Cath. Healthcare Int'l, Inc.*, 82 F.4th at 448. The Sixth Circuit overturned the district court because it "conflate[d] ripeness (sometimes called "finality" in this context) and exhaustion." *Id.* The specific error was that the district court reasoned that the local regulatory procedure had to be exhausted for the court to know "precisely how a regulation will be applied to a particular parcel or use." *Id.* The appeals court also rejected that township's reliance on *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010). In *Miles Christi Religious Order*, the plaintiffs had sued before even asking "the zoning board to determine whether the ordinances require it

7

to submit a site plan and, if so, which regulations impose this obligation and why." 629 F.3d at 538. In that case, the court held there was a lack of finality. *Id.*

Courts have discretion over when to employ prudential standing and finality requirements. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1013 (1992). *Accord Miles Christi Religious Ord.*, 629 F.3d at 541 ("The finality rule, we acknowledge, is a prudential requirement, and we need not follow it when its application 'would not accord with sound process.'") (quoting *Lucas*, 505 U.S. at 1012). Use of the finality doctrine would be worthwhile when "both parties . . . may benefit from the zoning board's input, and the claimant . . . faces no jeopardy in the interim . . . ." *Miles Christi Religious Ord.*, 629 F.3d at 541.

*Williamson County's* finality requirement is still in effect. The Wineries did not show that each entity appealed or sought the proper amendments or variances before suing, which could render their regulatory takings and as applied constitutional claims unripe. The record here, however, shows something different: pervasive enforcement of the PTZO by the Township and an attempt by the Wineries to remedy these issues prior to filing suit. These circumstances demonstrate a concrete factual scenario for the Court to work with, and forgoing adjudication now will likely amount to a refiled action in the near future. This Court will not employ the finality doctrine because it would be futile and would likely make waste of the parties' and court's resources.

Wineries operating under an SUP reached a version of the "relatively modest" finality requirement. The analysis for these Wineries seems to fall somewhere between the plaintiffs'

finality actions in *Catholic Healthcare* and the lack of action taken in *Miles Christi Religious Order*. The Wineries operating under SUPs sought special land use permits like the plaintiff did in *Catholic Healthcare*, although the Wineries received grants instead of a denial. The SUP Wineries did more than the plaintiffs in *Miles Christi Religious Order* because those plaintiffs sued before asking "the zoning board to determine whether the ordinances require it to submit a site plan." 629 F.3d at 538. Here, the Wineries operating under an SUP sought and received a determination from the Township sufficient for this Court to find a "definitive position" as to "how the regulations at issue apply to the particular land in question." *Pakdel*, 141 S. Ct. at 2230.

For example, Bowers Harbor Vineyard & Winery sought an amendment to its SUP in April 2018 regarding its tasting room, food processing plant, and "Dining in the Vines." (ECF No. 487-11). Included in the Township's response was a particularly expansive statement relating to all Wineries operating an SUP in the Township:

> Please [sic] also be advised, as with all entities who have received a SUP in Peninsula Township, [we] will continue to monitor activities and events at Bowers Harbor Vineyard to ensure compliance with Special Use Permit 32, as amended in 2010. Citations for Civil Infractions will be filed with the District Court for observed Violations.

(ECF No. 487-11 at PID 18795). Unlike the plaintiffs in *Miles Christi Religious Order*, the Wineries know which ordinances apply and why by virtue of their SUPs. When the Township granted each SUP, it took a definite position on how the PTZO applied to each Winery, and it clearly exercised its discretion in doing so. Each SUP is particular to each Winery.

Another example concerns Peninsula Cellars. It received a letter from the Township threatening to cite it for playing amplified music. (ECF No. 487-28). The letter stated, "Please be advised that per your Special Use Permit No. 62 amplified music is not an allowable use per this special use permit." *Id.* The Township's enforcement of the ordinances against the Wineries' runs against the Township's position that the Wineries' claims are not ripe. The Township's enforcement actions make clear that the ordinances apply to the Wineries.[3]

Wineries operating as a use by right were also subject to the PTZO and can point to some PTZO enforcement by the Township. First, Two Lads received a letter from the Township's Director of Planning and Zoning, which informed Two Lads its planned event "may be in violation of the Land Use Permit issued May 11, 2007." (ECF No. 487-8 at PID 18784). The letter directed Two Lads to contact the Township "immediately" to discuss the events so the Township could determine "whether or not [the events were] permitted by Section 6.7.1 (19) of the Zoning Ordinance." *Id.* The Township's letter continued, "We urge you to cease reservations for these events until this matter is resolved." *Id.* Two Lads canceled their events. (*Id.* at 18785).

Second, Black Star Farms sought a variance under the Farm Processing Ordinance from the Township. (ECF No. 487-31). The Township rejected Black Star Farm's request. *Id.* The Township explained that "rather an amendment to current zoning ordinance should be

---

[3] In its reply brief, the Township argues that *application* of an ordinance to an entity is insufficient to show a final decision and that each Winery should have taken an additional appellate step prior to filing suit. This is potentially problematic for two reasons. First, the Township has no authority to adjudicate the constitutional claims raised here. *See Houdini Properties, LLC v. City of Romulus*, 743 N.W.2d 198, 199 (Mich. 2008). Second, forcing an entity to file for a variance or an SUP amendment begins to run the risk of resembling an exhaustion requirement, which was expressly repudiated by *Knick*.

sought." *Id.* Third, the Township approved Tabone Vineyard's for an on-premises tasting room that would allow Tabone to serve wine to its customers on location. (ECF No. 487-6).

More generally, counsel representing the Wineries tried to resolve these issues before filing suit. In their view, the Wineries sought an amicable resolution over a year prior to bringing suit. The Wineries sent the Township a lengthy memorandum that outlined what was wrong with PTZO. (ECF No. 29-15). The Township's attorney at the time agreed that the PTZO needed to be revisited, and the Township ended up forming a committee to review the PTZO. (ECF No. 29-16). But the Township did not remedy the issues, at least in Plaintiffs' view. Although this memo was not a formal attempt to amend any SUPs or seek variances, the Township did have the ability to weigh in and remedy the Wineries' grievances well before this action was filed. *See Pakdel*, 141 S. Ct. at 2230 ("The rationales for the finality requirement underscore that nothing more than *de facto* finality is necessary.").

Finally, the Court notes that the Township brings its finality argument at the eleventh hour of this litigation. Indeed, a party may challenge this Court's jurisdiction anytime. But the Court is cognizant of the fact this litigation has been ongoing for nearly four years, and the underlying disputes have been smoldering for much longer. The Court is not at all convinced that forcing each Winery to seek amendments or variances under the PTZO scheme would help them or resolve these issues; Plaintiffs point to evidence showing the exact opposite. Further, the potential prejudice to Plaintiffs—delay, denial, and wasted resources—"would not accord with sound process." *Lucas*, 505 U.S. at 1012. The Court will not employ the finality doctrine to Plaintiffs' claims.

B.  Mootness

"Article III of the United States Constitution limits the federal judicial power to 'Cases' and 'Controversies.'" *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 395 (6th Cir. 2020) (citing U.S. Const. art. III, § 2, cl. 1). The mootness doctrine requires that a case be "live" at the time the court decides it. *Gottfried v. Medical Planning Services*, 280 F.3d 684, 691 (6th Cir. 2002). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotations omitted).

"Repeal of a challenged law can, in some cases, render a case or controversy moot." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (citing *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997)). Whether a claim is affected by a repealed law depends on what relief is being sought. The mootness doctrine often renders courts unable to grant declaratory or injunctive relief "[b]ecause the Court must 'apply the law as it is now.'" *Dubac v. Parker*, 168 F. App'x 683, 688 (6th Cir. 2006) (citing *Kremens v. Bartley*, 431 U.S. 119, 129 (1977)). Courts "can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) (upholding the dismissal of plaintiff's claims for declaratory and injunctive relief as moot because the challenged zoning ordinance was no longer in effect).

In contrast, "[c]laims for damages are largely able to avoid mootness challenges." *Ermold v. Davis*, 855 F.3d 715 (6th Cir. 2017) (citing 13C Charles Alan Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice and Procedure § 3553.3 (3d ed. 2017)). So even though "the repeal or amendment of a law moots challenges to the original law . . . [t]he existence of [a] damages claim preserves the plaintiffs' backward-looking right to challenge the original law and to preserve a live case or controversy over that dispute." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 460-61 (6th Cir. 2007). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Sullivan*, 920 F.3d at 410 (citing *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001)).

Ultimately, the "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (internal quotations and citations omitted).

Here, the Township argues that Amendment 201 moots Plaintiffs' claims for declaratory and injunctive relief in Counts I, II, III, IV, V, VI, VII, and X. The Township acknowledges that this argument does not apply to Plaintiffs' claims for damages. The Township argues that it has removed every section of the PTZO that Plaintiffs challenged. Plaintiffs rebuff with four arguments: (1) the Wineries are still requesting damages; (2) Amendment 201 was unlawfully enacted; (3) the Winery ordinances are still reflected in the Wineries' active SUPs; and (4) Amendment 201 was passed in bad faith to manufacture a defense to this action.

This matter is not moot because Plaintiffs seek damages, and the harm is likely to occur again because the "repealed" ordiances are still in effect through the individual SUPs. First, "[c]laims for damages are largely able to avoid mootness challenges." *Ermold*, 855 F.3d at 715. Second, a defendant's voluntary cessation of a challenged practice "moots a case only

in the 'rare instance' where 'subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Sullivan*, 920 F.3d at 410 (citing *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008)).

Amendment 201—the latest ordinance passed by the Township—seems to strongly resemble its previous iteration. For example, the Wineries' hours of operation under the old ordinance were limited to no later than 9:30 PM daily, and the same provision can be found in Amendment 201. (ECF No. 487 at PID 18760). Other provisions that barred restaurants, catering, and amplified instrumental music continued from the old ordinance into Amendment 201. *Id.*

The Township relies on *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) to assert that Plaintiffs' declaratory and injunctive relief claims are moot. In *Brandywine*, the Court dismissed the plaintiffs' reliance on *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) because the legislatures had not "publicly expressed an intention to re-enact the offending legislation." *Brandywine*, 359 F.3d at 836. But as shown above, Amendment 201 resembles the prior ordinance in form and substance alike. It seems that not only did the Township publicly express an intent to re-enact the problematic legislation, but also did so when it passed Amendment 201.

## IV. Conclusion

The Court will not employ the finality doctrine to Plaintiffs' claims. Plaintiffs' claims are not moot. The Township's motions to dismiss are denied in full.

**IT IS HEREBY ORDERED** that the Township's motion to dismiss (ECF No. 458) is **DENIED**.

**IT IS FURTHER ORDERED** that the Township's motion to dismiss (ECF No. 462) is **DENIED**.

**IT IS SO ORDERED.**

Date:  February 16, 2024                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge