UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, *et al.*,<br>Plaintiffs,<br><br>-v-<br><br>PENINSULA TOWNSHIP,<br>Defendant,<br><br>and<br><br>PROTECT THE PENINSULA, INC.,<br>Intervenor-Defendant. | No. 1:20-cv-1008<br><br>Honorable Paul L. Maloney |

## OPINION AND ORDER RESOLVING PREEMPTION SUMMARY JUDGMENT MOTIONS

The Wineries (the "Plaintiffs") filed a motion for partial summary judgment regarding their preemption claims. (ECF No. 333). Intervenor-Defendant Protect the Peninsula ("PTP") filed a response and cross motion for summary judgment. (ECF No. 355). Peninsula Township also filed a response in opposition to Plaintiffs' motion. (ECF No. 353). Peninsula Township filed its own motion for summary judgment regarding the preemption claims as well. (ECF No. 443). The Court will grant in part and deny in part each motion as explained below.

### I. Background

Plaintiffs in this matter are several wineries located in Peninsula Township, Traverse City, Michigan. Plaintiffs sued Peninsula Township for several restrictions and regulations in the Peninsula Township Zoning Ordinance ("PTZO"). Some of the restrictions in the

1

PTZO that Plaintiffs challenge include regulations of advertising, regulations of bar and restaurant operations, vagueness of the term "Guest Activity," limitations on hours of operation, prohibition of hosting events such as weddings and family reunions, prohibition of amplified music, and regulations requiring the Wineries to use a certain percentage of Old-Mission-Peninsula-grown grapes and ingredients in producing wine, among numerous other restrictions. The PTZO has sparked controversy among the parties for years.

## II. Legal Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to

require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks omitted). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Analysis

Plaintiffs' motion seeks summary judgment on Count VIII under a state law preemption theory. Plaintiffs ask the Court to find that the following sections of the PTZO are preempted by state law: §§ 6.7.2(19)(a) (no restaurant), 6.7.2(19)(b)(1)(iv) (limited food),

3

8.7.3(10)(u)(2)(b) (no full course meals), 8.7.3(10)(u)(2)(e) (no food service), 8.7.3(12)(j) (packaged food for off-premise consumption, only), 8.7.3(10)(u)(5)(b) (limited hours), 8.7.3(10)(u)(5)(g) (no amplified instrumental music) and 8.7.3(10)(u)(5)(i) (no catering). In its cross motion for summary judgment and response to Plaintiffs motion for summary judgment, Protect the Peninsula argues that the PTZO merely places locational conditions on the Wineries. Further, PTP and the Township assert that there is no conflict between the PTZO and Michigan Liquor Control Code.

The first issue is that not all these PTZO sections are pled in Plaintiffs' first amended complaint. Plaintiffs' complaint only alleges that §§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i) are preempted by state law. (ECF No. 29 at PID 1125-26). Plaintiffs argue that PTP and the Township had fair notice of the relevant provisions, and the Court should rule on these provisions anyway.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). Basically, a plaintiff must provide enough information to allow a defendant to know what issues to delve into during discovery. *New Hampshire Ins. Co. v. Marinemax of Ohio, Inc.,* 408 F. Supp. 2d 526, 528 (N.D. Ohio 2006).

4

In *New Hampshire Insurance,* a plaintiff alleged that the defendant's counterclaim contained insufficient allegations to properly advise it of the defendant's actual claims. 408 F. Supp. 2d at 527. The plaintiff took issue with the counterclaim because the defendant failed to identify the specific provisions of the contract it was challenging. *Id.* at 529. The court disagreed and explained that the defendant is "not required to litigate its claims in the pleadings." *Id.*

Plaintiffs' reliance on *New Hampshire Insurance* is misplaced. In *New Hampshire Insurance,* there was one plaintiff and one defendant, and the dispute stemmed from the four corners of a contract. There, it was quite reasonable to permit a less than specific counterclaim because both parties knew it stemmed from a provision in the contract. Here, the PTZO is a sprawling web of regulation, which provides for many more potential claims and defenses. The first amended complaint includes over ten individual plaintiffs. The PTZO regulates each Winery in different ways. With these considerations in mind, the Court will only consider whether the three sections mentioned in the amended complaint are preempted by state law. The relevant sections are §§ 8.7.3(10)(u)(5)(b), 8.7.3(10)(u)(5)(g), and 8.7.3(10)(u)(5)(i); the Court will not address the others.

### A. Standing and Mootness

In its motion for summary judgment, Peninsula Township asserts that the Wineries' preemption claim does not constitute a live case or controversy worthy of Article III jurisdiction. Second, the Township asserts that Plaintiffs' preemption claims are moot

because the Township passed Amendment 201, which allegedly removed the challenged sections of the PTZO that are relevant here.

To establish standing, a plaintiff must show (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the defendant; and (3) that the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A "plaintiff must demonstrate standing for each claim he seeks to press" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). *See also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (discussing Article III's case and controversy requirement).

The Township acknowledges that preemption can be asserted in a declaratory action, but it argues that Plaintiffs have "not taken any action that would create a case or controversy." (ECF No. 444 at PID 15798). The Township primarily relies on *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648 (6th Cir. 2005), which does not concern zoning or preemption. In *Sankyo*, a district court dismissed the plaintiff's complaint for lack of subject matter jurisdiction because the plaintiff sought a determination of whether certain claims would be subject to arbitration. *Id.* at 648. In affirming the district court, the Sixth Circuit explained that the plaintiff was "attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance" . . . which was "precluded by the Case and Controversy requirement of the United States Constitution." *Id.* at 652.

*Sankyo* is neither analogous to this case nor dispositive. Here, the Wineries are subject to pervasive enforcement of the PTZO by the Township. Rob Manigold, the former Township Supervisor, and Christina Deeren, the former director of Zoning testified that the Township has regularly enforced the challenged provisions. (ECF Nos. 473-10, 473-11). PTZO enforcement, as well as the threat of enforcement, represents an injury to the Wineries by the Township. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."). The Wineries have standing to bring their preemption claims, and the Court has a live conflict and concrete factual setting to resolve these claims.

Ultimately, the "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (internal quotations and citations omitted).

This matter is not moot. The harm is likely to occur again because the "repealed" ordinances are still in effect through the individual special use permits. A defendant's voluntary cessation of a challenged practice "moots a case only in the 'rare instance' where 'subsequent events make it absolutely clear that the allegedly wrongful behavior cannot

7

reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (citing *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008)).[1] Here, Amendment 201 strongly resembles its previous iteration. (*See, e.g.*, ECF No. 473 at PID 17989). Plaintiffs' claims are not moot.

### B. Preemption

A license from the Michigan Liquor Control Commission is required to operate a winery in Michigan. The Michigan Liquor Control Code ("MLCC") governs winery operations and allows wineries to have certain licenses and permits. Each Plaintiff possesses multiple permits and at least one license.

"In the context of conflict preemption, a direct conflict exists when 'the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits.'" *DeRuiter v. Twp. of Byron*, 949 N.W.2d 91, 96 (Mich. 2020) (quoting *People v. Llewellyn*, 257 N.W.2d 902, 904 n.4 (Mich. 1977)); *see also Walsh v. City of River Rouge*, 189 N.W.2d 318, 324 (Mich. 1971) ("Assuming the city may add to the conditions, nevertheless the ordinance attempts to prohibit what the statute permits. Both statute and ordinance cannot stand. Therefore, the ordinance is void."). However, a local unit of government may add conditions to rights granted in a state statute because "additional regulation to that of a state law does not constitute a conflict therewith." *Nat'l Amusement Co. v. Johnson*, 259 N.W.

---

[1] See also this Court's recent discussion rejecting of the Township's mootness argument as made in its motions to dismiss. (ECF No. 518).

342, 343 (Mich. 1935). But where a state statute allows certain conduct and a local ordinance forbids it, "the ordinance is void." *Id.*

Based on these standards, the PTZO may add limitations or restrictions to the rights granted in the MLCC, but the PTZO may not contain an absolute prohibition on what the MLCC permits. In other words, restrictions and limitations are permissible, but outright prohibitions (on permitted activities under the MLCC) are not.

| Activity Regulated | Type of Facility Regulated | PTZO Section | Michigan Law |
|---|---|---|---|
| Hours of Operation | Winery-Chateau | § 8.7.3(10)(u)(5)(b): "Hours of operation for Guest Activity Uses shall be determined by the Town Board, but no later than 9:30 PM daily." | Mich. Comp. Laws § 436.2114(1): "Notwithstanding R 436.1403 and R 436.1503 of the Michigan administrative code and except as otherwise provided under this act or rule of the commission, an on premises and an off-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day." |
| Music | Winery-Chateau | § 8.7.3(10)(u)(5)(g): During Guest Activity Uses, "No amplified instrumental music is allowed, however amplified voice and background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the | Mich. Comp. Laws § 436.1916(11): "The following activities are allowed without the granting of a permit under this section: (a) The performance or playing of an orchestra, piano, or other types of musical instruments, or singing." |

9

| | | | |
|---|---|---|---|
| | | building for guest purposes." | |
| Catering | Winery-Chateau | § 8.7.3(10)(u)(5)(i): During Guest Activity Uses, "Kitchen facilities may be used for on-site food serve related to Guest Activity Uses but not for off site catering." | Mich. Comp. Laws § 436.1547: Authorizes holders of catering permits to "sell and deliver beer, wine, and spirits in the original sealed container to a person for off premises consumption but only if the sale is not by the glass or drink and the permit holder serves the beer, wine, or spirits." |

1. § 8.7.3(10)(u)(5)(b): Limitation of Hours of Operation at Winery-Chateaus

This section of the PTZO governs the hours of operation of Winery-Chateaus during Guest Activity Uses: "Hours of operation for Guest Activity Uses shall be determined by the Town Board, but no later than 9:30 PM daily." *See* § 8.7.3(10)(u)(5)(b). Meanwhile, the MLCC allows holders of certain licenses to operate later than 9:30 p.m. Under Michigan law, these establishments are prohibited from selling alcohol between 2:00 a.m. and 7:00 a.m. on Monday–Saturday, and between 2:00 a.m. and noon on Sundays. *See* Mich. Comp. Laws § 436.2114(1); Mich. Admin. Code R. 436.1403; Mich. Admin. Code R. 436.1503.

Plaintiffs' main assertion is because MLCC regulates when alcohol *cannot* be sold (between 2:00 am and 7:00 am), it also regulates when alcohol *can* be sold. In Plaintiffs' view, because alcohol *can* be sold between 7:00 am and 2:00 am, the Plaintiffs have a right to do so. Plaintiffs rely on *Noey v. City of Saginaw*, 261 N.W. 88 (Mich. 1935) and *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005). To the contrary, PTP and the

10

Township assert there is no conflict between zoning limits on operating hours and Michigan's regulation on alcohol sale hours.

Back in 1932, the Michigan legislature amended the Michigan Constitution and established a liquor control commission. *Noey*, 261 N.W. at 88. That commission regulated when alcohol could be sold. *Id.* The commission's relevant regulation stated, "[n]o licensee, by himself, his servants, agents or employees shall sell or permit the sale of any alcoholic liquor . . . between the hours of 2:00 o'clock and 7:00 o'clock A. M. . . .". *Id.* The City of Saginaw passed an ordinance prohibiting the sale of alcohol from midnight until 7:00am, which cut short the commission's regulation serving hours window and spawned a lawsuit. *Id.* at 89. The trial court struck down the ordinance, finding that the commission's regulation controlled, and the ordinance did not. *Id.* The city argued that its ordinance did not conflict with commission's alcohol sale hours, but merely added additional requirements by limiting the hours further. *Id.* The Michigan Supreme Court affirmed and held that the city's ordinance was void:

> 'It is the rule that, in the absence of specific statutory or charter power in the municipality, the provisions of an ordinance which contravene a state law are void. *People v. McGraw,* 184 Mich. 233, 150 N. W. 836; 43 C. J. 215. What the Legislature permits, the city cannot suppress, without express authority therefor.' *National Amusement Co. v. Johnson,* 270 Mich. 613, 259 N. W. 342, 343 (handed down March 5, 1935). Under the broad power thus conferred upon the liquor control commission by the Constitution and the statute, it must be held that its regulations relative to the hours of closing are binding upon all licensees, and are not affected by the provision in the ordinance relating thereto.

*Id.* at 89–90.

*National Amusement Co. v. Johnson,* upon which *Noey* relies, concerned the City of Grand Rapid's ordinance that banned "amusement or exhibition which shall result in a

11

contest to test the endurance of the participants." *Nat'l Amusement Co.*, 259 N.W. at 342. However, Michigan had passed a law *expressly* permitting contests "known as walkathons." *Id.* The Michigan Supreme Court found the obvious conflict and struck down the ordinance. *Id.* The court explained, "[i]n order that there be a conflict between a state enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other." *Id.* at 343. Continuing, the court explained, that "[m]ere differences in detail do not render them conflicting" and if "either is silent where the other speaks, there can be no conflict between them." *Id.* "As a general rule, additional regulation to that of a state law does not constitute a conflict therewith." *Id.*

The Court finds that the PTZO does not conflict with Michigan law regarding hours of operation. Instead, the PTZO places a further limitation on the hours that MLCC licensees may sell alcohol. Here, Michigan law does not expressly permit license holders to sell alcohol between the hours of 7:00 am and 2:00 am the following day.[2] Unlike *National Amusement Co. v. Johnson*, there is no clear conflict. "This is merely a common legislative manner of saying that *it is lawful* to conduct it *if the regulations* are observed." *Id.* at 343 (emphasis added). In other words, it is legal for the Wineries to sell alcohol between the hours of 7:00 am and 2:00 am so long as the Wineries comply with the regulations. The PTZO limits the hours—but does not conflict with the hours—which is permissible under Michigan's preemption jurisprudence. Just because something is generally lawful at the state

---

[2] The Court also notes that Michigan law does not completely occupy the regulatory field here. *See Maple BPA, Inc v. Bloomfield Charter Twp.*, 838 N.W.2d 915, 921 (Mich. Ct. App. 2013) ("We conclude that the Commission's decision to recognize local zoning authority indicates that the Legislature did not intend to preempt every local zoning statute that concerns alcoholic beverage sales. Thus, we conclude that the state has not expressly provided that its authority to regulate the field of liquor control is exclusive.").

12

level, e.g. driving a car or building a house, does not mean an individual is totally free from local regulations governing that activity.

The Sixth Circuit's analysis of *Noey* in *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) cannot control here. In full, the court said,

> In this case, however, Rule 436.1403 of the Michigan Administrative Code provides that "an on-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day ...." Mich. Admin. Code r. 436.1403(1). On its face, the rule does not grant licensees a right to remain open *until* 2:00 a.m. but merely provides that licensees cannot sell liquor *after* 2:00 a.m. Nevertheless, in *Noey v. City of Saginaw,* 271 Mich. 595, 261 N.W. 88 (1935), the Supreme Court of Michigan determined that a Michigan city ordinance cannot fix closing hours to a period shorter than that specified in the state rule.[8] Thus, in this matter, in contrast to *Med. Corp.,* there is a written regulation that both confers the benefit at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit.

*Id.* at 435–36. While this Court is mindful that is bound by the Sixth Circuit's interpretation of state law, as well as the Michigan Supreme Court's interpretation of Michigan law, *Keego Harbor* was not a preemption case. In fact, *Keego Harbor* concerned the unconstitutional conditions doctrine. *Id.* at 436. Furthermore, the Michigan Supreme Court has since addressed *Noey,* and local governments can now control the closing times of licensed establishments. *See Mutchall v. City of Kalamazoo*, 35 N.W.2d 245, 248 (Mich. 1948) ("The act was amended so as to meet the objections raised in Noey v. City of Saginaw, 271 Mich. 595, 261 N.W. 88, so as to permit local authorities to control the closing time of licensed establishments."). The Sixth Circuit has also expressly discussed *Mutchall*: "The Michigan Supreme Court has sanctioned the enactment of municipal ordinances regulating local traffic in liquor." *Felix v. Young*, 536 F.2d 1126, 1132 (6th Cir. 1976) (citing *Mutchall*, 35 N.W.2d

13

at 248). Section 8.7.3(10)(u)(5)(b) is not preempted; PTP's cross motion for summary judgment is granted in part here.

> 2. 8.7.3(10)(u)(5)(g): Prohibition of Amplified Instrumental Music and Regulation of Amplification Level of Music at Winery Chateaus

` Section 8.7.3(10)(u)(5)(g) regulates amplified music played at Winery-Chateaus during Guest Activity Uses: "No amplified instrumental music is allowed, however amplified voice and background music is allowed, provided the amplification level is no greater than normal conversation at the edge of the area designated within the building for guest purposes." *See* § 8.7.3(10)(u)(5)(g). Under Michigan law, establishments that hold an "on premise consumption" license under the MLCC are not required to receive a permit for "The performance or playing of an orchestra, piano, or other types of musical instruments, or singing." Mich. Comp. Laws § 436.1916(11).

This section of the PTZO can be broken down into two distinct restrictions: (1) a prohibition of amplified instrumental music and (2) a limitation on the amplification level of music. The Court holds that the complete prohibition of amplified instrumental music is preempted by Michigan law, which expressly allows certain licensees to have musical instrument performances without a permit. However, the limitation on the amplification level of music is merely a limitation and not a prohibition. Thus, the "No amplified instrumental music is allowed" language is preempted by Mich. Comp. Laws § 436.1916(11), but the regulation of the amplification level of music—a mere limitation—is not preempted.

14

3. 8.7.3(10)(u)(5)(i): Prohibition of the Use of Kitchen for Off Site Catering at Winery-Chateaus

The last section of the PTZO that Plaintiffs challenge via preemption is the section regarding catering by Winery-Chateaus during Guest Activity Uses: "Kitchen facilities may be used for on-site food service related to Guest Activity Uses but not for off site catering." *See* § 8.7.3(10)(u)(5)(i). This section appears to permit Winery-Chateaus to use their kitchens to prepare food for events on the premises, but it prohibits Winery- Chateaus from preparing food in their kitchens for events taking place off the premises.

The relevant section of the MLCC contains no such restriction. Mich. Comp. Laws § 436.1547 authorizes holders of catering permits to "sell and deliver beer, wine, and spirits in the original sealed container to a person for off-premises consumption but only if the sale is not by the glass or drink and the permit holder serves the beer, wine, or spirits."

The Court finds that conflict preemption exists between these two statutes. The Township Ordinances prohibit the use of Winery-Chateau kitchens for off-site catering, while Michigan law permits the use of Winery-Chateau kitchens (if they have a catering permit) for off-site catering, with limited restrictions. Therefore, the Court holds that § 8.7.3(10)(u)(5)(i) is preempted by Mich. Comp. Laws § 436.1547.

## C. Governmental Tort Liability Act and Money Damages

Peninsula Township argues that it is immune from monetary damages under the Michigan Government Tort Liability Act ("GTLA"), MCL 691.1401, *et seq.*, and that damages are not recoverable for preemption claims under Michigan law. It is correct.

Generally, the GTLA provides that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407. There is no relevant Michigan authority recognizing a right to money damages in the event that a municipality passes an ordinance that turns out to be preempted by Michigan law.

In response, the Wineries assert that when the Township passed the now preempted zoning ordinances it did not engage in an "exercise of a governmental function." *Id.* The Wineries assert that passing preempted ordinances was an "ultra vires" activity, and the Township cannot rely on immunity. The Michigan Supreme Court has explained what constitutes an "ultra vires" activity. "In sum, ultra vires activity is not activity that a governmental agency performs in an unauthorized manner. Instead, it is activity that the governmental agency lacks legal authority to perform in any manner." *Richardson v. Jackson Cnty.*, 443 N.W.2d 105, 109 (Mich. 1989). The Township did not lack the authority to pass zoning ordinances.

Finally, the Wineries point to *Bauserman v. Unemployment Ins. Agency*, 983 N.W.2d 855, 859 (2022) as an avenue to money damages for constitutional torts. The Michigan Supreme Court's holding in *Bauserman* opened the door for plaintiffs seeking monetary damages stemming from constitutional torts as brought against the state. *Id.* at 859. In a footnote, the court was clear that the holding did not include municipal liability. *Id.* at 873 n.13. ("[W]hether other entities, such as municipal governments or individual government actors, can be liable for constitutional torts is not before us, and we decline to

16

address that question in what would be dictum."). The Wineries are unable to collect money damages from Count VIII.

### D. Michigan Zoning Enabling Act

Next, Plaintiffs seek summary judgment on Count IX of the first amended complaint, which alleges that the PTZO violates the Michigan Zoning Enabling Act ("MZEA"). PTP argues that summary judgment on this issue would be premature.

"Municipalities have the authority to regulate land use through zoning only because the Legislature has specifically granted them that authority in the Act." *Maple BPA, Inc.*, 838 N.W.2d at 922. Under Michigan law, local townships may establish zoning regulations and "adopt ordinances regulating the public health, safety, and general welfare of persons and property." Mich. Comp. Laws § 41.181. More specifically,

> A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, to ensure that use of the land is situated in appropriate locations and relationships, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare.

Mich. Comp. Laws § 125.3201(1). Although zoning ordinances are generally presumed valid, *see Kirk v. Tyrone Twp.*, 247 N.W.2d 848, 852 (Mich. 1976), they cannot be unconstitutional or contrary to law, *see Adams Outdoor Advert. v. City of Holland*, 600

N.W.2d 339, 344 (Mich. Ct. App. 1999). Because of this presumption of validity, the burden of proof is on the party challenging the zoning ordinance. *Id.* at 345.

The Court has held that several sections of the PTZO are preempted by Michigan law, and thus, those sections are contrary to law. To the extent Plaintiffs prevailed on their preemption claim, they must also prevail on their MZEA claim.[3]

### IV. Conclusion

In sum, the Court finds that § 8.7.3(10)(u)(5)(i) and the part of § 8.7.3(10)(u)(5)(g) prohibiting amplified instrumental music are preempted by state law, and Plaintiffs' partial summary judgment motion relating to these sections will be granted. But § 8.7.3(10)(u)(5)(b) and the remaining language of § 8.7.3(10)(u)(5)(g) are not preempted by state law, and Plaintiffs' motion as to these sections will be denied. PTP's motion and the Township's motion will be granted as it relates to § 8.7.3(10)(u)(5)(b) and the remaining language of § 8.7.3(10)(u)(5)(g). As it relates to Plaintiffs' MZEA claim, Plaintiffs' motion is granted in part in accordance with the Court's findings on preemption.

**IT IS HEREBY ORDERED** that the Wineries' partial motion for summary judgment (ECF No. 333) is **GRANTED** in part and **DENIED** in part in accordance with this opinion.

---

[3] The Court notes that the parties also contest the constitutional validity of the PTZO in their other summary judgment motions. This opinion is not to be construed as disposing of Count IX in its entirety, as the Court still needs to decide the other issues.

**IT IS FURTHER ORDERED** that Protect the Peninsula's cross motion for summary judgment is (ECF No. 355) is **GRANTED** in part and **DENIED** in part in accordance with this opinion.

**IT IS FURTHER ORDERED** that Peninsula Township's motion for summary judgment is (ECF No. 443) is **GRANTED** in part and **DENIED** in part in accordance with this opinion.

**IT IS SO ORDERED.**

Date: February 29, 2024                           /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge