UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION PENINSULA )
ASSOCIATION, *et al.*, )
         Plaintiffs, )
                               )     No. 1:20-cv-1008
-v- )
                               )     Honorable Paul L. Maloney
PENINSULA TOWNSHIP, )
            Defendant, )
 )
and )
 )
PROTECT THE PENINSULA, INC., )
               Intervenor-Defendant. )
_____)

## OPINION AND ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT

Before the Court are two motions for partial summary judgment. The Wineries (the "Plaintiffs") moved for partial summary judgment on Counts I, II, and X. (ECF No. 468). Peninsula Township and Protect the Peninsula ("PTP") filed a response in opposition. (ECF Nos. 485, 488). PTP filed its own partial motion for summary judgment on Counts I, II, III, and VII. (ECF No. 516). The Wineries and Peninsula Township filed responses. (ECF Nos. 521, 519). The Court will grant in part each motion.

### I. Background

Plaintiffs in this matter are several wineries located in Peninsula Township, Traverse City, Michigan. Plaintiffs[1] sued Peninsula Township for several restrictions and regulations

---

[1] Specifically, Plaintiffs are the Wineries of the Old Mission Peninsula Association ("WOMP"), Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor"), Brys Winery, LC ("Brys Estate"), Chateau Grand Traverse, Ltd. ("Grand

in the Peninsula Township Zoning Ordinance ("PTZO"). Some of the restrictions in the PTZO that Plaintiffs challenge include regulations of advertising, regulations of bar and restaurant operations, vagueness of the term "Guest Activity," limitations on hours of operation, prohibition of hosting events such as weddings and family reunions, prohibition of amplified music, and regulations requiring the Wineries to use a certain percentage of Old-Mission-Peninsula-grown grapes and ingredients in producing wine, among numerous other restrictions. The PTZO has sparked controversy among the parties for years.

The relevant claims for these motions as taken from the first amended complaint (ECF No. 29) are as follows: Count I: Facial Challenge to Violation of Freedom of Speech, Freedom of Expression and Free Exercise of Religion Under the First and Fourteenth Amendments (42 U.S.C. § 1983); Count II: As-applied Challenge to Violation of Plaintiffs' Freedom of Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983); Count III: As-applied Challenge to Violation of Plaintiffs' Freedom of Association Under the First and Fourteenth Amendments (42 U.S.C. § 1983); Count VII: Regulatory Taking (Fifth and Fourteenth Amendment); Count X: Injunctive Relief.

## II. Legal Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

Traverse"), Chateau Operations, Ltd. ("Chateau Chantal"), Grape Harbor, Inc. ("Peninsula Cellars"), Montague Development, LLC ("Hawthorne"), OV the Farm LLC ("Bonobo"), Tabone, Vineyards, LLC ("Tabone"), Two Lads, LLC ("Two Lads"), Villa Mari, LLC ("Villa Mari"), and Winery at Black Star Farms LLC ("Black Star").

P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks omitted). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d

730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Analysis

A.  PTP's Motion for Partial Summary Judgment (ECF No. 516)

1.  Standing

To establish standing, a plaintiff must show (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the defendant; and (3) that the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A "plaintiff must demonstrate standing for each claim he seeks to press" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

First, PTP argues that Black Star and Bonobo lack standing to bring all their claims. PTP asserts that conservation easements over the Black Star and Bonobo properties preclude them from the commercial uses they seek through this litigation.

The easements essentially operate to preserve the farmland. "[U]se of the land is permanently restricted to solely agricultural and open space uses." (ECF No. 457-10 at PID 16205). Under the easements, "agricultural use" is defined as "substantially undeveloped land devoted to the production of horticultural, silvicultural and agricultural crops . . . ." (*Id.*). Different kinds of "agricultural use" are specifically delineated and include retail and wholesale sales of agricultural products grown on the farm, roadside stands selling products, and building greenhouses and other structures for an agricultural purpose. (*Id.*). A final clause permits the Township board to expand the scope of the "agricultural practices" available to the property owners. (*Id.* at 16205).

The easements also specifically delineate uses that are not "agricultural" in nature, which are banned. (*Id.*). Agricultural uses do not include building a dwelling, the "construction or expansion of buildings and structures for non agricultural uses," and dumping waste. (*Id.*). The easement also lists many impermissible commercial uses for the properties, including a golf course, parking lot, athletic fields, campgrounds, trailer parks, commercial sawmills, or landfill. (*Id.*).

PTP interprets the easements narrowly and to mean that even if the PTZO allowed bars, restaurants, and events for hire, Black Star and Bonobo would be limited to their agricultural uses and be barred from broader commercial uses. In response, the Wineries assert that there is overlap between what would be permitted if they prevailed and what is permitted under the easements.

The Court agrees with the Wineries. Black Star and Bonobo have the right to sell agricultural products under the easements, which is an inherently commercial function. The conservation easements prohibit "residential, commercial, and industrial purposes and activities which are not incident to agricultural and open space uses." (ECF No. 457-10 at PID 16204). There is an implication that uses that are "incident to agricultural and open space uses" are allowed. The easements are not so sweeping as to preclude Black Star and Bonobo from having standing.

Second, PTP asserts that Tabone lacks standing because it is not subject to any challenged PTZO provisions. PTP argues that Tabone is not a Farm Processing Facility but was merely authorized to reconstruct a Food Processing Plant. PTP asserts that a permit is required to operate a Farm Processing Facility, and Tabone has never produced one. To the contrary, Tabone holds a Small Wine Maker license and an on-premises tasting room permit issued by the Michigan Liquor Control Commission ("MLCC"). Tabone's owner also testified that Tabone operated as a Farm Processing Facility. (ECF No. 459-16 at PID 16423).

Tabone's failure to produce a Farm Processing Facility permit does not diminish Tabone's standing. There is some indicia that Tabone operates as a Farm Processing Facility. It holds a wine making license, and its owner testified that it operated as a Farm Processing Facility. While a permit may be required to operate as a Farm Processing Facility, a lack of a permit does not mean Tabone lacks standing to press all its claims. *See Charette v. Town of Oyster Bay,* 159 F.3d 749, 757 (2d Cir. 1998) ("[Failing to apply for a permit] does not,

of course, deprive him of standing to assert that the Code is facially invalid."). The Township also regulated Tabone as if it were a Farm Processing Facility; the Township told Tabone it could not have live music. (ECF No. 521-10 at 21021).[2] Tabone has standing.

Finally, PTP argues that nine Plaintiffs lack standing to challenge 8.7.3(10)(u)[3] and that four Plaintiffs lack standing to challenge 8.7.3(10)(m)[4] under their First Amendment and Regulatory Takings claims. PTZO sections 8.7.3(10)(u) and 8.7.3(10)(m) only apply to Winery-Chateaus. Therefore, the Plaintiffs not regulated by the Winery-Chateau section—Black Star, Two Lads, Peninsula Cellars, and Tabone—do not have standing to challenge 8.7.3(10)(u) and 8.7.3(10)(m).

PTP also argues that the Wineries that are subject to the PTZO section governing Winery-Chateaus—Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers—do not have standing to bring their facial challenges and Regulatory Takings claims. This argument is rejected to the extent it applies to Plaintiffs' facial challenges. *See Charette*, 159 F.3d at 757.

To sustain their as-applied challenges, each Winery would need to show that the relevant PTZO section was unconstitutionally applied to them. *See McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014) ("[A] plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to him."). Plaintiffs rely on this Court's analysis rejecting the

---

[2] The Township previously conceded that Tabone was a Farm Processing Facility. (ECF Nos. 142 and 143).

[3] Section 8.7.3(10)(u) regulates a variety of Winery-Chateau activity.

[4] Section 8.7.3(10)(m) states: "Accessory uses such as facilities, meeting rooms, and food and beverage services shall be for registered guests only. These uses shall be located on the same site as the principal use to which they are accessory and are included on the approved Site Plan. Facilities for accessory uses shall not be greater in size or number than those reasonably required for the use of registered guests."

Township's finality and mootness argument. (ECF No. 518). But standing is distinct, and the Wineries did not demonstrate that 8.7.3(10)(u) and 8.7.3(10)(m) were unconstitutionally applied to Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers. PTP prevails on its argument that Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers lack standing to pursue their as-applied challenges stemming from 8.7.3(10)(u) and 8.7.3(10)(m).

2.  First Amendment Speech Claims

The threshold question for First Amendment Claims like those here is whether the challenged zoning ordinance regulates protected commercial speech or expressive conduct. *United States v. O'Brien*, 391 U.S. 367, 376 (1968) (rejecting a "limitless" definition of protected speech). PTP asserts that Plaintiffs' free speech claims fail because the PTZO does not regulate speech, but instead only commerce. The Wineries argue that agritourism is modern commercial advertising, and therefore, speech.

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). "Inherently expressive" conduct has been afforded protection under the First Amendment. *See Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006). On the other hand, governmental bodies may impose incidental burdens on speech through valid restrictions and regulations directed at commerce and conduct. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (collecting cases). Where conduct is not inherently expressive, a speaker cannot avoid government regulations simply by explaining the conduct and demanding the protection of the First Amendment.

*Rumsfeld*, 547 U.S. at 66 ("If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it.").

A statement is commercial speech when (1) it is an advertisement; (2) it refers to a specific product or service; and (3) the speaker has an economic motivation for making it. *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983) ("The combination of all these characteristics . . . provides strong support . . . that the [speech at issue is] properly characterized as commercial speech."). Modern advertising can be subtle, and it does not have to propose a specific and discrete transaction. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518 (7th Cir. 2014). "It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Non-commercial speech, on the other hand, involves ideological, political, religious, artistic, or scientific speech. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 601 (1998).

Plaintiffs contend that agritourism is "modern commercial advertising." Plaintiffs argue that hosting events is agritourism, which is advertising and then speech. In a Michigan Department of Agriculture and Rural Development ("MDARD") declaration, Governor Whitmer proclaimed October as Michigan's "Agritourism Month." (ECF No. 469-7 at PID 17045). MDARD also described agritourism:

> Agritourism is a niche form of tourism and defines the places where agriculture and tourism connect, including any time a farming operation opens its doors

to the public inviting visitors to enjoy their products and services. Agriculture and tourism are leading economic drivers in Michigan. Agritourism offers farmers a path to diversification of their businesses to include value-added products and activities, which helps them better withstand things like poor weather conditions and market fluctuations.

(*Id.* at 17045-46). PTP and the Plaintiffs agree that the Wineries wish to foster agritourism, attract customers, and expand their enterprises. Agritourism, at bottom, is about staging and coordinating events where the Wineries can turn a profit. It is certainly commercial, but it is not clear that agritourism is speech. Two relevant PTZO provisions would curtail agritourism:

- Section 6.7.2(19)(a) – applies to Farm Processing Facilities
  - Ordinance text: "Activities such as weddings, receptions and other social functions for hire are not allowed, however, participation in approved township wide events is allowed."
- Section 8.7.3(10)(u)(2)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."

Plaintiffs rely on subliminal advertising during these events to argue they constitute commercial speech. The general idea is that more patrons will attend agritourism related events, enjoy the Wineries, and buy more of their products. However, hosting weddings and events does not automatically convert Plaintiffs' commerce-oriented activities to speech and neither does grafting an "agritourism" label onto these events.

Applying the *Bolger* framework, agritourism is not a clear example of advertising or speech in the traditional sense. Under the Wineries' broad view of advertising (and speech), anytime any patron sets foot on Winery property, the Winery is engaging in commercial speech. That view approaches the "limitless" view of speech the Supreme Court has

expressly disavowed. *O'Brien*, 391 U.S. at 376. Second, agritourism events do not refer to a specific or discrete commercial transaction, but at best, potentially refer to the Wineries and their products generally. Third, the Wineries do have a strong economic motivation for engaging in agritourism—fostering more potential patrons. Here, Plaintiffs' relevant conduct, agritourism, contains insufficient elements of speech, if any. The Court accepts PTP's argument for sections 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d); these provisions do not implicate First Amendment protection.

### a.  Content Based Restrictions

Next, PTP argues that no challenged PTZO provisions are content based restrictions. In response, the Wineries assert that the PTZO provisions require the Township to assess the content of a group's speech before determining whether a Winery may host a group, which necessarily imposes a content-based restriction. The relevant PTZO sections are 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c).

- Section 8.7.3(10)(u)(2)(b) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of 501(c)(3) non-profit groups within Grand Traverse County. These activities are not intended to resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served."
- Section 8.7.3(10)(u)(2)(c) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production [may be approved], provided that:
    i. The meetings are scheduled at least one month in advance with the Zoning Administrator given adequate advance notice of the scheduling so that the Zoning Administrator can give prior approval;
    ii. The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining 'direct relationship to agricultural production';
        (a) Food/wine educational demonstrations; (b) Cooking showcasing Peninsula produce and wine; (c) Farmer's conferences; (d) Regional farm

            producers; (e) Cherry Marketing Institute and Wine Industry Conference
            (f) Farm Bureau Conference (g) Future Farmers of America and 4-H; (h)
            Michigan State University/agricultural industry seminars.
        iii. These meetings may include full course meals to demonstrate connections
        between wine and other foods.
        iv. An appeal of the Zoning Administrators determination can be made to the
        Township Board."

"Content-based laws—those that target speech based on its communicative content are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). In *Reed*, a regulation that prohibited the display of outdoor signs without a permit but exempted 23 categories of signs, including "ideological signs," "political signs," and "temporal directional signs," was an unconstitutional content-based regulation of speech because the regulation depended "entirely on the communicative content of the sign." *Id.* 159-60, 164. Therefore, who was communicating this content was irrelevant; rather, it was the content itself that was regulated. Applying this definition to the present matter, the PTZO does not prohibit the content of one's speech. Instead, they place regulations on the Wineries during certain activities. Accordingly, PTP's motion for summary judgment as to their content-based regulation of speech arguments for 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) will be granted.

The Wineries challenge four sections as content-based restrictions on speech: 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(2)(b), 8.7.3(10)(u)(2)(c) and 8.7.3(10(u)(5)(a). The Court will not address these arguments because the Court previously ruled against the Wineries' content-based restriction arguments. (ECF No. 162 at PID 6008-10). And the Court did not

set aside that ruling. (ECF No. 301 at PID 10698) ("For clarity's sake, the Court is not setting aside Subsection V.A.3 (content-based restrictions) . . .").

    b.  Prior Restraints

PTP argues that Plaintiffs' prior restraint theory fails because 8.7.3(10)(u)(2)(a)-(d) do not target expressive activity. PTP also argues that the theory against 6.7.2(19)(b)(6) fails because it does not regulate speech.

- Section 8.7.3(10)(u)(2)(a) – applies to Winery-Chateaus
  - Ordinance text: "Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class."
- Section 8.7.3(10)(u)(2)(b) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of 501(c)(3) non-profit groups within Grand Traverse County. These activities are not intended to resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served."
- Section 8.7.3(10)(u)(2)(c) – applies to Winery-Chateaus
  - Ordinance text: "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production [may be approved], provided that:

    i. The meetings are scheduled at least one month in advance with the Zoning Administrator given adequate advance notice of the scheduling so that the Zoning Administrator can give prior approval;

    ii. The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining 'direct relationship to agricultural production';

        (a) Food/wine educational demonstrations; (b) Cooking showcasing Peninsula produce and wine; (c) Farmer's conferences; (d) Regional farm producers; (e) Cherry Marketing Institute and Wine Industry Conference (f) Farm Bureau Conference (g) Future Farmers of America and 4-H; (h) Michigan State University/agricultural industry seminars.

    iii. These meetings may include full course meals to demonstrate connections between wine and other foods.

    iv. An appeal of the Zoning Administrators determination can be made to the Township Board."
- Section 8.7.3(10)(u)(2)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."

- Section 6.7.2(19)(b)(6) – applies to Farm Processing Facilities
  - Ordinance text: "The total floor area above finished grade (one or two stories) of the Farm Processing Facility including retail space room shall be no larger than 6,000 square feet or .5% of the parcel size whichever is less. The retail state shall be a separate room and may be the greater of 500 square feet in area or 25% of the floor area above finished grade. The facility must consist of more than one building, however, all buildings shall be located on the 20 acre minimum parcel that contained the Farm Processing Facility. Underground buildings are not limited to, and may be in addition to, the 6,000 square feet of floor area provided that it is below pre-existing ground level and has not more than one loading sock exposed."

"The term 'prior restraint' describes administrative and judicial orders that block expressive activity before it can occur." *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001). There is a "heavy presumption" against the constitutional validity of prior restraints. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). If a licensing statute places "unbridled discretion in the hands of a government official or agency, [it] constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). The elements of a prior restraint are: (1) one who seeks to exercise First Amendment rights is required to apply to the government for permission; (2) the government is empowered to determine whether the applicant should be granted permission on the basis of a review of the content of the proposed expression; (3) approval is dependent upon the government's affirmative action; and (4) approval is not a routine matter, but involves an examination of the facts, an exercise of judgment, and the formation of an opinion. *See Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940).

The Court will grant PTP's motion as it relates to sections 8.7.3(10)(u)(2)(d), 6.7.2(19)(b)(6), 8.7.3(10)(u)(2)(a) because these sections do not implicate speech. Plaintiffs'

agritourism label does not automatically convert hosting events into speech. However, the Court cannot grant summary judgment to PTP for sections 8.7.3(10)(u)(2)(b) (regulations on 501(c)(3) groups) and 8.7.3(10)(u)(2)(c) (meetings of agricultural related groups).

The Wineries are entitled to summary judgment on their prior restraint theories for sections 8.7.3(10)(u)(2)(b) (regulations on 501(c)(3) groups) and 8.7.3(10)(u)(2)(c) (meetings of agricultural related groups). Under these provisions, Winery-Chateaus cannot hold meetings of 501(c)(3) non-profit groups or meetings of agriculture-related groups without the prior approval from the Director of Zoning. Moreover, before Plaintiffs can host a "Guest Activity," the Director of Zoning must approve the event. According to Director Deeren, such activities must be "agriculturally related." (ECF No. 136 at PID 4742-43). Director Deeren determined whether an activity is "agriculturally related" based on what information the winery-host provides (*Id.* at PID 4743). There does not appear to be any definite criteria or definition to determine what type of activity is "agriculturally related." Instead, Director Deeren made that determination, and she has regularly denied many events, such as Yoga in the Vines, Painting in the Vines, and snow shoeing (*Id.*).

c. Compelled Speech

PTP asserts that no challenged provisions compel speech by Plaintiffs. PTP seeks summary judgment relating to Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) because it contends Plaintiffs are not obligated to host Guest Activity Uses ("GAU").

- Section 8.7.3(10)(u)(1)(b) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for

consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

- Section 8.7.3(10)(u)(5)(a) – applies to Winery-Chateaus
  - Ordinance text: "Requirements for Guest Activity Uses -
    (a) All Guest Activity Uses shall include Agricultural Production Promotion as part of the activity as follows:
      i. Identify 'Peninsula Produced' food or beverage that is consumed by the attendees;
      ii. Provide 'Peninsula Agriculture' promotional materials;
      iii. Include tours through the winery and/or other Peninsula agricultural locations."

"Laws that compel speakers to utter or distribute speech bearing a particular message are subject to . . . rigorous [strict] scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) compel speech because they require a Winery-Chateau to promote Township agriculture at all Guest Activities by doing one of the following: (1) identifying "Peninsula Produced" food or beverages, (2) providing "Peninsula Agriculture" promotional materials, or (3) including tours through the Wineries or other agricultural locations. Because the PTZO requires the Wineries to comply with at least one of the above three criterion when they host a Guest Activity, these sections do function as a mandate, and in turn, do compel speech. Relating to PTP's argument that GUAs are not required, that argument runs afoul on the constitutional conditions doctrine. "[A] state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994). The Court will deny PTP's motion as its related to compelled speech. The Court will grant the Plaintiffs' motion

for summary judgment and holds that sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) do compel speech. These provisions mandate that the Wineries engage in speech.

### 3. Free Exercise of Religion Claims

Plaintiffs do not intend to pursue their First Amendment freedom of religion argument and claim. (ECF No. 521 at PID 20928).

### 4. Freedom of Association Claims

PTP argues that Plaintiffs' freedom of association claims fail because they are rooted in limits on commercial transactions, which are not intimate expressions protected by the First Amendment. In response, Plaintiffs cite two PTZO provisions, which they argue dictates the type of group a business can host:

- Section 8.7.3(10)(u)(2)(b)
  - Ordinance text: "Meetings of 501(c)(3) non-profit groups within Grand Traverse County. These activities are not intended to resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served."
- 8.7.3(10)(u)(2)(c):
  - Ordinance text: "Meetings of Agricultural Related Groups that have a direct relationship to agricultural production [may be approved]" with prior approval by the Zoning Administrator.

Plaintiffs hypothesize that these sections permit the Township to regulate which political groups or minority groups could be hosted at the Wineries.

"In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that

is central to our constitutional scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). "In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618. Plaintiffs argue that their claim falls under the latter line of cases. Here, aside from hypotheticals, Plaintiffs offer no factual support to prevent summary judgment.[5] Accordingly, the Court will grant summary judgment to PTP on Plaintiffs' freedom of association claim.

5.  Takings Claims

Plaintiffs assert a regulatory taking claim under *Penn Central*. Plaintiffs maintain that the PTZO operates as a taking of their rights to operate restaurants, keep certain hours of operation, cater, and play amplified music pursuant to their Wine Maker and Small Wine Maker licenses under the Michigan Liquor Control Code ("MLCC"). PTP asserts it is entitled to summary judgment because the Wineries do not have an interest protected by the Takings Clause.

The Fifth Amendment's Takings Clause protects private citizens from the government taking their property "for public use, without just compensation." U.S. Const. amend. V. There are several different types of takings: (1) a per se taking via a physical invasion, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); (2) a regulatory taking where a regulation denies a property owner full use of their property, *see*

---

[5] Plaintiffs' argument also begins by conceding their "freedom of association claim may be unnecessary." (ECF No. 521 at PID 20928).

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978); and (3) takings where a regulation denies all economically beneficial or productive use of land, *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).

This first issue here is whether operating restaurants, certain hours of operation, catering, and playing amplified music pursuant to MLCC licenses constitutes a protected property right under the Takings Clause. To determine whether a property interest is protected by the Takings Clause, courts turn to "existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998). "'Property' as used in [the Takings] clause is defined much more narrowly than in the due process clauses." *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995).

There is no precedent for recognizing a liquor license as a property interest protected by the Takings Clause. It is clear that MLCC permits have pecuniary value, *Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1171 (6th Cir. 1990) and Michigan Liquor license holders are entitled to "rudimentary due process." *Wojcik v. City of Romulus*, 257 F.3d 600, 611 (6th Cir. 2001). The Michigan Supreme Court held that the holder of a liquor license had a constitutionally protected interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation. *See Bisco's, Inc. v. Michigan Liquor Control Comm'n*, 238 N.W.2d 166, 167 (Mich. 1976). But these protections fall short and do not convert a Wine Maker license into a property interest protected by the Takings Clause. *See, e.g., Puckett v. Lexington-Fayette Urb. Cnty. Gov't.*, 60 F. Supp. 3d 772, 779

(E.D. Ky. 2014) ("A wide range of statutory entitlements are not covered by the Takings Clause, even though they are covered by procedural due process safeguards.") (collecting cases). Chief Judge Posner described the rationale for a narrow reading of "property" under the Takings Clause: "If a statutory benefit could not be rescinded without the payment of compensation to the beneficiaries, it would be extremely difficult to amend or repeal statutes . . ." *Pittman*, 64 F.3d at 1104–05. PTP is entitled to summary judgment on Plaintiffs' regulatory takings claims.

### 6. Statute of Limitations

PTP contends that Plaintiffs' First Amendment claims are time barred. The Court has previously rejected this argument. *See Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works as an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."). The statute of limitations may serve as a limit on Plaintiffs' damages.

### B. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 468)

Plaintiffs seek summary judgment in their favor on Counts I, II, and X, and for the Court to declare that PTZO sections 6.7.2(19)(b)(1)(v), 6.7.2(19)(b)(6), 8.7.3(10)(m), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(1)(d), 8.7.3(10)(u)(2)(a), 8.7.3(10)(u)(2)(b), 8.7.3(10)(u)(2)(c), 8.7.3(10)(u)(2)(d), 8.7.3(10)(u)(5)(a), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k) are unconstitutional.

### 1. Regulation of Commercial Speech

Plaintiffs challenge several sections of the PTZO as an unlawful regulation of commercial speech. "Commercial speech" is defined as "expression related solely to the economic interests of the speaker and its audience," and as "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 493 (1995) (Stevens, J., concurring). When laws restrict commercial speech, they "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). This analysis is colloquially called the *Central Hudson* test. *See generally Cent. Hudson Gas & Elec. Corp. v. Pub Serv. Comm'n*, 447 U.S. 557 (1980). Under the *Central Hudson* test, if the speech concerns lawful activity and is not misleading, then the burden is on the government to (1) identify a substantial governmental interest, (2) show that the regulation directly advances that interest, and (3) show that the regulation "is not more extensive than necessary to serve that interest." *Id.* at 566.

The relevant challenged provisions include:

- Section 6.7.2(19)(b)(1)(v) – applies to Farm Processing Facilities
    - Ordinance text: "Logo merchandise may be sold provided:
        1. The logo merchandise is directly related to the consumption and use of the fresh and/or processed agricultural produce sold at retail;
        2. The logo is prominently displayed and permanently affixed to the merchandise;
        3. Specifically allowed are: a) gift boxes/packaging containing the approved products for the specific farm operation; b) Wine Glasses; c) Corkscrews; d) Cherry Pitter; and e) Apple Peeler; and
        4. Specifically not allowed are unrelated ancillary merchandise such as: a) Clothing; b) Coffee Cups; c) Bumper Stickers."

- Section 6.7.2(19)(b)(6) – applies to Farm Processing Facilities
    - Ordinance text: "The total floor area above finished grade (one or two stories) of the Farm Processing Facility including retail space room shall be no larger than 6,000 square feet or .5% of the parcel size whichever is less. The retail state shall

be a separate room and may be the greater of 500 square feet in area or 25% of the floor area above finished grade. The facility must consist of more than one building, however, all buildings shall be located on the 20 acre minimum parcel that contained the Farm Processing Facility. Underground buildings are not limited to, and may be in addition to, the 6,000 square feet of floor area provided that it is below pre-existing ground level and has not more than one loading sock exposed."

- Section 8.7.3(10)(m) – applies to Winery-Chateaus
  - Ordinance text: "Accessory uses such as facilities, meeting rooms, and food and beverage services shall be for registered guests only. These uses shall be located on the same site as the principal use to which they are accessory and are included on the approved Site Plan. Facilities for accessory uses shall not be greater in size or number than those reasonably required for the use of registered guests."

- Section 8.7.3(10)(u)(1)(b) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses are intended to help in the promotion of Peninsula agriculture by: a) identifying 'Peninsula Produced' food or beverage for consumption by the attendees; b) providing 'Peninsula Agriculture' promotional brochures, maps and awards; and/or c) including tours through the winery and/or other Peninsula agriculture locations."

- Section 8.7.3(10)(u)(1)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include wine tasting and such related promotional activities as political rallies, winery tours and free entertainment (Example – 'Jazz at Sunset') which are limited to the tasting room and for which no fee or donation of any kind is received."

- Section 8.7.3(10)(u)(2)(a) – applies to Winery-Chateaus
  - Ordinance text: "Wine and food seminars and cooking classes that are scheduled at least thirty days in advance with notice provided to the Zoning Administrator. Attendees may consume food prepared in the class."

- Section 8.7.3(10)(u)(2)(d) – applies to Winery-Chateaus
  - Ordinance text: "Guest Activity Uses do not include entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass."

- Section 8.7.3(10)(u)(5)(h) – applies to Winery-Chateaus
  - Ordinance text: "No outdoor displays of merchandise, equipment or signs are allowed."

- Section 8.7.3(12)(i) – applies to Remote Winery Tasting Rooms

  o Ordinance text: "Retail sale of non-food items which promote the winery or Peninsula agriculture and has the logo of the winery permanently affixed to the item by silk screening, embroidery, monogramming, decals or other means of permanence. Such logo shall be at least twice as large as any other advertising on the item. No generic or non-logo items may be sold. Promotional items allowed may include corkscrews, wine glasses, gift boxes, t-shirts, bumper stickers, etc."

- Section 8.7.3(12)(k) – applies to Remote Winery Tasting Rooms
  - Ordinance text: "Signs and other advertising may not promote, list or in any way identify any of the food or non-food items allowed for sale in the tasting room."

It is unclear whether all these sections implicate speech. Several sections regulate events and catering, which Plaintiffs insist is agritourism. But as explained above, the Court will reject the catch all label at summary judgment. Adopting a sweeping label would transform some of these regulations, which typically relate to event size or floor planning, to regulations of speech. The Court will deny Plaintiffs summary judgment motion as related to these provisions.

Sections 6.7.2(19)(b)(1)(v) (regulating logos and merchandise), 8.7.3(10)(u)(1)(b) (promotion of Peninsula Township), 8.7.3(10)(u)(5)(h) (outdoor displays), 8.7.3(12)(i) (regulating logo size), and 8.7.3(12)(k) (promotion of food on signs) relate to and regulate speech on their face—generally through limits on advertising.

  a. *Central Hudson* Analysis

   i. Government Interest

The PTZO has the express purpose of, among other things: (1) protecting "the public health, safety, morals and general welfare" of the Township's inhabitants; (2) encouraging "the use of lands and resources of the Township in accordance with their character and

adaptability"; (3) "to provide for safety in traffic, adequacy of parking and reduce hazards to life and property; and (4) "to conserve life, property, natural resources and the use of public funds to public services and improvements to conform with the most advantageous use of lands, resources and properties." (ECF No. 29-1 at PID 1142); (§ 2.1). The general gist is that the Township wants to preserve agriculture.

Plaintiffs assert that none of the Township's alleged interests are substantial. But courts routinely find that substantial interests include protecting the public's health and safety. *See, e.g., Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734, 752 (Mich. 2007); *Lamar Advert. of Michigan, Inc. v. City of Utica*, 819 F. Supp. 2d 657, 663 (E.D. Mich. 2011) ("There is no question that [the government's] interests in the public health, safety, traffic, and esthetic character of the city are valid on their face."); "Municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984). This factor falls in favor the Township and PTP; preserving agriculture and regulating for the general health and safety of citizens are substantial government interests.

ii.   Advancement of the Government Interest and Least Restrictive Means

A "commercial speech regulation 'may not be sustained if it provides only ineffective or remote support for the government's purpose.'" *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (quoting *Cent. Hudson*, 447 U.S. at 564). The issue becomes whether Sections 6.7.2(19)(b)(1)(v) (regulating logos and merchandise), 8.7.3(10)(u)(1)(b) (promotion

of Peninsula Township), 8.7.3(10)(u)(5)(h) (outdoor displays), 8.7.3(12)(i) (regulating logo size), 8.7.3(12)(k) (promotion of food on signs) advance the Township's interests. Here, the Township and PTP must show how these regulations preserve agriculture and protect the general welfare.

Defendants argue that the regulations preserve the agricultural character of the Township by preventing too much commerce. All told, the record is unclear about whether these provisions serve Defendants' stated interests. Supervisor Manigold's deposition hinted that these challenged sections of the PTZO likely do not advance the stated interests, and that the Township never considered less-restrictive means:

Q. Okay. So if we're talking about logoed items, how does limiting the sale of merchandise to logoed items that relate to fresh or processed agriculture, how does that further one of these four governmental interests?

A. I don't know.

Q. Okay. And if you don't know how it furthers it, I mean, do you know what the harm is the government was trying to prevent by having this ordinance?

A. No.

Q. Okay. And do you know if the government considered less-restrictive means?

A. Whatever we considered is in that document.

Q. In the ordinance?

A. Mmm-hmm.

Q. So there's nothing else that says, "We considered these four other ordinances and we rejected those?"

A. I'm unaware of that.

Q. Okay. Is the Township still enforcing this ordinance?

A. Yes.

Q. And at the end it says: Specifically not allowed are unrelated ancillary merchandise such as clothing, coffee cups, bumper stickers.

Okay, how does prohibiting clothing, coffee cups, and bumper stickers, how does that further a governmental interest?

A. I can tell you, at the time there was a concern if we were going to get this passed that it not turn agricultural into commercial uses. So I'm guessing, my guess is that's what that's in there for.

Q. Okay, but that wasn't one of the four governmental interests the Township has identified, right? So how does it fit into one of these four governmental interest that you—

A. Don't know.

Q. And what is the harm, what is the harm if a farm processing facility sells a logoed T-shirt? What's the harm to the governmental interest?

A. Don't know.

Q. I'm assuming you don't know if there were any less-restrictive means considered?

A. Not that I recall.

(*Deposition of Robert Manigold*, ECF No. 136-1 at PID 4770).

However, PTP now cites an expert report by Dr. Thomas Daniels, who opines that several of the relevant provisions serve to promote the government's interest. When discussing 6.7.2(19)(b)(1)(v) and 8.7.3(12)(i), he opines that the provisions "advance the goal of encouraging growers to produce, process, and market agricultural products and thus maintain land in agricultural use." (ECF No. 488-3 at PID 19078). Further, he opines that "[m]erchandise not related to wine or the agricultural product grown on the farm property is a commercial activity, and that merchandise can and should be sold in a commercial zoning district." *Id.* PTP also put forth testimony from the Zoning Administrator and PTZO co-drafter, which contradicts the testimony of Robert Manigold. (ECF Nos. 488-5, 488-7). In light of the conflicting testimony, the Court cannot grant summary judgment to Plaintiffs.

2.  Injunctive Relief

As with Plaintiffs' MZEA claim, Plaintiffs' right to enjoin certain sections of the Township Ordinances rise and fall with their constitutional and preemption arguments. (*See* ECF No. 525 at PID 21137). In accordance with this opinion, the Court will enjoin the Township from enforcing all of the sections of the Township Ordinances that the Court has found unconstitutional or contrary to law.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiffs' partial motion for summary judgment (ECF No. 468) is **GRANTED in PART and DENIED in PART** in accordance with this opinion.

**IT IS FURTHER ORDERED** that Protect the Peninsula's partial motion for summary judgment (ECF No. 516) is **GRANTED in PART and DENIED in PART** in accordance with this opinion.

**IT IS SO ORDERED.**

Date:  April 5, 2024                                    /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge