## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA ASSOC. (WOMP), a Michigan
nonprofit corporation; BOWERS HARBOR
VINEYARD & WINERY, INC, a Michigan
corporation; BRYS WINERY, LC, a Michigan
corporation; CHATEAU GRAND TRAVERSE,
LTD, a Michigan corporation; CHATEAU
OPERATIONS, LTD, a Michigan corporation;
GRAPE HARBOR, INC, a Michigan corporation;
MONTAGUE DEVELOPMENT, LLC, a
Michigan limited liability company; OV THE
FARM, LLC, a Michigan limited liability
company; TABONE VINEYARDS, LLC, a
Michigan limited liability company; TWO LADS,
LLC, a Michigan limited liability company;
VILLA MARI, LLC, a Michigan limited liability
company; WINERY AT BLACK STAR FARMS,
LLC, a Michigan limited liability company;

        Plaintiffs,

v

PENINSULA TOWNSHIP, a Michigan municipal
corporation,

        Defendant,

and

PROTECT THE PENINSULA, INC.,

        Intervenor-Defendant.

Case No. 1:20-cv-01008

HON. PAUL L. MALONEY
MAG. JUDGE RAY S. KENT

**DEFENDANTS'
JOINT TRIAL BRIEF**

Joseph M. Infante (P68719)
Christopher J. Gartman (P83286)
Stephen Michael Ragatzki (P81952)
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
99 Monroe Ave., NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com
ragatzki@millercanfield.com

Barry Kaltenbach
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
227 Monroe Street, Ste 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

Scott Robert Eldridge (P66452)
*Miller, Canfield, Paddock*
Attorneys for Plaintiffs
One E. Michigan Avenue, Ste 900
Lansing, MI 48933
(517) 487-2070
eldridge@millercanfield.com

Thomas J. McGraw (P48817)
Bogomir Rajsic, III (P79191)
*McGraw Morris, P.C.*
Attorneys for Defendant
44 Cesar E. Chavez Ave. SW
Suite 200
Grand Rapids, MI 49503
(616) 288-3700
tmcgraw@mcgrawmorris.com
brajsic@mcgrawmorris.com

William K. Fahey (P27745)
John S. Brennan (P55431)
Christopher S. Patterson (P74350)
*Fahey Schultz Burzych Rhodes PLC*
Co-Counsel for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100
wfahey@fsbrlaw.com
jbrennan@fsbrlaw.com
cpatterson@fsbrlaw.com

Tracy Jane Andrews (P67467)
*Law Office of Tracy Jane Andrews, PLLC*
Attorneys for Intervenor-Defendant
420 East Front Street
Traverse City, MI 49686
(231) 946-0044
tja@tjandrews.com

Holly L. Hillyer (P85318)
*Troposphere Legal, PLC*
Co-Counsel for Intervenor-Defendant
420 East Front Street
Traverse City, MI 49686
(231) 709-4709
holly@tropospherelegal.com

---

## DEFENDANTS' JOINT TRIAL BRIEF

# TABLE OF CONTENTS

I.  **INTRODUCTION** ................................................................................................ 1

II.  **SUMMARY OF RESOLVED AND REMAINING ISSUES** ........................................ 4

III. **REMAINING ISSUES** ......................................................................................... 8

A.  **First Amendment** .............................................................................................. 8

    *1.*  *Alleged Content-Based Restrictions* ............................................................ 8

    *2.*  *Alleged Prior Restraints* ............................................................................. 9

    *3.*  *Alleged Compelled Speech* .......................................................................... 14

    *4.*  *Alleged Commercial Speech* ........................................................................ 15

B.  **Michigan Zoning Enabling Act (MZEA)** ........................................................ 24

C.  **Laches** .............................................................................................................. 25

D.  **Standing** .......................................................................................................... 27

E.  **Remedies** ......................................................................................................... 29

    *1.*  *Money Damages* .......................................................................................... 29

    2.  *Injunctive Relief* .......................................................................................... 33

    (a)  Legal standards for injunctive relief ........................................................... 35

    (b)  Enjoining enforcement of specific zoning provisions is an empty act. ....... 37

    (c)  Plaintiffs do not seek winery-specific injunctive relief, and providing such relief would require proofs Plaintiffs failed to muster. .................................................................. 38

    (d)  The Court cannot declare Plaintiffs are entitled to new land uses. .............. 43

F.  **Plaintiffs' "Admissions and Concessions" Claims** .......................................... 46

IV. **CONCLUSION** ................................................................................................. 48

## TABLE OF AUTHORITIES

**Cases**

*326 Land Co, LLC v City of Traverse*, 2023 U.S. Dist. LEXIS 70351  (W.D. Mich. April 21, 2023) ................................................................................................................ 43

*46th Circuit Trial Court v. Crawford Cty.*, 266 Mich. App. 150; 702 N.W.2d 588(2005)...... 24, 51

*Alexander v. United States*, 509 U.S. 544 (1993) ......................................................... 14

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991)...................................................... 22

*Baum Research & Dev Co v. Univ of Mass at Lowell*, 2006 WL 461224, 2006 U.S. Dist. LEXIS 9193 (W.D. Mich. Feb. 24, 2006) ................................................................... 33

*Bench Billboard Co. v. City of Covington*, 465 F. App'x 395 (6th Cir. 2012) ............................. 44

*Bloomfield Twp v. Beardslee*, 349 Mich. 296; 84 N.W2d 537 (Mich. 1957)........................ 43

*Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121 (7th Cir. 2001)................................... 14

*Board of Trustees of State Univ. of N. Y. v. Fox*, 492 U.S. 469 (1989)....................................... 22

*Brae Burn, Inc. v. City of Bloomfield Hills,* 350 Mich. 425; 86 N.W.2d 166 (1957)................... 48

*Bridgeport Music, Inc. v. Juston Combs Publ'g,* 507 F.3d 470 (6th Cir. 2007)........................... 28

*Bronco's Ent., Ltd. v. Chater Twp of Van Buren,* 421 F.3d 440 (6th Cir. 2005) ........................... 14

*Burson v. Freeman*, 504 U.S. 191 (1992) ....................................................................... 22

*Burt Twp v. Dep't of Nat. Resources*, 459 Mich. 659; 593 N.W.2d 534 (1999)........................... 28

*Bylinski v. Allen Park*, 8 F.Supp.2d 965 (E.D. Mich. 1998) ................................................... 30

*Cannon v. Univ. of Health Scis./Chicago Med. Sch.*, 710 F.2d 351 (7th Cir. 1983) .................... 29

*Carey v. Piphus*, 435 U.S. 247 (1978)........................................................................... 33

*Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986)........................................................... 28

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) 5, 19, 21, 22

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) ..................................... 15

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1968)............................................... 23

*Dezman v. Charter Twp. of Bloomfield*, 997 N.W.2d 42 (Mich. 2023)....................................... 47

*Dusdal v. Warren*, 387 Mich. 354; 196 N.W.2d 778 (1972) ............................................... 43

*eBay Inc v. MercExchange, LLC*, 547 US 388, 391 (2006)................................................... 38

*Edel v. Filer Twp, Manistee Cnty*, 49 Mich. App. 210; 211 N.W.2d 547 (1973)........................ 30

*Edenfield v. Fane*, 507 U.S. 761 (1993)......................................................................... 22

*Edw. C Levy Co. v. Marine City Zoning Bd of Appeals*, 293 Mich. App 333; 810 N.W.2d 621 (2011) ................................................................................................................ 43

*Executive Art Studio, Inc. v. Kalamazoo*, 674 F. Supp. 1288 (W.D. Mich. 1987) ....................... 24

*Fednav, Ltd. v. Chester*, 547 F.3d 607 (6th Cir. 2008) ...................................................... 31

*Fera v. Village Plaza, Inc.,* 396 Mich. 639 (1976).................................................... 33, 34

*Fla. Bar v. Went for It*, 515 U.S. 618 (1995)............................................................ 21, 22

*Fredonia Farms, LLC v. Enbridge Energy Partners, LP*, 2014 WL 3573723, 2014 U.S. Dist. LEXIS 97677 (W.D. Mich. July 18, 2014) .......................................................... 33

*Fremont Twp. v. McGarvie,* 164 Mich. App. 611; 417 N.W.2d 560 (1987)................................. 24

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006) ....................................................... 33

*Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457 (1997) ........................................... 17, 18

*Grand/Sakawa Macomb Airport v. Macomb Twp.*, 2005 Mich. App. LEXIS 1398 (June 7, 2005) ................................................................................................................ 49

*Gratton v. Conte*, 364 Pa 578 (73 A2d 381, 384) ........................................................... 48

*Grayson v. Allen,* 491 F.3d 1318 (11th Cir. 2007) ........................................................... 30

*Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173 (1999)................................. 23

1

*Heath Twp. v. Sall,* 442 Mich. 434; 502 N.W.2d 627 (1993) ...................................... 44

*Hendee v. Putnam Twp.*, 486 Mich. 556; 786 N.W.2d 521 (2010) ................................ 49

*Herman Miller v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298 (6th Cir. 2001)............ 29

*Independence Twp. v. Shibowski*, 136 Mich. App. 178; 355 N.W.2d 903 (1984)........................ 47

*Int'l Outdoor, Inc v. City of Troy*, 77 F.4th 432 (6th Cir. 2023) ............................. 42

*Int'l Outdoor, Inc. v. City of Troy*, 361 F.Supp.3d 713 (E.D. Mich. 2019) ................................. 41

*Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550 (2005)............................................................. 17

*Knop v. Johnson,* 977 F.2d 996 (6th Cir. 1992) ......................................................... 39

*Kyser v. Kasson Twp*, 486 Mich 514; 786 N.W.2d 543 (2010)................................................ 27, 28

*LaCroix v. Town of Fort Myers Beach,* 38 4th 941 (11th Cir. 2022) ...................................... 16

*Lemaster v. Lawrence County*, 65 F.4th 302 (6th Cir. 2022) ................................................ 51

*Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525 (2001)............................................................. 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................. 31

*MacDonald v. GMC*, 110 F.3d 337 (6th Cir. 1997).............................................................. 51

*Macenas v. Michiana*, 433 Mich. 380; 446 N.W.2d 102 (1989)........................................... 23

*MCG, Inc. v. Centri-Spray Corp.*, 639 F. Supp. 1238 (E.D. Mich. 1986) ................................ 29

*McKeon Prods. v. Howard S. Leight & Assocs.*, 15 F.4th 736 (6th Cir. 2021) ........................... 40

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ....................................... 23

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) ....................... 28, 29, 40

*Northville Area Non-Profit Housing Corp. v. City of Walled Lake*, 43 Mich. App. 424; 204
   N.W.2d 274 (1972)................................................................................................ 30

*Pagan v. Calderon*, 448 F.3d 16 (1st Cir. 2006) ................................................................. 31

*Pagan v. Fruchey*, 492 F.3d 766 (6th Cir. 2007) ............................................................... 22

*Pembaur v. Cincinnati*, 882 F.2d 1101 (6th Cir. 1989)...................................................... 33

*Pittsfield v. Malcolm*, 375 Mich. 135; 134 N.W.2d 166 (1965)......................................... 46

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (6th Cir. 2001) .......... 15

*Prevost v. Macomb Twp.*, 6 Mich. App. 462; 149 N.W.2d 453 (1967) ....................................... 24

*Pulte Land Co. v. Alpine* Twp., 2006 Mich. App. LEXIS 2641 (Sept 12, 2006) ......................... 49

*Reilly v. Marion*, 113 Mich. App. 584; 317 N.W.2d 693 (1982)............................................ 27

*Richmond Twp. v. Erbes*, 195 Mich. App. 210; 489 N.W.2d 504 1992)........................................ 30

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383 (6th Cir. 2007) ..................... 51

*Scherer Design Grp, LLC v. Ahead Eng'g LLC*, 764 Fed. Appx. 147 (3rd Cir. 2019)................. 40

*Schwartz v. City of Flint*, 26 Mich. 295, 395 N.W.2d 678 (1986) ........................................ 48, 49

*Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135; 253 N.W.2d 114 (1977)................ 44

*Stevenson v. Bay City*, 26 Mich 44 (1872) .................................................................... 24, 51

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) .......................................... 39

*Thatcher Enterprises v. Cache Cnty Corp*, 902 F.2d 1472 (10th Cir. 1990)........................ 29, 30

*Tini Bikinis-Saginaw, LCC v. Saginaw Chater Twp.*, 836 F.Supp.2d 504 (E.D. Mich. 2011) ...... 41

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)...................................................... 31

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356 (6th Cir. 2022) ...................................... 38, 39

*United States v. Carter* (Carter I), 669 F.3d 411 (4th Cir. 2012)....................................... 22

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008) ...................................... 29

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982)........................................................ 39

*Wolters Realty v. Saugatuck*, 2005 Mich. App. LEXIS 2608 (Oct 25, 2005) ......................... 49

*WOMP v. Peninsula Township*, 2022 U.S. App. LEXIS 23575 (6th Cir. 2022) ......................... 40

2

**Statutes**

MCL § 125.3201(1) .................................................................................................. 27
MCL § 125.3203 ...................................................................................................... 23
MCL § 125.3504(2) .................................................................................................. 27
MCL 125.3208(1) ............................................................................................... 43, 44

**Other Authorities**

101A C.J.S, Zoning & Land Planning § 160 ........................................................... 44

**Rules**

Fed. R. Civ. P. 65(d) ................................................................................. 37, 39, 40, 42
Fed. R. Civ. P. 65(d)(2)(A) ...................................................................................... 39
Fed. R. Civ. P. 65(d)(2)(B) ...................................................................................... 39

**Constitutional Provisions**

42 U.S.C § 1983 ....................................................................................................... 32
Const. 1963, Art 7, § 34 ........................................................................................... 28

**DEFENDANTS' JOINT TRIAL BRIEF**

Pursuant to the Court's Case Management Order and directions, Defendant Peninsula Township and Intervening Defendant Protect the Peninsula, Inc. (PTP) submit *Defendants' Joint Trial Brief* in support of *Defendants' Joint Proposed Findings of Fact and Conclusions of Law* and other trial-related issues.

## I.      INTRODUCTION

Plaintiffs endeavor to undo the comprehensive planning and zoning scheme developed through iterative and inclusive legislative processes over forty years in Peninsula Township. Plaintiffs challenge isolated provisions in the Peninsula Township Zoning Ordinance (PTZO) that define winery land uses and authorize limited accessory activities. They demand millions in lost profits and judicial rezoning of their land uses.

In June 2022, the Court declared some parts of the PTZO violated the dormant Commerce Clause and were unconstitutionally vague. Defendant Peninsula Township repealed those parts and others in December 2022. In February 2024, the Court declared two former PTZO provisions are preempted by state law. In April 2024, the Court issued summary judgment foreclosing liability and damages on most remaining claims for most Plaintiffs. There are three main trial issues:

1. Related to Plaintiffs' First Amendment commercial speech claim, whether five PTZO provisions advance the Township's substantial interests under the *Central Hudson* test;

2. Whether Plaintiffs are entitled to money damages for lost profits allegedly caused by unconstitutional zoning; and

3. Whether Plaintiffs are entitled to remedial injunctive relief.

The first issue is simultaneously limited and expansive. It is limited because it invokes only five PTZO provisions that historically applied to only seven Plaintiffs. It is expansive because it

1

encompasses parts of three winery land uses (Remote Winery Tasting Room, Farm Processing Facilities, and Winery-Chateaus) enacted iteratively through scores of contested public meetings between 1989 and 2004 and administered uniquely to each Winery that sought the land use approvals. As the local winemaking industry developed, wineries wanted – and needed – more revenue streams, and the community wanted wineries to remain successful farming enterprises. The Township, as all government is supposed to do, sought to balance interests. On one side, the Township worked to develop zoning that would foster growth and profit for the wineries. Offering counterbalance, the Township tailored its ordinance in a fashion that ensured the land remained agricultural in nature, not commercial.

In order to achieve this balance, the Township responded through the quintessentially local legislative zoning process: meetings and public hearings of committees, the Planning Commission, and ultimately the Township Board; revisions followed by more meetings and public hearings; democratic support and opposition at the ballot box; litigation, variances, permit applications, and more meetings. The result was zoning amendments authorizing three winery land uses (a fourth defeated in referendum) with virtually unlimited retail to the public of wine by the taste, glass, or bottle, but limited additional onsite facilities and services for overnight guests and invitees. The five challenged provisions were enacted as part of zoning amendments to authorize additional winery accessory and support uses related to the core grape growing, processing, and bottling that remained agricultural. While there are gaps, the legislative history is surprisingly well-documented through the minutes of scores of public meetings. Memories may fade and fluster, but these old public records are clear and consistent, and they best prove this history. They document Plaintiffs' starring roles, their neighbors' concerns, and the Township's careful balancing act.

2

Turning to remedies: what can each Plaintiff prove they are entitled to? Plaintiffs' challenges to specific zoning provisions must be considered in the context of the PTZO. Each Plaintiff that suffered an unconstitutional zoning provision must prove that zoning provision caused it to lose profits. Most challenged provisions were permissive, not prohibitive. The Township enacted zoning amendments permitting limited expanded commercial activities related to a vineyard theretofore unrecognized in the A-1 Agricultural District. Before the Township enacted the challenged zoning provisions, wineries in the A-1 District were places to grow grapes, process grapes into wine, and distribute wine. Plaintiffs challenge zoning provisions that expanded opportunities for retail and guest services while maintaining the nexus to farming and agricultural processing. But for amendments authorizing wineries located in A-1 to retail promotional merchandise or repurpose B&B spaces for private conferences, zoning authorized fewer accessory and support uses.

As a result, Plaintiffs cannot prove unconstitutional zoning provisions caused them to lose profits. At trial, they will speculate about profits they might have made if not subject to A-1 agricultural zoning. They cannot prove zoning authorizing limited onsite retail of promotional merchandise caused them to *lose* money – but for challenged provisions, zoning authorized *no* retail merchandise shops in A-1. They cannot prove zoning authorizing limited private group conferences caused them to *lose* money – but for challenged provisions, zoning authorized accessory facilities for overnight guest services only. Plaintiffs' lost profits calculations assume *unlimited* merchandise sales and for-hire private events, but the absence of the challenged zoning winds back the permissions provided through amendments developed through the extensive public processes described above.

3

For the same reason and others, Plaintiffs will be entitled to limited equitable relief where zoning provisions are found unconstitutional or preempted. Unlike a traditional constitutional challenge to a prohibition on constitutional freedom, Plaintiffs challenged zoning permissions; their successful claims mostly invalidate accessory and support land uses. The Township repealed the challenged provisions in December 2022. Plaintiffs never pleaded winery-specific injunctive relief, and their proofs are insufficient to surgically strike invalid provisions from special use permits. Remedial relief is further complicated by equitable factors, indeterminate vested rights, and severability considerations.

These issues will be supported with trial evidence and are developed below.

## II.   SUMMARY OF RESOLVED AND REMAINING ISSUES

Dormant Commerce Clause: The Court granted summary judgment to Plaintiffs, resolving the merits of their dormant Commerce Clause claims (**Counts V, VI**). (ECF 29, PageID.1122-1124; ECF 162, PageID.5995-6001) As a result, the Court found the following unconstitutional: Sections 6.7.2(19)(a), 6.7.2(19)(b)(1)(ii), 6.7.2(19)(b)(1)(iii), 6.7.2(19)(b)(2)(i), 6.7.2(19)(b)(2)(v), 8.7.3(10)(u)(2)(e), 8.7.3(10)(u)(3), 8.7.3(10)(u)(5)(c), and 8.7.3(10)(u)(5)(d). After PTP intervened and moved to vacate the summary judgment order, the Court denied the request to set aside summary judgment on the dormant Commerce Clause claims. (ECF 301, PageID.10698; ECF 319) At trial, each Plaintiff must prove what, if any, relief at law and equity it is entitled to under its dormant Commerce Clause claims.

Due Process: The Court granted summary judgment to Plaintiffs, resolving the merits of their substantive due process claim alleging zoning that proscribes Plaintiffs' constitutionally protected speech and expressive association rights as unconstitutionally vague (**Count IV**). (ECF

29, PageID.1121-22; ECF 162, PageID.6016-6019) As a result, the Court found the term "Guest Activity" in Section 8.7.3(10) is unconstitutional and must be stricken from the PTZO. After PTP intervened and moved to vacate the summary judgment order, the Court denied the request to set aside summary judgment on the due process claim. (ECF 301, PageID.10698; ECF 319) According to Plaintiffs, this decision "means the entire Guest Activity Use scheme is gone, including 8.7.3(10)(u)(1), 8.7.3(10)(u)(2), 8.7.3(10)(u)(3), 8.7.3(10)(u)(4), 8.7.3(10)(u)(5) and all of their respective subsections." (ECF 573, PageID.22381) At trial, each Plaintiff must prove what, if any, relief at law and equity it is entitled to under its due process claim.

Preemption: The Court granted summary judgment in part to Plaintiffs and Defendants fully resolving the merits of Plaintiffs' preemption claims (**Count VIII**) (ECF 29, PageID.1125-1126; ECF 525) The Court found only Sections 8.7.3(10)(u)(5)(i) and 8.7.3(10)(u)(5)(g) preempted by state law. The Court also determined Plaintiffs' success on their preemption claim does not entitle them to money damages as Peninsula Township is immune from damages. (ECF 525, PageID.21134-21136) At trial, each Plaintiff must prove what, if any, equitable relief it is entitled to for preempted zoning.

Regulatory Takings: The Court granted summary judgment to Defendants fully resolving Plaintiffs' regulatory takings claim (**Count VII**). (ECF 29, PageID.1124-1125; ECF 553, PageID.21913)

Freedom of Association: The Court granted summary judgment to Defendants fully resolving Plaintiffs' freedom of association claim (**Count III**). (ECF 29, PageID.1120-1121; ECF 559, PageID.21912-21913)

5

<u>Freedom of Religion</u>: The Court's summary judgment order noted Plaintiffs "do not intend to pursue" their freedom of religion claim (**part of Count I**). (ECF 29, PageID.1116-1118; ECF 559, PageID.21912) The Court should dismiss this claim with prejudice.

<u>Freedom of Speech</u>: The Court's summary judgment order resolved some but not all of Plaintiffs' theories related to their freedom of speech claims (**part of Counts I, II**). (ECF 29, PageID.1116-1119; ECF 559) The resolved and remaining issues for trial are discussed below.

<u>Michigan Zoning Enabling Act</u>: This Court's summary judgment order on preemption resolved part of Plaintiffs' claim under the Michigan Zoning Enabling Act (MZEA) but not Plaintiffs' constitutional-based MZEA claims (**Count IX**). (ECF 28, PageID.1126-1127; ECF 525 PageID.31136-21137, n.3) While not fully resolved, Defendants do not anticipate the MZEA claim is an evidentiary issue for trial.

<u>Statute of Limitations</u>: The Court granted summary judgment to Plaintiffs fully resolving Defendants' statute of limitations defenses. (ECF 528, PageID.21254-21255, PageID.21262)

<u>Laches</u>: The Court granted summary judgment to Plaintiffs finding "laches is not a defense to injunctive relief," resolving PTP laches-related defenses. (ECF 528, PageID.21256, 21262) Laches arguments still apply to damages, which is an evidentiary issue for trial.

<u>Standing</u>: The Court ruled that only Winery-Chateaus have standing to challenge parts of Section 8.7.3(10). (ECF 559, PageID.21902) The Court further ruled that, while all Winery-Chateaus have standing to bring facial challenges to Winery-Chateau sections, five did not demonstrate that Sections 8.7.3(10)(m) and 8.7.3(10)(u) were unconstitutionally applied to them, so Bonobo, Chateau Grand Traverse, Brys, Hawthorne, and Bowers Harbor lack standing to pursue as-applied challenges stemming from those sections. (ECF 559, PageID.21903) Thus, Bonobo, Chateau Grand Traverse, Brys, Hawthorne, and Bowers Harbor have no basis to sustain claims the

6

Township unconstitutionally applied invalid parts of Section 8.7.3(10) to them.[1] Defendants contest that the remaining Plaintiffs – Mari, Chateau Chantal, Peninsula Cellars, Two Lads, Black Star, and Tabone – have standing because each did not present evidence supporting that it suffered injury in fact caused by each challenged zoning provision and that available relief would redress their injuries. Each Plaintiff must prove each element of standing at trial.

Equitable Relief: The Court in summary judgment ordered that it "will enjoin the Township from enforcing all of the sections of the Township Ordinances that the Court has found unconstitutional or contrary to law." (ECF 559, PageID.21922) Each Plaintiffs' entitlement to any additional or alternative equitable injunctive relief is a trial issue, as discussed below.

Money Damages: Each Plaintiffs' entitlement to legal relief – *i.e.*, money damages – is a trial issue, as discussed below.

Plaintiffs' "Admissions and Concessions" Claims: Plaintiffs apparently intend to seek legal or equitable relief in this proceeding allegedly resulting from what they characterize as admissions or concessions in Township depositions or briefing. (ECF 573, PageID.22384) Such admissions or concessions, if any, are neither cognizable and nor judiciable in this proceeding.

The table summarizes remaining trial issues involving evidentiary matters:

| Claim or Defense | Trial Issue |
|---|---|
| Dormant Commerce Clause | Damages, Injunctive Relief |
| Due Process | Damages, Injunctive Relief |
| Preemption | Injunctive Relief |
| First Amendment | Merits, Damages, Injunctive Relief |
| Laches | Damages |
| Standing | Damages |

---

[1] Plaintiffs failed to prove Section 8.7.3(10)(m) regulates commercial speech and Plaintiffs assert no other legal challenge to this provision. (ECF 559, PageID.21916-21918)

### III.    REMAINING ISSUES

### A.    <u>First Amendment</u>

Plaintiffs' Counts I and II mount facial and as-applied challenges alleging some zoning provisions impair free speech rights protected by the First Amendment. (ECF 29, PageID.1116-19) In discovery and summary judgment, Plaintiffs identified particular zoning provisions as content-based restrictions, prior restraints, compelled speech, and commercial speech restrictions. (ECF 457-4, ECF 469) The Court resolved each – some entirely and some partly (ECF 559):

| First Amendment Theory | Provisions with Live Trial Issues |
|---|---|
| Content Based Restrictions | (none) |
| Prior Restraint | 8.7.3(10)(u)(2)(b) (local 501(c)(3) group meetings)<br>8.7.3(10)(u)(2)(c) (ag-related group meetings) |
| Compel Speech | 8.7.3(10)(u)(1)(b) (promote Peninsula ag during GAUs)<br>8.7.3(10)(u)(5)(a) (promote Peninsula ag during GAUs) |
| Regulate Commercial Speech | 6.7.2(19)(b)(1)(v) (retail merchandise sales)<br>8.7.3(10)(u)(1)(b) (<u>Intent</u>/promote Peninsula ag during GAUs)<br>8.7.3(10)(u)(5)(h) (no outdoor displays during GAUs)<br>8.7.3(12)(i) (retail merchandise sales)<br>8.7.3(12)(k) (signs and advertising) |

This brief first identifies resolved and remaining issues for each theory. Then each section provides the legal analysis to consider remaining issues. Finally, it summarizes what relief, if any, impacted Plaintiffs may be entitled to under each theory.

### 1.    *Alleged Content-Based Restrictions*

Plaintiffs moved for summary judgment on the basis four zoning provisions[2] are content-based restrictions, which the Court denied. (ECF 559, PageID.21907-21908) PTP moved for summary judgment on the basis two of the same zoning provisions[3] are *not* content-based

---

[2] Sections 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(2)(b), 8.7.3(10)(u)(2)(c), and 8.7.3(10)(u)(5)(a),

[3] Sections 8.7.3(10)(u)(1)(2)(b) and 8.7.3(10)(u)(2)(c).

restrictions, which the Court granted. (ECF 559, PageID.21906-21907) PTP did not move for summary judgment on former Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) because no Plaintiff asserted in discovery that these are content-based restrictions. (ECF 517, PageID.20044 n.15[4]) The net result is the Court denied Plaintiffs summary judgment on four zoning sections[5] but did not grant summary judgment to PTP on two sections.

Though summary judgment was not granted to PTP on these sections as content-based restrictions, there is no remaining trial issue. In denying Plaintiffs' original summary judgment motion, the Court found none of these are content-based restrictions. (ECF 162, PageID.6008-6010) The Court invoked that ruling plus the fact that it was not vacated when it denied Plaintiffs' second summary judgment motion. (ECF 559, PageID.21908) Each Plaintiff also abandoned any claim that Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) are content-based restrictions by failing to assert and support it in discovery. (ECF 457-4, PageID.16084-16085, 16094-16095, 16104-16105, 16118-16119, 16136, 16150, 16158, 16164-16165, 16174-16175, 16185) There is no remaining issue for trial on any claim that any zoning sections are content-based restrictions.

### 2. *Alleged Prior Restraints*

The Court granted summary judgment to Plaintiffs on their prior restraint theory challenging former Sections 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c). (ECF 559, PageID.21901) These sections defined two categories of Guest Activity Uses – meetings of 501(c)(3) non-profit

---

[4] "No non-Chateau asserted this theory in discovery. Plaintiffs abandoned in discovery a theory that 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) were content-based restrictions. (ECF 162, PageID.6008-6009; *see, e.g.*, ECF 457-4, PageID.16128-29)"

groups within Grand Traverse County (8.7.3(10)(u)(2)(b)) and meetings of agricultural related groups (8.7.3(10)(u)(2)(c)).

Plaintiffs challenged these same two provisions as content-based restrictions, but the Court rejected that theory as follows:

> [T]he PTZO does not prohibit the content of one's speech. Instead, they place regulations on the Wineries during certain activities. Accordingly, PTP's motion for summary judgment as to their content-based regulation of speech arguments for 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) will be granted.

(ECF 559, 21906-21907; ECF 162, PageID.6009-6010[6]) Consistently, the Court also rejected Plaintiffs' claim that these same two sections violate their freedom of association, granting summary judgment to PTP. (ECF 559, PageID.21912-21913) The Court ruled that Plaintiffs offered no factual support that these sections impair activities protected by the First Amendment. *Id.* The Court also rejected Plaintiffs theory that offering events the provide opportunities to promote their products are like advertising or speech. (ECF 559, PageID.21903-21906)

Given these rulings that former Sections 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) are not content-based restrictions nor impair expressive First Amendment rights protected by the freedom of association nor commercial speech, these provisions might be "prior restraints" of *activities*, but not of speech or expressive conduct. *Alexander v. United States*, 509 U.S. 544, 550 (1993) (no prior restraint where statute was "oblivious to the expressive or nonexpressive nature of the assets forfeited"); *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1123 (7th Cir. 2001) ("By 'prior restraint' Blackstone and modern courts alike mean censorship – an effort by administrative

---

[6] "[T]he Township Ordinances do not prohibit certain content. Instead, they place regulations on the Wineries during certain activities. Accordingly, Plaintiffs' motion for summary judgment as to their content-based regulation of speech arguments will be denied."

methods to prevent the dissemination of ideas or opinions thought dangerous or offensive. The censor's concern is with the content of speech, and the ordinary judicial safeguards are lacking. 'Prior restraints' that do not have this character are reviewed under the much more permissive standard applicable to restrictions merely on the time, place, or manner of expression.") (internal citations omitted). Generally applicable laws do not constitute prior restraints if they govern other types of activities without singling out expressive conduct. *Bronco's Ent., Ltd. v. Chater Twp of Van Buren,* 421 F.3d 440, 444, 446 (6th Cir. 2005). Because these two sections do not restrain expression or speech but the conduct of activities, the prior restraint ruling appears inconsistent with the Court's other rulings related to the lack of "speech" restrained by provisions. This inconsistency warrants further clarification.

The Court found former Section 8.7.3(10)(u)(2)(b) is a prior restraint "because Winery Chateaus cannot hold meetings of 501(c)(3) non-profit groups … without the prior approval from the Director of Zoning." (ECF 559, PageID.21910). Unlike Section 8.7.3(10)(u)(2)(**c**), which requires one-month notice for agricultural group meetings, nothing in former Section 8.7.3(10)(u)(2)(**b**) requires prior notice nor Zoning Administrator approval:

> Meetings of 501(C)(3) non-profit groups within Grand Traverse County. These activities are not intended to be or resemble a bar or restaurant use and therefore full course meals are not allowed, however light lunch or buffet may be served.

Per its plain language, there is nothing allowing the Zoning Administrator or any other Township official to allow or disallow meetings under Section 8.7.3(10)(u)(2)(b). If a Winery Chateau authorized to host Guest Activity Uses desired to host a meeting of a 501(c)(3) nonprofit within Grand Traverse County, it was free to do so. It thus appears erroneous to characterize Section 8.7.3(10)(u)(2)(b) as a "prior restraint." Regardless, because former Section 8.7.3(10)(u)(2)(b)

does not require prior notice nor Township approval, no Plaintiff could prove that Township administration of Section 8.7.3(10)(u)(2)(b) caused it to suffer money damages.

Unlike Section 8.7.3(10)(u)(2)(**b**), Section 8.7.3(10)(u)(2)(**c**) required prior notice and provided an opportunity for Zoning Administrator approval of agricultural related group meetings. As discussed above, this section is content-neutral. Even so, "[a] content-neutral regulation that 'places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 509 (6th Cir. 2001) (quoting *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757 (1988)). The Court found this to be a prior restraint on the basis "[t]here does not appear to be any definite criteria or definition to determine what type of activity is 'agriculturally related.'" (ECF 559, PageID.21910) The Court cited briefing referencing deposition testimony from the former Zoning Administrator but not the zoning ordinance, which provides guidance for assessing the nexus to agriculture:

> The Zoning Administrator shall use the following types of Agricultural Related Groups as a guide for determining "direct relationship to agricultural production";
> a. Food/wine educational demonstrations;
> b. Cooking show showcasing Peninsula produce and wine;
> c. Farmer's conferences;
> d. Regional farm producers;
> e. Cherry Marketing Institute and Wine Industry Conference
> f. Farm Bureau Conference
> g. Future Farmers of America and 4-H;
> h. Michigan State University/agricultural industry seminars.

Section 8.7.3(10)(u)(2)(c)(ii). This provided the Zoning Administrator with clear, mandatory guidance in its administration. *See LaCroix v. Town of Fort Myers Beach,* 38 4th 941, 953 (11th Cir. 2022) ("The unbridled discretion doctrine is usually reserved for permitting schemes where the official has the power to grant or deny a permit for any reason or no reason at all.") (collecting

cases). The Court also did not address Section 8.7.3(10)(u)(2)(c)(iv), which provides that "[a]n appeal of the Zoning Administrators determination can be made to the Township Board." The Court's summary judgment analysis of Plaintiffs' prior restraint theory appears incomplete.

Even if either or both Sections 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) are unconstitutional prior restraints, each Winery-Chateau authorized by Special Use Permit to host Guest Activity Uses must prove at trial that the Zoning Administrator exercised discretion under these sections to prevent it from hosting a meeting of a 501(c)(3) non-profit or an agricultural related group. The Court ruled in summary judgment that Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers did not demonstrate Section 8.7.3(10)(u) was unconstitutionally applied to them. (ECF 559, PageID.21903) Because Section 8.7.3(10)(u) has not been applied to Bonobo, Grand Traverse, Brys, Hawthorne, or Bowers, those Plaintiffs have no basis to recover compensatory money damages. Neither Chateau Chantal nor Mari – the remaining Winery-Chateaus authorized to host Guest Activity Uses – produced evidence in discovery supporting entitlement to compensatory money damages resulting from any unconstitutional "prior restraint" under either Section 8.7.3(10)(u)(2)(b) or 8.7.3(10)(u)(2)(c); trial should be consistent. Because the Township repealed Sections 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) when it enacted Amendment 201 to the PTZO, there is no zoning section to invalidate through injunction. Striking any reference to Sections 8.7.3(10)(u)(2)(b) and 8.7.3(10)(u)(2)(c) from the Special Use Permits of the Winery-Chateaus with authorization to host Guest Activity Uses raises challenges, as discussed below.

### 3. *Alleged Compelled Speech*

The Court granted summary judgment to Plaintiffs on their compelled speech theory challenging former Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a). (ECF 559, PageID.21910-21912) Former Section 8.7.3(10)(u)(1)(b) is part of the "<u>Intent</u>" of Section 8.7.3(10)(u), Guest Activity Uses; it was not operative. Section 8.7.3(10)(u)(5)(a) provides:

> All Guest Activity Uses shall include Agricultural Production Promotion as part of the activity as follows:
>   i. Identify "Peninsula Produced" food or beverage that is consumed by the attendees;
>   ii. Provide "Peninsula Agriculture" promotional materials;
>   iii. Include tours through the winery and/or other Peninsula agricultural locations.

The Court determined these sections compel speech by requiring a Winery-Chateau to promote agriculture at all Guest Activity Uses. The Court did not address in summary judgment whether the compelled speech is disagreeable to any Plaintiff. *See Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550, 557 (2005) (compelled speech unconstitutional where "an individual is obliged personally to express a message he disagrees with, imposed by the government"); *see also Glickman v. Wileman Bros. & Elliott,* 521 U.S. 457, 470–71 (1997) (collecting compelled speech cases where government required a person to "repeat an objectionable message out of their own mouth[]," or "use their own property to convey an antagonistic ideological message," or "respond to a hostile message when they would prefer to remain silent," or "be publicly identified or associated with another's message," or "pay subsidies for speech to which they object.") (citations and quotations omitted). To complete their compelled speech claim, Plaintiffs must prove that the identification of their own wine, tour of their own vineyards, or distribution of self-identified promotional material to comply with 8.7.3(10)(u)(5)(a) was disagreeable. *See Glickman,* 521 U.S. at 472 (compelled speech claim failed where forced payment for advertising promoted no

14

particular message "other than encouraging consumers to buy California tree fruit"; objections did not "rest[] on political or ideological disagreement with the content of the message").

Trial evidence will show that no Winery-Chateau authorized by Special Use Permit to host Guest Activity Uses disagreed with or objected to the content or message, if any, in the promotional requirements associated with Guest Activity Uses. The Court ruled in summary judgment that Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers did not demonstrate Section 8.7.3(10)(u) was unconstitutionally applied to them. (ECF 559, PageID.21903) Because Section 8.7.3(10)(u) has not been applied to Bonobo, Grand Traverse, Brys, Hawthorne, or Bowers, those Plaintiffs have no basis to recover compensatory money damages. Chateau Chantal and Mari – the remaining Winery-Chateaus authorized to host Guest Activity Uses – produced evidence they promoted family recipes, their own estate wine, and their own vineyards under these provisions. As a result, even if Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) unconstitutionally compelled speech, no Plaintiff is entitled to compensatory money damages. Because the Township repealed Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) when it enacted Amendment 201 to the PTZO, there is no zoning section to invalidate through injunction. Striking any reference to Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(a) from the Special Use Permits of the Winery-Chateaus with authorization to host Guest Activity Uses raises challenges, as discussed below.

### 4.   *Alleged Commercial Speech*

Plaintiffs' First Amendment commercial speech claims are particularly complicated. This brief recites the analytical rubric for these challenges then unpacks what was resolved in summary judgment and what is left for trial, including what relief, if any, each Plaintiff may be entitled to.

The Supreme Court has developed a four-part analysis for First Amendment challenges to commercial speech regulations:

> [1] At the outset, we must determine whether the expression is protected by
> the First Amendment. For commercial speech to come within that provision,
> it at least must concern lawful activity and not be misleading. [2] Next, we
> ask whether the asserted governmental interest is substantial. If both
> inquiries yield positive answers, we must determine [3] whether the
> regulation directly advances the governmental interest asserted, and [4]
> whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

The first part of *Central Hudson* is whether "commercial speech" is protected by the First Amendment. One component of Plaintiffs' commercial speech claims asserted for-profit events are "modern commercial advertising," thus commercial speech. This part of their commercial speech claim invoked former Sections 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), which clarified for-profit events *not* allowed through Farm Processing Facilities nor through Guest Activity Uses for Winery-Chateaus. (ECF 559, PageID.21905) The Court rejected this part of Plaintiffs' commercial speech claims and granted PTP summary judgment because these "do not implicate First Amendment protection." (ECF 559, PageID.21906)

Plaintiffs also asserted other zoning provisions restrict commercial speech. In discovery, Plaintiffs asserted 16 discrete zoning provisions[7] restrict commercial speech; PTP moved for summary judgment on 15[8] of those because none regulates "commercial speech." (ECF 517, PageID.20044-20048) Plaintiffs moved for summary judgment on 11 zoning subsections.[9] (ECF 469, PageID.16951) The Court analyzed 10 "relevant challenged provisions" in its summary

---

[7] At least one Plaintiff asserted in discovery that at least one of the following provisions restricts their commercial speech: Sections 6.7.2(19)(b)(1)(iii), 6.7.2(19)(b)(1)(v), 6.7.2(19)(b)(6), 8.7.3(10)(m), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(1)(d), 8.7.3(10)(u)(2)(a), 8.7.3(10)(u)(2)(b), 8.7.3(10)(u)(2)(c), 8.7.3(10)(u)(2)(d), 8.7.3(10)(u)(5)(c), 8.7.3(10)(u)(5)(g), 8.7.3(10)(u)(5)(h), 8.7.3(12)(g), 8.7.3(12)(i), and 8.7.3(12)(k). (ECF 457-4)

[8] PTP did not move for summary judgment on Section 8.7.3(12)(k). (ECF 517, PageID.20011)

[9] Sections 6.7.2(19)(b)(1)(v), 6.7.2(19)(b)(6), 8.7.3(10)(m), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(1)(d), 8.7.3(10)(u)(2)(a), 8.7.3(10)(u)(5)(c), 8.7.3(10)(u)(5)(g), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k).

judgment order[10] - a slightly different collection of provisions than PTP and Plaintiffs.[11] (ECF 559, PageID.21916-21917) Consistent with PTP arguments, the Court denied summary judgment on all provisions Plaintiffs challenged save five because they did not regulate speech – commercial or otherwise. (ECF 559, PageID.21916-21918) The net summary judgment result is five zoning provisions "relate to and regulate speech on their face – generally through limits on advertising":

| PTP MSJ – these provisions *are not* commercial speech | Plaintiffs MSJ – these provisions *are* commercial speech | Court MSJ order found these provisions regulate speech on their face, generally through limits on advertising |
|---|---|---|
| 6.7.2(19)(b)(1)(iii) | | |
| 6.7.2(19)(b)(1)(v) | 6.7.2(19)(b)(1)(v) | 6.7.2(19)(b)(1)(v) (retail merchandise sales) |
| 6.7.2(19)(b)(6) | 6.7.2(19)(b)(6) | |
| 8.7.3(10)(m) | 8.7.3(10)(m) | |
| 8.7.3(10)(u)(1)(b) | 8.7.3(10)(u)(1)(b) | 8.7.3(10)(u)(1)(b) (Intent / promote Peninsula ag during GAUs) |
| 8.7.3(10)(u)(1)(d) | 8.7.3(10)(u)(1)(d) | |
| 8.7.3(10)(u)(2)(a) | 8.7.3(10)(u)(2)(a) | |
| 8.7.3(10)(u)(2)(b) | | |
| 8.7.3(10)(u)(2)(c) | | |
| 8.7.3(10)(u)(2)(d) | | |
| 8.7.3(10)(u)(5)(c) | 8.7.3(10)(u)(5)(c) | |
| 8.7.3(10)(u)(5)(g) | 8.7.3(10)(u)(5)(g) | |
| 8.7.3(10)(u)(5)(h) | 8.7.3(10)(u)(5)(h) | 8.7.3(10)(u)(5)(h) (no outdoor displays during GAUs) |
| 8.7.3(12)(g) | | |
| 8.7.3(12)(i) | 8.7.3(12)(i) | 8.7.3(12)(i) (retail merchandise sales) |
| | 8.7.3(12)(k) | 8.7.3(12)(k) (signs and advertising) |

Having found five zoning provisions implicate commercial speech, the remaining parts of *Central Hudson* consider government interests. In summary judgment, the Court found Sections 6.7.2(19)(b)(1)(v), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k) implicate substantial governmental interests of Peninsula Township. (ECF 559, PageID.21918-21919) This

---

[10] Sections 6.7.2(19)(b)(1)(v), 6.7.2(19)(b)(6), 8.7.3(10)(m), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(1)(d), 8.7.3(10)(u)(2)(a), 8.7.3(10)(u)(2)(d), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k).

[11] The Court list included Sections 8.7.3(10)(u)(2)(d) and excluded Sections 8.7.3(10)(u)(5)(c) and 8.7.3(10)(u)(5)(g).

factor thus favors Defendants. On the last two *Central Hudson* parts*,* the Court found testimony was contradictory, preventing summary judgment to Plaintiffs. (ECF 559, PageID.21921)

What remains for trial is how Sections 6.7.2(19)(b)(1)(v), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k) fare under the last two parts of the *Central Hudson* test*.* "[T]he government must demonstrate that the restriction on commercial speech directly and materially advances that [governmental] interest; and [] the regulation must be narrowly drawn." *Fla. Bar v. Went for It,* 515 U.S. 618, 624 (1995) (internal quotation omitted, citing *Central Hudson, supra*). To meet this burden, the defending government "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 626 (internal quotation and citations omitted).

In *Went for It,* the Supreme Court considered the record of harm supporting a prohibition on personal injury lawyers sending targeted direct-mail solicitations to victims and their relatives for 30 days following an accident or disaster. The Bar showed the rules were developed based on a record that included a study of the effects of lawyer advertising on public opinion, hearings, surveys, review of public commentary, newspaper articles, and more. *Id.* at 620, 626-27. The Supreme Court commended the "breadth and detail" of the "anecdotal record" supporting the rule and noted it was unrefuted by the opposition, "save by the conclusory assertion that the rule lacked 'any factual basis.'" *Id.* at 627-28. While the agency record included "few indications of the sample size or selection procedures employed by [the nationally renowned consulting firm] and no copies of the actual surveys employed," the Supreme Court found the adduced evidence sufficient under the third part of the *Central Hudson* test:

> [W]e do not read our case law to require that empirical data come to us accompanied by a surfeit of background information. Indeed, in other First Amendment contexts, we have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different

> locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and simple common sense. Nothing in *Edenfield*, a case in which the State offered *no* evidence or anecdotes in support of its restriction, requires more.

*Id.* at 628 (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50-51 (1986); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 584-585 (1991) *Burson v. Freeman*, 504 U.S. 191, 211 (1992), *Edenfield v. Fane*, 507 U.S. 761 (1993); internal quotation omitted; emphasis in original). *See also Pagan v. Fruchey,* 492 F.3d 766, 771 (6th Cir. 2007) ("the government must come forward with some quantum of evidence, beyond its own belief in the necessity for regulation, that the harms it seeks to remedy are concrete and that its regulatory regime advances the stated goals") (citation omitted).

The fourth part of the test considers the fit between the regulation and government interest. To establish the fit, the government "may resort to a wide range of sources, such as legislative text and history, empirical evidence, case law, and common sense, as circumstances and context require." *United States v. Carter* (Carter I), 669 F.3d 411, 418 (4th Cir. 2012) (citation omitted). The Supreme Court rejected the assertion that this test requires a "least restrictive means" analysis. *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 556 (2001) ("We have made it clear that 'the least restrictive means' is not the standard; instead, the case law requires a reasonable 'fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective.'") (quoting *Went for It,* 515 U.S. at 632 and *Board of Trustees of State Univ. of N. Y. v. Fox*, 492 U.S. 469, 480 (1989)). *See also Fox*, 492 U.S. at 480 (describing the fourth factor and stating, "[w]hat our decisions require is a fit between the legislature's ends and the means chosen to accomplish those ends, []a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but, as

19

we have put it in the other contexts discussed above, a means narrowly tailored to achieve the desired objective") (citations and internal quotation marks omitted); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999) (summarizing that as to the fourth factor, "[o]n the whole, then, the challenged regulation should indicate that its proponent carefully calculated the costs and benefits associated with the burden on speech imposed by its prohibition") (internal quotation marks omitted); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (articulating that under the fourth factor, the regulation must "reach[] no further than necessary to accomplish the given objective").

The fit between the challenged zoning and government interests is most appropriately considered in the context of the zoning ordinance, the community plan it implements, the intent of the district and of the winery land uses themselves. Zoning ordinances effectuate a community land use plan. MCL § 125.3203 ("[a] zoning ordinance shall be based upon a plan designed to promote the public health, safety, and general welfare, to encourage the use of lands in accordance with their character and adaptability, to limit the improper use of land"); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1968) ("essence of zoning" is to make some area of the community available for certain uses "while at the same time preserving the quality of life in the community at large by preventing those [uses] from locating in other areas."). The overarching rule in construing a zoning ordinance is to give effect to its plain text and the legislators' intent. *Macenas v. Michiana*, 433 Mich. 380, 396; 446 N.W.2d 102 (1989); *Fremont Twp. v. McGarvie*, 164 Mich. App. 611, 614; 417 N.W.2d 560 (1987). To give effect to the intent of the drafters of the zoning ordinance, "the entire ordinance must be read together," effectuating ordinances that create "homogeneous use areas by confining each district to a limited number of compatible uses." *Prevost v. Macomb Twp.*, 6 Mich. App. 462, 467; 149 N.W.2d 453 (1967); *Executive Art Studio,*

*Inc. v. Kalamazoo*, 674 F. Supp. 1288 (W.D. Mich. 1987) ("In determining legislative intent, the Court has read the language of the [zoning] ordinance in the context of the problems the statute seeks to address, in this case, land use, parking and traffic problems associated with certain types of commercial as well as noncommercial enterprises.").

These guidelines are particularly instructive in a challenge to legislative acts adopted 20 years (or more) ago, where a whole community developed and numerous landowners have made investments in reliance on its validity. In this context, the ordinance itself, and its legislative history, together with the Master Plan it effectuates, are the best evidence of the legislators' intent. *See 46th Circuit Trial Court v. Crawford Cty.*, 266 Mich. App. 150, 161; 702 N.W.2d 588, 597-98 (2005) ("A county board speaks only through its official minutes and resolutions and their import may not be altered or supplemented by parol evidence regarding the intention of the individual members."), reversed on other grounds, 476 Mich. 131; 719 N.W.2d 553 (2006); *Stevenson v. Bay City*, 26 Mich 44, 46-47 (1872) ("When the law requires municipal bodies to keep records of their official action in the legislative business conducted at their meetings, the whole policy of the law would be defeated if they could rest partly in writing and partly in parol, and the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories. No authority was found, and we think none ought to be, which would permit official records to be received as either partial or uncertain memorials. That which is not established by the written records, fairly construed, cannot be shown to vary them. They are intended to serve as perpetual evidence, and no unwritten proofs can have this permanence.").

Trial evidence will substantiate that the harms the challenged zoning addresses are real and these provisions help alleviate them to a material degree. Defendants will present extensive legislative history – government records documenting concerns and efforts to tailor zoning to meet

the Township's substantial goals of compatible zoning and farmland preservation for each zoning enactment, together with the Master Plan outlining the community interests and harms that these sections were enacted to balance and advance. Defendants will also present testimony from zoning architects and Township representatives about the harms and tailoring, including the Township's former long-term planner (Mr. Hayward). PTP will present expert testimony from Dr. Thomas Daniels, a nationally renowned expert on land use planning, agricultural zoning, and farmland preservation with extensive first-hand knowledge of Peninsula Township agricultural preservation zoning and programs, who will opine regarding the validity of the harms and reasonableness of fit between the zoning provisions and the Township's desired zoning goals. Defendants anticipate Plaintiff representatives will further substantiate that the harms are real and challenged zoning has and will continue to mitigate the harms. Through the challenged zoning, Peninsula Township authorized additional guest services and facility uses – *e.g.,* areas to sell promotional merchandise and use of facilities for ag-related conferences – to add value to winery land uses without eliminating the agricultural nexus and while also ensuring the new uses remain *accessory* to without supplanting the *principle* agricultural production uses.

Even if Sections 6.7.2(19)(b)(1)(v), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k) fail judicial scrutiny, no Plaintiff is entitled to compensatory money damages. Former Sections 6.7.2(19)(b)(1)(v) and 8.7.3(12)(i) authorized retail sales of winery promotional items bearing the winery logo for Farm Processing Facilities and Remote Winery Tasting Rooms. Plaintiffs Two Lads, Black Star, Tabone, and Peninsula Cellars cannot prove these sections caused them to *lose* profits; to the contrary, these sections *increased* their profits.

Former Section 8.7.3(10)(u)(1)(b), the non-operative <u>Intent</u> provision for Guest Activity Uses, described the agricultural promotion component of Guest Activity Uses. Plaintiffs never

challenged operative Section 8.7.3(10)(u)(5)(a), obligating a Winery-Chateau to promote Peninsula agriculture during Guest Activity Uses, as regulating commercial speech. (ECF 162, PageID.6008; ECF 559, PageID.21916-21918; ECF 457-4; ECF 517, PageID.20045-20046) Even if they had, Chateau Chantal and Mari – the only authorized Winery-Chateaus that hosted Guest Activity Uses – cannot prove obligatory self-promotion caused them lost profits. Because Section 8.7.3(10)(u) has not been applied to Bonobo, Grand Traverse, Brys, Hawthorne, or Bowers, those Plaintiffs have no basis to recover compensatory money damages.

Former Section 8.7.3(10)(u)(5)(h) prohibited "outdoor displays of merchandise, equipment or signs" during Guest Activity Uses. The Court ruled Bonobo, Grand Traverse, Brys, Hawthorne, and Bowers did not demonstrate Section 8.7.3(10)(u) was unconstitutionally applied to them. (ECF 559, PageID.21903) Because Section 8.7.3(10)(u) has not been applied to Bonobo, Grand Traverse, Brys, Hawthorne, or Bowers, those Plaintiffs have no basis to recover compensatory money damages. Neither Chateau Chantal nor Mari can prove this prohibition on outdoor displays during Guest Activity Uses caused lost profits.

Former Section 8.7.3(12)(k) prohibited Remote Winery Tasting Rooms from promoting, listing, or identifying food and non-food items for sale in the winery tasting room. Peninsula Cellars cannot prove Section 8.7.3(12)(k) caused lost profits.

Because the Township repealed Sections 6.7.2(19)(b)(1)(v), 8.7.3(10)(u)(1)(b), 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 8.7.3(12)(k) when it enacted Amendment 201 to the PTZO, there is no zoning section to invalidate through injunction. Striking any reference to Sections 8.7.3(10)(u)(1)(b) and 8.7.3(10)(u)(5)(h) from the Special Use Permits of the Winery-Chateaus with authorization to host Guest Activity Uses, and Sections 8.7.3(12)(i) and 8.7.3(12)(k) from Peninsula Cellars' Special Use Permit, raises challenges, as discussed below. Enjoining

23

enforcement of former Section 6.7.2(19)(b)(1)(v) against Farm Processing Facilities raises additional challenges, as also discussed below.

**B.  Michigan Zoning Enabling Act (MZEA)**

Plaintiffs initially alleged unidentified zoning provisions "do not promote public health, safety, and welfare," therefore the Township exceeded its zoning authorize under the MZEA. (ECF 29, PageID.1126-1127) They now allege any zoning provision found preempted by Michigan law or unconstitutional also violates the MZEA. (ECF 567, PageID.22114) The Court adopted Plaintiffs' approach. (ECF 525, PageID.21137)

A zoning provision may be reasonable and proper under the MZEA but also preempted by state law or unconstitutional. Through the MZEA, local governments are empowered to zone for broad purposes identified by the Legislature for the orderly planning of their communities and to ensure land uses are situated "in appropriate locations." MCL § 125.3201(1); *Kyser v. Kasson Twp*, 486 Mich 514; 786 N.W.2d 543, 547 (2010). The MZEA also provides broad municipal authority to regulate special uses within districts by establishing standards or conditions upon which such uses may be allowed and the scope of permissible special use standards. MCL § 125.3504(2) (SUP standards "shall be compatible with adjacent uses"); *Reilly v. Marion*, 113 Mich. App. 584; 317 N.W.2d 693, 695 (1982). The status and force of zoning is enhanced by the Michigan constitution, which requires that authority granted to local governments must "be liberally construed in their favor." Const. 1963, Art 7, § 34; *Burt Twp v. Dep't of Nat. Resources*, 459 Mich. 659; 593 N.W.2d 534 (1999). The burden is on the zoning challenger to overcome its presumed validity by proving it advances no reasonable governmental interest. *Kyser*, 786 N.W.2d at 548. The Court recognized the Township's substantial interest in zoning. (ECF 559, PageID.21919)

Plaintiffs' theory is preempted or unconstitutional zoning violates the MZEA, but Defendants disagree. Evidence supporting the substantial governmental interests in orderly planning and agricultural preservation advanced by challenged zoning for constitutional purposes also supports its reasonableness under the MZEA. Even if challenged zoning violates the MZEA, Plaintiffs are not entitled to any incremental legal nor equitable relief under the MZEA.

### C. Laches

Most Plaintiffs waited far too long to bring their claims, to the significant prejudice of Peninsula Township, PTP and its members, and others. Laches thus bars Plaintiffs' claims for money damages and more.

"Laches is the negligent and unintentional failure to protect one's rights." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (internal citation and quotation omitted). "A party asserting laches must show: (1) lack of reasonable diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *WOMP II, supra* at PageID.8979 (quoting *Bridgeport Music, Inc. v. Juston Combs Publ'g,* 507 F.3d 470, 493 (6th Cir. 2007)). There is a strong presumption in the Sixth Circuit that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed. *Nartron,* 305 F.3d at 408 (citation omitted). The statute of limitations for these Section 1983 claims is three years pre-suit – *i.e.*, October 21, 2017. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). As such, "a delay beyond the three-year statutory period is presumptively prejudicial and unreasonable." *Nartron*, 305 F.3d at 408.

Each Plaintiff is unable to rebut the presumption that their significant delay in bringing this suit was both prejudicial and unreasonable. "In order to overcome the presumption of laches, plaintiff must: (1) rebut the presumption of prejudice; (2) establish that there was a good excuse

for its delay; or (3) show that the defendant engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Nartron,* 305 F.3d at 409 (internal quotation and citation omitted). The *Nartron* Court emphasized that "*any* prejudice [to the defendant] is sufficient, including an increase in potential damages or a loss of evidence." *Id.* (citing *Herman Miller v. Palazzetti Imports and Exports, Inc*., 270 F.3d 298, 322 (6th Cir. 2001) (finding prejudice where potential liability for damages increased) and *MCG, Inc. v. Centri-Spray Corp*., 639 F. Supp. 1238, 1244 (E.D. Mich. 1986) (finding prejudice where evidence to support claim is compromised)).

That Plaintiffs advance constitutional claims does not excuse their laches. *Thatcher Enterprises v. Cache Cnty Corp,* 902 F.2d 1472, 1475-76 (10th Cir. 1990) ("Whether the reason is called laches, estoppel, waiver, or public policy, challenges to the procedural invalidity of a zoning ordinance and constitutional challenges based thereon must be brought within a reasonable time from enactment of the ordinance. If not brought in a timely manner, the plaintiff will be barred from challenging the zoning ordinance."); *United States v. Clintwood Elkhorn Mining Co*., 553 U.S. 1, 9 (2008) ("[a] constitutional claim can become time-barred just as any other claim can") (internal quotation and citation omitted); *see also Cannon v. Univ. of Health Scis./Chicago Med. Sch.,* 710 F.2d 351, 359 (7th Cir. 1983) (laches available defense in Section 1983 claim seeking legal and equitable relief for civil rights violations); *Grayson v. Allen,* 491 F.3d 1318, 1322 (11th Cir. 2007); *Bylinski v. Allen Park*, 8 F.Supp.2d 965, 973 (E.D. Mich. 1998) (citations omitted), overruled on other grounds.

That this is a zoning matter increases the prejudice Defendants have suffered from Plaintiffs' delays. *Thatcher*,  902 F.2d at 1476 (applying laches where plaintiff waited 17 years after adoption of ordinance and 9 years from receipt of conditional use permit allowing limited

commercial uses agricultural zoning district to challenge zoning ordinance); *Richmond Twp. v. Erbes*, 195 Mich. App. 210, 225; 489 N.W.2d 504, 512 1992) overruled in part on other grounds (defendant estopped "on the basis of public policy" from challenging zoning ordinance 13 years after its enactment); *Edel v. Filer Twp, Manistee Cnty*, 49 Mich. App. 210, 216; 211 N.W.2d 547, 550 (1973) (time bar applied because zoning ordinance had been in existence for 18 years before it was challenged; "When a zoning ordinance has been the subject of public acquiescence and reliance for this length of time, the reasonableness of a belated challenge is certainly open to question.") (collecting cases); *Northville Area Non-Profit Housing Corp. v City of Walled Lake*, 43 Mich. App. 424, 435; 204 N.W.2d 274, 280 (1972) (time bar applied because zoning ordinance provision had been in effect for 4 years before it was challenged).

Most Plaintiffs (all but Bowers Harbor and Hawthorne) complain about Township actions and injuries they suffered long before October 21, 2017. Evidence presented at trial will support dismissal of most Plaintiffs' claims for money damages and more on the basis of their inexcusable and prejudicial delay in bringing their claims. (ECF 528, PageID.21255-21256, "laches may still apply to the damages")

### D.  Standing

Federal jurisdiction requires a plaintiff to have a "personal stake" in the outcome. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). Standing requires injury in fact, causation, and likely redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) ("These elements are (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury.") (cleaned up).  In multiparty litigation,

each plaintiff must establish standing to bring each of its claims. *Fednav, Ltd. v. Chester*, 547 F.3d

607, 614 (6th Cir. 2008) (standing is plaintiff- and provision-specific); *Pagan v. Calderon*, 448

F.3d 16, 26 (1st Cir. 2006) (requiring determination of "whether each particular plaintiff is entitled

to have a federal court adjudicate each particular claim that he asserts."). The Supreme Court

explained the increasing burden on the party invoking federal jurisdiction to establish each element

of standing:

> At the pleading stage, general factual allegations of injury resulting from
> the defendant's conduct may suffice, for on a motion to dismiss we presume
> that general allegations embrace those specific facts that are necessary to
> support the claim. In response to a summary judgment motion, however, the
> plaintiff can no longer rest on such mere allegations, but must set forth by
> affidavit or other evidence specific facts, Fed. Rule Civ. Proc. 56(e), which
> for purposes of the summary judgment motion will be taken to be true. **And
> at the final stage, those facts (if controverted) must be supported
> adequately by the evidence adduced at trial**.

*Lujan*, 504 U.S. at 561 (internal quotations and citation omitted, cleaned up, emphasis added).

The Court addressed the standing issues raised by PTP in summary judgment. (ECF 517,

PageID.20034-20038; ECF 559, PageID.21899-21903) The Court rejected PTP arguments related

to conservation easements on the land occupied by Bonobo and Black Star and related to the non-

existence of a Farm Processing Facility land use permit for the Tabone winery. (ECF 559,

PageID.21899-21902) The Court agreed with PTP that only Winery-Chateaus have standing to

challenge parts of Section 8.7.3(10). (ECF 559, PageID.21902) The Court further ruled that, while

all Winery-Chateaus have standing to bring facial challenges to Winery-Chateau sections, five did

not demonstrate that Sections 8.7.3(10)(m) and 8.7.3(10)(u) were unconstitutionally applied to

them, so Bonobo, Chateau Grand Traverse, Brys, Hawthorne, and Bowers Harbor lack standing to

pursue as-applied challenges stemming from those sections. (ECF 559, PageID.21903) Thus,

Bonobo, Chateau Grand Traverse, Brys, Hawthorne, and Bowers Harbor have no basis to sustain

28

claims the Township unconstitutionally applied invalid parts of Section 8.7.3(10) to them. As such, they lack standing to pursue any claims for damages or equitable relief under Section 8.7.3(10).

Beyond the standing issues resolved in summary judgment, each Plaintiffs' standing to maintain their claim and obtain legal and equitable relief remains controverted so each must still prove each element of standing at trial. To support money damages or injunction resulting from any unconstitutional zoning provision, each Plaintiff must prove they suffered an actual injury in fact and that it was caused by the challenged provision and that damages or injunction likely redress the injury. *Steel Co.,* 523 U.S. at 103 (harm must have "fairly traceable connection" to complained-of conduct). If the cause of Plaintiff's injury is not a challenged provision but A-1 zoning, there is no injury and/or the provision is not the cause and/or damages or injunction do not redress the injury. Defendants elicited evidence in discovery that most or all Plaintiffs were never actually injured by zoning provisions they now challenge; trial evidence should be consistent.

### E.  Remedies

#### 1.  Money Damages

Plaintiffs request the Court award them money damages under 42 U.S.C § 1983 for their alleged constitutional violations. Section 1983 entitles plaintiffs to seek compensation "for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). "The purpose of compensatory damages is to compensate the injured party for the costs of the injury; thus, in the absence of an injury, compensatory damages are inappropriate." *Pembaur v. Cincinnati*, 882 F.2d 1101, 1104 (6th Cir. 1989) (citing *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 (1986)). "When the alleged injury is the violation of a constitutional right, as here, '*no* compensatory damages could be awarded for violation of [a] right absent proof of actual injury.'" *Pembaur*, 882 F.2d at 1104 (quoting *Stachura, supra,* emphasis in originals). Nominal

damages alone are proper in the absence of proof of consequent injury. *Id.* "The level of damages [in a § 1983 case] is ordinarily determined according to principles derived from the common law of torts." *Id.* Under 42 U.S.C. § 1988(a), courts consider the common law of the forum state (Michigan) to support the federal framework. *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 598 (6th Cir. 2006) (applying Michigan civil damages laws in Section 1983 case).

Plaintiffs must prove lost profits with a "reasonable degree of certainty." *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 644 (1976) (quotation and citation omitted); *see also Fredonia Farms, LLC v. Enbridge Energy Partners, LP*, 2014 WL 3573723, 2014 U.S. Dist. LEXIS 97677 (W.D. Mich. July 18, 2014) ("Under Michigan law for a plaintiff to be entitled to damages for lost profits, the losses must be subject to a reasonable degree of certainty and cannot be based solely on mere conjecture or speculation.") (quoting *Bonelli v. Volkswagen of Am*, 166 Mich App 483, 511; 421 N.W.2d 213 (1988)); *Baum Research & Dev Co v. Univ of Mass at Lowell*, 2006 WL 461224, 2006 U.S. Dist. LEXIS 9193 (W.D. Mich. Feb. 24, 2006) ("While absolute certainty is not required, Plaintiff[s] must nonetheless establish a reasonable basis for its damages computation.") (internal quotation and citation omitted). Courts tolerate some uncertainty as to the amount of damage but "uncertainty as to the fact of damage" bars recovery. *Fredonia Farms, supra* (quoting *Bonelli,* 166 Mich. App. at 511). While Michigan precedent does not bar lost profits for a new business, the nature of such proof raises concern about speculativeness and uncertainty. *See Fera,* 396 Mich. at 643-44 ("Future profits as an element of damage are in no case excluded merely because they are profits but because they are uncertain." (quoting *Shropshire v. Adams*, 40 Tex. Civ. App. 339, 344; 89 S.W. 448, 450 (1905))

In support of their speculative and legally unsubstantiated claims for lost profits, Plaintiffs will rely on the testimony of their claimed damages expert, Eric Larson. Mr. Larson's most recent

report, disclosed on July 6, 2022, includes seven categories of damages, including: (1) increased grape costs; (2) lost profits from merchandise sales; (3) lost profits from lost catering; (4) lost profits from limited hours of operation; (5) lost profits from restaurant sales; (6) lost profits from small event hosting; and (7) lost profits from lost large event hosting (large events and weddings).

Mr. Larson's report, and therefore Plaintiffs' compensatory damages claims, utterly fails to identify the challenged sections of the PTZO to which they claim their damages theories are related.  Nevertheless, some relations can be discerned based on common sense. Plaintiffs' claims for: (1) lost profits from lost catering; (2) lost profits from limited hours; (3) lost profits from lost restaurant sales; (4) lost profits from small event hosting; and (5) lost profits from lost event hosting (large events and weddings); are tied to Plaintiffs' now-defunct claims for preemption, takings, and "agritourism" (*e.g.*, event hosting theories under a commercial speech label).

These damage theories are simply no longer relevant following the Court's resolution of various cross-motions for summary judgment. First, on February 29, 2024, the Court issued an Opinion and Order disposing of the parties' cross-motions for summary judgment on Plaintiffs' preemption claims. (ECF No. 525). In that opinion, the Court concluded the Township was immune from Plaintiff's claims for monetary damages under their preemption theory.  Plaintiffs "are unable to collect money damages from Count VIII."  (*Id*. at PageID.21136).

In light of this Court's ruling on the preemption claims, Plaintiffs' damages theory for claims based on preemption – including hours of operation, restaurants, and catering – are no longer viable and there is no basis for recovery under those theories at trial.  Nevertheless, Plaintiffs have attempted to pivot these damages to their now-defunct regulatory takings claim. In previous briefing, Plaintiffs argued:

> [T]he Wineries have asserted a regulatory taking . . . asserting that the Winery
> Ordinances have operated as a taking of their rights to operate restaurants, keep

31

certain hours of operations, cater, and play amplified music as allowed by their Wine Maker and Small Wine Maker Licenses and the Michigan Liquor Control Code. [ECF No. 521, PageID.20933].

On April 5, 2024, the Court issued a further omnibus ruling resolving the remaining cross-motions for summary judgment on the Constitutional claims.  (ECF No. 559).  In that opinion, the Court addressed Plaintiffs' regulatory takings claim: "Plaintiffs assert a regulatory taking claim under *Penn Central*.  Plaintiffs maintain that the PTZO operates as a taking of their rights to operate restaurants, keep certain hours of operation, cater, and play amplified music pursuant to their Wine Maker and Small Wine Maker licenses . . . ."  (*Id.* at PageID.21913). The Court's ruling on regulatory takings fully resolved Plaintiffs' last potential basis for any damages based on hours of operation, restaurants, and catering.  As this Court reasoned, "There is no precedent for recognizing a liquor license as a property interest protected by the Takings Clause."  (*Id.* at PageID.21914). The Court concluded that "PTP is entitled to summary judgment on Plaintiffs' regulatory takings claims."  (*Id.* at PageID.21915).

Moreover, in its most recent Order, the Court disposed of Plaintiffs' First Amendment commercial speech claim that they are entitled to host events based on the claim that event hosting constitutes "agritourism." The Court noted that agritourism, "is about staging events where the Wineries can turn a profit.  It is certainly commercial, but it is not clear that agritourism is speech." (ECF No. 559, PageID.21905). This is critical because, at base, Plaintiffs want to parlay agritourism, and therefore, alleged commercial speech, into the ability to host events, both large and small. As the Court noted, hosting events is about Plaintiffs trying to turn a profit; not necessarily engaging in protected conduct.

The Court rejected the argument. As the Court concluded, "Plaintiffs' relevant conduct, agritourism, contains insufficient elements of speech, if any . . . sections 6.7.2(19)(a) and

8.7.3(10)(u)(2)(d) . . . do not implicate First Amendment protection." (*Id.* at PageID.21906). As such, two of Plaintiffs' significant remaining damages theories from Mr. Larson's report relate to alleged lost profits from hosting both large and small events. The Court's conclusion that event hosting is not protected by the First Amendment precludes Plaintiffs' ability to recover damages for those theories.

At best, a limited subset of Plaintiffs may attempt to present evidence of damages based on increased grape costs and lost profits from merchandise sales. Those Plaintiffs are unable to prove their damages case. Plaintiffs challenged provisions that authorized additional winery land uses and additional guest services and retail sales to generate additional revenue streams for wineries in the A-1 district. Trial proofs will confirm Plaintiffs are unable to prove the cause of each claimed injuries is the challenged zoning provisions. The proofs at trial will demonstrate that Plaintiffs rely on nothing more than speculation and conjecture in alleged support of their damages. The proofs will also demonstrate, as discussed *supra* that for most Plaintiffs, their laches bars the recovery of any damages.

## 2. *Injunctive Relief*

For each count Plaintiffs pleaded, they requested the Court to "[e]njoin Peninsula Township, its employees, officers, and agents, from enforcing the Winery Ordinances permanently and preliminarily while this litigation is pending." (ECF 29, PageID.1119-1127) While the Court denied preliminary injunction, it did just as Plaintiffs requested in its June 2022 summary judgment order. (ECF 34, ECF 162, PageID.6029) On appeal, reflecting PTP's intervention and the injunction's insufficient specificity under Fed. R. Civ. P. 65(d), the Sixth Circuit vacated that injunction. (ECF 251) In December 2022, Peninsula Township adopted Amendment 201 to the PTZO, which had the effect of repealing those sections of the PTZO at issue in this trial. Peninsula

33

Township moved to dismiss Plaintiffs' request for injunctive relief request as moot, but the Court denied the motion "because the 'repealed' ordinances are still in effect through the individual SUPs." (ECF 518, PageID.20738)

Heading into trial, Plaintiffs propose injunctive relief in two parts. *First*, they reiterate their request consistent with what they pleaded in their Complaint, plus nominal specificity:

> This Court should enjoin Peninsula Township from enforcing any section of the Winery Ordinance that is unconstitutional or contrary to law. That injunction should identify specific provisions of the Winery Ordinances and state that the Township may not enforce them against the Wineries.

(ECF 573, PageID.22387) *Second*, they invite the Court to "declare the Wineries' rights to engage in reasonable uses moving forward." (ECF 573, PageID.22388-22389) They expound as follows:

> These reasonable uses include: include: (1) catering; (2) operating restaurants; (3) playing amplified music; (4) hosting small and large events like weddings, bridal showers, and retirement parties without regard for whether the group attending the event is agricultural or a Grand Traverse County non-profit; (5) advertising their businesses; (6) sourcing grapes, juice, and bottled wine from outside of Peninsula Township without limit; (7) selling merchandise; (8) staying open until 2:00 a.m.; and (9) engaging in any other generally accepted agricultural activities. Further, to the extent that the activities the Wineries seeks to engage in are included in Michigan's Right to Farm Act and its promulgated GAAMPs, this Court should declare that the Township cannot interfere with those activities. Finally, to the extent the activities the Wineries seek to engage in are accessory uses typical at Michigan wineries, the Court should declare that the Township cannot interfere with those activities.

Neither is proper, for different reasons as discussed below. The first section addresses the legal standards for the issuance of any permanent injunction. The second section summarizes why Plaintiffs' first-requested injunction – enjoining enforcement of unconstitutional provisions – would be meaningless after Amendment 201. The third section addresses why the remedy implied by the Court in rejecting the Township's mootness argument – winery-specific injunctive relief

tied to their land use permits – is unsupported and complicated. The fourth section addresses Plaintiffs' second-requested injunction – declaring Plaintiffs may conduct new uses and activities.

(a) <u>Legal standards for injunctive relief</u>

The Court must apply a four-factor test to ascertain whether a permanent injunction should be granted against any of the Township's zoning ordinance provisions at issue in this case. *eBay Inc v. MercExchange, LLC*, 547 US 388, 391 (2006). Plaintiffs must demonstrate:

1. That it has suffered an irreparable injury;
2. That remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
3. That, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
4. That the public interest would not be disserved by a permanent injunction.

*Id*. (citations omitted); *see also Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022) (factors for injunctive relief include, *inter alia*, consideration whether issuance would cause substantial harm to others, whether public interest served by issuance) (internal quotations and citations omitted).

These factors are particularly significant in this case because the PTZO's primary purpose is protecting the community's public health, safety and welfare. *See Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (citation omitted).

Injunctive relief against public officials should be no broader than necessary to remedy the constitutional violation. *See Knop v. Johnson,* 977 F.2d 996, 1008 (6th Cir. 1992) (courts may not appropriately tell state corrections department how to strike balance between competing interests; "[f]undamental precepts of comity and federalism admit of no other rule") (citation omitted);

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 16 (1971) ("The task is to correct, by a

balancing of the individual and collective interests, the condition that offends the Constitution.").

In addition to satisfying these standards, an injunction must also satisfy the specificity

requirements of Rule 65(d), which provides:

> (d) CONTENTS AND SCOPE OF EVERY INJUNCTION AND RESTRAINING ORDER.
> > (1) *Contents*. Every order granting an injunction and every restraining order must:
> > > (A) state the reasons why it issued;
> > > (B) state its terms specifically; and
> > > (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.
> > (2) *Persons Bound*. The order binds only the following who receive actual notice of it by personal service or otherwise:
> > > (A) the parties;
> > > (B) the parties' officers, agents, servants, employees, and attorneys; and
> > > (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. 65(d). The Sixth Circuit explained these standards in *WOMP II:*

> These "are no[t] mere technical requirements," *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974) (per curiam); they serve the "'important' functions" of "prevent[ing] uncertainty and confusion" on those enjoined and enabling reviewing courts to determine the scope of its review, *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (quoting *Schmidt*, 414 U.S. at 476). Thus, "an injunction must be couched in specific and unambiguous terms, such that 'an ordinary person reading the court's order [is] able to ascertain from the document exactly what conduct is proscribed.'" *Id.* (alteration in original) (quoting *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016)). "An injunction order is typically vacated when it violates this standard." *Id.*

*WOMP v. Peninsula Township*, 2022 U.S. App. LEXIS 23575 (6th Cir. 2022) (*WOMP II*) (ECF

251, PageID.8982).

Other equitable considerations are also relevant to whether certain Plaintiffs are entitled to

injunctive relief, including unclean hands, laches and estoppel, and others. *Scherer Design Grp,*

*LLC v. Ahead Eng'g LLC*, 764 Fed. Appx. 147, 149-151 (3rd Cir. 2019) ("The unclean hands

doctrine is not an automatic or absolute bar to relief; rather, it is only one of the factors the court must consider when deciding whether to exercise its discretion and grant an injunction.") (internal quotations and citations omitted); *McKeon Prods. v. Howard S. Leight & Assocs.*, 15 F.4th 736, 741 (6th Cir. 2021) (equitable remedies are susceptible to equitable defenses, including laches); *WOMP II*, *supra*, at *9 (noting laches may preclude injunctive relief and considering that Defendants may demonstrate that Plaintiffs significant delay caused them prejudice); *Nartron*, 305 F.3d at 412 (to defeat injunctive relief on basis of laches, "a defendant must also prove elements of estoppel which requires more than a showing of mere silence on the part of a plaintiff; defendant must show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment  of the trademark.") (internal quotation and citation omitted)

(b) Enjoining enforcement of specific zoning provisions is an empty act.

Plaintiffs' invitation to enjoin the Township from enforcing specific zoning provisions is an improper remedy. It is not clear that merely identifying invalid zoning provisions would cure the Rule 65(d) deficiencies in the Court's orders enjoining certain ordinance provisions. But even if it were technically sufficient, it would be ineffective because all the zoning provisions were repealed and are no longer in effect in the PTZO. "'Generally, when an ordinance is repealed any challenges to the constitutionality of that ordinance become moot.'" *Tini Bikinis-Saginaw, LCC v. Saginaw Chater Twp.,* 836 F.Supp.2d 504, 519 (E.D. Mich. 2011) (quoting *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000)). While the repeal of challenged ordinances does not impact claims for money damages, it does moot claims for declaratory and injunctive relief. *Tini-Bikinis*, 836 F.Supp.2d at 520 (citing *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) ("We can neither declare unconstitutional nor

enjoin the enforcement of a provision that is no longer in effect.")); *see also Int'l Outdoor, Inc. v. City of Troy*, 361 F.Supp.3d 713 (E.D. Mich. 2019) (rejecting claims for declaratory and injunctive relief as moot given amendment to challenged ordinance). As the *Tini-Bikinis* court reasoned, declaring a repealed ordinance void and/or enjoining its enforcement would be an empty act. 836 F.Supp.2d at 520 ("In the vernacular, declaring it void would be as meaningful as shooting a dead horse. And enjoining its enforcement, moreover, would be shooting the horse once again.").

Though the Court in ECF 518 recognized it could not enjoin a repealed ordinance, Plaintiffs continue to invite the Court to perform that empty act – to shoot the dead horse again. The Township has *already* acted and has *already* amended the allegedly infringing provisions of the PTZO by enactment of Amendment 201. For the same reasons discussed in *Tini-Bikinis*, enjoining the Township from enforcing repealed sections makes no sense since they are no longer operative.

### (c) Plaintiffs do not seek winery-specific injunctive relief, and providing such relief would require proofs Plaintiffs failed to muster.

In denying the Township's motion to dismiss injunctive relief due to mootness, the Court noted that challenged provisions remain operative through individual SUPs. (ECF 518, PageID.20738) Theoretically, post-Amendment 201, injunctive relief might enjoin the Township from enforcing invalid zoning provisions that remain operative for individual Wineries through SUPs and land use approvals. However, Plaintiffs never requested winery-specific injunctive relief. Plaintiffs treated individual land use approvals and SUPs as nonrelevant throughout their pleadings, discovery, and dispositive briefing. They produced deficient evidence about land use authorizations – incomplete permits, superseded SUPs, no evidence of satisfying SUP conditions, and no site plans, among other deficiencies. Three Wineries (Two Lads, Black Star, Tabone) were never authorized by Special Use Permit – the Farm Processing Facility use was by right. Plaintiffs

bear the burden to prove what adequate equitable remedy lies with this Court. Their proofs are insufficient to identify what Township acts would be restrained relative to each land use approval to satisfy Rule 65(d). In sum, Plaintiffs cannot prove necessary facts to support injunctive relief targeting operative provisions in individual land use approvals.

Injunctive relief enjoining invalid provisions from the PTZO or from winery-specific land use approvals would be further complicated by severability considerations – whether invalidated provisions can be effectively severed from the PTZO and Special Use Permits. In determining severability, courts must perform a two-step analysis. "First, Michigan courts consider whether the Legislature expressed that the provisions at issue were not to be severed from the remainder of the act. If it did not then courts must determine whether the unconstitutional portions are so entangled with the others that they cannot be removed without adversely affecting the operation of the act." *Int'l Outdoor, Inc v. City of Troy*, 77 F.4th 432, 437-438 (6th Cir. 2023). Imprecision in Plaintiffs' challenges – *e.g.*, what part of retail merchandise provisions regulate commercial speech – combined with the breadth of challenges to provisions integral to winery land uses make severability a ripe concern and one Plaintiffs ignore.

Another complication with crafting winery-specific injunctive relief enjoining interference in future land uses relates to the scope of each Plaintiffs' vested rights (if any) in now-nonconforming uses. *See* MCL 125.3208(1) (use of building, structure or land lawful at time of zoning ordinance enactment or amendment may continue although the use does not conform to the zoning ordinance or amendment). Plaintiffs claiming vested rights in winery uses that became nonconforming post-Amendment 201 presented insufficient proofs to determine the scope of such vested rights. *See Dusdal v. Warren*, 387 Mich. 354, 359; 196 N.W.2d 778 (1972) ("A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner in which

it was used prior to the adoption of a zoning ordinance."); *Bloomfield Twp v. Beardslee*, 349 Mich. 296, 307-308; 84 N.W2d 537 (Mich. 1957) (whether rights in a particular use became "vested" is non-formulaic; "[e]ach case must stand on its own facts;" "that the owner has a 'vested' right in some particular use, involves a balancing of factors, a determination as to whether the owner's interest is so substantial that its destruction cannot reasonably be justified in the light of the accomplishment of the objectives of the ordinance."); *326 Land Co, LLC v. City of Traverse*, 2023 U.S. Dist. LEXIS 70351 *15 (W.D. Mich. April 21, 2023) (quoting *Beardslee, supra*). It is dubious any rights vested in provisions never actually exercised by an individual Winery. Plaintiffs provided insufficient proofs to determine each Winery's vested rights in non-conforming uses.

Related to assessing the scope of each Winery's vested rights in nonconforming uses is the principle that "[n]onconforming uses may not generally be expanded, and one of the goals of local zoning is the gradual elimination of nonconforming uses." *Edw. C Levy Co. v. Marine City Zoning Bd of Appeals*, 293 Mich. App 333; 810 N.W.2d 621 (2011). The PTZO provides that non-conforming use can only be extended "throughout such building, provided no structural changes be made therein except those required for safety and sanitation." PTZO 7.5.1. Winery-specific injunctive relief would need to identify the scope of vested rights with specificity to guard against their future expansion.

Additional challenges arise because 7 of the 11 Wineries are lessees and do not own the parcel upon which their winery is located.[12] Zoning authorizes land uses and nonconforming uses that attach to the parcel and run with the land. MCL 125.3208(1); *Bench Billboard Co. v. City of Covington*, 465 F. App'x 395, 411 (6th Cir. 2012) ("The right to continue a nonconforming property use is a vested property right. ... [it] is not a personal right but one that runs with the

---

[12] The lessee-Plaintiffs are Black Star, Bonobo, Bowers Harbor, Brys, Peninsula Cellars, Tabone, and Two Lads.

land.") (quoting 101A C.J.S, Zoning & Land Planning § 160)); *Heath Twp. v. Sall,* 442 Mich. 434, 439; 502 N.W.2d 627 (1993). Determining the scope of vested rights in non-conforming uses and enjoining future interference with them may implicate rights of non-party property owners.

Each Plaintiff must also demonstrate that the four injunction factors discussed above support enjoining parts of its respective land use approvals. This requires considering potential harmful impacts to the Township's Master Plan and PTZO zoning framework, compatibility of land uses, the Township's future land use goals, and the interests of the Township, its residents, farmers, PTP members, and others. Plaintiffs must also overcome equitable considerations such as evidence of self-help and prejudicial delays.

Defendants provide two examples why injunctive relief enjoining parts of each Winery's land use authorizations is fact-intensive and complicated. The Court found subparts of Section 8.7.3(10)(u), authorizing Guest Activity Uses (GAUs) invalid and the term "Guest Activity" unconstitutionally vague. Declaring GAU provisions unconstitutional voids those provisions *ab initio*. *See Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135, 144-45; 253 N.W.2d 114 (1977) ("The general rule is that an unconstitutional statute, though having the form and name of law, is, in reality, no law but is wholly void and ineffective for any purpose since unconstitutionality dates from the time of its enactment and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed."). Striking Section 8.7.3(10)(u) or subsections of it from the PTZO is meaningless because the Township repealed them. Striking Section 8.7.3(10)(u) or subsections of it from an SUP is complicated. Consider Mari, which is authorized by SUP #126 to host GAUs and historically hosted GAUs regularly. Invalidating all GAU provisions in SUP #126 would mean Mari had no permission to host GAUs, notwithstanding that Mari would claim it has some vested

41

rights in GAUs, though the scope of its vested rights is undetermined. Striking parts of Section 8.7.3(10)(u) from SUP #126 also raises severability issues – can parts of Section 8.7.3(10)(u) be removed or are they so entangled with other parts that removing them affects more than the invalid parts. Striking Section 8.7.3(10)(u) in whole or part from SUP #126 would not authorize *new* accessory or support uses such as for-hire events, restaurants, bars, late hours, or catering – Plaintiffs never pled nor can they present a proper case for such sweeping injunctive relief, which would also fail the four injunction factors.

Similar issues arise when other provisions are considered from the lens of injunctive relief. For Farm Processing Facilities, the Court declared parts of Section 6.7.2(19) violate the dormant Commerce Clause. (ECF 162, 301, 319) Those provisions are no longer in effect. The Farm Processing Facility land use allowed retail uses related to wine because of its relationship to agricultural production and the fact that the grapes were grown locally and processed on the site. Injunctive relief condoning commercial retail sales of wine and other products wholly divorced from any connection to agricultural production and farming would expand vested rights, contravene injunction factors, and expand the remedy beyond any constitutional violation.

Even if enjoining PTZO provisions and determining severability could be done at the 30,000-foot level (which Defendants dispute), Plaintiffs failed to develop the record to support a winery-by-winery analysis of the scope of any vested rights and application of equitable injunction factors for each individual winery under its zoning approvals and historic uses. No injunctive relief can be awarded on Plaintiffs' First-Amended Complaint based on the anticipated proofs each intends to offer at trial.

(d) <u>The Court cannot declare Plaintiffs are entitled to new land uses.</u>

Rather than requesting winery-specific injunctive relief, Plaintiffs ask the Court to declare their collective right to engage in "reasonable uses," like late hours, for-profit events, restaurants, and more. Plaintiffs never requested such injunctive relief in their pleadings. (ECF 528, PageID.21270, "Plaintiffs seek a Court order striking down portions of the PTZO.") Such an injunction would far exceed the scope of constitutional violations Plaintiffs may prove. Plaintiffs' proposal also suffers the challenges outlined above – lack of proofs, missing parties, expansion of non-conforming uses, and disregard of permanent injunction and other equitable factors. Authorizing such expansive land uses in the A-1 Agricultural district would undermine the Master Plan, the PTZO, and the Township interests the PTZO advances.

Plaintiffs' request appears to rest on a false premise – that the invalidation of challenged zoning would allow them to engage in more expansive land use, where just the opposite is true. Each challenged zoning provision was permissive, not prohibitive. Without those provisions, the PTZO authorized fewer land uses and accessories. *See Pittsfield v. Malcolm*, 375 Mich. 135, 142-43; 134 N.W.2d 166 (1965) ("Under the ordinance which specifically sets forth permissible uses under each zoning classification, therefore, absence of the specifically stated use must be regarded as excluding that use."); *Independence Twp. v. Shibowski*, 136 Mich. App. 178; 355 N.W.2d 903 (1984) ("A permissive format states the permissive uses under the classification, and necessarily implies the exclusion of any other non-listed use."); *Dezman v. Charter Twp. of Bloomfield*, 997 N.W.2d 42 (Mich. 2023) (same). With respect to their dormant Commerce Clause and Due Process claims, Plaintiffs have succeeded in invalidating zoning that expanded the scope of winery accessory and support uses in A-1.

What Plaintiffs want is revised winery zoning. Michigan courts recognize zoning is a legislative function for elected boards, not courts:

> In view of the frequency with which zoning cases are now appearing before this Court, we deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle: **this Court does not sit as a superzoning commission**. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: **It is not our function to approve the ordinance before us as to wisdom or desirability**. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises. As Willoughby phrased it in his treatise, Constitution of the United States (2d ed, 1929), vol 1, § 21, p 32: "The constitutional power of a law-making body to legislate in the premises being granted, the wisdom or expediency of the manner in which that power is exercised is not properly subject to judicial criticism or control." We held similarly in *Tel-Craft Civic Association v. City of Detroit*, 337 Mich 326, 331:

>> "Unless it can be shown that the council acted arbitrarily or unreasonably, their determination is final and conclusive and no court may alter or modify the ordinance as adopted.

>> "'While it is within the province of the courts to pass upon the validity of statutes and ordinances, **courts may not legislate nor undertake to compel legislative bodies to do so one way or another**. (Citing cases.) The court erred in seeking to compel the defendant mayor and city commission members to amend the ordinance.' *Northwood Properties Co. v. Royal Oak City Inspector*, 325 Mich 419, 423.

>> "'The ultimate power is vested in the council, and its good faith in acting for the public welfare cannot be questioned by the judicial branch of government.' *Gratton v. Conte*, 364 Pa 578, 583 (73 A2d 381, 384)."

*Brae Burn, Inc. v. City of Bloomfield Hills,* 350 Mich. 425, 430-32; 86 N.W.2d 166 (1957). Deciding whether event centers, restaurants, and more are reasonable uses in the Agricultural District is the legislative role of the Township, not the judicial role of this Court.

Plaintiffs have invoked *Schwartz v. City of Flint* to support their preferred injunction. 426 Mich. 295, 395 N.W.2d 678 (1986). That case considered the appropriate remedy where continued application of a zoning classification to a particular parcel constituted an unconstitutional taking. The *Schwartz* plaintiff sought rezoning of a parcel from agricultural to commercial. *Id.* at 300. After the township refused, Schwartz sued to declare the agricultural classification unconstitutional as applied to his parcel. The appellate court held the agricultural classification as applied to Schwartz's parcel was an unconstitutional taking. *Id.* at 301 (citation omitted). Under then-prevailing precedent for remedial relief in such circumstances, the lower court accepted proposals and crafted land uses it considered appropriate for the parcel. *Id.* at 303. The Michigan Supreme Court overruled that approach "as an improper usurpation by the judiciary of a legislative function." *Id.* at 305. After discussing constitutional separation of powers, it rejected "judicial zoning" because courts should not determine "the best use of the land." *Id.* at 307 (citation omitted). Courts determine unconstitutionality, but the judiciary may not "guarantee a replacement for an unconstitutional ordinance." *Id.* at 308. Granting appropriate relief should not inject courts "into the legislative realm." *Id.* at 314-16. *Schwartz* thus affirmed the longstanding principle that zoning is legislative and the judicial role is limited.

Then *Schwartz* adopted the "specific reasonable use" rule for takings cases: after finding a zoning *classification – e.g.*, agricultural – unconstitutional as applied to a particular parcel, to avoid leaving the parcel "unzoned," the court may declare the specific reasonable use based on the plaintiff's proofs. *Id.* at 321-29; *see Hendee v. Putnam Twp.*, 486 Mich. 556 n. 29; 786 N.W.2d

521 (2010) ("Under *Schwartz*, [] the trial court had the power to grant injunctive relief permitting a [manufactured housing community] use *only if the ordinance's classification of the property was unconstitutional*") (emphasis added). Michigan courts use the *Schwartz* "specific reasonable use" rule where the municipality's refusal to rezone a parcel to a different zoning classification was unconstitutional and the proponent proved the reasonableness of its proposed rezoning based on parcel-specific evidence. *Pulte Land Co. v. Alpine* Twp., 2006 Mich. App. LEXIS 2641 (Sept 12, 2006); *Wolters Realty v. Saugatuck*, 2005 Mich. App. LEXIS 2608 (Oct 25, 2005); *Grand/Sakawa Macomb Airport v. Macomb Twp.*, 2005 Mich. App. LEXIS 1398 (June 7, 2005). None involved judicial creation of new land uses for multiple parcels in an existing zoning district, as Plaintiffs request.

Plaintiffs cannot prove they are entitled to injunctive relief declaring their proposed activities are reasonable land uses in A-1.

### F.  Plaintiffs' "Admissions and Concessions" Theory

Plaintiffs identify the following as an "issue remaining for trial":

> **Whether the Winery Ordinances prohibit Wineries from hosting weddings, wedding receptions and family reunions and whether the Winery Ordinances contain a closing time for winery tasting rooms?**

> For years Peninsula Township prohibited the Wineries from hosting weddings but in this case has admitted that the Winery Ordinances do not in fact contain such a prohibition. Further, Peninsula Township has historically imposed a restriction on the Wineries that they must close their tasting rooms by 9:30 p.m., daily. Peninsula Township and PTP now conceded that no such restriction exists. ECF No. 159, PageID.5884-5885, ECF No. 356, PageID.12966.

(ECF 573, PageID.22384) The first citation here is the former Township Attorney's oral argument on summary judgment motions on April 22, 2022. (ECF 159) The second citation is PTP's preemption cross-motion for summary judgment. (ECF 356)

These supposed "concessions" and "admissions" are not evidence relevant to any live trial issues. (ECF 525, resolving operating hours preemption claim; ECF 559, resolving operating hours regulatory takings claim and events-for-hire as speech through "agritourism" argument) The Court has rejected Plaintiffs' claims about hours of operations and events-for-hire. Undeterred, Plaintiffs persevere.

These are not real "claims"; they are not even legal theories that are tied to any pleaded claim. What Plaintiffs propose to rely on at the time of trial is not even evidence. It is not clear what these "claims" are or how they belong in this case, let alone how they are an issue remaining for trial.  In the interest of a complete brief, Defendants address them summarily.

Plaintiffs know very well that the PTZO does not authorize wineries in the A-1 district to host wedding receptions, family reunions, and other events for hire; that's mostly why they brought this lawsuit. Nothing the former Township attorney said in oral argument could change the PTZO. Same for anything the former Township Supervisor said in deposition – he cannot unilaterally change the PTZO.

As for closing hours for winery tasting rooms, the PTZO is a public document. Plaintiffs have been free to read the zoning ordinance and see that it contains no closing time. Plaintiffs voluntarily closed their doors much earlier than 9:30 p.m. and presented no evidence the Township forced them to close at 9:30 p.m.

 Whatever the former Township attorney or PTP or anyone else "admitted" or "conceded" about the PTZO cannot have the effect of undoing or modifying a lawfully enacted zoning

47

ordinance. *See 46th Circuit Trial Court*, 266 Mich. App. at 161; *Stevenson*, 26 Mich at 46-47, discussed *supra*.

These are not judicial admissions. *See MacDonald v. GMC*, 110 F.3d 337, 340-41 (6th Cir. 1997) ("Determinations of negligence and proximate causation require the application of rules of law to complex factual patterns. Judicial admissions, in contrast, typically concern only matters of fact."); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 394-95 (6th Cir. 2007) (court erred by treating legal conclusions interpreting law as judicial admissions).

None of these speakers was authorized to interpret or enforce the PTZO. *See Lemaster v. Lawrence County*, 65 F.4th 302 (6th Cir. 2022) (municipality only responsible for decisions of officials with delegated authority to make those decisions); PTZO §§ 4.1.1, 4.1.2 (Zoning Administrator and Ordinance Enforcement Officer administer and enforce PTZO).

## IV.    CONCLUSION

Plaintiffs cannot carry their burden at trial on their remaining First Amendment claims. Further, no Plaintiff can prove it is entitled to legal or equitable relief on the claims resolved in its favor, whether in summary judgment or at trial. For these reasons and as discussed above, Defendants respectfully request this Court enter final judgment in their favor.

Respectfully submitted,

Date:    April 23, 2024              By:    /s/ Tracy Jane Andrews
                                            Tracy Jane Andrews (P67467)
                                            Law Office of Tracy Jane Andrews, PLLC
                                            Attorney for Intervener
                                            420 East Front Street
                                            Traverse City, MI 49686
                                            (231) 946-0044
                                            tja@ tjandrews.com

48

Date:   April 23, 2024          By:   /s/ Holly L. Hilyer
                                      Holly L. Hillyer (P85318)
                                      *Troposphere Legal, PLC*
                                      Co-Counsel for Intervenor-Defendant
                                      420 East Front Street
                                      Traverse City, MI 49686
                                      (231) 709-4709
                                      holly@tropospherelegal.com


Date:   April 23, 2024          By:   /s/ Thomas J. McGraw
                                      Thomas J. McGraw (P48817)
                                      *McGraw Morris, P.C.*
                                      Attorneys for Defendant
                                      44 Cesar E. Chavez Ave. SW
                                      Suite 200
                                      Grand Rapids, MI 49503
                                      (616) 288-3700
                                      tmcgraw@mcgrawmorris.com


Date:   April 23, 2024          By:   /s/ Bogomir Rajsic III
                                      Bogomir Rajsic, III (P79191)
                                      *McGraw Morris, P.C.*
                                      Attorneys for Defendant
                                      44 Cesar E. Chavez Ave. SW
                                      Suite 200
                                      Grand Rapids, MI 49503
                                      (616) 288-3700
                                      brajsic@mcgrawmorris.com

49