UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

        Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal Corporation,

        Defendant,

And

PROTECT THE PENINSULA,

        Intervenor-Defendant.

Case No.:  1:20-cv-1008-PLM
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

**BRIEF IN SUPPORT OF DEF. PENINSULA TOWNSHIP'S MOTION TO STAY ENFORCEMENT AND WAIVE BOND ON APPEAL**

**\*\*ORAL ARGUMENT REQUESTED\*\***

| | |
|---|---|
| Joseph Mikhail Infante (P68719)<br>Stephen Michael Ragatzki (P81952)<br>Christopher James Gartman (P83286)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>99 Monroe Avenue NW, Ste 1200<br>Grand Rapids, MI 49503<br>(616) 776-6351<br>ragatzki@millercanfield.com<br>gartman@millercanfield.com<br>infante@millercanfield.com<br><br>Barry Kaltenbach<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>227 Monroe Street, Ste 3600<br>Chicago, IL 60606<br>(312) 460-4200<br>kaltenbach@millercanfield.com | Thomas J. McGraw (P48817)<br>McGRAW MORRIS P.C.<br>Attorneys for  Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000)<br>tmcgraw@mcgrawmorris.com<br><br>Bogomir Rajsic, III (P79191)<br>Tracey R. DeVries (P84286)<br>McGRAW MORRIS P.C.<br>Attorneys for Defendant<br>44 Cesar E. Chavez Avenue, SW, Suite 200<br>Grand Rapids, MI  49503<br>(616) 288-3700/Fax (248) 502-4001<br>brajsic@mcgrawmorris.com<br>tdevries@mcgrawmorris.com |
| Scott Robert Eldridge (P66452)<br>MILLER CANFIELD<br>Attorneys for Plaintiffs<br>One E. Michigan Avenue, Ste 900<br>Lansing, MI 48933<br>(517) 487-2070<br>eldridge@millercanfield.com | William K. Fahey (P27745)<br>Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>Steven R. Baker (P83153)<br>FAHEY SCHULTZ PLC<br>Attorneys for Defendant<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>wfahey@fsbrlaw.com<br>cpatterson@fsbrlaw.com<br>jbrennan@fsbrlaw.com<br>sbaker@fsbrlaw.com |

|  | Tracy Jane Andrews (P67467) <br> Holly L. Hillyer (P85318) <br> TROPOSPHERE LEGAL <br> Attorneys for Intervenor <br> 619 Webster Street <br> Traverse City, MI 48686 <br> (231) 714-9402 <br> tracy@tropospherelegal.com <br> holly@tropospherelegal.com |
|---|---|

**BRIEF IN SUPPORT OF DEFENDANT PENINSULA TOWNSHIP'S MOTION TO STAY ENFORCEMENT OF JUDGMENT AND WAIVE BOND ON APPEAL**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
I.   INTRODUCTION ........................................................................................................... 1
II.  THE COURT SHOULD STAY ENFORCEMENT OF THE JUDGMENT AND WAIVE ANY BOND REQUIREMENT. ...................................................................................... 1
   A.  The Township's Ability to Pay the Judgment is so Plain that Requiring it to Pay for a Bond Would be a Waste of Money. ................................................................................ 4
   B.  Requiring the Township to Post a Full Supersedeas Bond Would Affect its Other Creditors – Principally Its Citizens. ................................................................................ 8
RELIEF REQUESTED ............................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad-Paramount Theatres, Inc.*, 87 S. Ct. 1; 17 L.Ed.2d 37 (1966) .................................................................................................................................... 2
*Arban v. West Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003) ........................................................ 2, 3
*Bond v. Sheriff of Ottawa Co.*, 2024 WL 2014725 (May 7, 2024) ........................................... 7, 8
*Cohen v. Metro. Life Ins. Co.*, 334 Fed. Appx. 375 (2d Cir. 2009) .............................................. 2
*Gabovitch v. Lundy*, 584 F.2d 559 (1st Cir. 1978) ....................................................................... 4
*Gillispie v. City of Miami Twp.*, 2024 WL 897592 (N.D. Ohio, March 1, 2024) ...................... 10
*Hamlin v. Charter Twp. Of Flint*, 181 F.R.D. 348 (E.D. Mich. 1998) ........................................ 2
*Moore v. Townsend*, 577 F.2d 424 (7th Cir. 1978) ...................................................................... 2
*NLRB v. Westphal*, 859 F.2d 818 (9th Cir. 1988) ........................................................................ 2
*Northern Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265 (7th Cir. 1986) .......... 3
*Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794 (7th Cir.1986) ............ 3, 8
*Payton v. Highland Park*, 211 Mich. App. 510; 536 N.W.2d 285 (1995) ................................ 4, 6
*Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979) .................................................................................................................................... 2
*Pucci v. Somers*, 834 F. Supp. 2d 690  (E.D. Mich. 2011) .......................................................... 2
*Roosevelt Park v. Norton Twp.*, 330 Mich. 270; 47 N.W.2d 605 (1951) ....................... 4, 5, 6, 10

**Statutes**

MCL 600.6001 ............................................................................................................................... 5
MCL 600.6021(1) .......................................................................................................................... 6
MCL 600.6093 ...................................................................................................................... 4, 6, 8
MCL 600.6093(1) ...................................................................................................................... 4, 5

**Other Authorities**

https://www.nfp.com/property-and-casualty/coverage-expertise/commercial-and-contract-surety/surety/bonds-types/appeal-bond/ ...................................................................................... 8
https://www.oldmission.net/wp-content/uploads/2024/12/maner-costerisan-final-report-peninsula-township-structure-11-19-24.pdf .......................................................................... 9

**Rules**

Fed. R. Civ. P. 62 .......................................................................................................................... 2
Fed. R. Civ. P. 69(a)(1) ................................................................................................................. 4

I.   **INTRODUCTION**

On July 7, 2025, the Court issued its Bench Opinion following the 10+ days of trial in April to May, 2024. (ECF No. 623). In that Bench Opinion, the Court resolved the issues remaining for trial and awarded nearly $50 million in damages to the Plaintiffs against Peninsula Township (the "Township"). The Township intends to pursue an appeal and, therefore, moves to stay enforcement of the judgment (including the Court's judgment from July 7, 2025 and any subsequent relief as requested by Plaintiffs in their Rule 59(e) motion and their motion for attorneys' fees).

The Township requests that this Court exercise its discretion to stay enforcement of the judgment and waive any bond requirements on appeal. While enforcement of the judgment is truly within the hands of the Plaintiffs – and the Township has not received any indication that the Plaintiffs are willing to forgo enforcement of the judgment through the only means available to them by placing it on the Township's tax rolls – the Township seeks to preemptively protect its citizens through this motion. A stay is appropriate in this instance for two reasons. First, the Township's ability to pay the judgment is so plain that requiring a bond on appeal would be a waste of money. In Michigan, Plaintiffs' only method to enforce the judgment is through placing the judgment on the tax rolls and collecting from the Township's residents. So long as the Township exists and has taxpayers, the judgment will be satisfied. Second, requiring the Township to pay exorbitant bond premiums from its general fund while this matter is on appeal would affect its ability to provide services to its most important creditors – its citizens.

The Court should exercise its discretion and grant a stay of enforcement of the judgment and waive bond requirements while this matter is on appeal.

II.  **THE COURT SHOULD STAY ENFORCEMENT OF THE JUDGMENT AND WAIVE ANY BOND REQUIREMENT.**

1

Stays of enforcement as a matter of right are governed by Fed. R. Civ. P. 62. *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). Rule 62(b) provides that:

> At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

"A party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d)." *Am. Mfrs. Mut. Ins. Co. v. Am. Broad-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3; 17 L.Ed.2d 37 (1966). The purpose of Rule 62(b) is "to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed." *Cohen v. Metro. Life Ins. Co.*, 334 Fed. Appx. 375, 378 (2d Cir. 2009). On one hand, posting bond will permit an appealing party "'to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal.'" *Hamlin v. Charter Twp. Of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (quoting *Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)). On the other hand, a bond requirement insulates a "non-appealing party 'from the risk of a later uncollectible judgment' and 'provides compensation for those injuries which can be said to be the natural and proximate result of the stay.'" *Hamlin*, 181 F.R.D. at 351 (quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988); *Moore v. Townsend*, 577 F.2d 424, 427 (7th Cir. 1978)) (internal citations omitted). "Because of Rule [62(b)]'s dual protective role, a full supersedeas bond should almost always be required." *Hamlin*, 181 F.R.D. at 351 (internal citations omitted).

However, the bond requirements of Rule 62(b) have not been found to be inflexible. *Pucci v. Somers*, 834 F. Supp. 2d 690, 706-707 (E.D. Mich. 2011) (internal citation omitted). It is within the Court's discretion to waive the supersedeas bond requirement. In *Arban*, the Sixth Circuit held

2

that Rule 62 "entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right ... [h]owever, the Rule in no way necessarily implies that filing a bond is the only way to obtain a stay ... [i]t speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." 345 F.3d at 409.

The *Arban* panel reasoned, "The Seventh Circuit has noted that 'an inflexible requirement of a bond would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money.'" *Id.* (quoting *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir.1986)). In *Olympia*, the Seventh Circuit reasoned that courts have discretion to permit a stay secured by a reduced bond or no bond at all:

> where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and—the opposite case, one of increasing importance in an age of titanic damage judgments—where the requirement would put the defendant's other creditors in undue jeopardy.

786 F.2d at 796.

As Judge Richard Posner observed with characteristic flair in *Northern Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986), an appellant only needs a bond "if he wants an automatic stay, but not if he is content to throw himself on the district judge's discretion." Here, the Township is requesting that the Court exercise its discretion to stay enforcement of the judgment and to waive any bond on appeal for two reasons. First, because the Township's ability to pay the judgment is so plain that requiring a bond would be a waste of money. Plaintiffs' *only* means to enforce the judgment would be to place the judgment on the Township's tax rolls, where it would be collected through property tax revenues pursuant to statute. Second, requiring a supersedeas bond would result in significant bond premium payments

3

that would stretch the Township's already thin general fund and threaten its ability to provide services to its citizens – the most important creditors of the Township.[1]

    A. <u>The Township's Ability to Pay the Judgment is so Plain that Requiring it to Pay for a Bond Would be a Waste of Money.</u>

Under Fed. R. Civ. P. 69(a)(1):

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extend it applies.

"[T]he overall intent of Rule 69(a) is to limit both the procedure for obtaining process and the effect of writs to that available under state law." *Gabovitch v. Lundy*, 584 F.2d 559, 561 (1st Cir. 1978). "[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of [Rule 69(a)] expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule." *Id.* at 560-561.

The manner of enforcement is critical. The Township, by virtue of the judgment enforcement mechanisms laid out under Michigan law, has the present and future ability to satisfy the judgment – and that ability is plainly obvious. Michigan state law dictates the only plan for judgment collection that the Township must follow to ensure that the judgment is satisfied. Under Michigan law, the "sole remedy" for collecting a judgment against a township is provided by MCL 600.6093. *Payton v. Highland Park*, 211 Mich. App. 510, 513; 536 N.W.2d 285 (1995); *see also*

---

[1] The balance of the Township's general fund bears no relationship to its ability to satisfy the judgment – which is discussed at length *infra*. Rather, the judgment would be paid through its placement on the tax rolls and collection of taxes. *See* MCL 600.6093(1). Bond premiums would be paid with the Township's general fund. Plaintiffs cannot, as a matter of law, execute on the Township's general fund – or any other fund for that matter. *See Roosevelt Park v. Norton Twp.*, 330 Mich. 270; 47 N.W.2d 605 (1951). Plaintiffs' sole remedy for collection on the judgment rests with the statutory framework from MCL 600.6093.

*Roosevelt Park v. Norton Twp.*, 330 Mich. 270, 273; 47 N.W.2d 605 (1951) (reasoning that 1948 CL 624.5, a predecessor statute that was substantively similar to the current version of MCL 600.6093(1), provided "the sole remedy for the collection of a judgment against a township").

MCL 600.6093(1) provides:

> <u>Whenever judgment is recovered against any township</u>, village, or city, or against the trustees or common council, or officers thereof, in any action prosecuted by or against them in their name of office, <u>the clerk of the court shall, on the application of the party in whose favor judgment is rendered</u>, his attorney, executor, administrator, or assigns, <u>make and deliver to the party so applying a certified transcript of the judgment, showing the amount and date thereof, with the rate of interest thereon, and of the costs as taxed</u> under the seal of the court, if in a court having a seal. <u>The party obtaining the certified transcript may file it with the supervisor of the township, if the judgment is against the township</u>, or with the assessing officer or officers of the city or village, if the judgment is against a city or village. <u>The supervisor</u> or assessing officer <u>receiving the certified transcript or transcripts of judgment shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township</u>, city, or village <u>upon the then next tax roll of such township</u>, city, or village, without any other or further certificate than the certified transcript as a part of the township, city, or village tax, <u>adding the total amount of the judgment to the other township</u>, city, or village <u>taxes and assessing it in the same column with the general township</u>, city, or village <u>tax</u>.
>
> The supervisor or assessing officer shall set forth in the warrant attached to the tax roll each judgment separately, stating the amount thereof and to whom payable, and it shall be collected and returned in the same manner as other taxes. The supervisor or assessing officer, at the time when he delivers the tax roll to the treasurer or collecting officer of any township, city, or village, shall deliver to the township clerk or to the clerk or recording officer of the city or village, a statement in writing under his hand, setting forth in detail and separately the judgment stating the amount with costs and interest as herein provided, and to whom payable. The treasurer or collecting officer of the township, city, or village, shall collect and pay the judgment to the owner thereof or his attorney, on or before the date when the tax roll and warrant shall be returnable. [emphasis added].

Because of its status as a township, Plaintiffs do not have access to all the usual methods for collecting on a judgment were it not a municipality. For example, a party may ordinarily collect by seeking execution on a judgment, MCL 600.6001, but an execution may not be obtained on a

5

judgment against a township. *See* MCL 600.6021(1). Garnishment also is not available as a means for collecting a judgment against a municipality. *See Roosevelt Park*, 330 Mich. at 272-274.

The Michigan Supreme Court in *Roosevelt Park* explained as follows:

> The courts are practically unanimous in holding that the funds or credits of a municipality or other public body exercising governmental functions, acquired by it in its governmental capacity, may not be reached by its creditors by execution under a judgment against the municipality, or by garnishment served upon the debtor or depository of the municipality.
>
> The basis for this rule is that municipal funds constitute a trust fund for the accomplishment of certain municipal functions; that to subject municipal funds to levy of execution and garnishment would restrict, thwart and interfere with the proper and orderly functioning of the municipal governmental machinery; and that to allow an individual municipal creditor to reach municipal funds for the satisfaction of his claim would effect a preference in favor of such creditor to the prejudice of other creditors and to the ultimate prejudice of the credit of the municipality.
>
> A township is a municipal corporation and as such an instrumentality of the State for purposes of local government. Township funds are in the nature of trust funds and are placed for disposition in accordance with appropriations previously made. Public policy forbids disturbance of these funds as to do so would have a tendency to curtail governmental activities for which these funds were appropriated.

330 Mich. at 273.

Under Michigan law – which controls the methods of judgment enforcement in this matter – the only method available to Plaintiffs to collect on their judgment is to follow the procedures laid out in MCL 600.6093. *See Payton*, 211 Mich. App. at 511; *Roosevelt Park*, 330 Mich. at 273. Generally speaking, MCL 600.6093 permits a plaintiff to deliver their judgment to the township supervisor, who is then obligated to take that judgment and assessing that judgment on the taxable property in the township, adding it to the other township tax and assessing it in the same column as the general township tax.

In other words, so long as the Township exists and there are properties within the Township subject to tax, the judgment will be paid as the property taxes are paid. That is the only judgment enforcement mechanism available to the Plaintiffs.

The Northern District of Oklahoma was faced with a similar issue in the aptly named case of *Bond v. Sheriff of Ottawa Co.*, 2024 WL 2014725 (May 7, 2024), addressing whether to stay enforcement and waive a bond on appeal when a plaintiff was awarded $33 million in damages against the county. The court focused on two factors: (1) there was no serious question that the county had the reliable means to pay the judgment and (2) requiring a bond would harm the county's other creditors. *Id.* at *3. The district court concluded that the county had demonstrated good cause to waive bond requirements by showing that pursuant to Oklahoma law, it had the present and future ability to pay the judgment through taxation:

> Defendant has satisfied its burden warranting waiver of the supersedeas bond. Defendant demonstrates good cause by exhibiting that it possesses the present and future financial ability to "respond to the judgment" by virtue of the plan laid out by the Oklahoma Constitution and state statutes. See Def Mot. at 5–9; *see also Lech*, 2018 WL 2183984, at *1. Oklahoma state law dictates the plan for judgment collection that Defendant must follow and ensures payment sufficient to satisfy the requirements of Rule 62(b). *See City of Del City v. Harris*, 1973 OK 27, ¶¶ 3–4, 508 P.2d 264, 265 (stating that Oklahoma statutory procedure provides the "exclusive method for collection of judgments" against municipalities); *see also* Okla. Const. art. 10, § 28; *City of Duncan v. Sager*, 1970 OK 46, ¶¶ 11–12, 466 P.2d 956, 958–59 (noting that the statutory framework provides judgment creditors with "almost positive assurance their final judgments against municipalities will be paid").

*Id.* at *3. Similar to this matter, Oklahoma statute lays out the exclusive method to collect on a judgment against a municipality:

> Furthermore, Okla. Stat. tit. 62 § 431 authorizes a county's tax officials to levy taxes necessary to pay judgments. Thus, Oklahoma state law provides not only a plan to secure judgment, but the exclusive plan to secure judgment which both the Oklahoma Supreme Court and the Oklahoma legislature have concluded are a positive assurance of payment. *See City of Del City*, 1973 OK 27, at ¶¶ 3–4, 508 P.2d at 265; *City of Duncan*, 1970 OK 46, at ¶¶ 11–12, 466 P.2d at 958–59;

7

Okla. Stat. tit. 12 § 990.5. Thus, the mandatory and exclusive provisions for payment of judgments to which the Defendant here is subject make it "so plain that the cost of a bond would be a waste of money." *See Lech*, 2018 WL 2183984, at *1.

Here, as in *Bond*, there is no question Township has the ability to pay the judgment through the only means of enforcement – placing the judgment on the tax rolls. Requiring a bond would be a waste of money.

B. <u>Requiring the Township to Post a Full Supersedeas Bond Would Affect its Other Creditors – Principally Its Citizens.</u>

In its discretion, the Court can also waive any requirement that the Township obtain a supersedeas bond if requiring the Township to post such a bond would place the Township's other creditors in jeopardy. *See Olympia*, *supra*. The Court entered judgment of approximately $49.2 million. Plaintiffs have filed a motion to amend that judgment to add nearly another $8 million to that judgment in the form of prejudgment interest on damages and attorneys' fees. Additionally, Plaintiffs seek nearly $3 million in attorneys' fees from the Township. Bond premiums on a supersedeas bond are not inexpensive. According to publicly available information, bond premiums typically range from 1 to 2 % of the entire bond amount.[2] It is possible that annual bond premiums for a supersedeas bond on a judgment of $49.2 million could cost the Township $492,000 to $984,000 per year. That would strain the Township's general fund to its breaking point and cause the Township to have to consider the services it provides to its residents.

While the Township has the statutory ability to satisfy the judgment in this matter, as explained above, through placing the judgment on the tax rolls under MCL 600.6093, paying

---

[2]https://www.nfp.com/property-and-casualty/coverage-expertise/commercial-and-contract-surety/surety/bonds-types/appeal-bond/

significant bond premiums on appeal is a different question given that such expenditures would have to come from the Township's general fund.

On November 19, 2024, the consulting firm of Maner Costerisan prepared for the Township an "Organizational Analysis and Recommendations for Township Governance Structure" to address the ongoing need for an updated governance model and tax structure for the Township.[3] According to the Maner Costerisan report, "the Township's financial position remains weak. Its operating fund balance is lower than that of comparable communities, leaving no capacity in the budget to hire additional staff or enhance services." (Maner Costerisan report at p. 2). Ultimately, the Maner Costerisan report concluded:

> Peninsula Township demonstrates strong fiscal health compared to other communities based on several key financial indicators. The Township's taxable value per capita of $142,151 is significantly higher than the averages for all townships and charter townships in Michigan, indicating robust economic prosperity and the capacity to generate substantial revenue from property taxes. This high taxable value per capita and a 36% increase between 2010 and 2022 underscores the Township's continued growth and development potential.
>
> \*   \*   \*
>
> Overall, Peninsula Township's financial indicators point to a solid foundation for meeting community needs and ensuring long-term stability. However, the general fund's unrestricted balance has declined from its peak in 2016, and the current level of 47% is below the median for townships. This puts the Township at increased risk for long-term fiscal instability. To address this, the Township should adopt a fund balance policy to increase reserves and then work to raise revenues, decrease expenditures, or implement a combination of both over the next several years.

Based on the Maner Costerisan report, while the Township has strong fiscal health overall, its general fund faces significant difficulties and, as it stands, the general fund is stretched to the point where the Township cannot already afford to hire additional staff or enhance services.

---

[3] https://www.oldmission.net/wp-content/uploads/2024/12/maner-costerisan-final-report-peninsula-township-structure-11-19-24.pdf

Adding bond premiums in the range of $500,000 - $1,000,000 on an annual basis chances catastrophe. Based on the Township's approved budget for the 2025-2026 fiscal year, the Township's net of revenues and appropriations is only $519,437.[4] There are core services that the Township must provide that support federal, state, and local initiatives, including but not limited to elections, the planning commission, the ZBA, assessor's office, and building and grounds. Payments on bond premiums in the range of $500,000 to $1,000,000 annually could certainly result in cutting essential services – many of which are statutorily required and/or are simply a matter of good governance. Bond premium payments could result in serious impacts for local citizens of the Township affecting core functions such as road and public park maintenance, running elections, reduced resources for Township administrative functions (e.g., permit reviews, record request responses, and land use oversight). This would have the effect of depriving Township residents of basic democratic processes and functions – precisely the functions that the *Roosevelt Park* case was concerned with curtailing.

This stark reality demonstrates that requiring a bond would place the Township's most important creditors – its citizens – in undue jeopardy by forcing the Township to default on its fundamental obligation to provide essential municipal services.

A similar issue was addressed by the Northern District of Ohio in *Gillispie v. City of Miami Twp.*, 2024 WL 897592 (N.D. Ohio, March 1, 2024). In *Gillispie*, the plaintiff obtained a $45 million judgment against an individual defendant, who successfully argued the township was required to indemnify him for the entire judgment. As such, the plaintiff sought to enforce the

---

[4] https://www.peninsulatownship.com/uploads/1/0/4/3/10438394/2025_2026_budget_adopted.pdf

judgment against the township. *Id.* at *1. The district court denied the plaintiff's motion to enforce and granted a stay without bond for both the individual defendant and the township.

When addressing whether the township should be required to post a bond on appeal, the district court considered both the township's ability to pay and the effect payment of bond premiums would have on the township's primary creditors – it's citizens:

> Regardless, the Court otherwise finds that the Township itself constitutes adequate security for a stay pending appeal. As discussed above, Gillispie lacks standing to enforce Moore's indemnification rights. However, Moore may assert his right to be indemnified by the Township for purposes of posting a supersedeas bond and Moore does so in his Motion for Stay. (Doc. No. 554 at PageID 20105-06.) In this regard, Moore's Motion for Stay is effectively a motion to enforce the Court's declaratory judgment finding that the Township must defend and indemnify Moore pursuant to Ohio Rev. Code. § 2744.07. (See Doc. No. 529.) Fundamentally, Moore argues that the Township is adequate security for Gillispie's judgment pending appeal because the Township is a sovereign entity with taxing authority. (Doc. No. 554 at PageID 20105-06.) The Township continues to contest its duty to indemnify Moore and maintains that it need not post a supersedeas bond in this matter. (Doc. No. 563 at PageID 20872.)
>
> For the instant analysis, the Court assumes that Moore may enforce his indemnification rights against the Township for purposes of posting a supersedeas bond or other security. While the Township does not set forth an ability or inability to post bond, the Court can make its determination here based on publicly available records. For the 2024 fiscal year, the Township has estimated gross revenues of $23,506,884 and estimated expenses in the amount of $22,219,757. (See MIAMI TOWNSHIP, BUDGET, https://www.miamitownship.com/293/Budget (last visited February 21, 2024).) On net, the Township is projected to end the fiscal year with $1,287,127.3
>
> Even if the Township were to indiscriminately use its operating budget to post a supersedeas bond, doing so would cause the Township substantial economic harm. To be sure, requiring the Township to post a full bond here would almost certainly threaten the interests of the Township's creditors. For perspective, the Township's list of creditors is not simply made up of financial institutions. The Township's citizens are its creditors. Citizens pay property taxes to the Township and in return the Township provides the citizens with municipal services. If the Township cannot afford to render those services because this Court forced it to pay a bond, then the Township would plainly be in default to its citizenry.

11

> In addition, as Moore suggests, the Township is a sovereign entity with taxing authority. If ultimately required by the Sixth Circuit to indemnify Moore for the $45 million verdict in Gillispie's favor, the Township can budget accordingly. But the Township is a constant. It cannot up and move to avoid the Court's jurisdiction in the interim.

*Id.* at *5.

## RELIEF REQUESTED

Peninsula Township has existed since 1853; it cannot simply pick up and move to avoid the judgment. It is home to thousands of residents and similarly has thousands of payers of property tax. So long as property taxes exist, there is a clear and obvious – indeed only one – way for the Township to pay the judgment. As such, requiring the Township to obtain a supersedeas bond would be a waste of money and requiring the Township to pay exorbitant supersedeas bond premiums would affect its ability to provide services to its residents – the Township's most important creditors.

The Court should exercise its discretion and stay enforcement of the judgment (inclusive of the Court's July 7, 2025 judgment, any subsequent amendment to the judgment, and any award of attorneys' fees based on ongoing motion practice) and waive any bond requirements while this matter is on appeal.

Respectfully Submitted,

McGRAW MORRIS, P.C.
Attorneys for Defendant Peninsula Township

Dated: August 5, 2025          BY:   */s/     Bogomir Rajsic, III*
                                     Bogomir Rajsic, III (P79191)
                                     Tracey R. DeVries (P84286)
                                     44 Cesar E. Chavez Avenue, SW, Suite 200
                                     Grand Rapids, MI 49503
                                     (616) 288-3700
                                     brajsic@mcgrawmorris.com
                                     tdevries@mcgrawmorris.com

12

Thomas J. McGraw (P48817)
2075 W. Big Beaver Rd., Suite 750
Troy, MI 48084
(248) 502-4000
tmcgraw@mcgrawmorris.com

13