# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WINERIES OF THE OLD MISSION
PENINSULA, *et al.*,

    Plaintiffs,

v.

PENINSULA TOWNSHIP, a Michigan Municipal
Corporation,

    Defendant,

And

PROTECT THE PENINSULA,
Intervenor-Defendant.
_____/

Case No.:  1:20-cv-1008-PLM
Honorable Paul L. Maloney
Magistrate Judge Ray S. Kent

**DEFENDANT PENINSULA TOWNSHIP AND DEFENSE COUNSEL'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE**

Stephen Michael Ragatzki (P81952)
Christopher James Gartman (P83286)
Joseph Mikhail Infante (P68719)
*Miller Canfield Paddock and Stone PLC*
Attorneys for Plaintiffs
99 Monroe Avenue NW, Ste 1200 Grand Rapids, MI 49503
(616) 776-6351
ragatzki@millercanfield.com
gartman@millercanfield.com
infante@millercanfield.com

Barry Kaltenbach
*Miller Canfield Paddock and Stone PLC*
Attorneys for Plaintiffs
227 Monroe Street, Ste 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

Thomas J. McGraw (P48817)
*McGraw Morris P.C.*
Attorneys for Defendant
2075 W. Big Beaver Road, Ste 750
Troy, MI 48084
(248) 502-4000)
tmcgraw@mcgrawmorris.com

Bogomir Rajsic, III (P79191)
Tracey R. DeVries (P84286)
*McGraw Morris P.C.*
Attorneys for Defendant
44 Cesar E. Chavez Ave. SW, Suite 200
Grand Rapids, MI 49503
(616) 288-3700/Fax (616) 214-7712
brajsic@mcgrawmorris.com

Scott Robert Eldridge (P66452)
*Miller Canfield Paddock and Stone PLC*
Attorneys for Plaintiffs
One E. Michigan Avenue, Ste 900
Lansing, MI 48933
(517) 487-2070
eldridge@millercanfield.com

William K. Fahey (P27745)
Christopher S. Patterson (P74350)
John S. Brennan (P55431)
Eric P. Conn (P64500)
*Fahey Schultz Burzych Rhodes*
Attorneys for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100
wfahey@fsbrlaw.com
cpatterson@fsbrlaw.com
jbrennan@fsbrlaw.com
econn@fsbrlaw.com

Tracy Jane Andrews (P67467)
Holly L. Hillyer (P85318)
*Troposphere Legal*
Attorneys for Intervenor
420 E Front St
Traverse City, MI 49686
(231) 714-9402
tracy@tropospherelegal.com
holly@tropospherelegal.com

_____/

**DEFENDANT PENINSULA TOWNSHIP AND DEFENSE COUNSEL'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................ 3

Index of Authorities ........................................................................................................... 4

Introduction ........................................................................................................................ 5

Argument .......................................................................................................................... 12

    I.     THIS COURT SHOULD CONSIDER THE LACK OF COMPLIANCE WITH LOCAL RULE 7.1(D) ............................................................................ 12

    II.    NEITHER THE TOWNSHIP NOR TOWNSHIP COUNSEL COMMITTED SANCTIONABLE CONDUCT .................................................. 13

    III.   PLAINTIFFS DID NOT SUFFER PREJUDICE BECAUSE PLAINTIFFS' COUNSEL KNEW ABOUT THE EMC POLICY AS DID PLAINTIFF VILLA MARI ............................................................................. 14

    IV.   FAILURE TO DISCLOSE THE EMC POLICY WAS HARMLESS AND NO SANCTIONS ARE WARRANTED ........................................................... 15

    V.    SANCTIONS AGAINST THE TOWNSHIP AND ITS CURRENT COUNSEL ARE INAPPROPRIATE ............................................................... 16

RELIEF REQUESTED .................................................................................................... 19

# INDEX OF AUTHORITIES

**Cases**

*Adams v. 3M Co*, ___F. Supp. 3d___; 2024 U.S. Dist. LEXIS 174442 (ED Ky, Sep. 26, 2024) ............... 19

*Bell v. Korkis*, ___F. Supp. 3d___; 2023 U.S. Dist. LEXIS 242833 (ED Mich, Oct. 12, 2023) ................ 19

*Bradley v. Frye-Chaiken*, 514 Mich. 679; 22 N.W.3d 458 (2024) ............................................................. 19

*Coleman v. American Red Cross*, 23 F.3d 1091 (6th Cir. 1993) ................................................................. 17

*ECM Converting Co. v. Corrugated Supplies Co., LLC*, 2009 U.S. Dist. LEXIS 12424 (W.D. Mich. Feb. 13, 2009) ........................................................................................................................................ 13

*EEOC v. Dolgencorp, LLC*, 196 F.Supp.3d 783 (E.D. Tenn. 2016) ............................................................. 15

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101; 137 S. Ct. 1178 (2017) ........................................ 16

*Powers v. Thomas M. Cooley Law School*, 2006 U.S. Dist. LEXIS 67706 (W.D. Mich. Sept. 27, 2006) 13, 14

*Reed v. Iowa Marine & Repair Corp*, 16 F.3d 82 (5th Cir. 1994) ............................................................... 18

**Rules**

Fed. R. Civ. P. 26(g) ..................................................................................................................................... 17

L.R. 7.1(d)(ii)(B) ........................................................................................................................................... 13

L.R. 7.1(d)(iii) ......................................................................................................................................... 13, 14

Rule 37(b)(2)(A)(i)-(iv) ................................................................................................................................. 16

Rule 37(c)(1)(B)-(C) ...................................................................................................................................... 16

## INTRODUCTION

Only one day after this Court denied Plaintiffs' Motion to Amend the Judgment, PageID.32193, wherein Plaintiffs requested almost $8,097,676.80 more, Plaintiffs filed the instant motion for sanctions. The motion arises out of a negligible disclosure oversight and seeks to spike the football in this Court before the matter shifts to the Sixth Circuit. Yet, Plaintiffs' motion provides no evidence of sanctionable conduct by the Township or current counsel. In fact, the indisputable facts exculpate the Township and its current counsel, while also casting suspicion over Plaintiffs' Counsel's motives.[1]

Plaintiffs' motion feigns surprise about a third insurer, allegedly gleaned from a recent press article. **Yet, the Township disclosed this insurer to Plaintiffs' Counsel over two years ago, including the policy number, and the policy limits**, and Plaintiffs' Counsel has made it effectively clear that the question of coverage has never truly been of concern to them,[2] negating any harm they may allege as stemming from not having the policy language itself. Recent filings also confirm that Plaintiffs' Counsel, specifically Attorneys Infante and Ragatzki, watched or attended Township board meetings for the past five years and reviewed Township Board packets, making this "surprise" a horribly kept secret: the third insurer was discoverable within publicly-available board meeting packets. Notably, Attorney Infante averred that attending meetings and

---

[1] Plaintiffs' Counsel's desperation for sanctions has been apparent throughout. The pinnacle of his contemptable practice was counsel's (withdrawn) attempt to seek sanctions against Mr. Fahey on January 23, 2023, days after he tragically lost his wife. The reason for sanctions was a simple disagreement on the record wherein Plaintiffs' Counsel characterized Amendment 201 to the Zoning Ordinance as draconian. (PageID.11684, 11693-11694).

[2] "Infante said the damages were a secondary outcome for wineries in the case. 'This was really about being able to operate their business without draconian oversight from Peninsula Township[.]'" (Exhibit A, Articles, p 5). Plaintiff's Counsel indicating: "[i]t's possible the wineries could also appeal on some parts of the case, though 'there are very few issues we didn't win on.'" (Exhibit A, p 9).

reviewing board packets was a reasonable use of his and Attorney Ragatzki's time, PageID.31533-31543, making their failure to identify EMC, regardless of their direct knowledge, reason for the Court to deny the request to reimburse for those requested fees.

The Township, through counsel, also took the additional step of voluntarily disclosing the insurer and policy information after Plaintiffs' "surprising" discovery. Within hours of being asked, current Township counsel provided additional insurance policies to Plaintiff's counsel, negating the need for this motion, and demonstrating a willingness to work in good faith.

Finally, the timing of this motion should not be lost on the Court. This motion comes on the heels of Township representatives' attempts at resolution-focused discussions with willing Winery representatives. Naturally, those conversations *could* bring about a resolution of the case. This motion seems to be designed to curb those efforts and drive a wedge further between the parties. Whether that is the reason or not, it is clear the motion should be denied in its entirety.

**FACTUAL BACKGROUND**

Attorneys Gregory Meihn and Matthew Wise[3] appeared on behalf of the Township on October 30, 2020 (see Civil Docket). They served the Township's Initial Disclosures on March 17, 2021, indicating the Township was unaware of any applicable insurance companies at the time. (PageID.12380).

On June 22, 2021, the Wineries served their second set of requests for production of documents; Request No. 22 was for "a copy of any insurance policy covering Peninsula Township's litigation expenses in this Lawsuit" (PageID.12279). In response, on July 22, 2021, the Township indicated a copy of "any *applicable* insurance policy" had been requested.

---

[3] The Township provided them notice of Plaintiffs' request through counsel in Case No. 24-036922-NM, in the Grand Traverse County Circuit Court.

(PageID.12286, 12294). After not receiving a copy, Plaintiffs filed a motion to compel on August 25, 2021. (PageID.3416, 3426). The Court granted it on September 28, 2021, directing the Township to "produce any policy of insurance responsive to Request to Produce No. 22." (PageID.3778).

On October 12, 2021, the Township produced information regarding an Argonaut policy, with a period starting July 1, 2014, as it was providing the Township's defense. (PageID.12258, 12420, 15477); (see also the Township's Second Supplemental Initial Disclosures of October 20, 2021. PageID.12417).

The existence of a second policy of insurance was revealed to this Court through a motion to stay the case filed by the Township on April 13, 2023. (PageID.11957, 11975). The subsequent, related Motion to Intervene by Non-Party Michigan Township Participating Plan ("MTPP") on May 23, 2023, identified that the Township was insured through the MTPP – which was administered by Tokio Marine HCC-Public Risk Group ("TMHCC") – until 2014. (PageID.13113, 13134-13137). The Township produced the insurance declarations page for a U.S. Specialty Insurance Company ("USSIC") policy – administered by TMHCC ("USSIC/TMHCC") – on April 25, 2023, PageID.12536, and the policy on August 8, 2023. (PageID.15320).

Despite this Court's award of sanctions, Plaintiffs' Counsel ***knew in 2021—almost 2 years before seeking such sanctions—that*** TMHCC/USSIC insured the Township from then-Supervisor Manigold's deposition on November 3, 2021:

7

> BY MR. INFANTE:
> Q. All right, I understand that the Township has insurance for this lawsuit, is that right?
> A. Yes.
> Q. Okay, and who is the insurance carrier?
> A. We have a combination of two. We have Tokio Marine and -- what's the other one? Can I ask her?
>
> Page 203
> Q. No. Only if you know. If you don't know, you don't have to answer.
> A. Tokio Marine, and both -- there's two.
> Q. And somebody else, some other insurance company?
> A. Yes.
> Q. Is it two policies?
> A. Yes, I believe so.
> Q. And do you know what the amount of coverage you have on those policies is?
> A. Not off the top of my head.
>    [ . . . ]
> Q. Are you corresponding with the insurance company or is your counsel?
> A. Counsel, and Becky.
>    [ . . . ]
>    MR. INFANTE: All right, Matt, I think there's some missing documents. Mr. Manigold mentioned two insurance policies, and you guys have only produced one. There's some other documents he mentioned.
>    For now, let's stop, but I'm going to leave the deposition open and reserve the right to continue when additional documents are produced, if they're produced.

[Exhibit B]. Notably, this did not stop Plaintiffs' Counsel from certifying under Rule 11(b) that THMCC/USSIC was a surprise two years after Mr. Manigold's testimony revealing it, just as it states the EMC policy is a surprise now. (PageID.15105).

Presumably, Plaintiffs' Counsel did not follow up on the production of the TMHCC/USSIC policy after indicating he did not have a copy at Mr. Manigold's deposition, and they demonstrated no interest in discerning policy coverage when they sought no deposition of Becky Chown, the Township Clerk, who Manigold identified as the person corresponding with the Township's

8

insurers. Instead, Plaintiffs' Counsel sat on the information for almost two years, so as to be "surprised" about the USSIC policy when they sought sanctions in 2023.

In fact, during a recent meeting with Township Counsel,[4] Plaintiffs' Counsel indicated he observed the *Township board meetings for the last five years*, i.e., since August of 2020. Meaning, he watched the meeting of June 8, 2021, where the Township indicated the Township was insured through Trident (formerly owned by Argonaut) *and TMHCC* (under the USSIC policy), PageID.15101, a fact Plaintiffs used to support their Motion for Sanctions of August 3, 2023, when they feigned surprise *then* at the disclosure of the USSIC policy, as they do *now* with the EMC policy.

**Insurance through EMC**

As Plaintiffs point out, a third policy of insurance, issued by Employers Mutual Casualty Company ("EMC"), began covering the Township on July 1, 2019; however, unlike Argonaut and USSIC, EMC *had completely denied the claim and its defense* in a denial letter on November 24, 2020 – a month after litigation commenced (Exhibit C). This letter was forwarded by the Townships to Attorney Meihn on December 1, 2020 (Exhibit D, Affidavit of Rebecca Chown). At no time was the EMC policy "any insurance policy *covering Peninsula Township's litigation expenses in this Lawsuit*" that would fall within the scope of Plaintiff's Request for Production No. 22 or, consequently, this Court's Order of September 28, 2021.

**Plaintiffs' Counsel Demands EMC Policy and Files Motion**

On August 12, 2025, at 1:09 p.m., Plaintiffs' Counsel demanded a copy of the EMC policy. (PageID.32389; Exhibit E). In their Demand, Plaintiffs' Counsel indicated they would file the instant motion "for a flagrant disregard of [court] orders" if Township Counsel did not provide an

---

[4] Fahey Schultz appeared June 20, 2022 (see Civil Docket).

9

explanation of when the Township contacted EMC and why the policy was not disclosed. (PageID.32390). Fahey Schultz responded within less than 24 hours, on August 13, 2025, at 8:26 a.m., (Exhibit F) producing a copy of all the EMC policies, explaining that current counsel for the Township was not involved at the time initial disclosures were served or the Order compelling discovery was issued, and therefore, could only speculate that prior counsel had determined the EMC policy was neither covering the Township's litigation expenses nor liable to cover the judgment because of its total claim denial of 2020. (PageID.32392-32393). Township Counsel also offered to discuss the matter for any remaining concerns or questions. (PageID.32392-32393).

Following two days of silence from Plaintiffs' Counsel, on August 15, 2025, at 12:59 p.m. and 1:06 p.m., Plaintiffs' Counsel left two voicemails, the first for Attorney Rajsic of McGraw Morris[5] (Exhibit G), and the second for Attorney Conn of Fahey Schultz, (Exhibit H), only requesting concurrence. Plaintiffs' Counsel then filed the instant Motion *two hours and nine minutes later*, at approximately 3:12 p.m. (Exhibit I). No good faith compliance with Local Rule 7.1(d) was or could be accomplished. (PageID.32466).

Township Counsel asked that Plaintiffs' Counsel withdraw their Motion for a meaningful opportunity to meet and confer on the issue (Exhibit J) Plaintiffs' Counsel responded about 11 minutes later, claiming their voicemails were enough, and offering to meet and confer before the Township's response was due (Exhibit J).

Township Counsel further replied that there was no request consistent with Local Rule 7.1(d) (Exhibit J), and Plaintiffs' Counsel again rejected the request to withdraw their Motion 14 minutes later. (Exhibit J (emphasis added)). Counsel did have a call on Friday, August 22, 2025, but Plaintiffs' Counsel seemed set on the arguments already presented.

---

[5] McGraw Morris appeared February 7, 2023. (PageID.11877).

10

**Plaintiffs' Counsel Have Notice of EMC**

Attorneys Infante and Ragatzki *have known EMC is the current insurer for the Township since May 11, 2023*, less than three months before they filed their motion for sanctions with regard to the USSIC policy. They learned this information, when they received Peninsula Township's Initial Disclosures in a state case involving Plaintiff Villa Mari (*Villa Mari, LLC v Peninsula Township*, Case No. 23-36537-CZ, in the Circuit Court for the County of Grand Traverse):[6]

> **(g) Applicable Insurance**
>
> Defendants have not interpreted the insurance contract to determine if it is actually liable to satisfy all or part of a possible judgment, but Defendants do have a policy of insurance, Policy Number 6K17675, through Employers Mutual Casualty Company that Defendants have been told provides insurance in the amount of $1 million for each loss with an aggregate limit of $2 million.

(Exhibit K).

EMC was easily ascertainable as the Township's insurer even had Attorneys Infante and Ragatzki not read the Township's initial disclosures in the Villa Mari state-court litigation. Attorney Ragatzki indicated he observed Township board meetings for the last five years, consistent with Plaintiffs' Counsel's *numerous* time entries for watching the recordings and reviewing the packets. (PageID. 31549-31994). Moreover, Plaintiffs' Counsel should have realized that EMC was not a surprising new name, as it was readily listed in Township meeting packets, like it was on the first page of a Township invoice register in the packet available for the May 9, 2023 Township Board regular meeting:

---

[6] If Plaintiffs' Counsel argue that these Initial Disclosures did not provide notice for this action, the Consent Judgment specifically carves out this litigation (Exhibit L).

|  |  |
|---|---|
| **PENINSULA TOWNSHIP** | Page: 1/1 |
| **INVOICE REGISTER** | |
| For Invoices Scheduled for Payment on: 5/9/2023 12:0 | |

| VENDOR INFORMATION | INVOICE INFORMATION | |
|---|---|---|
| CONSUMERS ENERGY | Amount of Invoice Paid: ST LIGHTS/ENERGY | $28.81 |
| Distribution: 209-567-921.000  Electricity | | 28.81 |
| EMC INSURANCE | Amount of Invoice Paid: PROPERTY/LIABILITY INSURANCE | $991.53 |
| Distribution: 209-567-710.LIB  Liability Insurance | | 991.53 |
| | Total Amount Disbursed: | $1,020.34 |

(Exhibit M).

Given Plaintiffs' Counsel's refusal to withdraw their Motion despite their actual and constructive knowledge of the EMC policy, Peninsula Township and its Counsel are left with no recourse but to file this response.

## ARGUMENT

### I.  THIS COURT SHOULD CONSIDER THE LACK OF COMPLIANCE WITH LOCAL RULE 7.1(D)

As this Court is aware, Local Rule 7.1(d)(ii)(A), in relevant part, requires that a conference be had prior to the filing of a motion "in a manner that . . . allows for an interactive process aimed at reaching agreement on the matter or those aspects of the matter that can be resolved without court intervention. The conference must be held sufficiently in advance of filing the motion to allow the opportunity for meaningful discussion." The Certificate of Compliance with this rule must "specify[] the date, time, and duration of the conference; the participants in the conference; and a description of the issues addressed during the conference." L.R. 7.1(d)(ii)(B). Non-compliance is addressed in L.R. 7.1(d)(iii).

"The importance of the communication required by this rule . . . cannot be overstated." *ECM Converting Co. v. Corrugated Supplies Co., LLC*, 2009 U.S. Dist. LEXIS 12424, at *4 (W.D.

Mich. Feb. 13, 2009) (Maloney, C.J.) (internal citation omitted)[7]. This Court has held that a party's failure to afford the opposing party a reasonable period of time to respond to the concurrence request may violate the rule. Cf., e.g., *Powers v. Thomas M. Cooley Law School*, 2006 U.S. Dist. LEXIS 67706 (W.D. Mich. Sept. 27, 2006). In *Powers*, the Court reprimanded a party for failing to comply with the local meet-and-confer rules in what he described as a "perfunctory and insouciant effort by plaintiff's counsel" where the plaintiff's counsel filed a discovery motion on the same day he sent a fax and left a voicemail for defense counsel and did not receive a response, warranting sanctions: "Plaintiff's counsel has displayed impatience and not a 'good-faith effort to resolve each specific discovery dispute,' as required by this court's local rules. This failure, in and of itself, is grounds for denial of the motion and imposition of sanctions." *Powers*, 2006 U.S. Dist. LEXIS 67706, at *7 (record citations omitted, paragraph breaks added).

The same is present here. Two voicemails and two hours and nine minutes later, Plaintiffs filed the Motion. The after-the-fact meeting was not the rules-prescribed "interactive process." Plaintiffs' Counsel's Certificate of Compliance ignores this fact. The Court should consider whether failure to abide by the Court's Local Rule that fosters civility among its bar warrants denial of Plaintiffs' Motion. See L.R. 7.1(d)(iii) (permitting denial of the motion or striking the filing as a sanction for failing to properly meet and confer).

**II.     NEITHER THE TOWNSHIP NOR TOWNSHIP COUNSEL COMMITTED SANCTIONABLE CONDUCT**

The Order of September 28, 2021, compelling the Township to respond to Request for Production No. 22, read, in relevant part, "Defendant shall, within 21 days, produce any policy of insurance *responsive to Request to Produce No. 22*." (PageID.3778). The operative language here

---

[7] See Exhibit N.

is "responsive to Request to Produce No. 22[,]" i.e. "any policy of insurance covering Peninsula Township's litigation expenses in the Lawsuit." (PageID.12279).

If Plaintiffs intended their Request for Production to apply to *any and all insurance policies* issued to the Township, they could have said so. But their request was far narrower and, as a result, the ensuing Order compelled production of any policy of insurance which was *covering* the Township's litigation expenses, which EMC never has here.

The August 18, 2023, Order regarding the USSIC policy does not expand the scope of the Court's September Order related to the third carrier, as this Court held the USSIC policy should have been provided because it was responsive to Request for Production No. 22. (PageID.15478-15479). While USSIC *did* cover litigation expenses—albeit, a year after the Order to Compel was issued—and thus became a policy "covering Peninsula Township's litigation expenses in the Lawsuit[,]" the same cannot be said or even reasonably inferred about the production of the EMC policy. Accordingly, Plaintiffs' argument that sanctions are warranted for failure to comply with a court order is erroneous and unfounded.

### III. PLAINTIFFS DID NOT SUFFER PREJUDICE BECAUSE PLAINTIFFS' COUNSEL KNEW ABOUT THE EMC POLICY AS DID PLAINTIFF VILLA MARI

While the case law is diverse, some Courts have held "there is no discovery obligation to produce documents in the public record that are equally available to both parties." *EEOC v. Dolgencorp, LLC*, 196 F.Supp.3d 783, 796-797 (E.D. Tenn. 2016). But the impact of non-disclosure of publicly-available information seems more certain. "In addition, to the extent that parties are required to disclose public records in discovery, courts have found that the failure to do so has a minimal impact on the opposing party." *Id*., at 797.

Here, Plaintiffs' Counsel and Plaintiff Villa Mari *knew* as of May 11, 2023 that EMC

insured the Township. Plaintiff's Counsel and Plaintiff Villa Mari also *knew* the EMC policy number. Plaintiff's Counsel and Plaintiff Villa Mari also *knew* the policy limits. There is no disputing this, and the source of that knowledge is inconsequential.

If direct, actual knowledge is not enough, Plaintiffs' Counsel also knew that the Township's records were available online and demonstrated a ritual of reviewing meetings and board packets, where some information they claim is a "surprise" was located (Exhibit M). Therefore, it's clear that if there was *any* impact on Plaintiffs, it was "minimal" as explained in *Dolgencorp*.

### IV. FAILURE TO DISCLOSE THE EMC POLICY WAS HARMLESS AND NO SANCTIONS ARE WARRANTED

Plaintiffs request for sanctions under Fed. R. Civ. P. 37(c) provide for sanctions that are now moot in light of the judgment: precluding the party from using the undisclosed information or witness, informing the jury of the party's failure to disclose or supplement, designating facts as established by the prevailing party, prohibiting the use of defenses or matters in evidence, the striking of pleadings, and staying the case until the order regarding disclosure is obeyed. See Rule 37(c)(1)(B)-(C); see also as incorporated sanctions listed under Rule 37(b)(2)(A)(i)-(iv). The only available sanction listed in the rule is under Rule 37(c)(1)(A) ("payment of the reasonable expenses, including attorney's fees, caused by the failure"). But even this sanction is limited by the rule's language ("caused by the failure"). See *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103-104; 137 S. Ct. 1178 (2017) (when imposing sanctions, a judge must determine which fees and costs would not have been borne "but for" the misconduct and can assess only "the fees the innocent party incurred solely because" of that misconduct). Plaintiffs fail to support their motion with any fees they incurred because of Defendants' failure to produce the EMC policy.

Plaintiffs also show no harm from the non-disclosure where they *knew* the policy limits

available under each policy period, as they remain similar—rendering the name of the insurer insignificant—and where any declaratory action for coverage would still be timely under the six-year statute of limitations applicable to breach of contract claims. The reasoning for the disclosure of insurance policies in Rule 26 is explained in the 1970 Note: "Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." The Note goes on to *specifically* recognize that "*an insurance company* must disclose even when it contests liability under the policy, and such disclosure does not constitute a waiver of its claim." The Note is also clear in that insurance coverage information is inadmissible as evidence. *Id*.

But even if EMC had been disclosed, there is nothing to suggest that it would have altered the sequence of events that followed and led to the $50 million dollar judgment in Plaintiffs' favor. Nothing about the disclosure of EMC, a continuation of the similar policy limits, would have "enable[d] counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation" as contemplated by Rule 26. Notwithstanding, to the extent there is any credence to an argument that Plaintiffs sustained any unidentified harm from the non-disclosure, strictly *arguendo*, they have not incurred any fees that they would have not incurred "but for" the failure to disclose the EMC policy.

**V.    SANCTIONS AGAINST THE TOWNSHIP AND ITS CURRENT COUNSEL ARE INAPPROPRIATE**

Becky Chown, the Township Clerk, and Brad Bickle, then Township Treasurer, provided the identity of the three insurers (USSIC, Argonaut, and EMC) to then-Township Counsel the month following the filing of the lawsuit (Exhibit D). Clerk Chown forwarded the denial letter from EMC on December 1, 2020 (*Id*.). All necessary information was made available by the Township.

Fed. R. Civ. P. 26(g) makes the signature of an attorney a certification that a disclosure "is complete and correct as of the time it is made." Here, neither the Township nor its present counsel made any certifications regarding discovery, nor did they act with any intent to prevent or perpetuate the disclosure of any discoverable information in this matter. In fact, they immediately responded and mitigated any concern by providing the EMC policies upon Plaintiffs' request.

The Township gave the required information to its attorney (Exhibit D). The law does not expect the Township to know what the court rules are; knowing the law and the court rules is the duty of counsel. This is a textbook example of justifiable reliance. The Township should not be sanctioned because it did not engage in any conduct that the Rule intends to deter. See *Coleman v. American Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1993) (in the context of dismissal as sanctions, "we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client").

Sanctions against current Defense Counsel are inappropriate where they reasonably relied on the investigation and litigation work conducted by Attorney Meihn. In *Reed v. Iowa Marine & Repair Corp*, 16 F.3d 82 (5th Cir. 1994), the Fifth Circuit Court of Appeals reversed the award of attorney sanctions for abuse of discretion. In that case, the attorney represented the plaintiff, who provided false information in his responses to interrogatories, which was revealed during his deposition. The attorney failed to supplement his discovery responses until after Iowa Marine filed a motion to compel. *Id*. at 84. The trial court awarded sanctions, finding the attorney had acted in bad faith by failing to supplement discovery responses after agreeing to do so once the falsehood of the plaintiff's interrogatory answers was brought to light. *Id*.

In reversing the trial court's sanctions award, the Fifth Circuit found that Iowa Marine had not been prejudiced or surprised by the supplemental discovery responses because there was no

evidence that "Barker was aware of any information that Iowa Marine did not already possess[,]" and, accordingly, the "purposes of Rule 26(e) were not frustrated by Barker's conduct." *Id*. at 85-86. The Court also found that Barker had reasonably relied on referring counsel and another attorney who wrote the answers to interrogatories and gave them to Barker: "We previously have held that 'an attorney receiving a case from another attorney is entitled to place some reliance upon that [referring] attorney's investigation.' *That proposition holds doubly true in the instant case*." *Id*. at 86 (emphasis added). The Court instructed, "[w]hile we obviously would encourage Barker to do more next time in instances such as here presented, including withdrawing from the case, *we are not prepared to create out of whole cloth an expansive Rule 26 duty to investigate and, ex post facto, sanction Barker thereunder*." *Id*. (emphasis added).

Like the case in the Fifth Circuit, Plaintiffs' Counsel knew about EMC and its policy limits long before trial and have not shown that Fahey Schultz or McGraw Morris had more information than they did. Ultimately, neither Plaintiffs nor their Counsel ever complained about only receiving the Argonaut declarations page; there is disingenuity in arguing that the EMC policy would have answered any questions about coverage, which are seemingly of no concern to Plaintiffs' Counsel.[1] Additionally, it is indisputable that Plaintiffs knew the policy limits applicable to the claim, *regardless* of which insurer provided them. There was no manifest prejudice or surprise, and the purposes of Rule 26 were not frustrated by the Township or its Counsel. See also *Adams v. 3M Co*, ___F. Supp. 3d___; 2024 U.S. Dist. LEXIS 174442, at *21 (ED Ky, Sep. 26, 2024) ("the Court will not penalize the WT&P Plaintiffs for the errors of former counsel."); *Bell v. Korkis*, ___F. Supp. 3d___; 2023 U.S. Dist. LEXIS 242833, at *9 (ED Mich, Oct. 12, 2023) ("Unlike before he obtained new counsel, Plaintiff is actively participating in the litigation. As such, the Court is not motivated to double-back and impose sanctions for conduct that has already been sufficiently

18

addressed."). This Court should recognize that concept, too.

As in *Reed*, present defense counsel "is entitled to place some reliance upon" former counsel's investigation, and in any event, they acted immediately to rectify the oversight. Granting Plaintiffs' Motion greatly expands the confines of Rule 26 and hinders the willingness of attorneys to accept case transfers, a significant concern for both lawyers and litigants. See *Bradley v. Frye-Chaiken*, 514 Mich. 679; 22 N.W.3d 458 (2024) ("The trial court's decision to impose joint and several liability on all attorneys who represented the sanctioned client, even if the attorney took the case after the sanctionable conduct ceased, could result in those litigants who are most in need of competent counsel to proceed pro se or hire even less capable counsel."). Sanctions against the Township, Fahey Schultz, and/or McGraw Morris should be denied.

## RELIEF REQUESTED

Defendant, Peninsula Township, respectfully requests that this Court DENY Plaintiffs' Motion for Order to Show Cause in its entirety and award all its fees and costs.

Respectively submitted,
*Fahey Schultz Burzch Rhodes*
Attorneys for Defendant

Dated: August 29, 2025

William K. Fahey (P27745)
Christopher S. Patterson (P74350)
John S. Brennan (P55431)
Eric P. Conn (P64500)
4151 Okemos Rd.
Okemos, MI 48864
(517) 381-0100

Thomas J. McGraw (P48817)
Bogomir Rajsic, III (P79191)
Tracey R. DeVries (P84286
*McGraw Morris P.C.*
Attorneys for Defendant

**CERTIFICATE OF COMPLIANCE - WORD COUNT**

The undersigned certifies that *Defendant Peninsula Township's Brief in Opposition to Plaintiffs' Motion for Order to Show Cause* complies with Local Rule 7.3(b) and consists of 4,263 words and was created using Microsoft Word version 2507.

By: /s/ Christopher S. Patterson
Chirstopher S. Patterson (P74350)

**CERTIFICATE OF SERVICE**

I, Christopher S. Patterson, caused *Defendant Peninsula Township's Brief in Opposition to Plaintiffs' Motion for Order to Show Cause* with *Brief in Support* to be served electronically on all parties of record this 29th day of August 2025 via the CM/ECF system.

By: /s/ Christopher S. Patterson
Chirstopher S. Patterson (P74350)