UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, *ET AL.*,<br>　　　Plaintiffs,<br><br>v.<br><br>PENINSULA TOWNSHIP,<br>　　　Defendant,<br><br>and<br><br>PROTECT THE PENINSULA, INC.,<br>　　　Intervenor-Defendant. | No. 1:20-cv-1008<br><br>Honorable Paul L. Maloney |

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY ENFORCEMENT AND WAIVE BOND ON APPEAL

This matter comes before the Court on Defendant Peninsula Township's motion to stay enforcement of the judgment and waive the requirement for bond while the case is on appeal. (ECF No. 636). Normally, appealing defendants must post a bond to protect the plaintiffs' interests in immediate collection and certainty of payment. But, in extraordinary circumstances, such as when paying bond premiums would threaten the public interest by jeopardizing public services for a municipal defendant's residents, courts may waive the bond requirement when the interest in doing so outweighs the plaintiffs' interests. This case presents such circumstances: the judgment is substantial enough in comparison to the Township's finances that likely bond premiums would risk degrading the Township's ability to provide services to its thousands of residents. Plaintiffs may not have complete certainty

1

of when and how they will be paid if the Court's judgment is affirmed, but the Township's status as an entity with taxing authority provides some measure of certainty that the Township and its primary source of funding is not going anywhere. The balance of equities thus tilts in the Township's favor, so its motion will be granted.

## I.

Parties may stay enforcement of a judgment by "providing a bond or other security" which takes effect when the court approves that security. Fed. R. Civ. P. 62(b). "The reason supersedeas bonds generally are required is to level the balance of interests between a successful plaintiff and a defendant challenging the result in the lower court." *Pucci v. Somers*, 834 F. Supp. 2d 690, 706 (E.D. Mich. 2011). But courts have discretion to grant stays without a bond when appropriate, such as when "the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money," *Arban v. W. Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (citing *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986)), or when "the requirement would put the defendant's other creditors in undue jeopardy," *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353 (E.D. Mich. 1998) (citing *Olympia Equipment*, 786 F.2d at 796). These sorts of situations are the exception, not the rule, and the moving party must "objectively demonstrate the reasons" to waive the bond requirement. *Hamlin*, 181 F.R.D. at 353 (citing *Poplar Grove Planting & Refin. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)).

## II.

Following a bench trial, this Court entered judgment against Defendant Peninsula Township and awarded Plaintiffs approximately $49 million in damages. (*See* ECF Nos. 623,

624). The Township timely appealed and filed the present motion beforehand the same day. (*See* ECF Nos. 636, 640). Plaintiffs oppose the motion. (ECF No. 647). The Township filed a reply brief with additional arguments and evidence but neglected to seek the Court's leave as required by local rules, so that brief was stricken. (*See* ECF No. 667).

### III.

Peninsula Township argues that the bond requirement should be waived both because its ability to pay is obvious and because paying bond premiums would put its other creditors in undue jeopardy. It bases these arguments on cases from the Sixth Circuit and district courts in this circuit that cite the Seventh Circuit's decision in *Olympia Equipment*. It advances both theories simultaneously despite the Seventh Circuit describing the two situations as "opposite case[s]." *Olympia Equipment*, 786 F.2d at 796. Of course, the Township would not be the first to assert multiple theories in tension with one another. The latter theory—that forcing the Township to pay bond premiums would threaten other creditors—is more persuasive here.

This case is similar to *Gillispie v. City of Miami Township*, No. 3:13-cv-416, 2024 WL 897592 (S.D. Ohio Mar. 1, 2024). There, a township defendant sought to stay enforcement of a $45 million judgment against it[1] and argued that posting bond would "threaten the interests of [its] creditors." *Id.* at *5. Citing public records of the township's estimated gross revenues and expenses, the court determined that forcing the township to post bond "would cause the Township substantial economic harm." *Id.* The court explained

---

[1] In *Gillispie*, the township was ordered to indemnify an individual defendant against whom judgment was entered. *See* WL 897592, at *1.

that the township's creditors included not only financial institutions but the township's citizenry: "Citizens pay property taxes to the Township and in return the Township provides its citizens with municipal services. If the Township cannot afford to render those services because this Court forced it to pay a bond, then the Township would plainly be in default to its citizenry." *Id.* The court waived the bond requirement based on this determination and the determination that as "a sovereign entity with taxing authority" the township could satisfy the judgment by "budget[ing] accordingly." *Id.*

The key part of the reasoning in *Gillispie* was the magnitude of the judgment compared to the township's budget. The $45 million judgment was approximately twice the township's yearly revenues, and many times what was available in its general fund. *See id.*; *Cremeans v. Taczak*, No. 2:19-cv-02703, 2026 WL 31183, at *2 (S.D. Ohio Jan. 6, 2026) (describing the *Gillispie* court's finding that "enforcing a bond against the Township would cause substantial economic harm given the judgment against it far exceeded the Township's annual budget"). The numbers here are starker for Peninsula Township: they face a larger judgment than the $45 million in *Gillispie*, and while the township there had total revenues of approximately $23.5 million, *id.*, Peninsula Township's yearly revenues are in the $10 million range.[2] It has about $2 million in its general fund.

Plaintiffs argue that the Township has not produced evidence that paying bond premiums in this case would adversely impact the Township's citizens because it is unclear

---

[2] *See* Michigan Department of Treasury, *MI Community Financial Dashboard: Peninsula Township*, https://michigan-localunits.budget.socrata.com/#!/year/2025/revenue/0/type/TOWNSHIP/0/localunitid/1551/0/fund?vis=barChart, (last visited Feb. 27, 2026); Peninsula Township, *Budget Report for Peninsula Township* (Mar. 31, 2025), https://www.peninsulatownship.com/uploads/1/0/4/3/10438394/2025_2026_approved_budget.pdf. Courts may rely on public records such as these in evaluating the likely effects of a bond on a public entity. *See, e.g., Gillispie*, 2024 WL 897592, at *5; *Cremeans*, 2026 WL 31183, at *2.

4

how large the premium would be and who would pay it. Plaintiffs also cite *Lamon v. City of Shawnee*, 758 F. Supp. 654, 656-57 (D. Kan. 1991), where the court rejected a city's argument that posting a bond would put other creditors in jeopardy. In *Lamon*, the judgment was much smaller than that at issue here. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1149 (10th Cir. 1992) (discussing the award of less than $200,000). A judgment of that amount poses much less risk to other creditors, so the quantum of evidence necessary to establish any meaningful risk from a bond to cover it is much higher. Here, though, the risk from bond premiums on a judgment twice the size of total annual revenues is plain, even without an exact calculation. The Supreme Court has recognized that "supersedeas bond premiums are a bit of an outlier" in the realm of otherwise predictable costs of appeal because "they can grow quite large." *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 342 (2021). Even small percentages of the judgment amount here would consume a significant portion of the Township's general fund and potentially exceed net yearly revenue.

Plaintiffs speculate that the Township's insurance policies may cover some or all of the bond premium. The Township is currently in federal court litigating whether and to what extent two of the three insurance companies are liable with regard to this case. The Court has no evidence before it about what expenses the third will or will not cover. Absent evidence that one or more of the insurance policies actually would cover the premiums for a supersedeas bond, the Court is persuaded that such premiums pose a substantial risk to the Township's finances and ability to provide services to its citizens.

Plaintiffs also argue that the Township has more money than its annual revenues and expenses suggest. Plaintiffs' argument seems to be that the Township could simply expend

less money on services to citizens to pay the bond premium. But this is the precise problem this Court seeks to avoid and that the court in *Gillispie* avoided. Plaintiffs cite *Lewis v. Kern County*, No. 1:21-cv-00378-KES-CDB, 2025 WL 1865995 (E.D. Cal. July 7, 2025), to argue that the Court should reject the Township's argument that the threat to public services justifies waiving the bond requirement. In *Lewis*, the court ordered that the county post a bond for half of the judgment amount after concluding that the bond premiums could trade off with public services. *Id.* at *6. That argument, the court wrote, "weigh[ed] in favor of reducing the required bond amount" though did not "eliminate the need for a bond." *Id.* The court did not consider whether the bond "would place creditors of the defendant in an insecure position" because the defendant did not make that argument. *Id.* at *5-6. Here, the Township does make that argument, as did the defendant in *Gillispie*, and the Court finds the risk to the provision of public services to weigh in favor of waiving the bond requirement.

As Plaintiff argues, though, there are uncertainties yet to be worked out regarding the method through which the Township would pay the judgment should it be affirmed on appeal. The statutory provision the Township cites, Mich. Comp. Laws § 600.6093, provides some guidance on the process but does not address certain questions and contingencies. Posting bond would provide certainty to Plaintiffs that would not otherwise exist. *See Hamlin*, 181 F.R.D. at 353-54. But providing that certainty would potentially jeopardize public services for the Township's thousands of residents, and while process questions still exist, the Township "is a constant" that will be around to work those questions out if the time comes for it to pay. *Gillispie*, 2024 WL 897592, at *5. Fundamentally, the test here concerns the balance of equities, as the Court must balance the interests of both parties in respecting

6

the "dual protective role" of Rule 62(b). *Hamlin*, 181 F.R.D. at 351. The balance here tilts in favor of the Township and against requiring a bond.

## IV.

While requiring the Township to post bond would increase certainty for Plaintiffs, that certainty would come at the cost of risking the Township's ability to provide services to its citizens. The uncertainty Plaintiffs face is tempered by the Township's status as a sovereign entity with taxing authority. The circumstances here thus justify waiving the typical requirement of posting a supersedeas bond on appeal. Defendant's motion (ECF No. 636) is **GRANTED**. All proceedings to enforce the judgment against Peninsula Township in this case are **STAYED WITHOUT BOND** pending a final disposition on appeal.

**IT IS SO ORDERED**.

Date: March 2, 2026                     /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge